## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DENIS MARC AUDET, *et al.*,

                Plaintiffs,

    v.

HOMERO JOSHUA GARZA, *et al.*,

                Defendants.

Case No. 3:16-CV-00940-MPS

September 27, 2016

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## STUART A. FRASER'S MOTION TO DISMISS THE COMPLAINT

Daniel H. Weiner (ct12180)
Sarah L. Cave (phv08437)
Sara E. Echenique (phv08436)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY  10004-1482
Tel.: (212) 837-6000
Fax: (212) 422-4726

David R. Schaefer (ct04334)
Sean M. Fisher (ct23087)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT  06511
Tel.: (203) 772-2600
Fax: (203) 562-2098

*Attorneys for Defendant Stuart A. Fraser*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

Plaintiffs' Allegations .............................................................................................................3

    A.    Garza's Incorporation of GAW Miners and ZenMiner .....................................3

    B.    Fraser's Minority Investments in the Companies ...............................................4

    C.    Fraser's Requests for Information .......................................................................6

    D.    Plaintiffs' Claims Against Fraser .......................................................................7

ARGUMENT .............................................................................................................................7

I.      STANDARD OF REVIEW ...............................................................................................7

II.     THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 20(a)....................8

    A.    Plaintiffs Fail To Allege Sufficiently That
          Fraser Controlled Garza Or The Companies. ......................................................9

    B.    Plaintiffs Fail To Allege That Fraser
          Culpably Participated In The Alleged Primary Violation.........................................15

III.    THE COMPLAINT FAILS TO PLEAD FACTS WITH
       SUFFICIENT PARTICULARITY TO ESTABLISH LIABILITY
       UNDER CONNECTICUT UNIFORM SECURITIES ACT SECTION 36B-29(C) ..........19

IV.    THE COMPLAINT FAILS TO PLEAD THE ELEMENTS
       OF AIDING AND ABETTING COMMON LAW FRAUD. ...............................................20

CONCLUSION.........................................................................................................................21

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ..............................9, 10, 12, 14

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...........................................................................7, 8, 15

*ATSI Commc'ns, Inc v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ...................................3, 8, 9

*Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853 (S.D.N.Y. 2011)...........................................................................18

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...................................................................7, 8

*In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711 (S.D.N.Y. 2015)................................... *passim*

*In re Blech Sec. Litig.*, 961 F. Supp. 569 (S.D.N.Y. 1997)...................................................9, 10, 14

*Brodzinsky v. FrontPoint Partner LLC*, No. 3:11CV10 WWE, 2012 WL 1468507 (D. Conn. Apr. 26, 2012) .................................................................................3, 16

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227 (2d Cir. 2014) ....................................................................................................8, 9

*In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64 (D. Conn. 1994).............................................20

*DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104 (2d Cir. 2010).....................................................2

*ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187 (2d Cir. 2009)..........................................................................................19

*In re Flag Telecom Hldgs., Ltd. Sec. Litig.*, 352 F. Supp. 2d 429 (S.D.N.Y. 2005)...............10, 13

*FTC v. BF Labs Inc.*, No. 4:14-CV-00815-BCW, 2014 WL 7238080 (W.D. Mo. Dec. 12, 2014)...........................................................................................1

*In re Glob. Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910 (GEL), 2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) ........................................................................... *passim*

*Gordon v. Dailey*, No. 14-7495, 2016 WL 3457003 (D.N.J. June 21, 2016)..................................1

*Holmes v. Allstate Corp.*, No. 11 CIV. 1543 LTS DF, 2012 WL 627238 (S.D.N.Y. Jan. 27, 2012)...........................................................................................18

*In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 790 (C.D. Cal. 2004) ........................13, 14

**TABLE OF AUTHORITIES**

(Continued)

Page(s)

*Kuhns v. Ledger*, No. 15 CIV. 3246 NRB, 2016 WL 4705160 (S.D.N.Y. Aug. 24, 2016) ..................................................................................................3, 12, 13, 15

*Levy v. Maggiore*, 48 F. Supp. 3d 428, 459-60 (E.D.N.Y. 2014) ...................................18

*In re Lihua Int'l, Inc. Sec. Litig.*, No. 14-CV-5037 (RA), 2016 WL 1312104 (S.D.N.Y. March 31, 2016).............................................................................16

*Nicosia v. Amazon.com, Inc.*, No. 15-423-cv, 2016 WL 4473225 (2d Cir. Aug. 25, 2016) ..................................................................................................................2

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000) ......................................................16, 18

*Patriot Expl., LLC v. SandRidge Energy, Inc.*, 951 F. Supp. 2d 331 (D. Conn. 2013) ...........................................................................................7, 8, 19, 20

*Poptech, L.P. v. Stewardship Inv. Advisors, LLC*, 849 F. Supp. 2d 249 (D. Conn. 2012) ...........................................................................................................8

*Rich v. Maidstone Fin., Inc.*, No. 98 Civ. 2569 (DAB), 2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002).....................................................................16, 17

*Ross v. Bolton*, No. 83 Civ. 8244 (WK), 1989 WL 80428 (S.D.N.Y. Apr. 4, 1989)...................11

*S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996) ..........................9, 13, 15

*In re ShengdaTech*, No. 11 Civ. 1918 (LGS), 2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014) ....................................................................................................15

*Silsby v. Icahn*, 17 F. Supp. 3d 348, 371 (S.D.N.Y. 2014) ....................................12, 13

*Slayton v. Am. Express Co.*, 604 F.3d 758 (2d Cir. 2010) ............................................19

*Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp., N.V.*, 941 F. Supp. 1369 (S.D.N.Y. 1996)...............................................................................10, 11, 12

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190 (2d Cir. 2008)..................................................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ..........................8, 18

*In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202 (S.D.N.Y. 2011) ...........................14

*Wallace v. Buttar*, 239 F. Supp. 2d 388 (S.D.N.Y. 2003) ............................................9

iii

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

**STATUTES AND RULES**

15 U.S.C. § 78t(a) ................................................................................................ *passim*

