UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, *et al.*,<br><br>                Plaintiffs,<br><br>v.<br><br>HOMERO JOSHUA GARZA, *et al.*,<br><br>                Defendants. | Case No. 3:16-CV-00940-MPS<br><br><br>December 6, 2016 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
STUART A. FRASER'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Daniel H. Weiner (ct12180)
Sarah L. Cave (phv08437)
Sara E. Echenique (phv08436)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY  10004-1482
Tel.: (212) 837-6000
Fax: (212) 422-4726

David R. Schaefer (ct04334)
Sean M. Fisher (ct23087)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT  06511
Tel.: (203) 772-2600
Fax: (203) 562-2098

*Attorneys for Defendant Stuart A. Fraser*

**TABLE OF CONTENTS**

                                                                                                                               **Page**

PRELIMINARY STATEMENT ...................................................................................................1

PLAINTIFFS' NEW ALLEGATIONS .........................................................................................3

      A.     Garza's Incorporation of GAW Miners and ZenMiner .................................3

      B.     Fraser's Investments in the Companies ........................................................4

      C.     Fraser's Access to Information .....................................................................5

      D.     Plaintiffs' Claims Against Fraser .................................................................5

ARGUMENT ...................................................................................................................................5

I.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER
      SECTION 20(a) .................................................................................................................6

      A.     Plaintiffs Fail to Plead That Fraser Controlled Garza or The
              Companies ....................................................................................................6

              1.     Fraser's status as a minority investor does not establish
                      control. ..............................................................................................7

              2.     Fraser's suggestions to Garza do not establish control. ..................8

              3.     Fraser's access to information about the Companies does
                      not establish control. .......................................................................10

              4.     Fraser's personal relationship and other business dealings
                      with Garza do not demonstrate control. ..........................................11

              5.     Plaintiffs' conclusory group pleading allegations are
                      insufficient. .....................................................................................11

      B.     Plaintiffs Fail to Allege that Fraser Culpably Participated in The
              Alleged Primary Violation. .........................................................................12

II.   THE AMENDED COMPLAINT FAILS TO PLEAD FACTS WITH
      SUFFICIENT PARTICULARITY TO ESTABLISH LIABILITY UNDER
      CONNECTICUT UNIFORM SECURITIES ACT SECTION 36b-29(a)(2) ......................14

CONCLUSION ...............................................................................................................................16

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ......................................... 6, 7, 8

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................................... 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................................................... 9

*In re BioScrip Inc., Sec. Litig.*, 95 F. Supp. 3d 711 (S.D.N.Y. 2015) ......................................... 9, 10

*In re Blech Sec. Litig.*, 961 F. Supp. 569 (S.D.N.Y. 1997) ............................................................ 10

*Ferrari v. U.S. Equities Corp.*, 2014 WL 5144736 (D. Conn. Oct. 14, 2014) ................................ 9

*FIH, LLC v. Foundation Capital Partners LLC*, 176 F. Supp. 3d 52 (D. Conn.
    2016) .......................................................................................................................................... 15

*Fiorillo v. United Tech. Corp.*, Civil Action No. 3:13-cv-1287, 2015 WL 5797010
    (D. Conn. Sept. 30, 2015) ........................................................................................................... 2

*In re Flag Telecom Hldgs., Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458 (S.D.N.Y.
    2005) ......................................................................................................................................... 11

*In re Glob. Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910 (GEL), 2005 WL 1907005
    (S.D.N.Y. Aug. 8, 2005) ............................................................................................................ 13

*In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 790 (C.D. Cal. 2004) ............................. 10

*Kuhns v. Ledger*, No. 15 CIV. 3246 NRB, 2016 WL 4705160 (S.D.N.Y. Aug. 24,
    2016) ..................................................................................................................................... 7, 11

*In re Lihua Intl., Inc. Sec. Litig.*, No. 14-CV-5037 (RA), 2016 WL 1312104
    (S.D.N.Y. March 31, 2016) ....................................................................................................... 12

*Pearsall Holdings, LP v. Mountain High Funding, LLC*, No. 3:13cv437 (JBA),
    2014 WL 7270334 (D. Conn. Dec. 18, 2014) ..................................................................... 14, 15

*Poindexter v. EMI Record Grp., Inc.*, No. 11-civ-559, 2012 WL 1027639
    (S.D.N.Y. Mar. 27, 2012) ............................................................................................................ 2

*Rich v. Maidstone Fin., Inc.*, No. 98 Civ. 2569 (DAB), 2002 WL 31867724
    (S.D.N.Y. Dec. 20, 2002) .......................................................................................................... 13

