UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, DEAN ALLEN SHINNERS, and JASON VARGAS, Individually and on Behalf of All Others Similarly Situated,<br><br>                         Plaintiffs,<br><br>      vs.<br><br>STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC, (d/b/a ZEN CLOUD),<br><br>                    Defendants. | Case 3:16-cv-00940<br><br>Hon. Michael P. Shea<br>Courtroom 2<br><br>ECF Case<br><br><u>CLASS ACTION</u><br><br>JANUARY 9, 2017<br><br>PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT STUART A. FRASER'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT<br><br><u>DEMAND FOR JURY TRIAL</u> |

<u>Oral Argument Requested</u>

TABLE OF CONTENTS

TABLE OF CONTENTS.....................................................................................................i

TABLE OF AUTHORITIES ...........................................................................................iii

INTRODUCTION ............................................................................................................1

FACTS ..............................................................................................................................2

ARGUMENT ....................................................................................................................4

      I.      Plaintiffs have adequately pled control person liability under Section
             20(a) of the Exchange Act. .................................................................................4

             A.     The Amended Complaint pleads numerous indicia of control
                     and easily satisfies Rule 8. ...........................................................5

             B.     Fraser's culpable participation arguments are meritless. ...........................18

                     1.     Fraser misstates the law for pleading culpable
                             participation. .................................................................19

                     2.     The Amended Complaint adequately pleads culpable
                             participation under even the most stringent standard. ..................21

                           i.     Culpable participation does not require pleading
                                       an intent to deceive. ..........................................22

                         ii.     The Amended Complaint alleges Fraser's
                                        culpable participation with particularity. ..........................23

      II.     The Court should deny the Motion to Dismiss on Plaintiffs' CUSA
             claims. ..............................................................................................................32

             A.     Fraser's argument for dismissal of Plaintiffs' C.G.S. 36b-
                     29(a)(2) claim fails because it ignores binding precedent from
                     the  Connecticut Supreme Court. ...............................................32

              B.     Fraser's argument for dismissal of Plaintiffs' C.G.S. 36b-29(c)
                      claim fails because Fraser was a partner of Garza, a de facto
                      director of the companies, and because he directly or indirectly
                     controlled Garza and the companies. ........................................33

      III.    The Court should deny Fraser's Motion to Dismiss on Plaintiffs'
             claims that Fraser aided and abetted Garza and the companies'
              common law fraud. ...........................................................................................35

i

IV.     28 U.S.C. § 1367(c)(3) does not apply because federal claims remain
        pending against the companies. ..........................................................................37

CONCLUSION........................................................................................................................37

## TABLE OF AUTHORITIES

Cases

*Acticon AG v. China N.E. Petroleum Holdings Ltd.*,
    615 F. App'x 44 (2d Cir. 2015) ................................................................. 23

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)....................................................................... 17

*Brunette v. Bristol Savings Bank*,
    1994 WL 468448 (Conn. Super. Ct. Aug. 22, 1994) ..................................... 36

*Chill v. General Elec. Co.*,
    101 F.3d 263 (2d Cir. 1996)...................................................................... 29

*CompuDyne Corp. v. Shane*,
    453 F. Supp. 2d 807 (S.D.N.Y. 2006)......................................................... 6

*Connecticut National Bank v. Giacomi*,
    699 A.2d 101 (Conn. 1997) ................................................................. 32, 33

*Dietrich v. Bauer*,
    126 F. Supp. 2d 759 (S.D.N.Y. 2001).......................................................... 6

*Drobbin v. Nicolet Instrument Corp.*,
    631 F. Supp. 860 (S.D.N.Y. 1986) ................................................... 12, 13, 14

*Duncan v. Pencer*,
    1996 WL 19043 (S.D.N.Y. Jan. 18, 1996) .................................................. 18

*Gabriel Capital, L.P. v. NatWest Fin., Inc.*,
    122 F. Supp. 2d 407 (S.D.N.Y. 2000)......................................................... 22

*Harriman v. E.I. DuPont De Nemours & Co.*,
    372 F. Supp. 101 (D. Del. 1974)................................................................ 12

*In re Alstom SA*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005)..................................................... 9, 24

*In re Bausch & Lomb, Inc. Sec. Litig.*,
    941 F. Supp. 1352 (W.D.N.Y. 1996) .............................................. 7, 8, 9, 12

*In re Bio Scrip, Inc. Sec. Litig.*,
    95 F. Supp. 3d 711 (S.D.N.Y. 2015).......................................................... 9, 11

*In re Check Point Software Technologies, Ltd. Sec. Litig.*,
    2006 WL 1116699 (S.D.N.Y. 2006).......................................................... 25

*In re Colonial Ltd Partnership Sec. Litig.*,
    854 F. Supp. 64 (D. Conn. 1994) ................................................................. 36

*In re Complete Management Inc. Sec. Litig.*,
    153 F. Supp. 2d 314 (S.D.N.Y. 2001) ............................................................ 8

*In re Flat Telecom Holdings, Ltd. Sec. Litig.*,
    352 F. Supp. 2d 429 (S.D.N.Y. 2005) ......................................................... 11

*In re Global Crossing, Ltd. Sec. Litig.*,
    2005 WL 1907005 (S.D.N.Y. Aug. 8, 2005) ................................................ 26

*In re Homestore.com, Inc. Sec. Litig.*,
    347 F. Supp. 2d 790 (C.D. Cal. 2004) ................................................... 14, 18

*In re Initial Pub. Offering Sec. Litig.*,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003) .................................................... 20, 21

*In re Lehman Bros. Mortgage-Backed Sec. Litig.*,
    650 F.3d 167 (2d Cir. 2011) ........................................................................ 12

*In re Lehman Bros. Sec. & Erisa Litig.*,
    799 F. Supp. 2d 258 (S.D.N.Y. 2011) ......................................................... 21

*In re Livent, Inc. Noteholders Sec. Litig.*,
    148 F. Supp. 2d 331 (S.D.N.Y. 2001) .............................................. 22, 28, 29

*In re Moody's Corp. Sec. Litig.*,
    599 F. Supp. 2d 493 (S.D.N.Y. 2009) ......................................................... 12

*In re Parmalat Sec. Litig.*,
    375 F. Supp. 2d 278, 308 (S.D.N.Y. 2005) ............................................ 19, 21

*In re Parmalat Sec. Litig.*,
    594 F. Supp. 2d 444 (S.D.N.Y. 2009) ....................................................... 6, 17

*In re ShengdaTech, Inc. Sec. Litig.*,
    2014 WL 3928606, at *10 (S.D.N.Y. Aug. 12 2014) .................................... 23

*In re SmarTalk Teleservices, Inc. Sec. Litig.*,
    124 F. Supp. 2d 527 (S.D. Ohio 2000) .......................................................... 8

*In re Solucorp Industries, Ltd. Sec. Litig.*,
    2000 WL 1708186 (S.D.N.Y. Nov. 15 2000) ........................................... 18, 30

*In re Tronx, Inc. Sec. Litig.*,
    769 F. Supp. 2d 202 (S.D.N.Y. 2011) ........................................................... 6

*In re WorldCom, Inc. Sec. Litig.*,
    294 F. Supp. 2d 392 (S.D.N.Y. 2003) ........................................................... 21

*In re: EZCorp, Inc. Sec. Litig.*,
    181 F. Supp. 3d 197 (S.D.N.Y. 2016) ................................................... passim

*Kalnit v Eichler*,
    264 F.3d 131 (2d Cir. 2001) ........................................................................ 23

*Kuhns v. Ledger*,
    2016 WL 4705160 (S.D.N.Y. Aug. 24, 2016) ........................................... 9, 11

*Mecca v. Gibraltar Corp. of America*,
    746 F. Supp. 338 (S.D.N.Y. 1990) .............................................................. 15

*Patriot Exploration, LLC v. SandRidge Energy, Inc.*,
    951 F. Supp. 2d 331 (D. Conn. 2013) ..................................................... passim

*Pearsall Holdings, LP v. Mountain High Funding, LLC*,
    2014 WL 7270334 (D. Conn. Dec. 18, 2014) ............................................... 33

*Poptech L.P. v. Stewardship Credit Arbitrage Fund, LLC*,
    792 F. Supp. 2d 328 (D. Conn. 2011) ............................................. 5, 6, 21, 22

*Rich v. Maidstone Financial, Inc.*,
    2002 WL 31867724 (S.D.N.Y. Dec. 20, 2002) ............................................ 25

*Rochez Brothers, Inc. v. Rhoades*,
    527 F.2d 880 (3d Cir. 1975) ........................................................................ 12

*Ross v. Bolton*,
    1989 WL 80428 (S.D.N.Y. 1989) ................................................................ 11

*Ruskin v. TIG Holdings, Inc., Sec. Litig.*,
    2000 WL 1154278 (S.D.N.Y. Aug. 14, 2000) ............................................. 22

*S.E.C. v. First Jersey Sec., Inc.*,
    101 F.3d 1450 (2d Cir. 1996) ...................................................................... 20

*Salit v. Stanley Works*,
    802 F. Supp. 728 (D. Conn. 1992) .......................................................... 12, 21

*SEC v. Franklin Atlas Corp.*,
    154 F. Supp. 395 (S.D.N.Y. 1957) .............................................................. 13

*Silsby v. Icahn*,
    17 F. Supp. 3d 348 (S.D.N.Y. 2014) .............................................................. 9

*Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*,
     33 F. Supp. 3d 401 (S.D.N.Y. 2014)............................................................ 5, 22

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
     250 F.3d 87 (2d Cir. 2001)...................................................................... 20, 24

*Szulik v. Tagliaferri*,
     966 F. Supp. 2d 339 (S.D.N.Y. 2013)............................................................ 8

*Terra Resources I v. Burgin*,
     664 F. Supp. 82 (S.D.N.Y. 1987) ................................................................ 21

*United States v. Wolfson*,
     405 F.2d 779 (2d. Cir. 1968)................................................................ 15, 16

Statutes

15 U.S.C. § 335 ........................................................................................... 21

15 U.S.C. § 78t ........................................................................................... 19

28 U.S.C. § 1367(c)(3)................................................................................. 37

C.G.S. 36b-29(a)(2) ................................................................................ 32, 33

C.G.S. 36b-29(c) ............................................................................... 33, 34, 35

Regulations

17 C.F.R. § 240.12b-2............................................................................... 6, 13

<u>INTRODUCTION</u>

In his Motion to Dismiss the First Amended Complaint (the "Motion to Dismiss"), Defendant Stuart Fraser mischaracterizes and ignores the Amended Complaint's most important allegations. For example, Fraser characterizes himself as a mere minority investor even though the Amended Complaint alleges that Garza and Fraser were 50-50 partners. Fraser fails to address allegations concerning a specific meeting where Joshua Garza told Fraser about GAW Miners' fraudulent scheme, and his knowing participation in that scheme. Fraser minimizes and downplays allegations concerning his decision to claim that his son was the "CEO" of ZenMiner even though Fraser knew his son had nothing to do with the ZenMiner's business. Fraser ignores allegations concerning his direct and knowing participation in GAW Miners' fake acquisition of ZenMiner. As Fraser acknowledges in the Motion to Dismiss, the Amended Complaint alleges that Fraser "personally orchestrated" several aspects of the companies' fraud. That is enough to survive the Motion to Dismiss.

