UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, *et al.*,<br><br>                    Plaintiffs,<br><br>     v.<br><br>HOMERO JOSHUA GARZA, *et al.*,<br><br>                    Defendants. | Case No. 3:16-CV-00940-MPS<br><br><br><br>January 23, 2017 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
STUART A. FRASER'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Daniel H. Weiner (ct12180)
Sarah L. Cave (phv08437)
Sara E. Echenique (phv08436)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY  10004-1482
Tel.: (212) 837-6000
Fax: (212) 422-4726

David R. Schaefer (ct04334)
Sean M. Fisher (ct23087)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT  06511
Tel.: (203) 772-2600
Fax: (203) 562-2098

*Attorneys for Defendant Stuart A. Fraser*

# **TABLE OF CONTENTS**

**Page**

ARGUMENT ...............................................................................................................................1

I. PLAINTIFFS FAIL TO PLEAD THAT FRASER
   CONTROLLED GARZA OR THE COMPANIES. ............................................................3

II. PLAINTIFFS HAVE NOT MET THE SECOND
    CIRCUIT'S CULPABLE PARTICIPATION REQUIREMENT. ......................................6

III. PLAINTIFFS FAIL TO PLEAD STATE LAW CLAIMS AGAINST
     FRASER. ..........................................................................................................................8

CONCLUSION ............................................................................................................................10

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Alstom SA*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005) ............................................................... 7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ......................................... 6

*In re Bausch & Lomb*, 941 F. Supp. 1352 (W.D.N.Y. 1996) ..................................................... 4, 5

*In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711 (S.D.N.Y. 2015) ............................................ 3

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227
    (2d Cir. 2014) ............................................................................................................................ 6

*In re Check Point Software Techs., Ltd. Sec. Litig.*, No. 03 Civ. 6594 (RMB),
    2006 WL 1116699 (S.D.N.Y. Apr. 26, 2006) ........................................................................... 8

*In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314 (S.D.N.Y. 2001) .............................. 5

*Connecticut Nat'l Bank v. Giacomi*, 699 A.2d 101, 242 Conn. 17 (Conn. 1997) .......................... 9

*Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016) ............................... 8

*Drobbin v. Nicolet Instrument Corp.*, 631 F. Supp. 860 (S.D.N.Y. 1986) .................................... 5

*Duncan v. Pencer*, No. 94 Civ. 0321 (LAP), 1996 WL 19043
    (S.D.N.Y. Jan. 18, 1996) ........................................................................................................... 5

*Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976) ....................................................................... 7

*In re EZCorp, Inc. Sec. Litigs.*, 181 F. Supp. 3d 197 (S.D.N.Y. 2016) ......................................... 8

*Kuhns v. Ledger*, No. 15 Civ. 3246 (NRB), 2016 WL 4705160 (S.D.N.Y. Aug.
    24, 2016) ................................................................................................................................... 3

*Lanza v. Drexel & Co.*, 479 F.2d 1277 (2d Cir. 1973) .................................................................. 6

*In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167 (2d Cir. 2011) ........................... 3, 4

*Mecca v. Gibraltar Corp. of Am.*, 746 F. Supp. 338 (S.D.N.Y. 1990) ......................................... 5

*Patriot Expl., LLC v. SandRidge Energy, Inc.*, 951 F. Supp. 2d 331 (D. Conn.
    2013) ......................................................................................................................................... 9

*Pearsall Holdings, LP v. Mountain High Funding, LLC*, No. 3:13cv437 (JBA),
    2014 WL 7270334 (D. Conn. Dec. 18, 2014) ....................................................................... 8, 9

# **TABLE OF AUTHORITIES**
(Continued)

**Page(s)**

*In re Pfizer Inc. Sec. Litig.*, 584 F. Supp. 2d 621 (S.D.N.Y. 2008) ................................................. 8

*Poptech, L.P. v. Stewardship Credit Arbitrage Fund, LLC*, 792 F. Supp. 2d 328
 (D. Conn. 2011) .................................................................................................................. 7

*Poptech, L.P. v. Stewardship Inv. Advisors, LLC*, 849 F. Supp. 2d 249
 (D. Conn. 2012) .................................................................................................................. 7

*Salit v. Stanley Works*, 802 F. Supp. 728 (D. Conn. 1992) ............................................................ 7

*SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450 (2d Cir. 1996) .................................................... 3, 4

*SEC v. Franklin Atlas Corp.*, 154 F. Supp. 395 (S.D.N.Y. 1957) ................................................. 5

