UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, DEAN ALLEN SHINNERS, and JASON VARGAS, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiffs,<br><br> vs.<br><br>STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC, (d/b/a ZEN CLOUD),<br><br>      Defendants. | Case 3:16-cv-00940<br><br>Hon. Michael P. Shea<br><br>PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT STUART A FRASER'S MOTION TO COMPEL DISCOVERY<br><br>July 5, 2018 |

  The Court should deny Stuart Fraser's motion to compel. Fraser is attempting to compel notes an attorney took while interviewing a witness. *Hickman v. Taylor*, 329 U.S. 495 (1947), the seminal case on the work product doctrine, held that almost identical materials were protected from discovery. The Federal Reporter is filled with cases reaching similar conclusions: an attorney's notes from an interview with a witness are work product and can only be discovered in exceptional circumstances. Here, Fraser fails to explain why he has a substantial need for the notes and has put in little effort to obtain the substantial equivalent of the notes through the deposition of the witness.

  Fraser's other argument is that plaintiffs waived work product protection by using information from the interview in an amended complaint. Fraser mistakenly cites case law relating to "at issue" waiver. Those cases hold that when a party makes

1

*Oral Argument Waived*

communications or documents protected by the attorney-client privilege or the work-product doctrine a factual predicate in the case, privilege is waived. Here, plaintiffs are making historical facts, not legal advice, an issue in the case. "At issue" waiver does not apply.

Finally, Fraser argues that the Court should conduct an *in camera* inspection of the notes. Plaintiffs believe an *in camera* inspection is unnecessary, but are of course willing to submit note notes *in camera* if the Court believes doing so would be helpful.

## I.     Background

This case is a securities fraud class action about a high-tech Ponzi scheme orchestrated by Joshua Garza. Fraser was Garza's business partner, provided financing for the Ponzi scheme, and co-owned the entities[1] that perpetrated the fraud. As such, plaintiffs allege that Mr. Fraser was a controlling person under § 20(a) of the Securities Exchange Act of 1934.

In October 2016—after this lawsuit was already pending—one of plaintiffs' lawyers (Colin Watterson) interviewed Garza.[2] The interview focused on the extent to which Fraser controlled GAW Miners, ZenMiner, and Garza himself.[3] The interview also delved into topics related to the underlying fraud.[4]

---

[1] The companies involved in the scheme are GAW Miners, LLC ("GAW Miners") and ZenMiner, LLC ("ZenMiner"; together, the "companies").
[2] Ex. A (Watterson Decl.) at ¶ 3.
[3] Ex. A (Watterson Decl.) at ¶ 5.
[4] Ex. A (Watterson Decl.) at ¶ 5.

The only people present during the interview were Garza and Watterson.[5] A paralegal from Watterson's firm, Simon DeGeorges, also attended by phone.[6] During the interview, Watterson took handwritten notes.[7] DeGeorges also took notes.[8] After the interview, Watterson edited, revised, and supplemented the notes prepared by DeGeorges.[9]

While plaintiffs' attorneys were collecting documents to produce to Fraser during document discovery in this lawsuit, counsel for plaintiffs learned that Allen Shinners—one of the named plaintiffs in the case—forwarded a copy of the notes to an FBI agent named Mark Munster.[10]

While this case was ongoing, Garza pled guilty to one count of wire fraud, basically for the same conduct that is at issue in this case.[11] Garza is scheduled to be sentenced on September 13, 2018.[12]

## II.  Law on Work Product.

The work-product doctrine protects "documents and tangible things prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney . . . )." FRCP 26(b)(3). The doctrine "is intended to preserve a zone of privacy in which a lawyer can prepare and develop legal theories

---

[5] Ex. A (Watterson Decl.) at ¶ 4.
[6] Ex. A (Watterson Decl.) at ¶ 4.
[7] Ex. A (Watterson Decl.) at ¶ 6.
[8] Ex. A (Watterson Decl.) at ¶ 7.
[9] Ex. A (Watterson Decl.) at ¶ 7.
[10] Ex. A (Watterson Decl.) at ¶ 9.
[11] Ex. A-1 (Petition to Enter Plea of Guilty).
[12] *See* Docket Entry 30, *United States v. Garza*, No. 3:17-cr-00158 (D. Conn. June 4, 2018).

and strategy 'with an eye toward litigation,' free from unnecessary intrusion by his adversaries." *U.S. v. Adlman*, 134 F.3d 1194, 1196 (2d Cir. 1998) (quoting *Hickman*, 329 U.S. at 510–11). "The doctrine extends to notes, memoranda, correspondence, witness interviews, and other materials, whether they are created by an attorney or by an agent for the attorney." *Lagace v. New England Cent. R.R.*, 2007 WL 2889465, at *1 (D. Conn. Sept. 28, 2007).

