Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

Sarah L. Cave
Partner
Direct Dial: +1 (212) 837-6559
Direct Fax: +1 (212) 299-6559
sarah.cave@hugheshubbard.com

**Hughes Hubbard & Reed**

August 13, 2018

Honorable Michael P. Shea
United States District Court, District of Connecticut
Abraham A. Ribicoff Federal Building
450 Main Street, Room 217
Hartford, CT 06103

        Re:    <u>Audet v. Fraser</u>, No. 16-cv-000940 (D. Conn):  Discovery Dispute

Dear Judge Shea:

        On behalf of Defendant Stuart A. Fraser, we seek an order from the Court compelling Plaintiffs to produce the 1,449 non-attorney communications between Plaintiff Dean Allen Shinners and putative class members ("Class Communications") that pre-date the Plaintiffs' first communications with counsel concerning the subject matter of this action.  Plaintiffs assert that the Class Communications warrant work product protection because "most" of them are "emails sent by Mr. Shinners attempting to identify potential class members."[1]  As discussed below, (1) the work product doctrine does <u>not</u> categorically shield from discovery emails between class members or potential class members regarding a potential lawsuit, (2) many of the emails appear to be sent by non-parties, (3) Plaintiffs' First Amended Privilege Log ("Privilege Log") fails to provide sufficient information to justify work product protection, and (4) even if the Class Communications had been subject to work product protection, Plaintiffs waived that protection by delivering those communications to the FBI.[2]

        Plaintiffs bear the burden of establishing a basis for work product protection with respect to the non-attorney Class Communications.  *See In re Priceline.com Inc. Sec. Lit.*, 233 F.R.D. 92, 94 (D. Conn. Dec. 8, 2005).  The Class Communications are not protected from disclosure.

        <u>First</u>, under Second Circuit law, the work product doctrine does not categorically shield from discovery communications between non-attorneys, such as emails between co-plaintiffs or potential co-plaintiffs regarding a potential lawsuit.  *See Bice v. Robb*, 511 F. App'x 108, 110 (2d Cir. 2013) (summary order) (emails between potential co-plaintiffs regarding their potential claims against the defendant not protected work-product).

---

1. Email from Colin M. Watterson, Plaintiffs' counsel, to Sarah L. Cave, Defendant's counsel (June 15, 2018, 12:46 EDT) (on file with Defendant's counsel).
2. Pursuant to the Court's discovery rules, the parties attempted in good faith to resolve this discovery dispute through letters, emails and phone calls.  On August, 8, 2018, the parties obtained permission from Chambers to submit letters setting forth their respective positions on the Class Communications.

91993939_4

Second, many of the communications listed on Plaintiffs' Privilege Log appear to be emails sent to Mr. Shinners by non-attorneys who are not parties to this action. Putative class members are not parties. See, e.g., Canale v. Colgate-Palmolive Co., No. 16 Civ. 3308 (CS), 2017 WL 112610, at *4 (S.D.N.Y. Jan. 10, 2017). Thus, their communications with Mr. Shinners are not subject to work product protection.

Third, Plaintiffs' Privilege Log fails to articulate a sufficient basis for the claimed protection. Plaintiffs' descriptions of communications on Plaintiffs' Privilege Log such as "organizing/gathering information for lawsuit/class action" are conclusory and lack sufficient detail to justify work product protection. See Jansson v. Stamford Health, Inc., 2018 WL 2095169 at *5 (D. Conn. 2018) (description "Communication regarding Jansson" was held insufficient and conclusory); U.S. v. Constr. Prods. Research, Inc., 73 F.3d 464, 473-74 (2d Cir. 1996) (descriptions such as "Fax Re: DOL Findings" and "Letter Re: Customer Orders" held insufficient to support privilege claims). The mere statement that the documents are communications between potential parties related to a potential lawsuit is not sufficient to justify work product protection. See Bice v. Robb, 511 F. App'x at 110; see also Johnston v. Dow Employees' Pension Plan, No. 14-cv-10427, 2016 WL 1106889, at *6 (E.D. Mich. Mar. 22, 2016) (holding that an unsubstantiated assertion of the work product protection for communications among putative class members did not meet the burden of demonstrating protected status and thus rendered the communications discoverable).

Fourth, even if the Class Communications had been subject to work product protection, Plaintiffs waived that protection by sharing them with the FBI. At Mr. Shinners' July 25, 2018 deposition, he admitted that he gave the FBI all documents he disclosed to his attorneys. As Mr. Fraser has argued in his pending motion to compel production of the Garza Notes, (ECF No. 82), this constitutes a waiver of work product protection. See, e.g., Bank of Am., N.A. v. Terra Nova Ins. Co., 212 F.R.D. 166, 170, 173 (S.D.N.Y. 2002) (work product waived when "work product materials are either given to an adversary or used in such a way that they may end up in the hands of an adversary" and "[w]hen material is disclosed to a law enforcement agency without any agreement regarding confidentiality, there is a strong potential that the material may ultimately become public and thus available to an adversary.").

