UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, *et al.*, | Civil Action No. 3:16-cv-00940 |
| Plaintiffs, | Honorable Michael P. Shea |
| vs. | Magistrate Judge Donna F. Martinez |
| STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC, | |
| | October 26, 2018 |
| Defendants. | |

**DEFENDANT STUART A. FRASER'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

For seven months before Plaintiffs first communicated with counsel in this case, self-proclaimed lead plaintiff Dean Allen Shinners ("Shinners") corresponded with cryptocurrency investors worldwide with one purpose: to drum up interest in getting others to join him (and share costs) in suing former lead defendant Homero Joshua Garza ("Garza") and Garza's cryptocurrency companies, defendants GAW Miners, LLC and ZenMiner, LLC (together, "the Companies"). It is undisputed that Shinners' communications, made mostly via email (the "Shinners Communications"), did not occur at the direction of or involve counsel.

Defendant Stuart A. Fraser ("Fraser") now seeks to compel production of the Shinners Communications. Although Plaintiffs assert that the work product doctrine shields those emails from discovery, that doctrine does not categorically protect communications with putative members of a class who are not parties to the litigation, particularly where, as here, those communications are directly relevant to class certification and contain unique information that Fraser cannot obtain elsewhere.

Even if the work product protection applied, Plaintiffs' First Amended Privilege Log ("Plaintiffs' Privilege Log") fails to provide sufficient information to justify application of that protection.  Finally, Plaintiffs waived any protection by voluntarily providing the Shinners Communications to the Federal Bureau of Investigation ("FBI") without a confidentiality agreement.

### STATEMENT OF FACTS

The three remaining Plaintiffs[1] purport to represent a class of cryptocurrency investors. Shinners, who describes himself as the leader of this lawsuit, claims to have purchased various products from the Companies from approximately August 2014 through December 2014. (Affirmation of Sarah L. Cave dated Oct. 26, 2018 ("Cave Aff."), Ex. A (Shinners Deposition Transcript, dated July 25, 2018 ("Shinners Tr.") at 43:15-18; 120:24-121:9).)

In April 2015, Shinners began gauging "interest in pursuing [a] class action lawsuit against GAW Miners, et al," by contacting individuals who claimed to have purchased cryptocurrency products from the Companies.  (Shinners Tr. at 29:6-21; *see also* ECF No. 93, at 3.)  Over the course of the next year, some of these individuals assisted Shinners in his efforts. (Shinners Tr. at 30:4-31:12.)  During this period, Shinners and those individuals did not engage a law firm and did not identify "individuals as plaintiffs [or] as lead plaintiffs[.]"  (Shinners Tr. at 29:6-31:12.)

Plaintiffs' Privilege Log identifies 1,409 emails[2] between Shinners and non-parties dated between January 2015 and August 2015, all supposedly "sent for purposes of organizing/gathering information for lawsuit/class action."  (Cave Aff. ¶ 4; *see* Cave Aff. Ex. B

---

1.  Plaintiffs originally included Jason Vargas, who withdrew from the case in August 2018 without explanation; Mr. Vargas is no longer a party to this action.  (ECF No. 95.)
2.  Fraser's pre-motion letter identified 1,499 communications at issue due to a typographical error.  (ECF No. 93, at 1.)

(selected excerpts from Plaintiffs' Privilege Log).) However, Plaintiffs' Privilege Log omits the identities of the sender or recipient of many of those emails, instead including incomplete names, nicknames and email addresses with no identifying information. (Cave Aff. ¶ 4; *see*, *e.g.*, Cave Aff. Ex. B.) None of the Shinners Communications includes attorneys or their representatives. (*Id.*)

At his deposition, Shinners testified that he provided the Shinners Communications to the FBI along with "every document, every bit of research, anything [he] had come across or had obtained during the process here and for the last three-plus years . . . ." (Shinners Tr. at 167:2-12.)

## CERTIFICATION OF CONSULTATION

The parties attempted in good faith to resolve this discovery dispute through multiple emails and phone calls. (*See* Cave Aff. ¶ 2.) After the parties submitted letters to the Court setting forth their respective positions, the Court directed the parties to submit briefs on whether the Shinners Communications should be produced in discovery. (ECF Nos. 93, 98.) Pursuant to the Federal Rules of Civil Procedure and Local Rule 37(a), Fraser certifies that he, through his attorneys, attempted in good faith to confer with Plaintiffs in an effort to obtain the requested discovery without judicial action and to resolve the issue that this Motion raises, without success. (Cave Aff. ¶ 2.)

