UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, DEAN ALLEN SHINNERS, and JASON VARGAS, Individually and on Behalf of All Others Similarly Situated,<br><br>       Plaintiffs,<br><br> vs.<br><br>STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC, (d/b/a ZEN CLOUD),<br><br>       Defendants. | Case 3:16-cv-00940<br><br>Hon. Michael P. Shea<br><br>PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT STUART A FRASER'S MOTION TO COMPEL DISCOVERY (DKT. 103)<br><br>November 16, 2018 |

The Court should deny Stuart Fraser's motion to compel emails between plaintiff Allen Shinners and other purative class members. Fraser doesn't dispute that the emails he is trying to compel meet the definition of work product. How could he? The emails (1) are plainly documents; (2) were plainly sent in anticipation of litigation; (3) were plainly prepared by or for a party. That means that the documents qualify for work product protection under FRCP 26(b)(3).

Fraser's main argument to the contrary is that the emails were not sent at the direction of counsel. That argument fails. It is well established that a lawyer need not be involved for the work-product doctrine to apply.

Fraser's argument that he has substantial need for the documents fails. Fraser recently deposed Shinners and didn't ask a single question about his communications with other class members. Fraser also hasn't tried to obtain any discovery from absent class members. Fraser's argument that plaintiffs' privilege

*Oral Argument Waived*

log is inadequate fails too. A privilege log is inadequate when it fails to provide enough information for an adversary to evaluate the claim of privilege. Fraser evaluated the claim of privilege, found it wanting, and filed this motion to compel. The parties disagree over the merits of the privilege claim (hence the motion practice), but there is no additional information Fraser needs to evaluate whether the documents are privileged or not. Finally, Fraser says Shinners waived work product protection by providing the documents to the FBI. That is incorrect as a factual matter.

## I.
## Background

This case is a securities fraud class action about a high-tech Ponzi scheme orchestrated by Joshua Garza. Fraser was Garza's business partner, provided financing for the Ponzi scheme, and co-owned the entities[1] that perpetrated the fraud. Shiners is one of the victims of the fraud.[2]

The fraud began to come to light in early 2015 when the SEC served a subpoena on GAW Miners.[3] As leaks began to reveal the extent of the fraud, Shinners began communicating with other investors about potentially filing a class action lawsuit against the companies.[4] Shinners was in constant communication with lawyers during this time, although not the lawyers he ultimately retained.[5] The primary purpose of the communications were to gather information about how

---

[1] The companies involved in the scheme are GAW Miners, LLC  ("GAW Miners") and ZenMiner, LLC ("ZenMiner"; together, the "companies").
[2] Shinners Decl. at ¶ 2.
[3] Shinners Decl. at ¶ 3.
[4] Shinners Decl. at ¶ 4.
[5] Shinners Decl. at ¶ 8.

much money each investor lost and other factual information about the fraud.[6] Ultimately, Shinners created a website called "gawsuit.com" that allowed investors to upload data about their losses.[7] Investors uploaded data from the GAW Miners transactional database, bank statements, emails from the companies verifying their purchases, etc.[8] Shinners shared the information that investors uploaded with the FBI,[9] and those documents have been produced in discovery in this lawsuit.[10]

II.

The law on the work-product doctrine.

The work-product doctrine protects "documents and tangible things prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney . . . )." FRCP 26(b)(3).

There are two types of work product: fact work product and opinion product. "[F]act work product may encompass factual material, including the result of a factual investigation." *In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d. Cir. 2007). "In contrast, opinion work product reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative,' and is entitled to greater protection than fact work product.'" *Id.* (quoting *U.S. v. Adlman*, 134 F.3d 1194, 1197 (2d. Cir. 1998)).

Work-product protection is not absolute. A party may obtain discovery of work product if "it has substantial need for the materials to prepare its case and

---

[6] Shinners Decl. at ¶ 4
[7] Shinners Decl. at ¶ 5.
[8] Shinners Decl. at ¶ 5.
[9] Shinners Decl. at ¶ 7.
[10] Watterson Decl. at ¶ 5.

cannot, without undue hardship, obtain their substantial equivalent by other means." FRCP 26(b)(3)(A)(ii).

