# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, *et al.*, | Civil Action No. 3:16-cv-00940 |
| Plaintiffs, | Honorable Michael P. Shea |
| vs. | Magistrate Judge Donna F. Martinez |
| STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC, | (ECF Case) |
| Defendants. | November 30, 2018 |

## REPLY MEMORANDUM IN SUPPORT OF
## DEFENDANT STUART A. FRASER'S MOTION TO COMPEL DISCOVERY

If wishes were horses, then Plaintiffs would ride. Plaintiffs wish Fraser agreed that the Shinners Communications[1] constitute work product; in fact he did not, because they do not. Plaintiffs wish that, at Shinners' deposition, Fraser "didn't ask a single question about his communications with other class members" (Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Compel Discovery ("Opp."), ECF No. 106 at 1); in fact he did so, and expressly reserved the right to ask additional questions pending the Court's ruling on this Motion. Plaintiffs wish the law placed on Fraser the burden of disproving Plaintiff's claim of work product privilege; it does not, for good reason. Where, as here, Plaintiffs apply the same generic phrase to describe 1,409 non-attorney communications made by a host of different individuals over a period of eight months, they fail to meet the heavy burden the law imposes on them to invoke that privilege. Finally, Plaintiffs wish Fraser could obtain these non-attorney

---

1. Terms not defined herein have the meaning ascribed to them in Defendant Stuart A. Fraser's Memorandum of Law in Support of Motion to Compel Discovery, ECF No. 104 ("Motion" or "Mot.").

1

communications from someone else, somewhere else; yet Plaintiffs provide no identities for either the sender or recipients of many of those communications.  Requiring Fraser to locate and subpoena documents from hundreds of non-parties whose only identifiers are email addresses such as "Crypto Man," "BIThome," "Alpha Dog" and "John j" is pure wishful thinking, and not what the law commands.

Plaintiffs admit that the Shinners Communications were not created by, for, or at the direction of counsel, and did not involve attorneys; they also concede that "[w]ork product created by non-attorneys . . . will not receive heightened protection from discovery." (Opp. at 8.) Plaintiffs then go on to pose two inquiries in their opposition memorandum: "What unique defenses or information about individual issues does Fraser hope to discover?  Why does he think information about those unique defenses or individual issues will be in the emails?" (Opp. at 8-9.) To the extent possible without access to the Shinners Communications — a guessing game Plaintiffs unfairly require Fraser to play on this Motion — Fraser answers those questions below, and further refutes Plaintiffs' attempt to shield their pre-litigation, non-attorney communications from the light of day.

Because (1) Plaintiffs have not met their burden in establishing that work product protection applies to the Shinners Communications, (2) Fraser has a substantial need for those communications, and (3) Plaintiffs' Privilege Log is substantively inadequate, the Court should compel Plaintiffs to produce the Shinners Communications.

**I.      Work Product Protection Does Not Apply To The Shinners Communications.**

Plaintiffs claim that Fraser does not dispute that the Shinners Communications meet the definition of protected work product. (Opp. at 1, 4.)  To the contrary, Fraser reiterates

throughout his Motion that Plaintiffs have not met their initial burden of demonstrating that the work product protection applies.[2]

Plaintiffs also incorrectly attempt to transfer the burden of proof to Fraser. Yet, before any burden shifts to Fraser, Plaintiffs must first prove their entitlement to work product protection. (*See* Mot. at 3-4.) Plaintiffs claim they have met that burden because Fraser was able to assess Plaintiffs' work product assertion and "found it wanting." (Opp. at 2.) This is not the case: it is because no one (Fraser included) could conclude that the Shinners Communications are entitled to work product protection, in part due to the lack of identifying information on the Privilege Log, that Fraser brought this Motion. And even if Plaintiffs had met their initial burden, which they have not, Fraser has shown a substantial need for the documents at issue. (Mot. at 6-7; *see* Section IV, below.)

