UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, DEAN ALLEN SHINNERS, and JASON VARGAS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC, (d/b/a ZEN CLOUD),<br><br>Defendants. | Case 3:16-cv-00940<br><br>Hon. Michael P. Shea<br>Courtroom 2<br><br>ECF Case<br><br>CLASS ACTION<br><br>December 21, 2018<br><br>PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR CLASS CERTIFICATION |

Table of Contents

Table of Contents ... i

Table of Authorities ... ii

I. Introduction ... 1

II. Class members all have standing. ... 2

III. The class meets the predominance requirement. ... 3

A. Individual issues regarding reliance will not predominate. ... 3

B. Individual issues regarding ascertainability will not defeat class certification. ... 8

C. Individual issues regarding damages issues do not preclude class certification. ... 11

D. Individual defenses will not predominate. ... 11

IV. There is no reason to exclude foreign members of the class. ... 13

V. The class satisfies FRCP 23(a)(3). ... 14

A. The named plaintiffs are typical. ... 14

B. Plaintiffs satisfied their numerosity burden. ... 15

VI. Conclusion ... 15

Table of Authorities

Page(s)

Cases

*Absolute Activist Value Master Fund Ltd. v. Ficeto*,
677 F.3d 60 (2d Cir. 2012)....................14

*Abu Dhabi Comm. Bank v. Morgan Stanley & Co., Inc.*,
269 F.R.D. 252 (S.D.N.Y. 2010)....................6, 7

*Ansari v. New York Univ.*,
179 F.R.D. 112 (S.D.N.Y. 1998)....................13

*Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*,
315 F. Supp. 2d 666 (E.D. Pa. 2004)....................10

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985)....................12

*Bersch v. Drexel Firestone, Inc.*,
519 F.2d 974 (2d Cir. 1975)....................13, 14

*Bigelow v. RKO Radio Pictures*,
327 U.S. 251 (1946)....................9

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975)....................8

*Brown v. Kelly*,
609 F.3d 467 (2d Cir. 2010)....................11

*Bruhl v. Price Waterhousecoopers Int'l*,
257 F.R.D. 684 (S.D. Fla. 2008)....................4, 7

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007)....................3

*Cornelius v. Bodybuilding.com*,
2011 WL 2160358 (D.Id. 2011)....................11

*Doe v. Kamehama Sch./Bernice Pauahi Bishop Estate*,
2008 WL 5423191 (D.Haw. 2008)....................6

*EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*,
246 F. Supp. 3d 52 (D.D.C. 2017)....................2

*GE Dandong v. Pinnacle Performance Ltd.*,
2013 WL 5658790 (S.D.N.Y. 2013) ........ 3, 4, 7

*In re Alstom SA Sec. Litig.*,
253 F.R.D. 266 (S.D.N.Y. 2008) ........ 13

*In re Digital Music Antitrust Litig.*,
321 F.R.D. 64 (S.D.N.Y. 2017) ........ 10

*In re Electronic Books Antitrust Litig.*,
2014 WL 1282293 (S.D.N.Y. 2014) ........ 9

*In re LIBOR-Based Fin. Inst. Antitrust Litig.*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018) ........ 2

*In re MF Global Holdings Ltd. Investment Litigation*,
310 F.R.D. 230 (S.D.N.Y. 2015) ........ 14

*In re Petrobras Sec.*,
862 F.3d 250 (2d Cir. 2017) ........ 8

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013) ........ 6

*In re Vivendi Universal, S.A.*,
242 F.R.D. 76 (S.D.N.Y. 2008) ........ 13

*Jeffries v. Pension Trust Fund of Pension, Hospitalization & Benefit Plan of Elec. Indus.*,
2007 WL 2454111 (S.D.N.Y. 2007) ........ 10

*Jenson v. Fiserv Tr. Co.*,
256 F. App'x 924 (9th Cir. 2007) ........ 4

*Lemanik, S.A. v. McKinley Allsopp, Inc.*,
125 F.R.D. 602 (S.D.N.Y. 1989) ........ 10

*MacPeg Ross O'Connell & Goldhaber, Inc. v. Castello*,
686 F. Supp. 397 (E.D.N.Y. 1988) ........ 12

*Marsden v. Select Medical Corp.*,
246 F.R.D. 480 (E.D. Pa. 2007) ........ 13

*Merrill Lynch, Pierce Fenner & Smith, Inc. v. Dabit*,
547 U.S. 71 (2006) ........ 3

