# EXHIBIT 1

                                                          Page 1

 1

 2              IN THE UNITED STATES DISTRICT COURT

 3                    OF CONNECTICUT

 4

    DENIS MARC AUDET, MICHAEL )  Case 3:16-cv-00940
 5  PFEIFFER, DEAN ALLEN        )
    SHINNERS, and JASON         )  Hon. Michael P. Shea
 6  VARGAS, Individually and  )  Courtroom 2
    on Behalf of All Others    )
 7  Similarly Situated,         )  ECF Case
                                )
 8       Plaintiffs,            )  CLASS ACTION
                                )
 9  vs.                         )
                                )
10  STUART A. FRASER,           )
    GAW MINERS, LLC, AND        )
11  ZENMINER, LLC, (d/b/a       )
    ZEN CLOUD),                 )
12                              )
         Defendants.            )
13

              *******************************
14                ORAL VIDEOTAPED DEPOSITION
15                  HOMERO JOSHUA GARZA
16                    December 14, 2018
17              *******************************
18       ORAL VIDEOTAPED DEPOSITION OF HOMERO JOSHUA GARZA,
19  produced as a witness at the instance of the Plaintiffs
20  and duly sworn, was taken in the above-styled and
21  numbered cause on the 14th day of December, 2018, from
22  10:13 a.m. to 6:44 p.m., before April Balcombe-Anderson,
23  Certified Shorthand Reporter in and for the State of
24  Texas, reported by computerized stenotype machine at the
25  Job No. 152595

Homero Joshua Garza
THE VIDEOGRAPHER: On the record at 3:02.
Q. (BY MR. WATTERSON) Mr. Garza, why should anyone believe your testimony today?
MS. CAVE: Objection to the form.
A. Because I have an obligation to try, you know, to present and provide as accurate information as possible relative to everything that's happened at GAW Miners. It hurt a lot of people. I've, you know, read letters from the people that it hurt, and so I have an obligation to make sure that any responsibility is -- that I have in it is -- is as accurate as I -- it can be.
Q. (BY MR. WATTERSON) You were at one point a defendant in this lawsuit, correct?
A. Yes, sir.
Q. And the plaintiffs dismissed you as defendant, correct?
A. Yes, sir.
Q. And are you beholding to the plaintiffs for doing that?
MS. CAVE: Objection to the form.
A. Could you rephrase?
Q. (BY MR. WATTERSON) Sure.
You don't -- the fact that the plaintiffs

Homero Joshua Garza
dismissed you from this lawsuit didn't affect your testimony in any way, correct?
MS. CAVE: Objection to the form.
A. I'm saying plaintiffs are involved in this lawsuit. It's public record. I testified at my court hearing. And, you know, it's also public knowledge that now I'm serving an incarceration sentence, so, no, I mean, I -- I just have to be objective and, you know, try to answer it, I mean, regardless of, you know, who's done what. You know, just, you know, do right by the victims that suffered from all of this and try to be as accurate as possible.
Q. (BY MR. WATTERSON) You testified earlier that you were once friends with Mr. Fraser, but you aren't any longer, right?
A. Yes, sir.
Q. That didn't affect your testimony, right?
MS. CAVE: Objection to the form.
A. No, sir.
MR. WATTERSON: Thank you very much. I appreciate your time. Pass the witness.
EXAMINATION
QUESTIONS BY MS. CAVE:
Q. Mr. Garza, my name is Sarah Cave and I'm with

Homero Joshua Garza
Hughes Hubbard, and we represent Stuart Fraser, who's the remaining defendant in this case.
Mr. Watterson just asked you about your being dismissed from this case. So do you have a -- under -- was there an agreement with the plaintiffs for you to be dismissed as a defendant from this case?
A. Yes, ma'am.
Q. Was that in writing?
A. Yes, ma'am.
Q. Do you have a copy of that agreement?
A. I believe I have one in my possession.
Q. Okay. Would you be willing to provide that to us?
A. Yes, ma'am.
Q. Okay. Thank you.
And what does that agreement provide?
A. I don't remember the -- absolutely every word of it, but essentially, you know, that the agreement was that I made myself available for -- you know, to answer questions, you know. I'd be guessing if I said more than that, but I know that in essence is that I need to, you know, provide truthful and accurate information that I'm being asked for.
MR. WATTERSON: Can we go off the record

Homero Joshua Garza
real quick?
MS. CAVE: Sure.
THE VIDEOGRAPHER: Off the record at 3:07.
(Recess from 3:07 p.m. to 3:08 p.m.)
THE VIDEOGRAPHER: On the record at 3:08.
(Exhibit 243 marked.)
Q. (BY MS. CAVE) So, Mr. Garza, I'm handing you what's been marked as Exhibit 243. Is this the agreement that we were just discussing a moment ago?
A. Yes, ma'am.
Q. And on page 2 of that document, is that your signature?
A. Yes, ma'am.
Q. And did you review this document before you signed it?
A. Yes, ma'am.
Q. Did you review this with your -- with an attorney?
A. Yes, ma'am.
Q. Did you make any changes to the agreement before you signed it?
A. I do not recall. If they had been, they would have been done by my attorney, but I don't recall.
Q. And which attorney was that? Ms. Peerce?

