

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Office:+1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

January 14, 2019

VIA ECF

The Hon. Donna F. Martinez
United States Courthouse
450 Main Street – Suite 262
Hartford, CT 06103

      Re:    *Audet v. Fraser, et al.*, No. 16-cv-00940 (D. Conn):
              <u>Defendant Stuart A. Fraser's Motion to Compel Discovery (ECF No. 82)</u>

Dear Judge Martinez:

      On behalf of defendant Stuart A. Fraser ("Fraser"), we write regarding Fraser's Motion to Compel Discovery (ECF No. 82) and Plaintiffs' letter dated January 10, 2019 (ECF No. 118). In their letter, Plaintiffs incorrectly state that Fraser no longer has a substantial need for Plaintiffs' notes from an October 2016 meeting with former defendant Homero Joshua Garza (the "Garza Notes") because the parties deposed Garza on December 14, 2018.[1] To the contrary, Garza's deposition testimony further highlights Fraser's substantial need for access to the Garza Notes.[2] Regardless, Plaintiffs should produce the Garza Notes because they have waived any potential work product protection by providing them to the Federal Bureau of Investigation ("FBI").

      Despite Plaintiffs' protests to the contrary, Garza's deposition reinforces Fraser's substantial need for the Garza Notes. At his deposition, Garza professed complete recall of key events that occurred several years ago and complete overlap between his interview with Plaintiffs' counsel and the questions asked at his deposition, an obviously untrue statement. (Garza Dep. Tr. 153:14-17, attached as Ex. A.) Garza, who has admitted to serial lying, is hardly a trustworthy source.[3] It is also highly improbable that Garza recalled every question asked of him more than two years ago or that his memory in responding to these questions is the

---

1. Garza pled guilty to wire fraud in July 2017 and was sentenced to 21 months' imprisonment. *See U.S. v. Garza*, No. 3:17-cr-00158-RNC-1 (D. Conn.), *see* ECF Nos. 6, 49. He will be incarcerated later this year. (*Id.*, ECF No. 51.)

2. *See* Defendant Stuart A. Fraser's Memorandum of Law in Support of Motion to Compel Discovery (ECF No. 82); Defendant Stuart A. Fraser's Reply Memorandum of Law In Support of His Motion to Compel Discovery (ECF No. 89) ( "Reply").

3. Garza Sentencing Tr. at 78:11-13, attached as Ex. B ("I made misleading statements, I withheld information, just lied. Downright lied.").

substantial equivalent of his recollections two-plus years later.[4] *See Abdell v. City of New York*, No. 05 Civ. 8453 KMK JCF 2006 WL 2664313, at *7 (S.D.N.Y. Sept. 14, 2006) ("There may be alternative means of ascertaining what the police officers observed at the time of each arrest, but none of the sources of such information is the 'substantial equivalent' of the DA Data Sheets. While the plaintiffs can take the deposition of each officer, the difficulty of recalling the details of chaotic events that took place more than two years ago is likely to diminish the utility of the testimony."). The Garza Notes, which are directly relevant to this proceeding, therefore have a unique value apart from testimony elicited at Garza's deposition. *See In re Aggrenox Antitrust Litig.*, No. 3:14-CV-00572 (SRU), 2017 WL 5885664, at *14 (D. Conn. Nov. 29, 2017). The Garza Notes were far closer in time to key events than Garza's deposition testimony — which took place more than three years after the events in question and more than two years after creation of the Garza Notes — and therefore likely contain "information that may be essential" to establishing Fraser's defenses. *Weber v. Paduano*, No. 02 CIV. 3392 (GEL), 2003 WL 161340, at *14 (S.D.N.Y. Jan. 22, 2003); *see also* Decl. of Colin M. Watterson re: Creation of Notes at Issue in Stuart A. Fraser's Motion to Compel Discovery (ECF No. 118-2) ("Watterson Decl.") at ¶ 5 ("The main purpose of the interview was to learn information that would support plaintiffs' claim that Stuart Fraser was a controlling person[.]"). Finally, absent the Garza Notes, Fraser will not be able to question Garza at trial about any contradictions between what he told Plaintiffs' counsel in 2016 and what he said at his deposition, inhibiting Fraser's ability to defend himself. *Abdell*, 2006 WL 2664313 at *7.

