UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, *et al.*,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>STUART A. FRASER, GAW MINERS,<br>LLC, and ZENMINER, LLC,<br><br>　　　　　　　Defendants. | Case No. 3:16-CV-00940<br><br>Hon. Michael P. Shea<br>Courtroom 2<br><br>ECF Case<br><br>January 22, 2019 |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT STUART A.
FRASER'S MOTION TO EXCLUDE DECLARATIONS AND TESTIMONY OF
<u>ROBERT MILLS AND LOU KERNER</u>**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .......................................................................................................................1

I. THE *DAUBERT* STANDARD APPLIES AT THE CLASS CERTIFICATION STAGE..1

II. MILLS' OPINIONS FAIL TO SATISFY THE *DAUBERT* STANDARD.........................2

    A. Mills' Opinions Are Inadmissible..................................................................2

    B. Mills' "Methodology" Was Not Sufficiently Rigorous. ..........................................2

    C. The "Methodologies" Mills Might Use To Identify Class Members And Calculate Damages Are Not Sufficiently Rigorous Or Supported By The Databases. ...............................................................................................................4

        1. The Databases do not contain sufficient biographical information about the customers associated with each UserID to support Mills' conclusions................................................................................................4

        2. Mills' proposed "methodology" for ascertaining "value received" is not sufficiently rigorous or supported by the Databases. ..........................7

        3. Mills proposes no methodology to resolve discrepancies in the Databases. ..........................................................................................................8

        4. Mills' proposal to identify class members by linking UserIDs with transactions is not sufficiently rigorous or supported by the Databases. ..........................................................................................................9

III. KERNER'S OPINIONS FAIL TO SATISFY THE *DAUBERT* STANDARD..................9

CONCLUSION..................................................................................................................10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256 (2d Cir. 2002) ...................................2

*Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 09 Civ.
   686 (SAS), 2011 WL 6288415 (S.D.N.Y. Dec. 15, 2011) .......................................................10

*Buckley v. Deloitte & Touche USA LLP*, 541 F. App'x 62 (2d Cir. 2013)....................................3

*Byrnes v. Faulkner, Dawkins & Sullivan*, 550 F.2d 1303 (2d Cir. 1977).......................................5

*Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110 (S.D.N.Y. 2015),
   *objections overruled by* 325 F.R.D. 55 (S.D.N.Y. 2018) ..........................................................2

*Cornelius v. Bodybuilding.com, LLC*, No. 10 Civ. 027 (BLW), 2011 WL 2160358
   (D. Idaho June 1, 2011)..............................................................................................................6

*In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95 (S.D.N.Y. 2005)........................................................5

*Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086 (JMF), 2013
   WL 5658790 (S.D.N.Y. Oct. 17, 2013)....................................................................................10

*Gen. Elec. Co. v. Joiner*, 522 U.S. 136 (1997) ...............................................................................2

*In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24 (2d Cir. 2006) ................................................1

*In re LIBOR-Based Financial Instruments Antitrust Litigation*, 299 F. Supp. 3d
   430 (S.D.N.Y. 2018)...................................................................................................................1

*Merryman v. Citigroup*, No. 15 Civ. 9185 (CM), 2018 WL 1621495
   (S.D.N.Y. Mar. 22, 2018) ...........................................................................................................1

*Nimely v. City of New York*, 414 F.3d 381 (2d Cir. 2005).............................................................2

*Randall v. Loftsgaarden*, 478 U.S. 647 (1986)...............................................................................7

*S.E.C. v. Ronald Montano, et al.*, 18 Civ. 01606 (GAP) (GJK)
   (M.D. Fla. Sept. 27, 2018) ..........................................................................................................7

*Securities and Exchange Commission v. Garza*, 15 Civ. 1760
   (D. Conn. May 29, 2017)............................................................................................................4

*In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144 (S.D.N.Y. 2012)....................................5

