UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, and DEAN ALLEN SHINNERS, Individually and on Behalf of All Others Similarly Situated, | Case 3:16-cv-00940 |
| | Hon. Michael P. Shea Courtroom 2 |
| Plaintiffs, | ECF Case |
| vs. | CLASS ACTION |
| STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC, (d/b/a ZEN CLOUD), | February 5, 2019 |
| Defendants. | Memorandum in Support of Plaintiffs' Objections to Ruling on Motion to Compel (Dkt. 127) |

<u>Table of Contents</u>

Table of Contents ................................................................................................. i

Table of Authorities ............................................................................................ ii

Introduction ........................................................................................................ 1

Argument ............................................................................................................ 2

    I.    The Ruling incorrectly put the burden of proving "non-waiver" on plaintiffs. ............................................................... 2

    II.   Fraser did not argue that plaintiffs waived work product protection over the notes by providing them to the FBI until his reply brief. ................................................................................... 6

    III.  Disclosing the notes to the FBI did not increase the likelihood of their disclosure to Shinners' adversary. ........................... 10

    IV.  Any waiver should be limited to the materials actually provided to the FBI. ........................................................... 13

Conclusion ........................................................................................................ 15

Table of Authorities

Cases

*B.H. ex rel. Holder v. Gold Fields Mining Corp.*,
    239 F.R.D. 652 (N.D. Okla. 2005) ........................................................................... 4

*Bank of Am. v. Terra Nova Ins. Co.*,
    212 F.R.D. 166 (S.D.N.Y. 2002) ............................................................ 10, 11, 12

*Coastline Terminals of Connecticut, Inc. v. U.S. Steel Corp.*,
    221 F.R.D. 14 (D. Conn. 2003) ............................................................................... 7

*Corpes v. Walsh Constr. Co.*,
    130 F. Supp. 3d. 638 (D. Conn. 2015) ................................................................... 8

*Curto v. Medical World Communications, Inc.*,
    783 F. Supp. 2d 373 (E.D.N.Y. 2011) ................................................................... 4

*Ecuadorian Plaintiffs v. Chevron Corp.*,
    619 F.3d 373 (5th Cir. 2010) ................................................................................. 4

*Freedman v. Weatherford Int'l Ltd.*,
    2014 WL 3767034 (S.D.N.Y. July 25, 2014) ...................................................... 15

*Granite Partners v. Bear Stearns & Co., Inc.*,
    184 F.R.D. 49 (S.D.N.Y. 1999) ............................................................................. 4

*Greene, Tweed of Del., Inc. v. DuPunto Dow Elastomers, L.L.C.*,
    202 F.R.D. 418 (E.D. Pa. 2001) ............................................................................ 3

*Halo Tech Holdings, Inc. v. Cooper*,
    2008 WL 877156 (D. Conn. Mar. 26, 2008) ......................................................... 8

*HSH Nordbank AG N.Y. Branch v. Swerdlow*,
    259 F.R.D. 64 (S.D.N.Y. 2009) ............................................................................. 4

*In re County of Erie*,
    546 F.3d 222 (2d Cir. 2008) ................................................................................. 15

*In re Crazy Eddie Sec. Litig.*,
    131 F.R.D. 374 (E.D.N.Y. 1990) ......................................................................... 12

*In re Grand Jury Subpoenas*,
    561 F. Supp. 1247 (E.D.N.Y. 1982) ...................................................................... 7

*Info. Res., Inc. v. Dun & Bradstreet Corp.*,
    999 F. Supp. 591 (S.D.N.Y. 1998) ...................................................................... 12

*Johnson v. Gmeinder*,
    191 F.R.D. 638 (D. Kan. 2000)......................................................................... 4

*Judicial Watch, Inc. v. U.S. Dept. of Homeland Sec.*,
    841 F. Supp. 2d 142 (D.D.C. 2012) ............................................................... 3, 5

*Knipe v. Skinner*,
    999 F.2d 708 (2d Cir. 1993) ........................................................................ 8

