UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, and DEAN ALLEN SHINNERS, Individually and on Behalf of All Others Similarly Situated,<br><br>　　　　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC, (d/b/a ZEN CLOUD),<br><br>　　　　　　　　　　Defendants. | Case 3:16-cv-00940<br><br>Hon. Michael P. Shea<br>Courtroom 2<br><br>ECF Case<br><br><u>CLASS ACTION</u><br><br>May 3, 2019<br><br>PLAINTIFFS' SUPPLEMENTAL BRIEF RE: CLASS MEMBER IDENTIFICATION AND DAMAGES |

**Table of Authorities**

**Cases**

*Briseno v. ConAgra Foods, Inc.*,
    844 F.3d 1121, 1132 (9th Cir. 2017) ................................................................................. 1

*In re Petrobras Sec.*,
    862 F.3d 250 (2nd Cir. 2017)..................................................................................... 1, 2

*Levinson v. Westport Nat'l Bank*,
    2011 WL 13237887 (D. Conn. May 10, 2011)................................................................ 5

*Mazzei v. Money Store*,
    829 F.3d 260 (2d Cir 2016).............................................................................................. 1

*Mullins v. Direct Dig, LLC*,
    795 F. 3d 654 (7th Cir. 2015) .......................................................................................... 1

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401, 405 (2nd Cir. 2015)................................................................................... 4

**Table of Evidence**

| Exhibit | Description |
|---|---|
| 1. | Excerpts from transcript of hearing on class certification |
| 2. | Joint Declaration |
| 3. | Declaration of Allen Shinners |
| 4. | Examples of receipts from gawminers.com provided by putative class members |
| 5. | Excerpts of Braintree and Stripe credit card data |
| 6. | Comparison of claimant Christian Bills' credit card statement with Braintree and Stripe table showing transactions of the 20 randomly selected putative class members |
| 7. | Examples of credit card and other financial statements provided by putative class members |
| 8. | Examples of bitcoin addresses and transfer confirmations provided by putative class members |
| 9. | Example of blockchain explorer information for bitcoin wallet of putative class member Belinda Burrows |
| 10. | Declaration in *SEC v. Garza*, No. 3:15-cv-1760 (D. Conn.) |
| 11. | Declaration of Colin M. Watterson |

**Introduction**

During the hearing on class certification, the Court ordered the parties to produce a sample of documents collected by plaintiff Allen Shinners from 20 randomly selected putative class members and to provide supplemental briefing about the use of those documents to establish class membership and damages. Ex. 1 at 101:21-102:22; Dkt. 136. Those documents illustrate at least three ways for class members to establish class membership and calculate damages using common categories of documentary proof: (1) email receipts for purchases of the securities at issue; (2) tables listing credit card transactions with GAW, including name and address information; and (3) blockchain addresses for bitcoin wallets created by GAW for customers to use when purchasing GAW securities with cryptocurrency. Each category of records can be used separately and together to establish class membership through purchases of GAW securities during the class period. The same records also provide a reliable means to calculate the individual damages sustained by each class member.[1]

**Argument**

1. *The Evidence Submitted Confirms Proof of Purchase Is a Common Issue.*

The predominance element of Rule 23(b)(3) requires the Court to consider whether the case presents individual questions that "are more substantial than the issues subject only to individualized proof.'" *In re Petrobras Sec.*, 862 F.3d 250, 272 (2nd Cir. 2017) (quoting *Mazzei v. Money Store*, 829 F.3d 260, 272 (2d Cir 2016)). At the hearing, the Court asked the parties to

---

[1] Of course, it is black-letter law that the need to make individualized damages calculations does not defeat certification of a class action. As noted at the hearing, the facts regarding a class member's purchase of a security are generally established by a claim form submitted by the class member post-trial. Class member affidavits are sufficient to establish class membership. *See, e.g., Mullins v. Direct Dig, LLC,* 795 F. 3d 654, 669 (7th Cir. 2015) ("We are aware of only one type of case [treason] in American law where the testimony of one witness is legally insufficient to prove a fact."); *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1132 (9th Cir. 2017) ("Given that a consumer's affidavit could force a liability determination at trial without offending the Due Process Clause, we see no reason to refuse class certification simply because that same consumer will present her affidavit in a claims administration process after a liability determination has already been made.").

submit a random sample of the purchase evidence some class members had submitted, in light of testimony suggesting the ZenCloud database may have been corrupted and an understanding that some cryptocurrency transactions may be executed anonymously.

