# EXHIBIT 1

```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF CONNECTICUT

- - - - - - - - - - - - - - - - x
                                        No. 3:16-CV-00940 (MPS)
DENIS MARC AUDET, MICHAEL
PFEIFFER, and DEAN ALLEN                APRIL 12, 2019
SHINNERS, Individually and on
Behalf of All Others Similarly          10:02 a.m.
Situated
                                        HEARING
vs.

STUART A. FRASER, GAW MINERS,
LLC, and ZENMINER, LLC, (d/b/a
ZEN CLOUD)

- - - - - - - - - - - - - - - - x


                        450 Main Street
                      Hartford, Connecticut


         BEFORE:  THE HONORABLE MICHAEL P. SHEA, U.S.D.J.


APPEARANCES:

FOR THE PLAINTIFFS:

         SUSMAN GODFREY, L.L.P.
             1000 Louisiana Street, Suite 5100
             Houston, Texas 77002
         BY: COLIN M. WATTERSON, ESQUIRE

         SUSMAN GODFREY, L.L.P.
             1301 Avenue of the Americas, 32nd Floor
             New York, New York 10019
         BY: SETH D. ARD, ESQUIRE

         IZARD, KINDALL & RAABE, LLP
             29 South Main Street, Suite 305
             West Hartford, Connecticut 06107
         BY: CHRISTOPHER M. BARRETT, ESQUIRE

                                        (continued ...)
```

```
 1   FOR THE DEFENDANTS:

 2            HUGHES, HUBBARD & REED L.L.P.
                  One Battery Park Plaza, 12th Floor
 3                New York, New York 10004-1482
              BY: SARAH L. CAVE, ESQUIRE
 4                DANIEL H. WEINER, ESQUIRE
                  HANNAH MILLER, ESQUIRE
 5
              BRENNER, SALTZMAN & WALLMAN
 6                271 Whitney Avenue
                  New Haven, Connecticut 06511-1746
 7            BY: SEAN M. FISHER, ESQUIRE

 8

 9   COURT REPORTER:  Julie L. Monette, RMR, CRR, CCP
                            (860) 212-6937
10
     Proceedings recorded by mechanical stenography, transcript
11   produced by computer.
```

```
 1   you read about the internal -- the internal hack, you know, it
 2   seemed to me that that --
 3            THE COURT:  What about Hashlets that had been split
 4   and/or destroyed?  I'm just reading from page 61 or ECF
 5   107-61.
 6            MR. WATTERSON:  The splitting is a reference to one
 7   thing that you should do with these Hashlets, they were sold in
 8   units of power; so if you had a 10-mega Hashlet, you could
 9   split it into ten 1-mega Hash Hashlets.  I think that's what
10   the reference to splitting is.
11            THE COURT:  What about the reference to destroyed?
12            MR. WATTERSON:  I'm not sure what she means.
13            THE COURT:  This is the point.  We don't know what she
14   meant.  You could have gone out and interviewed her.  My point
15   is simply I just -- in light of that testimony, it's really
16   hard for the Court to conclude that in a ruling on class
17   certification, or for that matter anything else, it should rely
18   on the data base.  I mean this is -- so that's kind of where I
19   am on that.  So that's why I was asking you about other things.
20       And do you not want to do this sampling thing?  Is there
21   some reason you don't want to do that?
22            MR. WATTERSON:  No, Your Honor.  My position is that
23   it's not necessary.
24            THE COURT:  Again --
25            MR. WATTERSON:  But obviously, if that would bring the
```

