AUNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, and DEAN ALLEN SHINNERS, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiffs,<br><br>   vs.<br><br>STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC, (d/b/a ZEN CLOUD),<br><br>                Defendants. | Case 3:16-cv-00940<br><br>Hon. Michael P. Shea<br>Courtroom 2<br><br>ECF Case<br><br><u>CLASS ACTION</u><br><br>August 13, 2019<br><br>JOINT MOTION TO APPROVE FORM AND MANNER OF NOTICE |

I.
Introduction

Plaintiffs Denis Marc Audet, Michael Pfeiffer, and Dean Allen Shinners ("plaintiffs") and Defendant Stuart A. Fraser ("Fraser") jointly submit for this Court's approval the attached proposed long- and short-form notices as well as a plan to distribute them pursuant to the Court's Order dated July 19, 2019 (Dkt. 150), and respectfully request that the Court schedule a telephone conference to address the remaining disputes between the parties as to the content of the notices.[1]

On July 8, 2019, the Court entered an order (Dkt. 144) certifying the following class in this action:

> All persons or entities who, between August 1, 2014, and January 19, 2015, (1) purchased Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC; or (2) acquired Hashlets, Hashpoints, HashStakers,

---

[1]. Fraser continues to believe that class certification is inappropriate in this case, and reserves his right to seek to decertify the class and to challenge the Court's class certification decision on appeal.

1

or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC, by converting, upgrading, or exchanging other products sold by GAW Miners, LLC and/or ZenMiner, LLC. Excluded from the Class are any defendants, any parent, subsidiary, affiliate, or employee of any defendant, any co-conspirator, and any governmental agency.

On July 19, 2019, the Court entered an order directing the parties to file jointly a proposed form of notice and plan for distributing the notice to the class members. (Dkt. 150.) The parties exchanged drafts and comments on proposed long- and short-form notices. Plaintiffs seek approval of the long- and short-form notices attached to this motion as exhibits A and B and the plan described in the declaration of Cameron R. Azari attached as exhibit C.

The parties substantially agree on the content of the notices, but have two remaining disputes regarding the language of the notices. The parties' respective positions are described below. Fraser does not oppose plaintiffs' proposed distribution plan.

## II.
## Argument

Class Members of a Rule 23(b)(3) class must receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FRCP 23(c)(2)(B). The "best notice that is practicable" standard applies to both the form and manner of notice. *See* William R. Rubenstein, 3 Newberg on Class Actions § 8:5 (5th ed.).

A.   Form of notice.

Plaintiffs propose two forms of notice: a short-form notice that notice administrator Epiq will email directly to class members, and a long-form notice that

will appear on a website maintained by Epiq. *See* Ex. A & B.[2] The parties agree that class notice should supply all "information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class." *Achtman v. Kirby, McIerney & Squire, LLP*, 464 F.3d 328, 338 (2d Cir. 2006) (citation and internal quotation marks omitted). That includes "all rights and obligations if they elect to remain class members." *Macarz v. Transworld Sys., Inc.*, 201 F.R.D. 54, 57 (D. Conn. 2001), *on reconsideration* (May 11, 2001). The parties have two disagreements about the language of the notices:

    1.    <u>The parties' dispute over including language regarding depositions</u>.

The parties disagree as to whether the long-form notice should include the following sentence: "If you choose to remain in the Class, you may be required to offer testimony under oath at a deposition regarding your transactions involving the Companies." The sentence is included in brackets in the attached long-form notice.

    a.    <u>Fraser's position.</u>

Fraser's position is that (a) such a statement accurately conveys an obligation that individuals may have if they elect to remain members of the class (see the Court's order dated July 19, 2019 (Dkt. 150)), and (b) potential class members therefore have the right to know that they may be deposed. *See, e.g.*, *Markham v. White*, No. 95 C 2065, 1999 WL 1072647, at *8 (N.D. Ill. Sept. 9, 1999) (requiring amendment to the Plaintiffs' proposed notice to insert language about possible deposition obligations). Plaintiffs' contention that the statement is misleading because each class member's

---

[2] Exhibit A and B include bracketed language that reflects the parties' respective positions over the language of the notices. Fraser's position is in blue. Plaintiffs' position is in purple.

