# EXHIBIT 28

| | |
|---|---|
| From: | Allen Shinners |
| Sent: | Tue 3/01/2016 11:56 AM (GMT-05:00) |
| To: | Munster, Mark E. (NH) (FBI) |
| Cc: | |
| Bcc: | |
| Subject: | SEC extension |
| Attachments: | Enforcement Accountant.pdf |

Hey Mark.

Did you read the SEC accountant's analysis? I hope you guys have your own accountant to go through all of this. Nowhere in the affidavit does it say anything about the massive number of Hashlets and Hashstakers sold through the main commercial website GAWminers.com, nor the large blocks of Hashlets sold through the VAR program. Only activations would show in Zencloud for those, not the actual revenues. Zencloud did not sell the majority of the Hashlets, GAWminers.com did. He should have taken the historical Hashlet prices, multiplied by the number of each Hashlet type activated in Zencloud. That gives you the total amount of revenue GAW received for all of this. Since they also gave away some free Genesis Hashlets towards the end, for new account activations, the total revenue, calculated in this fashion, should probably be multiplied by 98% to have the closest accuracy.

According to Joe Mordica, Zencloud was earning a small fortune, daily, through marketplace sales as well. They charged a 5% commission on both buyers and sellers. I saw no accounting for this either.

Best regards,
Allen

**D. Allen Shinners**



Exhibit 218
R. Mills
10/30/2018
reporter: nikki roy
CSR No. 3052

CONFIDENTIAL                                                                                                                          GAW01022075

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HOMERO JOSHUA GARZA, )<br>GAW MINERS, LLC, and )<br>ZENMINER, LLC (d/b/a ZEN CLOUD), )<br>)<br>Defendants. )<br> ) | Case No. 3:15-CV-1760-JAM |

### DECLARATION OF TREVOR T. DONELAN

I, Trevor T. Donelan, pursuant to 28 U.S.C. §1746, hereby declare as follows:

1. Since September 2014, I have been employed as an Enforcement Accountant with the U.S. Securities and Exchange Commission ("the Commission") in its Boston Regional Office. My duties include conducting investigations relating to potential violations of the federal securities laws.

2. I received a Bachelor of Science degree in business administration, with a concentration in accounting, from the University of Richmond in Virginia in 2000. Before joining the Commission, I was most recently a managing director in the forensic accounting and complex business litigation unit at StoneTurn Group, LLP ("StoneTurn"), in Boston, where I worked for over seven years. Before joining StoneTurn, I held forensic accounting and auditor positions for a total of approximately seven years with Deloitte Financial Advisory Services LLP, and Arthur Andersen LLP, both in Boston.

CONFIDENTIAL                                                                                                                   GAW01022076

3.   I am a Certified Public Accountant in the Commonwealth of Massachusetts, and a Certified Fraud Examiner by the Association of Certified Fraud Examiners. I am also Certified in Financial Forensics by the American Institute of Certified Public Accountants.

4.   I make this Declaration based upon my personal knowledge and upon information and belief as set forth below, and in support of the Commission's motion for default judgment against defendants GAW Miners, LLC ("GAW Miners") and ZenMiner, LLC ("ZenMiner"). Beginning in the spring of 2015, I became part of the team of Commission employees conducting an investigation into GAW Miners to determine whether there had been violations of any federal securities laws.

5.   During the course of the Commission's investigation into GAW Miners, various bank records and accounting records were produced to the Commission. ZenMiner's one bank account had extremely limited activity (transactions totaling $28), and it appears that ZenMiner did not maintain separate accounting records.

6.   During the course of the Commission's investigation into GAW Miners, a copy of the database that GAW Miners and ZenMiner used to operate the ZenCloud website (the "ZenCloud Database") was produced to the Commission. The ZenCloud Database was produced to the Commission by a former employee of GAW Miners whose responsibilities included using that database. The ZenCloud Database is a Microsoft SQL ("SQL") database which is a relational database program that is sold commercially.

7.   After I received the ZenCloud Database, I participated in a number of telephone conversations with the former employee from whom the Commission received the database. During those conversations, the former employee described how the data in the ZenCloud Database was compiled, what the various tables and fields in the database meant,

CONFIDENTIAL                                                                                                  GAW01022077

and how the tables and fields in the database related to one another. The former employee also described to me how GAW Miners and ZenMiner had used the ZenCloud Database to operate the ZenCloud website and the Hashlets.

