UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, and DEAN ALLEN SHINNERS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC (d/b/a ZEN CLOUD),<br><br>Defendants. | Case 3:16-cv-00940<br><br>Hon. Michael P. Shea<br>Courtroom 2<br><br>ECF Case<br><br><u>CLASS ACTION</u><br><br>September 25, 2020<br><br>PLAINTIFFS' SUPPLEMENTAL BRIEF REGARDING CLASS-WIDE DAMAGES ISSUES |

## TABLE OF CONTENTS

I. Introduction ................................................................................................................... 1

II. The Court should bifurcate the class-wide trial into a liability-only phase and, if necessary, a damages phase focusing on two discrete, common questions of fact. ................................................................................................................................. 2

    A. The trial should be bifurcated into a liability phase and, if necessary, a limited damage phase. ............................................................................... 2

    B. A bifurcated trial is the most efficient way to proceed. ............................ 5

    C. Deciding these issues of fact would not give rise to Seventh Amendment issues in later damages proceedings. ........................................................ 6

III. The Court should decide damages-related issues of law, including issues related to offsets, during or after the damages phase of the class-wide trial. ................... 8

IV. Conclusion .................................................................................................................. 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
    692 F.3d 34 (2d Cir. 2012)..................................................................................................5, 9

*Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*,
    315 F. Supp. 2d 666 (E.D. Pa. 2004) .........................................................................................9

*Blyden v. Mancusi*,
    186 F.3d 252 (2d Cir. 1999)......................................................................................................6

*Crowther v. Guidone*,
    441 A.2d 11 (Conn. 1981) ........................................................................................................5

*In re Playmobil Antitrust Litig.*,
    35 F. Supp. 2d 231 (E.D.N.Y. 1998) ........................................................................................5

*In re Vivendi Universal, S.A. Sec. Litig.*,
    123 F. Supp. 3d 424 (S.D.N.Y. 2015).......................................................................................9

*Long v. Trans World Airlines, Inc.*,
    761 F. Supp. 1320 (N.D. Ill. 1991) ...........................................................................................4

*Massachusetts Mut. Life Ins. Co. v. DLJ Mortg. Capital, Inc.*,
    251 F. Supp. 3d 333 (D. Mass. 2017) .......................................................................................8

*Randall v. Loftsgaarden*,
    478 U.S. 647 (1986)..................................................................................................................9

*Robinson v. Metro-N. Commuter R.R. Co.*,
    267 F.3d 147 (2d Cir. 2001)..................................................................................................6, 7

*Simon v. Philip Morris Inc.*,
    200 F.R.D. 21 (E.D.N.Y. 2001) ............................................................................................6, 7

**Statutes**

Connecticut Uniform Securities Act, Conn. Gen. Stat. § 36b-4 ......................................................3

Conn. Gen. Stat. § 36b-29(a) .................................................................................................3, 4, 8

Connecticut Uniform Securities Act § 36b-29(c) ...........................................................................3

Exchange Act of 1934 Section 10(b) .................................................................................. 2, 5

Exchange Act of 1934 Section 20(a) ..................................................................................... 2

**Other Authorities**

Fed. R. Civ. P. 49(a) ............................................................................................................. 7

Manual Complex Lit. § 22.755 (4th ed.) .............................................................................. 7

U.S. Const amend. VII ......................................................................................................... 6

I.      **Introduction**

On May 4, 2020, the Court denied Defendant Stuart Fraser's motion to decertify the class as to damages and bifurcated the case into a trial that would "be focused on liability" and a subsequent damages phase. *See* ECF No. 206 at 15-17. Recognizing, however, that "some issues related to damages . . . might be resolvable on a class-wide basis," the Court directed the parties to submit supplemental briefs regarding what damages-related issues could and should be decided during the "class-wide liability trial." *See id.* at 17. Specifically, the Court raised the following questions:

- Should any discrete issues pertaining to damages be determined by the jury in the class-wide liability trial? For example, should the reliability of the ZenCloud database be determined by the jury? Which other damages-related issues, if any, should be determined in the class-wide liability trial? The parties should also address whether trying any such issues during the liability phase raises concerns under the Reexamination Clause of the Seventh Amendment.

- What questions should the Court decide as a matter of law during the liability phase of this case? Of these, which questions should the Court decide prior to trial, and which questions should it decide after hearing the evidence but prior to approving the final jury instructions? Each party should address the merits of any questions it would have the Court decide prior to trial.

