UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DENIS MARC AUDET *et al.*, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | Civil Action No. |
| v. | : | 3:16-CV-00940-MPS |
| | : | |
| STUART A. FRASER, GAW MINERS, | : | |
| LLC, and ZENMINER, LLC, (d/b/a/ | : | October 9, 2020 |
| ZEN CLOUD, | : | |
| Defendants. | : | |

**DEFENDANT STUART A. FRASER'S
RESPONSE TO PLAINTIFFS' SEPTEMBER 25, 2020 SUBMISSION**

Defendant Stuart A. Fraser submits this response to Plaintiffs' September 25, 2020 submission (ECF 218), in which Plaintiffs propose that certain damages-related issues be determined prior to the damages phase of this case, including in a new, limited damages trial to immediately follow the liability trial.  The Court should reject Plaintiffs' proposal because:  (1) it seeks to reargue and reverse the Court's finding that Plaintiffs cannot prove aggregate, class-wide damages; (2) it entirely undercuts the judicial economy and cost-saving benefits of the Court-ordered bifurcation of liability and damages in this action, which will disproportionately prejudice Mr. Fraser; and (3) by attempting to slice-and-dice interrelated damages issues, it raises unresolvable Seventh Amendment issues.

## I. THE LIABILITY JURY SHOULD NOT DECIDE PLAINTIFFS' QUESTION ONE.

Plaintiffs propose that, in the event they prevail on liability, the liability jury then hear evidence in an immediately following, class-wide damages trial, and answer two questions.  Plaintiffs' "Question One" would ask the jury to decide the following:

> Putting aside credit card chargebacks and any other "offsets," have plaintiffs proved [by using the ZenCloud database] the aggregate amounts of (1) purchases of GAW Miners securities and (2) withdrawals made by class members from ZenCloud accounts?  If so, what are those amounts?

(ECF 218 at 7.)  The liability jury should not decide Question One in a class-wide damages trial because:  (a) the only stated purpose of answering Question One is to determine aggregate, class-wide damages, which the Court has already rejected; and the proposal (b) offers no value for the subsequent proceedings; (c) raises unresolvable

Reexamination Clause concerns; and (d) frustrates the judicial economy and cost-saving benefits of bifurcation.

### A. Plaintiffs Seek to Reargue and Reverse an Issue the Court Already Decided.

Plaintiffs claim that resolving Question One during the class-wide trial would "significantly advance the litigation" because it would determine whether Plaintiffs are "[]able to prove their damages on an aggregate basis in later damages proceedings." (ECF 218 at 8.) However, the Court already concluded that Plaintiffs cannot prove damages on an aggregate basis, and that an aggregate damages award would unfairly prejudice Mr. Fraser. (*See* ECF 206 at 1 ("there does not appear to be a method by which a jury could determine aggregate damages with reasonable accuracy"); *id.* at 14 ("a jury verdict awarding aggregate damages to the Plaintiffs, is likely to prejudice Fraser").) That is one of the two reasons the Court bifurcated this case into liability and damages phases. (*See id.* at 1.)[1] Thus, Plaintiffs' Question One improperly attempts to reargue and reverse an issue that the Court already decided.[2]

---

1. The other was judicial economy. As discussed below, Plaintiffs' proposal also undercuts that rationale. (*See infra* at I.D.)

2. Plaintiffs similarly reargue that credit-card chargebacks can be determined on an aggregate, class-wide basis by extrapolating from an as-yet-undetermined sample of class members. (ECF 218 at 8 n.3.) Plaintiffs made the same argument at the April 24, 2020 oral argument (*see* ECF 210 at 21:6-22:15); the Court rejected that argument in its May 4 Order. (*See* ECF 206 at 1, 4.) Plaintiffs now belatedly suggest that the parties engage in post-verdict discovery to collect "a statistically valid sample" of credit card reports, so that Plaintiffs' expert can extrapolate credit-card chargebacks on an aggregate basis. (ECF 218 at 8 n.3.) Plaintiffs' argument is too little, too late: post-certification discovery is over, and it demonstrated a dramatic variation in chargeback amounts that does not lend itself to extrapolation. (*See, e.g.*, ECF 179-1 at 9-12.)

B.     **Resolving Question One Would Serve No Useful Purpose.**

Resolution of Question One also serves no useful purpose in advancing this litigation.

