UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, and DEAN ALLEN SHINNERS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC (d/b/a ZEN CLOUD),<br><br>Defendants. | Case 3:16-cv-00940<br><br>Hon. Michael P. Shea<br>Courtroom 2<br><br>ECF Case<br><br><u>CLASS ACTION</u><br><br>October 9, 2020<br><br>PLAINTIFFS'  REPLY  BRIEF REGARDING CLASS-WIDE DAMAGES ISSUES |

# TABLE OF CONTENTS

I. Introduction ..........1

II. Plaintiffs' proposal for a bifurcated trial addresses Mr. Fraser's concerns about inefficiency and jury confusion. ..........1

III. Mr. Fraser wrongly discounts the value of having the jury decide issues relating to components of the class's aggregate damages. ..........3

IV. Mr. Fraser's Reexamination Clause objections are conclusory and unfounded. ..........7

V. The Court should address the issues of law raised by plaintiffs during the damages phase of the trial. ..........8

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Acticon AG v. China N. E. Petroleum Holdings Ltd.*,
   692 F.3d 34 (2d Cir. 2012)..................................................................................................6

*Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*,
   315 F. Supp. 2d 666 (E.D. Pa. 2004) ...................................................................................5

*Green v. Occidental Petroleum Corp.*,
   541 F.2d 1335 (9th Cir. 1976) (Sneed, J., concurring) .........................................................6

*Robinson v. Metro-N. Commuter R.R. Co.*,
   267 F.3d 147 (2d Cir. 2001)..................................................................................................8

*Simon v. Philip Morris Inc.*,
   200 F.R.D. 21 (E.D.N.Y. 2001)............................................................................................8

**I.      Introduction**

Mr. Fraser's supplemental brief regarding class-wide damages issues consists of variations on the theme of "no" — no, the jury should not decide any class-wide damages issues during the trial; no, the jury should *especially* not decide any factual issues relating to the ZenCloud database; and no, the Court should not decide any damages-related questions of law during the trial. According to Mr. Fraser, doing so would risk wasting the time and resources of the parties, Court, and jury, and would be of only limited use to the parties. *See* ECF No. 217.

But plaintiffs' proposal for a bifurcated trial responds to each of Mr. Fraser's points. Beginning with a liability-only phase guards against waste and potential juror confusion. *See id.* at 4-5. And rather than being "of limited utility at best," resolving major elements of plaintiffs' aggregate damages during the class-wide trial could move the case forward significantly, *see id.* at 6-8, and would not raise the Reexamination Clause issues that Mr. Fraser generically asserts. For these reasons, the Court should disregard Mr. Fraser's hypothetical objections to resolving damages issues during the class-wide trial and adopt the plan for a bifurcated trial set out in plaintiffs' opening brief. *See* ECF No. 218.

**II.     Plaintiffs' proposal for a bifurcated trial addresses Mr. Fraser's concerns about inefficiency and jury confusion.**

Mr. Fraser's primary concern about having the class-wide jury address damages issue is inefficiency: if he prevails on the question of liability, "trying any damages-related issues in the liability phase will waste the jurors' time and judicial and party resources" and "impose a substantial, additional trial expense on the parties." ECF No. 217 at 5.

Plaintiffs propose to bifurcate the trial, which fully addresses these risks and aligns with

1

the Court's stated rationales for bifurcating the case.[1]  In the first phase of the trial, the jury and parties can focus only on the discrete issues of the fraud and Mr. Fraser's responsibility for it.  As explained in plaintiffs' opening brief, "[i]f Mr. Fraser is not found liable for any of plaintiffs' claims" during the liability phase of the trial, "the case will be over."  ECF No. 218 at 3 (footnote omitted).  In that case, the jury will not have to hear evidence about damages, including expert testimony regarding the ZenCloud database, nor will there be a risk of "overlapping witnesses and other evidence."  *See* ECF No. 217 at 5-6 (Mr. Fraser's assertions that trying the reliability of the database "will require presentation of a significant amount of evidence").  A bifurcated trial obviates this issue.

Plaintiffs' proposed trial structure also addresses Mr. Fraser's concern that "[t]he jury will be left wondering why the parties are wasting time on issues unrelated to liability, and confused about how such evidence, and arguments about such evidence, fit into the case presented to it."  ECF No. 217 at 4.  While plaintiffs take a less dim view of jurors' ability to make findings on distinct issues presented in one trial, separating the trial into a liability-only phase and — if appropriate — a follow-on damages phase will also serve to compartmentalize these issues for the jury, allowing it to focus only on liability during the first phase of the trial.[2]

In short, plaintiffs agree that the jury trial should focus first on Mr. Fraser's liability alone.  All of his concerns about the risk of waste and jury confusion during the class-wide trial are mooted, however, by plaintiffs' proposal for a bifurcated trial.