15 U.S.C. § 78u-4(b)(2) .........................................................................................8

28 U.S.C. § 1367 ..................................................................................................19

C.G.S. § 36b-29(c) ............................................................................................7, 19

Fed. R. Civ. P. 8(a) .............................................................................................1, 8

Fed. R. Civ. P. 9(b) .....................................................................................1, 19, 20

Fed. R. Civ. P. 12(b)(6) ......................................................................................1, 7

**REGULATIONS**

17 C.F.R. § 240.12b-2 ............................................................................................9

**OTHER SOURCES**

Casey, Michael J., "BitBeat: GAW Miners to Launch Bitcoin Challenger,
   Paycoin," *Wall Street Journal* (Nov. 25, 2014) ..................................................6

Kharif, Olga, "Bitcoin and the Blockchain," *Bloomberg Quick Take* (Aug. 3,
   2016) *available at* https://www.bloomberg.com/quicktake/bitcoins ........................1

"SEC Charges Bitcoin Mining Companies," SEC Release No. 2015-271 (Dec. 1,
   2015) *available at* http://www.sec.gov/news/pressrelease/2015-271.html .............2

Defendant Stuart A. Fraser ("Fraser") submits this memorandum of law in support of his motion pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and the Private Securities Litigation Reform Act of 1995 (as amended, the "PSLRA") to dismiss the Complaint (the "Complaint") as against him.

## PRELIMINARY STATEMENT

Plaintiffs are purchasers of virtual currency, a speculative, high-risk, yet burgeoning online investment vehicle.[1]  Plaintiffs acknowledge that virtual currency does not have "legal tender status," but rather is a "digital representation of value that can be traded and functions as a medium of exchange; a unit of account; and/or a store of value."  (Compl. ¶ 25.)  Governments or other jurisdictions do not issue or guarantee virtual currency; rather, the "community of users" of the virtual currency decides its value by "consensus."  (*Id.*)

Virtual currency "miners," like Plaintiffs here, use computer equipment programmed with "special computer software to solve complex algorithms that validate groups of transactions in that virtual currency."  (*Id.* ¶ 27.)  Mining "is a process where miners receive transaction fees and newly minted bitcoins in return for solving computational puzzles using their computers," the difficulty of which "increases over time."  *FTC v. BF Labs Inc.*, No. 4:14-CV-00815-BCW, 2014 WL 7238080, at *1 n.1 (W.D. Mo. Dec. 12, 2014); *see Gordon v. Dailey*, No. 14-7495, 2016 WL 3457003, at *1 n.1 (D.N.J. June 21, 2016).  Plaintiffs engaged in virtual currency mining through two entities created and incorporated by Defendant Homero Joshua Garza ("Garza"):  Defendant GAW Miners, LLC ("GAW Miners") and Defendant ZenMiner, LLC ("ZenMiner," together with GAW Miners, the "Companies").  (Compl. ¶¶ 21-24.)  Plaintiffs

---

1. Kharif, Olga, "Bitcoin and the Blockchain," *Bloomberg Quick Take* (Aug. 3, 2016) *available at* https://www.bloomberg.com/quicktake/bitcoins (attached as Exhibit A to Declaration of Sarah L. Cave ("Cave Decl.") dated September 27, 2016).

allege that, over time, the Companies' business involved hardware-hosted mining, cloud-hosted mining, and products called "Hashlets," "Hashpoints," "HashStakers," and "Paycoin." (*Id.* ¶ 130.)

All that glitters is not gold. In December 2015, after a lengthy investigation of the Companies' virtual currency business, the Securities and Exchange Commission ("SEC") filed a civil complaint against the Companies and Garza as their founder. The SEC alleged that Garza and the Companies committed securities fraud on investors in that they "sold what they did not own, and misrepresented the nature of what they were selling."[2] **The SEC did not charge Fraser or suggest that he engaged in any wrongdoing.** The SEC action against Garza and the Companies has since been stayed.[3]

In June 2016, Plaintiffs filed the Complaint, which in many instances quotes whole paragraphs *verbatim* from the SEC Complaint.[4] Notwithstanding the fact that the SEC did not charge Fraser, Plaintiffs — apparently in search of a potential deep pocket — assert claims

---

2. "SEC Charges Bitcoin Mining Companies," SEC Release No. 2015-271 (Dec. 1, 2015) *available at* http://www.sec.gov/news/pressrelease/2015-271.html (attached as Exhibit B to Cave Decl.); *SEC v. Homero Joshua Garza, GAW Miners, LLC, and ZenMiner, LLC (d/b/a Zen Cloud)*, 3:15-cv-01760-JAM (D. Conn. 2015) ("SEC Complaint") (attached as Exhibit C to Cave. Decl.). Because the Complaint "'relies heavily'" on the SEC Complaint's "'terms and effect,'" the SEC Complaint may be considered by the Court on this motion to dismiss. *Nicosia v. Amazon.com, Inc.*, -- F.3d --, No. 15-423-cv, 2016 WL 4473225, at *5 (2d Cir. Aug. 25, 2016) (quoting *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (internal quotation and citation omitted)).

3. *SEC v. Homero Joshua Garza, GAW Miners, LLC, and ZenMiner, LLC (d/b/a Zen Cloud)*, 3:15-cv-01760-JAM (D. Conn. April 26, 2016) (Docket Entry No. 1).