*Ross v. Bolton*, No. 83 Civ. 8244 (WK), 1989 WL 80428, (S.D.N.Y. Apr. 4, 1989) .................... 11

# TABLE OF AUTHORITIES
(Continued)

**Page(s)**

*In re ShengdaTech*, No. 11 Civ. 1918 (LGS), 2014 WL 3928606 (S.D.N.Y. Aug. 12, 2014) ................................................................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ................................................13

**Statutes and Rules**

15 U.S.C. § 78t(a) ............................................................................................................... *passim*

28 U.S.C. § 1367(c)(3) ..................................................................................................................14

C.G.S. § 36b-29 ........................................................................................................................5, 14

Fed. R. Civ. P. 8(a) ....................................................................................................................1, 9

Fed. R. Civ. P. 9(b) ..................................................................................................................1, 15

Fed. R. Civ. P. 11 ............................................................................................................................1

Fed. R. Civ. P. 12(b)(6) ..................................................................................................................1

Defendant Stuart A. Fraser ("Fraser") submits this memorandum of law in support of his motion pursuant to Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") and the Private Securities Litigation Reform Act of 1995 (as amended, the "PSLRA") to dismiss the First Amended Complaint (the "Amended Complaint") as against him.[1]

## PRELIMINARY STATEMENT

Before filing their Amended Complaint, Plaintiffs had the benefit of Fraser's First Motion to Dismiss, which pointed out the many flaws in their theory of control person liability against Fraser. The Court granted them one opportunity to remedy those flaws, instructing Plaintiffs to "plead[] as many facts as possible, consistent with Rule 11, to address the alleged defects discussed in Defendant's memorandum of law." (ECF No. 48.) Facing dismissal with prejudice, Plaintiffs made a deal with the Devil, agreeing with the previously alleged mastermind of the fraud, original lead defendant Homero Joshua Garza ("Garza"), to dismiss all the claims against him in exchange for purported information from him in the hope that it could cure the deficiencies in their claims against Fraser. Plaintiffs' unholy alliance with Garza has failed, and the limits of Rule 11 tested.

In their original pleading, Plaintiffs alleged that Garza acted freely in captaining the alleged fraud. (*See*, *e.g.*, Original Complaint ("Orig. Compl.") ¶¶ 17 & 19.) While Plaintiffs have now granted Garza a free pass by eliminating him as a defendant, they cannot in good faith take new, inconsistent positions to erase Garza's actions or now simply substitute Fraser for the

---

1. Fraser originally moved to dismiss the Complaint as against him. (ECF No. 42.) Plaintiffs elected not to oppose that motion (the "First Motion to Dismiss") and, taking the option offered by the Court (ECF No. 48), instead filed the Amended Complaint. (ECF No. 57.) This Motion incorporates by reference the arguments set forth in the First Motion to Dismiss, as allowed by the Court. As stated in the First Motion to Dismiss, the allegations of the Amended Complaint and any documents cited or quoted therein are taken as true for purposes of this Motion only. (First Motion to Dismiss n.6.) All terms not defined in this Motion have the meaning ascribed to them in the First Motion to Dismiss.

very same actions and decisions that they previously claimed were Garza's.[2]  Even in the Amended Complaint, Plaintiffs allege that Garza acted fraudulently, misrepresenting facts to the public and stealing from investors.  The chart below demonstrates several of the glaring inconsistencies between the two pleadings and Plaintiffs' attempt to shift responsibility from Garza to Fraser:

| **Original Complaint** | **Amended Complaint** |
|---|---|
| Fraser controlled GAW Miners and ZenMiner. (¶¶ 11, 18, 49.) | Fraser controlled GAW Miners, ZenMiner *and* Garza. (¶¶ 11, 18, 73.) |
| Garza and Fraser each owned and controlled 41% of the equity in GAW Miners, with 18% reserved for future investors.  (¶¶ 38; *see also* 49, 138, 154.) | Garza and Fraser had an "arrangement" that would provide for "50-50 ownership" applying "prospectively to new companies."  This "arrangement" applied to GAW Miners and ZenMiner, so that Fraser and Garza each owned "half" of GAW Miners and ZenMiner, but "ultimately agreed to set aside 18%" of GAW Miners for future investors or employees.  (¶¶ 38, 48.) |
| Garza was "regularly advised" by Fraser on GAW Miners' business.  (¶ 40.) | Fraser regularly "provided direction" to Garza on GAW Miners' business.  (¶ 50.) |
| GAW Miners and ZenMiner decided to sell Hashlets.  (¶ 64.) | Fraser proposed the Hashlets concept to Garza.  (¶ 96; *see also* ¶ 85.) |
| Garza created ZenMiner and persuaded others to represent that ZenMiner was an independent company, and Garza authorized and approved GAW Miners' press release announcing that its parent had purchased a controlling stake in ZenMiner.  (¶¶ 20, 53, 59 & 60.) | "Fraser came up with the idea of GAW Miners 'acquiring' ZenMiner, first proposed the plan to Garza in or around June 2014, and the two jointly made the decision for GAW Miners to 'acquire' ZenMiner."  (¶ 88.) |
| Fraser "had the power to direct and control the policies and management" of GAW Miners and ZenMiner.  (¶ 162.) | Fraser "had the power to direct Garza's decisions with respect to GAW Miners and ZenMiner."  (¶ 206.) |