Fraser misreads the law too. Fraser would have the Court believe that control person status can exist only when a person possesses *de jure* control over an entity. Not so. The inquiry is functional, not formal. Courts construe control broadly precisely so that individuals like Fraser—the proverbial "man behind the curtain"—cannot escape responsibility by maintaining a degree of formal separation from the primary fraudsters while exerting control over them and reaping the rewards of their fraud. As Fraser admits, the Amended Complaint alleges his direct involvement in the various frauds perpetrated by Garza and the companies, which more than satisfies the culpable participation element, no matter how it is construed.

Fraser mischaracterizes the new allegations in the Amended Complaint. He claims that the Amended Complaint shifts blame from Garza to Fraser, and that Plaintiffs have contradicted themselves. That could not be further from the truth. Plaintiffs continue to maintain that Fraser

controlled Garza, GAW Miners, and ZenMiner (the "companies"). To the extent the Amended Complaint now alleges greater involvement by Fraser, it does so because Plaintiffs learned new facts about Fraser's role at the companies. Fraser's fire-and-brimstone depiction of Plaintiffs' efforts to obtain information about Fraser's role at the companies and his relationship with Garza as a "deal with the devil" and an "unholy alliance" is ironic given Fraser's ten-year friendship and numerous "deals" with the very same "devil." Fraser's Motion to Dismiss lacks merit. Plaintiffs respectfully request that the Court deny it.

FACTS

Fraser—a Wall Street mogul and Vice-Chairman of prominent investment bank Cantor Fitzgerald—first befriended Garza more than ten years ago.[1] At the time, Garza was still a high schooler.[2] The two quickly became close friends, and Garza looked to Fraser for mentorship, business advice, financial support, and investments.[3]

The two started a variety of companies together.[4] In 2013, Garza and Fraser agreed that they would be 50-50 owners in the companies they started or would start.[5] They shared an informal understanding that Garza would take responsibility for their companies as "CEO," while Fraser would act as a *de facto* "Board."[6] In that role, Fraser had the ability to control Garza and the companies.[7]

In 2015, Garza and Fraser co-founded GAW Miners and ZenMiner.[8] As Garza's partner, he owned half the equity in the companies.[9] Hardly a silent investor, Fraser served in a variety of

---

[1] Amended Complaint (Dkt. 57) at ¶ 33.
[2] Amended Complaint (Dkt. 57) at ¶ 33.
[3] Amended Complaint (Dkt. 57) at ¶¶ 39–42.
[4] Amended Complaint (Dkt. 57) at ¶¶ 34–37.
[5] Amended Complaint (Dkt. 57) at ¶¶ 37–38.
[6] Amended Complaint (Dkt. 57) at ¶ 34.
[7] Amended Complaint (Dkt. 57) at ¶¶ 34, 38, 48–49.
[8] Amended Complaint (Dkt. 57) at ¶¶ 32, 46, 49, 60, 62, 75.

2

roles at the companies. He provided an important and ready source of financing to the companies. He provided GAW Miners' only capitalization.[10] He loaned the companies money, and let Garza and the companies use his credit cards for company business.[11]

Fraser held himself out as a face of the companies, and acted as a representative of the companies. Fraser negotiated with third parties on the companies' behalf.[12] Fraser sought investments on the companies' behalf.[13] Fraser participated in interviews concerning the companies,[14] and made representations about GAW Miners and its offerings.[15] Employees, including GAW Miners' CFO, looked to Fraser for direction concerning GAW Miners' policies.[16]

Fraser directed the companies' policies. He participated in their strategic direction of the companies.[17] He participated in the management and direction of the companies' advertising strategy.[18] Fraser had a twitter account that he used to send messages promoting GAW Miners.[19]

Fraser used his connections to Cantor Fitzgerald to further GAW Miners business. Fraser secured regulatory advice from Cantor employees Jim Ficarro and Gary Distell.[20] Fraser used Cantor "personnel to respond to media inquiries about GAW Miners, to provide administrative

---

[9] Amended Complaint (Dkt. 57) at ¶¶ 37–38, 48–49.
[10] Amended Complaint (Dkt. 57) at ¶¶ 47, 72.
[11] Amended Complaint (Dkt. 57) at ¶¶ 47, 72.
[12] Amended Complaint (Dkt. 57) at ¶¶ 51, 55.
[13] Amended Complaint (Dkt. 57) at ¶¶ 57.
[14] Amended Complaint (Dkt. 57) at ¶ 53.
[15] Amended Complaint (Dkt. 57) at ¶ 60.
[16] Amended Complaint (Dkt. 57) at ¶¶ 66, 69.
[17] Amended Complaint (Dkt. 57) at ¶ 50.
[18] Amended Complaint (Dkt. 57) at ¶ 52.
[19] Amended Complaint (Dkt. 57) at ¶ 54. Plaintiffs made this allegation "on information and belief" because, while they know a user purporting to be Fraser made a series of tweets promoting GAW Miners, they have been unable to confirm the user was Fraser.
[20] Amended Complaint (Dkt. 57) at ¶ 56.

support, and to handle accounting or legal issues related to GAW Miners."[21] The companies and Garza referred to their association with Cantor in communications with third parties.[22] The association with Cantor proved valuable to GAW Miners because it brought a measure of legitimacy that the companies would otherwise lack.[23] For example, claims that "banks and investment firms were standing in line to support Paycoin and were financially backing it" had more credence because of Fraser's public association with GAW Miners.[24]

As Fraser acknowledges in the Motion to Dismiss, the Amended Complaint alleges that Fraser "personally orchestrated" several aspects of the companies' fraud. Fraser decided to name his son the "CEO" of ZenMiner,[25] and that GAW Miners should "acquire" ZenMiner.[26] It alleges that Fraser, based at least on a meeting that took place at Fraser's home in Armonk, had full knowledge of the fraudulent Ponzi scheme: the companies' central business was selling computing power, but GAW Miners lacked the computing capacity to support its Cloud-Hosted Mining and Hashlet orders through ZenMiner.[27] And, it alleges that Fraser fully understood the details of Paycoin's business model through regular discussions with Garza, the price of Paycoin, and through the Paycoin White Paper, which provided details about Paycoin.[28]

<u>ARGUMENT</u>

I.   <u>Plaintiffs have adequately pled control person liability under Section 20(a) of the Exchange Act.</u>

"'It is well-established that, to state a claim for 'control person' liability under Section 20(a), a plaintiff must, at a minimum, plead: (1) a primary violation by the controlled person and

---

[21] Amended Complaint (Dkt. 57) at ¶ 59.
[22] Amended Complaint (Dkt. 57) at ¶ 58.
[23] Amended Complaint (Dkt. 57) at ¶ 59.
[24] Amended Complaint (Dkt. 57) at ¶ 140.
[25] Amended Complaint (Dkt. 57) at ¶¶ 85–86.
[26] Amended Complaint (Dkt. 57) at ¶¶ 87–88.
[27] Amended Complaint (Dkt. 57) at ¶¶ 91,128.
[28] Amended Complaint (Dkt. 57) at ¶¶ 144–45.

(2) control of the primary violator by the defendant.'" *In re: EZCorp, Inc. Sec. Litig.*, 181 F. Supp. 3d 197, 212 (S.D.N.Y. 2016) (quoting *Special Situations Fund III QP, L.P. v. Deloitte Touche Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 437 (S.D.N.Y. 2014)). Fraser concedes that the Amended Complaint satisfies the first element, *i.e.*, that Garza and the companies committed primary violations of the securities laws, but argues that Plaintiffs have failed to allege that he controlled Garza and the companies. Fraser is wrong.

Fraser argues that the Amended Complaint fails to adequately plead "culpable participation." While the Second Circuit has stated that "culpable participation" is an element of a § 20(a) claim, it has never explained what culpable participation means. *EZCorp*, 181 F. Supp. 3d at 212. "In that vacuum, district courts in the Second Circuit are split as to what, exactly, a 'culpable participation' allegation requires." *Id.* Unsurprisingly, Fraser urges the Court to adopt an extremely stringent interpretation of culpable participation, and fails to mention the numerous alternative approaches reached by other courts in this Circuit. Fraser's interpretation of "culpable participation" contradicts the plain language of § 20(a) and Second Circuit precedent. The Court should not adopt Fraser's interpretation; but, under any standard, the Amended Complaint is sufficient.

A.   <u>The Amended Complaint pleads numerous indicia of control and easily satisfies Rule 8.</u>

Allegations of control need only comply with Rule 8, not Rule 9(b) or the Private Securities Litigation Reform Act ("PSLRA"). *Poptech L.P. v. Stewardship Credit Arbitrage Fund, LLC*, 792 F. Supp. 2d 328, 334 (D. Conn. 2011). Plaintiffs have alleged more than enough facts to raise a reasonable expectation that discovery will reveal evidence that Fraser controlled Garza and the companies, which is all that is required at the pleading stage. *See id.* at 336 ("As to the control element, the Court is confident that Poptech has alleged sufficient facts regarding

control to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's claim."). Control means "'the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person whether through the ownership of voting securities, by contract, or otherwise." *Id.* (quoting 17 C.F.R. § 240.12b-2). "'[O]nly the ability to direct the actions of the controlled person, and not the active exercise thereof' is required to establish control." *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 456 (S.D.N.Y. 2009) (quoting *Dietrich v. Bauer*, 126 F. Supp. 2d 759, 764–65 (S.D.N.Y. 2001)). "'In the Second Circuit, the control person provisions are broadly construed as they were meant to expand the scope of liability under the securities laws." *In re Tronx, Inc. Sec. Litig.*, 769 F. Supp. 2d 202, 208 (S.D.N.Y. 2011) (quoting *CompuDyne Corp. v. Shane*, 453 F. Supp. 2d 807, 829 (S.D.N.Y. 2006)).