*In re Solucorp Indus., Ltd. Sec. Litig.*, No. 98CIV.3248 (LMM), 2000 WL
 1708186 (S.D.N.Y. Nov. 15, 2000) ..................................................................................... 5

*Suez Equity Inv'rs, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87
 (2d Cir. 2001) ....................................................................................................................... 8

*Szulik v. Tagliaferri*, 966 F. Supp. 2d 339 (S.D.N.Y. 2013) ..................................................... 4, 5

*United States v. Wolfson*, 405 F.2d 779 (2d Cir. 1968) ................................................................ 5

**Statutes and Regulations**

17 C.F.R. § 240.12b-2 .................................................................................................................... 3

15 U.S.C. § 78t(a) ................................................................................................................ *passim*

28 U.S.C. § 1367(c)(3) ................................................................................................................... 9

Defendant Stuart A. Fraser ("Fraser") submits this reply memorandum of law in further support of his motion to dismiss the First Amended Complaint as against him.[1]

## ARGUMENT

Section 20(a) does not establish "friend person" liability, or "mentor person" liability, or even "investor person" liability. Rather, it requires **control** — the very same legal standard that the United States Securities and Exchange Commission found lacking as to Fraser after it thoroughly investigated his role in these very circumstances. Instead, the SEC charged only Garza — Plaintiffs' newest bedfellow — and the Companies, the other defendants in this action. As Fraser explained in his motions to dismiss the original Complaint and the Amended Complaint, the Court should dismiss this action as against him because (i) Plaintiffs fail to plead adequately Fraser's control over Garza and the Companies, (ii) Plaintiffs do not plead the element of culpable participation required under the law of the Second Circuit and this District, and (iii) Plaintiffs cannot save their state law claims by misrepresenting applicable Connecticut case law.

Plaintiffs also mistakenly accuse Fraser of failing to address certain allegations in the Amended Complaint. (Pls.' Mem. of Law in Opp'n to Def. Stuart A. Fraser's Mot. to Dismiss the First Am. Compl. (ECF No. 63) ("Opposition" or "Opp'n").) Not so. As set forth in the table below, Fraser has addressed each allegation in the Amended Complaint:

| Allegations Fraser Supposedly Ignored | Location Where Fraser Addressed Allegations |
|---|---|
| Allegations that Garza and Fraser were purportedly 50-50 partners in the Companies. (Opp'n at 1, 9, 10.) | Fraser analyzes Plaintiffs' reverse engineering that tries to turn Fraser's 41% minority investment into 50% ownership. (Second Mot. to Dismiss at 7-8.) |

---

1. As permitted by the Court on October 12, 2016, Fraser's motion (ECF No. 62) and this Reply rely on and incorporate Fraser's arguments and defined terms set forth in his First Motion to Dismiss (ECF No. 42). (*See* Second Mot. to Dismiss at 5 n.1.)

| **Allegations Fraser Supposedly Ignored** | **Location Where Fraser Addressed Allegations** |
|---|---|
| Allegations concerning a "specific meeting" between Garza and Fraser about GAW Miners. (Opp'n at 1; *see* Am. Compl. ¶¶ 91, 128.) | Fraser's Second Motion to Dismiss addresses these allegations on pages 6-7 (within the "access to" section) and pages 10-11. |
| Allegations concerning "GAW Miners' fake acquisition of ZenMiner." (Opp'n at 1, 26; Am. Compl. ¶ 88.) | Fraser's Second Motion to Dismiss addresses these allegations on page 10 note 5. |
| Allegations regarding Fraser's "provision of financing . . . ." (Opp'n at 14-15; Am. Compl. ¶¶ 40, 47, 72.) | Fraser's Second Motion to Dismiss (*see* page 4) summarized paragraph 40 of the Amended Complaint, which is also addressed in the section regarding minority investors (pages 7-8). Fraser's Second Motion to Dismiss (page 11 note 6) identifies the allegations contained in paragraph 47 as conclusory. Fraser addresses paragraph 72 of the Amended Complaint (paragraph 48 in the original Complaint) on page 5 of the First Motion to Dismiss. |
| Allegations that Fraser purportedly directed, approved and participated in decisions related to offerings the Companies have challenged as fraudulent (Am. Compl. ¶¶ 86-88, 91, 128, 135, 158), that Fraser had a hands-on role managing certain other companies (*id*. ¶ 34 referring to other business ventures), and that he purportedly continued that role in the Companies (*id*. ¶ 46). (Opp'n at 16-17.) | Fraser addresses these assertions in the "culpable participation" section on pages 13-14 of his Second Motion to Dismiss. |
| The "total effect" of the allegations against Fraser. (Opp'n at 18.) | Fraser points out that "[n]one of these [categories], whether separate or combined, gives rise to a sufficient inference of control." (Second Mot. to Dismiss at 7.) |
| Eighteen paragraphs alleging Fraser's "personal orchestration of GAW Miners' fraud." (Opp'n at 23.) | Fraser's Motions dedicate entire sections to dealing with Plaintiffs' inadequate "culpable participation" pleadings. (*See* First Mot. to Dismiss at 15-19; Second Mot. to Dismiss at 12-14.) |