There are two types of work product: fact work product and opinion product. "[F]act work product may encompass factual material, including the result of a factual investigation." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d. Cir. 2007). "In contrast, opinion work product reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative,' and is entitled to greater protection than fact work product." *Id.* (quoting *Adlman*, 134 F.3d at 1197).

Work-product protection is not absolute. A party may obtain discovery of work product if "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FRCP 26(b)(3)(A)(ii). Opinion work product "receive[s] special protection not accorded to factual material." *Adlman*, 134 F.3d at 1197. While some courts hold that opinion work product is never discoverable, "at a minimum, such material is to be protected unless a highly persuasive showing is made." *Id.* at 1204. If a court concludes that work product should be disclosed, "it must protect against disclosure of the mental

4

impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." FRCP 26(b)(3)(B).

Work product protection can be waived. But, "unlike work protected by the attorney-client privilege, mere disclosure of evidence to a third party does not necessarily waive work-product protection." *Lavatec Laundry Tech., GmbH v. Lavatec, Inc.*, 2014 WL 1665018, at *2 (D. Conn. Apr. 25, 2014). "Rather, the standard articulated for determining when work-product protection has been waived is whether 'the disclosure substantially increases the opportunity for potential adversaries to obtain the information.'" *Id.* (quoting *In re Grand Jury Subpoenas*, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)).

III.     The notes are opinion work product that is protected from disclosure.

A.     The notes are work product.

It should be beyond dispute that notes prepared by an attorney documenting an interview with a witness during an ongoing lawsuit are work product. Nevertheless, Fraser says "not all notes generated by attorneys or their representatives are shielded by the work product doctrine."[13] His argument is that the notes contain "factual information." That claim might support an argument that a document is fact work product and not opinion work product. But simply because a document contains factual information does not disqualify it from receiving work product protection. A document can consist entirely of factual statements but still be work product.

---

[13] Dkt. 82-1 at 5.

"Three conditions must be met to earn work product protection. The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *Lagace*, 2007 WL 2889465 at *2 (quoting *Sicurelli v. Jeneric/Pentron Inc.*, 2006 WL 1329709, at *2). The notes plainly satisfy all three criteria. The notes are indisputably documents. The notes were taken by an attorney in his capacity as representative of plaintiffs while the lawsuit was ongoing.[14] One of the purposes of the interview was to learn information to support plaintiffs' theory that Fraser controlled the companies and Garza, *i.e.*, to support claims in the litigation.[15] The witness was the CEO of two defendants in this case and orchestrated the underlying fraud. It is black-letter law that work product exists to protect "the necessary way in which lawyers act within the framework of our system of jurisprudence" and that such "work is reflected, of course, in ***interviews, statements***, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways." *Hickman*, 329 U.S. at 510–11 (emphasis added).

Fraser's cases are inapposite. In *Veliotis v. Nawrocki*, 1998 WL 1661398, at *4 (D. Conn. Dec. 9, 1998), the plaintiffs sought to depose an attorney about a conversation he had with the defendant's father at the defendant's deposition. The attorney resisted on work product grounds but did not submit "any affidavits or privilege logs to support his claim of privilege." As such, the court held that the

---

[14] *See* Ex. A (Watterson Decl.) at 3.
[15] *See* Ex. A (Watterson Decl.) at 5.

6

defendant has failed to meet his burden that the requested material is entitled to work product protection." *Id.* at *2. Here, plaintiffs have submitted a declaration, a privilege log,[16] and are—if the court deems it appropriate—willing to submit the notes for *in camera* review.

*Grand Jury Subpoena Dated July 6*, 510 F.3d at 183, and *In re John Doe Corp.*, 675 F.2d 482, 493 (2d. Cir. 1982), both hurt Fraser. In both cases, the court concluded that materials were fact work product, but that they should ultimately be produced because the moving party had a substantial need for the discovery. Neither case suggests materials that contain "factual information" are not work product.