For the reasons stated above, the Court should order the production of the Class Communications. If the Court suspects that the work product doctrine may apply to some of the communications, it should examine them in camera to determine whether they are discoverable, even if in redacted form. See Unidad Latina En Accion v. U.S. Dep't of Homeland Sec., 253 F.R.D. 44, 46 (D. Conn. 2008) (party ordered to submit disputed documents for court's in camera inspection); Makhous v. Watt, No. 11-cv-05108(PKC) (VMS), 2014 WL 977682, at *5 (E.D.N.Y. Mar. 12, 2014) (same).

Respectfully submitted,

Sarah L. Cave

cc: Colin S. Watterson, Esq. (via email)

91993939_4

# Susman Godfrey l.l.p.

a registered limited liability partnership
Suite 5100
1000 Louisiana Street
Houston, Texas 77002-5096
(713) 651-9366
fax (713) 654-6666
www.susmangodfrey.com

_____

| Suite 1400 | Suite 3800 | 32nd Floor |
| 1900 Avenue of the Stars | 1201 Third Avenue | 1301 Avenue of the Americas |
| Los Angeles, California 90067-6029 | Seattle, Washington 98101-3000 | New York, New York 10019-6023 |
| (310) 789-3100 | (206) 516-3880 | (212) 336-8330 |

Colin Watterson
Direct Dial (713) 653-7844

E-Mail CWatterson@susmangodfrey.com

August 13, 2018

The Honorable Michael P. Shea
United States District Judge for the District of Connecticut
450 Main Street – Room 217
Hartford, Connecticut 06103

Re:   *Audet et al. v. Fraser et al.*, No. 3:16-cv-00940

Dear Judge Shea:

Per the Court's Instructions for Discovery Disputes, plaintiffs submit this letter regarding a discovery dispute brought by defendant Stuart Fraser. Fraser seeks production of communications between plaintiff Allen Shinners ("Shinners") and potential class members. Plaintiffs have withheld these documents as work product.

This case is a securities fraud class action about a high-tech Ponzi scheme perpetrated by GAW Miners, LLC and ZenMiner, LLC (the "companies"). The companies were owned and controlled by Joshua Garza and his business partner, Stuart Fraser. GAW Miners sold several cryptocurrency related investments, including "Hashlets", a supposed share of a cryptocurrency mining operation that in fact did not exist, and "Paycoin", a new cryptocurrency developed by GAW Miners and sold on various false pretenses.

Shinners was an investor in various GAW Miners products, including Hashlets and PayCoin. After it became clear that the companies were a scam, Shinners began to attempt to organize a class action lawsuit. He contacted individuals that invested in the companies and suffered losses to gauge interest in the lawsuit. He also obtained information about their losses. Fraser seeks production of these communications.

Shinners' communications with potential class members are work product. FRCP 26(b)(3)(A) provides that "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party." And although FRCP 26(b)(3)(A) codifies what is sometimes

August 13, 2018
Page 2

known as the "attorney" work product doctrine, the rule itself is not limited to documents prepared by attorneys. It simply applies to documents prepared in anticipation of litigation. "The work product doctrine does not require the documents be prepared at the behest of counsel, but only that they be prepared 'because of the prospect of litigation.'" *Vaher v. Town of Orangetown, N.Y.*, 2013 WL 2097389, at *1 (S.D.N.Y. May 15, 2013) (quoting *United States v. Adlman*, 134 F.3d 1194, 1202 (2d Cir. 1998)).

A party can obtain discovery of work product if "it shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FRCP 26(b)(3)(B). Here, Fraser has no substantial need for the materials.

*First*, Fraser's attorneys already deposed Shinners and spent little or no time questioning Shinners regarding his efforts to organize this lawsuit. Frankly, that makes sense. Shinners organized the lawsuit after the companies went out of business and all relevant historical events already occurred. Shinners' efforts to organize this lawsuit have minimal relevance to any disputed issues in this case.

*Second*, any historical documents Shinners collected from potential class members were produced. Shinners did collect various documents reflecting the purchases made by class members (*e.g.*, transaction confirmation emails). Plaintiffs produced these documents. With these historical documents, Fraser is fully capable of preparing his case.

Respectfully submitted,

*/s/ Colin Watterson*

Colin Watterson

cc:     all counsel of record