## LEGAL ARGUMENT

The work product doctrine protects only those documents and other tangible things "prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). As the party asserting work product protection, Plaintiffs bear the "heavy burden" of establishing the basis for that assertion. *See In re Grand Jury Subpoena*

3

*Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007); *see also In re Priceline.com Inc. Sec. Lit.*, 233 F.R.D. 92, 94 (D. Conn. 2005).  Here, Plaintiffs have not met this heavy burden of demonstrating that the work product doctrine applies to the Shinners Communications.  And, even if the work product doctrine did apply, Plaintiffs waived any protection afforded by that doctrine by voluntarily sharing the Shinners Communications with a government agency.  *See Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 170 (S.D.N.Y. 2002).  Accordingly, the Court should compel Plaintiffs to produce the Shinners Communications to Fraser.

**I.     The Work Product Doctrine Does Not Protect the Shinners Communications From Discovery.**

The primary purpose of the work product doctrine is to "shelter[] the mental processes of the attorney."  *U.S. v. Adlman*, 68 F.3d 1495, 1501 (2d Cir. 1995).  Here, it is undisputed that <u>no</u> attorneys were involved in the Shinners Communications.  Although the work product doctrine may, at times, extend to documents prepared by a party without attorney involvement, Fed. R. Civ. P. 26(b)(3)(A), the doctrine does not extend so far as to categorically protect all communications from a party to a non-party or a non-party to a party.  *See Bice v. Robb*, 511 F. App'x 108, 110 (2d Cir. 2013) (summary order) ("the documents are not protected by the attorney work-product doctrine, because (though they may have been created because of the prospect of litigation) they are not the work product of an individual acting as the [party's] attorney").  Putative class members are not parties.  *See Canale v. Colgate-Palmolive Co.,* No. 16-CV-3308 (CS), 2017 WL 112610, at *4 (S.D.N.Y. Jan. 10, 2017) ("in the context of class actions, putative class members are not parties before certification").

Here, work product protection does not extend to the Shinners Communications because they are not the work product of Shinners acting as or at the direction of Plaintiffs' counsel, and were in large part made by non-parties.  (*See infra* Section I.A.)  Moreover, the Shinners

4

Communications are discoverable because Fraser has a substantial need for them and cannot obtain them or their substantial equivalent by other means.  *See* Fed. R. Civ. P. 26(b)(3)(A).  (*See infra* Section I.B.)  Even if the work product doctrine applied to the Shinners Communications, Plaintiffs' Privilege Log fails to justify affording that protection here.  (*See infra* Section I.C.)

### A. The Shinners Communications are not entitled to work product protection because they are non-attorney communications that were either sent by or to non-parties.

As discussed above, the work product doctrine does not categorically protect communications from a party to a non-party, or from a non-party to a party.  *See Bice*, 511 F. App'x at 110.  To the extent Rule 26(b)(3) might under certain circumstances shield from discovery certain documents "prepared . . . by or for another party," documents prepared without the involvement of an attorney are not entitled to a high level of protection.  *See Lapaix v. City of New York*, No. 13-CV-07306 (LGS) (SN), 2014 WL 11343854, at *6 (S.D.N.Y. Aug. 15, 2014) (ordering production of emails third parties had sent to the plaintiff).

The Shinners Communications were not prepared by, drafted by, sent or received by, or created at the instruction of Plaintiffs' attorneys.  (Pls' ltr. to Ct., ECF No. 93.)  Rather, each of the Shinners Communications was either (a) prepared by a non-party and sent to Shinners, or (b) prepared by Shinners and sent to a non-party.  (Pls' ltr. to Ct.; *supra* page 2.)  According to Plaintiffs' Privilege Log, Plaintiffs had not yet communicated with counsel at the time the Shinners Communications were sent; the Shinners Communications are thus unlikely to reflect litigation strategy.  Instead, the Shinners Communications are almost certainly factual in nature.  In light of these circumstances, Plaintiffs have not demonstrated that these particular non-attorney communications—many of which non-parties prepared—are subject categorically to work product protection.  *See Bice*, 511 F. App'x at 110.

## B. Fraser has a substantial need for the Shinners Communications and cannot obtain them or their substantial equivalent by any other means.