Work product protection can be waived. But, "unlike work protected by the attorney-client privilege, mere disclosure of evidence to a third party does not necessarily waive work-product protection." *Lavatec Laundry Tech., GmbH v. Lavatec, Inc.*, 2014 WL 1665018, at *2 (D. Conn. Apr. 25, 2014). "Rather, the standard articulated for determining when work-product protection has been waived is whether 'the disclosure substantially increases the opportunity for potential adversaries to obtain the information.'" *Id.* (quoting *In re Grand Jury Subpoenas*, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)).

III.

The emails are work product.

"Three conditions must be met to earn work product protection. The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by or for his representative." *Lagace v. New England Central R.R.*, 2007 WL 2889465 at *2 (D. Conn. Sept. 28, 2007) (quoting *Sicurelli v. Jeneric/Pentron Inc.*, 2006 WL 1329709, at *2 (E.D.N.Y. May 16, 2006)). Fraser does not dispute that each of these elements are met. Emails are plainly documents. All of the emails at issue were created while Shinners was attempting to gather information for a class action, and while he was discussing a class action with attorneys.[11] Thus, the documents were generated in

---

[11] Shinners Decl. at ¶¶ 4, 6, 8.

anticipation of litigation. Finally, the emails were all sent by or for Shinners, a party.

## IV.

### Materials created by non-lawyers are protected by the work product doctrine.

Fraser's primary argument is that Shinners' emails with potential class members are not subject to work product protection because Shinners is not a lawyer and the emails were not sent at the direction of counsel. FRCP 26(b)(3) applies to documents created in anticipation of litigation "by or for another party *or* its representative (including the other party's attorney . . . .")." In other words, the work-product doctrine applies to more than just documents created by attorneys or at the direction of attorneys.

"It may be surprising to long-time practitioners that 'a lawyer need not be involved at all for the work product protection to take effect.'" *Goff v. Harrah's Operating Co., Inc.*, 240 F.R.D. 659, 660 (D. Nev. 2007) (citing Roger Park et al., Hornbook on Evidence Law § 8.09 (West 2d ed. 2004). The fact that the work-product doctrine applies to materials created by non-attorneys is surprising because the seminal case on work product—*Hickman v. Taylor*, 329 U.S. 495 (1947)—is about an attorney and emphasizes the importance of keeping a lawyer's trial strategy and other opinions about the case a secret. After *Hickman*, courts became divided "as to whether the 'work product' doctrine was effectively an 'attorney work product' doctrine." *Goff*, 240 F.R.D. at 660. FRCP 26(b)(3) was introduced in 1970 in part to resolve that split in authority. The advisory committee notes to FRCP 26(b)(3) explain that the Rule was passed to address "major difficulties

5

visible in the existing case law," including "confusion and disagreement as to the scope of the *Hickman* work-product doctrine, particularly whether it extends beyond work actually performed by lawyers." The advisory committee opted to follow "the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or any representative acting on his behalf." The advisory committee acknowledged that "The *Hickman* opinion drew special attention to the need for protecting an attorney against discovery of memoranda prepared from recollection of oral interviews," but addressed that concern by giving heightened protections to materials reflecting an attorney's mental impressions.

Many courts have since concluded that the work product doctrine does not require attorney involvement. For example:

- *Vaher v. Town of Orangetown, N.Y.*, 2013 WL 2097389, at *1 (S.D.N.Y. May 15, 2013): "The work product doctrine does not require the documents be prepared at the behest of counsel, but only that they be prepared because of the prospect of litigation."

- *Szulik v. State Street Bank & Trust Co.*, 2014 WL 3942934, at *3 (D. Mass. Aug. 11, 2014): "By now, it is well-established that the doctrine protects writings made by a party, even without any involvement by counsel."

- *In re Copper Market Antitrust Litig.*, 200 F.R.D. 213, 221 (S.D.N.Y. 2001): "In addition, contrary to Plaintiffs' assertions, documents prepared in anticipation of litigation need not be created at the request of an attorney. Once it is established that a document was prepared in anticipation of litigation, work-product immunity protects documents prepared by or for a representative of a party, including his or her agent."