Plaintiffs also misstate Fraser's position on why the work product protection does not apply. (Opp. at 5-8.) Fraser acknowledges that attorneys need not be involved to establish work product protection. (Mot. at 4 ("the work product may, at times, extend to documents prepared by a party without attorney involvement").) Fraser observes, however, that, "the doctrine does not extend so far as to categorically protect all communications from a party to a non-party or a non-party to a party," a point that Plaintiffs fail to address in their Opposition. (*Id.* at 4.) Further, Plaintiffs fail to address the differing tiers of work product protection outlined in *Lapaix v. City of New York*, which explained that "documents prepared by an agent for the attorney, by a party, and by an agent for a party are each one further step removed from the core [of attorney

---

2. *See, e.g.*, Mot. at 4 ("Here, work product protection does not extend to the Shinners Communications because they are not the work product of Shinners acting as or at the direction of Plaintiffs' counsel, and were in large part made by non-parties."); Mot. at 5 ("The Shinners Communications are not entitled to work product protection because they are non-attorney communications that were either sent by or to non-parties"); *id*. at 7 ("Plaintiffs Privilege Log does not articulate a sufficient basis for work product protection").

work product] and presumed to have a correspondingly weaker basis for protection." No. 13-cv-07306 (LGS) (SN), 2014 WL 11343854, at *3 (S.D.N.Y. Aug. 15, 2014). (*See* Opp. at 7-8.) And the Second Circuit Court of Appeals decision cited by Fraser to support his position that the Shinners Communications are not entitled to work product protection, while a summary order, remains persuasive authority. *See Mercado v. Commissioner of Corrections*, No. 3:15-cv-33 (VLB), 2015 WL 5162484, at *2 (D. Conn. Sept. 1, 2015) (finding Court of Appeals' summary order to be "persuasive authority").

## II.     Fraser Demonstrates Substantial Need For The Shinners Communications

Plaintiffs contend that Fraser has not established substantial need for the Shinners Communications because "Fraser recently deposed Shinners and didn't ask a single question about his communications with other class members." (Opp. at 1.)[3] The deposition transcript shows the opposite: Fraser's counsel asked Shinners directly about his communications with putative class members during his deposition:

> Q. Did you select the other three plaintiffs?
> A. I had a – I compiled a long list of people based off the amount of losses, where their geographic locations were, whether I had spoken to them on Hash Talk before.
> They're – basically, I wanted to get a short list of individuals that I felt comfortable with and who warranted, you know, this kind of position. . . .
> Q. And in the end, you winnowed it down to you and your three other plaintiffs, right?
> A. Yes.
> Q. Okay. What were the factors that made you feel, in your words, comfortable with the three other plaintiffs in this case?
> A. Their level . . . their ability to fulfill the obligations as lead plaintiffs in a – in a prospective class action lawsuit, their geographic location, and how much their losses were, so that there's self-motivation.

---

3. Plaintiffs later qualify that misrepresentation, conceding that Fraser "asked *almost* no questions about his communications with class members." (Opp. at 9; emphasis added.)

(Affirmation of Sarah L. Cave in Support of this Reply Memorandum ("Cave Aff.") Ex. A-1 (the "Shinners Dep. Tr.") at 39:5-40:8; *see also id.* at 40:8-42:18.) Fraser also reserved the right to ask further questions regarding the Privilege Log because of the parties' work product dispute.[4]

Plaintiffs also argue that Fraser has not established his need for the Class Communications because he has not "tried to obtain discovery from absent class members." (Opp. at 1, 9.) But this is the very point at issue here — as Fraser explained in his Motion, the Privilege Log does not provide sufficient information to identify potential class members, thus making it impossible as a practical matter for Fraser to obtain discovery from these putative class members. (Mot. at 6-7.)

Additionally, Plaintiffs assert that their production includes documents uploaded to a website created by Shinners for purposes of organizing this suit by "approximately 170 members of the putative class," but acknowledges that "approximately 500 individuals initially expressed interest in the lawsuit." (Declaration of Allen Shinners Re: Defendant Stuart A. Fraser's Motion to Compel Discovery, ECF No. 106-1 ("Shinners Decl.") ¶ 5; Opp. at 10.) There are thus hundreds of individuals for whom Shinners has information (including as to purported cryptocurrency losses and other pertinent details) that Plaintiffs have not shared with Fraser in even its most basic form (*i.e.*, the documents those individuals did not upload to Shinners' site). (Shinners Decl. ¶ 5.) Plaintiffs do not state how Fraser could reasonably uncover this information otherwise. (Opp. at 10.) Finally, Plaintiffs' position that Fraser should simply request these communications from the other parties to these emails effectively concedes that