*Moore v. PaineWebber, Inc.*
306 F.3d 1247 (2d Cir. 2002) ........ 7

*Morrison v. National Australia Bank*,
561 U.S. 247 (2010)....................14

*Nitsch v. Dreamworks Animation Skg Inc.*,
315 F.R.D. 270 (N.D. Cal. 2016)....................6

*Nordstrom, Inc. v. NoMoreRack Retail Group, Inc.*,
2013 WL 1196948 (W.D. Wash. 2013)....................5

*Otto v. Variable Annuity Life Ins. Co.*,
816 F. Supp. 458 (N.D.Ill. 1991)....................3

*Pinter v. Dahl*,
486 U.S. 622 (1988)....................12

*Pub. Emps' Ret. Sys. of Miss. v. Merrill Lynch & Co.*,
277 F.R.D. 97 (S.D.N.Y. 2011)....................5

*Randall v. Loftsgaarden*,
478 U.S. 647 (1986)....................10

*Roach v. T.L. Cannon Corp.*,
778 F.3d 401 (2d Cir. 2015)....................11

*S.E.C. v. Traffic Monsoon, LLC*,
245 F. Supp. 3d 1275 (D.Utah 2017)....................14

*Schlanger v. Four-Phase Sys.*,
555 F. Supp. 535 (S.D.N.Y. 1982)....................7

*Spencer v. Hartford*,
256 F.R.D. 284 (D.Conn. 2009)....................4, 8

*Tyson Foods, Inc. v. Bouaphakeo*,
136 S. Ct. 1036 (2016)....................11

*Walco Invs., Inc. v. Thenen*,
168 F.R.D. 315 (S.D. Fla. 1996)....................5

*Williams v. Locher*,
2010 WL 2872734 (D. Nev. 2010)....................2

Statutes

CUSA § 36-29....................1

CUSA § 36b-16....................1

## I. Introduction

This case arises out of a Ponzi scheme that victimized thousands of class members: the defendant Companies claimed they were mining cryptocurrency when they were not, and sold products that they claimed were generating revenue by mining, but instead were using funds from new sales to pay earlier investors. X-A-44 28:10-29:18 (Hashlets became "oversubscribed"); *id.* 76:18-77:16 (Hashlets were purely a financial product); *id.* 79:7-80:8 (computing power and Hashlet sales were mismatched); *id.* 103:8-18 (the Companies sold more Hashlets than their computing power could generate). In the SEC action, the SEC found and Judge Meyer concluded that the Companies illegally sold unregistered securities and caused millions of dollars in damages to thousands of investors. X-A-46-A-48, A-60. In the criminal case against Garza, Judge Chatigny concluded that the fraud caused more than $9 million in losses. X-21, A-49.

The sale of these securities was illegal period. The Companies never registered them, nor were they exempt from registration, X-A-44 12:4-18. Under Connecticut's Blue-Sky laws, an investor who purchased illegally issued securities has a claim for a statutory damages and need not prove reliance or loss causation.[1] CUSA § 36b-16. Fraser all but ignores the Blue-Sky claims. Even if Fraser's arguments directed to plaintiffs' other claims had merit, and they do not, they would not defeat class certification of the Blue-Sky claims. Common issues on this claim clearly predominate over any individual issues.

Similarly, plaintiffs' control person claims against Fraser can be established with common proof. That proof will be available to prove that Fraser was a partner in the Companies. X-A-45 145:6-146:10; 155:2-12; X-A-44 11:24-12:3, and that he controlled the companies and

[1] Fraser suggests that the Blue-Sky laws contain a knowledge element that is similar to reliance. Wrong. CUSA § 36-29 contains an affirmative defense, but a plaintiff need not prove reliance to make out a prima facie case.

culpably participated in their wrong doing. *Id.* (Fraser was a 50% partner in GAW Miners and ZenMiner); X-A-44 50:15-52:24 (Fraser controlled GAW Miners); *id.* 28:10-29:18 (Fraser knew Hashlets were "oversubscribed"); *id.* 119:15-121:13 (Fraser knew Garza made false statements about ZenMiner).

Fraser's reliance and loss causation-based arguments are thus irrelevant to plaintiffs' Blue-Sky law claims. But they also fail with respect to plaintiffs' other claims. Courts regularly certify fraud claims involving schemes so profoundly fraudulent in their nature that no rational investors would invest if they knew the truth (*e.g.*, the Ponzi scheme at issue here). Fraser cites a smattering of *anonymous* discussion board posts suggesting a few unknown individuals suspected that the Companies were engaged in fraud. That anecdotal, inadmissible hearsay evidence does not defeat predominance. Fraser also makes much to do about the supposed deficiencies in data maintained by the Companies. Even if those criticisms had merit, they don't defeat the ascertainability of the class and any issue can be resolved by requiring class members to verify their transactions when they submit claims, as is common in class actions.