Page 150

Homero Joshua Garza

1
2    A.  Yes, ma'am.
3    Q.  Okay.  And did you have any discussions
4  yourself with the plaintiffs about this agreement or was
5  it just through your attorney?
6    A.  I believe that it was through Ms. Peerce.
7    Q.  Okay.  Just bear with me one second.  I haven't
8  seen this document before.
9    A.  That's fine.
10   Q.  Do you know whether the -- the date of this
11 agreement is October 20th, 2016.  Do you know whether
12 this was before or after you met in person with
13 Mr. Watterson?
14   A.  This was before.
15   Q.  Had you yourself met with -- met with any of
16 the plaintiffs' counsel before you signed this
17 agreement?
18   A.  None.  Not that I can remember.
19   Q.  And in paragraph 1, it refers to -- it says,
20 "The plaintiffs will dismiss without prejudice all
21 claims asserted against Mr. Garza in the
22 above-referenced action."
23        Do you see that?
24   A.  Yes, ma'am.  Yes, ma'am.
25   Q.  Do you understand what "without prejudice"

Page 151

Homero Joshua Garza

1
2  means?
3    A.  Probably not as well as you do.
4    Q.  Well, the agreement, then, goes on to say, "If
5  the Court in Connecticut presiding over this action
6  determines there has been any such material breach or
7  that any representation by Mr. Garza is materially false
8  or misleading, Mr. Garza agrees that if the named
9  plaintiffs seek to reinstate him as the defendant," and
10 it goes on.
11        So do you understand that the plaintiffs
12 have the ability to bring you back in as a defendant in
13 this case?
14   A.  Yes, ma'am.
15   Q.  So what cooperation have you provided to the
16 plaintiffs in exchange for this agreement?
17   A.  I've met with Mr. Watterson, you know, once
18 before this meeting here today, and provided all the
19 documentation that I had put together that related to
20 Stuart as it related to GAW Miners.
21   Q.  And what documentation did you provide to the
22 plaintiffs?
23   A.  Any -- any correspondence that I could find
24 that related to Stuart.
25   Q.  And where did you search for that

Page 152

Homero Joshua Garza

1
2  correspondence?
3    A.  E-mail, text, you know, any form of
4  communication.
5    Q.  And when did you provide that information?
6    A.  When we met.
7    Q.  And when was that meeting?
8    A.  I don't recall the exact date.
9    Q.  Was it some -- well, do you recall how long it
10 was after you entered this agreement?
11   A.  I feel like maybe a month or two or something
12 like that.
13   Q.  And when you met with Mr. Watterson, was anyone
14 else present?
15   A.  No.
16   Q.  Was there a transcript of that taken?
17   A.  I do not recall.
18   Q.  Did you take any notes of that meeting?
19   A.  No, I didn't personally.
20   Q.  Did you speak to anyone else about what you
21 discussed with Mr. Watterson?
22   A.  My attorney, yeah, Marjorie.
23   Q.  I'm not asking for any conversations that you
24 had with your -- with your attorney, but anybody other
25 than that?

Page 153

Homero Joshua Garza

1
2    A.  That's all I can remember right now.
3    Q.  Did you send any e-mails or any text messages
4  after your meeting with Mr. Watterson about what you
5  discussed, other than with your attorney?
6    A.  Other than with my attorney, not that I can
7  remember.
8    Q.  And how long was your meeting with
9  Mr. Watterson?
10   A.  I feel like between -- I believe two to three
11 hours.
12   Q.  Do you recall what Mr. Watterson asked you?
13   A.  Some of the things.
14   Q.  Okay.  Can -- tell me what you remember about
15 what he asked you.
16   A.  A lot of the things he asked me, he asked me
17 today.  A lot of them were just things about how well
18 Stuart and I knew each other, how long -- you know, how
19 long we knew -- you know, just a lot of things about
20 the -- I guess the nature of our relationship.
21        I think that was the -- the bulk of it.
22 There was def- -- likely more, but that's what I
23 remember definitively, that it was just a lot about, you
24 know, how Stuart and I's relationship was at various
25 times and things like that.