Separate from Fraser's demonstrated need, Plaintiff Shinners' admitted production of the Garza Notes to the FBI (*see* Watterson Decl. at ¶ 8) waived any work product protection that might otherwise have applied. As explained in Fraser's Reply (ECF No. 89), sharing work product with the FBI without a confidentiality agreement creates a "strong potential that the material may ultimately become public and thus available to an adversary" and thus waives work product protections. *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 173 (S.D.N.Y. 2002); *see D'Ippolito v. Cities Serv. Co.*, 39 F.R.D. 610, 610 (S.D.N.Y. 1965) (finding waiver of work product protection where the exhibit in question had been voluntarily disclosed to the Antitrust Division of the Department of Justice, the government was not a party to the lawsuit, and the disclosure of the document could not "be termed as an interchange of information between counsel on the same side of the litigation.").

Fraser respectfully requests that the Court order Plaintiffs to produce the Garza Notes.

Respectfully submitted,

Sarah L. Cave

cc:  Colin Waterson, Esq. (via ECF and email)
    Sean Fisher, Esq. (via ECF and email)

---

4. In October 2016, Garza was undoubtedly motivated to extricate himself from this case and executed an agreement in which he traded his dismissal from this action for evidence and testimony supporting Plaintiffs' claims against Fraser. (*See* Garza Dep. Tr. 148:4-16, Ex. A.)

93117985_2

# Exhibit A

```
                                                              Page 1

 1
 2              IN THE UNITED STATES DISTRICT COURT
 3                      OF CONNECTICUT
 4
    DENIS MARC AUDET, MICHAEL  )  Case 3:16-cv-00940
 5  PFEIFFER, DEAN ALLEN       )
    SHINNERS, and JASON        )  Hon. Michael P. Shea
 6  VARGAS, Individually and   )  Courtroom 2
    on Behalf of All Others    )
 7  Similarly Situated,        )  ECF Case
                               )
 8       Plaintiffs,           )  CLASS ACTION
                               )
 9  vs.                        )
                               )
10  STUART A. FRASER,          )
    GAW MINERS, LLC, AND       )
11  ZENMINER, LLC, (d/b/a      )
    ZEN CLOUD),                )
12                             )
         Defendants.           )
13
                 *******************************
14             ORAL VIDEOTAPED DEPOSITION
15                HOMERO JOSHUA GARZA
16                  December 14, 2018
17             *******************************
18     ORAL VIDEOTAPED DEPOSITION OF HOMERO JOSHUA GARZA,
19  produced as a witness at the instance of the Plaintiffs
20  and duly sworn, was taken in the above-styled and
21  numbered cause on the 14th day of December, 2018, from
22  10:13 a.m. to 6:44 p.m., before April Balcombe-Anderson,
23  Certified Shorthand Reporter in and for the State of
24  Texas, reported by computerized stenotype machine at the
25  Job No. 152595
```

## Page 2

offices of Regus Littlefield Congress, 106 East 6th Street, Suite 900, Austin, Texas 78701, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

Job No. 152595
Reported by April Balcombe, CSR, CRR, CRC

## Page 3

APPEARANCES

FOR PLAINTIFFS:
   MR. COLIN WATTERSON, ESQ.
   Susman Godfrey
   1000 Louisiana
   Houston, TX 77002

FOR DEFENDANTS, STUART A. FRASER, GAW MINERS, LLC AND ZENMINER, LLC, (D/B/A ZEN CLOUD):

   MS. SARAH CAVE, ESQ.
   MS. HANNAH MILLER, ESQ.
   MS. SARA ECHENIQUE (via LiveLitigation and teleconference)
   MS. ANNA SCHULER (via LiveLitigation and teleconference)
   Hughes Hubbard & Reed
   One Battery Park Plaza
   New York, New York 10004

ALSO PRESENT:
   Mr. Homero Joshua Garza,
   the Witness; and
   Mr. Angelica Lavaguen,
   the Videographer; and
   Ms. April Balcombe-Anderson,
   the Court Reporter.