**Statutes and Rules**

Connecticut Uniform Securities Act § 36b-29(a)(2) ..................................................................7, 8

Securities Act of 1933 § 12(2), 15 U.S.C. § 77*l* ..............................................................................7

Securities Exchange Act of 1934 § 28(a), 15 U.S.C. § 78bb(a) .......................................................5

**PRELIMINARY STATEMENT**

Unlike the little boy who saved Holland by putting his finger in the leaking dike, Plaintiffs' after-the-fact rationalizations cannot prevent their purported experts, Robert Mills ("Mills") and Lou Kerner ("Kerner"), from collapsing under the *Daubert* standard. Mills did not, and even now has not, taken the most basic steps to confirm that the ZenCloud and PayBase database files (the "Databases") he plans to use to calculate damages on a class-wide basis contain sufficient, comprehensive and reliable data. His shifting suggestions about what he *might* do are no substitute for a recognized, tested methodology for calculating class-wide damages in a federal securities class action. Even if Plaintiffs' mischaracterizations of Kerner's background could compensate for his lack of expertise in cryptocurrency trading or mining, Kerner's admissions that his "opinions" are based on nothing more than "common sense" and his "beliefs" render his opinions inadmissible. Neither Mills nor Kerner has exhibited the rigorous analysis the Court should require from an expert, and both should be excluded.

**ARGUMENT**

**I. THE *DAUBERT* STANDARD APPLIES AT THE CLASS CERTIFICATION STAGE.**

The case law Plaintiffs cite undermines their argument that the *Daubert* standard does not apply to expert evidence at the class certification stage.[1] In *In re LIBOR-Based Financial Instruments Antitrust Litigation*, 299 F. Supp. 3d 430 (S.D.N.Y. 2018), Judge Buchwald applied *Daubert*, "given the Second Circuit's direction that [the court] consider 'the relevant evidence admitted at the class certification stage . . . .'" *LIBOR*, 299 F. Supp. 3d at 470 (quoting *In re Initial Pub. Offerings Sec. Litig.*, 471 F.3d 24, 42 (2d Cir. 2006)). The courts in both *Merryman v. Citigroup*, No. 15 Civ. 9185 (CM), 2018 WL 1621495 (S.D.N.Y. Mar. 22, 2018)

---

1. *See* ECF No. 114 ("Pls. Opp.") at 6-8.

and *Chen-Oster v. Goldman, Sachs & Co.*, 114 F. Supp. 3d 110 (S.D.N.Y. 2015), *objections overruled by* 325 F.R.D. 55, 67 (S.D.N.Y. 2018), applied the *Daubert* standard at the class certification stage, and thus support applying the *Daubert* standard here.

## II. MILLS' OPINIONS FAIL TO SATISFY THE *DAUBERT* STANDARD.

### A. Mills' Opinions Are Inadmissible.

Plaintiffs argue that challenges to the adequacy of the data on which Mills based his opinions speak to the weight, not the admissibility, of Mills' testimony.[2] Not so. A court assessing expert evidence "should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 267 (2d Cir. 2002). Where "there is simply too great an analytical gap between the data and the opinion proffered," *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997), or the "analytical connection between [the expert's] methodology and the expert's conclusions" is not "sufficiently rigorous," the expert evidence is inadmissible. *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005). That is the case here.

### B. Mills' "Methodology" Was Not Sufficiently Rigorous.

Plaintiffs' after-the-fact attempts at damage control (Pls. Opp. 19-21) fail to show that Mills employed a reliable methodology. Before arriving at the conclusions set forth in his declaration, including that he "anticipate[s] calculating class-wide damages for plaintiffs in this case based on a uniform methodology," Mills did nothing but restore the Databases and observe that he could associate certain transactions with UserIDs.[3] He did *not*: (1) define damages; (2) determine which transactions he would use to calculate damages; (3) recognize the need to