*Koehler v. Bank of Bermuda Ltd.*,
    2003 WL 466206 (S.D.N.Y. 2003) ............................................................... 13

*Lavatec Laundry Technology, GmbH v. Lavatec, Inc.*,
    2014 WL 1665018 (D. Conn. April 25, 2014)..................................................... 3, 7

*Levinson v. Westport Nat'l Bank*,
    2011 WL 13235160 (D. Conn. Dec. 14, 2011)..................................................... 8

*Matrix Essentials, Inc. v. Quality King Distributors, Inc.*,
    2006 WL 8435312 (E.D.N.Y. Jan. 12, 2006) ...................................................... 12

*Mitre Sports Int'l Ltd v. Home Box Office,Inc.*,
    304 F.R.D. 369 (S.D.N.Y. 2015) ................................................................. 15

*Nikkal Indus., Ltd. v. Salton, Inc.*,
    689 F. Supp. 187 (S.D.N.Y. 1988) ............................................................... 5

*NL Indus., Inc. v. ACF Indus. LLC*,
    2015 WL 4066884 (W.D.N.Y. July 2, 2015) ..................................................... 2

*Norton v. Town of Islip*,
    2015 WL 5542543 (E.D.N.Y. Sept. 18, 2015)................................................... 2, 4

*Peralta v. Cendant Corp.*,
    190 F.R.D. 38 (D. Conn. 1999) ................................................................. 10

*Rowley v. City of N.Y.*,
    2005 WL 2429514 (S.D.N.Y. 2005)............................................................... 8

*Seven Hanover Associates, LLC v. Jones Land LaSalle Am., Inc.*,
    2005 WL 3358597 (S.D.N.Y. Dec. 7, 2005) ...................................................... 5

*Smith v. Conway Org.*,
    154 F.R.D. 73 (S.D.N.Y. 1994) ................................................................. 5

*Spanierman Gallery, Profit Sharing Plan v. Merritt*,
   2003 WL 22909160 (S.D.N.Y. Dec. 9, 2003) ........................................................ 12

*U.S. v. Adlman*,
   134 F.3d 1194 (2d Cir. 1998) .............................................................................. 12

*U.S. v. Deloitte LLP*,
   610 F.3d 129 (D.C. Cir. 2010) .............................................................................. 5

*von Bulow v. von Bulow*,
   811 F.2d 136 (2d Cir. 1987) ................................................................................. 5

<u>Statutes</u>

5 U.S.C. § 552 .......................................................................................................... 11

<u>Rules</u>

Federal Rule of Evidence 502 .................................................................................. 14

<u>Treatises</u>

Wright & Miller, Federal Practice and Procedure: Civil § 2024 (2d ed.) ..................... 10

<u>Introduction</u>

Plaintiffs object to Judge Martinez's Ruling on Motion to Compel (the "Ruling").[1] The Court should deny Stuart Fraser's Motion to Compel Discovery[2] for the reasons explained in plaintiffs' opposition.[3]

The Ruling concludes that plaintiffs must provide copies of notes plaintiffs' counsel took during an interview of former-defendant Joshua Garza.[4] The Ruling reaches that conclusion for one reason only: it concludes that plaintiffs waived any work-product protection over the notes because plaintiff Allen Shinners provided a copy to the FBI.[5]

Plaintiffs object to the Ruling for several reasons. ***First,*** the Ruling incorrectly concludes that it was plaintiffs' burden to prove that no waiver occurred. That is not the law in this District and is a minority view around the country.

***Second,*** the Ruling's legal error was compounded by consideration of Fraser's argument in the first place. Fraser merely hinted at his waiver argument in a wishy-washy footnote that said plaintiffs "may" have committed a waiver by providing the notes to a third-party. Fraser only squarely argued that plaintiffs waived work-product protection by providing the notes to the FBI in his reply brief. Many cases hold that arguments raised in footnotes or reply briefs are not properly considered. The Ruling nevertheless considered Fraser's reply-brief argument and

---

[1] Dkt. 127.
[2] Dkt. 82.
[3] Dkt. 86.
[4] Dkt. 127 at 9.
[5] Dkt. 127 at 9 n.6 ("Because I find defendant Fraser's waiver argument dispositive, I do not reach the defendant's other arguments . . . .").