Unlike *Petrobras*, where membership turned on a multi-factor analysis for determining whether a securities transaction qualifies as "domestic," the only issue here is a straightforward question with a black-and-white answer: did the putative class member purchase specified GAW securities during the class period?[2] This question does not present complex legal or factual issues and it can be answered, as it has been in countless previous securities and other class actions, with claim forms supported, if deemed necessary, by purchase receipts or other documents evidencing a qualifying purchase.

To address the Court's concerns about the specific evidence available in this case, the parties together randomly selected 20 of the 173 putative class members who had submitted records to plaintiff Allen Shinners before this class action was filed. These records included emailed receipts from GAW, credit card statements, bitcoin transfer records, and spreadsheets summarizing GAW transactions. X-2 at ¶6. The records the claimants submitted to Shinners demonstrate that class membership and damages can be established through reliable, common categories of evidence. Moreover, examination of these records and other data sources external to ZenCloud appears to confirm the accuracy of the records in the ZenCloud database that are relevant to these determinations.[3]

---

[2] In *Petrobras,* the Second Circuit found that the question of whether someone engaged in a qualifying domestic securities transaction would turn on highly individualized transaction-specific facts, including, but not limited to, "facts concerning the formation of the contracts, the placement or purchase order, the passing of title, or the exchange of money," all to determine whether (1) the purchaser "incurred irrevocable liability within the United States to take and pay for a security," or "legal title to the security must have transferred in the United States." 826 F.3d at 262 & 272. Even so, the Circuit noted that certification was still an open question on remand and emphasized the various class action management tools available to the trial court. *Id*. at 274-275.

[3] Importantly, as he explains in his declaration, Shinners did not require claimants to provide all materials in their possession related to GAW. X-3 at ¶7. As a result, it is likely that these claimants may have additional records in some

### *2. Records External to ZenCloud Establish Class Membership.*

Class members have several data sources available to demonstrate class membership. First, as the Court indicated at the hearing, GAW investors received form email receipts to confirm purchases of securities. 13 of the 20 putative class members provided copies of such emails to Shinners when he was assembling evidence before plaintiffs filed this action. X-4. Each example conforms to a uniform format and each includes the date of the transaction, the item purchased, the purchaser's name and email address, and the amount paid. These emails alone are evidence of class membership and can also be used to calculate damages.

Class members who cannot locate copies of these email receipts will have several alternative means to establish membership in the class. GAW used third-party credit card processors called "Braintree" and "Stripe" to process credit card sales of its securities. GAW representatives provided data tables from both processors to the SEC and those tables have been produced in this litigation. X-5. This data from independent companies is not subject to any of the concerns expressed by Fraser about the ZenCloud database. A search for the name of a claimant on this table can be used to confirm the date and amount of each credit card purchase. Review of the credit card statements obtained from class members included among the documents collected by Allen Shinners confirms the accuracy of the information on the Braintree and Stripe tables. X-6. The 20 randomly selected putative class members provided their own credit card statements that can be similarly used. X-7.

GAW investors who did not use credit cards instead used bitcoin to make their purchases. Like the credit card purchases, purchases made with bitcoin can be identified with common categories of evidence. GAW provided every customer who used bitcoin to purchase GAW's

of these categories.

3

securities with a unique bitcoin wallet address. X-3 at ¶3. The customer would then transfer bitcoin to that wallet to spend it on GAW securities. *Id.* These transfers of bitcoin to GAW can be reviewed and confirmed on the bitcoin blockchain by searching for the individual wallet addresses. Class members provided Shinners with their GAW bitcoin wallet address, and several identified individual transfers of bitcoin that they made to GAW through these addresses. X-8. Any public blockchain website (such as www.blockchain.com/explore) can be used to locate all bitcoin transactions involving these addresses and confirm the date and amount of each transfer. *E.g.*, X-9. In addition, class members may submit records from a personal bitcoin exchange or wallet service (equivalent to a bank for a credit card) showing transfers from such an account to the individual's GAW wallet, as several class members did when providing records to Shinners. X-8.

### 3. *Data Supporting Damage Claims Is Available and Reliable.*

Each of the three non-ZenCloud data sources available to verify class membership—email receipts, credit card transaction data, and bitcoin blockchain records—can also be used as the basis for a class member's damages calculation. Each of these categories include dates and the amounts of the purchases which establish the class member's loss.[4] Even if individual inquiries might be required to assess chargebacks, sales to third-parties, or other reductions in the individual damage amounts, that fact cannot defeat class certification. It is well-established in this Circuit and elsewhere that "the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2nd Cir. 2015) (internal punctuation and citations omitted). As this Court has found, "varying damages are

---

[4] Calculation of damages for the plaintiffs' claim under Connecticut securities laws is a purely mechanical task involving objectively verifiable amounts, rending complex individual damages proceedings unnecessary. *See* CUSA § 36-b-29 (permitting the plaintiff "to recover the consideration paid for the security, together with interest at eight percent per year from the date of payment, costs and reasonable attorneys fees, less the amount of any income received on the security. . .").