1  Court more confidence, we will do that.
2            THE COURT:  All right.  And then the Shopify data
3  base, again, you haven't really told me -- I feel like I'm not
4  getting the full picture.  You haven't -- from what I know, if
5  I were in your position, I would be jumping on the Shopify data
6  base.  "Judge, it's good.  That's all good."  But that's not
7  the case for some reason.
8            MR. WATTERSON:  What I think Ms. -- the point is the
9  Shopify data base, what we have, is from a certain period of
10 time, and it wouldn't --
11           THE COURT:  It wouldn't cover as much as you want.
12           MR. WATTERSON:  And so --
13           THE COURT:  Yes?  Correct?
14           MR. WATTERSON:  That's correct.  And so that's why Mr.
15 Mills went ahead and tried to cross-reference with the data
16 base.  And, you know, I think the fact that he found that there
17 is similar e-mails, there's similar phone numbers, there's
18 similar addresses across these data bases does indicate at
19 least this information about membership is reliable.  And so
20 that's why he went ahead and did that analysis.
21           THE COURT:  Okay.  All right.  So, yeah, I think I am
22 going to want some kind of a sampling procedure, and what I'll
23 ask the parties to do, then, is to just come up with a method.
24 I hope you can.  I really don't want to have to do that.
25 Whether it be alphabetical, you take every other name, I don't

```
 1  really care.
 2       I think that 20 is a good number.  If you want to file all
 3  of them -- I guess what I would say is the filings on behalf of
 4  the three are quite extensive.  I'm not really sure I need all
 5  that material.  What I'm most interested in is seeing whether
 6  or not the e-mails look like the e-mails that Mr. Shinners, Mr.
 7  Audet, and Mr. Pfeiffer -- Pfeiffer?
 8            MR. WATTERSON:  Correct, Pfeiffer.
 9            THE COURT:  -- Pfeiffer had that say, "Thank you for
10  purchasing from GAW Miners."  That's what I'm most interested
11  in.
12       Now, I don't want to define the task in a way that by
13  definition prejudices the defendant.  So maybe what we do is --
14  and I don't want 2,000 pages on the docket.  So I think maybe
15  what we do is you pick 20 people and you come up with the
16  method, and then you each pick, let's say, 10 pages from that
17  person.  So we're limited then to 400 pages, which is plenty.
18       And then you might as well just file them on the docket so
19  you have a good record and all that.  You can break it up into
20  pieces, if you want.  But -- and something -- at least some
21  declaration from counsel would be helpful just so I'm sure I
22  know what I have.  Okay?  Are there any questions about that?
23            MS. CAVE:  If I could raise two things about that,
24  Your Honor, I guess.  Mr. Watterson and I have a very good
25  working relationship.  I have no doubt we'll be able to work
```

```
 1   this out.  If for some reason we can't, I assume we can come
 2   back --
 3             THE COURT:  You can.
 4             MS. CAVE:  -- or if what Your Honor's requesting does
 5   not work.
 6             THE COURT:  Yes, just file a motion for a status
 7   conference.
 8             MS. CAVE:  In addition to that, if we could have
 9   permission to submit a very short brief or something like that
10   that explains --
11             THE COURT:  Your position.
12             MS. CAVE:  -- what our position is?
13             THE COURT:  Five pages each.  Five pages each, at the
14   same time you file this.  Can you do this within the next 21
15   days?
16             MS. CAVE:  Yes.
17             MR. WATTERSON:  Yes.
18             THE COURT:  21 days.  So let's set a date.
19             MS. CAVE:  Then the last thing I would say, I'm not
20   sure that's going to solve all the other problems that we've
21   raised, including charge-backs and other things, but we can
22   address that once we look at this.
23             THE COURT:  So May 3rd.  All right.  Does everybody
24   understand what I want on May 3rd?
25             MR. WATTERSON:  Yes, Your Honor.
```

C E R T I F I C A T E

I, Julie L. Monette, RMR, CRR, CRC, Official Court Reporter for the United States District Court for the District of Connecticut, do hereby certify that the foregoing pages are a true and accurate transcription of my shorthand notes taken in the aforementioned matter to the best of my skill and ability.

/S/ JULIE L. MONETTE
_____
Julie L. Monette, RMR, CRR, CRC
Official Court Reporter
450 Main Street
Hartford, Connecticut 06103
(860) 212-6937