3

chance of being deposed is "remote" hinges on the unsupported assumption that the class contains thousands of members. Moreover, despite Plaintiffs' contention to the contrary, the proposed sentence is not designed to encourage class members to opt out, as demonstrated in part by the fact that it is included only in the long-form notice, for class members who wish to read the "fine print."

      b.     <u>Plaintiffs' position.</u>

Plaintiffs' position is that Fraser's language would encourage class members to opt-out to avoid a potential deposition. "[I]nclusion of any specific notice must be balanced against the possibility that it may operate as a disincentive to join the class." *McCarthy v. Paine Webber Grp., Inc.*, 164 F.R.D. 309, 312 (D. Conn. 1995). Here, the Court is permitting depositions of only ten members and only from a subset of 173 members of the class. The chances of any more class members being subject to a deposition is so remote that Fraser's proposed language is materially misleading given the limitations the Court has already imposed. Rather than advising class members of their obligations, the statement is designed to encourage them to opt-out.

Fraser's contrary arguments fail. First, Fraser says there is no evidence that the class consists of thousands of individuals. Wrong. The SEC alleged that the Companies sold Hashlets alone to over 10,000 investors. *See SEC v. Garza et al.*, No. 3:15-cv-01760, (D. Conn.) Dkt. 1 at ¶ 2. And numerous company records discussed in plaintiffs' motion for class certification—including the hundreds of thousands of email addresses that form the basis for plaintiffs' notice plan—indicate that the class is sizeable. Second, Fraser's argument that his proposed language is not meant to

4

encourage class members to opt out because it will only appear in the long-form notice obviously fails. If Fraser did not believe class members would read the long-form notice, why would he insist on including the language in the first place?

2. <u>The parties' dispute over including language regarding substantiating transactions.</u>

The parties also disagree as to whether both notices should include the word "will" or "may" to describe the likelihood that class members will need to provide proof of their transactions to share in any class recovery.

a. <u>Fraser's position.</u>

Fraser's position is that the notices should say that class members "will" be required to show proof of their transactions at a later time because there is no circumstance in which class members would not need to prove their transactions to share in any class recovery.

As this Court has already held, "the Court will need to determine the loss suffered by each member of the class" in the event Plaintiffs prove liability. (Dkt. 141 at 33.)  It is impossible for the Court to do so without each class member providing some proof of their individual transactions.  Although Plaintiffs contend that it might be possible to calculate damages entirely based on records from the Companies, there are no records from the Companies from which it is possible to assess the total value received by each purchaser in exchange for the products purchased from GAW Miners, LLC, or ZenMiner, LLC, as this court is aware.  Therefore, even if the records from the Companies were otherwise sufficient (which they are not), it would be

5

impossible for Plaintiffs to calculate damages entirely based on records from the Companies.

Furthermore, even if this Court were to permit class members to use claim forms alone to substantiate their losses (which would be insufficient), those claim forms would still be subject to challenges by Fraser, which would require individual class members to provide supporting documentation or otherwise prove their transactions. *See Mullins v. Direct Digital, LLC*, 795 F.3d 654, 669-70 (7th Cir. 2015) (explaining that self-identifying affidavits must be subject to verification procedures to protect the defendant's due process rights).

      b.      <u>Plaintiffs' position.</u>

Plaintiffs' position is that class members will not necessarily need to submit documentation to verify their transactions. The Court may permit plaintiffs to use claim forms to substantiate their losses. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 669 (7th Cir. 2015). Plaintiffs also may be able to calculate damages entirely based on records from the Companies. In either case, there would be no need for class members to submit any substantiating documentation. Given either possibility, it is appropriate to state merely that class members "may" need to substantiate their losses.

Fraser argues that there are no records from the Companies that allow for calculation of damages. There has been no such finding. The Court explicitly left open the possibility of using the Companies' records to calculate damages in its class certification order. Dkt. 141 at 28-30. Fraser's argument that he is entitled to

6

challenge claim forms provided by plaintiffs is also speculative and premature such that Fraser's proposed language is inaccurate. Before Fraser could challenge a claim, he would need some factual basis for doing so. It is simply too early to know whether such a factual basis will ever arise. And there is no guarantee the Court will require class members to submit claim forms at all. Given the stage of the litigation, informing class members only that they "may" need to submit documentation is proper.