8. Based on my conversations with the former employee who produced the ZenCloud Database to the Commission, and with other former GAW Miners and ZenMiner employees, it is my understanding that the ZenCloud Database obtained by the Commission contains the most reliable and complete data about defendants' sales of Hashlets, about payouts credited to Hashlet owners, and about maintenance fees charged to Hashlet owners, because it contains the data that defendants themselves used to operate the ZenCloud website and Hashlets.

9. The ZenCloud Database produced to the Commission is very large. It consists of 29 tables containing approximately 45 million records. Because of its size, and the amount of personally identifiable information about Hashlet customers it contains, it would be technologically challenging to produce the complete database to the Court for its review.

10. I was asked by other Commission staff working on this matter to calculate the following numbers: 1) the amount that investors paid to purchase Hashlets, 2) the amount that was credited to investors' ZenCloud accounts as payouts from their Hashlets from purported mining operations, and 3) the amount that was deducted from Hashlet investors' ZenCloud accounts as maintenance or service fees for their Hashlets.

11. Another Commission employee who has expertise with using SQL, working under my supervision, queried the ZenCloud Database to isolate: 1) data that would show defendants' revenues from sales of Hashlets; 2) data that would show daily payouts earned

CONFIDENTIAL                                                                                                                   GAW01022078

by Hashlet owners; and 3) service or maintenance fees that were charged to Hashlet owners. I understand the queries that were submitted to the ZenCloud Database, and I have reviewed the data retrieved by those queries.

12. I then summarized the data retrieved by those queries into the following table. The line labeled Hashlet Sales shows, on a monthly basis, the revenues that defendants earned from selling Hashlets, for a total of $20,755,203 in revenues. The line labeled Hashlet Payouts (Gross) shows, on a monthly basis, the amount that Hashlet account owners earned for their Hashlets' purported mining activity via credits added to their Hashlet ZenCloud accounts, for a total of $15,336,090. The line labeled Hashlet Service Fees shows, on a monthly basis, daily fees that were charged to Hashlet owners and deducted from each Hashlet's ZenCloud account, for a total of $4,659,218. I subtracted the numbers in the Hashlet Service Fees line from the numbers in the Hashlet Payouts (Gross) line to arrive at the numbers in the Hashlet Payouts (Net) line. I then subtracted the Hashlet Payouts (Net) line from the Hashlet Sales line to arrive at the line labeled Disgorgement. I calculated the total disgorgement number for the time period from August to December 2014 to be $10,078,331.

Source: ZenCloud SQL Database

|  | Aug-14 | Sep-14 | Oct-14 | Nov-14 | Dec-14 | Total |
|---|---|---|---|---|---|---|
| Hashlet Sales | 6,371,346 | 7,421,179 | 5,790,285 | 1,024,836 | 147,557 | 20,755,203 |
| Hashlet Payouts (Gross) | 1,790,470 | 5,305,073 | 5,993,584 | 1,291,554 | 955,409 | 15,336,090 |
| Hashlet Service Fees | (155,252) | (1,273,562) | (1,990,618) | (642,767) | (597,019) | (4,659,218) |
| Hashlet Payouts (Net) | 1,635,218 | 4,031,511 | 4,002,966 | 648,787 | 358,390 | 10,676,872 |
| Disgorgement | 4,736,128 | 3,389,668 | 1,787,319 | 376,049 | (210,833) | 10,078,331 |

CONFIDENTIAL

GAW01022079

13. The Commission's standard practice is to seek prejudgment interest on a defendant's disgorgement obligation calculated in the same manner that the Internal Revenue Service uses to calculate tax over-payments or under-payments. Applying that methodology and calculating the prejudgment interest starting on December 31, 2014, and ending on December 31, 2015 (the last day of the last quarter prior to today), I calculated $305,768 in prejudgment interest on the amount of $10,078,331. A table supporting my prejudgment interest calculation is attached as Exhibit 1.

14. The sum of the total disgorgement figure I calculated ($10,078,331) and the prejudgment interest I calculated ($305,768) is $10,384,099.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 12, 2016, in Boston, Massachusetts.

/s/ Trevor T. Donelan
Trevor T. Donelan

CONFIDENTIAL

GAW01022080