*Id.*

Regarding the first set of questions, plaintiffs submit that the class-wide trial itself should be split into two phases: first, a liability-only phase concerning the underlying fraud claims and Mr. Fraser's legal responsibility relating to them; and second, if the jury finds Mr. Fraser liable, a damages phase in which the same jury would resolve two discrete, class-wide issues of fact relating to damages. Following that, the Court and parties can determine how to best structure any follow-on damages proceedings. *See id.* at 15-17. Whatever the form of those damages proceedings, the jury's determination of the two factual issues in the class-wide trial will not create Seventh Amendment issues at a later stage of the case.

Bifurcating the class-wide trial this way promotes both economy — if plaintiffs lose, the jury need not hear evidence about damages (nor the Court decide any issues of law relating to damages) — and efficiency: if Mr. Fraser *is* found liable, the jury can resolve two significant, class-wide damages issues in a single stroke.

For those reasons, plaintiffs request that the Court bifurcate the trial as described below and defer resolving damages-related issues of law until after the liability phase of the trial.

## II. The Court should bifurcate the class-wide trial into a liability-only phase and, if necessary, a damages phase focusing on two discrete, common questions of fact.

The Court inquired whether "any discrete issues pertaining to damages [should] be determined by the jury in the class-wide liability trial." ECF No. 206 at 17.  Plaintiffs respectfully submit that rather than a unitary trial "focused on liability" that includes discrete fact issues relating to damages, the trial itself should be bifurcated — like the case itself — into a liability phase and a damages phase.

This section lays out the structure of such a trial; explains why a bifurcated trial serves the ends of both economy and efficiency; and addresses potential Reexamination Clause concerns.

### A. The trial should be bifurcated into a liability phase and, if necessary, a limited damage phase.

**1. Liability phase.**  The first phase of the class-wide trial would focus only on liability — that is, whether defendants GAW Miners, ZenMiner, and Stuart Fraser violated federal and state securities laws and committed fraud under Connecticut law.  Specifically, the jury would decide whether:

1. GAW Miners and ZenMiner committed securities fraud in violation of Section 10(b) of the Exchange Act of 1934 and Rule 10b-5 thereunder;

2. Mr. Fraser is liable for those securities laws violations as a "controlling person" of GAW Miners and ZenMiner under Section 20(a) of the Exchange Act of 1934;

3. GAW Miners and ZenMiner violated the Connecticut Uniform Securities Act, Conn. Gen. Stat. §§ 36b-29(a)(2) and 36b-4, and 36b-29(a)(1), in connection with fraud in the sale of securities and the sale of unregistered securities;

4. Mr. Fraser is liable for those violations as a controlling person, and aider and abettor, of GAW Miners and ZenMiner, under §§ 36b-29(a)(2) and 36b-29(c) of the Connecticut Uniform Securities Act;

5. GAW Miners and ZenMiner committed common-law fraud;

6. Mr. Fraser is liable for aiding and abetting the companies' common-law fraud.

*See* ECF No. 57 at ¶¶ 167-207. If Mr. Fraser is not found liable for any of plaintiffs' claims,[1] the case will be over.

**2. Damages phase.** In the event the jury finds Mr. Fraser liable, the trial should proceed to a damages phase in which the same jury would decide two discrete questions of fact. Those questions are:

i. Putting aside credit card chargebacks and any other "offsets," have plaintiffs proved the aggregate amounts of (1) purchases of GAW Miners securities and (2) withdrawals made by class members from ZenCloud accounts? If so, what are those amounts?

ii. What was the actual value of GAW Miners securities during the class period?

Question (i) relates to the class's aggregate damages. In one of plaintiffs' damages models, aggregate damages (*i.e.*, the entire class's total overall damages) correspond, as a general matter, to the aggregate amount of <u>purchases</u> of the relevant ZenCloud securities minus the aggregate value of <u>withdrawals</u> from class members' ZenCloud accounts and any offsets that the Court deems appropriate (for simplicity, "purchases," "withdrawals," and "offsets"). *See* ECF No. 214 at 591-97 (Expert Report of Robert Mills ¶¶ 68-84).[2] To answer Question (i), the jury would hear

---

[1] Defendants GAW Miners and ZenMiner have defaulted. *See* ECF No. 65; ECF No. 71.