<u>First</u>, Plaintiffs acknowledge, and the Court has recognized, that Plaintiffs cannot prove aggregate purchases and withdrawals from the ZenCloud database for all four products at issue: Hashpoints, Paycoin, Hashlets and Hashstakers. Plaintiffs' damages expert conceded in his expert report that his damages analysis "excludes Hashpoints and Paycoin sold by the Companies to members of the class because [he] currently [is] not aware of a methodology that can be used to reliably identify such sales by reference to the databases." (ECF 179-2, Ex. 76 ¶ 36.) As Mr. Fraser previously demonstrated, Plaintiffs' alleged proof of Paycoin purchases from the Companies is limited to a handful of documents relevant to two individual class members only; Plaintiffs point to no admissible evidence of Hashpoint purchases from the Companies. (*See* ECF 191 at 30-31; ECF 198 at 13.)[3] In addition, at oral argument on Mr. Fraser's Motion to Decertify, when the Court asked whether Plaintiffs' counsel had a "sense" of what percentage of Paycoin came about through roll-over transactions from other GAW products, as opposed to "purchasing Paycoin [from] outside," Plaintiffs' counsel conceded that "this analysis has not been done." (*See* ECF 210 at 53:23-54:15.) Consistent with the foregoing, in its May 4 Order, the Court stated that, "Plaintiffs …

---

3. Plaintiffs have brandished a copy of "the private sales tab of a spreadsheet named 'Direct Sales – Carlos00001'," as purported evidence of the sale of Hashpoints to five class members. (*See id*. at 54:17-20; ECF 191-2 ¶ 46) However, Plaintiffs point to nothing that explains what this document purportedly shows or how it was assembled.

3

have not proposed *any* method for calculating aggregate damages for purchases of Paycoin and Hashpoints from GAW," much less a method based on the ZenCloud database. (ECF 206 at 14, n.14 (emphasis added).) Thus, Plaintiffs cannot credibly ask that the jury decide from the ZenCloud database the amount of "aggregate purchases" and "aggregate withdrawals" of all four products at issue in this action.

Second, even with respect to Hashlets and Hashstakers, the jury cannot calculate "aggregate" purchases and withdrawals by reference to the ZenCloud database (or other common evidence) alone. For example, Plaintiffs' damages expert acknowledged at his deposition that a claims administration process would be required to properly exclude from these aggregate purchases and withdrawals accounts held by employees of the Companies. (*See* Miller Decl., Ex. A (Mills Dep. 119:22-125:3).) Nor would these "aggregate" numbers have any value if the Court determines that a class member's gains and losses must be netted across all of his/her ZenCloud accounts, since that calculation cannot be done until the individualized damages phase of this case.

Third, the "aggregate" numbers that Plaintiffs would have the jury determine have no value for the subsequent damages phase. As noted above, the Court previously determined that Plaintiffs cannot prove damages on an aggregate basis, and that an aggregate damages award would unfairly prejudice Mr. Fraser. (*See* ECF 206 at 1 & 14.) Regardless of the precise form of the damages proceedings, it is beyond dispute—and the parties and the Court agreed (*see* ECF 217 at 2-3 & *infra* at n.4)—that, in any damages phase following the liability trial, each potential individual class member would need to come forward and establish his/her net damages during that

4

phase. In short, damages will need to be determined on a bottom-up, individual-by-individual basis.

In light of that, the aggregate numbers Plaintiffs propose to determine would serve no useful purpose. Say, for example, that the jury came up with an aggregate purchase number for Hashlets and Hashstakers of $20 million, and an aggregate withdrawal number of $10 million, for a total of 5,000 class members. Those numbers mean nothing, nor do they help, when potential Class Member # 1 has to come forward and prove her individual purchases of all four products, her individual withdrawals and her individual offsets. It also is entirely possible that the sum of purchases and withdrawals that class members prove on an individual basis would be entirely different from (and significantly less than) any aggregate numbers that a jury may calculate by reference to the ZenCloud database.

Assume further that only 200 class members participate in the damages phase (if there is one) during which offsets will be determined. Then, the aggregate numbers found by the jury for 4,800 class members are additionally pointless because the parties and the Court will not be able to determine the extent of any offsets for that much-larger group. Therefore, the aggregate numbers that Plaintiffs would have the jury determine on a class-wide basis are meaningless.[4]

---

4. To the extent Plaintiffs now propose that the jury decide an aggregate number for purchases and withdrawals in a class-wide trial, and that offsets be deducted later from that aggregate number (*see* ECF 218 at 8), that represents a 180-degree reversal of Plaintiffs' position at oral argument on Fraser's Motion to Decertify. At oral argument, Plaintiffs' counsel confirmed that, in the event the Court ordered bifurcation and a liability trial was followed by a claims process, individual class members' claims would be added to determine the total damages