---

[1] *See* ECF No. 206 at 15 (explaining why bifurcation of the case "serves the interests of judicial economy").

[2] If the trial proceeds to a damages phase, the parties and Court have tools available to provide the "appropriate context" needed for the jury to "make factual determinations on issues related solely to the damages phase of the case."  ECF No. 217 at 4.

2

### III.    Mr. Fraser wrongly discounts the value of having the jury decide issues relating to components of the class's aggregate damages.

Where the parties differ is in whether a jury — either the same that rendered the liability verdict or a different one — should decide any damages questions if Mr. Fraser is found liable. Assuming he is, plaintiffs propose that the jury answer the following questions in a follow-on damages phase:

> Putting aside credit card chargebacks and any other "offsets," have plaintiffs proved the aggregate amounts of (1) purchases of GAW Miners securities and (2) withdrawals made by class members from ZenCloud accounts?  If so, what are those amounts?

*See* ECF No. 218 at 7.  According to Mr. Fraser, however, there is "little point" in having the jury answer such questions[3] because "the ZenCloud database cannot be used to calculate damages on a class-wide basis" and the jury's findings would therefore be "of limited utility at best" or would be used only "for very limited purposes."  ECF No. 217 at 7-8.

Mr. Fraser is wrong.  His objections rest on the mistaken premise that if the jury in the class-wide trial cannot render an aggregate damages award, the only possible use of the ZenCloud database would be as "one source of information for a fact-finder" to determine individual class members' damages during the damages phase of the case.  *See id.* at 7.  But as plaintiffs explained in their opening brief, the jury could also decide whether plaintiffs can establish — using the ZenCloud database — several major components of their aggregate damages.  Specifically, the jury can determine whether plaintiffs are able to prove the aggregate value of purchases and withdrawals from ZenCloud accounts and, if so, make specific findings as to what those amounts

---

[3]   Mr. Fraser addressed the question specifically posed in the Court's Order of May 4, 2020: "For example, should the reliability of the ZenCloud database be determined by the jury?"  ECF No. 206 at 17.  His objections to the jury deciding that question apply equally, however, to the jury questions proposed by plaintiffs in their opening brief.  *See* ECF No. 218 at 7.

3

are. Having the jury decide these issues during the class-wide trial would materially advance the litigation: if the jury answers "yes" and makes findings regarding aggregate purchases and withdrawals, then two major components of plaintiffs' aggregate damages will have been resolved, leaving only whatever offsets the Court deems appropriate to be resolved during the post-trial damages phase. *See* ECF No. 218 at 8.[4]  Far from there being "little point" to having the jury decide these questions, doing so would resolve major elements of plaintiffs' damages on a class-wide basis.

Mr. Fraser insists that plaintiffs "cannot use the ZenCloud database to prove class-wide damages because that database does not contain records of the relevant sets of transactions." ECF No. 217 at 6. But proving aggregate damages is not an either/or proposition; it is not the case that if plaintiffs cannot prove every element of aggregate damages using *exclusively* the ZenCloud database, it cannot be done at all. To the contrary, there are reasonably accurate methods for developing estimates of chargebacks and other offsets without resorting to the ZenCloud database, which could be used in conjunction with the jury's findings on aggregate purchases and withdrawals to establish a bottom-line aggregate damages number.

For example, plaintiffs can use investor records and other uniform documentation to generate estimates of aggregate offsets. *See* ECF No. 218 at 8 & n.3 (describing a method whereby

---

[4]  Mr. Fraser asserts that "[w]hile the precise form of the damages phase remained uncertain, the parties reached consensus that, in *any* damages phase following the liability trial, each potential individual class member would *need* to come forward and establish his/her net damages during that phase." ECF No. 217 at 3 & n.2 (emphasis added). Plaintiffs agreed that individualized damages proceedings were *one* way to structure a bifurcated case, but not that they were the *only* way. *See, e.g.*, ECF No. 210 at 38:22-25 ("If the liability trial were to be followed by some type of claims administration process, however that would look. Your Honor listed a number of options for structuring it. We think that's a permissible way to proceed."); *id.* at 43:12-14 ("If we have, you know, end up following a liability finding where the jury decides on some formula, that is one way of proceeding through a claims process.").