4. *Compare* SEC Compl. ¶¶ 1-2 *with* Compl. ¶¶ 1-2; SEC Compl. ¶ 3 *with* Compl. ¶ 7; SEC Compl. ¶¶ 11-13 *with* Compl. ¶¶ 14-16; SEC Compl. ¶ 16 *with* Compl. ¶ 20; SEC Compl. ¶¶ 17-23 *with* Compl. ¶¶ 25-31; SEC Compl. ¶ 25 *with* Compl. ¶ 52; SEC Compl. ¶¶ 28-35 *with* Compl. ¶¶ 54-61; SEC Compl. ¶¶ 36-37 *with* Compl. ¶ 63; SEC Compl. ¶ 38 *with* Compl. ¶ 64; SEC Compl. ¶¶ 40-49 *with* Compl. ¶¶ 66-75; SEC Compl. ¶¶ 52-56 *with* Compl. ¶¶ 77-81; SEC Compl. ¶¶ 57-72 *with* Compl. ¶¶ 83-97; SEC Compl. ¶ 74 *with* Compl. ¶ 99; SEC Compl. ¶¶ 81-82 *with* Compl. ¶¶ 132-33.

against Fraser for control person liability under federal and Connecticut law.  That is a bridge too far:  Plaintiffs' theory that Fraser controlled the Companies lacks foundation in the facts or the law, and the Complaint fails to state a claim against him.

Plaintiffs accuse Fraser, a minority investor in the Companies, of participating in an alleged scheme by Garza and the Companies to defraud investors.  They lard their accusations of control person liability with references to Fraser's occasional requests for information about the Companies' performance and business, his business relationship and friendship with Garza, and conclusory catch-all allegations against Garza and the Companies, into which they conveniently group Fraser.  The correspondence between Garza and Fraser to which Plaintiffs point, however, demonstrates that Fraser *did not* have the power to direct the management and policies of Garza and the Companies.  Rather, that correspondence reinforces Fraser's limited role as a minority investor who did not control the Companies' daily operations, set their policies or determine how their policies would be implemented.  Furthermore, Plaintiffs' Complaint does not plead with the requisite particularity that Fraser engaged in "culpable participation" in a primary securities violation, which is also fatal to their Section 20(a) claim.  Plaintiffs' state law claims suffer similar deficiencies.  Accordingly, the claims against Fraser should be dismissed.

## PLAINTIFFS' ALLEGATIONS[5]

### A.    Garza's Incorporation of GAW Miners and ZenMiner

In May 2014, Garza incorporated GAW Miners as a Delaware limited liability company with offices in Connecticut.  (Compl. ¶ 19.)  Garza, as the founder, CEO and "Managing

---

5. For purposes of this Motion only, the allegations in the Complaint and any documents cited or quoted to within the Complaint are taken as true.  *See Brodzinsky v. FrontPoint Partner LLC*, No. 3:11CV10 WWE, 2012 WL 1468507, at *3 (D. Conn. Apr. 26, 2012); *Kuhns v. Ledger*, No. 15 CIV. 3246 NRB, -- F. Supp. 3d --, 2016 WL 4705160, at *2 (S.D.N.Y. Aug. 24, 2016) (citing *ATSI Commc'ns, Inc v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

Member" of GAW Miners, intended that GAW Miners would purchase and sell physical virtual currency mining equipment. (*Id.*)

Plaintiffs allege that Garza directed GAW Miners' publicity efforts, authorized and approved its issuance of press releases, posted information on GAW Miners' website and message board, approved the creation of and marketed new products, reviewed survey results about factors considered by investors in investing in virtual currency, and "had ultimate authority and control over GAW Miners' promotional materials, including the company's website, and posts he made on the company's message board." (*Id.* ¶¶ 60, 70, 80-83, 85, 87, 91, 95, 96, 104, 107, 109, 116, 117 & 119.) Garza managed all of GAW Miners' finances and daily business operations, including "direct[ing]" the conversion of United States dollars into virtual currency, and making all product and services decisions. (*Id.* ¶¶ 93, 104, 111, 112, 116 & 119.)

In May 2014, Garza also created ZenMiner, another Delaware limited liability company, with an office in Bloomfield, Connecticut. (*Id.* ¶¶ 17 & 53.) Garza "owned and controlled ZenMiner" as the majority owner and "Managing Member," and marketed ZenMiner to the public. (*Id.* ¶¶ 17, 20 & 58-60.) In July 2014, the Companies began offering cloud-hosted mining (*id.* ¶ 54), and the next month began selling Hashlets, a unit of "computational power" (*id.* ¶ 64). In the fall of 2014, "at Garza's direction," GAW Miners converted some of the Hashlets' revenue to bitcoin. (*Id.* ¶ 93.) Garza later shifted the business into products called "Hashpoints," "Paycoin," "Paybase" and "HashStakers." (*Id.* ¶¶ 102, 104, 113-14.)

Plaintiffs allege that Garza "had ultimate control over" the Companies' "day-to-day operations" and "directed" the Companies' financial decisions and strategy. (*Id.* ¶ 17.)

**B.    Fraser's Minority Investments in the Companies**

Fraser, who lives and works in New York, serves as a Vice Chairman at Cantor Fitzgerald, L.P. ("Cantor"), a well-known investment bank based in New York City. (*Id.* ¶¶ 18

& 41.)  Plaintiffs attempt to bolster their claims against Fraser by citing to his investment in other, non-currency businesses in which Garza was involved, including internet advertising, computer service and repair, and high-speed internet service in Vermont.  (*Id.* ¶¶ 32-35.) Plaintiffs acknowledge that Fraser lost money on these other ventures with Garza.  (*Id.* ¶ 35.) Plaintiffs contend that Garza and Fraser socialized and communicated by text message about "social subjects," and that, at one point, Garza gave Fraser a car.  (*Id.* ¶ 36.)  However, Plaintiffs do not contend that *any* of these businesses had *any* involvement with the virtual currency business, let alone that they had any impact on Plaintiffs' investments in the Companies or were part of the alleged fraud.

Fraser made an initial investment in GAW Miners, and is alleged to hold 41% of its equity.  (*Id.* ¶ 38.)  In 2014, Fraser expressed his belief that GAW Miners was "a very big player in the Virtual Coinage Business/Bitcoin" and that it was one of "the largest sellers of Mining Power."  (*Id.* ¶ 37.)  He was quoted as stating, on a single occasion in 2014, that "GAW[]Miners is totally above board" and he desired to "do it 'Right.'"  (*Id.*)  That same year, a press release about the launch of GAW Miners' virtual currency, Paycoin, identified Fraser as a "founding investor" or a "co-founder/early investor."  (*Id.* ¶ 43.)  In addition to his initial minority investment, Fraser loaned $200,000 to GAW Miners in 2014.  (*Id.* ¶ 48.)  Fraser was also a minority investor in ZenMiner.  (*Id.* ¶ 20.)