---

2.  Plaintiffs cannot escape their allegations in their Original Complaint because "even though the Amended Complaint is the operative pleading, the Court may still credit admissions in the original complaint and attached exhibits . . . ."  *Poindexter v. EMI Record Grp., Inc.*, No. 11-civ-559, 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012); *see Fiorillo v. United Tech. Corp.*, Civil Action No. 3:13-cv-1287, 2015 WL 5797010, at *1 (D. Conn. Sept. 30, 2015) (same).

2

The Court should reject Plaintiffs' attempt to shift the blame for Garza's actions onto Fraser, a minority investor. Plaintiffs' new allegations, while colorful, do no more than their original allegations to advance their claims into the realm of the plausible. Each of these new allegations falls into one of five categories, none of which is sufficient, separately or combined, to state a claim against Fraser. In light of the Court's instructions to Plaintiffs, it is reasonable to infer that, if Plaintiffs could have alleged facts supporting their claim of Fraser's control over Garza and the Companies, they would have done so by now. Instead, Plaintiffs veil their defective theory behind wisps of conclusory statements, "information and belief" allegations, and piecemeal anecdotes. The absence of any allegation that Fraser directly controlled any operation, policy or procedure at the Companies gives lie to Plaintiffs' attempt to plead control person liability against Fraser. Plaintiffs have played their last card, and it is not enough to meet their pleading burden. Accordingly, the Court should dismiss with prejudice.

## **PLAINTIFFS' NEW ALLEGATIONS**

### A.   **Garza's Incorporation of GAW Miners and ZenMiner**

The Amended Complaint acknowledges that Garza, not Fraser, incorporated defendants GAW Miners and ZenMiner as Delaware limited liability companies with offices in Connecticut. (Am. Compl. ¶¶ 19 & 20.) Plaintiffs admit that Garza, not Fraser, acted as the CEO and "Managing Member" of the Companies and was the person who "direct[ed] their strategy, their financial decisions, and had control over their day-to-day operations." (*Id.* ¶ 32.)

In the Original Complaint, which ties Plaintiffs' hands, Plaintiffs alleged that Fraser was only a minority owner of the Companies, holding a 41% share. (Orig. Compl. ¶ 38.) Plaintiffs now try to suggest that a purported "arrangement" between Garza and Fraser provided for 50-50 ownership of entities they created, which "ultimately applied to" the Companies. (Am. Compl. ¶ 38.) Yet Plaintiffs' new allegations do not support the suggestion that Fraser owned half of the

3

Companies; rather, they show that <u>Garza</u> was the majority owner of ZenMiner (Orig. Compl. ¶ 20), Fraser owned only 41% of the equity in GAW Miners, and 18% of GAW Miners' stock was reserved for additional investors. (Am. Compl. ¶¶ 19 & 48.) The Amended Complaint does not change the conclusion that Fraser was what he was — a minority investor.

### B. Fraser's Investments in the Companies

Fraser's minority stake in the Companies took the form of an initial investment of $135,000, and additional funding requested by Garza, either in the form of loans to the Companies or payment of a salary to Garza. (Am. Compl. ¶¶ 37, 40 & 47.) When Garza requested additional funding, Fraser sometimes requested information before. (*Id.* ¶ 40.) Plaintiffs do not allege (because they cannot), however, that Fraser received in return for his financial support any "control" powers — such as voting rights or the enactment or changing of policies, directions or actions by or within the Companies. Furthermore, Plaintiffs do not allege that Fraser's stake ever exceeded 41%.