Due to the fact-intensive nature of the control inquiry, courts typically avoid dismissing a complaint at the pleading stage: "Because a plaintiff's allegations regarding the control element need only comply with the requirements of Rule 8(a), the factual issue of a Section 20(a) defendant's control over a primary violator is ordinarily not resolved summarily at the pleading stage, and is more appropriately resolved after the parties have had an opportunity to engage in discovery." *Id.* at 335; *see also Patriot Exploration, LLC v. SandRidge Energy, Inc.*, 951 F. Supp. 2d 331, 362 (D. Conn. 2013) ("'Whether a person is a 'controlling person' is a fact-intensive inquiry, and generally should not be resolved on a motion to dismiss.'" (quoting *CompuDyne*, 453 F. Supp. at 829)).

The Amended Complaint alleges numerous indicia of control, including:

- Fraser and Garza co-founded the companies.[29]

---

[29] Amended Complaint (Dkt. 57) at ¶¶ 60–61, 75.

- Fraser and Garza were equal partners that each owned half of the companies.[30]

- Fraser provided GAW Miners' only capitalization, loaned $600,000 to the companies, and let Garza and the companies use his credit cards.[31]

- Fraser acted as a *de facto* board of directors for the companies.[32]

- Fraser negotiated on behalf of GAW Miners with third parties, and sought investments on behalf of GAW Miners.[33]

- GAW Miners' CFO looked to Fraser for "direction" concerning topics such as GAW Miners' financial controls.[34]

- Fraser participated in the management of GAW Miners operations and strategic direction.[35]

- Fraser had access to detailed, internal information about the companies.[36]

- Fraser and Garza had a close, personal relationship,[37] and Garza relied on Fraser for financial support,[38] regular investments in all of their companies,[39] and mentoring.[40]

- Fraser used resources from Cantor Fitzgerald for GAW Miners business.[41]

Taken together, these allegations more than satisfy Rule 8, especially because "[t]he burden of showing control status is not particularly onerous." *In re Bausch & Lomb, Inc. Sec. Litig.*, 941 F. Supp. 1352, 1368 (W.D.N.Y. 1996).

    First, the Amended Complaint's allegation that Fraser and Garza co-founded the companies, Fraser and Garza controlled the companies, and each owned half of the equity in the

---

[30] Amended Complaint (Dkt. 57) at ¶¶ 37, 48–49.
[31] Amended Complaint (Dkt. 57) at ¶¶ 47, 72.
[32] Amended Complaint (Dkt. 57) at ¶ 46.
[33] Amended Complaint (Dkt. 57) at ¶¶ 50, 62.
[34] Amended Complaint (Dkt. 57) at ¶ 66.
[35] Amended Complaint (Dkt. 57) at ¶ 50.
[36] Amended Complaint (Dkt. 57) at ¶¶ 63, 70, 102, 110.
[37] Amended Complaint (Dkt. 57) at ¶¶ 32–42.
[38] Amended Complaint (Dkt. 57) at ¶ 41.
[39] Amended Complaint (Dkt. 57) at ¶ 40.
[40] Amended Complaint (Dkt. 57) at ¶¶ 18, 33, 37.
[41] Amended Complaint (Dkt. 57) at ¶¶ 55, 59.

companies should be sufficient on its own.[42] As 50-50 partners, Fraser had the power to control the companies, and held just as much power to direct the management and operations of the companies as Garza. Underscoring that point, when asked by a reporter whether Fraser was "an active partner" or a "silent investor," Garza represented that Fraser was "a partner, just like me."[43]

Other courts have held that similar allegations allege control status. In *Szulik v. Tagliaferri*, 966 F. Supp. 2d 339, 369 (S.D.N.Y. 2013), the court concluded that two co-owners had control person status because they "[e]ach held a 50% interest" in the controlled entity. Fraser and Garza had the same relationship and owned the same interest in the companies as the defendants in *Szulik*. In *In re SmarTalk Teleservices, Inc. Securities Litigation*, 124 F. Supp. 2d 527, 549 (S.D. Ohio 2000), the court concluded that merely alleging that a defendant was a partner of an LLC was enough to plead control status.

Other decisions have held that significant stock ownership can indicate control. In *In re Complete Management Inc. Securities Litigation*, 153 F. Supp. 2d 314, 331 (S.D.N.Y. 2001), the court first emphasized that "The test of whether an individual is a controlling person for the purposes of § 20(a) is not a categorical one that turns solely on the individual's status as an officer or director. Rather, the inquiry is a functional one, as SEC regulations indicate." The court went on to conclude that the defendant controlled a company because he founded it and owned between 11.2% and 21% of its stock. *Id.* at 332 & n.11. Fraser co-founded the companies, and owned half of the equity in each. In *Bausch & Lomb*, 941 F. Supp. at 1368, the court looked to three defendants' ownership of "significant amounts of B & L stock during the relevant time period" as an indicator of control. While the *Bausch & Lomb* court did not state how much stock

---

[42] *See* Amended Complaint (Dkt. 57) at ¶¶ 37–38, 48–49.
[43] Amended Complaint (Dkt. 57) at ¶ 49.

each defendant held, at least two of defendants must necessarily have held less than 50% of the company's stock.

Fraser characterizes himself as a minority shareholder with no control over the companies. He cites several cases holding that a minority shareholder, without more, cannot be a control person.[44] But these cases are distinguishable precisely because they involve minority shareholders who had no alleged involvement in the scheme other than their shareholder status. Fraser was not a minority shareholder—he was Garza's partner, Fraser had significant direct control over the companies, and they each owned half of the assigned equity in the companies. The cases cited by Fraser conflict with decisions like *Complete Management* and *Bausch & Lomb* which indicate that minority ownership can indicate control. Finally, unlike the cases cited by Fraser, Plaintiffs are not relying solely on Fraser's ownership of the companies. *See Kuhns v. Ledger*, 2016 WL 4705160, at *6 (S.D.N.Y. Aug. 24, 2016) (plaintiff alleged control status based on defendant's ownership of 47% of company's stock); *In re Bio Scrip, Inc.*, 95 F. Supp. 3d 711, 740 (S.D.N.Y. 2015) (plaintiff alleged control status based solely on defendant's ownership of 26% of company's stock and ability to appoint two board members); *Silsby v. Icahn*, 17 F. Supp. 3d 348, 371 (S.D.N.Y. 2014) (plaintiff alleged control status based solely on defendant's ownership of 14.8% of company's stock and employment of two board members of company); *In re Alstom SA*, 406 F. Supp. 2d 433, 492 (S.D.N.Y. 2005) (plaintiff alleged control status based solely on defendant's ownership of 26% of company's stock). Multiple additional factors indicate that Fraser was a control person

Fraser argues that the Amended Complaint does "not allege that Fraser actually held more than a 41% stake in the Companies." But the Amended Complaint clearly alleges 50-50

---

[44] Memorandum of Law in Support of the Motion to Dismiss (Dkt. 62) at 7–8.

ownership. It alleges that Fraser and Garza's "'arrangement' providing for 50-50 ownership would apply prospectively to new companies that they created. This arrangement ultimately applied to GAW Miners and ZenMiner" and "Fraser and Garza each owned half of GAW Miners and ZenMiner."[45] It further alleges that Fraser and Garza agreed to set aside 18% of the equity in GAW Miners only, *i.e.* that no equity was ever set aside in ZenMiner, and there is no allegation that the equity in GAW Miners was ever <u>assigned</u> to anyone else, which is why Fraser and Garza were alleged to maintain half ownership in GAW Miners too.[46]

Fraser's argument that Plaintiffs' allegations in the Amended Complaint contradicted their allegations in the Original Complaint fails. In the Original Complaint, Plaintiffs alleged that Garza and Fraser "owned and controlled 41% of the equity in GAW Miners; the remaining 18% was reserved for sale to future investors."[47] Plaintiffs have since learned that Fraser and Garza had an agreement that they owned all of their companies (including GAW Miners) as 50-50 partners, but eventually agreed to set aside 18% of the equity in GAW Miners for potential investors and employees—there is no allegation that this equity had ever been assigned to anyone, so they each owned 50% notwithstanding future hypothetical plans.[48] If Garza and Fraser never owned that 18% equity in the first place, they could never have agreed to set it aside. There is no contradiction.

<u>Second</u>, the Amended Complaint states that Fraser specifically directed the companies' fraudulent activities.[49] It alleges that "Garza and Fraser made the decision that GAW Miners

---

[45] Amended Complaint (Dkt. 57) at ¶¶ 38,  48.

[46] Amended Complaint (Dkt. 57) at ¶ 48.

[47] Original Complaint (Dkt. 1) at ¶ 38.

[48] Amended Complaint (Dkt. 57) at ¶ 48.

[49] *See* Amended Complaint (Dkt. 57) at ¶ 135 ("Garza and Fraser made the decision that GAW Miners would offer and sell first Hardware- and Cloud-Hosted Mining and then Hashlets"); *id.* at

would offer and sell first Hardware- and Cloud-Hosted Mining and then Hashlets" and "Garza and Fraser made the decision that GAW Miners would offer and sell HashStakers and launch PayCoin." Fraser argues that the Court should disregard these allegations as conclusory.[50] These allegations are not legal conclusions. They are short, plain statements alleging that Fraser and Garza jointly decided that the companies would sell the products Plaintiffs have challenged as fraudulent. *Kuhns v. Ledger*, 2016 WL 4705160, at *6 n.3 (S.D.N.Y. Aug. 24, 2016), is distinguishable. There, the court disregarded an allegation that an individual was a "control shareholder," an allegation that speculated about the actions two officers took, and an allegation that speculated that the officers took certain actions because of the defendant's status as a control shareholder. The Amended Complaint simply asserts that Fraser made certain decisions regarding the companies' investment offerings. This satisfies the control element under any standard.