Finally, Plaintiffs ask the Court to suspend disbelief and subscribe to their irrational theory that Fraser would jeopardize everything in return for no reward. Their suggestion that Fraser was the "proverbial 'man behind the curtain'" (Opp'n at 1) is not credible, given that

Plaintiffs fail to allege any lever of power Fraser actually controlled. Accordingly, the Amended Complaint fails to state a claim against Fraser.

I. **PLAINTIFFS FAIL TO PLEAD THAT FRASER CONTROLLED GARZA OR THE COMPANIES.**

Plaintiffs continue to give short shrift to the law's requirements. To plead a Section 20(a) claim, Plaintiffs must demonstrate Fraser's <u>actual</u> control over the allegedly fraudulent transactions, not just the mere possibility of it. *See Kuhns v. Ledger*, No. 15 Civ. 3246 (NRB), -- F. Supp. 3d --, 2016 WL 4705160, at *5 (S.D.N.Y. Aug. 24, 2016) ("Actual control, and not merely 'power to influence managerial decisions' is required.") (quoting *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 740 (S.D.N.Y. 2015)); *see also In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 187 (2d Cir. 2011) (applying Section 20(a) standard to Section 15 control person claim and holding that "allegations of advice, feedback, and guidance fail to raise a reasonable inference that the [defendants] had the power to *direct*, rather than merely inform, the [primary violators'] decisions") (original emphasis); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996) (prima facie case under Section 20(a) requires "showing that the defendant possessed 'the power to *direct or cause the direction* of the management and policies of a person . . .'") (emphasis added) (quoting 17 C.F.R. § 240.12b-2). (*See* First Mot. to Dismiss at 9; Second Mot. to Dismiss at 6.)

Here, the crux of Plaintiffs' claims is Garza's and the Companies' sale of "products and investment contracts to over 10,000 investors" who believed that they would make profits from mining and investing in virtual currency. (Am. Compl. ¶ 2.) Yet none of Plaintiffs' allegations, taken as a whole or individually, supports the inference that Fraser had <u>actual</u> control over any of these allegedly fraudulent transactions. (*See* First Mot. to Dismiss at 6-15; Second Mot. to Dismiss at 9-12.) Plaintiffs do not allege that Fraser directed or controlled any policy, procedure

3

or method of operation undertaken by Garza or the Companies, thus undermining any inference from their conclusory *ipse dixit* allegations that Fraser held or exerted control. Whether Fraser spoke with third parties about the Companies, offered Garza suggestions about ideas for the Companies or had access to information concerning the Companies does not lead to a finding of control, because Plaintiffs do not bridge the pleading gap between this limited involvement and Garza's fraudulent scheme to sell virtual currency products. *See In re Lehman Bros.*, 650 F.3d at 187 ("purported involvement in transaction-level decisions falls far short of showing a power to direct the primary violators' 'management and policies'") (quoting *First Jersey Sec.*, 101 F.3d at 1472-73). And although Plaintiffs harp on Fraser's "*de facto*" position as a director (Opp'n at 2, 7, 15, 16, 33, 34), none of Plaintiffs' allegations supports a finding that Fraser was responsible for the Companies' operations, record-keeping, general performance or any other responsibilities attendant to a director, never mind those related to Garza's virtual currency fraud. *Compare In re Bausch & Lomb*, 941 F. Supp. 1352, 1368 (W.D.N.Y. 1996) (the defendants were responsible for company's "overall performance, or for its finances").[2]