B.    <u>The notes are opinion work product.</u>

The notes are opinion work product because they contain the mental impressions of one of plaintiffs' attorneys. Plaintiffs' attorney interviewed Garza to learn information to support plaintiffs' claim that Fraser is a controlling person of Garza and the Companies under § 20(a) of the Securities Exchange Act of 1934 and about the underlying fraud.[17] Disclosing the notes would thus disclose information about the attorney's mental processes:

> an attorney's mental processes are revealed . . . even when the attorney's memorandum is factual in nature, merely summarizing what the witness said in response to the attorney's questions. The attorney exercises judgment in determining which witnesses to interview, what subject areas to cover (and not cover), how to frame specific questions and in what order, and how much time to devote to particular topics. Further, the attorney exercises selective judgment in determining what is worthy of being written down (or remembered) during the interview.

---

[16] The relevant entries are included as Ex. A-3.
[17] *See* Ex. A (Watterson Decl.) at ¶ 5.

7

*S.E.C. v. Nadel*, 2012 WL 1268297, at *7 (E.D.N.Y. April 16, 2012) (quoting *SEC v. Sentinel Mgmt. Grp., Inc.*, 2010 WL 4977220 (N.D. Ill. Dec. 2, 2010)). Based on similar reasoning, many cases hold that interview notes are privileged. For example, in *S.E.C. v. NIR Group, LLC*, 283 F.R.D. 127 (E.D.N.Y. 2012), the court held that because: "The notes and memoranda, though they may contain factual assertions by the interviewee, prominently feature Byrne's questions, follow-up points, and notations such as enumeration that cannot be adequately extricated from the facts. This is highly protected work product of which production may not be demanded." *See also U.S. v. J.B. Williams Co., Inc.*, 402 F. Supp. 796, 801 (S.D.N.Y. 1975) ("In this case, the records of recollections of attorneys of the Federal Trade Commission engaged in compliance proceedings with the respondent cannot be characterized as purely factual even if they purport only to record what transpired. Rather, they are work product. Work product covers the personal recollections' of an attorney. A lawyer will always sift what he considers to be the relevant from the irrelevant facts.") (internal citations and quotation marks omitted). The notes here are similar.[18]

Fraser's demand for production of notes taken by one of plaintiffs' lawyers is also troubling because it has the potential to convert a party's lawyer into a witness. In *Hickman*, the Supreme Court explained:

> But as to oral statements made by witnesses to Fortenbaugh, whether presently in the form of his mental impressions or memoranda, we do not believe that any showing of necessity can be made under the circumstances of this case so as to justify production. Under ordinary conditions, forcing an attorney to repeat or write out all that witnesses have told him and to deliver the account to his adversary gives rise to grave dangers of inaccuracy and

---

[18] Ex. A (Watterson Decl.) at ¶¶ 6–7.

8

untrustworthiness. No legitimate purpose is served by such production. The practice forces the attorney to testify as to what he remembers or what he saw fit to write down regarding witnesses' remarks. Such testimony could not qualify as evidence; and to use it for impeachment or corroborative purposes would make the attorney much less an officer of the court and much more an ordinary witness. The standards of the profession would thereby suffer.

Fraser's cases are inapposite. In *Grand Jury Subpoena Dated July 6*, 510 F.3d at 183, a court ordered a mortgage broker to produce records he made of conversations with another broker. *Id.* at 182. The broker claimed he made the recordings pursuant to the advice of counsel. *Id.* The government conceded—and the court concluded—that the recordings were fact work product. *Id.* at 184. Ultimately, the Second Circuit affirmed the district court because it concluded that the government had substantial need for the communications. The case is distinguishable because the recordings were made by the mortgage broker, and so there was no way they could reflect an attorney's mental processes. Here, the notes were taken by a lawyer and do reflect his mental processes.

Likewise, in *In re John Doe Corp.*, 675 F.2d 482, 493 (2d. Cir. 1982), the court concluded that notes from an interview of an employee were subject to work-product protection. However, the court concluded that the government had a substantial need for the notes and—after an *in camera* inspection—that the notes did not reveal an opinion's mental processes but rather "merely disclose the concerns a layman would have as well as a lawyer in these particular circumstances." *Id.* at 493. Here, plaintiffs' counsel asked Garza questions to support a particular legal theory, *i.e.*,

9

liability under § 20(a) of the Securities Exchange Act of 1934 and recorded information he deemed significant.[19]

Because the notes are opinion work product, Fraser must make a "highly persuasive" showing that he is entitled to the notes.