Even if the Shinners Communications were work product—which they are not—they are discoverable because Fraser has a "substantial need for the materials" and Fraser cannot obtain them (or their substantial equivalent) by other means without undue hardship. Fed. R. Civ. P. 26(b)(3)(A)(ii). A substantial need exists where, as here, the documents sought "have a unique value apart from those already in the movant's possession" and carry "great probative value on contested issues." *In re Aggrenox Antitrust Litig.*, 3:14-md-02516 (SRU), 2017 WL 5885664, at *12, *14 (D. Conn. Nov. 29, 2017) (internal quotation marks omitted); *see also S.E.C. v. Thrasher*, No. 92-CV-6987 (JFK), 1995 WL 46681, at *8 (S.D.N.Y. Feb. 7, 1995) (movants had a "substantial need to learn what the identified witnesses [had] told the Commission and would state under oath about their knowledge of the movants' role in the transmission and receipt of insider information"), *aff'd*, No. 92-CV-6987 (JFK), 1995 WL 456402 (S.D.N.Y. Aug. 2, 1995). To establish a substantial need, a party need only show that "it is likely to be significantly more difficult, time-consuming or expensive to obtain the information from another source" than it is to obtain it from the other party. *In re Aggrenox*, 2017 WL 5885664, at *15.

Here, Fraser has a substantial need for the Shinners Communications because they are directly relevant to class certification and Plaintiffs' underlying claims, and are critical to Fraser's defense. In all likelihood, the Shinners Communications will reveal facts central to issues relevant to class certification such as: (1) whether unique defenses apply to Shinners or the other named Plaintiffs; (2) whether unique defenses apply to a subset of putative class members; and (3) whether individual issues—particularly as to standing, reliance, loss causation

6

and damages—predominate over common questions. *See* Fed. R. Civ. P. 23; *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011).

Fraser cannot obtain the equivalent of the Shinners Communications by other means that are not unduly burdensome or unreasonable. While Fraser could theoretically obtain some information contained in the Shinners Communications by identifying (if possible), locating and subpoenaing the hundreds of non-parties listed on Plaintiffs' Privilege Log, such an undertaking would be extremely burdensome, unreasonable and is "likely to be significantly more difficult, time-consuming or expensive" than it is to obtain this information from Plaintiffs. *In re Aggrenox*, 2017 WL 5885664, at *15. These difficulties are exacerbated by the dearth of identifying information in Plaintiffs' Privilege Log. (Cave Aff. ¶ 4.)[3] There is no other reasonable, unduly burdensome way for Fraser to obtain this valuable information.

### C. Plaintiffs' Privilege Log Does Not Articulate a Sufficient Basis for Work Product Protection.

Under this Court's Local Rule 26(e), a party preparing a privilege log must provide a description of the following: (1) the type of document or electronically stored information; (2) the general subject matter of the document or electronically stored information; (3) the date of the document or electronically stored information; (4) the author of the document or electronically stored information; and (5) each recipient of the document or electronically stored information. D. Conn. L. Civ. R. 26(e). The document description must contain "enough factual detail to enable the adverse party or reviewing court to understand why a particular privilege is being claimed, and the legal basis for the privilege's application . . . ." *Jansson v. Stamford*

---

3. For example, "Crypto Man," "Alpha Dog" and "B H" are designated in the "To" column for entries 60, 347 and 348 respectively; "John j" is designated in the "To" or "From" columns for entries 1354 through 1366; "info@bithome.at" is designated in the "To" column for entry 1333; and "Trestin" is designated in the "To" or "From" columns for entries 1342 through 1346 and 1351 through 1353. (Cave Aff. Ex. B.)

*Health, Inc.*, 312 F. Supp. 3d 289, 295 (D. Conn. 2018).  Privilege logs that show superficial compliance with the Rule 26(e) requirements, but lack "sufficient substantive detail for a meaningful review of the application of the privilege," will result in the Court's rejection of claims for protection.  *Bolorin v. Borrino*, 248 F.R.D. 93, 95 (D. Conn. 2008) (log did not support as privileged communications between the defendant law firm and nonparty business regarding foreclosure action against the plaintiffs).  The mere statement in a privilege log that documents are communications between potential parties related to a prospective lawsuit is not sufficient to justify work product protection.  *See Bice*, 511 F. App'x at 110; *see also Johnston v. Dow Employees' Pension Plan*, No. 14-CV-10427, 2016 WL 1106889, at *6 (E.D. Mich. Mar. 22, 2016) (communications among putative class members were not protected work product).