- Dkt. 122, *In re Mi Windows & Doors, Inc. Prods. Liab. Litig.*, No. 2:12-mn-00001 (D.S.C. May 5, 2013): "But what is clear is that at the time the notes were prepared, litigation was certainly anticipated and these notations relate to and are prepared in response to the threat of that litigation. So even if no lawyer was involved, these notes would be protected work product. The work product immunity protects material prepared by non-lawyers in anticipation of litigation."

Fraser cites one case that suggests otherwise: the unpublished opinion in *Bice v. Robb*, 511 F. App'x 108, 110 (2d Cir. 2013). In a single sentence, *Bice* says "Likewise, the documents are not protected by the attorney work-product doctrine, because (though they may have been created because of the prospect of litigation) they are not the work product of an individual acting as the siblings' attorney."). Given that *Bice* is unpublished, contains one sentence of reasoning, and fails to address the language of FRCP 26(b)(3) and the Advisory Committee's notes, no court has followed it. The court in *Wultz v. Bank of China*, 304 F.R.D. 384, 394 (S.D.N.Y. 2015), explained why it opted not to do so:

> *Bice* is a summary order, however, and thus lacks precedential effect. *See* 2d Cir. R. 32.1.1(a). The case law cited in support of *Bice's* ruling contains no holdings regarding the treatment of non-attorney-generated work product. Finally, *Bice* does not address the language of Rule 26(b)(3)(A), the Advisory Committee notes, or the case law that is directly on point and contrary to its ruling. Accordingly, we respectfully decline to follow this aspect of *Bice*.

This Court should not follow *Bice* either. It should follow the plain language of FRCP 26(b)(3).

Fraser also cites *Lapaix v. City of New York*, 2014 WL 11343854 (S.D.N.Y. Aug. 14, 2014). The *Lapaix* court also opted not to follow *Bice* and stated that the opinion merely "does indicate that not all categories of documents listed in Rule 26(b)(3) are equal in their justification for protection." *Id.* at *3. That

statement is non-controversial and obvious from the two-tiered structure of FRCP 26(b)(3). Work product created by non-attorneys typically will not include an attorney's mental impressions and will not receive heightened protection from discovery.

V.

Fraser has not identified a substantial need for the emails or
that he cannot obtain their equivalent by other means.

While work product protection is not absolute, Fraser has failed to show that he is entitled to the emails. Under FRCP 26(b)(3)(ii), a party seeking discovery of work product must show "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fraser cannot make either showing.

"A substantial need exists where the information sought is 'essential' to the party's defense, is 'crucial' to the determination of whether the defendant could be held liable for the acts alleged, or carries great probative value on contested issues." *Gucci American, Inc. v. Guess?, Inc.*, 271 F.R.D. 58, 74–75 (S.D.N.Y. 2010). Fraser says he wants the emails because:

> In all likelihood, the Shinners Communications will reveal facts central to issues relevant to class certification such as: (1) whether unique defenses apply to Shinners or the other named Plaintiffs; (2) whether unique defenses apply to a subset of putative class members; and (3) whether individual issues—particularly as to standing, reliance, loss causation and damages—predominate over common questions.

But Fraser makes no effort to explain how the emails will be relevant to those issues. What unique defenses or information about individual issues does Fraser

hope to discover? Why does he think information about those unique defenses or individual issues will be in the emails?

Tellingly, Fraser has not attempted to obtain discovery from any absent class members in this case. Obtaining discovery from absent class members requires a showing somewhat similar to substantial need under FRCP 26(b)(3). "[I]n appropriate circumstances absent class members may be propounded written interrogatories on a showing that *the information requested is necessary to trial preparation* and that the interrogatory is not designed 'as a tactic to take undue advantage of the class members or as a stratagem to reduce the number of claimants." *Clark v. Universal Builders, Inc.*, 501 F.2d 324, 340 (7th Cir. 1974). If Fraser truly believed he needed information from absent class members, he would have sought it.

Fraser also failed to carry his burden and show that he cannot obtain the substantial equivalent of the emails through other means. Here, Fraser already took Shinners' deposition, but asked almost no questions about his communications with class members. It is well established that:

> A witness's availability for a deposition defeats a claim of substantial need for work product material because the party seeking discovery can ask the witness himself about the events in issue, and, if the witness recalls the events in issue, the need for notes or other materials prepared by opposing counsel is, thereby, eliminated.