---

4. *See* Shinners Dep. Tr. at 360:8-17 ("So, Mr. Shinners, we have no further questions for you today. . . . we have a couple of document disputes with your counsel, including relating to the Garza notes and *some issues with documents on the privilege log*, and so subject to resolution of those disputes, we'll — we reserve our right to seek to ask you more questions and — and reopen your deposition.") (emphasis added).

these documents are not protected work product and are discoverable. (Opp. at 9.) The Court should not endorse Plaintiffs' game of hide-the-ball.

### III. The Shinners Communications Are Relevant.

Plaintiffs complain that Fraser "makes no effort to explain" how the Shinners Communications could be relevant to the issues in this litigation. (Opp. at 8.) This, again, is false. Fraser explicitly stated in his Motion that those documents are relevant to his defense:

> In all likelihood, the Shinners Communications will reveal facts central to the issue of class certification such as: (1) whether unique defenses apply to Shinners or the other named Plaintiffs; (2) whether unique defenses apply to a subset of putative class members; and (3) whether individual issues—particularly as to standing, reliance loss causation and damages—predominate over common questions.

(Mot. at 6-7.) (*See also* Defendant Stuart A. Fraser's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification ("Opp. to Class Cert."), ECF No. 107, at 13, 17-19, 36-40.) To force Fraser to detail more specifically his need for these communications— without having seen them — would require Fraser to speculate, which is not a burden the law imposes on him.

Plaintiffs argue that documents uploaded to the website created by Shinners for this action "can presumably be used by Fraser to establish his defenses." (Opp. at 10.) But Plaintiffs do not define the putative class based on whether an individual uploaded documents to a website. (Memorandum of Law in Support of Plaintiffs' Motion for Class Certification, ECF No. 97 ("Class Cert Mot.") at 1.) If the individuals who did not upload documents provided information to Shinners (for example, regarding their purported losses or identifying their various accounts), that information would directly support Fraser's arguments in opposition to class certification involving unique defenses. (Opp. to Class Cert. at Section V. A (2), (3).) And even if the class were comprised solely of those individuals who had uploaded documents, the information sought

6

by Shinners in his communications with putative class members goes to the heart of Fraser's defenses, including potential individualized questions and defenses.  (*See*, *e.g.*, Opp. to Class Cert. at Sections III.A (individual issues regarding reliance), III.B (individual issues regarding loss causation), III.C (individual issues involving potential standing issues and exclusions to the putative class), IV (foreign putative class members should be excluded).) [5]

### IV.     Plaintiffs' Privilege Log Is Inadequate.

Plaintiffs claim that the generic document description in their Privilege Log applied to nearly every one of the 1,409 communications at issue ("Email sent for purposes or organizing/gathering information for lawsuit/class action") is adequate.  (Opp. at 11.)  For the reasons explained in the Motion, it is not.  (Mot. at 7-8.)

In a belated attempt to supplement their insufficient Privilege Log, Plaintiffs attach a declaration by Shinners to their Opposition.  However, Shinners' Declaration fails to correct the deficient identifying information in the Privilege Log, which continues to lack "sufficient substantive detail for a meaningful review of the application of the privilege."  *Bolorin v. Borrino*, 248 F.R.D. 93, 95 (D. Conn. 2008).  (*See generally* Shinners Decl.; *see also* Mot. at 7-8.)

---

5.  *See* Shinners Dep. Tr. at 39:5-10 ("I compiled a long list of people based off of the amount of losses, where their geographic locations were, whether I had spoken to them on HashTalk before"); 40:3-8 (Shinners looked for "their ability to fulfill their obligations as lead plaintiffs in a – in a prospective class action lawsuit, their geographic locations, and how much their losses were, so that there's self-motivation"); 41:24-42:9 ("I had my own list of characteristics that I was looking for . . . . So there were some, you know, personal questions, nothing extraordinary, just normal run-of-the-mill personal questions and, of course, the other three items, mostly, which was geographic proximity, you know, how much were their losses, and like I said."); Shinners Decl. (ECF 106-1) ¶ 4 ("My primary purpose in emailing other investors was to gauge their interest in participating in a class action lawsuit, to verify that the investors purchased products from GAW Miners, and to attempt to determine the extent of their losses."). *Compare* Cave Aff. Ex. A-2 (Plaintiff Michael Pfeiffer Release of Accounts) *with* Shinners Decl. ¶ 5 ("One of the purposes of the website was to allow investors to upload documents relating to their purchases of products from GAW Miners").