## II. <u>Class members all have standing.</u>

Fraser argues members of the class lack standing because some may have made money on a net basis.[2] Not so: "the fact that an injury may be outweighed by other benefits, while often sufficient to defeat a claim for damages, does not negate [Article III] standing." *In re LIBOR-Based Fin. Inst. Antitrust Litig.*, 299 F. Supp. 3d 430, 531 (S.D.N.Y. 2018). "[I]t is well established that a plaintiff suffers legal injury at the moment she makes her investment, not when she suffers actual losses." *EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A.*, 246 F. Supp. 3d 52, 69 (D.D.C. 2017); *Williams v. Locher*, 2010 WL 2872734,*2 (D. Nev. 2010). Fraser does

[2] Fraser's "evidence" consists of Internet forum posts that is inadmissible hearsay. The email he cites does not identify any investors, and appears to describe investors that received payouts greater than the purchase price of their devices. Of course, such investors never profited if they reinvested those payouts. *See* X-A-50 (Audet) 85:19-:86:7 (Audet reinvested all payouts).

not claim any of the named plaintiffs lack standing. "Only one of the named Plaintiffs is required to establish standing in order to seek relief on behalf of the entire class." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007).

Fraser speculates that some members of the class lack standing because they received free securities, rolled over one security into another, or allegedly stole them. The definition of "in connection with a sale or purchase" is broad. *Merrill Lynch, Pierce Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 85 (2006). Securities obtained through conversions are either reinvestments or a roll-overs, and products obtained for free involve a change in ownership or control. Both easily fit within the definition of purchase. *See, e.g.*, *Otto v. Variable Annuity Life Ins. Co.,* 816 F. Supp. 458, 461 (N.D. Ill. 1991). None of the evidence Fraser cites suggests anyone could or did steal the securities at issue. If the Court disagrees, it can remedy any issue raised by Fraser by altering the class definition (*e.g.*, changing "acquired" to "purchased").

## III. The class meets the predominance requirement.

### A. Individual issues regarding reliance will not predominate.

Fraser argues that individualized issues will overwhelm common issues on claims that require proof of reliance. Not so. The core common issue is whether the securities were sold pursuant to a Ponzi scheme as the SEC found. The Companies' Ponzi scheme involved uniform misrepresentations about closely-related financial products sold through the Internet. The Companies lied about fundamental aspects of those securities, including fractional interests in a mining operation that did not exist and a cryptocurrency with a phony price guarantee supposedly backed by a non-existent reserve fund. In these circumstances, reliance can reasonably be inferred on a class-wide basis and is no obstacle to certification. *See, e.g., GE Dandong v. Pinnacle Performance Ltd.*, 2013 WL 5658790 (S.D.N.Y. 2013) ("fraud-based

claims are not entirely beyond the reach of Rule 23, and that where each plaintiff can prove reliance through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue), certification may well be appropriate." (quotation marks omitted)). Here, as in *GE Dandong* and the cases it cites, plaintiffs "can prove reliance on a class-wide basis through common, circumstantial evidence." *Id.* *10. Because this case involves a Ponzi scheme, "the alleged misrepresentations and omissions here were so fundamental to the value of the [products] that it is hard to imagine a reasonable investor purchasing them if [defendants] had revealed their true nature." *Id.* And just as in *Ge Dandong*, plaintiffs present expert testimony that the misrepresentations and omissions at issue were so fundamental that *any* rational investor would have relied on them. *Id.* *14  (referencing similar expert testimony); Dkt 96-4. Other courts in this Circuit have certified common law fraud claims in similar circumstances. *See, e.g., Spencer v. Hartford*, 256 F.R.D. 284, 301-03 (D.Conn. 2009) (reliance could be proved through plaintiffs' acceptance of structured settlements based on documents that were alleged to be misleading, even though "Plaintiffs have not demonstrated that claimants received standardized representations").