Page 154

Homero Joshua Garza

Q. And the -- the plaintiffs then did, in fact, amend the complaint and drop their claims against you, correct?

A. I believe so, yes, ma'am.

Q. Have you seen the first amended complaint in this case?

A. Yes, ma'am.

Q. Did you --

A. I believe so.

Q. Did you review the new allegations that the plaintiffs put in the complaint?

A. Can you clarify, please?

Q. Yeah. So the plaintiffs amended their complaint using information that you had provided --

A. Yes, ma'am.

Q. -- to Mr. Watterson? Did you review those new allegations in the complaint?

A. Yes, ma'am.

Q. And did you -- were those true and accurate, as far as you know?

A. Yes, ma'am.

Q. Now, your -- you discussed -- I guess you exchanged e-mails with Mr. Watterson about appearing here today for your -- your deposition?

Page 155

Homero Joshua Garza

A. Yes, ma'am.

Q. And you're appearing voluntarily, correct?

A. Yes, ma'am.

Q. There's no court order or subpoena that requires you to be here?

A. No, ma'am.

Q. Did plaintiffs' counsel promise you anything in exchange for your appearing here today?

A. No, ma'am.

Q. Are they reimbursing you for any of your expenses?

A. No, ma'am, not that I know of.

Q. What phone -- you referred earlier to a lot of conversations you had with Stuart Fraser. What phone did you use to have those conversations?

A. It would have been my old Vermont number that -- which would have been through Google Voice, and that's -- the question was asked earlier if I had access to. That's the one I think I -- I lost because, you know, I don't use -- I don't have a Vermont number anymore.

Q. Okay. And by your Vermont number, do you remember what that number was?

A. (802)579-8360.

Page 156

Homero Joshua Garza

Q. Okay. Thank you.

Earlier today, you mentioned that you gave testimony to the SEC. Do you recall that?

A. Yes, ma'am.

Q. Was there a court reporter present taking a transcript of that?

A. Yes, ma'am.

Q. And you said you don't have a copy?

A. I do not believe so.

Q. Does your attorney, do you know?

A. Marjorie, it's possible.

Q. If she has a copy, would you authorize her to provide that to us?

A. Yes, ma'am, I will.

Q. Okay. You mentioned that your first interaction with Mr. Fraser was in connection with installing Internet at his house in Vermont?

A. It was his lake house. Yes, ma'am, it was his campground there.

Q. And how did you learn to install Internet?

A. Well, specifically, I was actually there to set up a Wi-Fi system for the campground. And in order for that to work, then I would need Internet access so -- so the Internet company was the one who installed the

Page 157

Homero Joshua Garza

Internet, and I was there to install Wi-Fi access points.

Q. Okay. And how did you learn to install Wi-Fi access points?

A. Just informally. You know, I've just been doing technology and stuff for -- since I was a kid, so...

Q. Before your -- the project that you did at Mr. Fraser's lake house, how long had you been involved with the Wi-Fi installation business?

A. Probably three or so years, three or more years.

Q. How long after you met Mr. Fraser did you set up the -- the wireless -- sorry.

The Optima Computer business, did that exist at the time you first met Mr. Fraser or --

A. Yes, ma'am.

Q. Okay. And how long had that business been in operation?

A. I -- I don't recall specifically. Probably about a year and a half, maybe two years.

Q. Okay. And was that an LLC or some other corporate entity?

A. It was likely an LLC.

## Page 290

```
 1            ERRATA SHEET
 2    Case Name:
 3    Deposition Date:
 4    Deponent:
 5    Pg. No. Now Reads   Should Read  Reason
 6    ___ ___ _____ _____ _____
 7    ___ ___ _____ _____ _____
 8    ___ ___ _____ _____ _____
 9    ___ ___ _____ _____ _____
10    ___ ___ _____ _____ _____
11    ___ ___ _____ _____ _____
12    ___ ___ _____ _____ _____
13    ___ ___ _____ _____ _____
14    ___ ___ _____ _____ _____
15    ___ ___ _____ _____ _____
16    ___ ___ _____ _____ _____
17    ___ ___ _____ _____ _____
18    ___ ___ _____ _____ _____
19    ___ ___ _____ _____ _____
20    ___ ___ _____ _____ _____

              _____
21            Signature of Deponent
22    SUBSCRIBED AND SWORN BEFORE ME
23    THIS ____ DAY OF _____, 2018.
24    _____
25    (Notary Public)  MY COMMISSION EXPIRES:_____
```