## Page 4

Homero Joshua Garza

INDEX
                                                              PAGE
HOMERO JOSHUA GARZA
   Examination by Mr. Watterson .....................6
   Examination by Ms. Cave ........................147
   Further Examination by Mr. Watterson ............271
   Signature Page ................................290
   Court Reporter's Certificate ...................292

EXHIBITS

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 238 | E-mail Chain | 36 |
| Exhibit 239 | E-mail | 42 |
| Exhibit 240 | E-mail with ManagementProfiles.doc | 49 |
| Exhibit 241 | Press release | 106 |
| Exhibit 242 | E-mail Chain | 141 |
| Exhibit 243 | Agreement, 10/20/16 | 149 |
| Exhibit 244 | Hash-Base document | 208 |
| Exhibit 245 | Geniuses at Work Corporate Structure Flowchart | 210 |
| Exhibit 246 | Action by Written Consent of the Sole Incorporator | 212 |
| Exhibit 247 | E-mail Chain | 216 |
| Exhibit 248 | E-mail, 11/7/14 | 218 |

## Page 5

Homero Joshua Garza
EXHIBITS (cont.)

| EXHIBIT | DESCRIPTION | PAGE |
|---|---|---|
| Exhibit 249 | Text Messages | 225 |
| Exhibit 250 | E-mail Chain between from Mr. Shinners to Mr. Garza, Joe Mordica dated November 30th | 233 |
| Exhibit 251 | E-mail Chain | 246 |
| Exhibit 252 | E-mail Chain | 264 |
| Exhibit 253 | Transcript of Change of Plea Hearing, 7/20/17 | 267 |
| Exhibit 254 | Transcript of Sentencing, 9/13/18 | 269 |
| Exhibit 255 | E-mail, 7/17/13 | 283 |

Page 146

Homero Joshua Garza

1
2     THE VIDEOGRAPHER: On the record at 3:02.
3     Q. (BY MR. WATTERSON) Mr. Garza, why should
4  anyone believe your testimony today?
5     MS. CAVE: Objection to the form.
6     A. Because I have an obligation to try, you know,
7  to present and provide as accurate information as
8  possible relative to everything that's happened at GAW
9  Miners. It hurt a lot of people. I've, you know, read
10 letters from the people that it hurt, and so I have an
11 obligation to make sure that any responsibility is --
12 that I have in it is -- is as accurate as I -- it can
13 be.
14    Q. (BY MR. WATTERSON) You were at one point a
15 defendant in this lawsuit, correct?
16    A. Yes, sir.
17    Q. And the plaintiffs dismissed you as defendant,
18 correct?
19    A. Yes, sir.
20    Q. And are you beholding to the plaintiffs for
21 doing that?
22    MS. CAVE: Objection to the form.
23    A. Could you rephrase?
24    Q. (BY MR. WATTERSON) Sure.
25       You don't -- the fact that the plaintiffs

Page 147

Homero Joshua Garza

1
2  dismissed you from this lawsuit didn't affect your
3  testimony in any way, correct?
4     MS. CAVE: Objection to the form.
5     A. I'm saying plaintiffs are involved in this
6  lawsuit. It's public record. I testified at my court
7  hearing. And, you know, it's also public knowledge that
8  now I'm serving an incarceration sentence, so, no, I
9  mean, I -- I just have to be objective and, you know,
10 try to answer it, I mean, regardless of, you know, who's
11 done what. You know, just, you know, do right by the
12 victims that suffered from all of this and try to be as
13 accurate as possible.
14    Q. (BY MR. WATTERSON) You testified earlier that
15 you were once friends with Mr. Fraser, but you aren't
16 any longer, right?
17    A. Yes, sir.
18    Q. That didn't affect your testimony, right?
19    MS. CAVE: Objection to the form.
20    A. No, sir.
21    MR. WATTERSON: Thank you very much. I
22 appreciate your time. Pass the witness.
23       EXAMINATION
24 QUESTIONS BY MS. CAVE:
25    Q. Mr. Garza, my name is Sarah Cave and I'm with