---

2. Pls. Opp. at 10-11.
3. ECF No. 96-3 ("Mills Decl.") ¶¶ 3-7.

2

isolate transactions involving the Companies as opposed to other sellers; (4) consider how to account for transactions not included in the Databases; (5) consider how to address discrepancies in the Databases; (6) ascertain the dates covered by the data, or the date the files were created; (7) consider how to identify individuals such as the Companies' employees who would need to be excluded from the class; (8) account for class members who had more than one UserID[4]; (9) account for UserIDs associated with more than one customer over time; (10) review deposition transcripts or the parties' document productions; or (11) confirm the reliability of the Databases.[5] Mills belatedly acknowledged at his deposition that he *might* need to assume that the Databases reflect "all the transactions that took place in the cryptocurrency products that are at issue,"[6] but gave no reason to justify why that assumption would be appropriate. Mills' failure to undertake, or even recognize that he needed to take, any of the steps described above demonstrates the absence of rigor that courts require of an expert.

Plaintiffs' assertion that Mills' failure to identify a specific damages model has no bearing on the admissibility of his testimony (Pls. Opp. 21-22) is nonsense. Without identifying a damages model, Mills' opinion that he expects to be able to calculate damages based on the information available to him in the Databases is pure conjecture and must be excluded.[7]

Plaintiffs claim the Databases are reliable because former employee Madeline Eden testified that the Companies tracked "[e]verything" through them. (Pls. Opp. at 9.) But Eden, the employee who provided the Databases (*id.* at 11), also testified at length about their

---

4. Although he subsequently acknowledged this in his reply declaration, ECF No. 113-3 ("Mills Reply Decl.") ¶ 14, he initially concluded he could calculate damages without even considering this issue.
5. *See generally* Mills Decl. & Mills Reply Decl.; *see also* Reply Affirmation of Sarah L. Cave ("Cave Reply Aff.") attached as Exhibit A, at Ex. A-1 ("Mills Dep.") 33-34, 43, 50, 52-54, 57, 68, 70-71, 79, 86-87, 97.
6. Mills Dep. 37:19-38:1.
7. *See Buckley v. Deloitte & Touche USA LLP*, 541 F. App'x 62, 64 (2d Cir. 2013) (affirming exclusion of "unduly speculative" expert testimony lacking sufficient factual basis).

unreliability.[8]  Eden's email, which Plaintiffs cite (Pls. Opp. at 13), relates to just one of multiple hacks,[9] and reveals that the data reconciliation process was still in progress.[10]  She later wrote that "any number of additional user accounts" could have been infiltrated.[11]  Had Mills bothered to review deposition transcripts or emails in the record, he would have seen this evidence calling into serious question the reliability of the Databases.

That "Judge Meyer granted a default judgment in the SEC's favor based in part on an analysis of ZenCloud" (Pls. Opp. at 10) does not justify Mills' unquestioning reliance on the Databases.  Judge Meyer's order followed the Companies' default, and the veracity of the data on which the SEC relied was not at issue.[12]  Moreover, Mills made no effort to determine whether the data he reviewed is the same data on which the SEC relied.[13]

   C.  **The "Methodologies" Mills Might Use To Identify Class Members And Calculate Damages Are Not Sufficiently Rigorous Or Supported By The Databases.**[14]

   1.  The Databases do not contain sufficient biographical information about the customers associated with each UserID to support Mills' conclusions.