1

accepted it. The Ruling's consideration of Fraser's argument is no procedural technicality. If Fraser attempted to show that plaintiffs waived work product protection by providing the notes to the FBI in his opening brief (as was his burden), plaintiffs could have rebutted that claim with evidence that the FBI told Shinners the information he provided would stay confidential, as they do here.

**Third,** the Ruling concludes that disclosure of the notes to the FBI increased Fraser's opportunities to obtain the notes. Plaintiffs respectfully disagree. Garza ultimately pled guilty, and so there is no prospect of the notes being used in litigation by the government. Likewise, Shinners provided the notes with an understanding that they would be kept confidential, and so there is no prospect of the notes being released through a FOIA request.

**Fourth**, the Ruling does not address whether it is limited to only the version of the notes actually disclosed to the FBI. If the Court does conclude that the Ruling is correct, it should nevertheless limit its scope to only the version of the notes that was actually disclosed to the FBI.

<u>Argument</u>

I.     <u>The Ruling incorrectly put the burden of proving "non-waiver" on plaintiffs.</u>

In the Ruling, Judge Martinez held that it is plaintiffs' burden to prove that they did not waive work product protection.[6] There is a split of authority on that issue within district courts in New York. But that is not the law in this District and

---

[6] Dkt. 127 at 5, 8 (citing *NL Indus., Inc. v. ACF Indus. LLC*, 2015 WL 4066884, at *5 (W.D.N.Y. July 2, 2015) and *Norton v. Town of Islip*, 2015 WL 5542543, at *3 (E.D.N.Y. Sept. 18, 2015)).

is the minority position around the country.

In *Lavatec Laundry Technology, GmbH v. Lavatec, Inc.*, 2014 WL 1665018, at

*2 (D. Conn. April 25, 2014), Chief Judge Underhill explained how a Court should

analyze whether work product protection applies:

> a court must undertake a two-step analysis. First, it must decide whether the
> sought 'documents and tangible things' were 'prepared in anticipation of
> litigation or for trial by or for another party or its representative.'
> Fed.R.Civ.P. 26(b)(3)(A). The party asserting work-product protection bears
> the burden of proof on that step. If the party asserting work-product
> protection meets its burden, then the court moves to the second step of
> analysis, which examines whether the evidence is nonetheless discoverable.
> That requires ***the party seeking discovery*** to show that the documents and
> other tangible things ***are otherwise discoverable under Rule 26(b)(1)*** and
> that the party "cannot, without undue hardship, obtain their substantial
> equivalent by other means." *Id.*[7]

Importantly, Chief Judge Underhill placed the burden of showing that a waiver

occurred on the movant: "A review of the documents shows that they were prepared

by counsel. Thus, Lavatec [the movant] must show that the evidence is otherwise

discoverable. . . . The gravamen of Lavatec's argument for discovery of the

communications is that LLT has waived work-product protection . . . ." *Id.*

Courts from around the country agree:

- "[T]he proponent of the work product doctrine does not bear the burden of
  proving non-waiver." *Judicial Watch, Inc. v. U.S. Dept. of Homeland Sec.*, 841 F.
  Supp. 2d 142, 158 (D.D.C. 2012).

- "[T]he party asserting waiver of work product immunity, rather than the party
  asserting the work product protection, has the burden of establishing waiver."
  *Greene, Tweed of Del., Inc. v. DuPunto Dow Elastomers, L.L.C.*, 202 F.R.D. 418,
  423 (E.D. Pa. 2001).

- "[A] party asserting work product immunity is not required to prove 'non-

---

[7] All emphasis in this motion is added unless otherwise noted.

waiver.'" *Johnson v. Gmeinder*, 191 F.R.D. 638, 643 (D. Kan. 2000).