4

not usually a legitimate basis to deny class certification because these issues may be dealt with through a claims administration process after a determination of liability." *Levinson v. Westport Nat'l Bank*, 2011 WL 13237887, at *2 (D. Conn. May 10, 2011).

Although the records discussed above provide a basis for calculating damages without reference to ZenCloud, it is also a common question for the jury whether ZenCloud is a reliable source of data for the calculation of damages. There are plenty of indicia that it is reliable, including evidence in this motion: plaintiffs have cross-checked the accuracy of ZenCloud's records related to the 20 randomly-selected class members. In each case, the ZenCloud data appears to be consistent with external data sources. For example, plaintiffs compared dozens of the email receipts provided by the class members with data in ZenCloud and found that the data in ZenCloud was consistent. X-11 at ¶¶11-13. Plaintiffs also compared transactions on the bitcoin blockchain for each of the 20 putative class members and confirmed that hundreds of transactions recorded in ZenCloud also appear on the blockchain. X-11 at ¶¶14-22. The Department of Justice (DOJ) found the ZenCloud database sufficiently reliable to use it in its prosecution of GAW's Joshua Garza. *See* X-3 at ¶8.[5] And the SEC found it sufficiently reliable to use for damages calculations. X-10. And in the very least, the ZenCloud database is sufficient when corroborated by other evidence of purchase in the record.

## Conclusion

The random sampling of class members shows that there is a reliable, uniform means of establishing class membership that applies across the class.

---

[5] It should be noted that the DOJ used data from approximately 130 investors who voluntarily provided that data to the DOJ. That is not the total universe of investors. The SEC alleged that there were more than 10,000 investors who were defrauded out of $19 million in purchasing Hashlets alone.

DATED: May 3, 2019

                                        Respectfully submitted,

                                        */s/ Colin M. Watterson*

| | |
|---|---|
| Mark P. Kindall (ct13797) | Colin M. Watterson (*pro hac vice*) |
| mkindall@ikrlaw.com | cwatterson@susmangodfrey.com |
| Robert A. Izard | Texas Bar No. 2409330 |
| rizard@ikrlaw.com | SUSMAN GODFREY L.L.P. |
| IZARD, KINDALL & RAABE, LLP | 1000 Louisiana Street, Suite 5100 |
| 29 S. Main St., Suite 305 | Houston, TX  77002 |
| West Hartford, CT 06107 | Tel: (713) 651-9366 |
| Tel: (860) 493-6292 | Fax: (713) 654-3367 |
| Fax: (860) 493-6290 | |
| | Marc Seltzer (*pro hac vice*) |
| | mseltzer@susmangodfrey.com |
| | California Bar No. 54534 |
| | Kathryn Hoek (*pro hac vice*) |
| | khoek@susmangodfrey.com |
| | California Bar No. 219247 |
| | SUSMAN GODFREY L.L.P. |
| | 1900 Avenue of the Stars, Suite 1400 |
| | Los Angeles, CA 90067 |
| | Tel: (310) 789-3100 |
| | Fax: (310) 789-3150 |
| | |
| | Seth Ard (*pro hac vice*) |
| | sard@susmangodfrey.com |
| | New York Bar No. 4773982 |
| | SUSMAN GODFREY L.L.P. |
| | 1301 Avenue of the Americas, 32nd Floor |
| | New York, NY 10019-6022 |
| | Tel: (212) 336-8330 |
| | Fax: (212) 336-8340 |
| | |
| | Edgar Sargent (*pro hac vice*) |
| | esargent@susmangodfrey.com |
| | Washington Bar No. 28283 |
| | Susman Godfrey L.L.P. |
| | 1201 Third Avenue, Suite 3800 |
| | Tel: (202) 516-3880 |

6

Fax: (310) 789-3150

*Counsel for Plaintiffs*

**Certificate of Service**

I hereby certify that on May 3, 2019, I served the foregoing via electronic mail on the following:

Daniel H. Weiner
Sarah L. Cave
Sara E. Echenique
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY  10004-1482

Sean M. Fisher (ct23087)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT  06511

*/s/ Colin M. Watterson*
Colin M Watterson