    3.    <u>The forms of notice provide all information required by FRCP 23(c)(2)(B).</u>

Aside from the disputes outlined above, the parties agree that the proposed notices are appropriate because they otherwise present all information required by FRCP 23(c)(2)(B) "clearly and concisely . . . in plain, easily understood language." The long-form notice satisfies each of the explicit requirements of FRCP 23(c)(2)(B):

"(i)   the nature of the action;"

- *See* Ex. A, para. 1.

"(ii)   the definition of the class certified;"

- *See* Ex. A, intro. & paras. 2 & 9.

"(iii)   the class claims, issues, or defenses;"

- *See* Ex. A, paras. 1-4.

"(iv)   that a class member may enter an appearance through an attorney if the member so desires"

- *See* Ex. A, para. 10.

"(v)   that the court will exclude from the class any member who requests exclusions;"

- *See* Ex. A, para. 9

"(vi)   the time and manner for requesting exclusion;"

- *See* Ex. A, paras. 12-14.

"(vii)   the binding effect of a class judgment on members under Rule 23(c)(3)."

- *See* Ex. A, para. 10.

B.   <u>Manner of notice.</u>

Fraser does not object to Plaintiffs' proposed manner of notice, which would operate as follows. Plaintiffs retained Epiq Class Actions & Claims Solutions, Inc. ("Epiq") as notice administrator. Plaintiffs will provide Epiq with email addresses they have for potential class members. Plaintiffs have email addresses from class members from the ZenCloud and Paybase databases, records from PayPal and Stripe, records from Shopify (the online "shopping cart" used by GAW), and email addresses collected by Mr. Shinners.

As explained in Azari's declaration, Epiq will transmit notice to class members via email. Ex. C at ¶ 11. Epiq will design the emails to minimize the likelihood of an internet service provider or spam filter blocking the email. *Id.* The email will direct class members to a website that contains the long-form notice and other information about the case. *Id.* at ¶¶ 12, 19. The website will include a toll-free number class members can call to obtain information about the case. *Id.* at ¶ 20.

Epiq will also launch an online publication campaign to provide indirect notice to class members. *Id.* at ¶¶ 14-17. The advertising campaign will consist of banner ads on cryptocurrency-related websites, blogs, and news outlets. *Id.* at ¶¶ 14-15. Ads will also appear to individuals who have searched for cryptocurrency related information. *Id.* at ¶ 14. The banner ads will direct class members to the website hosting the long-form notice. *Id.* at ¶ 16. The campaign will also include sponsored search listings on Google, Yahoo!, and Bing. *Id.* at ¶ 17.

Finally, Epiq will transmit an informational release about the class certification to traditional and online media outlets. *Id.* at ¶ 18. The releases could result in additional publicity of the class certification if media outlets choose to write stories. *Id.*

Based on Plaintiffs' discussions with Epiq, Plaintiffs understand that it will take approximately 30 days after Court approval to implement the notice plan. In other words, Plaintiffs propose to transmit the emails and implement the publication campaign within 30 days of court approval of the plan. Plaintiffs further propose a 45-day opt-out period. Fraser does not object to this timeframe.

This proposed plan is the best practicable method and the Court should approve it. In 2018, FRCP 23(c)(2) was amended to "recognize contemporary methods of giving notice to class members." *See* FRCP 23, Adv. Comm. Notes. FRCP 23(c)(2)(B) explicitly authorizes notice by "electronic means." Notice by email is appropriate in this case because class members needed to use the internet to obtain the securities at issue in this case. Even prior to the 2018 amendments, courts permitted email-only notice when it was clear class members were comfortable with the internet. *See Browning v. Yahoo!*

9

*Inc.*, 2006 WL 3826714, at *8 (N.D. Cal. Dec. 27, 2006) ("allegations arise from [class members] visits to Defendants' Internet websites, demonstrating that the Settlement Class Members are familiar and comfortable with email and the Internet."). Class members in this case are necessarily familiar with the internet.