[2] This simplifies the model somewhat. For example, plaintiffs' aggregate damages calculations are based only on ZenCloud accounts where purchases exceed withdrawals. *See*

evidence from both parties' experts and from fact witnesses about the source of data regarding purchases and withdrawals (the ZenCloud database), including whether the database is "reliable." *See also* ECF No. 141 at 27-29, 32 n.8 (relating the parties' arguments about the database).

Resolving Question (i) during the class-wide trial would significantly advance the litigation. Aggregate purchases and withdrawals are two of the three main elements in plaintiffs' aggregate damages model. If the jury in the class-wide trial answers "no" to Question (i), then plaintiffs will be unable to prove their damages on an aggregate basis in later damages proceedings. If the jury answers "yes," however, then offsets are the only remaining disputed element of plaintiffs' aggregate damages to be resolved in the damages phase of the case.[3] The significance of offsets in the damages phase of the case will be shaped significantly by the Court's determinations of what offsets are permitted as a matter of law. *See infra* Section III.

If the jury determines the answer to Question (i) is "no" — plaintiffs cannot prove aggregate purchases and withdrawals — it will be asked to answer Question (ii), which concerns the actual value of GAW Miners securities during the class period. Assuming the jury does not find the amount of the aggregate loss, plaintiffs can prove their damages through a formula that

---

ECF No. 214 at 589 (Expert Report of Robert Mills ¶ 66). And for the claims under the Connecticut Uniform Securities Act, plaintiffs are entitled to statutory prejudgment interest. *See* Conn. Gen. Stat. § 36b-29(a).

[3] Although the Court stated in its Order of May 4, 2020 that plaintiffs had not yet articulated a "reasonably accurate method" for the jury to calculate, *e.g.*, the aggregate value of credit card chargebacks, *see* ECF No. 206 at 14, such methods exist. For chargebacks, plaintiffs' expert could, for example, estimate the aggregate value of them by extrapolating from the credit card records of a statistically valid sample of class members, which could be obtained through limited post-verdict discovery. *See, e.g.*, *Long v. Trans World Airlines, Inc.*, 761 F. Supp. 1320, 1323-26 (N.D. Ill. 1991) (approving the use of statistical sampling to establish class-wide damages following the grant of summary judgment to the plaintiff class on liability); *cf.* ECF No. 206 at 3 n.2 (noting that "anecdotal" evidence of chargebacks did not provide "any method [to] . . . determine the proportion of class members who received chargebacks"). Under plaintiffs' proposal, however, this issue does not need to be addressed now, and will become relevant only if plaintiffs prevail on Question (i).

4

would be applied to each class member. *See* ECF No. 206 at 15 (citing *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 248 (E.D.N.Y. 1998) (noting that "utilizing a formula to calculate damages" is one method of calculating damages following a liability verdict in a bifurcated trial)). For two sets of plaintiffs' claims — securities fraud and common-law fraud — the actual value of the security is an ingredient of the damages formula.[4] Plaintiffs contend that the actual value of GAW Miners securities was <u>zero</u> because the securities were not backed by actual cryptocurrency mining activity, or because they served only to obtain other, fraudulent, worthless securities.

B. <u>A bifurcated trial is the most efficient way to proceed.</u>

Plaintiffs' proposal to bifurcate the trial into a liability-only phase and a damages phase addressing discrete, class-wide issues of fact is the best way to avoid resolving unnecessary issues at trial while preserving the ability to efficiently decide common issues of fact through the class action mechanism.

The Court's decision to bifurcate the proceedings was partly based on "the interests of judicial economy." *See* ECF No. 206 at 15. Plaintiffs' proposal on bifurcation advances this same goal. Neither of the two factual Questions (i) or (ii) above will require different answers for different individual plaintiffs. Having the jury resolve them — especially when the Court has deferred the decision of how damages proceedings will be structured, *see id.* at 15-17 — ensures efficient, class-wide resolution of gateway issues the parties will have to litigate in the damages phase, assuming Mr. Fraser is found liable. The proposed bifurcated trial structure gives the parties

---

[4] Economic loss for Section 10(b) claims is generally measured by a plaintiff's out-of-pocket loss, which is the difference "between the price paid and the value of the stock" (*i.e.*, the actual value) when purchased. *Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 38 (2d Cir. 2012) (internal citation and quotation marks omitted). Similarly, a defrauded buyer is entitled under Connecticut law to benefit-of-the-bargain damages, which represent "the difference in value between the actual value of the property and its value had it been as represented." *Crowther v. Guidone*, 441 A.2d 11, 14 (Conn. 1981).

and Court the flexibility — if plaintiffs prevail in the liability phase — to harness the class action device to resolve common questions of fact.