5

## C.     Resolving Question One Implicates the Reexamination Clause.

Resolving Question One in a class-wide trial also raises unresolvable Reexamination Clause concerns.  Contrary to Plaintiffs' contention (*see* ECF 218 at 11-12), determining the reliability of the ZenCloud database to calculate aggregate purchases and withdrawals, and then determining those aggregate amounts, is not "distinct" and separate from damages issues that a subsequent factfinder will need to examine.  For instance, if the class-wide jury were to answer Question One in Plaintiffs' favor, it would determine that the ZenCloud database is reliable for the calculation of aggregate purchases and withdrawals, and also determine those aggregate amounts. (*See* ECF 218 at 7.)  This would raise Reexamination Clause concerns in the following ways:

- Because the subsequent factfinder has to determine the damages of each individual class member, that factfinder inevitably will revisit the question of whether the ZenCloud database is reliable for determining that individual's purchases and withdrawals (or at least whether the ZenCloud database is more reliable than individual documentation submitted by that individual), and what those amounts are.[5]

- The subsequent factfinder may well also need to reassess the reliability of the database records for other reasons, *e.g.*, if the individual potential class member relies on the database to establish his or her purchases of Paycoin and Hashpoints, eligibility for class membership, or the extent of certain offsets.  In that circumstance, there is no non-prejudicial way to instruct the subsequent jury to treat the same set of records as fool-proof for one purpose but not so for

---

award—rather than coming up with an aggregate number from the database and then determining offsets only on an individual basis.  (*See* ECF 210 at 39:4-43:6.)  Plaintiffs' Question One is the exact opposite of that.

5. As but one example, during limited post-certification discovery, class member John Tuberosi provided an email confirmation for order number 57978 reporting payments of $20,051.90 for his Hashlet Prime purchases; that same order in ZenCloud reports payments of $21,078.90.  (*See* ECF 179-1 at 27; ECF 179-2 at 223.)

6

another purpose. *See Blyden v. Mancusi*, 186 F.3d 252, 268 (2d Cir. 1999) (requiring any subsequent trial to be limited to an issue "so distinct and separable from the others that a trial of it alone may be had without injustice") (*citing Gasoline Prods. Co. v. Champlin Ref. Co.,* 283 U.S. 494, 500 (1931)).

- Assuming *arguendo* that Plaintiffs were entitled to prove aggregate purchases and withdrawals—which they are not—and the Court agrees with Mr. Fraser that each class member's gains and losses across accounts must be netted, then once the information necessary to identify all of the accounts of each potential class member is available in the individualized damages phase, a subsequent jury will effectively re-calculate the very thing that the first jury calculated, *i.e.*, aggregate purchases and withdrawals.

Not surprisingly, the cases Plaintiffs cite involve the separation of liability and damages issues into separate trials to be decided by separate juries. (*See* ECF 218 at 10-11.) Here, however, Plaintiffs' proposal involves an impermissible attempt to separate out interrelated, overlapping damages issues.

    **D.    Plaintiffs' Proposal Is Not Cost-Efficient.**

The Court bifurcated trial into liability and damages phases in part to serve the important purpose of judicial economy. (*See* ECF 206 at 15 ("Bifurcating also serves the interests of judicial economy.").) Plaintiffs' proposal, which converts the class-wide trial into two class-wide trials, with another, as-yet-to-be-determined damages phase to follow, runs contrary to judicial economy and would impose unnecessary expense on Mr. Fraser.

As Plaintiffs acknowledge, answering Question One would require the jury to hear evidence from both parties' experts and from fact witnesses regarding the nature, scope and limitations of the ZenCloud database, as well as the calculation of purchases and withdrawals by class members. (ECF 218 at 7-8.) But the parties' damages experts would likely need to appear again in a subsequent damages phase; Fraser would need

7

to cross-examine (likely the same) fact witnesses in three versus two phases; and evidence regarding the ZenCloud database would need to be revisited in any subsequent damages phase as individual potential class members prove their eligibility as class members and their individual damages. This triplication of effort and resources is particularly unwarranted because resolution of Question One serves no purpose. (*See supra* at I.B.) Moreover, from a practical standpoint, proceeding to a limited damages phase before the same jury immediately following the liability phase would require the parties to complete trial preparation for that damages trial—including filing a joint trial memorandum and motions *in limine*, designating and objecting to evidence, and preparing witnesses—and for the Court to likely resolve those motions and objections, *in advance of the liability phase*, even though such preparation would be entirely unnecessary should Mr. Fraser prevail on liability.