4

"plaintiffs' expert could . . . estimate the aggregate value of [credit card chargebacks] by extrapolating from the credit card records of a statistically valid sample of class members, which could be obtained through limited post-verdict discovery"); *cf. also* ECF No. 210 at 23:24-25 (Court referring to "extrapolat[ing]" offsets across the class and using expert evidence to "to come up with an estimate, perhaps a range"). This is true of reseller sales as well, especially given the objectively small number of resellers the parties have identified to date. *See* ECF No. 206 at 5 (noting that plaintiffs "have identified six active resellers under the VAR program"). Aggregate data relating to their resales, if legally relevant, could be ascertained during the post-trial damages phase.

Of course, other "transactions" referred to by Mr. Fraser may never come into play. *See* ECF No. 218 at 7 ("sales of Paycoin are not reflected in the [ZenCloud] database"). As plaintiffs set out in their opening brief, the significance of offsets in the damages phase of the case will be shaped by the Court's determinations regarding what offsets are permissible as a matter of law. *See* ECF No. 218 at 8, 12-13. If the Court agrees that it is not appropriate to offset a class member's losses from fraudulent securities with unrelated gains on sales of other securities (here, Paycoin), *see id.* at 13, then the fact that the ZenCloud database does not record Paycoin sales will be immaterial.[5] *See Argent Classic Convertible Arbitrage Fund L.P. v. Rite Aid Corp.*, 315 F. Supp.

---

[5] Mr. Fraser renews his argument that plaintiffs cannot use the database to establish purchases of Paycoin and Hashpoints. Plaintiffs note that at oral argument, counsel identified evidence of aggregate purchases of Hashpoints based on other, non-ZenCloud records. *See* ECF No. 191-36; ECF No. 210 at 54:17-55:13. In any event, if plaintiffs cannot establish these purchases, it will simply mean that their aggregate damages will be lower. *See* ECF No. 179-2 at 575 (Expert Report of Robert Mils ¶ 36) ("[T]o the extent that the Companies sold Hashpoints or Paycoin to members of the class, my analysis is conservative in the sense that it understates purchases of relevant products.").

2d 666, 681 (E.D. Pa. 2004) ("It would be inequitable to deprive [the plaintiff] of any recovery [from a loss due to fraudulent securities] because his purchase and sale of 50 *different* shares happened to be profitable."); *see also Acticon AG v. China N. E. Petroleum Holdings Ltd.*, 692 F.3d 34, 41 (2d Cir. 2012) (holding that it is inappropriate to "credit an unrelated gain against the plaintiff's recovery for the inflated purchase price" of a fraudulent security).[6] Likewise, whether ownership of GAW Miners securities actually passed between class members engaging in private transfers of accounts, or creates an offset, raises more class-wide, common questions. Finally, as plaintiffs have stressed, *see* ECF No. 218 at 8 n.3, these questions would need to be addressed only if Mr. Fraser is found liable and only if the jury agrees that plaintiffs can prove aggregate purchases and withdrawals using the ZenCloud database.

Having the jury decide these discrete factual questions during the damages phase of the trial would permit the parties to resolve major, class-wide damages issues once and only once. Trying these questions to the same jury will also be efficient: the jury will already be empaneled and would benefit, during the damages phase, from familiarity with the parties and issues it gained during the liability phase. Limiting the jury to answering only liability questions and no more before proceeding to an as-yet-undecided damages phase would sacrifice the benefits of resolving aggregate purchases and withdrawals at an early juncture and unnecessarily foreclose avenues for plaintiffs to prove their damages. These issues can and should be resolved by the class-wide jury in the damages phase of the first trial.

---

[6] *See also Green v. Occidental Petroleum Corp.*, 541 F.2d 1335, 1346 & n.10 (9th Cir. 1976) (Sneed, J., concurring) (observing that investment gains "not due to market forces related to the misrepresentation" should "belong to the purchaser for the same reason that imposes upon him investment losses which are unrelated to the misrepresentation").

Even if the Court disagrees with plaintiffs regarding whether the jury should make findings on the class's aggregate purchases and withdrawals, a jury should still decide whether the ZenCloud database is "reliable" for purposes of resolving any disputes concerning individualized damages claims. As plaintiffs have argued and Mr. Fraser acknowledges, *see* ECF No. 217 at 7, the database could serve as a useful source of information about class members' purchases and withdrawals in individualized damages proceedings — but only if the parties' dispute over its integrity is resolved. Because this factual question applies to each and every class member, it makes sense for a class-wide jury to decide it once and only once.