Plaintiffs do not allege — because they cannot — that Fraser was an officer, director, board member or employee of either GAW Miners or ZenMiner.  Nor does the Complaint allege that Fraser made any policy decision, exercised any authority, directed any operation or instructed Garza to take any action with respect to the Companies.

### C.   Fraser's Requests for Information

Fraser occasionally requested information from Garza about how the Companies were performing ("Whenever you have some accounting numbers . . . It would be nice to see how we're doing"), how to access information ("do you have a new login for me to see what's going on" regarding GAW Miners' sales), and how to use the Companies' products and services ("how do I buy coins through paybase?").  (*Id.* ¶¶ 40-42, 44 & 46-47.)  Yet, the Complaint fails to state whether Fraser received any of the information he requested and, if so, whether he undertook any controlling action at the Companies as a result.  (*Id.* ¶¶ 40-42, 44 & 46.)

Seeking port in a storm, Plaintiffs allege that Garza "confirmed" GAW Miners' "message" with Fraser.  (*Id.* ¶ 83.)  However, Plaintiffs do not allege — again, because they cannot — that Fraser had independent knowledge of the Companies' management, business, products, services, advertising or marketing.  Rather, the Complaint demonstrates that most, if not all, information Fraser had about the Companies, their products and performance came from Garza.  For example, before a November 25, 2014 interview with the *Wall Street Journal*, Fraser asked Garza whether there were "any questions I need to be ahead of?"  (*Id.* ¶ 45.)  In response, Garza provided Fraser with information about customer numbers, the Companies' annualized income, and an initial coin offering that Garza was planning.  (*Id.*)  The article noted that Fraser was "[b]acking Mr. Garza" and was "a long-time backer of Mr. Garza's projects," but contains no suggestion that Fraser held any role within the Companies other than that of a financial investor.[6]  Similarly, before he planned to speak with colleagues at Cantor about the Companies' business, Fraser had to ask Garza where to find general information about the virtual currency business.  (*Id.* ¶ 41.)  Again, the Complaint fails to indicate whether Fraser in fact received such

---

6.  Casey, Michael J., "BitBeat: GAW Miners to Launch Bitcoin Challenger, Paycoin," *Wall Street Journal* (Nov. 25, 2014) (attached as Exhibit D to the Cave Decl.).

information or, further, spoke with his colleagues or any potential investors.  As a result, the

most that Plaintiffs manage to allege against Fraser is the conclusory suggestion that he knew (or

was reckless or negligent in not knowing) that Garza's statements about the Companies'

capabilities were false or misleading.  (*Id.* ¶ 77; *see also id.* ¶¶ 78, 82, 86, 91 & 92.)

      **D.**     **Plaintiffs' Claims Against Fraser**

In the Complaint, Plaintiffs assert three claims against Fraser:  (i) control person liability

pursuant to Section 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78t(a)) (Count II),

(ii) control person liability pursuant to Section 36b-29(c) of the Connecticut Uniform Securities

Act (C.G.S. § 36b-29(c)) (Count IV), and (iii) aiding and abetting common law fraud under

Connecticut law (Count VII).

The Complaint fails to state a claim against Fraser because Plaintiffs have not alleged,

with sufficient particularity, facts from which it could properly be inferred that Fraser controlled

a primary violator — here, Garza and the Companies — and culpably participated in the alleged

fraud.  (Section I, *infra*.)  Plaintiffs' state law claims suffer similarly fatal defects.  (Sections II

and III, *infra*.)

**ARGUMENT**

**I.**     **STANDARD OF REVIEW**

On this motion to dismiss under FRCP 12(b)(6), the Court must evaluate whether the

Complaint pleads "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plaintiffs' obligation "to provide the 'grounds' of

[their] 'entitle[ment] to relief' requires more than labels and conclusions . . . ." *Patriot Expl.,*

*LLC v. SandRidge Energy, Inc.*, 951 F. Supp. 2d 331, 345-46 (D. Conn. 2013) (quoting

*Twombly*, 550 U.S. at 555).  A complaint does not "suffice if it tenders 'naked assertion[s]'

devoid of 'further factual enhancement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

*Twombly*, 550 U.S. at 557).

To state a Section 20(a) control person liability claim, Plaintiffs must demonstrate, in

addition to a primary violation, that the alleged control person had control over a primary

violator sufficient to satisfy FRCP 8(a), and engaged in culpable participation sufficient to satisfy

the PSLRA's scienter requirements.  *See Poptech, L.P. v. Stewardship Inv. Advisors, LLC*, 849 F.

Supp. 2d 249, 274-75 (D. Conn. 2012).  The PSLRA requires plaintiffs to "state with

particularity facts giving rise to a strong inference that the defendant acted with the required state

of mind."  15 U.S.C. § 78u-4(b)(2).  Only allegations that are "cogent and at least as compelling

as any opposing inference" suffice while a "merely plausible or reasonable" inference of scienter

necessarily will fail.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007); *see

also Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc.*, 531 F.3d 190, 194

(2d Cir. 2008).

Finally, Plaintiffs' state law claims are predicated on the same factual allegations as their

federal claims, and are therefore subject to the same pleading requirements.  *See Patriot Expl*,.

951 F. Supp. 2d at 346.

## II.       THE COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 20(a)

Section 20(a) of the Securities Exchange Act of 1934 provides:

> Every person who, directly or indirectly, controls any person liable
> under any provision of this chapter or of any rule or regulation
> thereunder shall also be liable jointly and severally with and to the
> same extent as such controlled person to any person to whom such
> controlled person is liable.