Plaintiffs also do not allege (because they cannot) that Fraser held any official position with the Companies. Although they now contend that Fraser functioned as a "de facto 'Board'" (*id.* ¶¶ 46 & 197), they do not allege that Fraser undertook any actions or tasks typically expected of a board of directors or that he exercised any authority or directed Garza or the Companies to take any actions. At most, they allege that Fraser made occasional recommendations and suggestions — <u>which Garza largely ignored</u> — the opposite of a "control" person. For example, Fraser is alleged to have recommended charging "both the buyer and seller commission" (*id.* ¶ 45), to have "cautioned Garza not to forget 'to look into our exchange rate "risk,"'" (*id.* ¶ 50), to have "suggested that GAW Miners sell on Amazon.com" and "sell hosted machines" (*id.* ¶¶ 50, 85 & 96), and to have mentioned that Garza "might want to get infront [sic] of [competitors], not sure how…." (*id.* ¶ 52). Plaintiffs nowhere allege that Garza or the Companies implemented or

4

took any action based on any of these purported recommendations, none of which amounts to "control." Fraser is also alleged to have inquired into Garza's intent to buy out one of GAW Miners' competitors, but Plaintiffs do not allege that Garza or the Companies took any action as a result. (*Id.* ¶ 50.)

### C. Fraser's Access to Information

Plaintiffs continue to allege that Fraser had access to records and information about the Companies, pointing to Garza's granting Fraser access to the administrative page of gawminers.com (*id.* ¶ 70), Fraser's June 2014 comment, "Looks like a better sales day" (*id.* ¶ 63), and other information Garza allegedly provided to Fraser (*id.* ¶¶ 66-69). However, Plaintiffs nowhere allege (because they cannot) that Fraser undertook any controlling action at the Companies as a result of this information.

### D. Plaintiffs' Claims Against Fraser

In the Amended Complaint, Plaintiffs continue to allege claims against Fraser pursuant to Section 20(a) of the Securities Exchange Act of 1934, Section 36b-29(c) of the Connecticut Uniform Securities Act and aiding and abetting common law fraud under Connecticut law. Plaintiffs have also added a putative aiding and abetting claim under Connecticut law against Fraser (C.G.S. § 36b-29(a)(2)). (Count IV, Am Compl. ¶¶ 187-91.) As detailed below and in the First Motion to Dismiss, none of these claims can survive Fraser's motion to dismiss.

### ARGUMENT

Plaintiffs' new allegations fail to correct the defects in their Original Complaint because the Amended Complaint does not allege, with sufficient particularity, facts from which it could be plausibly inferred both that Fraser (i) controlled a primary violator — here, Garza and the Companies, and (ii) culpably participated in the alleged fraud. (Section I, *infra*.; *see also* First Motion to Dismiss Section II.) Plaintiffs' original state law claims suffer similarly fatal defects,

5

as further described in Sections III and IV of the First Motion to Dismiss.  Plaintiffs also fail to state a claim pursuant to Connecticut Uniform Securities Act Section 36b-29(a)(2) because they have not alleged with sufficient particularity that Fraser made an untrue statement to them. (Section II, *infra*.)

## I.  THE AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER SECTION 20(a)

Plaintiffs' new allegations continue to fall short of pleading two essential requirements of control person liability:  (i) Fraser's control over Garza and the Companies, and (ii) Fraser's culpable participation in Garza's and the Companies' fraud.

### A.  Plaintiffs Fail to Plead That Fraser Controlled Garza or The Companies.

The Amended Complaint continues to rely on the theory, which Fraser debunked in his First Motion to Dismiss (*see* Section II.A), that Fraser should be liable because he held an investment in the Companies and had a business relationship and personal friendship with Garza. (Am. Compl. ¶ 175.)  Despite attributing some new allegations to Garza, Plaintiffs remain unable to plead a plausible inference that Fraser controlled Garza and the Companies:  Plaintiffs fail to allege — as the law requires — that Garza or the Companies undertook any policy, procedure or method of operation that Fraser directed or controlled.  *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) (a defendant must be shown to "have actual control over the transaction in question" for Section 20(a) liability).

Rather, Plaintiffs' new allegations, pertaining to Fraser, even taken in their most favorable light, fall into one of five categories:  (1) Fraser held a <u>minority investment</u> in the Companies (*see* Am. Compl. ¶¶ 48 & 49), (2) Fraser offered occasional <u>suggestions</u> to Garza regarding the Companies (*see id.* ¶¶ 2, 45, 50, 52, 54, 56-57, 59, 62, 85, 86, 96 & 145), (3) Fraser had <u>access to</u> or received information regarding the Companies' business (*see id.* ¶¶ 12, 63, 66-

6

70, 91-93, 102, 110, 126, 128, 145-46 & 148), (4) Fraser and Garza were business associates and friends (*see id.* ¶¶ 33-35, 39-44 & 58), and (5) conclusory allegations pertaining to Garza and the Companies, into which Plaintiffs conveniently lump Fraser (*see id.* ¶¶ 12, 18, 47, 49, 59, 73, 135, 158, 176 & 206). None of these, whether separate or combined, gives rise to a sufficient inference of control.