Third, Fraser is incorrect that his personal relationship with Garza cannot indicate control. Fraser's argument turns on general statements about the definition of "control" that have been adopted by some courts in the Southern District of New York. For example, he cites *In re Flat Telecom Holdings, Ltd. Securities Litigation*, 352 F. Supp. 2d 429, 458 (S.D.N.Y. 2005), and *Ross v. Bolton*, 1989 WL 80428 (S.D.N.Y. 1989), in the Motion to Dismiss.[51] Neither case actually addresses personal relationships as an indicator of control. Rather, Fraser cites these cases for the general proposition that a controlling person must possess "actual control" and that "substantial influence is not the same as actual control." *See Bio Scrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 740 (S.D.N.Y. 2015). Whatever "actual control" means, it is clearly alleged here:

---

158 (Garza and Fraser made the decision that GAW Miners would offer and sell HashStakers and launch Paycoin).

[50] Memorandum of Law in Support of the Motion to Dismiss (Dkt. 62) at 11–12.

[51] Memorandum of Law in Support of the Motion to Dismiss (Dkt. 62) at 11.

Garza and Fraser <u>agreed</u> that Fraser would have equal control over the companies, Fraser had control over day-to-day operations, and Fraser made decisions central to the fraud, such as falsely announcing that GAW Miners allegedly acquired ZenMiner, and that Fraser's son would be CEO of ZenMiner, and he jointly controlled which type of fraudulent instruments the companies would sell and in what order (including the decision to launch HashStakers and Paycoin).[52]

Further, many courts have adopted a more lenient definition of "control" that not even Fraser disputes is met here. These courts hold that the term "controlling person" "is construed broadly to include those with '<u>indirect means of discipline or influence short of actual direction</u>.'"[53] *Salit v. Stanley Works*, 802 F. Supp. 728, 734 (D. Conn. 1992); *see also In re Moody's Corp. Sec. Litig.*, 599 F. Supp. 2d 493, 517 (S.D.N.Y. 2009) (adopting the same definition of control as *Salit*); *Bausch & Lomb*, 941 F. Supp. at 1368 ("In determining control status, 'courts have given heavy consideration to the power or potential power to influence and control the activities of a person, as opposed to the actual exercise thereof.'" (quoting *Rochez Brothers, Inc. v. Rhoades*, 527 F.2d 880, 890 (3d Cir. 1975))). Courts following this interpretation of control find that "'indirect means of discipline or influence need not be stock ownership. It may arise from other business relationships, interlocking directors, family relationships, and a myriad of other factors.'" *Drobbin v. Nicolet Instrument Corp.*, 631 F. Supp. 860, 885 (S.D.N.Y. 1986) (quoting *Harriman v. E.I. DuPont De Nemours & Co.*, 372 F. Supp. 101, 105 (D. Del. 1974)). The Second Circuit has acknowledged this apparent split, but has failed to resolve it. *See In re Lehman Bros. Mortgage-Backed Sec. Litig.*, 650 F.3d 167, 185 & 187 n.15 (2d Cir. 2011) (adopting the § 20(a) definition of control for purposes of § 15 of the

---

[52] Amended Complaint (Dkt. 57) at ¶¶ 38, 49, 78, 86–88, 90, 135, 138.
[53] All emphasis is added unless otherwise noted.

Securities Act, but declining to decide whether "some level of 'influence' absent 'actual control'" establishes control person status in the context of § 15 and questioning whether the distinction "has meaning").

At least in the context of a claim that an individual controlled another individual, this Court should construe control as including "those with indirect means of discipline or influence short of actual direction." This Court should do so because it is impossible for an individual to possess "formal" control over another individual the way an officer or director can control an entity. The broader definition is consistent with the S.E.C.'s definition of control, which provides that control "means the possession, <u>direct or indirect</u>, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or <u>otherwise</u>." 17 C.F.R. § 240.12b-2. A close personal relationship of the type alleged in the Amended Complaint gave Fraser at least indirect power over Garza. Regardless of how control is defined, however, it is met here.

Courts in this Circuit have concluded that a personal relationship can indicate control status. For example, in *Drobbin*, 631 F. Supp. at 885, the court looked to an alleged control person's status as Couri's personal attorney and long-time friend" as an indicator of control. In *In re MTC Electronic Technologies Shareholder Litigation*, the court concluded that a defendant had controlling person status in part because of his "familial relationships with the two co-founders of" the primary violator. 898 F. Supp. 974, 984 (E.D.N.Y. 1995) *vacated in part on other grounds at* 993 F. Supp. 160 (E.D.N.Y. 1997). In *SEC v. Franklin Atlas Corp.*, 154 F. Supp. 395, 400 (S.D.N.Y. 1957), the court concluded that an individual had *de facto* control over a corporation through a relative.

13

Fraser cites *In re Homestore.com, Inc. Securities Litigation*, 347 F. Supp. 2d 790, 810 (C.D. Cal. 2004), but that case is inapposite. *Homestore.com* is a summary judgment decision involving a claim that an auditor controlled executives of its client. *Id.* at 809. But there, the only allegations were that the auditor participated in some board meetings and gave advice on how to proceed, *id.* at 810–11, a far cry from the allegations of direct control here. Further, that case did not involve a claim that an individual controlled another individual as Plaintiffs have asserted here. *See Drobbin*, 631 F. Supp. at 885 (looking to a personal relationship in the context of a claim that an individual controlled another individual).

The Amended Complaint further alleges that Fraser's relationship with Cantor Fitzgerald gave him control over Garza and the companies.[54] Specifically, the Amended Complaint alleges that Fraser used Cantor resources to provide services to GAW Miners, and Garza and the companies in turn used that association to enhance the companies' credibility, which was critical to their ability to sell their investment products.[55] Because Fraser controlled the valuable relationship, this gave him at least indirect control over the companies and Garza. Fraser argues that the Amended Complaint fails to allege that Cantor actually provided any services to the companies. That is wrong. The Amended Complaint specifically alleges that Cantor provided advice to the companies in connection with the launch of Paycoin, and answered media inquiries.[56]

Fourth, Fraser's provision of financing also indicates control. The Amended Complaint alleges that Fraser capitalized GAW Miners,[57] loaned money to the companies,[58] let Garza and

---

[54] Amended Complaint (Dkt. 57) at  ¶¶ 55–59.
[55] Amended Complaint (Dkt. 57) at ¶¶ 55–59.
[56] Amended Complaint (Dkt. 57) at ¶¶ 56, 59.
[57] Amended Complaint (Dkt. 57) at ¶ 47.
[58] Amended Complaint (Dkt. 57) at ¶¶ 47, 72.

the companies use his credit cards,[59] and kept a tight leash over Garza by withholding investment funds.[60] Fraser does not address these allegations in the Motion to Dismiss. In *Mecca v. Gibraltar Corp. of America*, 746 F. Supp. 338, 341–42 (S.D.N.Y. 1990), the court considered a motion for a judgment notwithstanding the verdict on a jury's finding of control person liability. The court concluded: "There was ample evidence of the Gibraltar defendants' influence over Contreras. Even before learning of Contreras's prebilling and unauthorized movement of equipment, Gibraltar had power over him, because Corona needed financing, and Gibraltar retained discretion as to how much financing to provide." *Id.* at 342. The Amended Complaint alleges that Fraser controlled Garza and the companies by similar means.

Fifth, Fraser's status as a *de facto* director indicates control.[61] The Amended Complaint alleges that Fraser acted as a *de facto* board of directors.[62] Consistent with Garza and Fraser's working relationship in their other companies,[63] Fraser issued directives that were carried out through Garza, and approved Garza's decisions before they were implemented.[64] Through his *de facto* position, Fraser participated in the direction of the companies. The Second Circuit concluded that an individual holding a similar role was a control person in *United States v. Wolfson*, 405 F.2d 779, 781 (2d. Cir. 1968). The defendant, Wolfson, lacked a formal position as

---

[59] Amended Complaint (Dkt. 57) at ¶ 72.
[60] Amended Complaint (Dkt. 57) at ¶ 40.
[61] Amended Complaint (Dkt. 57) at ¶ 46.
[62] Amended Complaint (Dkt. 57) at ¶ 46.
[63] Amended Complaint (Dkt. 57) at ¶ 34.
[64] Amended Complaint (Dkt. 57) at ¶ 74 (citing email in which Fraser stated he would not "rubber stamp" Garza's decisions); *id.* at ¶ 86 (alleging that Fraser's son was named CEO of ZenMiner at Fraser's direction); *id.* at ¶¶ 87–88  (alleging that Fraser and Garza jointly made the decision for GAW Miners to fraudulently purport to acquire ZenMiner); *id.* at ¶¶ 91, 128 (alleging that Fraser approved the ZenCloud interface even though Garza explained to Fraser there would be a capacity mismatch); *id.* at ¶¶ 135, 158 (alleging that Fraser and Garza jointly made decisions concerning Hardware- and Cloud-Hosted Mining, Hashlets, Paycoin, and Hashlets).

15

an officer or director. *Id.* But, the Second Circuit concluded he was a control person because he was the "largest individual shareholder and he was Continental's guiding spirit in that the officers of the corporation were subject to his direction and control and no corporate policy decisions were made without his knowledge and consent." *Id.* As the Amended Complaint alleges, Fraser occupied a similar position at the companies.[65] Garza kept Fraser fully apprised about GAW Miners' and ZenMiner's business, and the two made joint decisions about the management and policies of the companies.[66] The Amended Complaint cites an email from GAW Miners' CFO seeking direction from Fraser on issues concerning financial controls, which shows that GAW Miners employees looked to Fraser direction just like the officers looked to the "guiding spirit" in *Wolfson*.[67] It cites a text message exchange between Fraser and Garza in which Fraser refuses to "rubber stamp" a decision by Garza, which is consistent with Fraser's status as a *de facto* board.[68]

Fraser claims that the Amended Complaint fails to identify any decisions Fraser actually made.[69] That is wrong. The Amended Complaint specifically alleges that Fraser directed, approved, and participated in decisions related to offerings the companies have challenged as fraudulent.[70] It also alleges generally that Fraser took a hands-on role managing Fraser's and

---

[65] *See* Amended Complaint (Dkt. 57) at ¶¶ 34, 46.

[66] Amended Complaint (Dkt. 57) at ¶¶ 12, 63.

[67] Amended Complaint (Dkt. 57) at ¶ 66.