Plaintiffs assert that courts have found "similar allegations allege control status." (Opp'n at 7-9.) Again, not so: each of the cases they cite involved additional allegations of fact not present here that contributed to the conclusion that control had been adequately plead. For example, in *Szulik v. Tagliaferri*, 966 F. Supp. 2d 339 (S.D.N.Y. 2013), the court sustained Section 20(a) claims against defendants who, in addition to owning half of the company, represented in documents filed with the SEC that they were "responsible" for making the investment decisions by which they stole the plaintiffs' funds. *Id.* at 349, 369. In addition, the plaintiffs in *Szulik* attached documents showing that one of the defendants executed the

---

2. Plaintiffs do not, and cannot, allege that Fraser was an officer of either of the Companies.

4

fraudulent securities transactions, while the other threatened to cut off funding if her directives were not followed.  The *Szulik* court's conclusion was also faithful to well-established precedent (which Plaintiffs here ignore) that, to avoid dismissal, the pleading "must also allege defendants had control over the particular transactions in question." *Id.* at 369.[3]

Plaintiffs focus on Fraser's supposed involvement in certain of Garza's schemes, without alleging or demonstrating that Fraser **controlled** Garza's decisions in any way.  Thus, Plaintiffs highlight Garza's announcement that defendant GAW Miners would allegedly acquire defendant ZenMiner and the involvement of Fraser's son.  (Opp'n at 12, 26.)  But neither of these allegations (nor any others in the Amended Complaint) demonstrates that, as a result of Fraser's financing or other suggestions, Garza took a course of action at Fraser's direction that he would not have taken otherwise.  Nowhere do Plaintiffs suggest that Fraser controlled Garza or the Companies by threatening to withhold financing, implicitly or otherwise.  *Compare Szulik*, 966 F. Supp. 2d at 349.  Plaintiffs do not allege that, were it not for Fraser's involvement, the

---

3. The remaining cases Plaintiffs cite to support their control theory are similarly distinguishable.  *See*, *e.g.*, *In re Complete Mgmt. Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 331-32 (S.D.N.Y. 2001) (the defendant owner was the company's largest single shareholder, owned the company's most significant client which he allegedly used to influence the company's decisions, received funds from the company, and used company funds for personal purposes); *In re Bausch & Lomb*, 941 F. Supp. at 1368 (in addition to "significant amounts" of stock owned, each of the defendants had a formal title that showed his responsibility for the company's "overall performance, or for its finances"); *SEC v. Franklin Atlas Corp.*, 154 F. Supp. 395, 400 (S.D.N.Y. 1957) (the defendant was alleged to have used his relative's holdings to exercise control over the company's operations, including attempting to purchase real estate for the company and causing its stock to be issued); *Mecca v. Gibraltar Corp. of Am.*, 746 F. Supp. 338, 342 (S.D.N.Y. 1990) (in addition to financing, the defendants also installed their own representatives on-site to oversee the company's finances and inventory, required vendors to pay in advance (over the primary violator's objection), and insisted on providing advance consent to move equipment necessary for the business); *United States v. Wolfson*, 405 F.2d 779, 781 (2d Cir. 1968) ("no corporate policy decisions" were made without the largest shareholder's knowledge and consent); *Duncan v. Pencer*, No. 94 Civ. 0321(LAP), 1996 WL 19043, at *18 (S.D.N.Y. Jan. 18, 1996) (each defendant had a formal title demonstrating his or her respective specific role and control over particular policies, procedures and operations at the company); *In re Solucorp Indus., Ltd. Sec. Litig.*, No. 98CIV.3248(LMM), 2000 WL 1708186, at *7 (S.D.N.Y. Nov. 15, 2000) (20(a) defendants had "active daily roles" and were officers, formal members of the Board, or agents of the company who had access to information").

Finally, *Drobbin v. Nicolet Instrument Corp.*, 631 F. Supp. 860, 885 (S.D.N.Y. 1986) does not stand for Plaintiffs' contention that a familial or other relationship alone is sufficient to allege control.  (*See* Opp'n at 13.)

Companies or Garza would have acted differently. None of Plaintiffs' allegations suggests that Fraser exerted any of his hypothetical control over Garza or the Companies regarding these (or any other) decisions. Instead, Plaintiffs' allegations demonstrate that Garza was the ultimate authority on all things related to the Companies — beholden to no one but himself. (*See*, *e.g.*, Am. Compl. ¶ 116 ("Garza had ultimate authority and control over GAW Miners' promotional materials . . . .").) That Garza occasionally agreed that a suggestion made by Fraser was worth implementing does not demonstrate Fraser's control, but, at most, advice or guidance, which is insufficient to plead control under Section 20(a). (*See*, *supra* page 3; First Mot. to Dismiss at 9; Second Mot. to Dismiss at 6, 8-11.)