C. <u>Fraser has not identified a substantial need for the notes or that he cannot obtain their equivalent by other means.</u>

While work product protection is not absolute, Fraser has failed to show that he is entitled to the notes. Under FRCP 26(b)(3)(ii), a party seeking discovery of work product must show "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fraser cannot make either showing.

1. *Fraser has no substantial need for the notes.*

Here, Fraser asserts that he has a substantial need for the notes because they "have a unique value apart from those already in the movant's possession."[20] Wrong. "A substantial need exists 'where the information sought is 'essential' to the party's defense, is 'crucial' to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues.'" *Gucci American, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74–75 (S.D.N.Y. 2010). As such, courts will only order production of work product when the materials are critical to the prosecution or defense of a claim. For example, in *Harris v. Provident Life & Accident Ins. Co.*, 198 F.R.D. 26 (N.D.N.Y. 2000), a doctor sued for payment of disability

---

[19] Ex. A (Watterson Decl.) at ¶ 5.
[20] Dkt. 82-1 at 6–7.

benefits based on her claim that she had a latex allergy. *Id.* at 28–29. The plaintiff's lawyer had two tests done to determine whether the doctor was in fact allergic to latex. *Id.* at 29. Apparently, the tests did not show a latex allergy. *Id.* at 31. The plaintiff objected to producing the reports. *Id.* at 29. The court ordered the reports produced because they went to the core of the plaintiff's claims, *i.e.*, that the plaintiff had a latex allergy. Reports that showed that no allergy existed were potentially dispositive.

Fraser has failed to show that the notes are similarly important to his defense. His only argument is that the notes "form the heart of the claims Plaintiffs assert against him in the First Amended Complaint."[21] Even if that were true, that doesn't explain why Fraser needs the notes them to defend himself. Fraser knows plaintiffs' allegations from the amended complaint. That should be sufficient for him to prepare his defense through his own testimony, testimony of GAW Miners employees, through testimony from Garza, or from documentary evidence.

    2. *Fraser can obtain information contained in the notes through other means.*

Fraser also failed to carry his burden and show that he cannot obtain the substantial equivalent of the notes through other means. Here, Fraser can simply take Garza's deposition. It is well established that:

> A witness's availability for a deposition defeats a claim of substantial need for work product material because the party seeking discovery can ask the witness himself about the events in issue, and, if the witness recalls the events in issue, the need for notes or other materials prepared by opposing counsel is, thereby, eliminated.

---

[21] Dkt. 82-1 at 6.

*Handsome, Inc. v. Town of Monroe*, 2014 WL 348196, at *6 (D. Conn. 2014) (quoting *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2002 WL 31385824, at *8 (S.D.N.Y. Oct. 21, 2002)).

Fraser has two responses. First, he says that a process server unsuccessfully attempted to serve Garza with a subpoena *duces tecum* at two different locations.[22] Putting aside Fraser's curious decision to seek only production of documents from Garza and not a deposition, this argument fails. Courts in similar situations have held that that an initial failure to serve a witness with a subpoena does not mean the witness is unavailable such that the party is unable to obtain the information by alternative means. In *McBride v. Medicalodges, Inc.*, 2008 WL 2157114, at *2 (D. Kan. May 22, 2008), a defendant attempted to compel production of a witness statement. The defendant attempted to serve a deposition subpoena on the witness, but "[T]he process server was unable to serve Ms. Stillman because she moved away from her home in Independence, Kansas. Further attempts to locate Ms. Stillman where she may have relocated were unsuccessful." *Id.* at *2. The Defendant included an affidavit from the process server indicating that

> the process server made one attempt to serve a subpoena on Ms. Stillman. In doing so, he learned she was in the process of moving to Horton, Kansas. The affidavit further states the process server then used "various internet search tools" in an attempt to locate a current address for Ms. Stillman, but was unable to locate such an address and discontinued attempting service of process.

---

[22] Dkt. 82-1 at 7.