Plaintiffs' Privilege Log describes each of the Shinners Communications in the exact same fashion:  "Email sent for purposes of organizing/gathering information for lawsuit/class action."  (Cave Aff. ¶ 4; Ex. B.)  This generic description lacks sufficient detail to justify work product protection.  *See Jansson*, 312 F. Supp. 3d at 298 (description "Communication regarding Jansson" was insufficient and conclusory); *U.S. v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473-74 (2d Cir. 1996) (descriptions such as "Fax Re: DOL Findings" and "Letter Re: Customer Orders" were insufficient to support privilege claims).  Plaintiffs' Privilege Log also lacks crucial identifying information, instead listing nicknames, incomplete names or email addresses that do not reveal the individuals' identities.  (*See supra* n. 3.)  Thus, Plaintiffs' Privilege Log fails to articulate a sufficient basis for the claimed work product protection.

**II.     Shinners Waived Any Potential Work Product Protection.**

Even if the work product doctrine might shield the Shinners Communications from discovery, Plaintiffs waived any protection when Shinners voluntarily handed them over to the

8

FBI.  At his deposition, Shinners admitted that he gave the FBI all the documents he disclosed to his attorneys.  (Shinners Tr. at 167:2-12.)  As Fraser argues in his pending motion to compel Plaintiffs' production of notes taken during their 2016 interview of Garza, which Plaintiffs similarly shared with the FBI (ECF No. 82-1, at 8), sharing communications with the FBI constitutes a waiver of work product protection.  *See, e.g., Terra Nova Ins. Co.*, 212 F.R.D. at 170, 173.

### III.     *In Camera* Review Is Appropriate.

For the reasons stated above, the Court should order production of the Shinners Communications.  Should the Court suspect that the work product doctrine may apply, it should examine the Shinners Communications *in camera* to determine whether they are discoverable, even in redacted form.  *See Rubis v. Hartford Fire Ins. Co.*, No. 3:11CV007(WWE), 2013 WL 12284916 (D. Conn. Mar. 28, 2013) (the defendants ordered to provide privilege log and twelve unredacted documents for *in camera* review); *Unidad Latina En Acción v. U.S. Dep't of Homeland Sec.*, 253 F.R.D. 44, 46 (D. Conn. 2008) (party ordered to submit disputed documents for court's *in camera* inspection); *Makhous v. Watt*, No. 11-CV-05108 (PKC)(VMS), 2014 WL 977682, at *5 (E.D.N.Y. Mar. 12, 2014) (same).  Because an *in camera* review is not "a substitute for . . . an adequate record in support of [] privilege claims," *Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 475 (S.D.N.Y. Jun. 3, 1993), the Court need only conduct such a review if it determines that Plaintiffs have made an adequate *prima facie* showing that work product applies to the Shinners Communications.

## **CONCLUSION**

For the reasons set forth above, the Court should compel Plaintiffs to produce the Shinners Communications to Fraser. At a minimum, the Court should direct Plaintiffs to submit the Shinners Communications for *in camera* review.

Dated: October 26, 2018

Respectfully submitted,

HUGHES HUBBARD & REED LLP

By: /s/ Sarah L. Cave

Daniel H. Weiner (ct12180)
Sarah L. Cave (phv08437)
Sara E. Echenique (phv08436)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004-1482
Tel.: (212) 837-6000
Fax: (212) 422-4726
Email: Sarah.cave@hugheshubbard.com

David R. Schaefer (ct04334)
Sean M. Fisher (ct23087)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT 06511
Tel.: (203) 772-2600
Fax: (203) 562-2098
Email: sfisher@bswlaw.com

*Attorneys for Defendant Stuart A. Fraser*

## CERTIFICATE OF SERVICE

       I hereby certify that on October 26, 2018, a copy of the foregoing Memorandum of Law in Support of Motion to Compel Discovery was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

       Respectfully submitted,

       /s/ Sarah L. Cave

       Sarah L. Cave (phv08437)
       One Battery Park Plaza
       New York, NY  10004-1482
       Tel.: (212) 837-6000
       Fax: (212) 422-4726
       Email: sarah.cave@hugheshubbard.com