*Handsome, Inc. v. Town of Monroe*, 2014 WL 348196, at *6 (D. Conn. 2014) (quoting *A.I.A. Holdings, S.A. v. Lehman Bros., Inc.*, 2002 WL 31385824, at *8 (S.D.N.Y. Oct. 21, 2002)).

Fraser could also talk to members of the class. Plaintiffs already produced a database that contains contact information for every single person that bought products from the companies. Likewise, plaintiffs produced lists compiled by Shinners that contains contact information for more than 500 members that expressed interest in the lawsuit, as well as the approximately 170 members of the putative class that uploaded information about their losses.[12] For that reason, Fraser's complaint that he cannot identify those individuals based on the "dearth of identifying information in Plaintiffs' Privilege Log" is meritless.

And, as mentioned above, Fraser could seek formal discovery of the class members if he made the proper showing. Fraser hasn't explained what he hopes to discover from the emails and so plaintiffs have no idea whether Fraser could satisfy his burden or not. But the point is that he hasn't even tried to do so.

Finally, plaintiffs did produce the various documents that class members uploaded to Shinners' Gawsuit website.[13] Most of the emails at issue in this motion relate to efforts by Shinners to gather information about the losses suffered by the victims of the companies' fraud. That information—which has been produced—can presumably be used by Fraser to establish his defenses.

## VI.
### Plaintiffs' privilege log provides all the information that Fraser needs.

Fraser argues that plaintiffs' privilege log is insufficient. The purpose of a privilege log is to allow the party seeking discovery to evaluate the claim of privilege. FRCP 26(b)(5) requires a privilege log to "describe the nature of the

---

[12] Watterson Decl., Exs. 2–3.
[13] CWAT Decl. at ¶ 5.

documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Here, Fraser fails to explain what additional details he needs to assess plaintiffs' claim of privilege. In order to establish that a document is work product, plaintiffs must prove the items on the privilege log are documents, were sent in anticipation of litigation, and were prepared by or for a party. *Lagace*, 2007 WL 2889465, at *2. The privilege log does exactly that. It shows that the items on the log are emails and as such they qualify as documents. The privilege log shows that the emails were sent for the purposes of gathering information in advance of a class action, which shows they were prepared in anticipation of litigation. And, the privilege log shows that Shinners—a party— was a sender or recipient of each email.

Fraser complains that the description of each document is generic. But Local Rule 26(e) requires a description of "The general subject matter of the document or electronically stored information." The description must contain "sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure." *U.S. v. Constr. Prod. Res.*, 73 F.3d 464, 473 (2d Cir. 1996) (quoting *Browne v. N.Y. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993)). Here, the descriptions show that the emails were sent because Shinners sought to organize and obtain information in advance of filing a class action lawsuit, *i.e.*, they were sent in anticipation of litigation.

Fraser also complains that some of the author or recipient information sometimes includes a nickname or email address. Plaintiffs used the metadata directly from the to/from/cc/bcc fields in the email to generate the information in the privilege log.[14] In other words, Fraser is seeing the exact same information he would see in the to/from/cc/bcc lines if the emails were produced.

Perhaps more importantly, it is unclear why nicknames or email addresses are insufficient. Fraser knows that the communications are with members of the putative class. Fraser fails to explain why he needs the individual's name to evaluate plaintiffs' privilege claim. As far as plaintiffs know, there is nothing about the specific identities of the putative class members that would affect whether the emails are privileged. For example, plaintiffs are not claiming that any of the members of the putative class on the log are attorneys representing Shinners such that the attorney-client privilege might apply.

In the section of Fraser's brief discussing plaintiffs' privilege log, he cites *Johnston v. Dow Employees' Pension Plan*, 2016 WL 1106889 (E.D. Mich. Mar. 22, 2016), and says in a parenthetical that the case stands for the proposition that "communications among putative class members were not protected work product." The ruling in *Johnston* is not that categorical. The court concluded that the emails to putative class members were not work product because the Johnston failed to provide an affidavit or other evidence to substantiate the work product claim. *Id.* at *6. The court held that Johnston waived any work product protection by failing to substantiate his privilege claim. Here, plaintiffs are including a

---

[14] CWAT Decl. at ¶ 4.