Plaintiffs acknowledge that the Privilege Log contains many nicknames or incomplete names (Opp. at 12), but fail to address the facts that (a) there is no way to connect this sparse information to the databases that Plaintiffs produced and (b) there is no other reasonable way for Fraser to identify putative class members.  The inability to glean the most basic information from the Privilege Log (*i.e.*, the identities of the parties with whom Shinners communicated) further highlights the deficiencies in that Log.  Without the identities of these parties, it is impossible for Fraser to assess whether the protection applies.  (*See* Mot. at 7.)

## V. If The Shinners' Communications Were Provided To the FBI, The Protection Is Waived.

Plaintiffs now assert that Shinners did not provide the documents to the FBI, and that this invalidates the waiver argument.  (Opp. at 13-14.)  But Shinners testified under oath at his deposition that he sent *all* of the documents he had to his counsel in this case and to the FBI ("They have everything that I have given the law firm.  They have every document, . . . anything that I had come across or had obtained during the process here and for the last three-plus years, they have everything") (Shinners Dep. Tr. at 167:7-12), which necessarily includes the emails that form the subject of the Privilege Log.  (As Plaintiffs helpfully point out, "emails . . . are plainly documents." (Opp. at 1; *see also* Shinners Decl. ¶ 6 ("I provided my emails with other investors . . . to my attorneys").)  Despite conceding that his counsel holds copies of the Shinners Communications (Shinners Decl. ¶ 6), Shinners recants his prior testimony and claims he did not provide the FBI with the Shinners Communications.[6]  (*Id.* ¶ 7.)  Without an opportunity to confront Shinners on this issue, Fraser has no way to test Shinners' new, contradictory

---

6. Tellingly, Shinners now declares that he did not provide the documents to the FBI only because the FBI "did not determine that they would be of value in their ongoing investigation," not because they are protected work product.  (Shinners Decl. ¶ 9.)

8

testimony.  Similarly, although the Shinners Communications indisputably occurred as much as seven months before Plaintiffs had their very first privileged communications with counsel (*compare* Priv. Log entry 1 (dated Jan. 11, 2015) *with* entry 1410 (first entry classified as attorney-client privilege, dated Aug. 18, 2015)), Shinners now avers that he "was in constant communication with lawyers during this time." (Opp. at 2.)  Shinners' new recollection — suddenly and mysteriously refreshed for purposes of this Motion — is all too convenient.

Shinners did not seek to correct or clarify his testimony until this Motion, despite ample time and opportunity to do so and despite having notice of Fraser's understanding of the plain meaning of Shinners' testimony.  (*See, e.g.*, ECF No. 93 (letter from Fraser to Court discussing Plaintiffs' waiver by submission of documents to the FBI).)  Fraser submitted the letter that led to this Motion after several attempts to resolve this dispute with Plaintiffs' attorneys through telephone calls and emails, during which Fraser pressed the argument that Plaintiffs waived the protection by providing the Shinners Communications to the FBI.  Plaintiffs' counsel did not once correct the record, until now.

## **CONCLUSION**

Fraser requests that the Court order Plaintiffs to produce the Shinners Communications to Fraser.  At the very least, Fraser requests that the Court examine these documents *in camera* to determine whether Plaintiffs' refusal to disclose those communications is justified.

Dated: November 30, 2018

                 Respectfully submitted,


                 By: /s/ Sarah L. Cave


                 Sarah L. Cave (phv08437)
                 Hughes Hubbard & Reed LLP
                 One Battery Park Plaza
                 New York, NY 10004-1482
                 Tel.: (212) 837-6000
                 Fax: (212) 422-4726
                 Email: sarah.cave@hugheshubbard.com

                 *Attorneys for Defendant Stuart A. Fraser*