Courts around the country have certified fraud claims where defendants made similar misrepresentations. *Jenson v. Fiserv Tr. Co.*, 256 F. App'x 924, 926 (9th Cir. 2007) (in Ponzi case, defendant "allegedly communicated to each prospect that investors would get a high rate of return, liquidity, and redemption at maturity from their investments, whereas the truth was that their return, if any, would come from the contributions of others. It is not unreasonable in these circumstances to infer reliance by all members."); *Bruhl v. Price Waterhousecoopers Int'l*, 257 F.R.D. 684, 696 (S.D. Fla. 2008) (no predominance issue because the misrepresentations were "made to the entire class" and the information in the [misrepresentations] was of such a nature

that the putative class members would have relied on it, in conjunction with other information available to them and in conjunction with their respective investment strategies"); *Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 333 (S.D. Fla. 1996) (in light of the nature of the fraudulent scheme, "any issues of individual reliance on the securities claims are dwarfed by common questions of fact and law."). The same is true here.

Fraser cites anonymous Internet posts to argue that a handful of class members believed the companies were engaged in a Ponzi scheme and invested anyway. *See* Dkt 107-1, A-16-A-25. This argument fails for four reasons. *First*, the knowledge of these few individuals could at most be used as an affirmative defense of non-reliance against them, and does not provide a basis to interrogate other class members as to what they knew or believed. *Second*, these isolated examples of alleged non-reliance cannot defeat the predominance as to the class as a whole. *See, e.g., Walco*, 168 F.R.D. 334 (Ponzi case where "a few questions of individual reliance are not sufficient, on balance, to negate the predominance of common issues of fact and law."). *Third*, the posts are rank hearsay that should not be considered to *defeat* a motion for class certification. *Pub. Emps' Ret. Sys. of Miss. v. Merrill Lynch & Co.*, 277 F.R.D. 97, 118 (S.D.N.Y. 2011) (certifying securities fraud class, and rejecting "[t]he 'evidence' relied on by Defendants to contrary is largely inadmissible hearsay drawn from various news articles and public reports."). *Fourth*, as plaintiffs' expert Lou Kerner explains, anonymous evidence is particularly unreliable in the context of cryptocurrency. X-E. Because these investments are technologically complex, rapidly evolving and largely unregulated, cryptocurrency forums are rife with posts used to sow "fear, uncertainty, and doubt." *Id.*; *see Nordstrom, Inc. v. NoMoreRack Retail Group, Inc.*, 2013 WL 1196948, *13 (W.D. Wash. 2013) (evidence of anonymous complaints on websites "designed to facilitate negative feedback" was "not persuasive."); *Doe v. Kamehama*

*Sch./Bernice Pauahi Bishop Estate*, 2008 WL 5423191, *4 (D.Haw. 2008) ("under the cloak of anonymity, people will make outrageous, offensive, and even nonsensical statements.").

Where verification is possible, Fraser's citations are at best misleading, if not false. For example, Fraser cites testimony that "everyone knew" that GAW was not "technically mining." Fraser omitted the next page of Dorman's testimony which makes it clear that he was discussing *hardware*, not the securities at issue here. *See* X-A-51 14:6-14. And there is no foundation for Dorman's claim. Fraser also relies on an anonymous blog post claiming that "GAW is probably the worlds biggest PONZI scheme," posted weeks before the first Hashlet was offered, and so it cannot refer to the investments at issue here. *See* Dkt. 107-1, A-18. Courts have rejected similar arguments based on similar evidence. In *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120-21 (2d Cir. 2013), the court held that the plaintiffs could establish reliance on a classwide basis despite defendant's citation to ten types of evidence of "marginal relevance." In *Nitsch v. Dreamworks Animation Skg Inc.*, 315 F.R.D. 270, 312 (N.D. Cal. 2016), the defendants argued that emails to or from approximately 40 class members supposedly revealing an illegal agreement created individual issues as to knowledge of the class as a whole. But because the "the number of class members for whom Defendants identify such evidence is small," the court held that "the relatively small number of individual inquiries which might be required do not defeat predominance." Here, Fraser hasn't identified a single class member who invested even though he actually knew about the fraud. There is no predominance problem here.

Fraser relies on inapposite precedent addressing complex, bespoke investment vehicles sold in individually negotiated transactions. (Br. at 13, discussing *Abu Dhabi Comm. Bank v. Morgan Stanley & Co., Inc.*, 269 F.R.D. 252, 264 (S.D.N.Y. 2010)). But in *Abu Dhabi*, the "information memoranda and marketing materials" that were the source of the

misrepresentations varied between the different notes, and they were modified over time; Defendants "prepared no less than fifty-six individualized memoranda to potential . . . investors answering questions and due diligence inquiries by these investors"; and many investors made their investment decisions "*before* the ratings were issued . . . , rendering it unlikely that any rating played a substantial role in those investors' decisions to invest." *Id.* 261-64 (emphasis in original). In short, "individualized reliance issues plainly predominated in that case given the facts." *Ge Dandong*, 2013 WL 5658790, *11 (distinguishing *Abu Dhabi* on similar grounds).