## Page 292

```
 1        Homero Joshua Garza
 2      IN THE UNITED STATES DISTRICT COURT
 3            OF CONNECTICUT
 4
      DENIS MARC AUDET, MICHAEL ) Case 3:16-cv-00940
 5    PFEIFFER, DEAN ALLEN     )
      SHINNERS, and JASON      ) Hon. Michael P. Shea
 6    VARGAS, Individually and ) Courtroom 2
      on Behalf of All Others  )
 7    Similarly Situated,      ) ECF Case
                               )
 8      Plaintiffs,            ) CLASS ACTION
                               )
 9    vs.                      )
                               )
10    STUART A. FRASER,        )
      GAW MINERS, LLC, AND     )
11    ZENMINER, LLC, (d/b/a    )
      ZEN CLOUD),              )
12                             )
        Defendants.            )
13
14      ********************************
15        REPORTER'S CERTIFICATE
16    ORAL VIDEOTAPED DEPOSITION OF HOMERO JOSHUA GARZA
17          December 14, 2018
18      ********************************
19      I, April Balcombe-Anderson, Certified Shorthand
20    Reporter in and for the State of Texas, hereby certify
21    to the following:
22      That the witness, HOMERO JOSHUA GARZA, was duly
23    sworn and that the transcript of the deposition is a
24    true record of the testimony given by the witness;
25
```

## Page 291

```
 1        Homero Joshua Garza
 2      I, HOMERO JOSHUA GARZA, have read the foregoing
 3    deposition and hereby affix my signature that same is
 4    true and correct, except as noted above.
 5
 6              _____
 7            HOMERO JOSHUA GARZA
 8    THE STATE OF _____)
 9    COUNTY OF _____)
10
11      Before me, _____, on this
12    day personally appeared HOMERO JOSHUA GARZA, known to me
13    or proved to me on the oath of _____ or
14    through _____ (description of
15    identity card or other document) to be the person whose
16    name is subscribed to the foregoing instrument and
17    acknowledged to me that he/she executed the same for the
18    purpose and consideration therein expressed.
19      Given under my hand and seal of office on this
20    _____ day of _____, _____.
21
22              _____
23            NOTARY PUBLIC IN AND FOR
24            THE STATE OF _____
25    My Commission Expires: _____
```

## Page 293

```
 1        Homero Joshua Garza
 2
 3      That the original deposition was delivered to
 4    Ms. Cave; the Custodial Attorney;
 5
 6      I further certify pursuant to FRCP Rule 30(f)(1)
 7    that the signature of the deponent:
 8      ___ was requested by the deponent or a party before
 9    the completion of the deposition and that the signature
10    is to be before any notary public and returned within 30
11    days (or ___ days per agreement of counsel) from the
12    date of receipt of the transcript.
13      If returned, the attached Changes and Signature
14    Page contains any changes and the reasons therefore:
15      ___ was not requested by the deponent or a party
16    before the completion of the deposition.
17      That the amount of time used by each party at the
18    time of the deposition is as follows:
19      Mr. Watterson (4h6m)
          Attorney for Plaintiffs
20
      Ms. Cave (3h3m)
21        Attorney for Defendant
22
23      That pursuant to information given to the
24    deposition officer at the time said testimony was taken,
25    the following includes counsel for all parties of
```

Page 294

1          Homero Joshua Garza
2    record:
3    FOR PLAINTIFFS:
4        MR. COLIN WATTERSON, ESQ.
         Susman Godfrey
5        1000 Louisiana
         Houston, TX 77002
6
7
8    FOR DEFENDANTS, STUART A. FRASER, GAW MINERS, LLC AND
     ZENMINER, LLC, (D/B/A ZEN CLOUD):
9
         MS. SARAH CAVE, ESQ.
10       MS. HANNAH MILLER, ESQ.
         MS. SARA ECHENIQUE (via LiveLitigation and
11       teleconference)
         MS. ANNA SCHULER (via LiveLitigation and
12       teleconference)
         Hughes Hubbard & Reed
13       One Battery Park Plaza
         New York, New York 10004
14
15
16
17       That $_____ is the deposition officer's charges
18   to the Plaintiffs for preparing the original deposition
19   and any copies of exhibits;
20       I further certify that I am neither counsel for,
21   related to, nor employed by any of the parties in the
22   action in which this proceeding was taken, and further
23   that I am not financially or otherwise interested in the
24   outcome of this action.
25

Page 295

1          Homero Joshua Garza
2      Certified to by me on this 19th day of
3    December, 2018.
4
5
6              _____
7              April Balcombe, CSR, CRR, CRC
               Texas CSR 5752
8              Expiration:  12/31/2019
               TSG Reporting Worlwide
9              977.702.9580
10
...
25