Page 148

Homero Joshua Garza

1
2  Hughes Hubbard, and we represent Stuart Fraser, who's
3  the remaining defendant in this case.
4     Mr. Watterson just asked you about your
5  being dismissed from this case. So do you have a --
6  under -- was there an agreement with the plaintiffs for
7  you to be dismissed as a defendant from this case?
8     A. Yes, ma'am.
9     Q. Was that in writing?
10    A. Yes, ma'am.
11    Q. Do you have a copy of that agreement?
12    A. I believe I have one in my possession.
13    Q. Okay. Would you be willing to provide that to
14 us?
15    A. Yes, ma'am.
16    Q. Okay. Thank you.
17       And what does that agreement provide?
18    A. I don't remember the -- absolutely every word
19 of it, but essentially, you know, that the agreement was
20 that I made myself available for -- you know, to answer
21 questions, you know. I'd be guessing if I said more
22 than that, but I know that in essence is that I need to,
23 you know, provide truthful and accurate information that
24 I'm being asked for.
25    MR. WATTERSON: Can we go off the record

Page 149

Homero Joshua Garza

1
2  real quick?
3     MS. CAVE: Sure.
4     THE VIDEOGRAPHER: Off the record at 3:07.
5     (Recess from 3:07 p.m. to 3:08 p.m.)
6     THE VIDEOGRAPHER: On the record at 3:08.
7     (Exhibit 243 marked.)
8     Q. (BY MS. CAVE) So, Mr. Garza, I'm handing you
9  what's been marked as Exhibit 243. Is this the
10 agreement that we were just discussing a moment ago?
11    A. Yes, ma'am.
12    Q. And on page 2 of that document, is that your
13 signature?
14    A. Yes, ma'am.
15    Q. And did you review this document before you
16 signed it?
17    A. Yes, ma'am.
18    Q. Did you review this with your -- with an
19 attorney?
20    A. Yes, ma'am.
21    Q. Did you make any changes to the agreement
22 before you signed it?
23    A. I do not recall. If they had been, they would
24 have been done by my attorney, but I don't recall.
25    Q. And which attorney was that? Ms. Peerce?

Page 150

Homero Joshua Garza

A. Yes, ma'am.
Q. Okay. And did you have any discussions yourself with the plaintiffs about this agreement or was it just through your attorney?
A. I believe that it was through Ms. Peerce.
Q. Okay. Just bear with me one second. I haven't seen this document before.
A. That's fine.
Q. Do you know whether the -- the date of this agreement is October 20th, 2016. Do you know whether this was before or after you met in person with Mr. Watterson?
A. This was before.
Q. Had you yourself met with -- met with any of the plaintiffs' counsel before you signed this agreement?
A. None. Not that I can remember.
Q. And in paragraph 1, it refers to -- it says, "The plaintiffs will dismiss without prejudice all claims asserted against Mr. Garza in the above-referenced action."
  Do you see that?
A. Yes, ma'am. Yes, ma'am.
Q. Do you understand what "without prejudice"

Page 151

Homero Joshua Garza

means?
A. Probably not as well as you do.
Q. Well, the agreement, then, goes on to say, "If the Court in Connecticut presiding over this action determines there has been any such material breach or that any representation by Mr. Garza is materially false or misleading, Mr. Garza agrees that if the named plaintiffs seek to reinstate him as the defendant," and it goes on.
  So do you understand that the plaintiffs have the ability to bring you back in as a defendant in this case?
A. Yes, ma'am.
Q. So what cooperation have you provided to the plaintiffs in exchange for this agreement?
A. I've met with Mr. Watterson, you know, once before this meeting here today, and provided all the documentation that I had put together that related to Stuart as it related to GAW Miners.
Q. And what documentation did you provide to the plaintiffs?
A. Any -- any correspondence that I could find that related to Stuart.
Q. And where did you search for that