To make up for Mills' failure to explain how he could link UserIDs to customers, Plaintiffs try to dismiss as anomalous Plaintiff Michael Pfeiffer's ownership of multiple user accounts.[15]  Yet Plaintiffs' documents reveal that the Companies' customers commonly held multiple accounts, and transferred accounts between customers, such that multiple customers

---

8. *See* ECF No. 107 at 26-27.
9. *See* ECF No. 107 at 26-27.
10. Watterson Decl. (ECF No. 114-1) Ex. 9 at 92 ("We're still processing [sic] of comparing the current data . . . .").
11. Cave Reply Aff. Ex. A-2.
12. *See Securities and Exchange Commission v. Garza*, 15 Civ. 1760, ECF No. 39 (D. Conn. May 29, 2017).
13. Mills Dep. 89:3-90:17.
14. Plaintiffs mischaracterize Fraser's argument in Section I.B.2 of his opening brief. (*See* Pls. Opp. at 21.) Fraser's point is that Mills announced in his declaration that he anticipates being able to calculate damages on a class-wide basis, but failed to commit to a measure of damages or identify any methodology capable of calculating damages on a class-wide basis, and acknowledged any method would require individualized inquiries.  *See* ECF No. 108-1 at 20-21.
15  Pls. Opp. at 16.

owned the same accounts over time.[16] Mills belatedly admitted "that more than one user identified in the users table may be associated with the same individual."[17] Mills' opinion that he can calculate damages on a class-wide basis simply by reviewing the "transactions" of each "UserID" is thus unreliable because it is based on the demonstrably incorrect assumption that each "UserID" corresponds with a unique customer.

Plaintiffs' last-ditch suggestion that each class member's damages should be calculated using a "transaction-based" methodology, rather than on a cumulative basis (Pls. Opp. at 16-17), cannot be justified here. Section 28(a) of the Securities Exchange Act of 1934 denies recovery for any amount "in excess of the actual damages to that person on account of the act complained of." 15 U.S.C. § 78bb(a).[18] Declining to offset total losses against total gains resulting from the same alleged fraud would improperly inflate damages.[19] Even if the Court could permit a customer who received net profits from the alleged fraud to recover damages, Mills did not explain how to calculate them.[20]

Although Plaintiffs try to salvage their sinking expert by arguing that Mills could, if required, calculate damages on a cumulative basis because the Databases contain "information provided about [each] customer" (Pls. Opp. at 17-18), Mills did not assess whether there is sufficient information to identify owners of UserIDs. Plaintiffs are wrong to argue that Fraser's

---

16. *See* Cave Reply Aff. Ex. A-3 (Letters of Authorization); ECF No. 107-2 at ¶¶ 51-52; Cave Reply Aff. Ex. A-4 (Shinners Dep. 190:5-13 ("[T]he market wasn't even open. So you couldn't even sell anything, and people started going privately.")); Cave Reply Aff. Ex. A-5.
17. Mills Reply Decl. ¶ 14.
18. *See also Byrnes v. Faulkner, Dawkins & Sullivan*, 550 F.2d 1303, 1313 (2d Cir. 1977).
19. Plaintiffs' cumulative gains routinely offset cumulative losses in securities litigation. *See, e.g., In re Vivendi Universal, S.A. Sec. Litig.*, 284 F.R.D. 144, 159 (S.D.N.Y. 2012) ("gains resulting from transactions occurring between the first materialization date and the end of the Class Period will be used to offset losses incurred during that very same period."); *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101-102 (S.D.N.Y. 2005) ("Because this method contemplates the offsetting gains the parties collected during the class period, it is a better measurement of the true damages sustained by the plaintiffs.").
20. *See generally* Mills Decl. For instance, he does not state whether it is possible to link purchases with corresponding sales. *Id.*

expert, Dr. Bruce Strombom, confirmed the ability to link customers with all of their accounts in the Databases. (*Id.*)  Certain accounts owned by the same customer are associated with similar email addresses, but others are obviously not.[21]  And, as Mills himself admits, the vast majority of UserIDs lack any associated physical address or phone number information.[22]

Plaintiffs mischaracterize Dr. Strombom's analysis as showing that the Databases contain sufficient information to identify and exclude all accounts held by the Companies' employees. (Pls. Opp. at 18.)  Although Dr. Strombom was able to identify two accounts apparently held by one employee, Evan Lucas, it was because (a) Mills identified Lucas as an employee, and (b) the two accounts happened to contain Lucas's name and phone number.[23]