According to one Court, "the majority view is that the party claiming waiver has the

burden of proof on that issue." *B.H. ex rel. Holder v. Gold Fields Mining Corp.*, 239

F.R.D. 652, 655 (N.D. Okla. 2005).

　　　As the Ruling notes, there is some authority for the proposition that the

burden of proving non-waiver is on the party asserting work-product immunity. The

problem with the cases that reach this conclusion is that they ultimately rely on

authority regarding testimonial privileges. Some of the cases also ultimately rely on

law generally stating that the party claiming work product protection has the

burden of proving a document is work product, but do not address the burden of

proving waiver specifically. *Cf. Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d

373, 379 n.10 (5th Cir. 2010) ("However, to support this proposition [that the

proponent of work product immunity bears the burden of proof], the First Circuit

only cites authority concerning the attorney-client privilege."). For example, the

*Islip* case cited in the Ruling relies on *HSH Nordbank AG N.Y. Branch v. Swerdlow*,

259 F.R.D. 64, 70 (S.D.N.Y. 2009). The portion of *Swerdlow* cited by *Islip* holds that

a party asserting the attorney-client privilege under New York law must prove that

the privilege has not been waived. The *Islip* case also relies on *Curto v. Medical

World Communications, Inc.*, 783 F. Supp. 2d 373, 380 (E.D.N.Y. 2011). *Curto* in

turn cites several cases that ultimately rely on *Granite Partners v. Bear Stearns &

Co., Inc.*, 184 F.R.D. 49, 52 (S.D.N.Y. 1999). *Granite Partners* does not cite any

authority specifically addressing which party has the burden of proving waiver of

work product.[8]

By contrast, courts holding that the movant bears the burden of proving waiver have considered the purposes behind the attorney-client and work product privileges. "The difference in treatment [as to which party has the burden of proving waiver] is in part a product of the different purposes served by the two privileges: whereas the attorney-client privilege 'protects the attorney-client relationship by safeguarding confidential communications, [the work product doctrine] promotes the adversary process by insulating an attorney's litigation preparation from discovery.'" *Judicial Watch*, 841 F. Supp. 2d. at 158 n.10 (quoting *U.S. v. Deloitte LLP*, 610 F.3d 129, 139-40 (D.C. Cir. 2010)).

Other New York courts agree that the movant bears the burden of proving waiver. For example, in *Seven Hanover Associates, LLC v. Jones Land LaSalle Am., Inc.*, 2005 WL 3358597, at *1 n.3 (S.D.N.Y. Dec. 7, 2005), the Court held that it was the moving party's "burden to establish any waiver" and that the defendant "fails to make any such showing."

The Ruling contains a legal error because it placed the burden of proving non-waiver on plaintiffs. According to the Ruling, "The plaintiffs have not met their

---

[8] One of the cases relied on by *Granite Partners* concerns New York's journalist privilege (*von Bulow v. von Bulow*, 811 F.2d 136, 144 (2d Cir. 1987)). Another case (*Smith v. Conway Org.*, 154 F.R.D. 73, 77 (S.D.N.Y. 1994)) merely states it is the withholding party's burden to establish that a document is work product. *Smith* does not specifically address which party has the burden to establish waiver. *Nikkal Indus., Ltd. v. Salton, Inc.*, 689 F. Supp. 187, 191 (S.D.N.Y. 1988), likewise relies on general authority that a party asserting work product protection must prove the material is work product without considering specifically whether the party claiming work product protection must prove waiver.

burden of showing they did not waive work product protection."[9] Because establishing waiver was Fraser's burden, plaintiffs respectfully object to the Ruling's contrary conclusion.