The plan is especially appropriate because it includes notice by publication in addition to direct notice by email. *See, e.g.*, *In re Pool Prods. Distribution Mkt. Antitrust Litig.*, 2014 WL 7407492, at *17 (E.D. La. Dec. 31, 2014) (approving combined email and publication notice plan). In fact, courts approve notification solely by publication in appropriate circumstances. *E.g.*, *In re Google Referrer Header Privacy Litig.*, 2014 WL 1266091, at *8 (N.D. Cal. Mar. 26, 2014). Advertising online is the best practicable way to conduct a publication campaign given the nature of the case. Major sources of information about cryptocurrency exist online as opposed to in traditional print or broadcast media.

Finally, the 45-day opt-out period is appropriate because Plaintiffs will provide direct notice. Courts frequently conclude that periods as short as thirty days are appropriate. *See In re Marsh & McLenan Co., Inc. Sec. Litig.*, 2009 WL 5178546, at *23 (S.D.N.Y. Dec. 23, 2009).

### III.
### Conclusion

The parties respectfully request that the Court resolve the disputes between them regarding the form of notice and otherwise approve the proposed form and manner of notice.

Respectfully submitted,

By: */s/ Daniel H. Weiner*  
Daniel H. Weiner (ct12180)  
Sarah L. Cave (phv08437)  
Hughes Hubbard & Reed LLP  
One Battery Park Plaza  
New York, NY 10004-1482  
Tel.: (212) 837-6000  
Fax: (212) 422-4726  
Email: sarah.cave@hugheshubbard.com  

David R. Schaefer (ct04334)  
Sean M. Fisher (ct23087)  
Brenner, Saltzman & Wallman LLP  
271 Whitney Avenue  
New Haven, CT 06511  
Tel.: (203) 772-2600  
Fax: (203) 562-2098  
Email: sfisher@bswlaw.com  

*Counsel for Defendant Stuart A. Fraser*

*/s/ Colin M. Watterson*  
Colin M. Watterson (*pro hac vice*)  
cwatterson@susmangodfrey.com  
Texas Bar No. 2409330  
SUSMAN GODFREY L.L.P.  
1000 Louisiana Street, Suite 5100  
Houston, TX 77002  
Tel: (713) 651-9366  
Fax: (713) 654-3367  

Marc Seltzer (*pro hac vice*)  
mseltzer@susmangodfrey.com  
California Bar No. 54534  
Kathryn Hoek (*pro hac vice*)  
khoek@susmangodfrey.com  
California Bar No. 219247  
SUSMAN GODFREY L.L.P.  
1901 Avenue of the Stars, Suite 950  
Los Angeles, CA 90067  
Tel: (310) 789-3100  
Fax: (310) 789-3150  

Seth Ard (*pro hac vice*)  
sard@susmangodfrey.com  
New York Bar No. 4773982  
SUSMAN GODFREY L.L.P.  
1301 Avenue of the Americas, 32nd Floor  
New York, NY 10019-6022  
Tel: (212) 336-8330  
Fax: (212) 336-8340  

Edgar Sargent (*pro hac vice*)  
esargent@susmangodfrey.com  
Washington Bar No. 28283  
Susman Godfrey L.L.P.  
1201 Third Avenue, Suite 3800  
Tel: (202) 516-3880  
Fax: (310) 789-3150

>Mark P. Kindall (ct13797)
>mkindall@ikrlaw.com
>Robert A. Izard
>rizard@ikrlaw.com
>IZARD, KINDALL & RAABE, LLP
>29 S. Main St., Suite 305
>West Hartford, CT 06107
>Tel: (860) 493-6292
>Fax: (860) 493-6290
>
>*Counsel for Plaintiffs*

## Certificate of Service

I hereby certify that on August 13, 2019, I served the foregoing via electronic mail on the following:

Daniel H. Weiner
Sarah L. Cave
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004-1482

Sean M. Fisher (ct23087)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT 06511

>*/s/ Colin M. Watterson*
>Colin M. Watterson