For these reasons, a bifurcated trial (within the larger bifurcation of the case) is the best vehicle for efficient resolution of the parties' issues.

### C. Deciding these issues of fact would not give rise to Seventh Amendment issues in later damages proceedings.

In its May 4, 2020 Order, the Court directed the parties to "address whether trying any such issues during the liability phase raises concerns under the Reexamination Clause of the Seventh Amendment." ECF No. 206 at 17. Here, Reexamination Clause concerns should not prevent the jury in the class-wide trial from deciding the two discrete issues set out above.

Under the Seventh Amendment, "no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law." U.S. Const amend. VII. In practice, this means that "issues may be divided and tried separately, but a given issue may not be tried by different, successive juries." *Blyden v. Mancusi*, 186 F.3d 252, 268 (2d Cir. 1999) (holding that the Reexamination Clause was violated in a civil-rights suit where "both the liability jury and the damages juries were asked to determine whether the same acts constituted 'reprisals'"). But "'different issues can be submitted to different juries as long as they are not presented in a way that causes juror confusion or uncertainty.'" *Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 169 n.13 (2d Cir. 2001) (quoting *Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 36 (E.D.N.Y. 2001)).

The Second Circuit has cautioned, however, that the risk of improper reexamination or jury confusion "calls for sound case management, not [outright] avoidance of" bifurcation. *Robinson*, 267 F.3d at 169 n.13 (citation omitted). A trial court has a number of tools to guard against Reexamination Clause problems, including careful structuring of jury charges and special verdict

6

forms. *See id.*; *Simon*, 200 F.R.D. at 51 ("Procedural safeguards such as the special verdict and carefully crafted jury instructions may enable both this court and transferee courts to present the severed issues to juries in a fashion that is neither 'confusing' nor 'uncertain.'").[5]

Here, the jury's determination of neither aggregate purchases/withdrawals nor the actual value of GAW Miners securities would create a risk of a Seventh Amendment violation in later damages proceedings. The issues to be decided in the two phases of the trial would be distinct and not give rise to any Reexamination Clause issues. And, of course, the same jury would be deciding the issues in both phases. After the trial, the jury's findings on those issues would be "akin to instructions for the second [factfinder] to follow." *See Robinson*, 267 F.3d at 169 n.13 (citation omitted); *Simon*, 200 F.R.D. at 50 ("This special verdict form could then be read to the second set of juries deciding actual compensatory damages for individual class members as binding findings of fact."); *see also* Fed. R. Civ. P. 49(a).[6] A later damages factfinder would be instructed to accept the first jury's findings as binding. And in any event, there would be no need for the jury's findings to be reexamined. For each question, the answer — either (i) aggregate purchases and withdrawals or (ii) actual value — is simply an element (or two elements) of a damages model. The later factfinder would simply incorporate the first jury's finding into the appropriate damages formula. Because there is no risk of the same issue being reexamined by a later jury, and the Court can

---

[5]   *See also* Manual Complex Lit. § 22.755 (4th ed.) (noting that special verdict forms "should clearly distinguish among the possible interpretations of the first jury's findings, to allow later juries to understand and apply those findings").

[6]   "The court may require a jury to return only a special verdict in the form of a special written finding on each issue of fact. The court may do so by: (A) submitting written questions susceptible of a categorical or other brief answer; (B) submitting written forms of the special findings that might properly be made under the pleadings and evidence; or (C) using any other method that the court considers appropriate."

mitigate any risk of confusion by instructing a later factfinder about the first jury's findings, trying these issues to the jury in the class-wide trial will not create Seventh Amendment issues.

    **III.    The Court should decide damages-related issues of law, including issues related to offsets, during or after the damages phase of the class-wide trial.**

In its Order of May 4, 2020, the Court directed the parties to discuss "[w]hat questions should the Court decide as a matter of law during the liability phase of this case" and, for those questions, when the Court should resolve them. *See* ECF No. 206 at 17.

There are several key issues of law relating to damages, including the legal viability of a number of "offsets" to plaintiffs' damages that Mr. Fraser has contended for, that the Court should resolve. But in light of plaintiffs' recommendation that the Court bifurcate the class-wide trial into liability and damages phases, the Court need not resolve these issues prior to the first phase of the trial, but may do so if it prefers. If the jury finds in Mr. Fraser's favor during the liability phase, there will be no need to resolve the parties' disputes of law regarding plaintiffs' damages.