## II.  THE LIABILITY JURY SHOULD NOT DECIDE PLAINTIFFS' QUESTION TWO.

Plaintiffs propose that, in the event the jury in the new, class-wide damages trial answers "no" to Question One, it should then answer Question Two: "What was the actual value of GAW Miners securities during the class period?" (ECF 218 at 7, 8.) For the same reasons of unnecessary replication of effort and expense, and the concomitant waste of judicial and party resources, as discussed above for Question One (*supra* at I.D), the Court should not permit a new, limited damages trial to be inserted between the liability trial and the damages phase in order to answer Question Two. The answer to Question Two is not, as plaintiffs suggest (*see* ECF 218 at 9), simply that the products

8

at issue purportedly had "zero value".  For example, named Plaintiff Michael Pfeiffer purchased Paycoin long after the end of the class period, after Paycoin had fallen below the allegedly promised $20 floor and was shown to be unsupported by a reserve fund.  (*See* ECF 141 at 51.)  Thus, Question Two, like Question One, will require evidence from expert and fact witnesses, who also will likely need to appear in both the liability and damages phases of this case.  Question Two also has limited utility contingent on a number of factors, none of which justifies the unnecessary expense of a separate, class-wide damages mini-trial.  By Plaintiffs' own admission, Question Two is relevant to only one "ingredient" of a proposed damages formula; that formula is relevant to *only* two of Plaintiffs' four claims; and that formula may not be used at all if Plaintiffs prevail on their state statutory claims.  (*See* ECF 218 at 9.)

### III. RESOLVING DAMAGES-RELATED QUESTIONS OF LAW DURING THE CLASS-WIDE TRIAL IS UNNECESSARY AND INEFFICIENT.

The Court's Question 2 asked, "[w]hat questions should the Court decide as a matter of law during the liability phase of this case?"  (ECF 206 at 17.)  Each of the damages-related issues of law identified by Plaintiffs (*see* ECF 218 at 12-13) will need to be resolved by the Court, but only in the event that Plaintiffs prevail on liability; none of them needs to be decided prior to, or during, the class-wide liability trial because none of them relates to any issue of liability.  Nor should they be shoe-horned into the extra, class-wide damages trial proposed by Plaintiffs because that will require the parties to brief these issues prior to or during the liability trial.  This would prove entirely unnecessary in the event that Mr. Fraser wins on liability.  Expediting the briefing and

resolution of these issues of law serves no valid purpose.[6]

## Conclusion

For the reasons set forth in Fraser's September 25, 2020 submission (ECF 217) and above, the Court should maintain its plan to use a simple, bifurcated structure in which the class-wide liability trial is followed, if necessary, by a damages phase.  In advance of that second phase (if one proves necessary), the Court and the parties can devise a procedure to resolve all damages issues, including whether decertification of the class as to damages is appropriate.

Dated:  October 9, 2020

|  |  |
|---|---|
|  | HUGHES HUBBARD & REED LLP |
|  | By:  /s/ *Daniel H. Weiner* |
| David R. Schaefer (ct04334)<br>Sean M. Fisher (ct23087)<br>Brenner, Saltzman & Wallman LLP<br>271 Whitney Avenue<br>New Haven, CT  06511<br>Tel.: (203) 772-2600<br>Fax: (203) 562-2098<br>Email: sfisher@bswlaw.com | Daniel H. Weiner (ct12180)<br>Marc A. Weinstein (*pro hac vice*)<br>Hannah Miller (*pro hac vice*)<br>One Battery Park Plaza<br>New York, NY  10004-1482<br>Tel.: (212) 837-6000<br>Fax: (212) 422-4726<br>Email: daniel.weiner@hugheshubbard.com |
|  | *Attorneys for Defendant Stuart A. Fraser* |

---

6. In the event the Court decides to ask the liability jury to also answer Plaintiffs' Question One—which it should not—the Court will need to decide one of the legal issues raised by Plaintiffs, *i.e.*, whether calculating aggregate damages for each class member requires netting each class member's gains against his/her losses across multiple ZenCloud accounts.  A decision by the Court in Mr. Fraser's favor, *i.e.*, that such netting is appropriate, will further militate against asking a class-wide jury to decide Question One as proposed by Plaintiffs.  Since the information required to net the accounts (*i.e.*, account ownership) will not be available until an individualized damages phase, any aggregate numbers calculated by the liability jury will be meaningless.