Finally, the jury should decide other class-wide factual issues during the damages phase of the class-wide trial. In the event that the jury is not permitted to make findings on aggregate purchases or withdrawals, or that it finds plaintiffs have failed to prove those aggregate amounts, the jury should be asked to decide the actual value of the securities during the class period. *See* ECF No. 218 at 8-9. Having the jury decide elements of a damages formula during the trial would efficiently resolve this issue for all class members and simplify whatever damages proceedings the parties and Court settle on following the trial.

**IV.    Mr. Fraser's Reexamination Clause objections are conclusory and unfounded.**

In his brief, Mr. Fraser states categorically — without any further analysis — that "there are no discrete, factual damages-related issues that can be extricated from an overall determination of damages by a later jury so as to be tried in the class-wide liability phase without implicating the Reexamination Clause." ECF No. 217 at 5.

That is not the case. As plaintiffs' opening brief explains, both of the discrete factual issues plaintiffs have identified — (i) aggregate purchases/withdrawals and (ii) the actual value of GAW Miners securities during the class period — could be tried by the jury during the damages phase of the class-wide trial, if any; would not need to be re-examined by a later jury or factfinder; and

7

would not cause "juror confusion or uncertainty" should a second factfinder need to incorporate the findings of the first jury into its determinations. *See Robinson v. Metro-N. Commuter R.R. Co.*, 267 F.3d 147, 169 n.13 (2d Cir. 2001) (quoting *Simon v. Philip Morris Inc.*, 200 F.R.D. 21, 36 (E.D.N.Y. 2001)); *see also* ECF No. 218 at 11-12 (explaining why resolution of these issues in a class-wide trial would not create Seventh Amendment issues). In light of plaintiffs' specific analysis demonstrating that their proposal will not raise Reexamination Clause issues, Mr. Fraser's blanket avowals that trying damages issues to the jury will "raise[] concerns" and "implicate[]" the Seventh Amendment should carry no weight. *See* ECF No. 217 at 5.

Moreover, addressing "concerns" about the Seventh Amendment in bifurcated trials "calls for sound case management, not [outright] avoidance of" trying a bifurcated claim to separate juries or factfinders. *Robinson,* 267 F.3d at 169 n.13 (citation omitted). The Court can use any number of case and trial management tools to properly instruct a second jury or factfinder on the appropriate law without permitting or inviting it to reexamine the factual findings of the class-wide jury. *See* ECF No. 218 at 11.

**V.    The Court should address the issues of law raised by plaintiffs during the damages phase of the trial.**

Finally, plaintiffs disagree with Mr. Fraser's claim that "there are no damages-related questions that the Court should decide as a matter of law and on a class-wide basis during the liability phase of this case." ECF No. 217 at 9. For the reasons stated in plaintiffs' brief, the Court should address the five damages issues identified in that brief during the damages phase of the trial. *See* ECF No. 218 at 12-13.

8

DATED: October 9, 2020

Respectfully submitted,

Mark P. Kindall (ct13797)
mkindall@ikrlaw.com
Robert A. Izard
rizard@ikrlaw.com
IZARD, KINDALL & RAABE, LLP
29 S. Main St., Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
Fax: (860) 493-6290

/s/ Russell F. Rennie
Russell F. Rennie (*pro hac vice*)
rrennie@susmangodfrey.com
New York Bar No. 5650536
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6022
Tel: (212) 336-8330
Fax: (212) 336-8340

Marc Seltzer (*pro hac vice*)
mseltzer@susmangodfrey.com
California Bar No. 54534
Kathryn Hoek (*pro hac vice*)
khoek@susmangodfrey.com
California Bar No. 219247
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067
Tel: (310) 789-3100
Fax: (310) 789-3150

Seth Ard (*pro hac vice*)
sard@susmangodfrey.com
New York Bar No. 4773982
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6022
Tel: (212) 336-8330
Fax: (212) 336-8340

Edgar Sargent (*pro hac vice*)
esargent@susmangodfrey.com
Washington Bar No. 28283
Susman Godfrey L.L.P.
1201 Third Avenue, Suite 3800
Tel: (202) 516-3880
Fax: (310) 789-3150

*Counsel for Plaintiffs*