15 U.S.C. § 78t(a).  Plaintiffs cannot state a claim under Section 20(a) unless they plead and

prove "'(1) a primary violation by the controlled person, (2) control of the primary violator by

the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in

the controlled person's fraud.'" *ATSI Commc'ns*, 493 F.3d at 108; *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014) (same).

Here, Plaintiffs fail to allege (i) that Fraser actually held the power to direct or cause the direction of the Companies' management and policies, and (ii) facts with the requisite particularity that give rise to an inference of his culpable participation under Section 20(a).[7]

### A. Plaintiffs Fail To Allege Sufficiently That Fraser Controlled Garza Or The Companies.

"Control," as used in Section 20(a), means "the power to direct or cause the direction of the management and policies of [the primary violators], whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 240.12b-2; *see S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996); *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 740 (S.D.N.Y. 2015), *reconsideration denied*, No. 13-CV-6922 AJN, 2015 WL 3540736 (S.D.N.Y. June 5, 2015). Not only is *actual* control "essential" for Section 20(a) liability, but a defendant must be shown to "have actual control over the *transaction* in question." *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) (internal citation omitted) (emphasis added). "Conclusory allegations of control are insufficient as a matter of law" and a plaintiff cannot avoid dismissal unless it sufficiently alleges that the defendant "'actually possess[es], in fact, rather than in theory, the ability to direct the actions of the controlled person.'" *In re Glob. Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910 (GEL), 2005 WL 1907005, at *12 (S.D.N.Y. Aug. 8, 2005) (quoting *Wallace v. Buttar*, 239 F. Supp. 2d 388, 396 (S.D.N.Y. 2003)); *see In re BioScrip*, 95 F. Supp. 3d at 740 ("[a]ctual control is essential to control person liability"); *In re Blech Sec. Litig.*, 961 F. Supp. 569, 586 (S.D.N.Y. 1997) ("affect[ing]" actions of primary

---

7. For purposes of this Motion only, Fraser does not challenge the element of a primary violation by Garza and the Companies.

violator "is not the same as directing those actions").  "Control in this context is not the mere ability to persuade, but almost always means the practical ability to *direct* the actions of people who issue or sell securities."  *In re Flag Telecom Hldgs., Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458 (S.D.N.Y. 2005) (emphasis in original) (internal citation and quotation omitted), *abrogated on other grounds* 574 F.3d 29 (2d Cir. 2009); *see In re Alstom*, 406 F. Supp. 2d at 487 (same).

Plaintiffs' theory that Fraser controlled Garza and the Companies, simply because he was a minority owner of the Companies and had a business relationship and friendship with Garza (Compl. ¶ 18), does not satisfy this stringent pleading standard.  Plaintiffs do not allege a single policy, procedure or method of operation undertaken by Garza or the Companies that Fraser directed or controlled, as the law requires.  *See In re Alstom*, 406 F. Supp. 2d at 487.  Plaintiffs do not allege that Fraser held any voting rights in the Companies, nor do they allege that a contract or other agreement exists between Defendants that would grant him any such power. They do not allege that Fraser asked for — let alone received — any power, rights or position in exchange for his minority investment in the Companies.  *See In re BioScrip*, 95 F. Supp. 3d at 740 (having "a great deal of sway" did not "rise to the level of actual control").  In short, Plaintiffs do not allege a single cognizable fact demonstrating that Fraser actually possessed the ability to direct the actions of Garza or the management and policies of the Companies.  *See In re Flag*, 352 F. Supp. 2d at 458 (exercising "powers of persuasion" does not establish "actual control").

Instead of supporting a plausible inference of control, Plaintiffs' allegations actually demonstrate that Fraser was not involved in the decision-making or management of the Companies.  That Fraser may have had some ability to influence Garza is not enough, especially given that Fraser did not "clearly occupy control status."  *Sloane Overseas Fund, Ltd. v. Sapiens*

*Int'l Corp., N.V.*, 941 F. Supp. 1369, 1378 (S.D.N.Y. 1996) ("the plaintiff must plead facts from which control status can be inferred, e.g., that defendant had power, pursuant to an agreement to control the primary violator or aided the primary violator in performing some culpable conduct linking the defendant to the primary violation"); *Ross v. Bolton*, No. 83 Civ. 8244 (WK), 1989 WL 80428, at *3-4 (S.D.N.Y. Apr. 4, 1989) (that a party "*affected* [a primary violator's actions] . . . does not mean, however, that it *directed* those actions") (emphasis in original), *aff'd on other grounds* 904 F.2d 819 (2d Cir. 1990). The mere suggestion that Fraser had the "power to influence managerial decisions is not the same as 'power to direct the management and policies of the primary violator'" because "[s]ubstantial influence is not the same as actual control[, which] is essential to control personal liability." *In re BioScrip*, 95 F. Supp. 3d at 740 (internal citations omitted).

Rather, Plaintiffs' allegations pertaining to Fraser each fall into one of four categories: (i) Fraser held a minority investment in the Companies (*see* Compl. ¶¶ 44 & 47), (ii) Fraser requested general information or access to such information regarding the Companies' business (*see id.* ¶¶ 40-42 & 44-47), (iii) Fraser and Garza were business associates and friends (*see id.* ¶ 36), and (iv) conclusory allegations pertaining to Garza and the Companies, into which Plaintiffs conveniently lump Fraser (s*ee id.* ¶¶ 11, 18 & 20). None of these, whether separate or combined, gives rise to a sufficient inference of control as required by federal securities laws.