### 1. Fraser's status as a minority investor does not establish control.

Plaintiffs allude to a 50-50 "arrangement" between Garza and Fraser for the allocation of their ownership interests in "prospective[]" new entities they might create (Am. Compl. ¶ 38), but ultimately do not allege that Fraser actually held more than a 41% stake in the Companies. (*See id*. ¶¶ 48 & 49.) Plaintiffs cannot avoid the facts that Fraser's stake made him only a minority investor, and that he held no official title or position within the Companies.

Unable to allege that Fraser held any position in the Companies' governing structure or board of directors, Plaintiffs now suggest that Fraser functioned as the Companies' "de facto 'Board.'" (*Id.* ¶¶ 46 & 197.) Yet, glaringly absent is any allegation that this "de facto 'Board'" made any decisions or directed any policies or operation of the Companies, let alone that Fraser undertook any actions expected of a director or assumed any of a director's responsibilities or obligations. *See In re Alstom*, 406 F. Supp. 2d at 487 (recognizing that "officer or director status alone does not constitute control for the purposes of Section 20(a) liability").

As further discussed in Fraser's First Motion to Dismiss (*see* Section II.A.i), Fraser's status as a minority shareholder is not sufficient to establish control for Section 20(a) liability because the allegations otherwise fail to show that he possessed the "formal ability" to control the Companies. *Kuhns v. Ledger*, No. 15 CIV. 3246 NRB, 2016 WL 4705160, at *6 (S.D.N.Y. Aug. 24, 2016) (plaintiff failed to plead actual control where largest minority shareholder, who

7

could exercise "considerable sway" over the primary violator, lacked "the formal ability to control a company, and a minority equity stake is insufficient to demonstrate actual control.")

### 2. Fraser's suggestions to Garza do not establish control.

Plaintiffs allege that Fraser occasionally offered suggestions or ideas to Garza. (*See* Am. Compl. ¶¶ 45, 50, 52, 56, 59, 62, 85, 86, 96 & 145.) For example, they allege that Fraser "proposed the Hashlet concept" to Garza through text messages in May 2014. (*Id*. ¶¶ 85 & 96). As with their Original Complaint, however, what Plaintiffs do not allege matters more. In this example, Fraser's involvement starts and ends with an inchoate business idea: he is not alleged to have participated in designing or engineering Hashlets, or to have demanded or directed Garza to market and sell them. And even if he did, that is not control. As with every other example Plaintiffs highlight, Garza — not Fraser — was the ultimate decision-maker, actor and authority on the Companies, their products and their marketing.

Plaintiffs' other examples similarly fall short. Fraser is alleged to have "participated in negotiations with third parties on GAW Miners' behalf," but Plaintiffs do not allege that Fraser entered into any transaction or agreement or undertook any obligations on behalf of Garza or the Companies with any party, including those with whom he purportedly negotiated. (*Id*. ¶ 51.) Plaintiffs mention an exchange between Garza and Fraser regarding Garza's intent to purchase a domain name for $1.5 million, with which Fraser disagreed but recognized that Garza would "[d]o what [he] want[ed]." (*Id*. ¶ 74.) Despite introducing this exchange as an example of "Fraser's ability to control Garza," it actually shows the opposite: Garza acted unilaterally, regardless of Fraser's opinion. Furthermore, Plaintiffs do not allege that Garza completed the purchase, let alone that he did so at Fraser's direction. (*Id*.) *See In re Alstom*, 406 F. Supp. 2d at 487 (defendant must "have actual control over the transaction in question") (internal citation omitted).

Plaintiffs allege that Fraser "urged" Garza to involve Fraser's adult son in ZenMiner and "proposed" to Garza that his son be associated with the Company. (Am. Compl. ¶ 85.) However, Plaintiffs allege that Garza is the one who "convinced" Fraser's son "to pretend that ZenMiner was his company and idea" and that Garza "expected that [a reporter interviewing Garza and Fraser's son] would publish a story containing" misrepresentations that ZenMiner and GAW Miners were separate. (*Id.* ¶ 84.) Although Plaintiffs would have the Court read Fraser's son's involvement with ZenMiner as something nefarious or controlling (*id.* ¶ 85), Plaintiffs are betrayed by their own allegations. Even assuming Plaintiffs' allegation that Fraser exercised influence on his son becoming "CEO" at ZenMiner, Plaintiffs do not allege any governing structure of the Companies, nor do they explain that his son's supposed role resulted in Fraser directing or controlling any management, policy or operation at ZenMiner. *In re BioScrip Inc., Sec. Litig.*, 95 F. Supp. 3d 711, 740 (S.D.N.Y. 2015) ("Substantial influence is not the same as actual control.").