[68] Amended Complaint (Dkt. 57) at ¶ 74. Fraser argues that the Court should ignore this allegation because he claims Garza acted "unilaterally" over Fraser's objections. Memorandum of Law in Support of the Motion to Dismiss (Dkt. 62) at 8. But, Fraser wrote "Do what you want. Seems like a huge waste of money to me. Sorry I don't just rubber stamp everything that comes out [of] your mouth." The exchange clearly shows Fraser giving Garza permission, *i.e.*, to "do what you want," that Garza needed Fraser's permission, and that Fraser would not act as a "rubber stamp." Fraser is free to argue otherwise to the jury, but at the motion to dismiss stage, this allegation should be construed in the light most favorable to Plaintiffs.

[69] Memorandum of Law in Support of the Motion to Dismiss (Dkt. 62) at 7.

[70] Amended Complaint (Dkt. 57) at ¶¶ 86–88, 91, 128, 135, 158.

Garza's businesses,[71] and states that Fraser continued in that role at the companies.[72] Drawing reasonable inferences in favor of Plaintiffs (as is appropriate at the motion to dismiss stage), the Amended Complaint alleges that Fraser took a hands-on role managing the companies. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)) (court reviewing a Rule 12(b)(6) motion must draw "all reasonable inferences in the plaintiff's favor."). And, even if the Amended Complaint did fail to identify particular decisions Fraser made, that would be irrelevant. A control person need only have "the ability to direct the actions of the controlled person, and not the active exercise thereof." *Parmalat*, 594 F. Supp. 2d at 456.

Sixth, the Amended Complaint alleges that Fraser negotiated with third parties on the companies' behalf, sought investments from third parties on the companies' behalf, and spoke on the companies' behalf to the media.[73] Fraser argues that these allegations do not indicate control because the Amended Complaint does not allege that Fraser actually entered into any transactions on the companies' behalf. That is beside the point. These allegations show that Fraser spoke on the companies' behalf, a further indicator of his status as a controlling person.

Seventh, the Amended Complaint alleges Fraser had access to the companies' information, which can serve as an indicator of control. The Amended Complaint alleges that Fraser had access to financial records and sales information,[74] reports regarding customers and

---

[71] Amended Complaint (Dkt. 57) at ¶ 34 ("As Garza and Fraser's business ventures multiplied, Garza continued to seek advice and approval from Fraser before making decisions concerning the management and policies of their businesses. While Garza and Fraser rarely formalized their business relationships, they had an understanding that Garza would serve as CEO of their respective companies, and Fraser would serve as "the Board." Fraser and Garza frequently discussed, and Fraser frequently made decisions concerning, the day-to-day operations of their various ventures."

[72] Amended Complaint (Dkt. 57) at ¶ 46.

[73] Amended Complaint (Dkt. 57) at ¶¶ 51, 53, 55, 57, 59, 63–64.

[74] Amended Complaint (Dkt. 57) at ¶¶ 63, 70, 102.

transaction volumes,[75] and reports regarding numbers of Hashlets sold.[76] In *Duncan v. Pencer*, 1996 WL 19043, at *18 (S.D.N.Y. Jan. 18, 1996), the Court relied on "stock ownership, positions with [the controlled person], and 'access to material non-public information about the Company.'" In *In re Solucorp Industries, Ltd. Securities Litigation*, 2000 WL 1708186, at *7 (S.D.N.Y. Nov. 15 2000), the court looked to officers' and directors' "access to information regarding Solucorp's day-to-day business" as an indicator of control. Fraser cites *Homestore.com* to argue that access to information cannot indicate control. But, in that case the court held that the defendant-auditor's access to information was indicative only of the "relationship of a company and client." 347 F. Supp. 2d at 810. Unlike the auditor in *Homestore.com*, the companies did not hire Fraser as a consultant to provide services related to the information the companies provided to him. Rather, Fraser's access to information concerning the companies is consistent with his status as a *de facto* board with the power to direct the companies' actions.

Finally, the Court should consider the Amended Complaint's control allegations holistically. In his Motion to Dismiss, Fraser grouped some of the Amended Complaint's allegations into "buckets," and attacked them in isolation. That is improper. "A court must consider the total effect of the various indicia of control in combination rather than examining any one indicia in isolation." *Patriot*, 951 F. Supp. 2d at 362. Taken together, Plaintiffs' allegations are more than sufficient to satisfy Rule 8.

The Court should deny Fraser's Motion to Dismiss.

B.    Fraser's culpable participation arguments are meritless.

There is a widely recognized split among district courts in this Circuit over what is required to plead culpable participation. *See EZCorp*, 181 F. Supp. 3d at 212. While Fraser

---

[75] Amended Complaint (Dkt. 57) at ¶ 102.
[76] Amended Complaint (Dkt. 57) at ¶ 110.

18

favors the most stringent and implausible view, the Amended Complaint easily pleads culpable participation under any standard.

1.    <u>Fraser misstates the law for pleading culpable participation.</u>

The Second Circuit has explained that culpable participation is an element of a § 20(a) claim, but it has never explained what culpable participation means. *EZ Corp*, 181 F. Supp. 3d at 212. District courts disagree over the meaning of the phrase. Some believe pleading culpable participation requires a plaintiff to plead a plaintiff's state of mind. Others believe culpable participation simply refers to the level of control a control person must possess, or that a plaintiff need only prove culpable participation to rebut a defendant's statutory good-faith defense. This Court should side with the courts that hold that plaintiff does not need to plead a control person's intent.

Section 20(a) provides that:

> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable (including to the Commission in any action brought under paragraph (1) or (3) of section 78u(d) of this title), unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t. The text of § 20(a) does not mention culpable participation or condition liability on a finding of culpable participation. Rather, the statute imposes liability on a control person unless the statutory "good faith" defense applies: "In this case, the statutory language is clear upon its face. An individual who controls another is liable for the primary violation of the controlled person <u>unless</u> the controlling person acted in good faith and lack of inducement." *In re Parmalat Sec. Litig*, 375 F. Supp. 2d 278, 308 (S.D.N.Y. 2005) (emphasis in original).

Requiring a plaintiff to plead a control person's intent would negate the Second Circuit's holding that a defendant has the burden of proving the statutory good faith defense. The only

19

reference to intent in § 20(a) is the good-faith defense. The Second Circuit has explained that proving good faith is the defendant's burden: "Once the plaintiff makes out a prima facie case of § 20(a) liability, the burden shifts to the defendant to show that he acted in good faith . . . ." *S.E.C. v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996). Because the <u>defendant</u> has the burden of establishing her good faith, it would make no sense to require the <u>plaintiff</u> to plead the defendant's culpable state of mind as a part of her *prima facie* case. Requiring a plaintiff to plead the defendant's absence of good faith would contravene the Second Circuit's clear holding that the defendant has the burden of proving her good faith.

The Second Circuit has never held that pleading culpable participation requires pleading a control person's intent. *See EZCorp*, 181 F. Supp. 3d at 213 (explaining that the Second Circuit has "'never defined 'culpable participation' or equated that term with scienter.'" (quoting *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 393 (S.D.N.Y. 2003))). When the Second Circuit has applied the control person test, it has ignored the control person's intent. For example, in *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001), the Second Circuit held that an allegation that "DeRoziere was an officer of the Bank and that he had primary responsibility for the dealings of that Bank and the other corporate defendants with SAM Group" was "sufficient to plead controlling-person liability." Those allegations make no mention of intent, much less the PSLRA.

Given the lack of guidance from the Second Circuit, the fact that the text of § 20(a) contains no mention of culpable participation, and the fact that requiring a plaintiff to prove a defendant's culpable intent would effectively eviscerate the Second Circuit's holding that the defendant has the burden of proving good faith, this Court should hold that pleading culpable participation does not require pleading a defendant's intent. Instead it should hold that "[t]he

20

concept of culpable participation describes the degree of control which is sufficient to render a person liable under Section 20(a)." *In re WorldCom, Inc. Sec. Litig.*, 294 F. Supp. 2d 392, 415 (S.D.N.Y. 2003); *see also Parmalat*, 375 F. Supp. 2d at 308–310; *IPO*, 241 F. Supp. 2d at 392–97; *In re Lehman Bros. Sec. & Erisa Litig.*, 799 F. Supp. 2d 258, 307 (S.D.N.Y. 2011).

This Court previously adopted this reasoning in *Salit v. Stanley Works*, 802 F. Supp. 728, 735 (D. Conn. 1992). In *Salit*, this Court explained that because the Second Circuit has held that proving good faith is the defendant's burden, a plaintiff does not need to plead culpable participation because "'it would seem imprudent to construct a pleading requirement that demands that plaintiffs anticipate and negate an alleged controlling defendant's good faith defense by pleading detailed facts to show the controller's culpability.'" *Id.* (quoting *Terra Resources I v. Burgin*, 664 F. Supp. 82, 88 (S.D.N.Y. 1987)).[77]

Plaintiffs respectfully request that the Court hold that pleading culpable participation does not require pleading a control person's intent. Because Fraser's arguments turn on the notion that Plaintiffs have failed to adequately plead his culpable intent, the Motion to Dismiss should be denied.

> 2.    The Amended Complaint adequately pleads culpable participation under even the most stringent standard.

If the Court concludes that pleading culpable participation requires Plaintiffs to plead Fraser's state of mind, the Court should still deny Fraser's motion to dismiss because the Amended Complaint "'state[s] with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Poptech*, 792 F. Supp. 2d. at 336 (quoting 15

---

[77] Judge Kravitz held that a plaintiff must plead a control person's intent in *Poptech*, 792 F. Supp. 2d at 335. But, that holding conflicts with *Salit*. Recent decisions have recognized that the Second Circuit has yet to resolve this split. *See EZCorp*, 181 F. Supp. 3d at 212. Given the split in this District and the lack of guidance from the Second Circuit, this Court is free to rule on this issue as it sees fit.

U.S.C. § 335)). The Amended Complaint adequately pleads Fraser's intent under even the most stringent standards.

>        i.        Culpable participation does not require pleading an intent to deceive.

In the Motion to Dismiss, Fraser claims that various allegations in the Complaint are insufficient because they do not indicate "intent to deceive."[78] Fraser appears to contend that pleading culpable participation requires pleading scienter, *i.e.*, the same state of mind a primary violator must possess. Fraser is wrong. In *Poptech*, Judge Kravitz held that a control person does not need to act with the same state of mind as a primary violator. A plaintiff alleging a control person claim "need only allege a state of mind approximating recklessness . . . not the sort of purposeful or knowing misconduct that would be required to state a primary violation." *Poptech*, 792 F. Supp. 2d at 336. Alleging conscious misbehavior is unnecessary.