## II.  PLAINTIFFS HAVE NOT MET THE SECOND CIRCUIT'S CULPABLE PARTICIPATION REQUIREMENT.

To avoid their pleading burden, Plaintiffs collapse the separate and distinct Section 20(a) elements of **control** and **culpable participation** in a manner that flouts Second Circuit and this Court's precedent. The Second Circuit has determined that, "[t]o establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007); *see Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014) (same). Control and culpable participation are independent and necessary components of Section 20(a) liability, each of which Plaintiffs must plead. *Lanza v. Drexel & Co.*, 479 F.2d 1277, 1299 (2d Cir. 1973) (congressional intent in enacting Section 20 "was obviously to impose liability only on those . . . who are in some meaningful sense culpable participants in the fraud perpetrated by controlled persons"). The culpable participation element captures the "state-of-mind" requirement that Congress

6

included when it enacted Section 20(a).  *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 209 n.28 (1976) (recognizing that Section 20(a) includes a "state-of-mind condition").  But the Second Circuit has not equated or otherwise defined culpable participation in terms of the good-faith defense that Plaintiffs assert reduces their pleading burden.  (*See* Opp'n at 19; First Mot. to Dismiss at 9.)

By conflating the separate elements of control and culpable participation, Plaintiffs further highlight the weaknesses in their claim that Fraser culpably participated in Garza's and the Companies' scheme.  Plaintiffs urge the Court to discount *Poptech, L.P. v. Stewardship Credit Arbitrage Fund, LLC*, 792 F. Supp. 2d 328 (D. Conn. 2011) ("*Poptech I*"), in favor of *Salit v. Stanley Works*, 802 F. Supp. 728, 734-35 (D. Conn. 1992), a 25-year old case finding that director status alone — which courts have overwhelmingly held is <u>not</u> sufficient to plead control[4] — was sufficient to state a Section 20(a) claim and that culpable participation is not an element of Section 20(a) liability — although *Poptech I*, a more recent and well-reasoned opinion, holds otherwise.  *See Poptech I*, 792 F. Supp. 2d at 331-33 (Opp'n at 21 n.77).  Furthermore, Plaintiffs' reading ignores this Court's precedent, including *Poptech, L.P. v. Stewardship Inv. Advisors, LLC*, 849 F. Supp. 2d 249 (D. Conn. 2012) ("*Poptech II*").  In *Poptech II*, District Judge Kravitz declared that, "in the absence of Second Circuit guidance, the [District of Connecticut] adheres to its earlier legal conclusions on this issue" and maintains that "a prima facie case of control person liability requires allegations of control . . . and culpable participation (measured by the PSLRA's scienter requirements)."  *Id.* at 275.[5]

---

4. *See, e.g.*, *In re Alstom SA*, 406 F. Supp. 2d 433, 487 (S.D.N.Y. 2005) (recognizing that "officer or director status alone does not constitute control for the purposes of Section 20(a) liability").

5. The plaintiffs in *Poptech II*, unlike Plaintiffs here, adequately plead culpable participation against a defendant who was (i) the companies' CFO, (ii) involved in creating and/or reviewing certain presentation materials,

7

Plaintiffs misleadingly represent that other cases involving "similar allegations" adequately plead culpable participation. (Opp'n at 24.) But the cases cited by Plaintiffs actually underscore the inadequacy of their pleading. Unlike the Amended Complaint, Plaintiffs' cases each involved detailed, non-conclusory allegations of the defendants' daily participation in the fraudulent transactions. For example, in *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87 (2d Cir. 2001), Plaintiffs represent that an allegation of defendant DeRoziere's status as an officer was sufficient to plead Section 20(a) liability, when in fact, DeRoziere was also alleged to have primary responsibility for the bank's fraudulent transactions with the plaintiffs in that case. (Opp'n at 20, 24.) DeRoziere was a culpable participant because of the acts that he affirmatively took to perpetuate the fraud, not because of his title. *Suez Equity*, 250 F.3d at 100-01. Likewise, in *In re Check Point Software Technologies, Ltd. Securities Litigation*, No. 03 Civ. 6594 (RMB), 2006 WL 1116699, at *5 (S.D.N.Y. Apr. 26, 2006), the defendants "acted as culpable participants" in part because of their "heavy involvement in the [Company's] day-to-day business operations . . . ." Here, Plaintiffs do not allege that Fraser's limited involvement was even weekly or monthly, let alone daily. *See also In re EZCorp, Inc. Sec. Litigs.*, 181 F. Supp. 3d 197, 213-14 (S.D.N.Y. 2016) (same); *In re Pfizer Inc. Sec. Litig.*, 584 F. Supp. 2d 621, 641 (S.D.N.Y. 2008) (same) *abrogated on other grounds by Dekalb Cty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393, 405 (2d Cir. 2016).