*Id.* The court held that a single attempt to serve the witness and "Sitting behind a computer and punching keys for an unidentified web site hardly satisfies a burden that calls for a reasonable effort to justify the invasion of work product." *Id.*

Other than attempt to serve Garza twice and asking his criminal lawyer to accept service of a subpoena, Fraser's motion indicates he took no additional steps to serve Garza. For example, Fraser hasn't hired a personal investigator or apparently taken any other steps to find Garza to serve him. And it simply is not the case that Garza cannot be found. Garza has pled guilty to wire fraud and is awaiting sentencing. While he is currently out of jail on bond, Garza is prohibited from leaving the continental United States and must advise a supervising officer if he moves.[23] An additional alternative exists: counsel for plaintiffs are currently trying to schedule a deposition with Garza.

Fraser's other argument is that Garza previously asserted his Fifth Amendment privilege against self-incrimination in a deposition taken by the SEC.[24] Fraser surmises that Garza will assert his Fifth Amendment privilege in any deposition in this case. There are several problems with that argument. **First,** Fraser should not be permitted to obtain attorney work product on a hunch. Since his deposition, Garza has pled guilty to a count of wire fraud and is currently scheduled to be sentenced on September 13, 2018.[25] After sentencing, Garza would presumably

---

[23] Ex. A-2 (Order Setting Conditions of Release).
[24] Dkt. 82-1 at 7.
[25] *See* Docket Entry 30, *United States v. Garza*, No. 3:17-cr-00158 (D. Conn. June 4, 2018).

13

have little reason to assert his Fifth Amendment rights.[26] Fifth Amendment protections are "confined to instances where the witness has reasonable cause to apprehend danger from a direct answer." *Hoffman v. U. S.*, 341 U.S. 479, 486 (1951).

**Second,** Fraser should not be permitted to presume that Garza would refuse to answer all questions he is asked. Blanket assertions of the Fifth Amendment privilege against self-incrimination are impermissible. *See In re Livent, Inc. Noteholders Sec. Litig.*, 151 F. Supp. 2d 371, 444 (S.D.N.Y. 2001). Rather, Garza may plead the Fifth only where he has "reasonable cause to believe that a direct answer would support a conviction or furnish a link in the chain of evidence needed to prove a crime." *Camelot Group, Ltd. v. W. A. Krueger Co.*, 486 F. Supp. 1221, 1225 (S.D.N.Y. 1980). "[T]he court may order a witness to answer if it clearly appears he is mistaken as to the justification for the privilege or is advancing his claim as a subterfuge." *Id.* Much of the information in the notes relates to whether Fraser was a controlling person of GAW Miners, ZenMiner, or Garza. For example, topics like Fraser's ownership, investment, and control of GAW Miners and ZenMiner would not tend to incriminate Garza.

IV. <u>Plaintiffs did not waive work product protections.</u>

Fraser also argues that plaintiffs waived work product protection by putting otherwise protected information "at issue" in the case.

---

[26] Discovery closes before September 13. However, plaintiffs are willing to agree to extend discovery for the purposes of taking Garza's deposition.

14

"At-issue" waiver does not apply here. "At issue" waiver occurs when a party makes privileged information a factual issue in a case, frequently through an advice-of-counsel defense. For example, a party might assert that it relied on the advice of its lawyers as a way of negating criminal intent.

Fraser's own cases make this clear: "When a party puts legal advice at issue by relying on it as a factual predicate for a claim at trial, it would prejudice the opposing party to shield that advice from scrutiny." *Levy v. Young Adult Institute*, 2015 WL 10891654, at *1 (S.D.N.Y. Dec. 14, 2015). For example, in *Levy*, a defendant put a report at issue "in support of its affirmative defense that reasonableness required a reduction to Levy's SERP payments." *Id*. at *2. The court ordered production of the report because "YAI cannot rely on the Report's conclusion while also preventing the plaintiffs from probing how it was obtained. A determination of whether a compensation payment is "reasonable" requires a consultant to examine the context in which the payment is made, including the governing legal regimes." *Id*. In other words, the defendant made acceptance of the conclusion in the report—that a reduction in payment was reasonable—a factual issue in the case. The situation here is very different here. Plaintiffs are making the historical facts they learned from Garza an issue in this case. But they are in no way claiming that the interview with Garza or the notes themselves have some sort of factual significance for their claims.