12

declaration from Shinners to demonstrate that the emails are work product. The other cases Fraser cites are similar. *See Constr. Prods.*, 73 F.3d at 474 ("The descriptions and comments simply do not provide enough information to support the privilege claim, particularly in the glaring absence of any supporting affidavits or other documentation."); *Jansson v. Stamford Health, Inc.*, 312 F. Supp. 3d 289, 299 (D. Conn. 2018) ("the careful reader will have noticed that the 'representations' in question are not evidentiary declarations of a Hospital employee or officer with knowledge of the facts, in an affidavit or deposition; rather, they are assertions by an advocate in a brief."); *Bolorin v. Borrino*, 248 F.R.D. 93, 94 ("There was a long discussion about the defendants' failure to make any record that Chase was even defendants' client at the time the communications were made.").

Fraser also cites *Bice* for the proposition that a "mere statement in a privilege log that documents are communications between potential parties related to a prospective lawsuit is not sufficient to justify work product protection." But *Bice* does not discuss privilege logs at all.

## VII.
### Shinners did not provide the emails to the FBI.

Finally, Fraser argues that Shinners waived work protect protection by providing the emails to the FBI. That did not happen. The basis for Fraser's claim is that during Shinners' deposition, he was asked how he helped the FBI in connection with the criminal case against Garza. Shinners answered: "They have everything that I have given the law firm. They have every document, every bit of research, anything that I had come across or had obtained during the process here and for the

last three-plus years, they have everything."[16] Fraser knows that Shinners'
attorneys have the communications with the class members, and surmises that
Shinners provided those emails to the FBI as well. That isn't true. Shinners
provided the FBI with all of the underlying documents that the potential class
members uploaded through the GAWsuit website, but not the emails.[17] During his
testimony, Shinners was referring to historical factual documents, not all
documents relating to this lawsuit.[18]

The documents were not provided to the FBI, so Fraser's waiver argument
fails.

## VIII.
### Plaintiffs will provide the documents for *in camera* review if the Court believes doing so would be helpful.

Fraser asks the court to inspect the emails *in camera*. For the reasons
provided above, plaintiffs believe doing so is unnecessary. But if the Court disagrees
and believes reviewing the documents would be helpful, plaintiffs will of course
provide the documents for an *in camera* review.

## IX.
### Conclusion

The Court should deny Fraser's motion.

---

[16] *See* Dkt. 105-1 at 167:7-12.
[17] Shinners Decl. at ¶¶ 7, 9.
[18] Shinners Decl. at ¶ 9.

DATED: November 16, 2018

Respectfully submitted,

Mark P. Kindall (ct13797)
E-mail: mkindall@ikrlaw.com
Robert A. Izard
E-mail: rizard@ikrlaw.com
IZARD, KINDALL & RAABE, LLP
29 S. Main St., Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290

/s/ Colin M. Watterson
Colin M. Watterson (*pro hac vice*)
E-mail:  cwatterson@susmangodfrey.com
Texas Bar No. 2409330
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX  77002
Tel: (713) 651-9366
Fax: (713) 654-3367

Marc Seltzer (*pro hac vice*)
E-mail:mseltzer@susmangodfrey.com
California Bar No. 54534
Kathryn Hoek (*pro hac vice*)
E-mail: khoek@susmangodfrey.com
California Bar No. 219247
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

Seth Ard (*pro hac vice*)
E-mail: sard@susmangodfrey.com
New York Bar No. 4773982
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6022
Tel: (212) 336-8330
Fax: (212) 336-8340

Edgar Sargent (*pro hac vice*)
Email: esargent@susmangodfrey.com
Washington Bar No. 28283
Susman Godfrey L.L.P.
1201 Third Avenue, Suite 3800
Tel: (202) 516-3880
Fax: (310) 789-3150

*Counsel for Plaintiffs*

Certificate of Service

I hereby certify that on November 16, 2018, I served the foregoing via

electronic mail on the following:

Daniel H. Weiner
Sarah L. Cave
Sara E. Echenique
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY  10004-1482

Sean M. Fisher (ct23087)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT  06511

/s/ Colin M. Watterson
Colin M. Watterson