Fraser also argues that the variation in sophistication among investors makes reliance an individualized issue. He makes no attempt to explain why such variations among the investors, which are inevitable in any securities fraud class action, are material to the investment decisions in this case. *See, e.g.*, *Bruhl*¸ 257 F.R.D. 697 (despite "individual motivations and investment strategies" the alleged misrepresentations were a *material* consideration for all putative class members.). Plaintiffs' expert Lou Kerner testifies that they are not. Dkt. 96-4. *See also Schlanger v. Four-Phase Sys.*, 555 F. Supp. 535, 538 (S.D.N.Y. 1982).

Fraser argues that reliance must be treated individually because there were material variations in the representations made to different investors. This argument is wrong on the facts and the law. Factually, all of the relevant misrepresentations and marketing were broadcast widely through the Internet, and used to market cookie-cutter products at similar prices, typically between $10 and $50. Those facts readily distinguish this case from the precedents relied on by Fraser. *See, e.g., Moore v. PaineWebber, Inc.* 306 F.3d 1247, 1253 (2d Cir. 2002) (rejecting class certification when non-uniform misrepresentations were made during individual oral presentations). Legally, even if there were some differences, they were sufficiently uniform to admit as class-wide proof, and all share the common element of representing that the Companies

were not a Ponzi scheme. *Spencer v*, 256 F.R.D. 303 ("[A]lthough these allegedly fraudulent representations were not identical in each case, they were sufficiently uniform . . . to be susceptible of class-wide proof."); *accord Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

Fraser cites one of the Companies' many terms of service ("TOS") documents as evidence that some class members knew about the fraud. But the TOS are consistent with plaintiffs' claims. Nothing in the TOS disclosed to any investor that the Companies' were not generating revenue by mining, but instead were using funds from new sales of Hashlets to pay old investors. The statement that Hashlets were "virtual software" not "physical miners" or "interests in hardware" did not disclose that the Companies' were not conducting the mining they promised. The TOS actually reinforce the false statements in other marketing materials that a given Hashlet would be constantly upgraded to correspond to the latest and greatest mining technology.

For all these reasons, whether reliance can be inferred on a class-wide basis presents a common issue that further supports class certification, and certainly does not undermine it.

B. <u>Individual issues regarding ascertainability will not defeat class certification.</u>

Fraser argues that individual ascertainability issues will predominate. Ascertainability is a "modest threshold requirement" that "will only preclude certification if a proposed class definition is indeterminate in some fundamental way." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017). The Court must only "consider whether a proposed class is defined using objective criteria that establish[es] a membership with definite boundaries." *Id.* 269. Fraser's arguments fail because they all turn on the supposed inability of plaintiffs to identify class members through databases. *Petrobras* expressly held that "Ascertainability does not directly concern itself with the plaintiffs' ability to offer *proof of membership* under a given class definition." *Id.* 269.

The class is defined as persons that acquired four types of closely-related securities. Acquisition of the securities in question is an objective criteria for determining class membership. Here, every transaction was effected electronically. As noted below, class members can prove their membership by declarations or electronic records submitted in connection with their proofs of claim, which is a routine procedure in class action cases. Further, the evidence already identifies class members through two SQL databases. The Companies tracked "Everything" through the databases. X-A-52 141:19-23; 145:3-19. The databases include unique identifying information for each user, including some biographical information (name, phone number, and address). Dkt 96-3 ¶¶3, 5; X-F ¶¶16-20. In *In re Electronic Books Antitrust Litig.*, 2014 WL 1282293, *24 (S.D.N.Y. 2014), the court held that this kind of data: "detailed transaction records" of online book sales was sufficient.

Fraser lodges four irrelevant criticisms about the databases. *First*, he says the databases are compromised. That has nothing to do with whether the class members can be identified by objective criteria.[3] Fraser has no actual proof either. Fraser never discussed the data with knowledgeable former employees. Plaintiffs' expert did. X-A-53 38:9-39:13. *Second*, Fraser says the databases do not reflect all relevant transactions. This argument fails because it misapprehends how the securities worked. The relevant securities existed only in companies' databases and are necessarily accounted for there. A user had to use ZenCloud to activate a Hashlet. X-G ¶4. Hashpoints had no use outside of ZenCloud. X-F ¶21, X-G ¶5. Hashstakers only operated through ZenCloud. X-G ¶6. X-A-52 141:19-23; 145:3-19. As for Paycoin, investors briefly could mine it or acquire it on outside exchanges (transactions not at issue here). The only other way to acquire Paycoin was from redemptions of Hashpoints or to purchase it