Page 152

Homero Joshua Garza

correspondence?
A. E-mail, text, you know, any form of communication.
Q. And when did you provide that information?
A. When we met.
Q. And when was that meeting?
A. I don't recall the exact date.
Q. Was it some -- well, do you recall how long it was after you entered this agreement?
A. I feel like maybe a month or two or something like that.
Q. And when you met with Mr. Watterson, was anyone else present?
A. No.
Q. Was there a transcript of that taken?
A. I do not recall.
Q. Did you take any notes of that meeting?
A. No, I didn't personally.
Q. Did you speak to anyone else about what you discussed with Mr. Watterson?
A. My attorney, yeah, Marjorie.
Q. I'm not asking for any conversations that you had with your -- with your attorney, but anybody other than that?

Page 153

Homero Joshua Garza

A. That's all I can remember right now.
Q. Did you send any e-mails or any text messages after your meeting with Mr. Watterson about what you discussed, other than with your attorney?
A. Other than with my attorney, not that I can remember.
Q. And how long was your meeting with Mr. Watterson?
A. I feel like between -- I believe two to three hours.
Q. Do you recall what Mr. Watterson asked you?
A. Some of the things.
Q. Okay. Can -- tell me what you remember about what he asked you.
A. A lot of the things he asked me, he asked me today. A lot of them were just things about how well Stuart and I knew each other, how long -- you know, how long we knew -- you know, just a lot of things about the -- I guess the nature of our relationship.
  I think that was the -- the bulk of it. There was def- -- likely more, but that's what I remember definitively, that it was just a lot about, you know, how Stuart and I's relationship was at various times and things like that.

# Exhibit B

```
                  UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x
                                :
UNITED STATES OF AMERICA        : No.  3:17CR158(RNC)
                                :
         vs.                    :
                                :
HOMERO JOSHUA GARZA,            :
                                : HARTFORD, CONNECTICUT
              Defendant.        : SEPTEMBER 13, 2018
                                :
- - - - - - - - - - - - - - - - x


                         SENTENCING


     BEFORE:

            HON. ROBERT N. CHATIGNY, U.S.D.J.




APPEARANCES:


     FOR THE GOVERNMENT:

        U.S. ATTORNEY'S OFFICE
        157 Church Street
        P.O. Box 1824; 23rd Floor
        New Haven, Connecticut 06510
        BY:  JOHN TROWBRIDGE PIERPONT, AUSA


     FOR THE DEFENDANT:

        BALLARD SPAHR, LLP-NYC
        919 Third Avenue
        New York, New York 10022
        BY:  MARJORIE J. PEERCE, ESQ.



                              Darlene A. Warner, RDR-CRR
                              Official Court Reporter
```

1    are true, and I accept that I caused those things.
2            I think for a long time I wasn't ready to accept
3    responsibility for my actions.  I was very angry and
4    wrong, and as my lawyer said, when my mom passed away, it
5    kind of put things in perspective because it made me
6    realize how fleeting life is and how wasteful it is to do
7    anything other than the right thing.
8            And I feel like for me it just, I don't know, it
9    kind of just clicked.  And no matter what happened, you
10   know, I was in charge and it was my job to keep customers
11   and investors safe, and I didn't.  You know, I made
12   misleading statements, I withheld information, just lied.
13   Downright lied.
14           And once I realized that and came kind of out of
15   this weird fog that I was in, I just decided I had two
16   choices:  To do nothing or do something, and I decided I
17   wanted to do something.
18           And the first thing I did was apologize to my
19   wife because she stood by my when I didn't deserve for her
20   to, and together we started something new because I
21   believed that if I worked hard enough at it, that
22   eventually it could become a vehicle that would be able to
23   help other people that I hurt.
24           It's difficult to, you know, learn new things
25   today, but when I saw the victim letters and read them, it