Plaintiffs further argue that moderators, "pen testers," beta-testers and software developers are not agents of the Companies, and thus need not be identified or excluded from the proposed class, but in the only case they cite, the court concluded that the moderators were agents for some purposes.[24]  Plaintiffs cite no case law relating to the other categories of agents, and fail to rebut Fraser's evidence that individuals in these categories were agents.[25]  Similarly, the Companies' "affiliates" and "resellers," who actively promoted the cryptocurrency-related products at issue and received commissions and discounts for doing so, were subject to requirements imposed by the Companies and thus subject to the Companies' control such that

---

21. *See, e.g.*, Cave Reply Aff. A-3.
22. Mills Reply Decl. ¶ 17; *see also* Strombom Decl. ¶ 30.
23. ECF No. 107-2 at 17.  To the extent Mills, in his Reply Declaration, seeks to identify employee users based on the "auditlogs" table, *see* ECF No. 113-3 at 37, that list is not comprehensive:  it does not contain the evanlucas@me.com email address associated with Lucas.  *See* ECF No. 113-3 at 37; ECF No. 107-2 at ¶ 32.
24. *Cornelius v. Bodybuilding.com, LLC*, No. 10 Civ. 027 (BLW), 2011 WL 2160358, at *5 (D. Idaho June 1, 2011) ("Moderators are agents for the limited purposes of moderating discussions. . . .").
25. *See* ECF No. 107 at 33-35.

6

they must be excluded from the proposed class.[26]  Yet neither Mills nor Plaintiffs has identified a means to exclude them.

        2.       Mills' proposed "methodology" for ascertaining "value received" is not sufficiently rigorous or supported by the Databases.

Although Mills failed to include any methodology for calculating "value received" in his declaration, Mills later hypothesized that he might calculate it by ascertaining "the value of what was withdrawn from the user accounts."[27]  That methodology is not sufficiently rigorous.

First, it does not account for credit card chargebacks class members received, which are not reflected in the Databases.[28]  Contrary to Plaintiffs' argument (Pls. Opp. at 14), credit card chargebacks are "value received" and should offset any consideration paid in assessing each class member's damages.  Plaintiff Shinners admitted as much when he stated on the website he set up for this lawsuit:  "If you have successfully obtained charge-backs through your bank, you MUST reduce the claim you have made for the lawsuit."[29]

Plaintiffs cite no authority for the proposition that credit card chargebacks are akin to tax benefits (Pls. Opp. at 14), nor could they:  credit card chargebacks are completely different.  First, a credit card chargeback results in the return of the consideration paid for the products at issue, whereas a tax benefit is ancillary to the transaction between a buyer and seller.[30]  Connecticut's Blue Sky laws expressly limit a buyer's recovery to "the consideration paid for the

---

26. *See, e.g.*, Cave Reply Aff. Ex. A-6 (restrictions on "affiliate" activities); Cave Reply Aff. Ex. A-7 (requirements for resellers, *e.g.*, adhering to the Companies' brand strategy and pricing); Cave Reply Aff. Ex. A-8 (same).  The SEC has sued affiliate marketers for similar conduct.  *See, e.g.*, *S.E.C. v. Ronald Montano, et al.*, 18 Civ. 01606 (GAP) (GJK) (M.D. Fla. Sept. 27, 2018).
27. Pls. Opp. at 23.
28. *See* Pls. Opp. at 15 (Databases lack "information about whether an individual received a 'credit' from her credit card company").
29. *See* Cave Reply Aff. Ex. A-9; *see also* ECF No. 107 at 29.
30. *See Randall v. Loftsgaarden*, 478 U.S. 647, 659-660 (1986) (tax benefits do not offset losses under § 12(2) of the Securities Act of 1933 because they are not "return of consideration"; CUSA § 36b-29(a)(2) contains this same language).