II.   <u>Fraser did not argue that plaintiffs waived work product protection over the notes by providing them to the FBI until his reply brief.</u>

In his opening brief, Fraser did not argue that plaintiffs waived work-product protection by providing the notes to the FBI, and the argument should have been deemed waived. Even if not, basic fairness principles should allow plaintiffs to respond to it here—plaintiffs' first brief after Fraser raised this argument in reply. To be clear, in his opening brief, Fraser did argue that plaintiffs waived work product protection. But, his claim was *not* that plaintiffs committed a waiver by providing the notes to the FBI. Rather, Fraser's argument was that plaintiffs committed an "at-issue" waiver by incorporating information from the interview with Garza into their First Amended Complaint.[10]

Fraser did mention the FBI twice in his opening brief. First, in the "Summary of Facts" section in his brief, Fraser noted that plaintiffs' "privilege log also notes that, on November 8, 2016, one of the named plaintiffs, Allen Shinners, emailed a copy of the Garza Notes to a nonparty (Mark Munster), whose affiliation is not indicated."[11] Fraser also stated as follows in **footnote** five: "Plaintiffs *may*

---

[9] Dkt. 127 at 9.

[10] *See* Dkt. 82 at 8 ("Plaintiffs waived any protection by incorporating into their First Amended Complaint the information Garza provided to them during the 2016 meeting.").

[11] It is true that plaintiffs' privilege log did not include Mark Munster's affiliation. However, plaintiffs did produce emails between Shinners and Munster prior to

also have waived any work product privilege by sending the notes to a nonparty. *See Coastline Terminals of Connecticut, Inc. v. U.S. Steel Corp.*, 221 F.R.D. 14, 16–17 (D. Conn. 2003)."

Given that Fraser made reference to waiver in a footnote, plaintiffs responded in kind in their opposition. In footnote 27 to their opposition, plaintiffs wrote:

> Fraser also mentions that plaintiffs' privilege log indicates that plaintiff Allen Shinners sent a copy of the notes to an FBI agent. That is not a waiver of work product because the disclosure did not increase the likelihood of Shinner's adversary (i.e., Fraser), obtaining a copy of the notes: "the standard articulated for determining when work-product protection has been waived is whether 'the disclosure substantially increases the opportunity for potential adversaries to obtain the information.'" *Lavatec*, 2014 WL 1665018, at *2 (*quoting In re Grand Jury Subpoenas*, 561 F. Supp. 1247, 1257 (E.D.N.Y. 1982)).

Fraser affirmatively argued waiver for the first time in his reply brief, where he made his waiver argument at length.[12]

Even though Fraser only made only an off-hand mention of a ***possible*** waiver in a footnote, the Ruling faults plaintiffs for failing to address the argument: "plaintiffs brush past this burden, addressing the defendant's waiver argument only in a footnote. They provide no evidence regarding their disclosure to the FBI . . . ."[13] Plaintiffs respectfully disagree and object to that conclusion.

It is well settled that "mere mention in a footnote does not amount to raising an argument" and that it is "unfair to penalize Plaintiffs for failing to respond to"

---

Fraser filing the motion to compel. Those emails identified Munster's affiliation.

[12] Dkt 89 at 1-2, 4

[13] Dkt. 127 at 8.

such arguments. *Rowley v. City of N.Y.*, 2005 WL 2429514, at \*6 (S.D.N.Y. 2005);
*see also Levinson v. Westport Nat'l Bank*, 2011 WL 13235160, at \*12 n.15 (D. Conn.
Dec. 14, 2011) ("The argument, raised only in a footnote (Def. Westport National
Bank's Opposition to Pl.'s Mot. for Class Certification at 36 n.23), is not seriously
pursued and is inadequate to justify denying class certification."); *Halo Tech
Holdings, Inc. v. Cooper*, 2008 WL 877156, at \*20 n.16 (D. Conn. Mar. 26, 2008)
("The Primus defendants' footnote argument is not properly before the court.").

It is likewise well settled that a Court need not consider arguments first
made in a reply brief. *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993)
("Arguments may not be made for the first time in a reply brief."); *Corpes v. Walsh
Constr. Co.*, 130 F. Supp. 3d. 638, 644 (D. Conn. 2015) ("Because raising
new arguments for the first time in a reply brief is improper, the Court will not
consider these issues.").