If plaintiffs prevail in the liability phase, the Court should resolve the following legal issues during or at the end of the damages phase of the trial:

- Plaintiffs' position is that under the Connecticut Uniform Securities Act, statutory interest is computed on the "consideration paid" for a security, rather than the "nominal damages" (purchases minus withdrawals) suffered in connection with the security.[7] Mr. Fraser appears to disagree. *See* ECF No. 214 at 235-36 (Expert Rebuttal Report of Bruce Strombom, Ph.D., ¶¶ 53-57).

- Plaintiffs contend that the Connecticut Uniform Securities Act specifies the measure of damages for an injured plaintiff, *see* Conn. Gen. Stat.

---

[7]    *See* Conn. Gen. Stat. § 36b-29(a) (providing that an injured purchaser "may sue either at law or in equity to recover *the consideration paid for the security, together with interest at eight per cent per year from the date of payment*, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security") (emphasis added); *Massachusetts Mut. Life Ins. Co. v. DLJ Mortg. Capital, Inc.*, 251 F. Supp. 3d 333, 336 (D. Mass. 2017) (interpreting a nearly identical provision of Massachusetts law to provide for interest on the "consideration paid").

8

§ 36b-29(a); that reductions (or "offsets") from these damages are appropriate only for "income received" or under other narrow circumstances, *see Randall v. Loftsgaarden*, 478 U.S. 647, 657, 660 (1986); and that Mr. Fraser is seeking "offsets" to plaintiffs' CUSA damages that are not permitted by the statute. *See* ECF No. 198 at 5-6.

- Plaintiffs' position is that a class member's gains in one ZenCloud account or on one transaction should not be used to offset losses in other accounts or on other transactions. *See, e.g.*, *Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*, 315 F. Supp. 2d 666, 680-81 (E.D. Pa. 2004). Mr. Fraser maintains the opposite. *See* ECF No. 179-1 at 24-26.

- Plaintiffs do not believe that any value purportedly obtained by a subset of class members for exchanging Paycoin for Ion (another cryptocurrency) over a year after the fraud was revealed is relevant to class members' damages. *See Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 41 (2d Cir. 2012); *In re Vivendi Universal, S.A. Sec. Litig.*, 123 F. Supp. 3d 424, 440 (S.D.N.Y. 2015). Mr. Fraser disagrees. *See* ECF No. 179-1 at 15-16, 19.

- The parties dispute who bears the burden of proof for establishing chargebacks or other "offsets." *See* ECF No. 210 at 29-30.

While the Court could reserve decision on these questions until subsequent damages proceedings, resolving them sooner will likely aid the Court and parties in structuring those follow-on proceedings; streamline those proceedings; and inform the parties' decisions about resolution of the case.

### IV. Conclusion

For the reasons set out above, plaintiffs request that the Court (i) bifurcate the class-wide trial into a liability phase and a damages phase; (ii) set down for trial the two factual issues described above, in the event that Mr. Fraser is found liable in the first phase of the trial; and (iii) defer consideration of damages-related issues of law until the damages phase of the trial.

DATED: September 25, 2020

Respectfully submitted,

*/s/ Russell F. Rennie*

Russell F. Rennie (*pro hac vice*)
rrennie@susmangodfrey.com
New York Bar No. 5650536
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6022
Tel: (212) 336-8330
Fax: (212) 336-8340

Marc Seltzer (*pro hac vice*)
mseltzer@susmangodfrey.com
California Bar No. 54534
Kathryn Hoek (*pro hac vice*)
khoek@susmangodfrey.com
California Bar No. 219247
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

Seth Ard (*pro hac vice*)
sard@susmangodfrey.com
New York Bar No. 4773982
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6022
Tel: (212) 336-8330
Fax: (212) 336-8340

Edgar Sargent (*pro hac vice*)
esargent@susmangodfrey.com
Washington Bar No. 28283
Susman Godfrey L.L.P.
1201 Third Avenue, Suite 3800
Tel: (202) 516-3880
Fax: (310) 789-3150

Mark P. Kindall (ct13797)
mkindall@ikrlaw.com
Robert A. Izard
rizard@ikrlaw.com
IZARD, KINDALL & RAABE, LLP
29 S. Main St., Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290

*Counsel for Plaintiffs*