### i.     Fraser's status as a minority investor does not establish control.

It is well established that a defendant's status as a minority shareholder is not sufficient to establish control for Section 20(a) liability. *See In re BioScrip*, 95 F. Supp. 3d at 740 ("substantial influence" of minority owner and defendant company's largest shareholder who had the right to designate a quarter of the company's board did not sufficiently plead control for

Section 20(a) liability) (collecting cases); *Silsby v. Icahn*, 17 F. Supp. 3d 348, 371 (S.D.N.Y. 2014) (minority shareholder's appointment of two members of board of directors did not sufficiently plead control for Section 20(a) liability).  Holding a minority interest, in and of itself, does "not create power to direct management and policies . . . ."  *In re Alstom*, 406 F. Supp. 2d at 492; *see also In re BioScrip*, 95 F. Supp. 3d at 740; *Silsby*, 17 F. Supp. 3d at 371.  Further, although an entity's "largest minority shareholder will no doubt exercise considerable sway over that entity, he or she does not have the formal ability to control a company," and, therefore, minority ownership "is insufficient to demonstrate actual control" for Section 20(a) liability. *Kuhns v. Ledger*, 2016 WL 4705160, at *6 (dismissing control liability claim against defendant company's largest shareholder, who owned 47% of that company's equity).

In *Sloane Overseas Fund. v. Sapiens International Corp.*, the United States District Court for the Southern District of New York held that the plaintiffs there failed to allege control person liability against a founder and minority owner of the defendant company.  941 F. Supp. at 1379. In its analysis, the court considered the allegations that the alleged control person, Swiss Bank Corporation, had (i) founded the primary violator, Sapiens, (ii) was a minority owner of Sapiens, (iii) was a creditor of Sapiens at the time of its formation, (iv) had a vice president on Sapiens' board of directors, and (v) was the underwriter for one of Sapiens' notes offerings.  *Id.*  The court found that these allegations did "not 'support a reasonable inference that [the defendant] had the potential power to influence and direct the activities of' Sapiens.'"  *Id.*  (internal citation omitted).

Here, Fraser's minority investment does not support a reasonable inference of his control over the Companies or Garza.  Plaintiffs' allegations are even weaker than other cases where courts properly dismissed Section 20(a) claims for failure to plead control.  For example, in

*BioScrip*, *Flag* and *Silsby*, the minority shareholders had appointed members of the boards of directors of the primary violators, and that still was held insufficient to plead control.  *In re BioScrip*, 95 F. Supp. 3d at 719 & 740-41; *In re Flag*, 352 F. Supp. 2d at 458; *Silsby*, 17 F. Supp. 3d at 371; *see also Kuhns*, 2016 WL 4705160, at *6 (owner of 47% of stock may have "substantially influenced" primary violator, but lacked "formal ability to control").  Here, Plaintiffs do not even allege that Fraser appointed any directors or officers, had or exercised any voting rights, or otherwise used his minority investment to exert control over the Companies' virtual currency business.  Plaintiffs simply do not allege any basis to show that Fraser's minority investment translated into the "power to direct management and policies" implemented by Garza or the Companies.  *In re BioScrip*, 95 F. Supp. 3d at 740 (quoting *First Jersey*, 101 F.3d at 1473).

### ii.    Fraser's requests for or access to information about the Companies do not establish control.

Implausibly, Plaintiffs suggest that because Fraser "was kept apprised of the company's status" (Compl. ¶ 44), and had "access" to sales information (*id.* ¶ 47), this supports a finding of control.  Fraser's inquiries regarding the Companies' status do not, however, demonstrate control.  In fact, these allegations contradict any suggestion that Fraser had substantial influence over the other defendants, let alone actual control over their management and policies.  For example, Fraser told Garza at one point, "[i]t would be nice to see how we're doing."  (Compl. ¶ 46.)  By his very wording, Fraser indicated that he did *not* have control over the Companies' operations and decision-making.  *See In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 790, 810 (C.D. Cal. 2004), *order clarified on other grounds*, 347 F. Supp. 2d 811 (C.D. Cal. 2004) (ordinary-course access to financial records did not imply control); *see also In re Glob. Crossing*,

2005 WL 1907005, at *12 ("Conclusory allegations of control are insufficient as a matter of law.").

Furthermore, Plaintiffs do not allege that Fraser received any of the requested information, let alone made any decisions, took any actions to manage, or set policies for the Companies based on that information.  Plaintiffs also do not allege that Fraser actually introduced any investors to Garza or the Companies or deployed any of Cantor's resources to that end.  (*See id.* ¶¶ 41-42).  Accordingly, these allegations do not support "[a]ctual control[, which] is essential to control person liability . . . ."  *In re Blech*, 961 F. Supp. at 586; *see In re BioScrip*, 95 F. Supp. 3d at 740 (same).

### iii.   Fraser's business and personal relationship with Garza also does not support a reasonable inference of control.

Fraser's personal relationship with Garza is insufficient to support the allegation that Fraser qualifies as a "controlling person" under the law.  (Compl. ¶ 11.)  *In re Homestore.com*, 347 F. Supp. 2d at 810 (pre-existing relationship between defendant and company was "irrelevant" to control person analysis).  Rather, "[t]he control person inquiry looks at the day-to-day affairs of the company, not pre-existing or even on-going personal or professional relationships between the control person and the purported controllee."  *Id*.  Accordingly, Fraser's prior, unrelated business dealings with Garza have no bearing on the amount of control, if any, that he is alleged to have exerted over Garza and the Companies with respect to the virtual currency business.  *In re Alstom*, 406 F. Supp. 2d at 487 (defendants must be shown to "have actual control over the transaction in question"); *In re Tronox, Inc. Sec. Litig.*, 769 F. Supp. 2d 202, 207 (S.D.N.Y. 2011) (same).

### iv.   Plaintiffs' conclusory group pleading allegations are insufficient.

Plaintiffs' remaining allegations referencing Fraser, lumped in with the other defendants, are the sort of conclusory group pleading that courts routinely reject as insufficient to state a federal securities claim.[8]  *See Kuhns*, 2016 WL 4705160, at *6, n.3 ("[t]he remaining allegations regarding [the defendant] are conclusory . . . and therefore 'are not entitled to the assumption of truth'") (quoting *Iqbal*, 556 U.S. at 679); *In re Glob. Crossing*, 2005 WL 1907005, at *13 (dismissing Section 20(a) claim for failure to "allege specifically how each [defendant] possessed the power to direct or cause the direction of the management" of the primary violator) (internal citation omitted).  Plaintiffs' attempt to combine multiple conclusory allegations here likewise does not lead to a plausible inference that Fraser controlled a primary violator.