Plaintiffs also try to suggest that Fraser's relationship with non-party Cantor Fitzgerald gave him control. (Am. Compl. ¶¶ 37, 55-57, 59 & 61.)[3] Once again, Plaintiffs never once allege (because they cannot) that, as a result of Fraser, Cantor actually provided any resources to the Companies, invested in the Companies or took any action to support the Companies' endeavors. And even if it did, that is in no way tantamount to control.[4] As described in the First Motion to Dismiss (Section II.A.i), that Fraser may have had some ability to influence Garza is

---

3. While Plaintiffs speculate "on information and belief" about Fraser's efforts to approach Cantor to invest in the Companies (*Id.* ¶¶ 56-57), Plaintiffs nowhere allege that these efforts led to any concrete investment that Fraser controlled, and thus deserve no credence. *Ferrari v. U.S. Equities Corp.*, 2014 WL 5144736, at *2 (D. Conn. Oct. 14, 2014) (dismissing complaint while recognizing that Rule 8(a) requires "allegations sufficient to raise an entitlement to relief above the speculative level") (quotation omitted); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level.").

4. Plaintiffs concede that Cantor declined to make any investment in the Companies. (Am. Compl. ¶ 57.)

9

not the same as having the power to direct Garza or the Companies' operation, management or policies. *See In re BioScrip*, 95 F. Supp. 3d at 740.

Instead of supporting a plausible inference of control, Plaintiffs' allegations show that, regardless of the suggestions and proposals Fraser might have offered, it was Garza who acted as the CEO and "Managing Member" of the Companies and the person who "direct[ed] their strategy, their financial decisions, and had control over their day-to-day operations." (Am. Compl. ¶ 32.) *In re Blech Sec. Litig.*, 961 F. Supp. 569, 586 (S.D.N.Y. 1997) ("Actual control is essential to control person liability"). To the extent that Garza might have occasionally agreed with, accepted or implemented one of Fraser's ideas, this amounts, at most, to having some "sway" that does not "rise to the level of actual control." *See In re BioScrip*, 95 F. Supp. 3d at 740.[5] In short, Plaintiffs fail to make a single allegation demonstrating that Fraser actually possessed the ability to direct the actions of Garza or the Companies.

### 3. Fraser's access to information about the Companies does not establish control.

The Amended Complaint continues to suggest that, because Fraser "had access to company records" (Am. Compl. ¶¶ 63 & 102), and Garza filtered and provided other information to Fraser (*id.* ¶¶ 66, 91, 92, 126, 128, 146 & 148), this supports a finding of control. But access does not equal control. As further discussed in the First Motion to Dismiss (*see* Section II.A.ii), Plaintiffs do not allege that Fraser made any decisions, took any actions to manage or direct Garza or the Companies, or set any policies for the Companies based on any information to which he may have had access. *See In re Homestore.com, Inc. Sec. Litig.*, 347 F. Supp. 2d 790,

---

5. The only decision in which Fraser is alleged to have had a role was the "acquisition" of ZenMiner by GAW Miners; even this decision is one that Garza and Fraser are alleged to have made "jointly." (Am. Compl. ¶ 88.)

10

810 (C.D. Cal. 2004), *order clarified on other grounds*, 347 F. Supp. 2d 811 (C.D. Cal. 2004) (ordinary-course access to financial records did not imply control).

### 4. Fraser's personal relationship and other business dealings with Garza do not demonstrate control.

Fraser's personal relationship and prior unrelated business dealings with Garza (*see* Am. Compl. ¶¶ 33-35, 39-44 & 58) have no bearing on the amount of control, if any, that he is alleged to have exerted over Garza and the Companies with respect to the virtual currency business. (*See* First Motion to Dismiss Section II.A.iii.)  *In re Flag Telecom Hldgs., Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458 (S.D.N.Y. 2005) (a "plaintiff must allege that the defendant had actual control over the primary violator" for Section 20(a) liability), *abrogated on other grounds*, 574 F.3d 29 (2d Cir. 2009); *Ross v. Bolton*, No. 83 Civ. 8244 (WK), 1989 WL 80428, at *3 (S.D.N.Y. Apr. 4, 1989) ("a defendant must possess 'actual control over the transactions in question'") (citation omitted), *aff'd on other grounds*, 904 F.2d 819 (2d Cir. 1990).