District courts in the Second Circuit have held that allegations that a defendant "'knew or should have known'" about the fraud are sufficient. *See In re Livent, Inc. Noteholders Sec. Litig.*, 148 F. Supp. 331, 355 (S.D.N.Y. 2001) (quoting *Ruskin v. TIG Holdings, Inc. Sec. Litig.*, 2000 WL 1154278, at *7 (S.D.N.Y. Aug. 14, 2000)); *Gabriel Capital, L.P. v. NatWest Fin., Inc.*, 122 F. Supp. 2d 407, 428 (S.D.N.Y. 2000) (abrogated on other grounds) ("[P]laintiffs can satisfy their burden by pleading facts giving rise to a strong inference that the controlling person knew or should have known that the primary violator, over whom that person had control, was engaging in fraudulent conduct."); *Special Situations*, 33 F. Supp. 3d at 439 (same). The Court should hold that culpable participation requires at most that a defendant "knew or should have known" about the fraud.

---

[78] *E.g.*, Memorandum of Law in Support of the Motion to Dismiss (Dkt. 62) at 12–13.

The cases Fraser cites agree that a plaintiff does not need to plead conscious misconduct. For example, *In re ShengdaTech, Inc. Sec. Litig.*, 2014 WL 3928606, at *10 (S.D.N.Y. Aug. 12 2014), holds that a plaintiff "'must allege 'some level of culpable participation at least approximating recklessness in the section 10(b) context." In the 10(b) context, recklessness requires "an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Acticon AG v. China N.E. Petroleum Holdings Ltd.*, 615 F. App'x 44, 46 (2d Cir. 2015) (quoting *Kalnit v Eichler*, 264 F.3d 131, 142 (2d Cir. 2001)).

If the Court holds that a plaintiff must plead a defendant's state of mind, the Court should conclude that culpable participation requires a plaintiff to plead that the defendant knew or should have known about the fraud. But, to the extent the Court believes there is a meaningful distinction between requiring a plaintiff to plead a level of culpable participation "approximating recklessness in the section 10(b) context" and requiring a plaintiff to plead that the defendant "knew or should have known" about the fraud, and that the former standard is appropriate, the Amended Complaint still easily pleads culpable participation.

ii.     The Amended Complaint alleges Fraser's culpable participation with particularity.

Under even the most stringent standard, the Amended Complaint adequately alleges culpable participation because it alleges Fraser's direct participation in the companies' fraud and obvious signs of fraud. Fraser fails to address seriously multiple allegations in the Amended Complaint. In a single sentence, he brushes aside eighteen paragraphs, including those alleging his personal orchestration of GAW Miners' fraud.[79] Personal participation necessarily indicates knowledge and intent, and such allegations satisfy Plaintiffs' pleading burden under any

---

[79] Memorandum of Law in Support of the Motion to Dismiss (Dkt. 62) at 12.

standard. *See Alstom*, 406 F. Supp. 2d at 491 ("The Second Circuit, . . . has explained that recklessness typically is established when plaintiffs (1) specifically allege defendants' awareness of facts or access to information contradicting their public statements and thus that they knew or should have known they were misrepresenting material facts related to the corporation"). The Amended Complaint adequately pleads culpable participation.

The Amended Complaint alleges that Fraser participated in the direction of the companies' operations and advertising strategy generally and made decisions concerning the specific offerings Plaintiffs have challenged as fraudulent. The Amended Complaint alleges that:

- "Garza kept Fraser fully apprised about GAW Miners' and ZenMiners' business, and the two regularly discussed and made joint decisions concerning the companies' management policies."[80]

- "Fraser was involved in GAW Miners' operations and strategic decision-making, and regularly provided direction to Garza concerning GAW Miners' business."[81]

- Fraser and Garza "jointly controlled GAW Miners' strategic direction, and the content of GAW Miners' advertising for these investment offerings."[82]

- Garza and Fraser made the decision that GAW Miners would offer and sell first Hardware- and Cloud-Hosted Mining and then Hashlets. They jointly controlled GAW Miners' strategic direction, and the content of GAW Miners' advertising for these investment offerings. Garza and Fraser jointly discussed and made decisions concerning GAW Miners' Hardware- and Cloud-Hosted Mining services and Hashlets.[83]

- "Garza and Fraser made the decision that GAW Miners would offer and sell HashStakers and launch PayCoin" and jointly controlled GAW Miners' strategic direction and the content of the advertising that GAW Miners did for these new offerings."[84]

Courts have held that similar allegations adequately plead culpable participation. For example:

- In *Suez Equity*, 250 F.3d at 101, the Second Circuit held that the following allegation stated a control person claim: "DeRoziere was an officer of the Bank and that he had

---

[80] Amended Complaint (Dkt. 57) at ¶ 12.
[81] Amended Complaint (Dkt. 57) at ¶ 50.
[82] Amended Complaint (Dkt. 57) at ¶¶ 135, 158.
[83] Amended Complaint (Dkt. 57) at ¶ 135.
[84] Amended Complaint (Dkt. 57) at ¶ 158.

primary responsibility for the dealings of that Bank and the other corporate defendants with SAM Group. While somewhat broad, this allegation is sufficient to plead controlling-person liability for the bank derived from DeRoziere, the purported primary violator."

- In *In re Check Point Software Technologies, Ltd. Securities Litigation*, 2006 WL 1116699, at *5 (S.D.N.Y. 2006), the court held that allegations that "Check Point was run like a close corporation during the class period, with the Individual Defendants responsible for making and being aware of the Company's core business decisions" and "Defendant Ungerman confirmed his and Shwed's heavy involvement in the day-to-day business operations when he stated . . . that he and Shwed review Check Point's sales transactions 'every week with our top sales VP's around the world'" were sufficient to plead culpable participation.

- In *In re Pfizer Inc. Securities Litigation*, the court held that "Plaintiffs' allegations that McKinnell, LaMattina, and Katen participated directly in the day-to-day management of Pfizer and made strategic decisions is sufficient to meet Plaintiffs' pleading obligation as to culpable participation." 584 F. Supp. 2d 621, 641 (S.D.N.Y. 2008) *abrogated on other grounds by Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 405 (2d Cir. 2016).

- In *EZCorp*, 181 F. Supp. 3d at 213, the court held that "the broad allegation that he 'participated in the management and day-to-day operations of EZ Corp,' and the consulting services that Madison Park rendered for EZCorp" was sufficient to meet the plaintiffs pleading burden as to culpable participation.

The Amended Complaint's allegations of Fraser's participation in the companies' fraud described above are similar to other allegations that courts have deemed sufficient. On their own, these allegations suffice under any standard.

Fraser cites *Rich v. Maidstone Financial, Inc.*, 2002 WL 31867724, at *12 (S.D.N.Y. Dec. 20, 2002), to support his argument to the contrary. *Maidstone* is distinguishable. In that case, the plaintiffs argued that the defendant "knew or should have known" about the fraud "based solely upon her ownership of shares in Maidstone and her marriage to Marshall Bernstein [the CEO]." *Id.* The court reasoned that, [w]hile this is a possible inference, the Court does not believe it is a reasonable one." *Id.* Here, Plaintiffs alleged that Fraser participated in the decision to sell the companies' fraudulent products, not just that he had knowledge of the fraud by virtue

25

of his ownership of the companies or through his relationship with Garza. As the courts cited above have concluded, allegations that a defendant directly participated in the operations that have been challenged as fraudulent are sufficient.[85]

The Amended Complaint goes further. Plaintiffs allege that Garza marketed ZenMiner "as a business entity that was distinct from GAW Miners."[86] The Amended Complaint alleges that Fraser directed that his son, Thomas Fraser, be named the "CEO" of ZenMiner even though he had no previous involvement in the company and had no role in developing ZenMiner.[87] It alleges that Fraser knew his son had no role because Fraser helped develop the ZenMiner business model.[88] Fraser's direct involvement in this scheme necessarily means he possessed knowledge of the fraud.

The Amended Complaint alleges that GAW Miners issued a phony press release stating that it had purchased ZenMiner.[89] It alleges that Fraser conceived of the concept of GAW Miners' purporting to acquire ZenMiner even though he knew the companies never operated independently.[90] It states that Fraser and Garza jointly made the decision for GAW Miners to participate in the fake acquisition.[91] There can be no opposing inference drawn from these facts. Fraser served as the impetus for these misrepresentations, and knew his son had no role at

---

[85] Fraser cites *In re Global Crossing, Ltd. Securities Litigation*, 2005 WL 1907005, at *12 (S.D.N.Y. Aug. 8, 2005), for the proposition that the Amended Complaint fails to plead Fraser's intent with sufficient specificity. *See* Memorandum of Law in Support of the Motion to Dismiss (Dkt. 62) at 13. *Global Crossing* does not support Fraser's argument because the court based its decision solely on the plaintiffs' failure to plead control and never addressed culpable participation. *See* 2005 WL 1907005, at *13 ("As the Court finds that plaintiffs have failed to allege control, there is no need to reach the issue of whether Microsoft or Softbank culpably participated in the alleged securities violations committed by AGC.").
[86] Amended Complaint (Dkt. 57) at ¶ 83.
[87] Amended Complaint (Dkt. 57) at ¶¶ 85-86.
[88] Amended Complaint (Dkt. 57) at ¶¶ 12, 85.
[89] Amended Complaint (Dkt. 57) at ¶ 87–88.
[90] Amended Complaint (Dkt. 57) at ¶ 88.
[91] Amended Complaint (Dkt. 57) at ¶ 88.

ZenMiner and that GAW Miners and ZenMiner were not independent companies. Fraser knew about the fraud and was a culpable participant.