### III.     PLAINTIFFS FAIL TO PLEAD STATE LAW CLAIMS AGAINST FRASER.

Plaintiffs' arguments regarding their state law claims against Fraser are rife with misunderstanding and error. First, Plaintiffs assert that the Court's opinion in *Pearsall Holdings, LP v. Mountain High Funding, LLC*, No. 3:13cv437 (JBA), 2014 WL 7270334 (D. Conn.

---

(iii) "had control over" an account involved in the fraud, and (iv) testified that he was aware that the Companies "were departing from their own investment standards with respect to a majority" of their investments. *Id.*

8

Dec. 18, 2014) "should be disregarded" (Opp'n at 33 n.119) because the Court purportedly did not consider *Connecticut National Bank v. Giacomi*, 699 A.2d 101, 242 Conn. 17 (Conn. 1997) ("*Giacomi II*"). Plaintiffs are wrong. *Pearsall* does cite to *Giacomi II* — albeit using a different reporter (the official Connecticut reporter) than the one that Plaintiffs use in their opposition brief (the regional reporter). *See*, *e.g.*, *Pearsall*, 2014 WL 7270334, at *5, *6. *Pearsall* is good law and there is no basis for the Court to disregard it.

Plaintiffs also misread Fraser's reliance on *Patriot Exploration, LLC v. SandRidge Energy, Inc.*, 951 F. Supp. 2d 331 (D. Conn. 2013). Fraser cites the *Patriot* Court's decision regarding the <u>eighth</u> cause of action brought under Section 36b-29(c) (*see* First Mot. to Dismiss at 19), alleging that officer defendants "directly or indirectly controlled" the company. *Patriot Expl.*, 951 F. Supp. 2d at 363. The Court dismissed that cause of action with respect to certain of the defendant officers "for the reasons discussed above with respect to federal Section 20(a) claim." *Id*. The Court also denied the motion to dismiss Section 36b-29(c) claims against other officer defendants "for the reasons discussed above with respect to federal Section 20(a) claim." *Id*. Plaintiffs focus on the <u>fifth</u> cause of action and incorrectly interpret *Patriot* to mean that Section 36b-29(c) imposes liability "solely due" to status. (*See* Opp'n at 34.) Plaintiffs ignore this Court's clear language in *Patriot Exploration*, which in no way supports Plaintiffs' bold contention that Section 36b-29(c) is "broader than" Section 20(a) or imposes liability "based on a defendant's status." (*Id.*)

Finally, Plaintiffs' argument that 28 U.S.C. § 1367(c)(3) would not apply because they still have pending claims against the Companies is baseless, particularly given Plaintiffs' recent motion for a default judgment against the Companies. (ECF No. 59.) Accordingly, once the

9

Court dismisses the Section 20(a) claim against Fraser, there is no reason to retain jurisdiction over Plaintiffs' state law claims.

## CONCLUSION

For the foregoing reasons and those set forth in his Motions (ECF Nos. 42 and 62), Fraser respectfully requests that the Court dismiss the Amended Complaint as against him.

Dated:  January 23, 2017

>HUGHES HUBBARD & REED LLP
>
>By: s/ Sarah L. Cave
>Daniel H. Weiner (ct12180)
>Sarah L. Cave (phv08437)
>Sara E. Echenique (phv08436)
>Hughes Hubbard & Reed LLP
>One Battery Park Plaza
>New York, NY  10004-1482
>Tel.: (212) 837-6000
>Fax: (212) 422-4726
>Email: sarah.cave@hugheshubbard.com
>
>David R. Schaefer (ct04334)
>Sean M. Fisher (ct23087)
>Brenner, Saltzman & Wallman LLP
>271 Whitney Avenue
>New Haven, CT  06511
>Tel.: (203) 772-2600
>Fax: (203) 562-2098
>Email: sfisher@bswlaw.com
>
>*Attorneys for Defendant Stuart A. Fraser*