In *Lavatec Laundry Tech., GmbH v. Lavatec, Inc.*, 2014 WL 1665018, at *3 (D. Conn. April 25, 2014), the court rejected an argument very similar to the one Fraser

15

makes. The *Lavatec* court explained that work product protection is waived when a "disclosure substantially increases the opportunity for potential adversaries to obtain the information." *Id*. at *3. In *Lavatec*, a plaintiff sought production of communications and drafts of affidavits signed by third parties. *Id*. at *1. The court held that no waiver occurred because "It cannot be that simply because a party produces an affidavit, any materials associated with preparing that affidavit— including attorney work product—are automatically fair game for discovery." The same is true of the amended complaint.[27]

### V. Plaintiffs will submit the notes for *in camera* review if the Court believes doing so would be helpful.

Fraser's final argument is that the Court should review the notes *in camera*. Plaintiffs believe this case is easy and the notes are clearly protected work product. Fraser also has failed to meet his burden of showing he has substantial need for the notes and that he cannot obtain their substantial equivalent. However, plaintiffs will of course submit the notes for *in camera* review if the Court believes reviewing the notes would be helpful.

### VI. Conclusion

The Court should deny Fraser's motion.

---

[27] Fraser also mentions that plaintiffs' privilege log indicates that plaintiff Allen Shinners sent a copy of the notes to an FBI agent. That is not a waiver of work product because the disclosure did not increase the likelihood of Shinner's adversary (*i.e.*, Fraser), obtaining a copy of the notes: "the standard articulated for determining when work-product protection has been waived is whether 'the disclosure substantially increases the opportunity for potential adversaries to obtain the information.'" *Lavatec*, 2014 WL 1665018, at *2 (quoting *In re Grand Jury Subpoenas*, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)).

DATED: July 5, 2018

                          Respectfully submitted,

                          */s/ Mark P. Kindall*
                          Mark P. Kindall (ct13797)
                          E-mail: mkindall@ikrlaw.com
                          Robert A. Izard
                          E-mail: rizard@ikrlaw.com
                          IZARD, KINDALL & RAABE, LLP
                          29 S. Main St., Suite 305
                          West Hartford, CT 06107
                          Tel: (860) 493-6292
                          Fax: (860) 493-6290

                          Marc Seltzer (*pro hac vice*)
                          E-mail:mseltzer@susmangodfrey.com
                          California Bar No. 54534
                          Kathryn Hoek (*pro hac vice*)
                          E-mail: khoek@susmangodfrey.com
                          California Bar No. 219247
                          SUSMAN GODFREY L.L.P.
                          1901 Avenue of the Stars, Suite 950
                          Los Angeles, CA 90067
                          Tel: (310) 789-3100
                          Fax: (310) 789-3150

                          Seth Ard (*pro hac vice*)
                          E-mail: sard@susmangodfrey.com
                          New York Bar No. 4773982
                          SUSMAN GODFREY L.L.P.
                          1301 Avenue of the Americas, 32nd Floor
                          New York, NY 10019-6022
                          Tel: (212) 336-8330
                          Fax: (212) 336-8340

                          Edgar Sargent (*pro hac vice*)
                          Email: esargent@susmangodfrey.com
                          Washington Bar No. 28283
                          Susman Godfrey L.L.P.

        1201 Third Avenue, Suite 3800
        Tel: (202) 516-3880
        Fax: (310) 789-3150

        Colin Watterson (*pro hac vice*)
        Email: cwatterson@susmangodfrey.com
        Texas Bar No. 2409330
        SUSMAN GODFREY L.L.P.
        1000 Louisiana Street, Suite 5100
        Houston, TX 77002
        Tel: (713) 651-9366
        Fax: (713) 654-3367

        *Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Mark P. Kindall, certify that, on July 5, 2018, I caused a true and correct copy of the foregoing document to be served electronically on all counsel of record registered for electronic service for this case.

Executed this 5th day of July 2018 at West Hartford, Connecticut.

                *s/ Mark P. Kindall*
        Mark P. Kindall (ct13797)
        E-mail: mkindall@ikrlaw.com
        IZARD, KINDALL & RAABE, LLP
        29 S. Main St., Suite 305
        West Hartford, CT 06107
        Tel: (860) 493-6292
        Fax: (860) 493-6290