[3] If Fraser's argument is really a damages point, it will fail. "The most elementary conceptions of justice and public policy require that the wrongdoer shall bear the risk of the uncertainty which his own wrong has created." *Bigelow v. RKO Radio Pictures*, 327 U.S. 251, 265 (1946).

through Paybase. Such transactions are internal to the Companies and are reflected in the databases. X-42 83:23-84:18; X-F ¶¶7-8. *Third*, Fraser says the databases lack information about chargebacks. Again, that is completely irrelevant to ascertainability.[4] *Fourth*, Fraser argues that the databases do not indicate the "identities of the customers" because an individual may have multiple accounts. Again, irrelevant to ascertainability. In *Jeffries v. Pension Trust Fund of Pension, Hospitalization & Benefit Plan of Elec. Indus.*, 2007 WL 2454111, *14 (S.D.N.Y. 2007), the court concluded that ascertainability was met even though plaintiffs' "data relating to the Local 501 Plan contains *no identifying information for the plan participants*."[5]

In *In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 90 (S.D.N.Y. 2017), the court held that plaintiffs satisfied the ascertainability requirement because the named plaintiffs provided detailed records "including credit card payments, confirmatory emails, records kept by the digital retailers, . . . ." *Id.* These were "sufficiently objective to satisfy the ascertainability requirement." Here, Shinners collected similar records for more than one-hundred class members, all of which has been produced in the litigation and are verified. *E.g.*, Dkt 106-1, ¶5, 106-2, ¶5, X-A-57. This type of proof can be submitted by class members in order to verify their membership in the class or their damages. By way of example, attached are confirmatory emails for Shinners, Pfeiffer,

---

[4] If this is damages argument, it fails. Analogous cases suggest there should be no offset for chargebacks, and that is, in any event, a legal issue common to the class. *See Randall v. Loftsgaarden*, 478 U.S. 647, 663 (1986) and *Lemanik, S.A. v. McKinley Allsopp, Inc.*, 125 F.R.D. 602, 609 (S.D.N.Y. 1989) (no offset for tax benefits). Fraser cites no caselaw that suggests plaintiffs must offset chargebacks.
Fraser is also just wrong about what the databases contain. The "auditlogs" table in ZenCloud has information about chargebacks. X-F ¶22. Fraser also ignores credit card data that has been produced in this lawsuit. The data includes records of over 42,000 credit card transactions. The data specifies whether the transaction was a credit or debit, and specifies whether the transaction was disputed. X-A ¶18.
[5] To the extent this is really a damages argument, it fails. A plaintiff need not employ a "'cumulative' methodology that includes offsetting gains in a loss calculation." A "transaction based" methodology that looks at unprofitable transactions only is acceptable. *Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*, 315 F. Supp. 2d 666, 680 (E.D. Pa. 2004). Moreover, as Mr. Mills' reply declaration shows, the databases contain biographical information that can be used to identify users with multiple accounts. X-F ¶ ¶ 14-20.

and Audet. X-A-54-A-56.[6] At 25-26, Fraser argues that such records could be falsified. But, that is sheer speculation on his part and, in any event, can be tested by contrary proof, if he has any.

Finally, Fraser claims that determining which members of the class are excluded requires an individual analysis. None of the people Fraser identifies (other than employees) fall within the exclusions in the class definition. The term "affiliate," which has been used in the class definition in hundreds of class actions, is used here in its usual legal sense, *i.e.*, entities under common control with the Companies, and there is no evidence that such entities acquired the relevant securities. There is no evidence that other categories of people (*e.g.*, forum moderators) were the Companies' agents. *See, e.g.*, *Cornelius v. Bodybuilding.com*, 2011 WL 2160358, *5 (D.Id. 2011) (forum moderators are not agents). As for employees, they can be identified by information in the databases, as demonstrated by both parties' experts. X-F ¶23; Dkt 107-2 ¶32.

C. Individual issues regarding damages issues do not preclude class certification.

At 29-30, Fraser says that individual damages issues will predominate. Not so. In the Second Circuit, "'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification.'" *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). Individual damages issues will not predominate for the reasons provided in § III.B.