7

security . . . less the amount of any income received on the security . . . ."[31]  A buyer who has recovered the consideration paid for a security has no damages.  Second, when a buyer receives a credit card chargeback, those funds are pulled directly from the seller's account.[32]  Unlike a tax benefit, which results in a benefit to the buyer at no cost to the seller, a chargeback that does not offset a buyer's damages results in a windfall to the buyer *at the expense of the seller*, who becomes liable to pay the same amount twice—once due to the credit card chargeback and once in connection with a parallel lawsuit.  Plaintiffs' references to "some credit card transactional data outside of Zencloud" they produced (Pls. Opp. at 15) is irrelevant, as Mills did not consider such data before rendering his opinions nor has he since proposed any method for using it.[33]

Second, limiting "value received" to withdrawals from user accounts in the Databases does not account for individuals who withdrew the securities before selling them on third-party exchanges or in private sales, such that the Databases do not reflect the "value received" in exchange for them.[34]

Third, Mills' proposed methodology for ascertaining "value received" improperly fails to account for the value received across all of a customer's user accounts, because, as discussed above, Mills proposed no way to link all UserIDs to customers.[35]

3.     Mills proposes no methodology to resolve discrepancies in the Databases.

Plaintiffs make the irrelevant argument that the discrepancy between Plaintiff Audet's testimony that he did not make any withdrawals, and the apparent withdrawals in his account,

---

31. *See* CUSA § 36b-29(a)(2).
32. *See, e.g.*, Cave Reply Aff. Ex. A-10 (PayPal Website Excerpt).
33. Mills Dep. 32:18-33:7, 86:16-87:5.  *See generally* Mills Reply Decl.  The PayPal data is also moot because Plaintiffs' subpoena was untimely.  (ECF No. 123.)
34. *See* Cave Reply Aff. Ex. A-11 (Strombom Dep. 84:5-86:22); ECF No. 107 at 28.
35. *See* Section II.C.1, *supra*; *see also* ECF No. 108-1 at 16-18.

does not necessarily indicate that anything sinister occurred. Fraser's point is that the Databases contain discrepancies, and Mills did not consider or propose any way to account for them.

    4.    <u>Mills' proposal to identify class members by linking UserIDs with transactions is not sufficiently rigorous or supported by the Databases.</u>

Plaintiffs argue that Mills' methodology for identifying individuals who purchased the Companies' products from the Companies is simply to link UserIDs with transactions (Pls. Opp. at 20-21), but as discussed above, UserIDs do not correspond with unique customers. Thus, this method fails. Plaintiffs argue that Mills' declaration "even provides a specific example" of Mills' methodology for identifying class member because "it shows how Mills can determine the 'purchase' transactions in the 'transactions' table that plaintiff Shinners made" (*id.*), but even Mills acknowledged that he only knew that Shinners was the holder of the account with username Allen1980s because Plaintiffs' counsel provided him with that information.[36]

## III.    KERNER'S OPINIONS FAIL TO SATISFY THE *DAUBERT* STANDARD.

Plaintiffs try, and fail, to rehabilitate Lou Kerner as an expert by overstating and mischaracterizing his credentials. Rather than "decades of experience as an investment analyst" (Pls. Opp. at 24), Kerner has spent the majority of his career working in other roles.[37] Kerner does not "make[] his living as a cryptocurrency investor and commentator" (Pls. Opp. at 26); he has invested only $200 in cryptocurrencies,[38] and CryptoOracle, the company he co-founded less than a year prior to submitting his declaration, has invested in only one business (which does not involve cryptocurrency).[39] His work as a "commentator" is limited to writing blog posts that he