Taking his words literally, Fraser did not argue that plaintiffs waived work
product protection by providing the notes to a third-party in his opening brief.
Instead, Fraser merely stated that plaintiffs "may" have waived work-product
protection. That is no argument at all. At best, that is an argument in a footnote not
properly considered by the Court. Because Fraser only raised the argument in a
footnote, it was entirely reasonable for plaintiffs to respond to the argument in a
footnote of their own.

Fraser's failure to raise this argument in his opening brief along with the
Ruling's incorrect conclusion that it was plaintiffs' burden to prove non-waiver is no

procedural trifle. One of the lynchpins of the Ruling is that plaintiffs did not submit any "evidence regarding their disclosure to the FBI," including evidence of "any agreement that the notes would be kept confidential."[14] Plaintiffs offered no such evidence because doing so was unnecessary: Fraser didn't properly raise the argument and didn't offer any evidence of his own about the waiver. As discussed above, it was Fraser's burden to prove that a waiver occurred. If Fraser had attempted to meet that burden by arguing that Shinners lacked a confidentiality agreement, plaintiffs could have and would have rebutted that claim.

Even if the footnote "may have been a waiver" argument did not waive the issue, basic fairness requires that plaintiffs be given a chance to respond, and that the issue be decided on a fulsome record.  As set forth in the attached declaration, the truth is that the FBI did indicate that the information Shinners provided would stay confidential. Shinners assisted the FBI.[15] Twice a year, Sinners received an admonishment from the FBI.[16] The admonishment addressed a number of topics such as his responsibilities and obligations.[17] During the admonishment, the FBI also informed Shinners that the information Shinners provided to the FBI would stay confidential.[18]

The Ruling ultimately faulted plaintiffs for failing to offer exactly this type of

---

[14] Dkt. 127 at 8.
[15] X-1 at ¶  2.
[16] X-1 at ¶  3.
[17] X-1 at ¶  3.
[18] X-1 at ¶  4.

evidence.[19] Plaintiffs respectfully object to that conclusion. It was not plaintiffs burden to prove non-waiver, and Fraser did not clearly make the argument until his reply brief.

III.   <u>Disclosing the notes to the FBI did not increase the likelihood of their disclosure to Shinners' adversary.</u>

The Ruling concludes that plaintiffs' disclosure of the notes to the FBI "increased the likelihood that Fraser, their adversary, would obtain the information."[20] Plaintiffs respectfully disagree and object.

"Since the purpose of the work product doctrine 'is not to protect the evidence from disclosure to the outside world, but rather to protect it only from the knowledge of opposing counsel and his client,' it follows that 'disclosure of [work product information] to third persons does not waive the work-product immunity.'" *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 42 (D. Conn. 1999) (quoting Wright & Miller, Federal Practice and Procedure: Civil § 2024 (2d ed.)); *see also Bank of Am. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 170 (S.D.N.Y. 2002) ("One circumstance that is inconsistent with the need for work product protection is when work product materials are either given to an adversary or used in such a way that they may end up in the hands of an adversary."). Here, there was no prospect of the notes being turned over to an adversary. Shinners was assisting the government in its investigation into Garza. As such, their interests were aligned, and there was no prospect of the government becoming Shinners' adversary.

---

[19] Dkt. 127 at 8 ("Nothing in the record suggests that the disclosure was made pursuant to any agreement that the notes would be kept confidential.").
[20] Dkt. 127 at 8-9.

Providing the notes to the FBI also did not increase Fraser's chances of obtaining the notes. Tellingly, Fraser never actually explained how providing the notes to the FBI would increase his chances of obtaining them in his reply brief. At most, he cited a single case that discusses how disclosure to law enforcement could result in an adversary obtaining the notes.[21] But on that score, the proof is in the pudding: Fraser has resorted to seeking the notes through discovery. He plainly hasn't obtained a copy elsewhere, whether because the government disclosed the notes through litigation, through a FOIA request, or otherwise. Garza ultimately pled guilty, and so there is no prospect of the notes becoming public through litigation. Likewise, the FBI stated that documents Shinners provided would be kept confidential, and so they fall squarely under FOIA exemption 7(D). *See* 5 U.S.C. § 552(b)(7).