### B.   Plaintiffs Fail To Allege That Fraser Culpably Participated In The Alleged Primary Violation.

Even if Plaintiffs adequately pleaded Fraser's control over Garza and the Companies — which they have not — that would be insufficient to establish that Fraser could be held liable as a control person.  In addition to control of the primary violator, Section 20(a) requires Plaintiffs to allege that each Defendant culpably participated in the alleged primary violation at a level "approximating recklessness in the section 10(b) context."  *In re ShengdaTech*, No. 11 Civ. 1918 (LGS), 2014 WL 3928606, at *10 & n.1 (S.D.N.Y. Aug. 12, 2014) (following *First Jersey* and its progeny "holding that a plaintiff must sufficiently plead culpable participation as a separate

---

8.  *See*, *e.g.*, Compl. ¶¶ 58 ("Garza and Fraser fully controlled ZenMiner"), 60 ("Garza and (defendant) Fraser had always owned and controlled ZenMiner"), 62 ("GAW Miners and ZenMiner, controlled by Garza and Fraser"), 78 ("Garza and Fraser were responsible for GAW Miners' and ZenMiner's decision to continue selling Hashlets despite their knowledge (or reckless or negligent disregard) that the companies lacked the computing power they purported to be selling to investors"); *see also id.* ¶¶ 11, 18, 20, 39, 49, 50, 77, 82, 83, 86, 91, 100, 101, 105, 110, 119, 120, 137-140, 153-55 & 161-163.

scienter element of control person liability under § 20(a) in order to survive a motion to dismiss").  In addition, "the PSLRA's heightened pleading requirements apply to the culpable participation element," and Plaintiffs therefore must plead with particularity facts that create a strong inference of scienter.  *Id.*; *Brodzinsky*, 2012 WL 1468507, at *5 (plaintiff "must allege particularized facts of the controlling person's conscious misbehavior or recklessness"); 15 U.S.C. § 78u-4(b)(2)(A).

Here, the Complaint fails to plead any particularized facts sufficient to give rise to a strong inference of culpable participation by Fraser.  Plaintiffs simply rely on their mantra that Fraser "knew or [was] reckless or negligent in not knowing" that Garza's statements about the Companies were false or misleading."  (Compl. ¶¶ 77, 78, 82, 86 & 91.)  Absent from the Complaint are any "detailed allegations" of Fraser's state of mind that are required to state a Section 20(a) claim.  *In re Glob. Crossing*, 2005 WL 1907005, at *12 (dismissing Section 20(a) claim against minority shareholder); *see also Rich v. Maidstone Fin., Inc.*, No. 98 Civ. 2569 (DAB), 2002 WL 31867724, at *12 (S.D.N.Y. Dec. 20, 2002) (dismissing Section 20(a) claim for failure to allege culpable participation where the "complaint contain[ed] no detailed allegations regarding the state of mind of the 'control person'").

Like the Complaint here, the pleading in *In re Lihua International, Inc. Securities Litigation* relied on allegations that an individual defendant had access to information that would have revealed the company's fraudulent activities.  No. 14-CV-5037 (RA), 2016 WL 1312104 (S.D.N.Y. March 31, 2016).  The *Lihua* plaintiffs did not, however, "'specifically identify the reports or statements containing this information,'" and this failure doomed their claim.  *Id.* at *15 (quoting *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000)).  Similarly, Plaintiffs here do

not allege with particularity any reports or statements that Fraser saw or had access to that would have revealed the alleged fraud.

Plaintiffs' attempt to suggest a strong inference of Fraser's scienter based on his minority ownership status and his association with Garza also fails.  In *Rich v. Maidstone*, the court considered whether culpable participation was alleged against two individual defendants:  the CEO, chairman and director of the defendant company, and his wife, who owned between 50% and 75% of the company's outstanding shares.  2002 WL 31867724, at *12.  As to the wife, the court concluded that the complaint lacked particularized facts to support that she knew or should have known of the alleged fraud.  *Id.*  In dismissing the Section 20(a) claim against the wife, the court noted that:

> the Plaintiff wishes for this Court to draw the inference that [the defendant] knew or should have known about the alleged fraud based solely upon her ownership of shares in [the company] and her marriage to [the company's chief executive officer, chairman and director]. While this is a possible inference, *the Court does not believe it is a reasonable one*.  It is clear that ownership alone is not enough to infer knowledge or recklessness.   If it were otherwise, the requirement of control status and culpable participation would collapse into a single requirement.

*Id.* (emphasis added).  As in *Rich*, Plaintiffs here ask the Court to infer that Fraser knew or should have known about the alleged primary violation based on his minority investment and his professional and personal relationship with Garza.  (Compl. ¶¶ 18, 20 & 32-49.)  But, as in *Rich*, the Complaint "alleges nothing to suggest that the alleged fraud should have been spotted by" Fraser.  *Rich*, 2002 WL 31867724, at *12.

None of Plaintiffs' other allegations evinces that Fraser intended to defraud investors.  Fraser's own words, which Plaintiffs quote in the Complaint, demonstrate that he was unaware of the details of the business operations that Garza had established and of any wrongdoing in which Garza may have engaged.  (Compl. ¶¶ 46-47.)  The absence of any particularized

allegation that Fraser made any statement or initiated any action as to Garza's sale of virtual currency activities, and Plaintiffs' allegations that Fraser inquired about how the virtual currency mining operations worked, further weakens any inference of scienter.  (*See id.* ¶¶ 40, 45-47.) The SEC's considered decision to pursue claims against Garza and the Companies, but not Fraser (*see supra* page 2 & n.2), further demonstrates Fraser's lack of scienter.