### 5. Plaintiffs' conclusory group pleading allegations are insufficient.

Plaintiffs plead that Garza, the CEO and Managing Member of the Companies, "direct[ed] their strategy, their financial decisions, and had control over their day-to-day operations," (Am. Compl. ¶ 32), but then add conclusory allegations that Fraser had control over the Companies and Garza (*see, e.g., id.* ¶ 19).  But Garza's actions and control over the Companies, as pled by Plaintiffs, do not and cannot confer control status onto Fraser.  These conclusory allegations continue to be of the kind that courts routinely reject as insufficient to state a federal securities claim.[6]  *See Kuhns*, 2016 WL 4705160, at *6, n.3 (conclusory

---

6. *See, e.g.*, Am. Compl. ¶¶ 18 ("Fraser had the ability and power to direct Garza's decisions with respect to" the Companies), 47 ("Fraser's provision of capital and financing to [the Companies] gave Fraser the ability to direct the management and policies of [the Companies], and gave Fraser the ability and power to direct Garza's decisions with respect to [the Companies]."); *see also id.* ¶¶ 49, 59, 73, 135, 158, 176 & 206.

allegations are "'are not entitled to the assumption of truth'") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). (*See* First Motion to Dismiss Section II.A.iv.) Plaintiffs' continued attempt to combine multiple conclusory allegations likewise does not lead to a plausible inference that Fraser actually controlled Garza or the Companies.

### B. Plaintiffs Fail to Allege that Fraser Culpably Participated in The Alleged Primary Violation.

Plaintiffs' Amended Complaint similarly fails to satisfy the heightened standards that require the pleading of culpable participation "at a level approximating recklessness in the section 10(b) context." *In re ShengdaTech*, No. 11 Civ. 1918 (LGS), 2014 WL 3928606, at *10 & n.1 (S.D.N.Y. Aug. 12, 2014); *see In re Lihua Intl., Inc. Sec. Litig.*, No. 14-CV-5037 (RA), 2016 WL 1312104, at *14 (S.D.N.Y. March 31, 2016) (plaintiffs pleading recklessness must plead scienter "approximating actual intent, and not merely a heightened form of negligence") (quotation omitted). The only new allegations purporting to address Fraser's state of mind assert that he "knew about or recklessly disregarded" Garza's and the Companies' statements regarding the Companies' investment products, that Fraser and Garza "regularly discussed and made joint decisions concerning the [C]ompanies' management and policies," that the idea for ZenMiner originated with Fraser, and that Fraser "personally orchestrated other aspects" of the alleged fraud. (*See, e.g.*, Am. Compl. ¶¶ 12, 63, 66, 70, 74, 85-86, 88, 91-93, 96, 102, 126, 128, 135, 145, 147 & 158.)

As shown in Fraser's First Motion to Dismiss, none of Plaintiffs' allegations gives rise to a strong inference of culpable participation by Fraser. First, that Fraser allegedly had access to information that could have alerted him to Garza's fraud is not sufficient to demonstrate Fraser had intentions of any kind, let alone the intent to deceive. *See In re Lihua Intl*, 2016 WL 1312104. (*See* First Motion to Dismiss Section II.B.)

12

Second, the allegations surrounding "joint" decisions in which Fraser participated (*see* Am. Compl. ¶¶ 12 & 88) lack the "detailed allegations" of Fraser's state of mind that are required to state a Section 20(a) claim. *See Rich v. Maidstone Fin., Inc.*, No. 98 Civ. 2569 (DAB), 2002 WL 31867724, at *12 (S.D.N.Y. Dec. 20, 2002) (dismissing complaint "in the absence of particularized facts" to allege culpable participation). Although Plaintiffs allege that Fraser and Garza made the joint decision "for GAW Miners to 'acquire' ZenMiner'" (Am. Compl. ¶ 88), they do not allege when or how this decision was made, what form this decision took, or whether Fraser made any statements or took any action as a result. Nothing in this "joint decision" alleges with the required specificity that Fraser acted with the intent to deceive. *In re Glob. Crossing, Ltd. Sec. Litig.*, No. 02 Civ. 910 (GEL), 2005 WL 1907005, at *12 (S.D.N.Y. Aug. 8, 2005) (dismissing Section 20(a) claim against minority shareholder); *see also*, 2002 WL 31867724, at *12 (dismissing Section 20(a) claim for failure to allege culpable participation where the "complaint contain[ed] no detailed allegations regarding the state of mind of the 'control person'").

Third, Plaintiffs allege that Fraser "helped Garza develop the ZenMiner business model," including "propos[ing]" Hashlets. (Am. Compl. ¶¶ 85 & 96). That Fraser assisted in a business idea that Garza and the Companies then developed and implemented, in a way controlled only by them, is also not indicative of his fraudulent intentions. *Rich*, 2002 WL 31867724, at *12.