The Amended Complaint alleges that GAW Miners engaged in fraud by representing that mining would occur through ZenMiner.[92] GAW Miners sold Cloud-Hosted Mining and Hashlets through ZenMiner.[93] Fraser had full knowledge that GAW Miners lacked the computing capacity to support its Cloud-Hosted Mining and Hashlet orders through ZenMiner. The Amended Complaint alleges that Fraser met with Garza at Fraser's home in Armonk.[94] At that meeting, Garza explained to Fraser that there would be a mismatch in GAW Miners' computing capacity relative to orders placed through ZenCloud.[95] Fraser approved the plan despite knowing this information.[96]

The Amended Complaint cites an email from GAW Miners' CFO to Fraser explaining that GAW Miners lacked the ability to track its inventory of Miners.[97] Without an ability to track inventory, GAW Miners would have no way of knowing whether it had adequate computing capacity. Further, Fraser had access to the backend of ZenCloud, which allowed him to track ZenCloud sales, and was told GAW Miners lacked adequate computing capacity in an October 10, 2014 email.[98] Again, no competing inferences can be drawn. The Amended Complaint pleads enough facts to establish that Fraser acted with at least recklessness concerning GAW Miners' computing capacity mismatch.[99]

---

[92] Amended Complaint (Dkt. 57) at ¶ 89.
[93] Amended Complaint (Dkt. 57) at ¶¶ 89–90, 122–123.
[94] Amended Complaint (Dkt. 57) at ¶¶ 91, 128.
[95] Amended Complaint (Dkt. 57) at ¶¶ 91,128.
[96] Amended Complaint (Dkt. 57) at ¶¶ 91,128.
[97] Amended Complaint (Dkt. 57) at ¶¶ 66, 68.
[98] Amended Complaint (Dkt. 57) at ¶¶ 102, 110, 130
[99] The Amended Complaint cites several other emails that demonstrate Fraser's knowledge of the capacity mismatch. *See* Amended Complaint (Dkt. 57) at ¶¶ 92, 126.

The Amended Complaint cites an email from Garza to Fraser attaching a copy of GAW Miners' marketing materials stating that "You can control your hosted miners directly from your computer to point them to the pools you want at any time!"[100] Given Fraser's knowledge regarding GAW Miners' lack of computing capacity, Fraser knew or should have known GAW Miners was making false claims about its products.

Fraser knew or should have known the companies operated as a Ponzi scheme. The Amended Complaint alleges that the companies' hosted mining services and Hashlet products operated as a Ponzi scheme because investor returns were paid mostly from funds invested by others.[101] It alleges that Fraser and Garza discussed how ZenCloud users would be paid at the Armonk meeting,[102] *i.e.*, that ZenCloud users were paid from revenues from ongoing ZenCloud sales.[103] Based on the conversation at the Armonk meeting, Fraser knew or should have known the companies operated as a Ponzi scheme.

The Amended Complaint further alleges that in June 2010, GAW Miners' CFO told Fraser that GAW Miners had no internal controls and no ability to implement internal controls until at least 2015.[104] In *Livent*, 148 F. Supp. 2d at 370, the court addressed a claim that an auditor acted recklessly in failing to discover manipulation of financial records by its client, Livent. *Id.* at 370. The auditor "detected several significant accounting irregularities through random audits," but failed to conduct any follow-up inquiry. *Id.* The *Livent* court called the auditor's failure to detect wider fraud after "discovering truly egregious accounting errors," "an overlooking of obvious signs, an egregious refusal to investigate the doubtful that extends well

---

[100] Amended Complaint (Dkt. 57) at ¶ 93.
[101] Amended Complaint (Dkt. 57) at ¶¶ 90–91, 125.
[102] Amended Complaint (Dkt. 57) at ¶¶ 91, 128.
[103] Amended Complaint (Dkt. 57) at ¶¶ 67, 125.
[104] Amended Complaint (Dkt. 57) at ¶ 66.

beyond mere failure to identify problems with Livent's internal controls or accounting practices." *Id.* While Fraser might not be expected to identify accounting irregularities buried in the companies' books, the fact he knew the companies had <u>no internal controls whatsoever</u> is an obvious sign of fraud, which indicates recklessness. *Chill v. General Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996) ("'An egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of . . . recklessness.").

The Amended Complaint alleges that Fraser fully understood the details of Paycoin's business model through regular discussions with Garza and through the Paycoin White Paper, which provided details about Paycoin, and regularly tracked the price of Paycoin.[105] It further alleges that Fraser used resources from Cantor to advise GAW Miners about its release of Paycoin. In one prescient email in November 2014, Fraser requested advice from Cantor about "how to move forward [with] Financials, Settlements/Clearing, Rules and Regs and maybe someone at the SEC [so] we can have an open dialogue with [them], as we figure out the best way forward."[106] That email shows that Fraser understood that Paycoin violated the securities laws. Nevertheless, Fraser allowed GAW Miners to move forward with the Paycoin initial coin offering ("ICO") with disastrous results for investors. Given Fraser's experience on Wall Street, his use of Cantor resources to advise GAW Miners about the Paycoin release, and his understanding of Paycoin's business model through conversations with Garza, Fraser acted with at least recklessness concerning Garza and the companies' representations concerning Paycoin.

The Amended Complaint alleges that Fraser had access to information about the companies, including financial records,[107] sales information,[108] reports regarding customers and

---

[105] Amended Complaint (Dkt. 57) at ¶¶ 144–147.
[106] Amended Complaint (Dkt. 57) at ¶ 56.
[107] Amended Complaint (Dkt. 57) at ¶ 63.

transaction volumes,[109] and reports regarding numbers of Hashlets sold.[110] It alleges that Garza kept Fraser fully apprised of the companies' operations.[111] Due to his access to this information, Fraser knew or should have known about Garza and the companies' fraud. Fraser argues that "access to information that could have alerted [Fraser] to Garza's fraud is not sufficient to demonstrate Fraser had intentions of any kind, let alone the intent to deceive.[112] Fraser is wrong because, as discussed above, pleading recklessness is sufficient. Courts have concluded that access to information that would have alerted a control person to the fraud can indicate recklessness. *See EZCorp*, 181 F. Supp. 3d at 214 ("And the allegation of Cohen's participation in management, which included access to 'all reports, agendas, and other information available to the EZCorp Board,' . . . suffices to particularly allege access to information suggesting recklessness, and thus 'culpable participation under even the most rigorous pleading standard.'"); *see also Solucorp*, 2000 WL 1708186, at *7 (holding that "access to information regarding Solucorp's day-to day business" and "power and influence to cause Solucorp to engage in the alleged fraudulent conduct" "supports an inference of culpability for the allegedly fraudulent statements.").[113]

---

[108] Amended Complaint (Dkt. 57) at ¶¶ 70, 102.

[109] Amended Complaint (Dkt. 57) at ¶ 102.

[110] Amended Complaint (Dkt. 57) at ¶ 110.

[111] Amended Complaint (Dkt. 57) at ¶¶ 12, 63.

[112] Amended Complaint (Dkt. 57) at ¶ 12.

[113] Fraser cites the Original Motion to Dismiss. There, Fraser argued that the Original Complaint failed to identify "with particularity any reports or statements that Fraser saw or had access to that would have revealed the alleged fraud." *See* Original Motion to Dismiss (Dkt. 42) at 16. But, the Amended Complaint specifically alleges various sources of information. Amended Complaint (Dkt. 57) at ¶¶ 12, 63, 70, 102, 110. For example, it alleges that Fraser had access to the backend of ZenCloud, which could be used "to view reports regarding the number of ZenCloud customers, transaction volume, sale figures, etc." *Id.* at ¶ 102. It alleges that Fraser knew GAW Miners had no ability to track its inventory of hardware, and lacked financial controls. *Id.* at ¶¶66–68. Based on his access to data from ZenCloud and his knowledge that GAW Miners could not track its inventory of miners, Fraser knew or should have known GAW

Fraser argues that allegations in the Amended Complaint indicate that Fraser believed the companies would operate through legitimate means. First, Fraser notes that he wrote "GAW[]Miners is totally above board and we only want to do it 'Right.'"[114] But, the fact that Fraser felt it necessary to insist to a third party that the companies operated legitimately is itself suspicious. To borrow a turn of phrase, Fraser "doth protest too much." Fraser further wrote that "We have plans for a[n] ICO and need to make sure we're set up right before it gets too crazy!" Fraser made this statement in connection with a request for assistance from Cantor in obtaining, among other advice, an open dialogue with the SEC in connection with GAW Miners' upcoming launch of its virtual currency. Given the fact that the SEC ultimately sued the companies for fraud, this statement indicates that Fraser knew the companies were violating the securities laws and indicates at least recklessness.

Second, in response to a promotional video describing Paycoin's features, Fraser wrote "very cool. it just has to work that way."[115] Fraser made this statement after Paycoin launched, which indicates that he knew Paycoin lacked all of the features the companies claimed it did. This allegation indicates Fraser knew or was reckless in not knowing that the companies were engaging in ongoing fraud.

Finally, in the Original Motion to Dismiss, Fraser argued that allegations that he loaned money to the companies indicated that Fraser did not know about the ongoing fraud.[116] But, it is just as likely that Fraser loaned the companies money to allow them to continue to perpetrate their fraud on investors to enrich himself and Garza.

---

Miners could not provide the computing power its customers believed they were purchasing.
[114] *See* Original Motion to Dismiss (Dkt. 42) at 19; Amended Complaint at ¶ 56.
[115] Amended Complaint (Dkt. 57) at ¶ 148.
[116] Original Motion to Dismiss (Dkt. 42) at 19.

The Amended Complaint adequately alleges culpable participation. Fraser's Motion to Dismiss should be denied.

II.   The Court should deny the Motion to Dismiss on Plaintiffs' CUSA claims.

    A.   Fraser's argument for dismissal of Plaintiffs' C.G.S. 36b-29(a)(2) claim fails because it ignores binding precedent from the Connecticut Supreme Court.

Fraser's interpretation of C.G.S. 36b-29(a)(2) fails because it ignores binding case law from the Connecticut Supreme Court. Fraser argues that Plaintiffs fail to state a claim under C.G.S. 36b-29(a)(2) because they do not identify any fraudulent statements made by Fraser.[117] The statute imposes liability against not only those who make fraudulent statements, but also those who materially assist another person who made a fraudulent statement. C.G.S. 36b-29(a)(2) provides:

> (a) Any person who: . . . (2) offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, who knew or in the exercise of reasonable care should have known of the untruth or omission, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security, . . . .

Fraser quotes C.G.S. 36b-29(a)(2) with bracketed numbers to delineate the supposed elements of a C.G.S. 36b-29(a)(2) claim. Fraser argues that C.G.S. 36b-29(a)(2) only creates a claim against a "person who . . . "[1] offers or sells or materially assists any person who offers or sells a security [2] by means of any untrue statement of a material fact or any omission to state a material fact . . . ."[118] In other words, Fraser argues that the only type of material assistance that qualifies under the statute is material assistance in the form of an untrue statement or omission of fact. The Connecticut Supreme Court disagrees with Fraser's interpretation. In *Connecticut*

---

[117] Memorandum of Law in Support of Motion to Dismiss (Dkt. 62) at 14.
[118] Memorandum of Law in Support of Motion to Dismiss (Dkt. 62) at 14.