D. Individual defenses will not predominate.

At 31-32, Fraser says individual defenses will predominate because members of the class committed fraud or were *in pari delicto* with the Companies. Affirmative defenses do not typically defeat predominance. *See Brown v. Kelly*, 609 F.3d 467, 483 (2d Cir. 2010) ("individualized inquiries with respect to some of the plaintiffs and some of the claims" respecting affirmative defenses did not defeat predominance); *Tyson Foods, Inc. v. Bouaphakeo*,

[6] Many other types of records have been produced in this litigation. Plaintiffs are not submitting this data because it is voluminous and contains personally identifiable information, but are of course willing to provide it if the Court believes doing so would be helpful.

136 S. Ct. 1036, 145 (2016) (predominance is met if "one or more of the central issues in the action are common to the class and can be said to predominate . . . even though other important matters will have to be tried separately, such as damages or some *affirmative defenses* peculiar to some individual members."). Fraser fails to offer evidence of a single class member that engaged in fraud; he only cites general claims that customers sought chargebacks and Shinners' testimony about fraud in the cryptocurrency industry. *MacPeg Ross O'Connell & Goldhaber, Inc. v. Castello*, 686 F. Supp. 397 (E.D.N.Y. 1988), does not say that such actions bar a fraud claim. Rather, it says that a plaintiff's relatively minor violation does not preclude its claims because the "seriousness of plaintiff's infraction would be outweighed by defendants' commission of fraud." *Id.* 399. Even if some customers sought wrongful chargebacks, that is no reason to deny relief to the whole class. Fraser argues that investors who resold the unregistered securities they bought from the Companies are "in equal fault" with the Companies. Hardly. The *in pari delicto* doctrine bars a claim only when "(1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public." *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310-11 (1985). Plaintiffs' resale of unregistered securities has nothing to do with the fraudulent statements at the center of plaintiffs' fraud claims. Plaintiffs also brought Blue-Sky unregistered securities claims. But Fraser cites no evidence suggesting that any plaintiff was an "active, voluntary participant in the unlawful activity that is the subject of the suit." *Pinter v. Dahl*, 486 U.S. 622, 636 (1988). In *Pinter*, the Supreme Court held that "the first prong of the *Bateman Eichler* test is satisfied if the plaintiff is at least equally responsible for the actions that render the sale of the unregistered securities illegal-the issuer's failure to register the securities before

offering them for sale, or his failure to conduct the sale in such a manner as to meet the registration exemption provisions." Any resale of the unregistered securities has nothing to do with the Companies' initial violation. Fraser's theory fails the second prong because it would effectively insulate issuers of unregistered securities from liability if individual investors resold the securities.

IV.   There is no reason to exclude foreign members of the class.

Fraser says this class fails the superiority requirement because it includes foreigners. Fraser's cases begin with a case about the extraterritorial application of U.S. securities laws. *Bersch v. Drexel Firestone, Inc.*, 519 F.2d 974 (2d Cir. 1975). The cases Fraser cites involve an "issue of borderline subject matter jurisdiction." *Marsden v. Select Medical Corp.*, 246 F.R.D. 480, 486 (E.D. Pa. 2007); *see In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 95 (S.D.N.Y. 2008) (French defendant with shares that traded primarily on the Paris stock exchange); *In re Alstom SA Sec. Litig.*, 253 F.R.D. 266 (S.D.N.Y. 2008) (French defendant with shares traded in both Europe and the U.S.)). Fraser also cites *Ansari v. New York Univ.*, 179 F.R.D. 112 (S.D.N.Y. 1998), which is not a securities fraud case and only involved 35 members. This case is more like *Marsden*, which was "based on alleged misrepresentations made in the U.S. by an American company whose shares traded on an American stock exchange." 246 F.R.D. 486. The *Marsden* court refused to exclude Austrians from the class because subject matter jurisdiction was clear and "it is far from clear how an Austrian court would even have jurisdiction from a suit arising from the alleged fraud here." Here too, Fraser fails to explain how a foreigner could sue him in a foreign court for conduct occurring in the U.S., and like in that case "[s]uch a speculative argument is simply not sufficient to support the exclusion of Capital Invest or an unknown number of foreign investors, especially when they are otherwise entitled to sue in U.S. courts."

Fraser's cases also predate *Morrison v. National Australia Bank*, 561 U.S. 247 (2010), which abrogates *Bersch*. Under *Morrison*, an investor may only bring a 10b-5 claim based on a purchase on a U.S. exchange, or based on a "purchase or sale of any other security in the United States." A domestic transaction occurs when the parties become irrevocably bound to enter into the transaction in the U.S. *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 67 (2d Cir. 2012). The transactions here were domestic. *See S.E.C. v. Traffic Monsoon, LLC*, 245 F. Supp. 3d 1275, 1295 (D.Utah 2017) (domestic company sold securities over the "internet to both foreign and domestic purchasers" and incurred liability in the U.S.). The concerns driving Fraser's cases are thus inapposite here. If the Court disagrees, it could simply alter the class definition to include domestic plaintiffs only.