---

36. Mills Dep. 75:14-76:1.
37. Examples include his work for a web security company, a company that licenses the ".tv" domain name from the nation of Tuvalu, and a company that performs research on TV and film scripts. *See* ECF No. 96-4 ("Kerner Decl.") ¶ 3; Cave Reply Aff. Ex. A-12 ("Kerner Dep.") 21:10-13; 26:7-17; 30:12-17; 33:6-17.
38. Kerner Dep. 47:14-48:15.
39. Kerner Dep. 11:4-5; 12:6-25; 12:6-13:3; 122:15-25; Kerner Decl. ¶ 7.

self-publishes online.[40]  The claim that Kerner has "focused his work since June 2017 on investments related to digital tokens and cryptocurrency" (Pls. Opp. at 24) is irrelevant to the 2014 and 2015 events in this case.[41]  Kerner admitted, in response to questions about cryptocurrency investment strategies, that he is "not a trader" nor a miner, and does not have "depth" in terms of analyzing trading strategies in the cryptocurrency community.[42]

Plaintiffs cannot hide the fact that Kerner offers only "a bare opinion that investors knowing the truth would not have purchased GAW products" (Pls. Opp. at 26).  Kerner offered no explanation as to how his "experience as an investor" informed his opinion, and admitted his opinion is based on nothing more than "common sense" and his "belief that rational investors wouldn't invest in Ponzi schemes."[43]  For these reasons, Kerner's testimony is distinguishable from the testimony of the experts relied on in the cases Plaintiffs cite.[44]  Accordingly, this Court should exclude Kerner's testimony.[45]

## CONCLUSION

For the foregoing reasons, Fraser respectfully requests that the Court grant Plaintiffs' motion to exclude the declarations and testimony of Robert Mills and Lou Kerner.

---

40. Kerner Dep. 16:2-14; Kerner Decl. ¶ 6.
41. Although Kerner claimed he was "highlighted in a Wall Street Journal article as Wall Street's Bitcoin expert" in 2013 (Kerner Decl. ¶ 4), in fact this referenced a "live blogged" conference call, during which someone said, "We're on a conference call being held by Lou Kerner, Wall Street's Bitcoin expert." Kerner Dep. 53:10-54:8; 104:16-20.
42. Kerner Dep. 70:11-15; 122:8-17; 124:10-22.
43. Kerner Dep. 87:21-88:9; 89:9-20; 90:10-24.
44. *See Bd. of Trustees of AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, No. 09 Civ. 686 (SAS), 2011 WL 6288415, at *12-14 (S.D.N.Y. Dec. 15, 2011) (expert had previously opined on similar issues, conducted a detailed analysis and submitted a 98-page report); *Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086 (JMF), 2013 WL 5658790, at *14 (S.D.N.Y. Oct. 17, 2013) (experts can provide "experiential testimony" only if "they explain how [their] experience leads to the conclusion reached and how [their] experience is reliably applied to the facts" (internal quotation marks omitted)).
45. In his Reply Declaration (ECF No. 113-2), Kerner expressed new opinions about trading strategies of cryptocurrency investors; like his initial opinions, his new opinions are neither the result of any reliable methodology nor supported by Kerner's experience. *Compare, e.g.*, Kerner Reply Decl. ¶ 5 *with* Kerner Dep. 124:18-125:2.

Dated: January 22, 2019

    HUGHES HUBBARD & REED LLP
    By: s/ Sarah L. Cave

    Daniel H. Weiner (ct12180)
    Sarah L. Cave (phv08437)
    Sara E. Echenique (phv08436)
    Hughes Hubbard & Reed LLP
    One Battery Park Plaza
    New York, NY 10004-1482
    Tel.: (212) 837-6000
    Fax: (212) 422-4726
    Email: Sarah.cave@hugheshubbard.com

    David R. Schaefer (ct04334)
    Sean M. Fisher (ct23087)
    Brenner, Saltzman & Wallman LLP
    271 Whitney Avenue
    New Haven, CT 06511
    Tel.: (203) 772-2600
    Fax: (203) 562-2098
    Email: Sfisher@bswlaw.com

    *Attorneys for Defendant Stuart A. Fraser*