The Ruling also cites several cases that conclude that a waiver occurs when a party discloses work product to induce the government to attack an adversary.[22] Those cases are distinguishable. Here, Shinners was assisting the FBI in its investigation into Garza. The interview was—at least in part—about the very events the FBI was investigating.[23] "Work product may be shown to others, 'simply because there was some good reason to show it' without waiving the privilege."

---

[21] Dkt. 89 at 3 (quoting *Terra Nova*, 212 F.R.D. at 173).

[22] It is unclear whether this case law was an alternative basis for the Ruling. The Ruling appears to conclude that disclosure of the notes substantially increased the likelihood of Fraser obtaining them. Dkt. 127 at 8-9 ("Under these circumstances, the plaintiffs' disclosure increased the likelihood that Fraser, their adversary, would obtain the information."). Plaintiffs address this case law out of an abundance of caution.

[23] *See* Dkt. 118-2 at ¶ 5.

*Spanierman Gallery, Profit Sharing Plan v. Merritt*, 2003 WL 22909160, at *2 (S.D.N.Y. Dec. 9, 2003) (quoting *U.S. v. Adlman*, 134 F.3d 1194, 1200 n.4 (2d Cir. 1998)). The notes were plainly germane to the investigation into Garza. In the cases cited in the Ruling, the disclosing party had no similar reason to share work product with the government. *See, e.g.*, *Info. Res., Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591, 593 (S.D.N.Y. 1998) ("In the present case, the plaintiff and the government authorities were neither adversaries nor allies when the documents were submitted."); *Matrix Essentials, Inc. v. Quality King Distributors, Inc.*, 2006 WL 8435312, at *3 (E.D.N.Y. Jan. 12, 2006) (government and L'Oreal were not allies, but also lacked an "adversarial or potentially adversarial relationship"); *Terra Nova*, 212 F.R.D. at 171-73 (a potentially adversarial relationship existed between the government and Terra Nova and Terra Nova disclosed material in order to stymie a competitor).

Likewise, the Ruling also ignores the fact that the government and Shinners shared a common interest in developing a fraud case against Garza. When Shinners provided the notes to the FBI, the government was pursuing a criminal wire fraud case against Garza. And although Garza is no longer a party in this case, plaintiffs still will need to show Garza the companies committed fraud. The government and Shinners thus shared a common adversary. In *Terra Nova*, 212 F.R.D. at 171, the Court acknowledged that "courts have also found no waiver when the disclosure of information was to assist in litigation against a common opponent." *See also In re Crazy Eddie Sec. Litig.*, 131 F.R.D. 374, 379 (E.D.N.Y. 1990) ("Counsel may

therefore share work product, including ideas, opinions, and legal theories, with those having similar interests in fully preparing litigation against a common adversary.").

IV. <u>Any waiver should be limited to the materials actually provided to the FBI.</u>

In the alternative, plaintiffs respectfully request that the Court confirm that the Ruling is limited to the version of the notes that Shinners disclosed to the FBI. As explained in the declaration of plaintiffs' counsel, there are three different sets of notes all stemming from the Garza interview.[24] One document is a set of handwritten notes taken by plaintiffs' counsel.[25] The handwritten set of notes was never provided to the FBI.[26] The next document is a typed set of notes initially prepared by a paralegal at plaintiffs' firm and edited by one of plaintiffs' counsel.[27] This specific document was not provided to the FBI either.[28] Only a third document—which is similar but not identical to the typewritten notes—was provided to the FBI.[29] The Ruling does not address whether it extends to all versions of the notes, or simply the version that was submitted to the FBI.[30] By its