In short, Plaintiffs fail to allege particularized facts demonstrating a strong inference of scienter against Fraser that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs, Inc.*, 551 U.S. at 314.  The allegations against him amount to little more than conclusory group pleading and fraud by hindsight.  *See Novak*, 216 F.3d at 309 ("we have refused to allow plaintiffs to proceed with allegations of 'fraud by hindsight'"); *Bd. of Trs. of City of Ft. Lauderdale Gen. Emps.' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 871 (S.D.N.Y. 2011), *aff'd* 475 F. App'x 353 (2d Cir. 2012) ("threadbare recitations" of the plaintiffs' conclusions "without corresponding, particularized allegations of the [defendant's] knowledge of the underlying [conduct] cannot amount to more than an impermissible attempt to plead fraud by hindsight."); *Holmes v. Allstate Corp.*, No. 11 CIV. 1543 LTS DF, 2012 WL 627238, at *23 (S.D.N.Y. Jan. 27, 2012), *report and recommendation adopted*, No. 11 CIV. 1543 LTS DCF, 2012 WL 626262 (S.D.N.Y. Feb. 27, 2012) ("sweeping references to acts by some or all of the defendants" are insufficient to plead scienter).  Plaintiffs' generalized claims that Fraser "was negligent in not knowing" about the wrongdoing in which Garza and the Companies allegedly engaged (*see, e.g.* Compl. ¶ 110), give rise to, at most, an inference of negligence, which is of course insufficient to state a Section 20(a) claim.  *See Levy v. Maggiore*, 48 F. Supp. 3d 428, 459-60 (E.D.N.Y. 2014) (scienter not plead where defendant, "at most" acted negligently, and allegations did not establish that the defendant's actions were "highly

unreasonable, representing an extreme departure from the standards of ordinary care," or otherwise "approximate[d] an actual intent to aid in the fraud being perpetrated").

Rather, the more compelling inference arising from Fraser's conduct, as alleged in the Complaint, is that he wanted the virtual currency business to succeed, and believed that goal would be accomplished through legitimate means.  (*See, e.g.*, Compl. ¶ 37 (Fraser wrote that "GAW[]Miners is totally above board and we only want to do it 'Right.'").)  That Fraser lent an additional $200,000 to GAW Miners to help pay for ongoing business operations suggests that he did not know of the alleged fraud, and thus further undermines an inference of scienter.  *Cf. Slayton v. Am. Express Co.*, 604 F.3d 758, 777 (2d Cir. 2010) (directors' prudent course of action showing that they did not know of the fraud "weakens rather than strengthens an inference of scienter").  Such a "desire to maximize the corporation's profits does not strengthen the inference of an intent to defraud . . . ." *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 200 (2d Cir. 2009).  Accordingly, Plaintiffs' allegations fail to demonstrate that Fraser culpably participated as a control person in the alleged fraud.

## III.  THE COMPLAINT FAILS TO PLEAD FACTS WITH SUFFICIENT PARTICULARITY TO ESTABLISH LIABILITY UNDER CONNECTICUT UNIFORM SECURITIES ACT SECTION 36B-29(c)[9]

Plaintiffs' claim under the Connecticut Uniform Securities Act Section 36b-29(c) is subject to the heightened pleading standards because it is "predicated on the same factual allegations as their federal claims . . . ." *Patriot Expl.*, 951 F. Supp. 2d at 346 (granting motion to dismiss as to the defendant officers for allegations of Section 20(a) and C.G.S. 36b-29(c) control person liability and aiding and abetting common law fraud); *see* C.G.S. § 36b-29(c).  For

---

9.  If Plaintiffs' federal securities claim against Fraser (Count II) is dismissed, the Court may decline to exercise supplemental jurisdiction over the remaining state law claims (Counts IV and VII) and dismiss them accordingly on that ground.  *See* 28 U.S.C. § 1367(c)(3).

the reasons discussed above with respect to the Section 20(a) claim, Plaintiffs fail to plead facts with sufficient particularity to establish liability under this provision.  *Patriot Expl.*, 951 F. Supp. 2d at 363 (dismissing for failure to satisfy Rule 9(b) state law claims that relied on same factual allegations as federal claims).

## IV.   THE COMPLAINT FAILS TO PLEAD THE ELEMENTS OF AIDING AND ABETTING COMMON LAW FRAUD.

Plaintiffs cannot state a claim for aiding and abetting common law fraud under Connecticut common law unless they "allege with particularity that: (1) the party aided by the defendant performed a wrongful act; (2) the defendant generally was aware of his role as part of an illegal or tortious activity at the time he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation."  *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 102-03 (D. Conn. 1994); *Patriot Expl.*, 951 F. Supp. 2d at 365.  In *Patriot Exploration*, the court dismissed aiding and abetting common law fraud claims against individual defendants who were directors of the company and signed the annual Form 10-K.  The Court found that the allegations in the complaint "could not support a conclusion that [the defendants] were aware of illegal or tortious activity or that they knowingly and substantially assisted the principal violation."  951 F. Supp. 2d at 365.  For the same reason and as discussed in Section II.B, *supra*, Plaintiffs' allegations here similarly fail to support a conclusion that Fraser knew or substantially assisted in the alleged fraud by Garza and the Companies.

20

## CONCLUSION

For the foregoing reasons, Fraser respectfully requests that the Court grant his motion to dismiss the Complaint with prejudice as against him.

Dated:  September 27, 2016

HUGHES HUBBARD & REED LLP

By: s/ Sarah L. Cave
Daniel H. Weiner (ct12180)
Sarah L. Cave (phv08437)
Sara E. Echenique (phv08436)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY  10004-1482
Tel.: (212) 837-6000
Fax: (212) 422-4726
Email: Sarah.cave@hugheshubbard.com

David R. Schaefer (ct04334)
Sean M. Fisher (ct23087)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT  06511
Tel.: (203) 772-2600
Fax: (203) 562-2098
Email: Sfisher@bswlaw.com

*Attorneys for Defendant Stuart A. Fraser*

21