Plaintiffs' failure to allege particularized facts demonstrating a strong inference of scienter against Fraser that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent" is fatal to their claim. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). The more compelling inference arising from Fraser's conduct, as alleged in the Amended Complaint, continues to be that he wanted the virtual currency business — in

13

which he was a minority investor — to succeed and believed that goal would be accomplished through legitimate means.  (*See*, *e.g.*, Am. Compl. ¶¶ 56 (Fraser expressing his belief that GAW Miners was "totally above board" and that they need "to make sure we're set up right before it gets too crazy!"), 148 (in response to a promotional video about Paycoin, Fraser wrote "very cool. [I]t just has to work that way.").)  For the reasons described above and in the First Motion to Dismiss, Plaintiffs' allegations fail to demonstrate that Fraser culpably participated as a control person in the alleged fraud.

## II. THE AMENDED COMPLAINT FAILS TO PLEAD FACTS WITH SUFFICIENT PARTICULARITY TO ESTABLISH LIABILITY UNDER CONNECTICUT UNIFORM SECURITIES ACT SECTION 36b-29(a)(2)[7]

Section 36b-29(a)(2) of the Connecticut Uniform Securities Act creates a cause of action for buyers against:

> Any person who . . . [1] offers or sells or materially assists any person who offers or sells a security [2] by means of any untrue statement of a material fact or any omission to state a material fact . . . [3] who knew or in the exercise of reasonable care should have known of the untruth or omission, [4] the buyer not knowing the untruth or omission . . . .

C.G.S. § 36b-29(a); *see Pearsall Holdings, LP v. Mountain High Funding, LLC*, No. 3:13cv437 (JBA), 2014 WL 7270334, at *6 (D. Conn. Dec. 18, 2014).  Assistance is considered "material" "if it has a natural tendency to influence, or was capable of influencing, the decision of the purchaser."  *Pearsall Holdings*, 2014 WL 7270334, at *6 (internal quotations omitted).

Here, Plaintiffs fail to plead <u>any</u> untrue statement or omission that Fraser made to them or others, let alone with particularity sufficient to satisfy the heightened standards required by

---

7. As shown in the First Motion to Dismiss, the Amended Complaint also fails to plead facts with sufficient particularity to establish liability under Connecticut Uniform Securities Act Section 36b-29(c) (*see* § III) and fails to plead the elements of aiding and abetting Connecticut common law fraud (*see* § IV).  As set forth in the First Motion to Dismiss (n.9), if Plaintiffs' federal securities claim against Fraser (Count II) is dismissed, the Court may decline to exercise supplemental jurisdiction over the remaining state law claims (Counts IV, VI and VIII) and dismiss them on that ground.  *See* 28 U.S.C. § 1367(c)(3).

14

Federal Rule of Civil Procedure 9(b).  *Id*. at *3 (noting that Rule 9(b) applies to claims under Section 36b-29(a)) (collecting cases); *see* C.G.S. § 36b-29(a).  Courts applying this statute consider statements made by the defendant himself, not the statements of others whom the defendant may have materially assisted.  *See Pearsall Holdings*, 2014 WL 7270334, at *8 (considering statements made by the defendant herself); *FIH, LLC v. Foundation Capital Partners LLC*, 176 F. Supp. 3d 52, 94 (D. Conn. 2016) (considering statements made by group of which defendant was a member).  Accordingly, statements made by Garza do not provide a basis for Fraser's liability.  (*See* Am. Compl. ¶¶ 187-91.)  Because none of the specific statements attributed to Fraser is alleged to be false or misleading, Plaintiffs failed to state a claim under this provision.

**CONCLUSION**

Plaintiffs cannot "wish away" their original allegations that Garza masterminded the alleged fraud, nor can they now plausibly allege that Fraser — like some modern-day Svengali — controlled Garza and the Companies and culpably participated in their alleged fraudulent scheme.  For the foregoing reasons and those set forth in the First Motion to Dismiss, Fraser respectfully requests that the Court dismiss with prejudice the Amended Complaint as against him.

Dated:  December 6, 2016

HUGHES HUBBARD & REED LLP

By: s/ Sarah L. Cave
Daniel H. Weiner (ct12180)
Sarah L. Cave (phv08437)
Sara E. Echenique (phv08436)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY  10004-1482
Tel.: (212) 837-6000
Fax: (212) 422-4726
Email: Sarah.cave@hugheshubbard.com

David R. Schaefer (ct04334)
Sean M. Fisher (ct23087)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT  06511
Tel.: (203) 772-2600
Fax: (203) 562-2098
Email: Sfisher@bswlaw.com

*Attorneys for Defendant Stuart A. Fraser*