*National Bank v. Giacomi*, 699 A.2d 101, 122 (Conn. 1997) ("*Giacomi II*"), the Connecticut Supreme Court explained that the first element of a C.G.S. 36b-29(a)(2) claim is "that the aider and abettor must materially assist the primary violator in the offer or sale of the securities and in the violation by which the primary violator accomplished the offer or sale, which in this case is the selling of a security by means of an untrue statement of material fact." The aider and abettor thus must assist the primary violator, but need not make a misleading statement herself. For example, in *Giacomi II*, the Court concluded that the defendant provided material assistance by helping procure reliance on a misrepresentation made by the primary violator. *Id.* at 122. That the cases cited by Fraser might have involved material assistance in the form of a misrepresentation does preclude the possibility that other assistance can satisfy the statute, as the Connecticut Supreme Court has specifically held.[119]

The Amended Complaint identifies a variety of actions taken by Fraser that materially assisted fraudulent statements made by Garza and the companies.[120] Fraser's Motion to Dismiss should be denied.

> B.   <u>Fraser's argument for dismissal of Plaintiffs' C.G.S. 36b-29(c) claim fails because Fraser was a partner of Garza, a de facto director of the companies, and because he directly or indirectly controlled Garza and the companies.</u>

In the Original Motion to Dismiss, Fraser argued that the Court must dismiss Plaintiffs' claims under the C.G.S. 36b-29(c) for same reasons he urged the Court to dismiss Plaintiffs' claims under § 20(a) of the Exchange Act. To support his argument, Fraser cited *Patriot*

---

[119] Fraser's argument turns on *Pearsall Holdings, LP v. Mountain High Funding, LLC*, 2014 WL 7270334, at *7 (D. Conn. Dec. 18, 2014). *Pearsall* concluded that "offers or sells or materially assists any person who offers or sells a security" and "by means of any untrue statement of a material fact or any omission to state a material fact" were two separate elements. *Id.* at *6–7. However, the *Perasall* court never cited *Giacomi II*, which explains that it is the primary violator that must sell the security by means of an untrue statement, not the aider and abettor. Because the *Pearsall* court never considered *Giacomi II*, its interpretation of the statute should be disregarded.

[120] Amended Complaint (Dkt. 57) at ¶ 189.

*Exploration*, 951 F. Supp. 2d at 364. Fraser describes the case as "granting motion to dismiss as to defendant officers for allegations of Section 20(a) and C.G.S. 36b-29(c) control person liability . . . ."[121] That is not *Patriot*'s holding. Rather, Judge Thompson <u>denied</u> the motion to dismiss on the C.G.S. 36b-29(c) claims because the statute imposes secondary liability on certain individuals solely due to their status. C.G.S. 36b-29(c) provides that:

> Every person who directly or indirectly controls a person liable under subsections (a) and (b) of this section, <u>every partner, officer or director of such a person, every person occupying a similar status or performing similar functions</u>, every employee of such a person who materially aids in the act or transaction constituting the violation and every broker-dealer or agent who materially aids in the act or transaction constituting the violation are also liable jointly and severally with and to the same extent as such person, unless the person who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There shall be contribution as in cases of contract among the several persons so liable.

The *Patriot* Court held that: "Because the complaint alleges that each of the individual defendants is an officer or director of SandRidge, the motion to dismiss is being <u>denied</u> as to the Fifth Cause of Action." 951 F. Supp. 2d at 363. The Amended Complaint supports a similar theory because it alleges that Garza was both a partner of Fraser and a *de facto* director,[122] *i.e.*, a "person occupying a similar status or performing similar functions" to a director. Thus, even if the Court were to dismiss Plaintiffs' § 20(a) claim, that does not mean it should dismiss Plaintiffs' C.G.S. 36b-29(c) claim as Fraser urges. C.G.S. 36b-29(c) is broader than § 20(a) because it imposes liability based on a defendant's status; Plaintiffs have stated a claim against Fraser based on his status as a partner of Garza and as a *de facto* director of the companies.

Plaintiffs also have a viable claim under C.G.S. 36b-29(c) because Fraser "directly or indirectly" controlled Garza and the companies. C.G.S. 36b-29(c) differs from § 20(a) because it

---

[121] Original Motion to Dismiss (Dkt. 42) at 19.
[122] Amended Complaint at ¶¶ 46, 49, 59, 197.

clearly does not require the plaintiff to plead any type of intent. C.G.S. 36b-29(c) states that the
<u>defendant</u> has "the burden of proof that he did not know, and in exercise of reasonable care could
not have known, of the existence of the facts by reason of which the liability is alleged to exist."
C.G.S. 36(b)-29(c) thus places the burden of pleading intent on the defendant even more clearly
than § 20(a). To the extent the Court concludes that the Amended Complaint fails to adequately
plead culpable participation, but does plead control, it should deny the Motion to Dismiss as to
Plaintiffs' claim that Fraser "directly or indirectly" controlled Garza and the companies under
C.G.S. 36b-29(c).

Fraser misreads *Patriot* a second way. He argues that "Plaintiffs' claim under the
Connecticut Uniform Securities Act Section 36b-29(c) is subject to the heightened pleading
standards because it is 'predicated on the same factual allegations as their federal claims.'"[123]
This implies that Plaintiffs' C.G.S. 36b-29(c) claim is subject to Rule 9(b). Control under C.G.S.
36b-29(c) does not involve an allegation of "fraud or mistake," and is not subject to Rule 9(b).
Courts agree that the "control" element of a § 20(a) claim need not be pled with particularity.
There is no reason for Rule 9(b) to apply to a state-law control claim. While it is true that
allegations concerning a primary violation (*i.e.*, fraud) are subject to Rule 9(b), Fraser conceded
that primary violations occurred for the purposes of his Motion to Dismiss.[124] The control
element of Plaintiffs' claim under C.G.S. 36b-29(c) is not subject to Rule 9(b).

III.   <u>The Court should deny Fraser's Motion to Dismiss on Plaintiffs' claims that Fraser aided
and abetted Garza and the companies' common law fraud.</u>

The Court should deny Fraser's motion to dismiss Plaintiffs' aiding and abetting common
law fraud claim. The elements for a claim of aiding and abetting common law fraud are:

(1) the party whom the defendant aids must perform a wrongful act that causes an injury;

---

[123] Original Motion to Dismiss (Dkt. 42) at 19.
[124] Original Motion to Dismiss (Dkt. 42) at 9 n.7.

(2) the defendant must be generally aware of [its] role as part of an overall illegal or tortious activity at the time [it] provides the assistance;
(3) the defendant must knowingly and substantially assist the principal violation.

*Brunette v. Bristol Savings Bank*, 1994 WL 468448, at *2 (Conn. Super. Ct. Aug. 22, 1994). Fraser claims the Court should dismiss the aiding and abetting fraud claims because the Amended Complaint fails "to support a conclusion that Fraser knew or substantially assisted the alleged fraud by Garza and the Companies." But as described in Section I.B.2.ii above, Fraser directly participated and masterminded various aspects of Garza's and the companies' fraud. Fraser even admits that the Amended Complaint alleges that "Fraser 'personally orchestrated . . . aspects' of the alleged fraud" in the Motion to Dismiss.[125] Due to his direct participation in the fraud, Fraser had knowledge about, and substantially assisted in the fraud. Likewise, in *Patriot Exploration*, 951 F. Supp. 2d at 361–62, the court concluded that defendants' participation "in investor presentations during which the allegedly fraudulent statements were made" were sufficient to "support a conclusion that defendants Ward, Grubb and Johnson were each involved in aiding and abetting the underlying fraud." Fraser's participation was similar, and the Amended Complaint's allegations are sufficient.

Fraser argues that Plaintiffs must plead each element of their aiding and abetting common law fraud claim with particularity based on *In re Colonial Ltd Partnership Litig.*, 854 F. Supp. 64, 102–03 (D. Conn. 1994). But, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Both the second and third element of an aiding and abetting common law fraud claim involve the conditions of Fraser's mind. While some  language in *Colonial* could arguably be read as holding that each element of an aiding and abetting claim

---

[125] Memorandum of Law in Support of the Motion to Dismiss (Dkt. 62) at 12.

must be pleaded with particularity, such a reading would require a plaintiff to plead conditions of a person's mind with particularity in contravention of the plain language of Rule 9(b). The better reading of the case is that only the "wrongful act or injury" element, *i.e.*, the fraud, must be pled with particularity. Because Fraser does not dispute that an underlying fraud occurred, there should be no argument that Plaintiffs failed to plead their aiding and abetting claim with sufficient particularity under Rule 9(b).

The Court should deny Fraser's Motion to Dismiss as to Plaintiffs' aiding and abetting common law fraud claim.

IV.    28 U.S.C. § 1367(c)(3) does not apply because federal claims remain pending against the companies.

In a footnote, Fraser argues that the Court should decline to exercise supplemental jurisdiction if it dismisses Plaintiffs' federal claims against Fraser under 28 U.S.C. § 1367(c)(3), which applies when "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3) would not apply because plaintiffs would still have federal claims pending against the companies.

CONCLUSION

Plaintiffs respectfully request that the Court deny Fraser's Motion to Dismiss.

Respectfully submitted,

/s/ Mark P. Kindall
Mark P. Kindall (ct13797)
E-mail: mkindall@ikrlaw.com
Robert A. Izard
E-mail: rizard@ikrlaw.com
IZARD, KINDALL & RAABE, LLP
29 S. Main St., Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290

Marc Seltzer (*pro hac vice*)
E-mail:mseltzer@susmangodfrey.com
California Bar No. 54534
Kathryn Hoek (*pro hac vice*)
E-mail: khoek@susmangodfrey.com
California Bar No. 219247
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

Seth Ard (*pro hac vice*)
E-mail: sard@susmangodfrey.com
New York Bar No. 4773982
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6022
Tel: (212) 336-8330
Fax: (212) 336-8340

Matthew Allen (*pro hac vice*)
E-mail: mallen@susmangodfrey.com
Texas Bar No. 24073841
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX  77002
Tel: (713) 651-9366
Fax: (713) 654-3367

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2017 a copy of foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing  system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.


/s/ Mark P. Kindall
        Mark P. Kindall