## V. The class satisfies FRCP 23(a)(3).

### A. The named plaintiffs are typical.

At 35, Fraser argues that none of the named plaintiffs have standing to represent purchasers of Paycoin. That argument fails because the named plaintiffs all acquired Paycoin by redeeming Hashpoints, which is in essence a reinvestment or roll-over, *i.e.*, a purchase. *See* Dkt 1-1.

At 36-39, Fraser says that Shinners and Pfeiffer are subject to unique defenses. But Fraser does not dispute that plaintiffs have provided extensive discovery, sat for their depositions, and vigorously prosecuted the case. Fraser also fails to identify any conflicts that go to the heart of the issues in the case. There is no risk of the defenses becoming the focus at trial. *See In re MF Global Holdings Ltd. Investment Litigation*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015). Fraser's supposed defenses are meritless. *First*, Shinners is not an agent because it is undisputed that the Companies never hired him. Shinners sometimes edited documents for spelling and grammar. X-A-58 52:18-24; 51:19-23. That hardly makes him an agent. *Second*, Shinners had no access to

material non-public information. Shinners' testimony was that he had no NDA with the Companies. X-A-58 288:3-15. Fraser suggests that Shinners edited the Paycoin white paper and emailed with Garza, but fails to explain how any that resulted in Shinners learning anything material. *Third*, the email about outside pool rates refers to Shinners' suggestion that Hashlets be converted into Hashstakers based on their purchase price, and does not imply that Shinners knew about the fraud. X-G. *Fourth*, the evidence of Shinners supposedly encouraging Garza to break the law were merely observations that U.S. money changer rules may not apply in foreign jurisdictions, and that public companies are subject to greater regulatory oversight. None of this is evidence of Shinners encouraging Garza to break the law. Fraser's arguments about Pfeiffer fail too. *First*, Pfeiffer was not a moderator of the Companies' forums (even if that did somehow make him an agent). X-A-59 112:15-20 ("No. I never had moderator privileges."). *Second*, Fraser has no evidence that Pfeiffer obtained material non-public information. Fraser's emails do not show the escrow provided Pfeiffer with non-public information. *Third*, Fraser fails to explain why Pfeiffer's purchases after the SEC investigation make him subject to a unique defense. And, for the reasons explained above, neither plaintiff committed fraud or are *in pari delicto*.

B. Plaintiffs satisfied their numerosity burden.

Plaintiffs offered evidence (1) of all accounts in ZenCloud with at least one completed transaction; (2) all accounts in Paybase; and (3) internal documents from the companies indicating that support numerosity. Likewise, in his reply declaration, Mills has identified all users with at least one purchase or fund transaction (to the extent the Court concludes this is necessary). X-F ¶¶11-12. This is ample evidence of numerosity.

## VI. Conclusion

Plaintiffs respectfully submit that the Court should grant their motion.

DATED: December 21, 2018

Respectfully submitted,

*/s/ Colin M. Watterson*

Colin M. Watterson (*pro hac vice*)
cwatterson@susmangodfrey.com
Texas Bar No. 2409330
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel: (713) 651-9366
Fax: (713) 654-3367

Marc Seltzer (*pro hac vice*)
mseltzer@susmangodfrey.com
California Bar No. 54534
Kathryn Hoek (*pro hac vice*)
khoek@susmangodfrey.com
California Bar No. 219247
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

Seth Ard (*pro hac vice*)
sard@susmangodfrey.com
New York Bar No. 4773982
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6022
Tel: (212) 336-8330
Fax: (212) 336-8340

Edgar Sargent (*pro hac vice*)
esargent@susmangodfrey.com
Washington Bar No. 28283
Susman Godfrey L.L.P.
1201 Third Avenue, Suite 3800
Tel: (202) 516-3880
Fax: (310) 789-3150

Mark P. Kindall (ct13797)
mkindall@ikrlaw.com
Robert A. Izard
rizard@ikrlaw.com
IZARD, KINDALL & RAABE, LLP
29 S. Main St., Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290

*Counsel for Plaintiffs*

Certificate of Service

I hereby certify that on December 21, 2018, I served the foregoing via electronic mail on the following:

Daniel H. Weiner
Sarah L. Cave
Sara E. Echenique
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004-1482

Sean M. Fisher (ct23087)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT 06511

*/s/ Colin M. Watterson*
Colin M Watterson