_____

[24] *See* X-2; *see also* Dkt. 118-2 at ¶¶ 6-8.
[25] X-2 at ¶ 4.
[26] X- 2 at ¶ 4.
[27] X-2 at ¶ 5.
[28] X-2 at ¶ 5.
[29] X-2 at ¶ 5-6.
[30] Plaintiffs are including this issue in their objections because there is some authority that suggests it is improper to seek reconsideration of a Magistrate Judge's ruling. *See Koehler v. Bank of Bermuda Ltd.*, 2003 WL 466206, at *1 (S.D.N.Y. 2003) ("there is no provision in the governing statute or the rules of procedure for motions for reconsideration to be made to magistrate judges. On the contrary: the plain wording of statute and rule requires that objections to a

reasoning, it should only extend to the version of the notes sent to the FBI.

Nor is there any reason to force disclosure of the other versions of the notes under a subject-matter waiver theory. FRE 502 addresses this issue and provides that:

> When the disclosure is made in a federal proceeding or to a federal office or agency and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
> > (1) the waiver is intentional;
> >
> > (2) the disclosed and undisclosed communications or information concern the same subject matter; and
> >
> > (3) they ought in fairness to be considered together.

The third element is not present here. According to the advisory committee notes to FRE 502, subject-matter waiver "is reserved for those unusual situations in which fairness requires a further disclosure of related, protected information, in order to prevent a selective and misleading presentation of evidence to the disadvantage of the adversary." "[S]ubject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading and unfair manner." *Id.* "Subject matter waiver is justified 'when a party uses an assertion of fact to influence the decisionmaker while denying its adversary access to privileged materials potentially capable of rebutting the assertion.'" *Freedman v. Weatherford Int'l Ltd.*, 2014 WL 3767034, at *3 (S.D.N.Y.

---

magistrate judge's nondispositive order be timely made to the district judge assigned to the case.").

July 25, 2014) (quoting *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008)). There is no such unfairness here for the simple reason that plaintiffs do not intend to use the notes before the jury, or in the remainder of the litigation. *See Mitre Sports Int'l Ltd v. Home Box Office,Inc.*, 304 F.R.D. 369, 372-73 (S.D.N.Y. 2015) (no subject-matter waiver by disclosing privileged material in a deposition if the party claiming privilege does not use the testimony).

<u>Conclusion</u>

The Court should grant these objections and deny Fraser's motion to compel.

DATED: February 5, 2019

Respectfully submitted,

/s/ Colin M. Watterson

Mark P. Kindall (ct13797)
E-mail: mkindall@ikrlaw.com
Robert A. Izard
E-mail: rizard@ikrlaw.com
IZARD, KINDALL & RAABE, LLP
29 S. Main St., Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290

Colin M. Watterson (*pro hac vice*)
E-mail:  cwatterson@susmangodfrey.com
Texas Bar No. 2409330
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX  77002
Tel: (713) 651-9366
Fax: (713) 654-3367

Marc Seltzer (*pro hac vice*)
E-mail:mseltzer@susmangodfrey.com
California Bar No. 54534
Kathryn Hoek (*pro hac vice*)
E-mail: khoek@susmangodfrey.com
California Bar No. 219247
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

Seth Ard (*pro hac vice*)
E-mail: sard@susmangodfrey.com
New York Bar No. 4773982
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6022
Tel: (212) 336-8330
Fax: (212) 336-8340

Edgar Sargent (*pro hac vice*)
Email: esargent@susmangodfrey.com
Washington Bar No. 28283
Susman Godfrey L.L.P.
1201 Third Avenue, Suite 3800
Tel: (202) 516-3880
Fax: (310) 789-3150

*Counsel for Plaintiffs*

16

<u>Certificate of Service</u>

I hereby certify that on February 5, 2019, I served the foregoing via electronic mail on the following:

Daniel H. Weiner
Sarah L. Cave
Sara E. Echenique
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY  10004-1482

Sean M. Fisher (ct23087)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT  06511

*/s/ Colin M. Watterson*
Colin M Watterson

17