# EXHIBIT P

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, and DEAN ALLEN SHINNERS, individually and on behalf of all others similarly situated,<br><br><div align="center">Plaintiffs,</div><br><div align="center">vs.</div><br>STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC (d/b/a ZEN CLOUD),<br><br><div align="center">Defendants.</div> | Case 3:16-cv-00940<br><br>Hon. Michael P. Shea<br>Courtroom 2<br><br>ECF Case<br><br><u>CLASS ACTION</u><br><br>September 1, 2021 |

**<u>PROPOSED JURY INSTRUCTIONS</u>**

# OVERVIEW AND FORMAT[1]

---

[1] **Defendant:** Defendant makes the following general objections to Plaintiffs' proposed jury instructions.

General Objection No. 1:  Plaintiffs' proposed jury instructions are unfairly prejudicial to Mr. Fraser and will be confusing for the jury because of the sequence of those instructions.  Plaintiffs' instructions first set forth "control person" claims under the Connecticut Uniform Securities Act ("CUSA") and, later, a "control person" claim under Section 20(a) of the Securities Exchange Act ("Exchange Act").  While Plaintiffs can prove "control" under the CUSA in one of three ways—defendant had direct or indirect control over the primary violator; was a partner, officer or director of the primary violator; or occupied a similar status or performed similar functions, CUSA § 36b-29(c) —Plaintiffs can only prove "control" under the Exchange Act in one way:  direct or indirect control over the primary violator, 15 U.S.C. § 78t(a).  If the Court first instructs the jury on the CUSA's much more expansive definition of "control," and then on a substantially narrower one, that will be confusing to the jury.  It also will be unfairly prejudicial to Mr. Fraser because, by the time the jurors hear the Section 20(a) jury instructions, they will have in their minds a much broader definition of "control."  Plaintiffs' jury instructions also alternate between various "control person" and aiding and abetting claims.  This will be confusing for the jury as well.  FRE 403.

Therefore, Mr. Fraser requests that the Court instruct the jury on Plaintiffs' claims generally in the order that Plaintiffs assert their claims in the First Amended Complaint:  (1) control person liability under Section 20(a) of the Securities Exchange Act; (2) control person liability under Section 36b-29(c) of the CUSA; (3) aiding and abetting fraud in the sale of securities in violation of Section 36b-29(a)(2) of the CUSA; and (4) aiding and abetting common law fraud.  In the First Amended Complaint, Plaintiffs assert the CUSA aiding and abetting fraud in the sale of securities claim first, followed by the CUSA control person liability claim.  Mr. Fraser's proposal—switching the order of these two claims for purposes of the jury charge and the verdict form—will be easier for the jury so that the jurors may deal with all control person claims first and then move to the aiding and abetting claims.

**Plaintiffs' Response:** Defendant's arguments about the supposed prejudice to Defendant arising from the sequence of claims could be made with equal force by Plaintiffs—that first instructing the jury on the "substantially narrower" definition of control under the Exchange Act, then on the "much more expansive" definition under the CUSA, will be "confusing to the jury" and "unfairly prejudicial to [Plaintiffs] because, by the time the jurors hear the [CUSA] jury instructions, they will have in their minds a much [narrower] definition of 'control.'"  Ultimately, there are two separate standards for control at issue, and the jury will necessarily need to be instructed on one before the other.  Under Plaintiffs' proposed sequencing, the jury will be instructed on the securities-related claims with fewer elements first (the CUSA claims), then on the securities-related claim with the most elements and subparts (the Section 20(a) claim), which sequence will aid the jurors' understanding of the different securities-related claims.  Additionally, with regard to Defendant's argument that Plaintiffs "alternate" confusingly between claims, Plaintiffs' proposed sequencing logically separates the two "control person" claims under CUSA, Conn. Gen. Stat. § 36b-29(c), because those two claims are based on distinct underlying violations of the

The parties' proposed jury instructions are the only content in the body of the document (*i.e.*, above the line).  Objections to proposed instructions are in footnotes; the parties' responses to objections immediately follow.  For example, Plaintiffs' response to a given objection by Defendant immediately follows Defendant's objection within the same footnote, and vice-versa.  For ease of reading, Plaintiffs' objections are highlighted blue, and Defendant's objections are highlighted gray.  Similarly, the titles of instructions proposed by Plaintiffs are highlighted blue and the titles of instructions proposed by Defendant, gray.

For some instructions, the parties have proposed alternative instructions.  For others, where the parties disagree over only a portion of an instruction, the parties have included a **[Plaintiffs]** and **[Defendant]** section within that instruction.  In the **[Defendant]** section, all of the supporting authority is not repeated if it duplicates the authority in the **[Plaintiffs]** section or in the objections footnoted in that section.  For formatting reasons, some footnotes contain only the word "**[OMITTED]**" where the parties have resolved a disputed instruction.

---

CUSA (one for the sale of unregistered securities, the other for fraud in the offer or sale of securities, *id.* 36b-29(a)(2)).

General Objection No. 2:  Plaintiffs' proposed jury instructions are unnecessarily long, repetitive and cumulative.  FRE 403.  This unnecessary repetition is likely also to cause confusion, with the same claims or elements described in different ways in different sections of the charge.  FRE 403.  The unnecessary repetition of how Plaintiffs might prove Mr. Fraser's liability for the same claim, is also unfairly prejudicial to Mr. Fraser.  FRE 403.

**Plaintiffs' Response:** Plaintiffs dispute Defendant's unspecified objection to their proposed instructions.  This case involves several claims arising under various provisions of federal and state statutory and common law, and necessarily requires instructions that clearly explain the elements of these claims to the jury.  Repetition and signposting will aid the jury in differentiating between the claims and their elements, not confuse them.  Moreover, Defendant fails to specify how instructing the jury regarding any particular claim will be "unfairly prejudicial" to him.

**Plaintiffs' Proposed Jury Instruction No.      — Overview of Claims**[2]

Plaintiffs in this case are a group of people who purchased or acquired certain products from GAW Miners, LLC and ZenMiner, LLC during a particular time period.  Together, Plaintiffs are proceeding as a "class" against the defendants in this action.  I will explain more about what a class action is in a moment.[3]

There are three defendants in this case.  Two of the defendants are companies, GAW Miners, LLC, and ZenMiner, LLC, which I will refer to as "GAW Miners" and "ZenMiner," and sometimes refer to together as "the Companies."  The third defendant is an individual, Stuart A. Fraser.  I will refer to him as "Mr. Fraser."[4]

---

[2] Mr. Fraser proposes an alternative jury instruction that incorporates some of Plaintiffs' proposed instructions.  *See* Mr. Fraser's Proposed Jury Instruction No. __ —Overview of Claims.

[3] **Defendant**:  Plaintiffs' proposed instruction does not describe the class in this action, including, the persons and entities included in the class definition, the products at issue, the class period, and the class representatives.  Without all of this information upfront, an overview of Plaintiffs' claims will be confusing for the jury, and also unfairly prejudicial to Mr. Fraser.  FRE 403.  The district court in *In re Vivendi Universal, S.A. Sec. Litig.*, the source Plaintiffs cite (*see infra* note 17), also instructed the jury on this information at the outset.  *See In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH), ECF 1043-2 at 27 of 48.  Plaintiffs' instruction is also vague.  The scope of the class and the products involved should be set forth clearly and unambiguously the first time those are referenced.

**Plaintiffs' Response:** Plaintiffs describe the class in their proposed instruction that immediately follows this one. Defendant does not specify (1) how the jurors will be confused by learning this information after they hear an overview of the claims; or (2) how, precisely, it will be "unfairly prejudicial" to Defendant for jurors to learn these pieces of information in Plaintiffs' proposed sequence.

[4] **Defendant**: The Court should not instruct the jury that there are three "defendants."  There is only one defendant appearing at this trial, Mr. Fraser, and Plaintiffs propose that the Court ask the jury to return a verdict only as to Mr. Fraser.  In such a circumstance, instructing the jury that there are other defendants or that those defendants have defaulted is unnecessary and will be confusing for the jury.  It is also unfairly prejudicial to Mr. Fraser since it might improperly suggest to the jury that, if found liable to Plaintiffs, Mr. Fraser will be responsible only for a portion of any potential damages.  FRE 403.  Apportionment of liability is available to Mr. Fraser only on Plaintiffs' Section 20(a) claims (to the extent Plaintiffs prevail on it); Plaintiffs other claims involve joint and several liability.  Instructing the jury that the other defendants in this have

The Companies have defaulted, which means that they have not appeared in this lawsuit to defend themselves. Accordingly, this trial concerns Plaintiffs' claims against Mr. Fraser, and your task as a jury is to consider whether Mr. Fraser is liable to Plaintiffs for the claims against him. However, as I will explain to you, whether Mr. Fraser is liable to Plaintiffs depends partly on whether GAW Miners and ZenMiner violated the law, and for that reason, my instructions to you will reference the alleged conduct of GAW Miners and ZenMiner, even though I am not asking you to return a verdict as to the Companies—only as to Mr. Fraser.

You will be determining the liability of Mr. Fraser, but not the amount of damages that he owes to Plaintiffs, if you find that Mr. Fraser is liable. If necessary, damages will be determined at a later stage of this case. For that reason, you do not need to determine the amount of damages or loss suffered by Plaintiffs.[5]

---

defaulted is also unfairly prejudicial to Mr. Fraser because it creates the risk that the jury will attribute that failure to the only appearing "co-defendant" in this case. Plaintiffs have not provided any reason why it is *necessary* for the jury to be told that there are other "defendants" or that those "defendants" have defaulted. Plaintiffs note in their response that it is important to instruct the jury on the other defendants so as to provide the jury context for why they only need to return a verdict against Mr. Fraser. However, the jury will not need that "context" if it is instructed that Mr. Fraser is the only defendant at this trial. (For this reason, we have also deleted all references in Plaintiffs' proposed instructions to the Companies as "defendants.")

**Plaintiffs' Response**: Contrary to Defendant's assertion, it will be confusing to the jury to fail to provide complete information about the parties in the case and necessary context for why the jurors are being instructed only to return a verdict as to Mr. Fraser. Providing this context clearly and at the outset will forestall the very kind of speculation by jurors that Defendant predicts. Nor will instructing the jurors that the Companies have defaulted suggest that Mr. Fraser would, if liable, be responsible for only a portion of any damages. Any potential prejudice could be cured by instructing the jury that it should not consider damages in rendering its verdict. (Moreover, Plaintiffs note that Defendant's claim of prejudice is inconsistent with its intent to argue at trial that Mr. Fraser is "responsible only for a portion of any potential damages" with respect to Plaintiffs' Exchange Act claim.)

[5] **Defendant**: The Court should not instruct the jury regarding damages. (1) That is unnecessary and will be confusing for the jury since the jury will not be asked to calculate damages. (2) In addition, this paragraph, as worded, suggests that Mr. Fraser is in fact liable to Plaintiffs (*e.g.*,

I will now briefly summarize Plaintiffs' claims. Later, for each and every claim, I will explain to you what the elements of the claim are that Plaintiffs must prove in order for you to find that Mr. Fraser is liable. Now, the summary: Plaintiffs bring four claims against Mr. Fraser under three different sets of laws: one federal securities statute, one Connecticut securities statute, and the common law of Connecticut. Generally speaking, Plaintiffs allege, first, that the Companies violated each of these laws. These are called "primary" violations. Second, Plaintiffs allege that Mr. Fraser is "secondarily" liable to Plaintiffs for the Companies' primary violations of the laws because of his position of authority or control over the Companies, or because of the assistance he provided to the Companies in aid of their primary violations of the law.[6]

---

"[y]ou will be determining the liability of Mr. Fraser"), and damages are anticipated (*e.g.*, "you do not need to determine the amount of damages or loss suffered by Plaintiffs"), which is unfairly prejudicial to Mr. Fraser. FRE 403.

**Plaintiffs' Response:** Explaining to the jurors that they will not be determining damages— something they reasonably might expect to do as part of rendering a verdict—will serve to dispel potential confusion, not create it. *SEC v. Kwak*, No. 3:04-cv-01331-JCH (D. Conn. Feb. 26, 2009), ECF No. 500 (instructions to jury) at 32 ("*Unlike in many civil actions, in this case you are not being asked to render a determination on damages*. Instead, your sole task as jurors is to consider whether or not the SEC has proven all of the elements of its claims. In the event you find that it has proven the elements of one or more of its claims, it is the court's responsibility to determine the appropriate sanction. In considering whether Mr. Kwak committed a particular violation, you should therefore not consider what sanction I might impose." (emphasis added)). With regard to Defendant's claim that the proposed instruction suggests Mr. Fraser is liable, that is incorrect: it clearly states that damages will be determined only "if you find that Mr. Fraser is liable" and "i[f] necessary." These clear, conditional statements do not "suggest[] that Mr. Fraser is liable."

[6] **Defendant**: (1) The statement, "… I will explain to you what the elements of the claim are that Plaintiffs must prove *in order for you to find that Mr. Fraser is liable*" (emphasis supplied) is leading, thus unfairly prejudicial to Mr. Fraser. FRE 403. If the Court uses this instruction from Plaintiffs rather than Mr. Fraser's alternative instruction, an acceptable formulation would be: "**I will explain to you what the elements of the claim are that Plaintiffs must prove in order for you to determine whether Mr. Fraser is liable to Plaintiffs**." (2) Plaintiffs refer to Mr. Fraser's alleged liability predicated on "his position of authority," but the "control person" liability statutes at issue do not discuss secondary liability in terms of "position of authority," (*see* 15 U.S.C. § 78t(a)(covering "[e]very person who, directly or indirectly, controls any person liable under any

Plaintiffs' claims can be divided into four categories: (1) an unregistered securities claim, (2) securities fraud under Connecticut law; (3) federal securities fraud; and (4) common-law fraud.[7]

---

provision of this chapter or of any rule or regulation thereunder …"); Conn. Gen. Stat. § 36b-29(c) (covering "[e]very person who directly or indirectly controls a person liable under subsections (a) and (b) of this section, every partner, officer or director of such a person, every person occupying a similar status or performing similar functions…").) and the aiding and abetting claims are based on material assistance rather than a defendant's purported position; in addition, the term is unfairly prejudicial, over-expansive and confusing.  FRE 403.  (3) This paragraph is unfairly prejudicial because it summarizes Plaintiffs' allegations, but not Mr. Fraser's position.  FRE 403.

**Plaintiffs' Response:** Regarding Defendant's objection (2), as Defendant acknowledges, under the CUSA a person may be secondarily liable by virtue of his role as a "partner, officer or director" of a primary violator—in other words, based on his "position of authority" within the primary violator.  Conn. Gen. Stat. § 36b-29(c).  This proposed instruction is meant to provide an overview of Plaintiffs' claims in straightforward terms.  Because the jury will be instructed on the precise elements required for control person liability, there is no risk of prejudice in summarizing Plaintiffs' control person claims in this fashion in a preliminary instruction.  Regarding objection (3), Plaintiffs are not opposed to the inclusion of a summary of Defendant's "position."

**Defendant's Response:**  Plaintiffs assert in their response that "there is no risk of prejudice in summarizing Plaintiffs' control person claims in this fashion in a preliminary instruction" because "the jury will be instructed on the precise elements required for control person liability."  However, this point highlights the danger of including detailed, paraphrased "summaries" of Plaintiffs' claims, rather than just instructing the jury on each of those claims in the claim-by-claim section of the charge.  Moreover, Mr. Fraser disagrees that it is appropriate to use confusing and potentially misleading terminology in an instruction because the instruction only provides a "preliminary" summary of the claim.

[7] **Defendant**: Mr. Fraser objects to the entirety of the remaining paragraphs.  The summary descriptions of Plaintiffs' claims are unnecessarily cumulative of the preceding paragraph and other, detailed instructions included later in the proposed charge.  This unnecessary repetition is likely to cause confusion for the jury, with the same claims described in different ways in different sections of the charge.  These summaries are also misleading because they gloss over the elements required to prove each claim, creating the danger of leaving the jury with an oversimplified view of what evidence is required to prove Plaintiffs' claims against Mr. Fraser.  FRE 403.  Mr. Fraser does not object to providing the jury with a *brief* roadmap; Plaintiffs' proposed instructions are not that.

**Plaintiffs' Response:** This summary is a necessary roadmap for the jurors to understand, at the outset, the nature of the claims asserted.  Contrary to Defendant's assertion, these paragraphs are not "cumulative" of the preceding paragraph, which provides no explanation of the nature of Plaintiffs' claims.  Additionally, Defendant does not explain how this "repetition" is "likely to

Unregistered securities claim: Plaintiffs allege that the Companies violated the Connecticut

Uniform Securities Act by offering or selling securities in Connecticut that were not registered

with the state of Connecticut.  As to Mr. Fraser, Plaintiffs allege that he is liable for the Companies'

offer or sale of unregistered securities as a "control person" of the Companies.  In other words,

plaintiffs allege that Mr. Fraser is liable for the Companies' violations due to his level of

involvement with the Companies, which I will explain in more detail later. Collectively, I will

refer to this claim as the "unregistered securities" claim.[8]

Securities fraud under Connecticut law: Plaintiffs also allege that the Companies violated

the Connecticut Uniform Securities Act for offering or selling a security by means of an untrue

---

cause confusion."  To the contrary, it is likely to assist the jurors by giving them an overview of the detailed instructions that are to follow, including useful shorthand names for Plaintiffs' claims. *See, e.g.*, *SEC v. Wyly*, No. 10-cv-7560 (SAS) (S.D.N.Y. May 7, 2014), Tr. at 3238-40 (instructions to jury) (summarizing the four claims brought by the SEC before proceeding to an element-by-element instruction on each one).

[8] **Defendant:** In this paragraph, Plaintiffs state:  "In other words, plaintiffs allege that Mr. Fraser is liable for the Companies' violations due to his level of involvement with the Companies, which I will explain in more detail later."  This statement is unnecessarily cumulative of the preceding sentence ("As to Mr. Fraser, the plaintiffs allege that he is liable for the Companies' offer or sale of unregistered securities as a "control person" of the Companies"), and includes the vague and potentially confusing reference to "level of involvement."  FRE 403.  The relevant statute does not use this terminology. *See* Conn. Gen. Stat. § 36b-29(c) (covering "[e]very person who directly or indirectly controls a person liable under subsections (a) and (b) of this section, every partner, officer or director of such a person, every person occupying a similar status or performing similar functions…").

**Plaintiffs' Response**: As stated *supra* note 7, this proposed instruction is meant to provide an overview of Plaintiffs' claims in straightforward terms.  Because the jury will be instructed on the precise elements required for control person liability, there is no risk of prejudice in summarizing Plaintiffs' control person claims in this fashion in a preliminary instruction.  Moreover, not every variation or formulation is "potentially confusing" because it does not mirror the statute.  The proposed instruction is an accurate summary of Plaintiffs' control person claims.

**Defendant's Response:**  Mr. Fraser disagrees that it is appropriate to use confusing and potentially misleading terminology in an instruction because the instruction provides only a "preliminary" summary of the claim.

statement of fact, or an omission to state a material fact.  As shorthand, I will refer to this claim as the "Connecticut securities fraud" claim.   Plaintiffs allege that Mr. Fraser is liable for the Companies' Connecticut securities fraud violations for two separate reasons: first, that he was a "control person" under the Connecticut Uniform Securities Act, which I just discussed in connection with the unregistered securities claims; and second, because he materially assisted the Companies in the alleged securities fraud.[9]

Securities fraud under federal law: Third, Plaintiffs allege that the Companies committed securities fraud under federal securities fraud law, which prohibits (1) employing a device, scheme, or artifice to defraud; (2) making an untrue statement of a material fact or omitting to state a material fact, which made what was said, under the circumstances, misleading; or (3) engaging in a fraudulent act, practice, or course of business.  As to Mr. Fraser, Plaintiffs allege that he is liable for the Companies' violations of federal securities fraud law because he exercised control over the Companies and culpably participated in the allegedly fraudulent conduct.  This fourth claim I will refer to as the "federal securities fraud" claim.

Common-law fraud:  Finally, Plaintiffs allege that the Companies committed fraud under the common law of Connecticut.  To distinguish between this claim and the various securities fraud claims, I will refer to this claim as the "common-law fraud" claim.  Regarding Mr. Fraser, Plaintiffs assert that he is liable for aiding and abetting the Companies' fraud.

---

[9] **[OMITTED]**

**Mr. Fraser's Proposed Jury Instruction No. ___ —Overview of Claims**[10]

This case is a class action.  A class action is a lawsuit in which claims of many potential plaintiffs are litigated together.

The class in this case consists of persons and entities who purchased or acquired the cryptocurrency-related products called "Hashlets", "Hashpoints", "Paycoin" or "Hashstakers" from GAW Miners, LLC and/or ZenMiner, LLC between August 1, 2014 and January 19, 2015. These persons and entities are known as class members or Plaintiffs, and the August 1, 2014 to January 19, 2015 timeframe is known as the "Class Period."[11]

Three of the Plaintiffs are known as "Lead Plaintiffs."  They are Dean Allen Shinners, Denis Marc Audet and Michael Pfeiffer.  They are the named Plaintiffs in this class action; they bring this case on behalf of themselves and all other class members.

There is one defendant in this case, Stuart A. Fraser.  I will refer to him as "Mr. Fraser."[12] This trial concerns Plaintiffs' claims against Mr. Fraser, and your task as a jury is to consider whether Mr. Fraser is liable to Plaintiffs for their claims against him.  However, as I will explain to you, whether Mr. Fraser is liable to Plaintiffs depends partly on whether two companies, GAW

---

[10] **Plaintiffs**: Plaintiffs propose an alternative jury instruction.  *See* Plaintiffs' Proposed Jury Instruction No. ___ —Overview of Claims.

[11] ECF 144 (July 7, 2019 Order Correcting Class Definition) ("All persons or entities who, between August 1, 2014, and January 19, 2015, (1) purchased Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC; or (2) acquired Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC, by converting, upgrading, or exchanging other products sold by GAW Miners, LLC and/or ZenMiner, LLC.").

[12] **Plaintiffs:** This proposed instruction is inaccurate and misleading: GAW Miners and ZenMiner are also defendants "in this case," even though they have defaulted.  Plaintiffs' alternative proposed instruction accurately describes the parties to this action, while also instructing the jury that its only task is to resolve Plaintiffs' claims against Mr. Fraser.

**Defendant's Response:**  As described *supra* in note 4, the Court should not instruct the jury that there were other defendants in this case who defaulted.

Miners, LLC, and ZenMiner, LLC, violated the law, and for that reason, my instructions to you will reference the alleged conduct of GAW Miners and ZenMiner, even though I am not asking you to return a verdict as to these companies—only as to Mr. Fraser.  I will refer to those two companies as "GAW Miners" and "ZenMiner," and sometimes together as the "Companies."

Plaintiffs assert four claims against Mr. Fraser:  (1) control person liability under Section 20(a) of the Securities Exchange Act; (2) control person liability under Section 36b-29(c) of the Connecticut Uniform Securities Act, which I may refer to as "CUSA";[13] (3) aiding and abetting fraud in the sale of securities in violation of Section 36b-29(a)(2) of the CUSA; and (4) aiding and abetting common law fraud.

Plaintiffs generally allege that the Companies violated certain federal and state laws.  These are referred to as "primary violations."   With regard to Mr. Fraser, Plaintiffs claim that he is "secondarily" liable to Plaintiffs for the Companies' primary violations because he allegedly had control over the Companies, or because he allegedly materially assisted the Companies' fraud.  Mr. Fraser denies these allegations.  Mr. Fraser asserts that he was only a minority investor in the Companies and he did not control the Companies; nor did he participate in, or assist, any fraud

---

[13] **Plaintiffs:** Plaintiffs object to this instruction as incomplete.  Plaintiffs assert two separate claims against Mr. Fraser under CUSA § 36b-29(c): one relating to the Companies' alleged sale of unregistered securities, in violation of § 36b-16; and one relating to the Companies' alleged offer or sale of a security by means of an untrue statement of a material fact, or an omission to state a material fact, in violation of § 36b-29(a)(2).

**Defendant's Response:**  This is a brief overview of the case and instructing the jury on Plaintiffs' different theories under one claim is unnecessary.  The Court will do so in the claim-by-claim instructions.

that Plaintiffs allege the Companies committed.  Rather, he maintains that Homero "Josh" Garza—

who you have heard about during the trial—ran and controlled the Companies.[14]

There are four different products involved in this case:  Hashlets, Hashpoints, Paycoin and

Hashstakers.  I will refer to them individually as a "Product" and together as the "Products."

Plaintiffs must prove each of their claims separately for each of those Products.  Plaintiffs can only

make claims for Hashlets, Hashpoints, Paycoin and Hashstakers that they purchased or acquired

from the Companies during the Class Period—that is, August 1, 2014 to January 19, 2015.[15]

I will now instruct you on each of Plaintiffs' claims.  Each claim has elements that Plaintiffs

must prove.  If Plaintiffs do not satisfy their burden of proof with respect to each element of a

claim, you must find for Mr. Fraser on that claim.  Even if Plaintiffs satisfy their burden of proof

---

[14] **Plaintiffs:** Plaintiffs object to this instruction for two reasons.  First, its characterization of Plaintiffs' control person claims is incomplete.  Plaintiffs assert that Defendant is liable as a "partner, officer or director" of the Companies or as a "person occupying a similar status or performing similar functions" to a partner, officer, or director.  Conn. Gen. Stat. § 36b-29(c).  Accordingly, Defendant's proposed instruction is incomplete and misleading.  Second, the last sentence in Defendant's proposed instruction—in particular, its reference to Mr. Garza, "*who[m] you have heard about during the trial*"—is prejudicial and unnecessary.  The trial concerns Mr. Fraser's liability for the conduct alleged, not Mr. Garza's.  Fed. R. Evid. 403.

**Defendant's Response:**  Regarding Plaintiffs' first objection, each of Plaintiffs' "control person" claims is based on the theory that Mr. Fraser "controlled" the Companies.  That is what Mr. Fraser's proposed instruction describes as part of the overview of the claims.  How that control may be proved differs between the different claims and the Court will instruct the jury as to that detail in the claim-by-claim instructions.  Regarding Plaintiffs' second objection, this is a description of Mr. Fraser's position—Plaintiffs can disagree with that position, just as Mr. Fraser disagrees with their allegations.  Moreover, based on Plaintiffs' own Amended Complaint, Mr. Garza is a primary violator for the very fraud for which Plaintiffs are now trying to hold Mr. Fraser secondarily responsible.  It is unclear how Plaintiffs can deny that or suggest that a reference to Mr. Garza is unfairly prejudicial to them.

[15] **Plaintiffs:**  Plaintiffs object to this instruction as unnecessary.  The jury is not determining which of their claims falls within the class period, a determination that will be made during later damages proceedings if the jury finds Mr. Fraser liable.

on each element of a claim, if Mr. Fraser then satisfies his burden of proof on an affirmative defense to that claim, you must also find in favor of Mr. Fraser.

**Plaintiffs' Proposed Jury Instruction No.      — Class Action**

This case has been brought as a class action.  A class action is a type of proceeding in which an individual person represents all persons or institutions with similar claims.  In this class action, several individual investors in GAW Miners and ZenMiner represent a class of people or entities who purchased or acquired four products—Hashlets, Hashpoints, Paycoin, and HashStakers—from GAW Miners or ZenMiner between August 1, 2014 and January 19, 2015.[16]  Those individual investors are the plaintiffs in this case.[17]

---

[16] Adapted from jury instructions given in *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH), Tr. at 7510:4-7510:9.

[17] **Defendant**: Mr. Fraser proposes an alternative jury instruction.  *See supra* Mr. Fraser's Proposed Jury Instruction No. __—Overview of Claims.

(1) As noted above, the Court should instruct the jury on the nature of a "class action," and the scope of the class in this case as part of the introduction to the claims.  Not including this information upfront, before explaining Plaintiffs' claims, is confusing.  The jury should be told once, clearly and upfront who the plaintiffs are in this case, just like Plaintiffs set forth upfront who the defendant is in this case.  FRE 403.  The district court in *In re Vivendi Universal, S.A. Sec. Litig.*, the source Plaintiffs cite, also instructed the jury on this information at the outset. *See In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH), ECF 1043-2 at 27 of 48.  (2) The proposed instruction is confusing in its reference to "an individual" representative.  This case has three class representatives.  (3) Neither Plaintiffs' Proposed Jury Instruction No. __—Overview of Claims, nor this instruction identifies who are the class representatives.  Those are the parties prosecuting the claims against Mr. Fraser at this trial, and for the sake of completeness, clarity and fairness, they must be identified.

**Plaintiffs' Response:** Defendant does not explain why providing an instruction about class treatment of Plaintiffs' claims after providing an overview of the claims is "likely to create confusion."  The jury will be fully capable of understanding the instructions in their proposed sequence without undue risk of confusion.

**Proposed Jury Instruction No. ___ —Definition of "Security"**

Three of Plaintiffs' claims against Mr. Fraser are only applicable in connection with the purchase or sale of "securities."  Therefore, before you look at whether Plaintiffs satisfied their burden of proof on those three claims, you must first determine whether Plaintiffs have proven that the four Products at issue are "securities."

Plaintiffs allege that Hashlets, Hashpoints, Paycoin and Hashstakers are "investment contracts."[18]  An "investment contract" is a type of security.  To establish that a Product is an "investment contract," Plaintiffs must prove by a preponderance of the evidence each of the following with regard to that specific Product—that there was:

(1) an investment of money;

(2) in a common enterprise;

**[Plaintiffs]** (3) with profits to be derived from the managerial or entrepreneurial efforts of others.

**[Defendant]** (3) with profits to be derived solely from the efforts of others.[19]

---

[18] First Amended Complaint ("FAC") (ECF 57) ¶¶ 168, 180, 193.

[19] *See SEC v. Aqua-Sonic Prod. Corp.*, 687 F.2d 577, 582 (2d Cir. 1982) (holding that the Supreme Court's inclusion of the word "solely" in this element of the *Howey* test should not be taken "literally" and summarizing the inquiry as "whether, under all the circumstances, the scheme was being promoted primarily as an investment or as a means whereby participants could pool their own activities, their money and the promoter's contribution in a meaningful way"); *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 852 (1975) ("The touchstone is the presence of an investment in a common venture premised on a reasonable expectation of profits *to be derived from the entrepreneurial or managerial efforts of others*.") (emphasis added).

**Defendant:**  Mr. Fraser objects to Plaintiffs' formulation of the third element for proving an "investment contract."  The seminal case on this issue, *S.E.C. v. W.J. Howey Co.*, sets forth the test for an investment contract as follows:  "The test is whether the scheme involves an investment of money in a common enterprise with profits to come **solely from the efforts of others**."  328 U.S. 293, 301 (1946) (emphasis added); *see also id.* at 298-99 ("an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits **solely from the efforts of the**

14

[**Plaintiffs' instruction on common enterprise**] For the second element, common enterprise, Plaintiffs may prove this element in two ways. First, Plaintiff may prove that with respect to a specific Product, each buyer's fortunes were tied to the fortunes of the other buyers by the pooling of their assets, usually combined with the pro-rata distribution of profits, *i.e.*, distribution proportionate to the buyer's investment.[20]   Second, Plaintiffs may prove a common enterprise by showing, with respect to a specific Product, that each buyer's fortunes were tied to the fortunes of GAW Miners and ZenMiner, or in other words, that the fortunes of the buyers and the Companies are linked so that they rise and fall together.[21]

---

**promoter or a third party**.") (emphasis supplied).  Contrary to Plaintiff's formulation of this third element, the Second Circuit has not simply done away with either the terminology or the concept of profits coming "solely" from the efforts of others.  Rather, it has instructed that the term not be taken "literally" (not that it should be entirely dropped), and that in assessing the third element, it be "consider[ed] whether, under all the circumstances, the scheme was being promoted primarily as an investment or as a means whereby participants could pool their own activities, their money and the promoter's contribution in a meaningful way." *S. E. C. v. Aqua-Sonic Prod. Corp.*, 687 F.2d 577, 582 (2d Cir. 1982); *see also Revak v. SEC Realty Corp.*, 18 F.3d 81, 87 (2d Cir. 1994) (continuing to use the "solely" language:  "The three elements of the *Howey* test must all be present for [the] contract to constitute a security: (i) an investment of money (ii) in a common enterprise (iii) with profits to be derived solely from the efforts of others.").  Simply excising the term "solely" from the definition of an investment contract is contrary to the *Howey* test and Second Circuit precedent and would unfairly suggest to the jury that any type of effort is sufficient to satisfy the third element.  That is not the case.  Thus, the proper approach is to instruct the jury on what the *Howey* test actually states ("with profits to come solely from the efforts of others"), and then explain how courts have described that language.  Mr. Fraser has proposed that language above for the third element.

[20] *Revak v. SEC Realty Corp.*, 18 F.3d 81, 87 (2d Cir. 1994) ("A common enterprise within the meaning of *Howey* can be established by a showing of 'horizontal commonality': the tying of each individual investor's fortunes to the fortunes of the other investors by the pooling of assets, usually combined with the pro-rata distribution of profits.").

[21] *See In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 360 (S.D.N.Y. 2011) (noting that "courts in this district have held that strict vertical commonality (like horizontal commonality) is sufficient to establish a common enterprise under *Howey*," and collecting cases); *Alvord v. Shearson Hayden Stone, Inc.*, 485 F. Supp. 848, 853 (D. Conn. 1980) (holding that allegations establishing vertical commonality were sufficient to plead that the instruments at issue were investment contracts under *Howey*).

[**Defendant's instruction on common enterprise**]  For the second element, common enterprise, Plaintiffs must prove that with respect to a specific Product, each individual buyer's fortunes were tied to the fortunes of the other buyers by the pooling of their assets, usually

---

**Defendant**:  The Court should only instruct the jury on the "horizontal commonality" test for a "common enterprise" (fortunes of the buyers are linked) and not the "strict vertical commonality" test (fortunes of the buyers are tied to the fortune of the promoter) because the Second Circuit has only ever adopted the former test and not the latter.  *See Revak v. SEC Realty Corp.*, 18 F.3d 81, 88 (2d Cir. 1994) (adopting the horizontal commonality test, and not addressing whether "strict vertical commonality gives rise to a common enterprise"); *In re J.P. Jeanneret Assocs., Inc.*, 769 F. Supp. 2d 340, 360 (S.D.N.Y. 2011) (recognizing that the Second Circuit has not opined on this issue).

It is also notable that the Second Circuit has rejected the only variant of the vertical commonality test it has considered—broad vertical commonality (fortunes of the buyers are tied to the "efforts" of the promoter).  In *Revak*, the Second Circuit rejected that test because it merges "two separate questions posed by Howey—whether a common enterprise exists and whether the investors' profits are to be derived solely from the efforts of others," and, therefore, is inconsistent with the three separate requirements of *Howey*.  18 F.3d 81, 88.  The strict vertical commonality test similarly dilutes the "common enterprise" requirement and conflates it with the "efforts of others" requirement.

Three federal circuits have found strict vertical commonality insufficient.  *See Curran v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 622 F.2d 216, 223–24 (6th Cir. 1980), *aff'd*, 456 U.S. 353 (1982) ("in our view the finding of a vertical common enterprise based solely on the relationship between promoter and investor is inconsistent with *Howey*"); *Stenger v. R.H. Love Galleries, Inc.*, 741 F.2d 144, 146 (7th Cir. 1984) ("This Circuit has strictly adhered to a "horizontal" test of common enterprise, under which multiple investors must pool their investments and receive pro rata profits."); *Salcer v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 682 F.2d 459, 460 (3d Cir. 1982) ("[T]he investment made by [plaintiff] was not a part of a pooled group of funds and thus does not meet the second part of the Howey test.").  The *Curran* court illustrated the concern with diluting the commonality-between-buyers by citing to a district court decision, which appropriately observed, in the context of a discretionary trading account, that, "a finding of a common enterprise based solely upon the fact of entrustment by a single principal of money to an agent effectively excises the common enterprise requirement of *Howey*.  The test would simply require (1) the investment of capital (2) with the expectation of profit through the efforts of others, for nothing more is involved in a single discretionary trading account."  *Id*. (quoting *Berman v. Bache, Halsey, Stuart, Shields, Inc.*, 467 F. Supp. 311, 319 (S.D. Ohio 1979)).

While some district courts in the Second Circuit have relied on the strict vertical commonality test, it is notable that the one District of Connecticut case Plaintiffs cite predates *Revak*, the case in which the Second Circuit refused to address the strict vertical commonality test.

combined with the pro-rata distribution of profits, *i.e.*, distribution proportionate to the buyer's investment. In other words, the fortunes of the buyers are linked so that they rise and fall together.

**[Defendant]** For the third element, that profits be derived solely from the efforts of others, "solely" should not be taken literally, rather, you should consider, whether, under all the circumstances, the product was being promoted primarily as an investment, in which case it might be an investment contract, or as a means whereby participants could pool their activities, money and the promoter's contribution in a meaningful way, in which case, it would not be an investment contract. (*See supra* note 19)

Whether a product is an "investment contract" depends on what the buyers are objectively offered.[22]

In describing some of Plaintiffs' claims, I will refer to "securities," for example, to prove such-and-such claim, Plaintiffs must prove that the Companies made an untrue statement of a material fact in connection with the offer or sale of securities. This does not mean that I am telling you that the Products at issue are "securities." Whether a product is a "security" or not is one of the questions of fact you must decide based on the instructions and the evidence you have heard.

---

[22] *See Warfield v. Alaniz*, 569 F.3d 1015, 1021 (9th Cir. 2009) ("Under *Howey*, courts conduct an objective inquiry into the character of the instrument or transaction offered based on what the purchasers were 'led to expect.'") (citing *Howey*, 328 U.S. 293 at 298-99)).

**Mr. Fraser's Proposed Jury Instruction No.     —Currency Exclusion**[23]

---

[23] **Plaintiffs:**  This instruction from Defendant is both legally incorrect and unnecessary. First, there is no currency "exception" in 15 U.S.C. § 78c(a)(10). That provision simply defines "security" to mean "any note, stock, treasury stock, security future, security-based swap, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is likewise limited." 15 U.S.C. § 78c(a)(10). Second, if a product satisfies the *Howey* test, as delineated in these instructions, it is by definition an "investment contract"—and therefore a security—and not a currency. *See, e.g., Balestra v. ATBCOIN LLC,* 380 F. Supp. 3d 340, 357 n.15 (S.D.N.Y. 2019) (rejecting defendants' attempt to characterize a cryptocurrency as a "currency" that is "'exempted' from the definition of a security under the federal securities laws" because "whether a digital asset qualifies as an 'investment contract'—and hence, a 'security'—under the Securities Act is determined by the *Howey* test"). There is no such thing under § 78c(a)(10) or *Howey* as a product that *is* an investment contract but is *not* a security because it is also a currency, and thus, no "currency' instruction is required. However, should the Court wish to include an instruction regarding "currency," Plaintiffs have drafted an alternative instruction. *See* Plaintiffs' Proposed Jury Instruction No. __ —Currency Exclusion.

**Defendant's Response:**  (1) The plain language of 15 U.S.C. § 78c(a)(10) requires a currency exclusion for securities. The statute states that a security can be one of many things, including a note, stock, "investment contract," *etc.*, *but* "shall not include currency…"  This means that even if a product meets the requirements of an "investment contract," if it is a currency, it cannot be a security.  *See* 15 U.S.C. § 78c(a)(10) ("**The term 'security' means any** note, stock, treasury stock, security future, security-based swap, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, **investment contract**, voting-trust certificate, certificate of deposit for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a "security"; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; **but shall not include currency** or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive

18

Even if a Product meets the definition of an "investment contract," it may not constitute a "security" if an exception applies.  One such exception under federal law is for a "currency."  A currency is not a security.[24]

---

of days of grace, or any renewal thereof the maturity of which is likewise limited.") (emphasis supplied).

(2) Plaintiffs' reliance on *Balestra* is unfounded.  The court in *Balestra* did not foreclose the possibility that a digital asset, like Bitcoin, could be a currency.  Rather it dismissed the idea that a defendant could escape the *Howey* test simply by labeling a "cryptocurrency" as a "currency." *Balestra v. ATBCOIN LLC*, 380 F. Supp. 3d 340, 357 n.15 (S.D.N.Y. 2019) ("As discussed above, whether a digital asset qualifies as an 'investment contract'—and hence, a 'security'—under the Securities Act is determined by the *Howey* test. *See Zaslavskiy*, 2018 WL 4346339, at *7 ('[Defendant] overlooks the fact that simply labeling an investment opportunity as 'virtual currency' or 'cryptocurrency' does not transform an investment contract—a security—into a currency.').  Moreover, although the parties have not briefed the issue, there appear to be important distinctions between Bitcoin and ATB Coin, including, among other things, the fact that Bitcoins were not issued through an ICO.").

[24] *See* 15 U.S.C. § 78c (10) (definition of "security": "security" does "not include currency …").

**Plaintiffs' Proposed Jury Instruction No.    —Currency Exclusion**[25]

Under federal securities law, but not Connecticut securities law, a currency is not a security. With respect to Plaintiffs' federal securities fraud claim only, Mr. Fraser alleges that Paycoin is not a security—*i.e.*, not an investment of money in a commercial, financial, or other business enterprise, with the expectation of profit or other gain produced by the efforts of others—because it is a currency. Simply labeling an investment opportunity as "virtual currency" or "cryptocurrency" does not transform an investment contract—a security—into a currency.[26] If Paycoin satisfies the definition that I just gave you for a security, then it is a security under federal law for the purposes of Plaintiffs' federal securities fraud claim. If it does not, it is not a security for purposes of that particular claim.

---

[25] Plaintiffs oppose a "currency" instruction at all for the reasons stated previously, *see supra* note 23, but propose this alternative instruction should the Court wish to include one.

[26] *Balestra*, 380 F. Supp. 3d at 357 n.15 (quoting *United States v. Zaslavskiy*, No. 17 CR 647 (RJD), 2018 WL 4346339, at *7 (E.D.N.Y. Sept. 11, 2018)); *see also S.E.C. v. Edwards*, 540 U.S. 389, 393 (2004) ("Congress' purpose in enacting the securities laws was to regulate investments, in whatever form they are made and *by whatever name they are called*." (emphasis added)).

**Defendant's Response:**  (1) Plaintiffs' paraphrasing of the *Howey* test is inaccurate and should not be used.  (2) The statement, "Simply labeling an investment opportunity as "virtual currency" or "cryptocurrency" does not transform an investment contract—a security—into a currency," is unfairly prejudicial because it suggests that the Companies or Mr. Fraser intentionally mislabeled something.  Moreover, this instruction is unnecessary because "currency" is a term that a lay person can understand.  (3) The instruction that "If Paycoin satisfies the definition that I just gave you for a security, then it is a security under federal law for the purposes of Plaintiffs' federal securities fraud claim. If it does not, it is not a security for purposes of that particular claim," is an incorrect statement of the law.  *See* n. 23 (Defendant's Response (1)).

**Specific Instructions**

| I. | **Control Person Liability Pursuant to Section 36b-29(c) of the Connecticut Uniform Securities Act for the Sale of Unregistered Securities** |
|----|---|

Proposed Jury Instruction No. ___ [27]

**[Plaintiffs]** First, I will instruct you on Plaintiffs' unregistered securities claim.  Plaintiffs allege that Defendants GAW Miners and ZenMiner violated the Connecticut Uniform Securities Act by offering or selling unregistered securities.  Specifically, Plaintiffs assert that GAW Miners and ZenMiner offered and sold four types of securities—Hashlets, Hashstakers, Hashpoints, and Paycoin—which were not registered under the provisions of the Connecticut Uniform Securities Act.[28]

Plaintiffs allege that Mr. Fraser is liable under Section 36b-29(c) of the Connecticut Uniform Securities Act for the Companies' offer or sale of unregistered securities because he was a "control person" of the Companies.

---

[27] **Defendant**: Mr. Fraser generally objects to Plaintiffs' Proposed Jury Instruction No.   — Unregistered Securities Claim, including Paragraph 1, as unnecessarily repetitive, and likely to create confusion for the jury as a result.  FRE 403.  Unnecessarily restating Plaintiffs' allegations or how Mr. Fraser's liability might be proved is also unfairly prejudicial to Mr. Fraser.  FRE 403.  In addition, Plaintiffs' proposed instruction, as written, assumes that the Products are securities. FRE 403.

**Plaintiffs' Response:** As stated *supra* note 1, this case involves multiple claims arising under various provisions of federal and state statutory and common law, with non-overlapping sets of elements. Accordingly, charging the jury will necessarily requires instructions that clearly explain the elements of these claims to the jury.  Repetition and signposting will aid the jury in differentiating between the claims and their elements, not confuse them.  For that reason, re-stating Plaintiffs' claims is neither unnecessary nor prejudicial.  Rather than repeat Plaintiffs' response to Defendant's largely identical objections to what it claims are "unnecessarily repetitive" instructions each time Defendant makes one, Plaintiffs will cite to this footnote.

[28] **Defendant**: Plaintiffs' statement regarding "four types of securities" is confusing and unfairly prejudicial.

**Plaintiffs' Response:** Defendant does not explain what is "confusing and unfairly prejudicial" about Plaintiffs' formulation of the products at issue.

To prevail on their "control person" claim against Mr. Fraser, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

> (1) First, Plaintiffs must prove that GAW Miners and ZenMiner offered or sold unregistered securities in violation of Section 36b-16 of the Connecticut Uniform Securities Act.[29]
>
> (2) Second, Plaintiffs must prove one of the following three things:
>
>> i.  Mr. Fraser directly or indirectly controlled GAW Miners and ZenMiner; or
>>
>> ii. Mr. Fraser was a partner, officer, or director of GAW Miners and ZenMiner; or;

Mr. Fraser occupied a similar status to a partner, officer, or director of GAW Miners and ZenMiner, or that he performed similar functions to a partner, officer, or director of GAW Miners and ZenMiner.[30] [31]

**[Defendant]**  First, I will instruct you on Plaintiffs' unregistered securities claim.  Plaintiffs allege that GAW Miners and ZenMiner violated the Connecticut Uniform Securities Act by offering or selling four products—Hashlets, Hashstakers, Hashpoints, and Paycoin—that Plaintiff

---

[29] Conn. Gen. Stat. § 36b-29(c).

[30] Conn Gen. Stat. § 36b-29(c); *Audet v. Fraser*, 2017 WL 4542386, at *10.

[31] **Defendant**: Since this Paragraph provides a summary of the elements, and to avoid unnecessary repetition, the detailed description of how "control" may be proved is better reserved for later in the charge.

**Plaintiffs' Response**: Plaintiffs' proposed instruction restates the elements of CUSA § 36b-29(c) as briefly as possible without paraphrasing or substituting a less accurate summary of the statutory provision.  Defendant does not propose a less "detailed" instruction that accurately states the law. *See supra* note 27.

claim to be unregistered securities under the provisions of the Connecticut Uniform Securities Act.[32]

Plaintiffs allege that Mr. Fraser is liable under Section 36b-29(c) of the Connecticut Uniform Securities Act for the Companies' offer or sale of unregistered securities because he was a "control person" of the Companies.

To prevail on their "control person" claim against Mr. Fraser, Plaintiffs must prove each of the following elements by a preponderance of the evidence:

(1) <u>First</u>, Plaintiffs must prove that GAW Miners and ZenMiner offered or sold unregistered securities in violation of Section 36b-16 of the Connecticut Uniform Securities Act.[33]

(2) <u>Second</u>, Plaintiffs must prove that Mr. Fraser controlled GAW Miners and ZenMiner.[34]

---

[32] **[OMITTED]**

[33] Conn. Gen. Stat. § 36b-29(c).

[34] Conn Gen. Stat. § 36b-29(c); *Audet v. Fraser*, 2017 WL 4542386, at *10.

### First Element
#### (*Primary Violation*)

[**Plaintiffs**] With respect to the first element, Section 36b-16 of the Connecticut Uniform Securities Act makes it unlawful for a person to offer or sell a security in this state unless the security has been registered under the appropriate provisions of the Act.[35]

Plaintiffs allege that GAW Miners and ZenMiner violated the Connecticut Uniform Securities Act by offering or selling four types of securities—Hashlets, HashStakers, Hashpoints, and Paycoin—which plaintiffs allege were not registered under the provisions of the Connecticut Uniform Securities Act.[36]

To establish this first element of their unregistered securities claim against Mr. Fraser, Plaintiffs must prove each of the following two sub-elements by a preponderance of the evidence[37]:

> (1) First, Plaintiffs must prove that GAW Miners and ZenMiner offered or sold at least one of the securities at issue in this state.

> (2) Second, Plaintiffs must prove that any such security was not registered under the Connecticut Uniform Securities Act.[38] Registering a security under the Connecticut

---

[35] Conn. Gen. Stat. § 36b-16.

[36] **Defendant**: This paragraph is unnecessarily cumulative of other portions of this set of instructions, such as Paragraph 1 ("The plaintiffs allege that Defendants GAW Miners and ZenMiner violated the Connecticut Uniform Securities Act by offering or selling unregistered securities. Specifically, the plaintiffs assert that GAW Miners and ZenMiner offered and sold four types of securities—Hashlets, Hashstakers, Hashpoints, and Paycoin—which were not registered under the provisions of the Connecticut Uniform Securities Act."). FRE 403. It should be deleted. Mr. Fraser repeats his objections regarding the phrase "four types of securities."

**Plaintiffs' Response:** *See supra* note 27.

[37] **[OMITTED]**

[38] Conn. Gen. Stat. §§ 36b-16, 36b-29(a); *State v. Andresen*, 256 Conn. 313, 333 (2001) ("A conviction under § 36b–16 requires proof that the defendant (1) sold or offered a security in this state, and (2) that the security is not registered under §§ 36b–2 through 36b–33, inclusive."); *cf.*

24

Uniform Securities Act requires a prospective securities issuer to file certain documents, including a document called a "registration statement" for the security, with the Connecticut Department of Banking.[39]

[**Defendant**] With respect to the first element, Section 36b-16 of the Connecticut Uniform Securities Act makes it unlawful for a person to offer or sell a security in this state unless the security has been registered under the appropriate provisions of the Act.

Plaintiffs allege that GAW Miners and ZenMiner violated the Connecticut Uniform Securities Act by offering or selling four types of securities—Hashlets, HashStakers, Hashpoints, and Paycoin—which plaintiffs allege were not registered under the provisions of the Connecticut Uniform Securities Act.

_____

*Moerman v. Zipco, Inc.*, 302 F. Supp. 439, 450 (E.D.N.Y. 1969) ("The only facts necessary to establish liability under the Connecticut statute are that stock was sold, and that it was not registered."), *aff'd*, 422 F.2d 871 (2d Cir. 1970), *adhered to on reh'g*, 430 F.2d 362 (2d Cir. 1970).

[39] Conn. Gen. Stat. § 36b-17 (prescribing procedure for registering a security "by coordination," including the form and content of the registration statement); *id.* § 36b-18 (prescribing procedure for registering a security "by qualification," including the form and content of the registration statement); *Andresen*, 256 Conn. 313, 320-21 (relating a company's attempts to file registration statements for its securities with the state Department of Banking); *Securities Registration, Exemption and Notice Filings*, State of Connecticut Department of Banking, https://portal.ct.gov/DOB/Corporate-Finance/General/Securities-Registration-Exemption-and-Notice-Filing-Information.

**Defendant**: This instruction is confusing and misleading. The two sub-elements, as worded, suggest that Plaintiffs can prove their unregistered securities claim against Mr. Fraser as to all four Products as long as they prove it for one Product. FRE 403.

**Plaintiffs' Response:** The proposed instruction does not suggest that this element is satisfied as to all four products at issue if Plaintiffs prove it with respect to one of the products.  As drafted, the two sub-elements refer to "at least one" security sold in the state and whether "any such" security was not registered under the CUSA.

25

To establish this first element of their unregistered securities claim against Mr. Fraser, Plaintiffs must prove each of the following two sub-elements by a preponderance of the evidence:

(1) First, Plaintiffs must prove that GAW Miners and ZenMiner offered or sold a security in this state.

(2) Second, Plaintiffs must prove this security was required to be, but was not registered under the Connecticut Uniform Securities Act.[40] Registering a security under the Connecticut Uniform Securities Act requires a prospective securities issuer to file certain documents, including a document called a "registration statement" for the security, with the Connecticut Department of Banking.[41]

Plaintiffs must prove these two sub-elements for each Product separately.

---

[40] Conn. Gen. Stat. §§ 36b-16, 36b-29(a); *State v. Andresen*, 256 Conn. 313, 333 (2001) ("A conviction under § 36b–16 requires proof that the defendant (1) sold or offered a security in this state, and (2) that the security is not registered under §§ 36b–2 through 36b–33, inclusive."); *cf. Moerman v. Zipco, Inc.*, 302 F. Supp. 439, 450 (E.D.N.Y. 1969) ("The only facts necessary to establish liability under the Connecticut statute are that stock was sold, and that it was not registered."), *aff'd*, 422 F.2d 871 (2d Cir. 1970), *adhered to on reh'g*, 430 F.2d 362 (2d Cir. 1970).

[41] Conn. Gen. Stat. § 36b-17 (prescribing procedure for registering a security "by coordination," including the form and content of the registration statement); *id.* § 36b-18 (prescribing procedure for registering a security "by qualification," including the form and content of the registration statement); *Andresen*, 256 Conn. 313, 320-21 (relating a company's attempts to file registration statements for its securities with the state Department of Banking); *Securities Registration, Exemption and Notice Filings*, State of Connecticut Department of Banking, https://portal.ct.gov/DOB/Corporate-Finance/General/Securities-Registration-Exemption-and-Notice-Filing-Information.

**Defendant**: This instruction is confusing and misleading. The two sub-elements, as worded, suggest that Plaintiffs can prove their unregistered securities claim against Mr. Fraser as to all four Products as long as they prove it for one Product. FRE 403.

**Plaintiffs' Response:** The proposed instruction does not suggest that this element is satisfied as to all four products at issue if Plaintiffs prove it with respect to one of the products.  As drafted, the two sub-elements refer to "at least one" security sold in the state and whether "any such" security was not registered under the CUSA.

## Second Element[42]
### *(Control)*

Regarding the second element of Plaintiffs' unregistered securities claim against Mr. Fraser, Plaintiffs must establish that Mr. Fraser was a control person of GAW Miners and ZenMiner through any one of the three ways described in the Connecticut Uniform Securities Act. In other words, if you find that Plaintiffs have proven that Mr. Fraser was a control person according to any one of the following three measures of control, then this second element is satisfied. Next, I will explain each of those three ways in more detail.[43]

---

[42] Mr. Fraser proposes an alternative jury instruction.  *See* Mr. Fraser's Proposed Jury Instruction No. __—Second Element (Control).

[43] **Defendant:** Mr. Fraser objects to this paragraph as unnecessarily repetitive.  FRE 403.
**Plaintiffs' Response:** *See supra* note 27.

**Mr. Fraser's Proposed Instruction No.     —Second Element (Control)**

To prove the second element of Plaintiffs' unregistered securities claim, Plaintiffs must prove that Mr. Fraser was a "control person" of GAW Miners and ZenMiner, as that term is defined under the Connecticut Uniform Securities Act.  To do so, Plaintiffs must prove by a preponderance of the evidence, any one of the following:

(1) Mr. Fraser directly or indirectly controlled GAW Miners and ZenMiner;

(2) Mr. Fraser was an officer or director of GAW Miners and ZenMiner; or

(3) Mr. Fraser occupied a similar status or performed similar functions as an officer or director of GAW Miners and ZenMiner.[44] [45]

---

[44] CUSA § 36b-29(c) ("Every person who directly or indirectly controls a person liable under subsections (a) and (b) of this section, every partner, officer or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the act or transaction constituting the violation and every broker-dealer or agent who materially aids in the act or transaction constituting the violation are also liable jointly and severally with and to the same extent as such person, unless the person who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There shall be contribution as in cases of contract among the several persons so liable.").

[45] **Plaintiffs**: Defendant's proposed instruction is an incomplete and inaccurate statement of the law.  CUSA § 36b-29(c) covers "every *partner*, officer or director" of a primary violator and every person who "occupies a status or performs functions similar to the status and function of *a partner*, officer, or director."  *Connecticut Nat. Bank v. Giacomi*, 242 Conn. 17, 58 (1997) (emphasis added).  Defendant cites no authority for his position that "partner" refers only to a person with an interest in a partnership.  Regardless, even assuming Defendant were correct that Mr. Fraser could not be a "partner" in GAW Miners or ZenMiner because they are LLCs, it does not follow that the jury could not find that he "occupies a status or performs functions similar to the status and function of a partner," and it would therefore be erroneous to omit "partner" from the third category of control persons in this instruction.  Because of the risk of confusion and prejudice that would result from omitting "partner" from the second category but including it in the third, the jury should simply be instructed consistent with the statutory language (*i.e.*, with the word "partner" included in both categories), and Defendant may make his argument to the jury.

I will now instruct you on each of these ways to prove "control person" liability under the

Connecticut Uniform Securities Act.

---

**Defendant's Response:**  The Court should not instruct the jury that Plaintiffs may prove CUSA control person liability against Mr. Fraser by proving that he was a "partner" of GAW Miners and ZenMiner.  It is undisputed that the Companies were not partnerships; thus Mr. Fraser could not have held the title of "partner."  *See* FAC ¶¶ 19, 20 (alleging that the Companies were limited liability companies).  In addition, since the Companies were not partnerships and thus nobody at the Companies could have been a "partner", to prevent jury confusion the Court should also omit from the instruction the possibility of a control person holding a similar status or performing similar functions as a "partner" of the Companies.

**Second Element**

(*Control—"Directly or Indirectly Controlled"*)[46]

First, Plaintiffs may establish that Mr. Fraser was a control person of GAW Miners and ZenMiner by proving that he directly or indirectly controlled GAW Miners and ZenMiner. Control means the power to direct or cause the direction of the management and policies of GAW Miners and ZenMiner, whether through ownership of voting securities, by contract, or otherwise.[47] For example, control may include indirect means of discipline or influence over GAW Miners and ZenMiner or their management; the ability to exert influence over the decision making process, strategic decisions, and daily operations of GAW Miners and ZenMiner; ownership of a controlling interest in GAW Miners and ZenMiner; financial leverage or control over the Companies through lending arrangements or other means; and personal relationships between Mr. Fraser and people with positions of authority or control at GAW Miners and ZenMiner.[48] These are just examples of factors that bear on the issue of control. Ultimately, whether Mr. Fraser exercised control over GAW Miners and ZenMiner is a question of fact for you to decide.[49] [50]

---

[46] Mr. Fraser proposes an alternative jury instruction. *See* Mr. Fraser's Proposed Jury Instruction No. __ —Second Element (Control—Directly or Indirectly Controlled).

[47] *Audet v. Fraser*, 2017 WL 4542386, at *6 (defining "control" for purposes of the Securities Exchange Act); *Giacomi*, 242 Conn. at 50 n.37 (looking to analogous provisions of federal securities statutes to construe the Uniform Securities Act); *cf. Lombardo's Ravioli Kitchen, Inc. v. Ryan*, 268 Conn. 222, 233 (2004) (interpreting "control" in tax statute as "[t]he direct or indirect power to direct the management and policies of a person or entity, whether through ownership of voting securities, by contract, or otherwise; the power or authority to manage, direct, or oversee") (citing Black's Law Dictionary (7th ed.1999)).

[48] *SEC v. Portfolio Advisors Alliance, Inc.*, 16-cv-828-KBW (S.D.N.Y. May 14, 2019), ECF No. 299 (instructions to jury) at 122; *Audet v. Fraser*, 2017 WL 4542386, at *6.

[49] *Audet v. Fraser*, 2017 WL 4542386, at *6-7.

[50] **Defendant:** Mr. Fraser objects to this Paragraph starting from the second sentence onwards (starting, "For example . . .."). Plaintiffs' one-sided examples of *some* factors the jury might consider to assess "control" is unfairly prejudicial to Mr. Fraser, likely to confuse the jury, and is

argumentative.  FRE 403; *see also State v. DelVecchio*, 191 Conn. 412, 421 (1983) (recognizing that "the use of examples in jury instructions" can be unfairly prejudicial to a party because 'the jury is likely to give undue weight to examples, since they are easier to comprehend, and it may simply compare the defendant's conduct with the example.'") (omitting internal citation).  This purported attempt to explain what "control" means is likely to confuse more than aid the jury.  *See State v. Ryerson*, 201 Conn. 333, 342 (1986) (regarding the phrase "reasonable doubt," explaining that "attempts to clarify the meaning of the phrase [] by explanation, elaboration or illustration … more often than not tend to confuse or mislead") (omitting citations; ellipses in original).  (2) In addition, Plaintiffs' proposed instruction misleadingly implies that any of these factors singularly might be sufficient to prove control.  In *Audet v. Fraser*, 2017 WL 4542386, at *7 (D. Conn. Oct. 11, 2017), the decision Plaintiffs cite, this Court looked at a multitude of factors together to determine that Plaintiffs had pled control sufficiently to survive a motion to dismiss.

**Plaintiffs' Response:** The cases cited by Defendant relate to the particular difficulties of instructing a jury on the reasonable doubt standard, *see DelVecchio*, 191 Conn. at 421-22, and do not articulate a general rule against the use of examples or factors in jury instructions.  And courts in this Circuit have provided examples of "control" in this circumstance to help juries understand its meaning.  *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH), Tr. at 7525 ("In deciding whether an individual defendant controlled Vivendi, you may consider, among other things, the following factors: Was he an officer, director, or member of the executive committee; how senior an officer was he; did he attend and actively participate in directors' meetings or executive committee meetings . . . . These factors are not exclusive and no one factor is determinative.").  As one of the cases quoted by Defendant observed, "the use of examples in jury instructions serves to clarify the meaning of complex legal terms" and the risk that the jury will give undue weight to examples may be avoided by "clearly indicat[ing] that the examples are only examples."  *People v. Shepherd*, 63 Mich. App. 316, 321 (1975) (quoted in *DelVecchio*, 191 Conn. at 420 n.6).  Plaintiffs' proposed instruction includes a statement to this effect.  ("These are just examples of factors that bear on the issue of control.  Ultimately, whether Mr. Fraser exercised control over GAW Miners and ZenMiner is a question of fact for you to decide.") That statement, moreover, describes the factors cited—which are drawn from this Court's opinion in this case— as "bear[ing] on the issue of control," not as independently or singly sufficient to prove control. As written, the proposed instruction's examples provide helpful context to the jury while minimizing the risk that the jury will place undue weight on them.

**Defendant:** In the event the Court instructs the jury on any of the examples and factors included in Plaintiffs' proposed instruction, Mr. Fraser requests that the Court also instruct the jury   as follows:  **"Proof, if any, that Mr. Fraser provided financial assistance, advice, feedback, or guidance is not sufficient to indicate that he controlled GAW Miners and ZenMiner."**  *See In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 187 (2d Cir. 2011) ("Allegations of advice, feedback, and guidance fail to raise a reasonable inference that the Rating Agencies had the power to control, rather than merely inform, the banks' ultimate structuring decisions. Put another way, providing advice that the banks chose to follow does not suggest control.").

**Plaintiffs' Response:** To the extent that a case applying the "control" standard to ratings agencies offering securitization advice to banks has any relevance to this case, Plaintiffs would object to the

Proving control does not require Plaintiffs to show that Mr. Fraser actually did direct or cause the direction of the management and policies of the Companies. Rather, Plaintiffs need only show that Mr. Fraser had the *power* to do so.[51] [52]

---

inclusion of the phrase "financial assistance," which has no basis in the case cited. *See* 650 F.3d at 187. Additionally, the word "guidance" is ambiguous, and its inclusion could wrongly suggest to the jury that a person who guides or directs the conduct of another does not control the other.

**Defendant:** Some of the factors included in Plaintiffs' proposed instruction are vague and overly broad, *e.g.*, "personal relationships between Mr. Fraser and people with positions of authority or control at GAW Miners and ZenMiner." FRE 403. If the Court gives the jury an example such as this, which is so specific to the facts of this case, it poses the danger of misleading the jury into giving it undue weight. Moreover, the fact that the Court properly considered a factor on a motion to dismiss does not mean that it is also proper to provide that example to the jury.

**Plaintiffs' Response:** Defendant does not explain why this factor, which is drawn from the Court's opinion denying Defendant's motion to dismiss, is vague or overly broad.

[51] *Audet v. Fraser*, 2017 WL 4542386, at *6-7; *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 456 (S.D.N.Y. 2009) ("[O]nly the ability to direct the actions of the controlled person, and not the active exercise thereof is required to establish control."); 17 C.F.R. § 240.12b-2 (defining "control" as "the possession, direct or indirect, of *the power* to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise") (emphasis added).

[52] **Defendant**: Plaintiffs' proposed instruction—on what Plaintiffs do <u>not</u> need to prove, and what Plaintiffs "need only" show to satisfy their burden of proof—is one-sided and unfairly prejudicial to Mr. Fraser. FRE 403. In the event the Court includes Paragraph 9 in its charge, Mr. Fraser requests the following modified instructions: "**To prove that Mr. Fraser 'controlled' GAW Miners and ZenMiner, Plaintiffs need not prove that Mr. Fraser actively exercised control over GAW Miners and ZenMiner and the transactions in question. However, Plaintiffs do need to prove that Mr. Fraser actually possessed, in fact, rather than in theory, the ability to direct the actions of GAW Miners and ZenMiner and the transactions in question.**" *In re Glob. Crossing, Ltd. Sec. Litig.*, No. 02 CIV. 910 (GEL), 2005 WL 1907005, at *3 (S.D.N.Y. Aug. 8, 2005) ("To be liable as a control person, the defendant must actually possess, in fact, rather than in theory, the ability to direct the actions of the controlled person.").

**Plaintiffs' Response:** This instruction serves to clarify the meaning of what control is, versus what it is not, and some version of it is often given to juries. *See, e.g.*, *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH), Tr. at 7525-26 ("The plaintiffs do not need to show that the individual defendant actively exercised control over the conduct that constitutes the primary violation, but they do need to show that the individual defendant had the actual power or ability, in practice, to direct the conduct of the company.").

**Mr. Fraser's Proposed Instruction No.    —(Control—Directly or Indirectly Controlled)**

Plaintiffs may establish "control" person liability against Mr. Fraser under the Connecticut Uniform Securities Act by proving by a preponderance of the evidence that he directly or indirectly controlled GAW Miners and ZenMiner.

Control means: "the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."[53]

To prove that Mr. Fraser "controlled" GAW Miners and ZenMiner, Plaintiffs need not prove that Mr. Fraser actively exercised control over the Companies.[54]   However, Plaintiffs do need to prove, by a preponderance of the evidence, that:

(1) Mr. Fraser actually possessed, in fact, rather than in theory, the ability to direct the actions of GAW Miners and ZenMiner; and

---

[53] 17 C.F.R. § 240.12b–2; *see also Connecticut Nat. Bank v. Giacomi*, 242 Conn. 17, n.37 (1997) (looking to federal securities law to construe analogous provisions in the Connecticut Uniform Securities Act).

[54] *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 456 (S.D.N.Y. 2009) ("[O]nly the ability to direct the actions of the controlled person, and not the active exercise thereof is required to establish control.") (internal quotation marks and citations omitted).

(2) Mr. Fraser had actual control over the transactions in question.[55] [56]

---

[55] *In re Glob. Crossing, Ltd. Sec. Litig.*, No. 02 CIV. 910 (GEL), 2005 WL 1907005, at *3 (S.D.N.Y. Aug. 8, 2005) (for a Section 20(a) claim, stating that, "[t]o be liable as a control person, the defendant must actually possess, in fact, rather than in theory, the ability to direct the actions of the controlled person."); *id.* at *12 ("… plaintiffs must show both that the defendant possessed the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise, and that defendant had actual control over the transaction in question.") (omitting quotation marks) (citing and quoting various sources, including *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir.1996)); *Ontario Teachers' Pension Plan Bd. v. Teva Pharm. Indus. Ltd.*, 432 F. Supp. 3d 131, 175 (D. Conn. 2019) ("Section 20(a) defendant must not only have actual control over the primary violator, but have actual control over the *transaction* in question.") (emphasis supplied); *see also Connecticut Nat. Bank v. Giacomi*, 242 Conn. 17, n.37 (1997) (looking to federal securities law to construe analogous provisions in the Connecticut Uniform Securities Act); *Poptech, L.P. v. Stewardship Credit Arbitrage Fund, LLC*, 792 F. Supp. 2d 328, 340 (D. Conn. 2011) (citing to *In re Alstom SA Securities Litigation*, 406 F.Supp.2d 433, 487 (S.D.N.Y.2005) for the proposition that "a Section 20(a) defendant must have control over the specific transaction in question, not just general control over the primary violator"), *Sawant v. Ramsey*, No. 3:07-CV-980 VLB, 2010 WL 3937403, at *19 (D. Conn. Sept. 28, 2010) ("Moreover, the Section 20(a) defendant must not only have actual control over the primary violator, but have actual control over the transaction in question.") (citing *Alstom*).

[56] **Plaintiffs:** This proposed instruction finds no support in Second Circuit authority, *see, e.g.*, *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir.1996) (citing the definition of "control" from 17 C.F.R. § 240.12b-2 without any requirement that the control person have control over the "transaction in question"); *In re Lehman Bros. Mortg.-Backed Sec. Litig.*, 650 F.3d 167, 185 (2d Cir. 2011) (same); or actual jury instructions given by courts in this Circuit, which affirmatively reject Defendant's position. *See In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH), Tr. at 7525:24-7525:1 ("The plaintiffs do not need to show that the individual defendant actively exercised control *over the conduct that constitutes the primary violation . . . .*") (emphasis added); *see also SEC v. Portfolio Advisors Alliance, Inc.*, 16-cv-828-KBW (S.D.N.Y. May 14, 2019), ECF No. 299 (instructions to jury) at 122 (instructing the jury regarding "control" consistent with the definition in *First Jersey*, without instructing that the jury needed to find control over the transactions in question).

34

**Second Element**
*(Control—"Partner, Officer, or Director")*[57]

Alternatively, the second way that plaintiffs may establish that Mr. Fraser was a control person of GAW Miners and ZenMiner by proving that he was a partner, officer, or director of GAW Miners and ZenMiner.[58]

---

[57] Mr. Fraser proposes an alternative jury instruction. *See* Mr. Fraser's Proposed Jury Instruction No. __—Second Element (Control—Partner, Officer, Director).

[58] **Defendant:** (1) In *Connecticut Nat. Bank v. Giacomi*, the Connecticut Supreme Court distinguished the "partner, officer and director" language of CUSA § 36b-29(c) from the "similar status" and "similar function" language contained in that same provision, and explained that the first covers formal partners, officers and directors, holding those titles. The Court explained: "If one wanted to avoid secondary liability under the partner, officer and director category, a simple change of title would suffice. With the 'similar status' and 'similar functions' language referencing the partner, officer and director category, however, the substance of one's position would determine liability, irrespective of title." 242 Conn. 17, 61 n.41 (1997). Plaintiffs' proposed jury instruction is incomplete and unfairly prejudicial because it does not clarify this point. FRE 403. (2) The Court should not instruct the jury that Plaintiffs may prove control person liability under the CUSA against Mr. Fraser by proving that he was a "partner" of GAW Miners and ZenMiner. It is undisputed that the Companies were not partnerships; thus Mr. Fraser could not have held the title of "partner." *See* FAC ¶¶ 19, 20 (alleging that the Companies were limited liability companies).

**Plaintiffs' Response:** The statutory language is straightforward; it is not clear what "partner, officer, or director" would mean if not a person who held one of those titles. In any event, this instruction together with the Court's instruction regarding the third category of control persons (who hold a "similar status" or perform "similar functions") will make the distinction clear to the jury. Regarding objection (2), *see supra* note 45.

**Mr. Fraser's Proposed Instruction No.     —(Control—Partner, Officer or Director)**

Plaintiffs may also establish control person liability against Mr. Fraser under the Connecticut Uniform Securities Act by proving, by a preponderance of the evidence, that Mr. Fraser held the actual title of officer or director of GAW Miners and ZenMiner.[59] [60]

---

[59] CUSA § 36b-29(c); *Connecticut Nat. Bank v. Giacomi*, 242 Conn. 17, 61, 699 A.2d 101, 125 (1997) (distinguishing the "partner, officer and director" language from the "similar status" and "similar function" language, and explaining that the first covers formal partners, officers and directors:  "If one wanted to avoid secondary liability under the partner, officer and director category, a simple change of title would suffice.  With the 'similar status' and 'similar functions' language referencing the partner, officer and director category, however, the substance of one's position would determine liability, irrespective of title.").

[60] **Plaintiffs:** This instruction is unnecessary, *see supra* note 58; inconsistent with the plain language of the statute, *see* Conn. Gen. Stat. § 36b-29(c); and incomplete, because it omits "partner[s]," *see supra* note 45.

**Defendant's Response:**  This is Defendant's alternative to Plaintiffs' instruction regarding the second way of proving control under the CUSA.

**Second Element**

*Control—"Similar Status"*

**[Plaintiffs]**  Finally, the third way that Plaintiffs may establish control person liability against Mr. Fraser under the Connecticut Uniform Securities Act is by proving, by a preponderance of the evidence, that he occupied a similar status to a partner, officer, or director of GAW Miners and ZenMiner, or that he performed similar functions to a partner, officer, or director of GAW Miners and ZenMiner.  This means that you do not need to decide that Mr. Fraser actually held the title of partner, officer, or director of GAW Miners and ZenMiner to find that he was a control person.  The focus here is on the substance of Mr. Fraser's role in the Companies, not on the formal job titles or labels.[61]  For that reason, to show that Mr. Fraser was a control person of GAW Miners and ZenMiner under this third means of demonstrating control, Plaintiffs need to prove that Mr. Fraser occupied a similar status to a partner, officer, or director at the Companies; or that he performed similar functions to someone in one of those roles.[62] [63]

**[Defendant's proposed instruction]**  Finally, the third way that Plaintiffs may establish control person liability against Mr. Fraser under the Connecticut Uniform Securities Act is by proving, by a preponderance of the evidence, that he occupied a similar status to an officer or

---

[61] *Giacomi*, 242 Conn. at 61 n.41 ("The control person category looks to the actual circumstances of control and not to any label.").

[62] *Audet v. Fraser*, 2017 WL 4542386, at *10.

[63] **Defendant**: This instruction is unnecessarily repetitive and biased against Mr. Fraser. *See* Mr. Fraser's General Objection No. 2. Mr. Fraser requests that since the Companies were not partnerships and thus nobody at the Companies could have been a "partner", to prevent jury confusion the Court should omit from the instruction the possibility of a control person holding a similar status as a "partner" of the Companies.

**Plaintiffs' Response:** The proposed instruction clearly states the law and explains how this third category of control persons is different from the second category (partners, directors, or officers). Regarding Defendant's argument regarding "partnerships," *see supra* note 45.

director of GAW Miners and ZenMiner, or that he performed similar functions to an officer or director of GAW Miners and ZenMiner.  This means that you do not need to decide that Mr. Fraser actually held the title of an officer or director of GAW Miners and ZenMiner to find that he was a control person.  The focus here is on the substance of Mr. Fraser's position in the Companies, not on the formal job titles or labels.[64] [65]

---

[64] *Giacomi*, 242 Conn. at 61 n.41 ("The control person category looks to the actual circumstances of control and not to any label.").

[65] *Audet v. Fraser*, 2017 WL 4542386, at *10.

\*\*\*\*\*\*

In sum, to prevail on their unregistered securities claim against Mr. Fraser, Plaintiffs must prove by a preponderance of the evidence that:  (1) GAW Miners and ZenMiner sold or offered to sell unregistered securities in Connecticut; and (2) Mr. Fraser was a "control person" of GAW Miners and ZenMiner according to one or more of the three means of demonstrating "control" that I just described.

<u>**Mr. Fraser's Proposed Jury Instruction No.   —Defense Under CUSA § 36b-29(c)**</u>[66]

Even if you find that Plaintiffs have proven by a preponderance of the evidence all elements of their "control person" claim against Mr. Fraser, based on the Companies' alleged sale of unregistered securities, you must consider the following defense.

A person is not liable as a "control person" under the Connecticut Uniform Securities Act if he proves by a preponderance of the evidence that he did not know, and in the exercise of

---

[66] **Plaintiffs**: Plaintiffs object to the inclusion of this instruction in its entirety. Knowledge of whether the product at issue is a security is not a "fact[] by reason of which the liability is alleged to exist" because such knowledge is not required to show primary liability for the sale of an unregistered security. *See, e.g.*, *State v. Andresen*, 256 Conn. 313, 341 (2001) ("We hold, as have the overwhelming majority of jurisdictions, that the offense of wilfully selling unregistered securities requires proof only that the defendant intended to do the act prohibited by the statute."); *cf. State v. Kreminski*, 178 Conn. 145, 151 (1979) ("(S)tate of mind is of as little relevance in a charge of sale of an unregistered security by an unlicensed person . . . as it would be in a prosecution for a speeding violation."). Whether or not the Companies believed that the products at issue were securities has no bearing on their primary liability for selling unregistered securities; the same is true for Mr. Fraser's control person liability.  For the same reason, knowledge that the security was "required to be registered in this state, but [was] not" is not a "fact[] by reason of which the liability is alleged to exist."  Liability for selling unregistered securities does not require the defendant to know that the security was required to be registered, *see Andresen*, 256 Conn. at 339-42, and the same goes for Defendant.  Accordingly, should Defendant wish the jury to be instructed on this defense as to Plaintiffs' unregistered securities claim, the correct instruction would be that Defendant needs to prove, by a preponderance of the evidence, that he did not known, and in exercise of reasonable care could not have known, that the Products were being sold or offered for sale and that they were not registered as securities. As it does not appear that Defendant can reasonably contest that he knew that the Products were being sold, Plaintiffs do not propose an alternative instruction on this defense with respect to this claim.

**Defendant's Response:**  Plaintiffs' argument is incorrect.  The control person statute, CUSA § 36b-29(c), provides a "control person" with the defense of knowledge, even though it does not provide the primary violator with the same defense.  *Compare* CUSA § 36b-29(a) & (c).  Thus, Plaintiffs cannot argue that because this knowledge is not relevant for the primary violator, it must not be relevant for a secondarily liable control person.

reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.[67]

Thus, Mr. Fraser is not liable to Plaintiffs if he proves by a preponderance of the evidence that he did not know, and in the exercise of reasonable care could not have known, that (1) the Products at issue constituted securities (provided that you determine that the Products are in fact securities), or (2) the Companies were offering or selling securities that were required to be registered in this state, but were not.

If Mr. Fraser satisfies his burden of proof on this defense, then you must decide Plaintiffs' unregistered securities claim in Mr. Fraser's favor.

---

[67] CUSA § 36b-29(c) ("Every person who directly or indirectly controls a person liable under subsections (a) and (b) of this section, every partner, officer or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the act or transaction constituting the violation and every broker-dealer or agent who materially aids in the act or transaction constituting the violation are also liable jointly and severally with and to the same extent as such person, unless the person who is so liable sustains the burden of proof that **he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist**. There shall be contribution as in cases of contract among the several persons so liable.") (emphasis supplied).

**Mr. Fraser's Proposed Jury Instruction No.    —Exemption from Registration** [68]

Even if a Product constitutes a "security," it need not be registered if an exemption from registration applies. "Short term" securities, *i.e.*, securities that mature or are due and payable within nine months are exempt from registration.[69] Therefore, if you determine that a Product was

---

[68] **Plaintiffs:** Plaintiffs object to the inclusion of this instruction in its entirety. The exemption from registration contained in § 36b-21(a)(10) is for commercial paper, not all securities, and requires the product to satisfy additional requirements in addition to the 9-month maturity limit. *See* Conn. Gen. Stat. § 36b-21(a)(10) ("any commercial paper which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions, and which evidences an obligation to pay cash within nine months of the date of issuance, exclusive of days of grace, or any renewal of such paper which is likewise limited, or any guarantee of such paper or of any such renewal"). The products at issue in this case are not commercial paper, a term which generally refers to "unsecured, short-term promissory notes issued by commercial entities" that are "payable to the bearer on a stated maturity date," *Sec. Indus. Ass'n v. Bd. of Governors of Fed. Rsrv. Sys.*, 468 U.S. 137, 140 n.1 (1984), and are typically issued by "well-known large financial or industrial corporations," *Franklin Sav. Bank in City of New York v. Levy*, 406 F. Supp. 40, 41 (S.D.N.Y. 1975). In fact, such short-term debt is typically *not* available for purchase by the general public, which supports their exemption from registration requirements under federal securities law. *See Franklin*, 406 F. Supp. at 41 (quoting legislative history of the Securities Exchange Act of 1934 that "[i]t is not intended under the bill to require the registration of short-term commercial paper which, as is the usual practice, is made to mature in a few months and ordinarily is not advertised for sale to the general public"). In any event, there also is no evidence in that record that HashStakers, which is the sole product that Defendant seeks to exempt from registration under § 36b-21(a)(10), satisfies the statutory requirement that they "arise[] out of a current transaction or the proceeds of which have been or are to be used for current transactions," as required by the statute.

**Defendant's Response:** Defendant is relying on a Connecticut Appellate decision, *Lehn v. Dailey*, 77 Conn. App. 621, 626 (2003), which applied this exemption to a promissory note issued by a spa to defendant. Plaintiffs do not address that decision.

**Plaintiffs' Response:** *Lehn v. Dailey* did not address whether the promissory note at issue was "commercial paper which arises out of a current transaction or the proceeds of which have been or are to be used for current transactions." 77 Conn. App. 625-26 (quoting Conn. Gen. Stat. § 36b-21(a)(10)). Rather, it addressed an entirely different interpretive issue. *See id.* at 626 (construing the phrase "within nine months"). Accordingly, it does not support Defendant's position.

[69] *Lehn v. Dailey*, 77 Conn. App. 621, 626 (2003) ("The plain language of § 36b–21 exempts from the registration requirements those securities that are due and payable within nine months;" assessing CUSA § 36b-21(a)(10) in the context of a promissory note); *see also* CUSA § 36b-21(a)(10).

exempt from registration, you must also decide Plaintiffs' unregistered securities claim in Mr. Fraser's favor for that Product.

**Mr. Fraser's Proposed Jury Instruction No.    —Affirmative Defenses Based on Plaintiffs' Individual Conduct—Plaintiffs' Violation of CUSA**[70]

Mr. Fraser has raised certain defenses to the claims made by Plaintiffs based on Plaintiffs' own conduct. To the extent Mr. Fraser proves any of these defenses by a preponderance of the evidence against one or more Plaintiffs, Mr. Fraser will not be liable to those Plaintiffs.[71]  You will be asked to apply these defenses only to the named Plaintiffs who appeared at trial—that is, Messrs. Shinners, Pfeiffer and Audet.

I will instruct you on one such defense that Mr. Fraser has raised.  This defense applies to the claims in this case under the Connecticut Uniform Securities Act.  If a plaintiff violates the CUSA in connection with a contract or transaction, or engages in fraud with respect to it, that plaintiff cannot make a claim against another person in connection with that contract or

---

[70] **Plaintiffs:** Plaintiffs object to including any instructions concerning affirmative defenses based on the class representatives' "individual conduct." The purpose of this trial is to determine Mr. Fraser's liability to the class and to resolve common issues of liability such as Mr. Fraser's status as a control person under federal and Connecticut securities laws. Delving into "affirmative defenses based on plaintiffs' individual conduct" risks distracting the jury from the class-wide liability issues at stake and confusing them as to the issues relevant to the class versus those relevant only to the named plaintiffs. As these particular affirmative defenses have no bearing on Mr. Fraser's liability to the class as a whole, and if successful, would have the practical effect of reducing the named plaintiffs' damages only, they are better deferred to any later proceedings for determining damages. *See* Manual for Complex Litigation (Fourth) § 21.5 ("In jury cases, the court may consider trying common issues first, preserving individual issues for later determination."); *cf. Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014) (affirming class certification where "the district court was careful to preserve [the defendant's] opportunity to raise any individualized defense it might have at the damages phase of the proceedings"). Indeed, this Court's class certification order recognized that defenses such as unclean hands may be employed "at the damages stage of the litigation." *Audet*, 332 F.R.D. at 69.

**Defendant:**  For the reasons stated in note 222 below, Mr. Fraser disagrees.

[71] 3B Fed. Jury Prac. & Instr. § 162:174 (6th ed.) – Waiver, Estoppel, Ratification ("Defendant ___ has raised several affirmative defenses to plaintiff's claims based on plaintiff's own conduct. To the extent defendant proves any of them by a preponderance of the evidence, defendants would not be liable for any conduct to which the defense applies.").

transaction.[72]  One example of a violation of the CUSA, which Plaintiffs allege in this case, is the offer or sale of unregistered securities.[73]

Thus, if you find that a Product at issue is a "security," and a Plaintiff sold that Product without registration, that Plaintiff violated the CUSA and cannot turn around and hold Mr. Fraser liable for violating the CUSA.[74]

---

[72] *See* CUSA § 36b-29(h) ("No person who has made or engaged in the performance of any contract in violation of any provision of sections 36b-2 to 36b-34, inclusive, or any regulation or order thereunder, or who has acquired any purported right under any such contract with knowledge of the facts by reason of which its making or performance was in violation, may base any cause of action on the contract."); *see also MacPeg Ross O'Connell & Goldhaber, Inc. v. Castello*, 686 F. Supp. 397, 399 (E.D.N.Y. 1988) (persons who committed fraud when making securities transactions were precluded on summary judgment from seeking remedies under the CUSA, with respect to those transactions).

[73] CUSA § 36b-16 ("Registration of security prior to offer or sale required. Exceptions. No person shall offer or sell any security in this state unless (1) it is registered under sections 36b-2 to 36b-34, inclusive, (2) the security or transaction is exempted under section 36b-21, or (3) the security is a covered security provided such person complies with any applicable requirements in subsections (c), (d) and (e) of section 36b-21.").

[74] **Plaintiffs:** This affirmative defense is unavailable to Mr. Fraser because (1) it was not pleaded and (2) it is inapplicable to Plaintiffs' claims. First, Mr. Fraser did not plead "Plaintiffs' Violations of CUSA" as an affirmative defense. *See* Dkt. 73. Second, § 36b-29(h) applies only when the plaintiff's cause of action is based on a contract—that is, to sue **in contract** to enforce the rights and duties of the **contract**—that allegedly violates the Connecticut Uniform Securities Act. *See* Conn. Gen. Stat. § 36b-29(h) ("No person who has made or engaged in the performance of any **contract** in violation of any provision of sections 36b-2 to 36b-34 . . . may base any cause of action **on the contract**." (emphasis added)); *see also, e.g., Giacomi*, 242 Conn. at 55-57 (prohibiting plaintiffs from collecting on promissory notes that were given in connection with a violation of the CUSA); *Couldock & Bohan, Inc. v. Societe Generale Sec. Corp.*, 93 F. Supp. 2d 220, 227–28 (D. Conn. 2000) ("Plaintiff, having violated the federal and state statutes, does not have the right to enforce the clearing agreement."); *Russolillo v. Thomson McKinnon Sec., Inc.*, 694 F. Supp. 1042, 1045 (D. Conn. 1988) (noting that § 36b-29(h) "merely bars one who enters such a contract with knowledge of the illegality from basing any suit on the contract"). The defense is not available with respect to Plaintiffs' claims against Mr. Fraser under the Connecticut Uniform Securities Act, notwithstanding *MacPeg Ross O'Connell & Goldhaber, Inc. v. Castello*, 686 F. Supp. 397 (E.D.N.Y. 1988), as the plaintiff *conceded* the applicability of the defense in that case, *see id.* at 399 ("Plaintiff concedes that § 36–498 permits a purchaser to void a transaction . . . .").  Defendants provide no authority for the proposition that every cause of action—including fraud—related to an

> **II. Control Person Liability Pursuant to Section 36b-29(c) of the Connecticut Uniform Securities Act for Connecticut Securities Fraud**

Proposed Jury Instruction No. __

[**Plaintiffs**] Now I will address Plaintiffs' Connecticut securities fraud claim.

Plaintiffs allege that GAW Miners and ZenMiner committed fraud in the offer or sale of securities, in violation of Section 36b-29(a)(2) of the Connecticut Uniform Securities Act.  This provision of the Uniform Securities Act makes it unlawful for a person to offer or sell a security by means of either an untrue statement of a material fact or an omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they are made, not misleading.[75]  Here, Plaintiffs allege that GAW Miners and ZenMiner offered and sold securities by means of various untrue statements and omissions.[76]

Plaintiffs assert that Mr. Fraser is liable to them for the Companies' primary violations of Section 36b-29(a)(2) in two ways:  first, because he exercised control over GAW Miners and ZenMiner; and, second, because he materially assisted GAW Miners and ZenMiner in their primary violations of Section 36b-29, that is, materially assisted them in offering or selling securities by means of an untrue statement of fact or an omission to state a material fact necessary

---

instrument which qualifies as a security because it satisfies the *Howey* test for "investment contract" is a cause of action "base[d] . . . on the contract" under § 36b-29(h).

**Defendant:**  Mr. Fraser briefed and argued this defense as part of Plaintiffs' certification motion (ECF 107 at 37-38, ECF 113 at 17-18); Plaintiffs were thus properly on notice and cannot claim unfair prejudice.  *See Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003).  Plaintiffs' second point is unclear; they allege that the products at issue were unregistered investment "contracts."

[75] Conn. Gen. Stat. § 36b-29(a)(2).

[76] **[OMITTED]**

to make the statements made, in the light of the circumstances under which they are made, not misleading.[77]

I will instruct you now on Plaintiffs' allegation that Mr. Fraser is liable for the Companies' securities fraud under the Connecticut Uniform Securities Act because he was a "control person" of the Companies.

To prevail on their "control person" claim against Mr. Fraser for securities fraud under the Connecticut Uniform Securities Act, Plaintiffs must prove each of the following two elements by a preponderance of the evidence:

(1) First, Plaintiffs must prove that GAW Miners and ZenMiner are liable for the offer or sale of securities by means of an untrue statement of a material fact or an omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they are made, not misleading, in violation of Section 36b-29(a)(2) of the Connecticut Uniform Securities Act.[78]

(2) Second, Plaintiffs must prove that Mr. Fraser was a "control person" of GAW Miners and ZenMiner under one or more of the three ways set out in Section 36b-29(c) of the Connecticut Uniform Securities Act.

[Defendant] Now I will address Plaintiffs' Connecticut securities fraud claim.

Plaintiffs allege that GAW Miners and ZenMiner committed fraud in the offer or sale of securities, in violation of Section 36b-29(a)(2) of the Connecticut Uniform Securities Act. This provision of the Uniform Securities Act makes it unlawful for a person to offer or sell a security

---

[77] **Defendant:** Paragraph 3 is unnecessarily cumulative and repetitive of other paragraphs in this section of Plaintiffs' proposed instructions. FRE 403.
**Plaintiffs' Response:** *See supra* note 27.

[78] Conn. Gen. Stat. 36b-29(c).

by means of either an untrue statement of a material fact or an omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they are made, not misleading.  Here, Plaintiffs allege that GAW Miners and ZenMiner offered and sold securities by means of various untrue statements and omissions.

Plaintiffs claim that Mr. Fraser is liable to them for the Companies' primary violations of Section 36b-29(a)(2) in two ways:  first, because he exercised control over GAW Miners and ZenMiner; and, second, because he materially assisted GAW Miners and ZenMiner in their primary violations of Section 36b-29.  Thus to prove that Mr. Fraser is liable to them for the Companies' primary violations of Section 36b-29(a)(2), Plaintiffs must prove that Mr. Fraser exercised control over GAW Miners and ZenMiner or he materially assisted GAW Miners and ZenMiner in their primary violations of Section 36b-29.

I will instruct you now on Plaintiffs' allegation that Mr. Fraser is liable for the Companies' securities fraud under the Connecticut Uniform Securities Act because he was a "control person" of the Companies.

To prevail on their "control person" claim against Mr. Fraser for securities fraud under the Connecticut Uniform Securities Act, Plaintiffs must prove each of the following two elements by a preponderance of the evidence:

(1) First, Plaintiffs must prove that GAW Miners and ZenMiner are liable for the offer or sale of securities by means of an untrue statement of a material fact or an omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they are made, not misleading, in violation of Section 36b-29(a)(2) of the Connecticut Uniform Securities Act.

(2) <u>Second</u>, Plaintiffs must prove that Mr. Fraser was a "control person" of GAW Miners and ZenMiner under one or more of the three ways set out in Section 36b-29(c) of the Connecticut Uniform Securities Act.

## First Element

**[Plaintiff]** With respect to the first element of proving that GAW Miners and ZenMiner committed a primary violation of Section 36b-29(a) of the Connecticut Uniform Securities Act, the Act makes it unlawful for a person to offer or sell a security by means of either an untrue statement of a material fact or an omission of a material fact necessary to make a statement not misleading.

To establish this first element, Plaintiffs must prove each of the following two sub-elements by a preponderance of the evidence:

> (1) <u>First</u>, Plaintiffs must prove that GAW Miners and ZenMiner offered or sold a security by means of either an untrue statement of a material fact; or an omission to state a material fact necessary to make any statements made, in the circumstances under which they were made, not misleading.

> (2) <u>Second</u>, Plaintiffs must show that they did not know of the untruth of those statements.

**[Defendant]** With respect to the first element of proving that GAW Miners and ZenMiner committed a primary violation of Section 36b-29(a) of the Connecticut Uniform Securities Act, the Act makes it unlawful for a person to offer or sell a security by means of an untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

To establish this first element, Plaintiffs must prove each of the following three sub-elements by a preponderance of the evidence:

> (1) GAW Miners and ZenMiner offered or sold a security by means of an untrue statement of a material fact.

(2) GAW Miners and ZenMiner knew or should have known of the untruth of the statements at issue.

(3) Plaintiffs did not know of the untruth of those statements.[79] [80]

---

[79] Conn. Gen. Stat. § 36b-29(a); *Giacomi*, 242 Conn. at 46, 49-51 ("To establish the liability of the primary violator, the buyer must prove: (1) that the primary violator offered or sold a security by means of either an untrue statement of a material fact, or an omission to state a material fact necessary to make any statements made, in the circumstances of their making, not misleading; and (2) that the buyer did not know of the untruth or omission.").

[80] **Defendant:** Plaintiffs' proposed instruction does not include the third element that Plaintiffs must prove, *i.e.*, that defendant "knew or in the exercise of reasonable care should have known of the untruth or omission." Conn. Gen. Stat. § 36b-29(a)(2) (**Any person who "offers or sells** or materially assists any person who offers or sells **a security by means of any untrue statement of a material fact or any omission** to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, **who knew or in the exercise of reasonable care should have known of the untruth or omission**, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight per cent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security.") (emphasis supplied); *see also Connecticut Nat. Bank v. Giacomi*, 242 Conn. 17, 46-47 (1997) (regarding the second element, the Connecticut Supreme Court explained that: "the buyer must also meet a burden of production concerning the issue of whether the aider and abettor knew or should have known of the untruth or omission. If the buyer meets this burden of production, the burden of proof on this issue shifts, so that the aider and abettor then bears the burden of persuading the fact finder that it did not know, and in the exercise of reasonable care could not have known, of the untruth or omission."). Plaintiffs' position, that the knowledge requirement does not apply to the primary violator, is inconsistent with the actual language of the statute. Defendant has provided his alternative version of this instruction above.

**Plaintiffs' Response:** Defendant is conflating the elements necessary to prove a primary violation with those necessary to prove aiding and abetting a primary violation. "To establish the liability of the **primary violator**, the buyer must prove: (1) that the primary violator offered or sold a security by means of either an untrue statement of a material fact, or an omission to state a material fact necessary to make any statements made, in the circumstances of their making, not misleading; and (2) that the buyer did not know of the untruth or omission." *Giacomi, Connecticut National Bank v. Giacomi*, 242 Conn. 17, 46 (1997). By contrast, the "burden of production" Defendant refers to applies only to establishing secondary liability under a "material assistance" theory (*i.e.*, aiding and abetting). *See id.* at 47 (holding that, to prevail on an aiding and abetting claim, "the buyer must also meet a burden of production concerning the issue of whether **the aider and**

**First Element**

(*Primary Violation — "Untrue Statement of a Material Fact"*)

[**Plaintiffs**] Regarding the first sub-element, Plaintiffs must prove that GAW Miners and ZenMiner offered or sold a security by means of an untrue statement of material fact or an omission of a material fact necessary to make any statements made not misleading.

A fact is considered "material" if a reasonable investor would have considered the fact significant in making investment decisions.[81] But Plaintiffs cannot satisfy their burden simply by proving that the investor might have considered the misstatement important. Finding that an untrue statement or an omission is material does not require finding that a reasonable investor would have made a different purchasing decision if no material misstatement or omission had been made.[82] [83]

---

**abettor knew** or should have known of the untruth or omission"). For that reason, there is no "third element that Plaintiffs must prove" to establish a primary violation, the element at issue in this proposed instruction.

[81] *Lehn v. Dailey*, 825 A.2d 140, 145 (Conn. App. 2003) (quoting *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir. 2000)) ("A material fact is a fact that 'a reasonable investor would have considered significant in making investment decisions.'"); *Papic v. Burke*, 965 A.2d 633, 645 n.9 (Conn. App. 2009).

[82] *SEC v. Tourre*, No. 10cv-3229-KBF (S.D.N.Y. July 31, 2013), ECF No. 465 (instructions to jury) at 26.

[83] **Defendant:** (1) Plaintiffs' proposed instruction does not fully explain the "materiality" standard, which has a "substantial likelihood" component, as also reflected in the Second Circuit Court of Appeals' decision that Plaintiffs cite. *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 162 (2d Cir. 2000) ("'[T]here must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'") (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231-32 (1988)); *see also Sec. & Exch. Comm'n v. Stratocomm Corp.*, 652 Fed. Appx. 35, 36 (2nd Cir. 2016) ("A fact is to be considered material if there is a substantial likelihood that a reasonable person would consider it important in deciding whether to buy or sell shares.") (omitting internal citation and quotation marks). *See also* 9th Cir. Model Instructions (2020) § 18.3 ("A factual representation concerning a security is material if there is a substantial likelihood a reasonable investor would consider the fact important in deciding whether to buy or sell that security. [An omission concerning a security is material if a reasonable investor would have regarded what was not disclosed to [him] [her] [it] as having significantly altered the total mix of information [he] [she] [it] took into account in deciding whether to buy or sell the security.]"); *see also Basic Inc. v.*

To satisfy this sub-element, Plaintiffs must also prove that GAW Miners and ZenMiner offered or sold a security *"by means of"* an untrue statement of a material fact or omission.

To prove a security was offered or sold "by means of" an untrue statement or omission, Plaintiffs must prove that there was some causal connection between the allegedly untrue statement or omission by GAW Miners and ZenMiner, on the one hand, and Plaintiffs' purchase of the

---

*Levinson*, 485 U.S. 224, 231-32 (1988) (a fact is material if there is a substantial likelihood that its disclosure would be viewed by a reasonable investor as having significantly altered the total mix of information available in the market about a particular security); *FIH, LLC v. Found. Cap. Partners LLC*, 176 F. Supp. 3d 52, 69 (D. Conn. 2016), on reconsideration, No. 3:15CV785 (JBA), 2016 WL 1688739 (D. Conn. Apr. 26, 2016) (assessing both federal and CUSA claims under the "substantial likelihood" standard for materiality).

**Plaintiffs' Response:**  The two Connecticut cases cited by Plaintiffs which interpret the term "material" as used in the CUSA do not include Defendant's gloss on its meaning, regardless of the authorities they cite.  *See supra* note 83.  In *FIC, LLC v. Found. Cap. Partners LLC*, the court expressly noted that "[t]he parties agreed at oral argument that if a statement is 'material' for purposes of the federal Securities and Exchange Act, it is also material for purposes of CUSA." 176 F. Supp. 3d at  94 n.61.  Regardless, it is not clear what Defendant's modification adds to the proposed instruction.

**Defendant:** (2) Plaintiffs' proposed instruction regarding what proof of materiality does not require—*i.e.*, "[f]inding that an untrue statement or an omission is material does not require finding that a reasonable investor would have made a different purchasing decision if no material misstatement or omission had been made"—is unnecessary, one-sided and unfairly prejudicial to Mr. Fraser.  FRE 403.  To the extent the Court includes that instruction, Mr. Fraser requests that it be modified to the following:  **"Finding that an untrue statement is material does not require Plaintiffs to prove that a reasonable investor would have made a different purchasing decision if no material misstatement had been made.  But Plaintiffs cannot satisfy their burden simply by proving that the investor might have considered the misstatement important."**  *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 162 (2d Cir. 2000) ("It is not sufficient to allege that the investor might have considered the misrepresentation or omission important.").

**Plaintiffs' Response:** The proposed instruction accurately states the law and will assist the jury in understanding what is, or is not, "material." Regardless, Plaintiffs have incorporated Defendants' proposed modification into the proposed instructions and have placed it in a location that more clearly illustrates the requirement that Plaintiffs prove the "would have" standard and not simply "might have."

**Defendant's Response:**  For the reasons stated above, we do not believe this additional language regarding materiality should be included.  If the Court decides to include it, Plaintiffs' formulation is confusing.  Defendant's version of the instruction is provided below.

53

securities, on the other hand.[84]   Under this standard, the untrue statements or omissions did not need to have had a decisive effect on Plaintiffs' decision to purchase a Product.[85]   Rather, the standard is whether a reasonable investor would have considered the statements or omissions significant when making investment decisions.[86]

[**Defendant**] Regarding the first sub-element, Plaintiffs must prove that GAW Miners and ZenMiner offered or sold a security by means of an untrue statement of material fact or an omission of a material fact necessary to make any statements made not misleading.

A fact is considered "material" if there is a substantial likelihood that a reasonable investor would have considered the fact significant in making the investment decisions at issue.  [Finding that an untrue statement is material does not require Plaintiffs to prove that a reasonable investor would have made a different purchasing decision if no material misstatement had been made.  But Plaintiffs cannot satisfy their burden simply by proving that the investor might have considered the misstatement important.]

To satisfy this sub-element, Plaintiffs must also prove that GAW Miners and ZenMiner offered or sold a security *"by means of"* an untrue statement of a material fact or omission.

---

[84] *Giacomi*, 242 Conn. at 50 n.37 ("This section requires only 'some' causal connection between the alleged communication and the sale, 'even if not decisive.'") (quoting *Metromedia Co. v. Fugazy*, 983 F.2d 350, 361 (2d Cir. 1992)).

[85] *Giacomi*, 242 Conn. at 50 n.37; *Jackson v. Oppenheim*, 533 F.2d 826, 830 (2d Cir. 1976).

[86] **Defendant**:  The last portion of Plaintiffs' proposed instruction on what proof the "by means of" standard does not require—"[a]dditionally, this 'by means of' standard does not require the plaintiffs to have actually relied on the untrue statements or omissions in making their decisions to purchase the securities"—is unnecessary, confusing and unfairly prejudicial to Mr. Fraser. FRE 403. Reliance is not a component of the "by means of" element, *see Connecticut Nat. Bank v. Giacomi*, 242 Conn. 17, n.37 (1997), therefore, instructing the jury about it here would be confusing and misleading.

**Plaintiffs' Response:** We have deleted the language at issue.

To prove a security was offered or sold "by means of" an untrue statement or omission, Plaintiffs must prove that there was some causal connection between the allegedly untrue statement or omission by GAW Miners and ZenMiner, on the one hand, and Plaintiffs' purchase of the securities, on the other hand.  Under this standard, the untrue statements or omissions did not need to have had a decisive effect on Plaintiffs' decision to purchase a Product.  Rather, the standard is whether a reasonable investor would have considered the statements or omissions significant when making investment decisions.

**Mr. Fraser's Proposed Jury Instruction No.    —**
**(Primary Violation—Untrue Statement of a Material Fact, Forward Looking Statements)** [87]

In considering whether the Companies made an untrue statement of a material fact, you must distinguish between statements of fact and forward-looking statements.

Predictions, projections and other forward-looking statements, even if ultimately proven incorrect, are generally not statements of fact, but instead forecasts about the future.

Predictions, projections and other forward-looking statements may constitute a basis for a violation only if a plaintiff proves that, at the time the forward-looking statements were made, (1) the primary violator did not actually believe the statements, (2) there was no reasonable basis for the primary violator to believe the statements, or (3) the primary violator was aware of undisclosed facts tending to seriously undermine the accuracy of the statements. [88]

---

[87] **Plaintiffs:** Plaintiffs object to the inclusion of this instruction in its entirety. The statutory safe harbor for "forward-looking statements" created by the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-5(c), applies to actions arising under the federal securities laws, not under the CUSA. *See* 15 U.S.C. § 78u-5(c)(1) (provision applies to "any private action arising under this chapter"); Comment to 9th Cir. Model Instructions § 18.4 ("This instruction addresses 'forward-looking statements' that fall outside the coverage of the safe harbor afforded to forward-looking statements by the Private Securities Litigation Reform Act of 1995 . . . ."). Defendant's proposed instruction is therefore unwarranted.

**Defendant's Response:** As Plaintiffs concede, the Court should give this instruction to the jury at least with respect to the materiality determination for Plaintiffs' Section 20(a) claim. Nor do Plaintiffs provide any authority that forward-looking predictions and projections are actionable misstatements under the CUSA.

**Plaintiffs' Response:** The safe harbor for forward-looking statements was statutorily created, for federal securities claims, by Congress, and is grounded in explicit statutory text. Defendant offers no reason why this Congressionally-enacted provision should be imported into a Connecticut statute. As the proponent of the instruction, Defendant should muster authority support his position rather than shift the burden to Plaintiffs (who have, in any event, provided authority for why the federal safe harbor should not be read into the CUSA).

[88] 9th Cir. Model Instructions (2020) § 18.4 ("In considering whether the defendant [made an untrue statement of a material fact] [omitted a material fact necessary under the circumstances to keep the statements that were made from being misleading], you must distinguish between statements of fact and forward-looking statements. Predictions, projections and other forward-

**Mr. Fraser's Proposed Jury Instruction No. \_\_\_—First Element**
**(Primary Violation—Companies' Knowledge)** [89]

[There is no corresponding instruction in Plaintiffs' proposed instructions.]

Regarding the second sub-element to prove that GAW Miners and ZenMiner committed a

primary violation, Plaintiffs must prove that GAW Miners and ZenMiner knew or should have

known of the untruth of the statements that Plaintiffs claim were material misstatements.

---

looking statements, even if ultimately proven incorrect, are generally not statements of fact, but instead forecasts about what may or may not occur in the future.  Predictions, projections and other forward-looking statements may constitute a basis for a violation of Rule 10b-5 only if the plaintiff proves by a preponderance of the evidence that, at the time the forward-looking statements were made, (1) the defendant did not actually believe the statements, (2) there was no reasonable basis for the defendant to believe the statements, or (3) the defendant was aware of undisclosed facts tending to seriously undermine the accuracy of the statements."); *Fait v. Regions Fin. Corp.*, 655 F.3d 105, 112 (2d Cir. 2011) ("'expressions of opinion and ... projections'" in a company's statements about its future prospects were not actionable because "'the complaint contain[ed] no allegations to support the inference that the defendants either did not have the[ ] favorable opinions on future prospects when they made the statements or that the favorable opinions were without a basis in fact.'") (quoting *In re Time Warner Inc. Securities Litig.*, 9 F.3d 259, 266 (2d Cir.1993)).

[89] **Plaintiffs' Response:** Plaintiffs object to the inclusion of this instruction in its entirety.  Defendant's proposed instruction misapprehends the elements of this claim.  *See supra* note 80.

**First Element**

(*Primary Violation—"Not Know of the Untruth"*)

Regarding the second sub-element to prove that GAW Miners and ZenMiner committed a primary violation, Plaintiffs must prove that they did not know "of the untruth" of the statements Plaintiffs allege were misstatements of a material fact or of the Companies' omissions to state a material fact . This means that Plaintiffs did not know that the untrue statements made by GAW Miners and ZenMiner were untrue or did not know of the omissions.[90] "To know of the untruth" means to have actual knowledge that the statements were untrue. To know of the omission means to have actual knowledge of the omission. Under this standard, Plaintiffs were under no duty to investigate or verify the allegedly untrue statements or omissions.[91] If Plaintiffs demonstrate they did not actually know the statements were untrue when made or did not actually know of the omissions, this element is satisfied.[92] [93]

---

[90] *Giacomi*, 242 Conn. at 51.

[91] *See, e.g.*, *DMK Biodiesel, LLC v. McCoy*, 290 Neb. 286, 295 (2015) ("Courts construing similar language in § 12(2) of the Securities Act of 1933 and state statutes derived from § 410(a)(2) of the 1956 Uniform Securities Act have held that it bars recovery only when an investor has 'actual knowledge that a representation is false or knows that existing information has been withheld.'") (quoting *Wright v. Nat'l Warranty Co.*, 953 F.2d 256, 262 (6th Cir. 1992)); *MidAmerica Fed. Sav. & Loan Ass'n v. Shearson/Am. Exp., Inc.*, 886 F.2d 1249, 1257 (10th Cir. 1989) (interpreting Section 12(2) of the Securities Act and the Oklahoma Securities Act to require only that purchasers show a lack of actual knowledge of the untruth or omission; *Dunn v. Borta*, 369 F.3d 421, 428-29 (4th Cir. 2004) (same, regarding the Virginia Securities Act).

[92] *See supra* note 80; *see also Giacomi*, 242 Conn. at 46 (prima facie case includes proving that "the buyer did not know of the untruth or omission," whereas the defendant's affirmative defense may be established by "persuading the fact finder that it not know, *and in the exercise of reasonable care could not have known*, of the untruth or omission") (emphasis added).

[93] **Defendant:** Plaintiffs' proposed instruction regarding what the knowledge requirement does not require—*i.e.*, "Plaintiffs were under no duty to investigate or verify the allegedly untrue statements or omissions"—is unnecessary, one-sided and unfairly prejudicial to Mr. Fraser. FRE 403. Plaintiffs' instruction already states, and Defendant agrees, that to "know the untruth" requires actual knowledge. Further elaboration on this point in the next two sentences is unnecessary and

**[Defendant]**   Regarding the third sub-element to prove that GAW Miners and ZenMiner committed a primary violation, Plaintiffs must prove that they did not know "of the untruth" of the statements Plaintiffs allege were misstatements of a material fact or omissions to state a material fact.   This means that Plaintiffs did not know that the untrue statements made by GAW Miners and ZenMiner were untrue.[94]   "To know of the untruth" means to have actual knowledge that the statements were untrue.   Since this is a class action, Plaintiffs must prove on a class-wide basis that the class members did not know of the untruth of the statements in question.[95]

---

prejudicial.   Plaintiffs' instruction also fails to acknowledge that knowledge must be proven on a class-wide basis.

**Plaintiffs' Response:** The proposed instruction accurately states the law and will assist the jury in understanding what is, or is not, required for a class member to "know of the untruth." Additionally, the jury does not need to be instructed, for each element of each claim, that proof must establish the element on a class-wide basis.

[94] *Giacomi*, 242 Conn. at 51.

[95] *See* ECF 97 at 29 (Plaintiffs' brief in support of certification) ("The second element—the buyer's knowledge—is similar to the element of reliance in plaintiffs' 10b-5 claim and can be proven by common evidence.").

**Second Element**
(*Control*)

For the second element of Plaintiffs' "control person" claim against Mr. Fraser for the Companies' alleged securities fraud under the Connecticut Uniform Securities Act, Plaintiffs must prove by a preponderance of the evidence that Mr. Fraser was a control person of GAW Miners and ZenMiner through one or more of the three ways described in the Connecticut Uniform Securities Act.  This is the same determination I have asked you to make regarding Plaintiffs' unregistered securities claims.  Accordingly, your determination of whether Plaintiffs proved that Mr. Fraser did, or did not, meet the elements of the "control person" standard with respect to the unregistered securities claims will apply equally here.

******

[Plaintiffs] In sum, to prevail on their claim that Mr. Fraser is liable to Plaintiffs as a control person for the Companies' alleged securities fraud under the Connecticut Uniform Securities Act, Plaintiffs must prove by a preponderance of the evidence that:  (1) GAW Miners and ZenMiner are liable under Section 36b-29(a) for the offer or sale of securities by means of an untrue statement or an omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they are made, not misleading;[96] and (2) Mr. Fraser was a "control person" of GAW Miners and ZenMiner according to one or more of the three means of demonstrating "control" that I previously described.

---

[96] **Defendant:** As proposed, this paragraph is unfairly prejudicial to Mr. Fraser because it does not list all the elements of Plaintiffs' claim under § 36b-29(a)(2).

**Plaintiffs' Response:** Defendant's objection misapprehends the elements of this claim.  *See supra* note 80.

**[Defendant]**  In sum, to prevail on their claim that Mr. Fraser is liable to Plaintiffs as a control person for the Companies' alleged securities fraud under the Connecticut Uniform Securities Act, Plaintiffs must prove by a preponderance of the evidence that:  (1) GAW Miners and ZenMiner offered or sold securities by means of an untrue statement of material fact or an omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they are made, not misleading, GAW Miners and ZenMiner knew or should have known of the untruth of the statements or omissions at issue, and Plaintiffs did not know of the untruth of the statements and omissions at issue; and (2) Mr. Fraser was a "control person" of GAW Miners and ZenMiner according to one or more of the three means of demonstrating "control" that I previously described.

**Mr. Fraser's Proposed Jury Instruction No.   —Defense Under CUSA § 36b-29(c)**

Even if you find that Plaintiffs have proven by a preponderance of the evidence all the elements of their "control person" claim against Mr. Fraser, based on the Companies' alleged securities fraud under the Connecticut Uniform Securities Act, you must consider the following defense.

A person is not liable as a "control person" under the Connecticut Uniform Securities Act if he proves by a preponderance of the evidence that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist.[97]

Thus, Mr. Fraser is not liable if he proves by a preponderance of the evidence that he did not know, and in the exercise of reasonable care could not have known, of the Companies' allegedly untrue statements of material fact.

If Mr. Fraser satisfies his burden of proof on this defense, then you must decide this claim in Mr. Fraser's favor.

---

[97] CUSA § 36b-29(c) ("Every person who directly or indirectly controls a person liable under subsections (a) and (b) of this section, every partner, officer or director of such a person, every person occupying a similar status or performing similar functions, every employee of such a person who materially aids in the act or transaction constituting the violation and every broker-dealer or agent who materially aids in the act or transaction constituting the violation are also liable jointly and severally with and to the same extent as such person, unless the person who is so liable sustains the burden of proof that he did not know, and in exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. There shall be contribution as in cases of contract among the several persons so liable.").

---

**III.     Aiding and Abetting the Sale of Securities in Violation of Section 36b-29(a)(2) of the Connecticut Uniform Securities Act**

---

Proposed Jury Instruction No. __

**[Plaintiffs]** Plaintiffs allege that Mr. Fraser is also liable for the Companies' primary violations of Section 36b-29(a)(2)—that is, for GAW Miners' and ZenMiner's alleged fraud in the offer or sale of a security under the Connecticut Uniform Securities Act—because Mr. Fraser aided and abetted the Companies' primary violations.[98]

You should keep in mind that liability for aiding and abetting is different from "control person" liability.  A person can be liable as an aider and abettor for violations of the Connecticut Uniform Securities Act even if they are not liable as a control person, and vice-versa.  So regardless of whether you find that Mr. Fraser was a control person of the Companies, you must separately consider whether he aided and abetted the Companies' alleged violations of Section 36b-29 of the Act.[99]

In order for Plaintiffs to establish that Mr. Fraser is liable for aiding and abetting GAW Miners' and ZenMiner's alleged fraud in the offer or sale of a security, Plaintiffs must prove each of the following three elements by a preponderance of the evidence:

(1) First, Plaintiffs must prove that GAW Miners and ZenMiner committed a primary

violation of the Connecticut Uniform Securities Act by offering or selling securities by

---

[98] *See Giacomi*, 242 Conn. at 47 (referring to liability under the Act's "material assistance" provision as "aiding and abetting" liability).

[99] **Defendant:** Plaintiffs instructions are unnecessary and one-sided.  FRE 403.  There is no need to instruct the jury that Mr. Fraser can be liable under one claim, even if not liable under the other, or vice-versa.  The Court will instruct the jury separately on each claim.

**Plaintiffs' Response:** Plaintiffs are asserting two separate theories of secondary liability relating to the same underlying alleged primary violation.  It is foreseeable that the jury may not understand the relationship between the two claims.  Plaintiffs' proposed instruction addresses this risk of confusion while accurately stating the law.

means of an untrue statement of a material fact or any omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they are made, not misleading.

(2) <u>Second</u>, Plaintiffs must prove that Mr. Fraser materially assisted the Companies in the offer or sale of the alleged securities at issue.

(3) <u>Third</u>, Plaintiffs must prove that Mr. Fraser materially assisted the Companies in their primary violation of the Act.  Here, that means Plaintiffs must show that Mr. Fraser materially assisted the Companies in offering or selling the alleged securities by means of an untrue statement of a material fact or any omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they are made, not misleading.[100] [101]

---

[100] Conn. Gen. Stat. § 36b-29(a)(2); *Giacomi*, 242 Conn. at 47, 52-53.

[101] **Defendant**: (1) For the second and third elements, as proposed by Plaintiffs, referring to the "the securities at issue" is misleading, in that it suggests the Products are in fact securities.  FRE 403. (2) Plaintiffs' instruction also does not set forth all of the elements of an aiding and abetting claim under the CUSA, specifically, Plaintiffs' burden to prove that defendant "knew or in the exercise of reasonable care should have known of the untruth or omission."  CUSA § 36b-29(a)(2); *see also Connecticut Nat. Bank v. Giacomi*, 242 Conn. 17, 46-47 (1997) (for aider and abettor liability under CUSA § 36b-29(a)(2), explaining that "the buyer must also meet a burden of production concerning the issue of whether the aider and abettor knew or should have known of the untruth or omission.  If the buyer meets this burden of production, the burden of proof on this issue shifts, so that the aider and abettor then bears the burden of persuading the fact finder that it did not know, and in the exercise of reasonable care could not have known, of the untruth or omission."). (3) Since this is a summary instruction of the various elements of an aiding and abetting claim under the CUSA, a simplified and streamlined version will be less confusing for the jury.  FRE 403.

**Plaintiffs' Response:** Regarding objection (2), Defendant's objection is contrary to both the Connecticut Uniform Securities Act and the Connecticut Supreme Court's articulation of the burden of proof in *Connecticut National Bank v. Giacomi*, 242 Conn. 17 (1997).  It is the aider and abettor's burden to "persuad[e] the fact finder that it did not know, and in the exercise of reasonable care could not have known, of the untruth or omission." *Giacomi*, 242 Conn. at 46; *see also* Conn. Gen. Stat. § 36b-29(a)(2) ("who does not sustain the burden of proof that he did not

[**Defendant**]   Plaintiffs allege that Mr. Fraser is also liable for the Companies' primary violations of Section 36b-29(a)(2)—that is, for GAW Miners' and ZenMiner's alleged fraud in the offer or sale of a security under the Connecticut Uniform Securities Act—because Mr. Fraser aided and abetted the Companies' primary violations.

In order for Plaintiffs to establish that Mr. Fraser is liable for aiding and abetting GAW Miners' and ZenMiner's alleged fraud, Plaintiffs must prove each of the following three elements by a preponderance of the evidence:

(1) GAW Miners and ZenMiner committed a primary violation of the Connecticut Uniform

Securities Act by offering or selling securities by means of an untrue statement of a

---

know"). Plaintiffs' burden is a burden of *production* and requires only the production of "some evidence relevant to the aider and abettor's knowledge of the untruth or omission **before that issue gets to the fact finder**." *Giacomi*, 242 Conn. 47 n.34 (emphasis added). But the alleged aider and abettor "bears the ultimate burden of persuasion" on this issue. *Id.* For that reason, instructing the jury on Plaintiffs' preliminary burden of production would be erroneous. Regarding objection (3), *see supra* note 1.

**Defendant's Response:** Plaintiffs misconstrue *Giacomi*, which clearly lays out that both plaintiffs and defendants have burdens with regard to a defendant's knowledge. Plaintiffs' formulation of the burdens of proofs eliminates their burden entirely, which is inconsistent with the clear language of the statute and *Giacomi*. Conn. Gen. Stat. § 36b-29(a)(2) ("Any person who: … offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, **who knew or in the exercise of reasonable care should have known of the untruth or omission**, the buyer not knowing of the untruth or omission, and **who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission** …" (emphasis supplied); *Connecticut Nat. Bank v. Giacomi*, 242 Conn. 17, 46-47 (1997) ("the buyer must also meet a burden of production concerning the issue of whether the aider and abettor knew or should have known of the untruth or omission. If the buyer meets this burden of production, the burden of proof on this issue shifts, so that the aider and abettor then bears the burden of persuading the fact finder that it did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.").

material fact an omission to state a material fact necessary to make the statements made,

in the light of the circumstances under which they are made, not misleading.

(2) Mr. Fraser knew or should have known of the untruth of the statements at issue.

(3) Mr. Fraser materially assisted the Companies in (i) the offer or sale of the purported

securities and (ii) the violations at issue.[102]

---

[102.] Conn. Gen. Stat. § 36b-29(a)(2) ("Any person who: … offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, who knew or in the exercise of reasonable care should have known of the untruth or omission, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight per cent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security."); *see also Connecticut Nat. Bank v. Giacomi*, 242 Conn. 17, 46-47 (1997):

> First, there must be a primary violator. … In order for conduct to violate this section as 'material assistance,' to which we refer as aiding and abetting, it must also be proven that the aider or abettor materially assisted the primary violator: (1) in the offer or sale; and (2) in the violation by which the primary violator accomplished the offer or sale.  In addition to the foregoing elements of proof, the buyer must also meet a burden of production concerning the issue of whether the aider and abettor knew or should have known of the untruth or omission.  If the buyer meets this burden of production, the burden of proof on this issue shifts, so that the aider and abettor then bears the burden of persuading the fact finder that it did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.

**First Element**
(*Primary Violation*)

[**Plaintiff**] For the first element of an aiding and abetting claim under the Connecticut Uniform Securities Act against Mr. Fraser, Plaintiffs must prove that GAW Miners and ZenMiner committed a primary violation of Section 36b-29(a)(2) of the Act (1) by offering or selling securities by means of an untrue statement, or any omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they are made, not misleading; and (2) that Plaintiffs did not know of the untruth of the statements or omissions at issue.  This is the same determination I asked you to make for the last claim. Accordingly, if you find that GAW Miners and ZenMiner violated Section 36-29(a)(2) of the Connecticut Uniform Securities Act when you are assessing the previous claim, that determination will apply equally here.[103]

[**Defendant**]  For the first element of an aiding and abetting claim under the Connecticut Uniform Securities Act against Mr. Fraser, Plaintiffs must prove that GAW Miners and ZenMiner committed a primary violation of Section 36b-29(a)(2) of the Act (1) by offering or selling securities by means of an untrue statement, or any omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they are made, not misleading; (2) that GAW Miners and ZenMiner knew or should have known of the untruth of the statements at issue; and (3) that Plaintiffs did not know of the untruth of the statements or omissions at issue.  This is the same determination I asked you to make for the last claim.

---

[103] **Defendant:** The instruction does not set forth clearly the elements of the primary violation. FRE 403.

**Plaintiffs:** To the extent Defendant is contending that Plaintiffs are omitting an element necessary to prove a primary violation of CUSA by the Companies, he is misapprehending the elements of a CUSA claim.  *See supra* note80.

Accordingly, if you find that GAW Miners and ZenMiner violated Section 36-29(a)(2) of the Connecticut Uniform Securities Act when you are assessing the previous claim, that determination will apply equally here.

**Mr. Fraser's Proposed Jury Instruction No.    —Second Element**
**(Mr. Fraser's Alleged Knowledge)**

For the second element of their aiding and abetting claim under the Connecticut Uniform

Securities Act, Plaintiffs must prove that Mr. Fraser knew or should have known of the alleged

untruth of the statements of material fact by means of which GAW Miners and ZenMiner offered

or sold securities.[104] [105]

---

[104.] CUSA § 36b-29(a)(2) ("Any person who: … offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, who knew or in the exercise of reasonable care should have known of the untruth or omission, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight per cent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security."); *see also Connecticut Nat. Bank v. Giacomi*, 242 Conn. 17, 46-47 (1997) ("In addition to the foregoing elements of proof, the buyer must also meet a burden of production concerning the issue of whether the aider and abettor knew or should have known of the untruth or omission.  If the buyer meets this burden of production, the burden of proof on this issue shifts, so that the aider and abettor then bears the burden of persuading the fact finder that it did not know, and in the exercise of reasonable care could not have known, of the untruth or omission.").

[105] **Plaintiffs:** Defendant's proposed instruction misapprehends the burden of proof for this claim, and it should not be given to the jury. *See supra* note 101.

**Second Element**
*"Material Assistance in the Offer or Sale of Securities"*[106]

The second element requires Plaintiffs to prove that Mr. Fraser "materially assisted" GAW Miners and ZenMiner in the offer or sale of securities.[107]

Assistance is "material" if it has a natural tendency to influence, or is capable of influencing, the decision by the purchaser.[108] [109]

**Third Element**
*"Material Assistance in the Primary Violation"*

Finally, the third element requires Plaintiffs to prove that Mr. Fraser "materially assisted" GAW Miners and ZenMiner in offering or selling the securities by means of an untrue statement of a material fact or an omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they are made, not misleading. In other words, this third element concerns Plaintiffs' allegations that Mr. Fraser materially assisted the Companies with the violation of the Connecticut securities fraud law, whereas the second element concerned Plaintiffs'

---

[106] Mr. Fraser proposes an alternative jury instruction for what Plaintiffs refer to as the "Second Element" and "Third Element" (Paragraphs 5-9).  *See* Mr. Fraser's Proposed Jury Instruction No. __—Third Element (Control—Material Assistance).

[107] **Defendant:** Mr. Fraser generally objects to the remaining paragraphs of this instruction as unnecessarily repetitive and cumulative.  FRE 403.

**Plaintiffs' Response:** *See supra* footnote 27.

[108] *Giacomi*, 242 Conn. at 52-53.

[109] **Defendant:** Mr. Fraser objects that the "capable of influencing" language (for the definition of "material assistance") is vague, and therefore, unfairly prejudicial to Mr. Fraser.  FRE 403.  Mr. Fraser repeats this objection wherever this phrase is used.

**Plaintiffs' Response:** This instruction is drawn verbatim from the Connecticut Supreme Court's decision in *Giacomi*. Moreover, this definition of "material" is routinely used in jury instructions in other contexts.  *See, e.g.*, *United States v. Brettschneider*, 832 F. App'x 14, 17 (2d Cir. 2020) (noting with approval a jury instruction that "[a] fact is material if it has a natural tendency to influence or is capable of influencing the government's decisions or activities," in a criminal trial concerning violations of 18 U.S.C. § 1001).

allegations that Mr. Fraser materially assisted the Companies with the offer or sale of the securities at issue in the alleged fraud.

"Material assistance" has the same meaning I explained to you with respect to the second element.  That is, assistance is "material" if it has a natural tendency to influence, or is capable of influencing, the decision by the purchaser.[110]

Assistance may consist of conduct or statements. It is not necessary to find that Mr. Fraser himself made an untrue statement, or an omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they are made, not misleading, in order for him to have materially assisted the Companies' offer or sale of securities.[111]  For example, statements by Mr. Fraser that emphasized the Companies' untrue statements, or induced Plaintiffs to rely on the Companies' untrue statements, may constitute "material assistance" of the Companies' commission of fraud in the offer or sale of securities.[112]  These are just examples of statements or conduct that bear on the issue of material assistance.  Ultimately, whether Mr. Fraser provided material assistance to GAW Miners and ZenMiner in violating Connecticut securities fraud law is a question of fact for you to decide.[113]

---

[110] *Giacomi*, 242 Conn. at 52-53.

[111] *Audet v. Fraser*, 2017 WL 4542386, at *9-10.

[112] *Giacomi*, 242 Conn. at 53, 54 (holding that "material assistance" under the Uniform Securities Act could be established by "[a] seemingly innocuous oral communication not containing affirmative misrepresentations . . . if it is used to emphasize, or induce reliance on, some other representation that is false or misleading") (internal quotation marks and citations omitted).

[113] **Defendant:** Plaintiffs' proposed instruction on what Plaintiffs do <u>not</u> need to prove—*i.e.*, "[i]t is not necessary to find that Mr. Fraser himself made an untrue statement, or an omission—is one-sided and unfairly prejudicial.  FRE 403.  It is also unnecessary since the Court will instruct the jury on what is material assistance.  Second, the one-sided listing of *some* factors the jury might consider to assess "material assistance" is also unfairly prejudicial to Mr. Fraser, likely to confuse the jury and argumentative.  FRE 403; *see also see also State v. DelVecchio*, 191 Conn. 412, 421 (1983) (recognizing that "the use of examples in jury instructions" can be unfairly prejudicial to a

**Mr. Fraser's Proposed Jury Instruction No.    —Third Element
(Control—Material Assistance)**

For the third element of their aiding and abetting claim under the Connecticut Uniform Securities Act, Plaintiffs must prove that Mr. Fraser materially assisted GAW Miners and ZenMiner in two ways:

<u>One</u>, Mr. Fraser materially assisted GAW Miners and ZenMiner in offering and selling the alleged securities at issue—*i.e.*, Hashlets, Hashpoints, Paycoin and Hashstakers; and

<u>Two</u>, Mr. Fraser materially assisted GAW Miners and ZenMiner in their violation of the Connecticut Uniform Securities Act. For purposes of this claim, that means that Plaintiffs must prove that Mr. Fraser materially assisted GAW Miners and ZenMiner in offering and selling Hashlets, Hashpoints, Paycoin and Hashstakers by means of an untrue statement of a material fact

---

party because 'the jury is likely to give undue weight to examples, since they are easier to comprehend, and it may simply compare the defendant's conduct with the example.'") (omitting internal citation).

**Plaintiffs' Response:** Plaintiffs' proposed instruction accurately states the law and will assist the jury in understanding "material assistance" by describing both what is, and what is not, required for it to be proved. Regarding Defendant's objection to "examples," as Plaintiffs noted earlier, the cases cited by Defendant do not articulate a general rule against the use of examples or factors in jury instructions. As written, the proposed instruction's examples provide helpful context to the jury while minimizing the risk that the jury will place undue weight on them. ("These are **just examples** of statements or conduct that bear on the issue of material assistance. Ultimately, whether Mr. Fraser provided material assistance to GAW Miners and ZenMiner in violating Connecticut securities fraud law **is a question of fact for you to decide**.").

or omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.[114] [115]

Assistance is "material" if it has a natural tendency to influence, or is capable of influencing, the decision by the purchaser.   Material assistance requires proof of ample involvement and substantial assistance in accomplishing the violations charged, and not simply a failure to act.[116] [117]

---

[114] CUSA § 36b-29(a)(2) ("Any person who: … offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, who knew or in the exercise of reasonable care should have known of the untruth or omission, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight per cent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security."); *see also Connecticut Nat. Bank v. Giacomi*, 242 Conn. 17, 46-47 (1997) ("In order for conduct to violate this section as 'material assistance,' to which we refer as aiding and abetting, it must also be proven that the aider or abettor materially assisted the primary violator: (1) in the offer or sale; and (2) in the violation by which the primary violator accomplished the offer or sale.").

[115] **[OMITTED]**.

[116] *Rota v. Colonial Realty/USA Corp.*, No. CV 920505840S, 1996 WL 434228, at *8-9, (Conn. Super. Ct. July 17, 1996) (citing *In re Ivan F. Boesky Sec. Litig.*, 669 F. Supp. 659, 661 (S.D.N.Y. 1987)).

[117] **Plaintiffs:** Defendants' proposed instruction concerning "proof of ample involvement and substantial assistance in accomplishing the violations charged, and not simply a failure to act" is inconsistent with the Connecticut Supreme Court's discussion of "material assistance" in *Connecticut National Bank v. Giacomi*, 242 Conn. 17, 53 (1997). The authority cited by Defendant—a trial court decision citing an out-of-state federal case—pre-dates *Giacomi*. The definition from *Giacomi* should be used without Defendant's additional proposed instruction.  *See Audet v. Fraser*, No. 3:16-CV-940 (MPS), 2017 WL 4542386, at *10 (D. Conn. Oct. 11, 2017) (citing *Giacomi*'s definition of "material assistance").

*******

[Plaintiffs] In sum, to prevail on their claim that Mr. Fraser is liable for aiding and abetting the Companies' alleged securities fraud under the Connecticut Uniform Securities Act, Plaintiffs must prove by a preponderance of the evidence that:  (1) GAW Miners and ZenMiner are liable under Section 36b-29(a)(2) for the offer or sale of securities by means of an untrue statement or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; (2) Mr. Fraser materially assisted the Companies in the offer or sale of securities; and (3) Mr. Fraser materially assisted the Companies in offering or selling the securities by means of an untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.[118]

[Defendant] In sum, to prevail on their claim that Mr. Fraser is liable for aiding and abetting the Companies' alleged securities fraud under the Connecticut Uniform Securities Act, Plaintiffs must prove by a preponderance of the evidence that:  (1) GAW Miners and ZenMiner are liable under Section 36b-29(a)(2) for the offer or sale of securities by means of an untrue statement or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; (2) Mr. Fraser knew or should have known of the alleged untruth of the statements or omissions at issue; (3) Mr. Fraser materially assisted the Companies in the offer or sale of securities; and (4) Mr. Fraser materially

---

[118] **Defendant:** Mr. Fraser's proposed version is included below. It more accurately describes the burden of proof, and adds the missing element of an aiding and abetting claim which is not included in Plaintiffs' proposed instruction, *i.e.*, the defendant knew or should have known of the untruth of the statements or omissions at issue. See CUSA § 36b-29(a)(2).

**Plaintiffs' Response:** Defendant's proposed instruction misapprehends the burden of proof for this claim, and it should not be given to the jury. *See supra* note 101.

assisted the Companies in offering or selling securities by means of an untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

**Mr. Fraser's Proposed Jury Instruction No.      —Defense Under CUSA § 36b-29(a)(2)**

Even if you find that Plaintiffs have proven by a preponderance of the evidence all three elements of aiding and abetting fraud under Section 36b-29(a)(2) of the Connecticut Uniform Securities Act, you must consider the following defense.

You must decide whether Mr. Fraser has proven by a preponderance of the evidence that he did not know, and in the exercise of reasonable care could not have known, of the Companies' alleged untrue statements of a material fact or omissions to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.[119]

Mr. Fraser's burden on this defense does not relieve Plaintiffs of their burden to prove, in the first place, that Mr. Fraser knew or should have known of the untruth of any such statements or omissions.[120]

---

[119] Conn. Gen. Stat. Ann. § 36b-29(a)(2) ("Any person who: … offers or sells or materially assists any person who offers or sells a security by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, who knew or in the exercise of reasonable care should have known of the untruth or omission, the buyer not knowing of the untruth or omission, and who does not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of the untruth or omission, is liable to the person buying the security, who may sue either at law or in equity to recover the consideration paid for the security, together with interest at eight per cent per year from the date of payment, costs and reasonable attorneys' fees, less the amount of any income received on the security, upon the tender of the security, or for damages if he no longer owns the security."); *see also Connecticut Nat'l Bank v. Giacomi*, 242 Conn. 17, 46-47 (1997).

[120] **Plaintiffs:** Defendant's instruction is incomplete because it refers only to "alleged untrue statements," but not to omissions.  It should refer to both untrue statements of material facts and omissions to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.  Conn. Gen. Stat. § 36b-29(a)(2). The penultimate sentence of Defendant's proposed instruction misapprehends the elements of this claim.  *See supra* notes 80 and 101.

If Mr. Fraser satisfies his burden of proof on this defense, then you must decide this claim in Mr. Fraser's favor.

---

**Defendant's Response:** Plaintiffs' first objection has been addressed above. As to the second objection, for the reasons discussed *supra* in note 101, this is the correct formulation of the parties' respective burdens of proof.

> **IV.    Control Person Liability Pursuant to Section 20(a) of the Securities Exchange Act for Federal Securities Fraud**

<u>Jury Instruction No. __</u>

Plaintiffs' next claim against Mr. Fraser arises under a federal statute and a rule that accompanies that statute.  The statute at issue is the Securities Exchange Act of 1934, which I will refer to as "the Exchange Act."  The corresponding federal rule at issue is Rule 10b-5.  Like the Exchange Act, Rule 10b-5 has the force of law.  For simplicity, I will refer to Section 10(b) of the Exchange Act and Rule 10b-5 together as "Rule 10b-5."[121]

Plaintiffs allege that Defendants GAW Miners and ZenMiner violated Rule 10b-5, and that Mr. Fraser is liable under Section 20(a) of the Exchange Act for the Companies' "primary" violations of Rule 10b-5 because he was a "control person" of the Companies.

I will now set out the elements of this claim.  In order to establish that Mr. Fraser is liable under Section 20(a) as a "control person," Plaintiffs must prove each of the following three elements by a preponderance of the evidence:

(1) <u>First</u>, Plaintiffs must prove that Defendants GAW Miners and ZenMiner committed primary violations of Rule 10b-5.

(2) <u>Second</u>, Plaintiffs must prove that Mr. Fraser directly or indirectly controlled GAW Miners and ZenMiner.

(3) <u>Third</u>, Plaintiffs must prove that Mr. Fraser was a culpable participant in the securities fraud violations committed by the Companies.[122] [123]

---

[121] **[OMITTED]**

[122] *Audet v. Fraser*, 2017 WL 4542386, at *6.

[123] **Defendant:**  (1) Mr. Fraser objects to the use of "Defendants" to describe the Companies.  (2) The Third element should read:  "Plaintiffs must prove that Mr. Fraser was, in some meaningful

78

I will now instruct you on each of these three elements.

---

sense, a culpable participant in the securities fraud violations committed by the Companies." *Brodzinsky v. FrontPoint Partner LLC*, No. 3:11CV10 WWE, 2012 WL 1468507, at *5 (D. Conn. Apr. 26, 2012) ("To establish a *prima facie* case of control person liability in the Second Circuit, a plaintiff must show '(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud.'") (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)).

**First Element**
(*Primary Violation*)

First, Plaintiffs must prove by a preponderance of the evidence that GAW Miners and ZenMiner violated Rule 10b-5.  In order to do so, Plaintiffs must prove each of the following, five sub-elements:

(1) <u>First</u>, GAW Miners and ZenMiner did any one or more of the following in connection with Plaintiffs' purchase or sale of a security:

    i.   employed a device, scheme, or artifice to defraud; or

    ii.  made an untrue statement of a material fact or omitted to state a material fact, which made what was said, under the circumstances, misleading; or

    iii.  engaged in a fraudulent act, practice, or course of business.

(2) <u>Second</u>, Plaintiffs justifiably relied on GAW Miners' and ZenMiner's statements.

(3) <u>Third</u>, GAW Miners and ZenMiner acted with the intent to defraud or with reckless disregard for the truth.[124] [125]

(4) <u>Fourth</u>, GAW Miners' and ZenMiner's conduct was the proximate cause of the injury Plaintiffs claimed to have suffered.

---

[124] *SEC v. Wyly*, No. 10-cv-7560 (SAS) (S.D.N.Y. May 7, 2014), Tr. at 3252 ("Second, the SEC must prove that the defendant acted with intent to defraud or with reckless disregard for the truth."); *SEC v. Tourre*, No. 10cv-3229-KBF (S.D.N.Y. July 31, 2013), ECF No. 465 (instructions to jury) at 19 ("The SEC must next establish by a preponderance of the credible evidence that Mr. Tourre knowingly participated in a scheme to defraud with the intent to deceive, manipulate or defraud, or with reckless disregard for the truth.").

[125] **Defendant**:  Consistent with Plaintiffs' cited sources, element 3 should read:  "GAW Miners and ZenMiner knowingly acted with the intent to defraud or with reckless disregard for the truth. *See also* 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-3 (2013) ("the defendant acted knowingly and with intent to defraud.").

(5) <u>Fifth</u>, GAW Miners and ZenMiner used, or caused to be used, means and instrumentalities of interstate commerce.[126]

I will now explain each of these five sub-elements in detail.

---

[126] Adapted from 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-3 (2013); *see also ATSI Commcn's, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007) ("To state a claim under Rule 10b-5 for misrepresentations, a plaintiff must allege that the defendant (1) made misstatements or omissions of material fact, (2) with scienter, (3) in connection with the purchase or sale of securities, (4) upon which the plaintiff relied, and (5) that the plaintiff's reliance was the proximate cause of its injury.").

**First Element**
*"Fraudulent Act"*

[**Plaintiffs**] In order to prove that GAW Miners and ZenMiner committed a primary violation of Rule 10b-5, the first sub-element that Plaintiffs must prove by a preponderance of the evidence is that, in connection with Plaintiffs' purchase or sale of a security, GAW Miners and ZenMiner committed a fraudulent act.  Plaintiffs can satisfy this sub-element by proving that the Companies did one of the three following things:

1. First, employed a device, scheme, or artifice to defraud; or

2. Second, made an untrue statement of material fact, or omitted to state a material fact, which made what was said, under the circumstances, misleading; or

3. Third, engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller.[127]

The first way Plaintiffs can prove a fraudulent act is by proving that the Companies "employed a device, scheme, or artifice to defraud."  A device, scheme, or artifice to defraud is a plan for the accomplishment of a fraudulent objective. Fraud is a general term which covers efforts that individuals may devise to take advantage of others by deception.  The law that GAW Miners and ZenMiner are alleged to have violated prohibits all kinds of manipulative and deceptive acts in connection with the sale or purchase of securities.  It may involve false or fraudulent pretenses,

---

[127] Adapted from 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-4 (2013).

82

untrue statements or omissions of material facts, or promises and patterns of conduct calculated to deceive.[128] [129]

The fraudulent or deceitful conduct alleged does not need to relate to the investment value of the securities involved in this case.[130] [131]

The second way Plaintiffs can prove a fraudulent act is by proving that the Companies made an untrue statement of material fact or omitted to state a material fact, which made what was said, under the circumstances, misleading.  With regard to the alleged misrepresentations (and omissions), you must determine whether the statement was true or false at the time that it was made (and, in the case of alleged omissions, whether the omission was misleading). If you find that Plaintiffs have satisfied their burden to prove that a statement was false at the time it was

---

[128] *Id.*; *SEC v. Tourre*, No. 10cv-3229-KBF (S.D.N.Y. July 31, 2013), ECF No. 465 (instructions to jury) at 17-18, 35-36.

[129] **Defendant**: The statement, "all kinds of manipulative and deceptive acts" is overly broad and vague.  FRE 403.

**Plaintiffs' Response**: This proposed instruction accurately states the law and is routinely given. *SEC v. Tourre*, No. 10cv-3229-KBF (S.D.N.Y. July 31, 2013), ECF No. 465 (instructions to jury) at 17; *SEC v. Wyly*, No. 10-cv-7560 (SAS) (S.D.N.Y. May 7, 2014), Tr. at 3243; *SEC v. Portfolio Advisors Alliance, Inc.*, 16-cv-828-KBW (S.D.N.Y. May 14, 2019), ECF No. 299 (instructions to jury) at 110.

[130] 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-4 (2013).

[131] **Defendant:**  Plaintiffs' instruction on what does not constitute fraud is one-sided and unfairly prejudicial to Mr. Fraser.  It is also unnecessary since Plaintiffs' preceding instruction defines "fraud."  In addition, it is confusing because it could be read to mean that the fraud could be unrelated to Plaintiffs' alleged damages ("The fraudulent or deceitful conduct alleged does not need to relate to the investment value of the securities involved in this case.").  FRE 403.

**Plaintiffs' Response:** Plaintiffs' proposed instruction makes clear the basic proposition that a fraudulent statement or act does not need to relate to the value of a security (*i.e.*, what a security is worth) in order to meet this element of securities fraud.  This instruction is common.  *See SEC v. Tourre*, No. 10cv-3229-KBF (S.D.N.Y. July 31, 2013), ECF No. 465 (instructions to jury) at 18.

made, or that an omission was misleading, you must next determine whether the fact misstated or omitted was material under the circumstances.  I instructed you on materiality earlier.  The same instructions regarding materiality apply here.[132]

The third way Plaintiffs can prove a fraudulent act is by proving that the Companies engaged in an act, practice, or course of business that operated, or would operate, as a fraud or deceit upon a purchaser or seller.   An "act" is a thing that is done, and a "practice" is an "action" or "deed."[133] [134]

---

[132] **Defendant:** (1) This instruction is unnecessarily cumulative.  FRE 403.  The Court should instruct the jury once on what constitutes a material misrepresentation (either in the context of the Section 20(a) claim or the CUSA claim for the offer or sale of securities by means of an untrue statement of material fact, whichever claim the Court ultimately instructs the jury on first.) (2) Mr. Fraser objects to the last two sentences of the instruction because they purport to set forth what is <u>not</u> material or what Plaintiffs need <u>not</u> prove.  These one-sided instructions are unfairly prejudicial to Mr. Fraser.  They are also unnecessary since the Court will instruct the jury on what is a material fact and what Plaintiffs must prove.  FRE 403.  (3) Plaintiffs' instructions do not include instructions for forward-looking statements.  Mr. Fraser has proposed these instructions.

**Plaintiffs:** These sentences have been removed.

[133] *SEC v. Portfolio Advisors Alliance, Inc.*, 16-cv-828-KBW (S.D.N.Y. May 14, 2019), ECF No. 299 (instructions to jury) at 113-14.

[134] **Defendant**: Plaintiffs' instructions that Plaintiffs may prove a fraudulent act with proof of "an act, practice, or course of business that … would operate… as a fraud," or that, "'would operate as a fraud or deceit upon any person' means that the acts or practices do not need to have actually succeeded in defrauding anyone," is an incorrect statement of the law because it eliminates Rule 10b-5's requirements of reliance and loss causation.  Plaintiffs rely on an SEC enforcement action for these instructions.  But, as Plaintiffs' cited jury instructions reflect, the SEC has a significantly narrower burden of proof on a Rule 10b-5 claim as compared to a private litigant.  *See SEC v. Portfolio Advisors Alliance, Inc.*, 16-cv-828-KBW (S.D.N.Y. May 14, 2019), ECF No. 299 (instructions to jury) at108:11-16 (SEC must prove fraudulent conduct and scienter).  (2) The qualitative statement that "[t]he words 'act' and 'practice' are expansively defined and capture a wide range of conduct," are one-sided and unfairly prejudicial to Mr. Fraser.  They are also unnecessary since the Court will instruct the jury on what those words mean.  FRE 403.

[134] **Defendant**: Plaintiffs' instructions that Plaintiffs may prove a fraudulent act with proof of "an act, practice, or course of business that … would operate… as a fraud," or that, "'would operate as a fraud or deceit upon any person' means that the acts or practices do not need to have actually succeeded in defrauding anyone," is an incorrect statement of the law because it eliminates Rule

Plaintiffs must also prove that the fraudulent act was done "in connection" with the purchase or sale of a security.  The "in connection with" aspect of the "fraudulent act" sub-element is satisfied if you find that there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities.  Fraudulent conduct may be "in connection with" the purchase or sale of securities if you find that the Companies' allegedly fraudulent conduct "touched upon" Plaintiffs' purchase or sale of securities from the Companies.[135]

[**Defendant**]   In order to prove that GAW Miners and ZenMiner committed a primary violation of Rule 10b-5, the first sub-element that Plaintiffs must prove by a preponderance of the evidence is that, in connection with Plaintiffs' purchase or sale of a security, GAW Miners and ZenMiner committed a fraudulent act.  Plaintiffs can satisfy this sub-element by proving that the Companies did one of the three following things:

1. First, employed a device, scheme, or artifice to defraud; or

2. Second, made an untrue statement of material fact, or omitted to state a material fact, which made what was said, under the circumstances, misleading; or

---

10b-5's requirements of reliance and loss causation.  Plaintiffs rely on an SEC enforcement action for these instructions.  But, as Plaintiffs' cited jury instructions reflect, the SEC has a significantly narrower burden of proof on a Rule 10b-5 claim as compared to a private litigant.  *See SEC v. Portfolio Advisors Alliance, Inc.*, 16-cv-828-KBW (S.D.N.Y. May 14, 2019), ECF No. 299 (instructions to jury) at108:11-16 (SEC must prove fraudulent conduct and scienter).  (2) The qualitative statement that "[t]he words 'act' and 'practice' are expansively defined and capture a wide range of conduct," are one-sided and unfairly prejudicial to Mr. Fraser.  They are also unnecessary since the Court will instruct the jury on what those words mean.  FRE 403.

**Plaintiffs:** We have revised the proposed instruction accordingly.

**Defendant's Response:**  Plaintiffs' revisions do not address the "would operate" language.

[135] Adapted from 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-4 (2013).

3. Third, engaged in an act, practice, or course of business that operated, as a fraud or deceit upon a purchaser or seller.

The first way Plaintiffs can prove a fraudulent act is by proving that the Companies "employed a device, scheme, or artifice to defraud."  A device, scheme, or artifice to defraud is a plan for the accomplishment of a fraudulent objective. Fraud is a general term which covers efforts that individuals may devise to take advantage of others by deception.  The law that GAW Miners and ZenMiner are alleged to have violated prohibits manipulative and deceptive acts in connection with the sale or purchase of securities.  It may involve false or fraudulent pretenses, untrue statements or omissions of material facts, or promises and patterns of conduct calculated to deceive.

The second way Plaintiffs can prove a fraudulent act is by proving that the Companies made an untrue statement of material fact or omitted to state a material fact, which made what was said, under the circumstances, misleading.  With regard to the alleged misrepresentations (and omissions), you must determine whether the statement was true or false at the time that it was made (and, in the case of alleged omissions, whether the omission, when made, was misleading). If you find that Plaintiffs have satisfied their burden to prove that a statement was false at the time it was made, or that an omission when made was misleading, you must next determine whether the fact misstated or omitted was material under the circumstances.  I instructed you on materiality earlier.  The same instructions regarding materiality apply here.  In assessing materiality, you must also distinguish between statements of fact and forward-looking statements.

The third way Plaintiffs can prove a fraudulent act is by proving that the Companies engaged in an act, practice, or course of business that operated as a fraud or deceit upon a purchaser or seller.   An "act" is a thing that is done, and a "practice" is an "action" or "deed."

86

Plaintiffs must also prove that the fraudulent act was done "in connection" with the purchase or sale of a security. The "in connection with" aspect of the "fraudulent act" sub-element is satisfied if you find that there was some nexus or relation between the allegedly fraudulent conduct and the sale or purchase of securities. Fraudulent conduct may be "in connection with" the purchase or sale of securities if you find that the Companies' allegedly fraudulent conduct "touched upon" Plaintiffs' purchase or sale of securities from the Companies.

## First Element
### *"Justifiable Reliance"*[136]

**[Plaintiffs]** In order to prove that GAW Miners and ZenMiner violated Rule 10b-5, the second sub-element that Plaintiffs must prove by a preponderance of the evidence is that they justifiably relied on GAW Miners' and ZenMiner's allegedly untrue statements of a material fact, or their omissions to state a material fact necessary to make a statement made, in light of the circumstances under which it was made, not misleading; or the Companies' fraudulent conduct.

In order to satisfy this element, Plaintiffs must prove two things:

<u>One</u>, Plaintiffs must prove that they relied on the Companies' untrue statements of a material fact, omissions to state a material fact necessary to make a statement made, in light of the circumstances under which it was made, not misleading, or fraudulent conduct when they entered into the transactions which caused them harm—in other words, that Plaintiffs read or saw the false statements and relied on them.[137]

<u>Two</u>, Plaintiffs must prove their reliance on the statements or conduct at issue was reasonable and justified.[138]

The question of whether Plaintiffs relied on GAW Miners' and ZenMiner's statements or conduct is a question of fact for you to determine, like any other fact question. Direct proof of

---

[136]   **Defendant:** Plaintiffs' instruction does not tell the jury how to make a determination of justifiable reliance on a class-wide basis.  *See* Mr. Fraser's Proposed Jury Instruction No. __— Justifiable Reliance (*Class-wide Reliance*).

**Plaintiffs' Response:** Plaintiff's proposed instruction does instruct the jury regarding how it can find class-wide reliance.  *See infra* ("Circumstantial evidence that Plaintiffs relied on the Companies' statements in purchasing the securities at issue may consist of . . . .").

[137] **Defendant:**  The "transactions that caused them harm" language is prejudicial and misleading. FRE 403.

[138]  Adapted from 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-7 (2013).

reliance may be difficult to produce, but it is not required.  As I have explained, circumstantial

evidence of reliance, if you believe it, is of no less value than direct evidence.[139] [140]

    Circumstantial evidence that Plaintiffs relied on the Companies' statements in purchasing

the securities at issue may consist of (1) the nature of the allegedly false statements and (2) the fact

that Plaintiffs made the purchases.[141] [142]  Put another way, if you find that a reasonable person

would not have purchased the securities if GAW Miners and ZenMiner had disclosed the true facts

underlying the alleged misrepresentations, you may draw the inference that Plaintiffs must have

---

[139] Adapted from 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-8 (2013) (model instruction regarding intent and scienter); *cf. also Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 267 (2014) (explaining that "requiring . . . direct proof of reliance would place an unnecessarily unrealistic evidentiary burden on the Rule 10b-5 plaintiff who has traded on an impersonal market.  That is because, even assuming an investor could prove that he was aware of the misrepresentation, he would still have to show a speculative state of facts, *i.e.*, how he would have acted . . . if the misrepresentation had not been made") (internal quotation marks and citations omitted).

[140] **Defendant:** The first sentence is unnecessary, as the jury will only be asked to decide those questions of fact that it may decide.  The last sentence is unnecessary and one-sided in favor of Plaintiffs because the Court will instruct the jury at the outset on how much weight to give circumstantial evidence.  FRE 403.

**Plaintiffs' Response:** Plaintiffs' proposed instruction reminds the jury that elements with which they may be unfamiliar (*e.g.*, reliance or scienter) are fact questions like any other (*e.g.*, misrepresentation of material fact).  Regarding circumstantial evidence, it is not prejudicial to instruct the jury regarding circumstantial evidence a second time in connection with a specific element of a claim, especially where direct evidence is unavailable to prove the claim.  *See, e.g., SEC v. Tourre*, No. 10cv-3229-KBF (S.D.N.Y. July 31, 2013), ECF No. 465 (instructions to jury) at 6 (instructing the jury on direct and circumstantial evidence in preliminary instructions); *id.* at 20 (instructing the jury a second time that "[c]ircumstantial evidence is of no less value than direct evidence" in the context of explaining that direct proof of state of mind "is almost never available and is not required").

[141] *Audet v. Fraser*, 332 F.R.D. 53, 80 (D. Conn. 2019) ("[R]eliance can be shown on a class-wide basis where the nature of the misrepresentations permitted an inference that they were critical to the purchase decision[.]"); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120 (2d Cir. 2013).

[142] **[OMITTED]**

relied on the Companies' misrepresentations in making their purchases.[143]  For example, if you find that the Companies falsely represented to Plaintiffs that payouts from Hashlets were being generated by cryptocurrency mining returns, rather than being generated solely from proceeds from the sales of Hashlets to new investors, you may infer that no reasonable investor would have purchased Hashlets if they had known the truth.[144]  You are not required to draw this inference, but you may do so if you find that, based on the nature of the alleged misrepresentations, any reasonable investor must have relied on them in deciding to purchase the Companies' products.[145]

---

[143] *Audet v. Fraser*, 332 F.R.D. at 80 ("[R]eliance can be shown on a class-wide basis where the nature of the misrepresentations permitted an inference that they were critical to the purchase decision."); *id.* at 81 (collecting cases); *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119-22 (2d Cir. 2013) (holding that payment of an invoice, in a fraudulent overbilling case, "may constitute circumstantial proof of reliance based on the reasonable inference that customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed"); *Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 CIV. 8086 JMF, 2013 WL 5658790, at *10 (S.D.N.Y. Oct. 17, 2013) (concluding that the plaintiffs could "prove reliance on a class-wide basis through common, circumstantial evidence" where "the alleged misrepresentations and omissions . . . were so fundamental to the value of the Notes that it is hard to imagine a reasonable investor purchasing them if the Offering Documents had revealed their true nature").

[144] *Audet v. Fraser*, 332 F.R.D. at 80 ("That inference [of reliance] is even stronger for the alleged misrepresentation that Hashlets were partial interests in physical mining equipment that would generate corresponding mining returns for Hashlet owners, for that statement allegedly masked the truth that Hashlets were simply payouts funded by new investors.  I agree with the Plaintiffs that no reasonable investor would have purchased Hashlets if the Companies disclosed the fact they were being sold as part of a Ponzi scheme.  Other courts have similarly recognized class-wide inferences of reliance in Ponzi scheme cases.") (alterations, internal quotation marks, and citation omitted).

[145] **Defendant**: The first sentence of the instruction is ambiguous and not supported by the cited source.  The rest of the instruction is unfairly prejudicial because it is one-sided, leading in nature and biased towards a finding of reliance.  This is especially true of the Hashlet illustration.  *See, e.g.*, *United States v. Dove*, 916 F.2d 41, 46 (2d Cir. 1990) (finding reversible error where, in order to explain the difference between direct and circumstantial evidence, the trial court used a hypothetical that only pointed towards how guilt could be found, not innocence); *see also State v. DelVecchio*, 191 Conn. 412, 421 (1983) (recognizing that "the use of examples in jury instructions" can be unfairly prejudicial to a party because 'the jury is likely to give undue weight to examples, since they are easier to comprehend, and it may simply compare the defendant's

If you find that Plaintiffs would have engaged in the transactions anyway, such that the misrepresentations, omissions, or conduct had no effect on their decisions to purchase the securities at issue, then there was no reliance.[146]

In addition, Plaintiffs' reliance must be justified. Plaintiffs cannot satisfy this element if they acted unjustifiably.

In determining whether Plaintiffs' reliance on GAW Miners and ZenMiners' alleged misstatements was justified, you may consider Plaintiffs' sophistication and expertise as investors

conduct with the example.'") (omitting internal citation).  This biased instruction is also unnecessary.  The Court will instruct the jury on direct and circumstantial evidence in the standard instructions.

**Plaintiffs' Response:** Regarding the first sentence, the cited source—the certification order in this case—supports the first sentence of Plaintiffs' proposed instruction: "The Plaintiffs contend that the nature of the Companies' alleged misrepresentations supports an inference of reliance because a reasonable juror could conclude that, absent those misrepresentations, no rational investor would have purchased the Companies' products.  This contention finds support in cases in which the Second Circuit and district courts within the Circuit have found that reliance can be shown on a class-wide basis where the nature of the misrepresentations permitted an inference that they were critical to the purchase decision." 332 F.R.D. at 80.

The case cited by Defendant, *United States v. Dove*, is not on point. In that case, the court instructed the jury on the difference between direct and circumstantial evidence, in a *criminal* trial, with an illustration where guilt was assumed—the only question was whether evidence of the crime in the story was direct or circumstantial.  Here, Plaintiffs' proposed instruction does not employ an example that assumes Defendant is liable.  To the contrary, the instruction is clear that the jury "may infer" reliance based on certain facts, but "You are not required to draw this inference."  An instruction that clearly states no inference must be drawn is neither biased nor leading.  Rather, it furnishes one example of circumstantial evidence of reliance that will aid the jurors in understanding what may be an unfamiliar legal concept.

[146] **Defendant:** Plaintiffs' proposed instruction is too narrow an illustration of when the jury might not find reliance, *i.e.*, if they decide that the misrepresentation had *no* effect on the purchasers' decision to buy or sell.  As noted in the objection above, these types of illustrations are unfairly prejudicial to Mr. Fraser.  FRE 403.

**Plaintiffs' Response:** Plaintiffs' proposed instruction is drawn directly from 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-7 (2013) (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 248 (1988)) (explaining that evidence that an investor knew of the fraud but traded anyway would undercut a presumption of reliance)).

and in the subject matter of the transactions, their opportunity to detect the fraud, whether the fraud was concealed, and the nature of the fraud.[147]   However, you should not find that Plaintiffs' reliance was unjustifiable unless Plaintiffs' conduct rises to the level of recklessness in deciding to purchase the securities at issue.[148]   Reckless conduct represents grossly unreasonable, rash, or intemperate behavior, and is more than mere negligence.[149]

[Defendant] In order to prove that GAW Miners and ZenMiner violated Rule 10b-5, the second sub-element that Plaintiffs must prove by a preponderance of the evidence is that they justifiably relied on GAW Miners' and ZenMiner's allegedly untrue statements of a material fact,

---

[147] Adapted from 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-7 (2013); *see also Brown v. E.F. Hutton Grp.*, Inc., 991 F.2d 1020, 1032 (2d Cir. 1993) ("In *Royal American* we considered the plaintiff's sophistication and expertise in finance and in the subject matter of the securities transaction; the plaintiff's representation by counsel; the plaintiff's opportunity to detect the fraud; whether the fraud was concealed; and the nature of the fraud.").

[148] *Brown*, 991 F.2d at 1032 ("Under this standard, § 10(b) liability will not be imposed when an investor's conduct rises to the level of recklessness.").

[149] **Defendant:** (1) The instruction is unfairly prejudicial to Mr. Fraser because it suggests that the only way for the jury to find that there was no justifiable reliance is if it determines that Plaintiffs knew the misstatements were false.  FRE 403.  (2) Plaintiffs' instructions related to recklessness are improper; the test for reliance is reasonable and justifiable reliance, not recklessness.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007) (plaintiff must prove "reasonable reliance" on the misrepresentation at issue).  Plaintiffs' cited case, *Brown v. E.F. Hutton Grp.*, Inc., 991 F.2d 1020, 1032 (2d Cir. 1993), simply states that recklessness is sufficient to find that reliance was not justifiable, not that recklessness is necessary.

**Plaintiffs' Response:** Plaintiffs' proposed instruction does not suggest that Defendant can defeat a showing of reliance only if Plaintiffs "knew the misstatements were false."  The instruction sets out the standard for recklessness, which is "grossly unreasonable" behavior that falls short of actual knowledge of the fraud.  Defendant's second objection is legally unfounded.  A showing of recklessness may, when a defendant raises the issue of a plaintiff's diligence, defeat reasonable reliance.  The two "test[s]" are therefore consistent.  And Second Circuit authority indicates, contrary to Defendant's assertion, that recklessness is necessary to defeat reasonable reliance.  *See Royal Am. Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1016 (2d Cir. 1989) ("[T]he degree of diligence to which plaintiffs are held has been diminished to minimal diligence. More specifically, a plaintiff bears only the burden of negating its own 'recklessness,' once the issue of diligence is raised by defendant.").

or their omissions to state a material fact necessary to make a statement made, in light of the circumstances under which it was made, not misleading; or the Companies' fraudulent conduct.

In order to satisfy this element, Plaintiffs must prove by a preponderance of the evidence two things:

<u>One</u>, Plaintiffs must prove that they relied on the Companies' untrue statements of a material fact, omissions to state a material fact necessary to make a statement made, in light of the circumstances under which it was made, not misleading, or fraudulent conduct in deciding to buy or sell the Products at issue—in other words, that Plaintiffs read or saw the false statements and relied on them.

<u>Two</u>, Plaintiffs must prove their reliance on the statements or conduct at issue was reasonable and justified.[150]

Direct proof of reliance may be difficult to produce, but it is not required. Reliance may be proved by circumstantial evidence of reliance.

In determining whether Plaintiffs' reliance on GAW Miners and ZenMiners' alleged misstatements was justified, you may consider any relevant factor, such as Plaintiffs' sophistication and expertise as investors and in the subject matter of the transactions, their opportunity to detect the fraud, whether the fraud was concealed, and the nature of the fraud.[151]

---

[150] Adapted from 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-7 (2013); *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 105 (2d Cir. 2007) (plaintiff must prove "reasonable reliance" on the misrepresentation at issue).

[151] Adapted from 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-7 (2013); *see also Brown v. E.F. Hutton Grp.*, Inc., 991 F.2d 1020, 1032 (2d Cir. 1993) ("In *Royal American* we considered the plaintiff's sophistication and expertise in finance and in the subject matter of the securities transaction; the plaintiff's representation by counsel; the plaintiff's opportunity to detect the fraud; whether the fraud was concealed; and the nature of the fraud.").

You must also consider that a plaintiff may not intentionally close his or her eyes and refuse to investigate the circumstances or disregard known or obvious risks.[152]  Where a plaintiff is put on notice of the speculative nature of an investment, the plaintiff must demonstrate that he or she exercised reasonable diligence and obtained sufficient information on which to reach an informed decision before investing.[153]

---

[152] 9th Cir. Model Instructions (2020) § 18.6 ("The plaintiff must prove by a preponderance of the evidence that [he] [she] [it] justifiably relied on the alleged misrepresentation or omission in deciding to engage in the [purchase] [sale] of the [security] [securities] in question. The plaintiff may not intentionally close [his] [her] [its] eyes and refuse to investigate the circumstances or disregard known or obvious risks).").

[153] *Shochat v. Weisz*, 797 F. Supp. 1097, 1110–11 (E.D.N.Y. 1992) ("where an investor is put on notice of the speculative nature of the shelter, the investor must exercise reasonable diligence and obtain sufficient information on which to reach an informed investment decision").

**Mr. Fraser's Proposed Jury Instruction No.     — Justifiable Reliance (Class-wide Reliance)**

Because this is a class action, there are multiple potential class members and Plaintiffs must prove class-wide reliance, *i.e.*, that each and every[154] class member reasonably relied on the alleged misrepresentations to purchase the Products at issue.[155]  In order to do so, Plaintiffs must prove by a preponderance of the evidence, the following:

One, GAW Miners and ZenMiner made uniform material misrepresentations to all members of the class, and

Two, those misrepresentations were essential to the decisions of all those class members to purchase the products at issue.[156]

---

[154] **Plaintiffs:**  Defendant's proposed instruction gratuitously refers to "each and every class member" and "all those class members."  These qualifiers are unnecessary and serve only to heighten the perception of the showing that Plaintiffs must make.  If a version of this instruction is given, such qualifiers should be omitted.

**Defendant's Response:**  The references to "all" class members and "each and every" class member are taken directly from the sources cited in notes 155 and 156.

[155] *See Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086 (JMF), 2013 WL 5658790, *27 (S.D.N.Y. Oct. 17, 2013) (to prove reliance, "each individual Plaintiff must demonstrate that the misrepresentation or omission was a substantial factor in inducing [him or her] to act the way that [he or she] did.") (omitting internal citations and quotation marks).

[156] *See* ECF 141 (ruling on class certification) at 40 ("as to those claims requiring proof of reliance, Plaintiffs can establish reliance on a class-wide basis through common evidence of uniform misrepresentations and common, circumstantial evidence that those misrepresentations were essential to the decisions of prospective class members to purchase the Companies' products."), 43 ("As Plaintiffs point out, fraud 'claims based on uniform misrepresentations made to all members of the class . . . are appropriate subjects for class certification because the standardized misrepresentations may be established by generalized proof.'") (citing *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002)); *Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086 (JMF), 2013 WL 5658790, *32 (S.D.N.Y. Oct. 17, 2013) (explaining that evidence of "uniform misrepresentation" was permitted in that case because "the Court conclude[d], based on the evidence in the record at th[e certification] stage of the proceedings, that 'a reasonable factfinder [could] conclude beyond a preponderance of the evidence that *each individual plaintiff* relied on the defendants' [uniform] representations.") (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (5th Cir. 2004)) (emphasis added); *see also id. generally*, at *28-35.

The inference of reliance—*i.e.*, that each class member was aware of the misrepresentation at issue and relied upon it—must be almost inescapable.[157] [158]

---

[157] *See Goodman v. Genworth Fin. Wealth Mgmt.*, 300 F.R.D. 90, 107 (E.D.N.Y. 2014) (explaining that "the Second Circuit has required that the inference of reliance—*i.e.*, that each class member was aware of the misrepresentation at issue and relied upon it—be almost inescapable in order to support class certification of a fraud case under Rule 23(b)(3).").

[158] **Plaintiffs:** Defendant's proposed instruction regarding the "inescapability" of the inference required to be drawn is prejudicial and unwarranted. The words "almost inescapable" are ambiguous and would be of little use to the jury in determining whether Plaintiffs' have proved reliance; instead, they would serve only to confuse the standard and suggest that proving reliance through circumstantial evidence is impossible. Moreover, those words do not appear in *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013), the primary Second Circuit case referred to in *Goodman v. Genworth Fin. Wealth Mgmt.*

**Defendant's Response:** Plaintiffs do not explain how telling the jury what type of circumstantial evidence is required to infer reliance on a class-wide basis is prejudicial. The fact that the burden on Plaintiffs might be high to prove reliance when they choose to do so through the use of circumstantial evidence does not mean that the standard is wrong or that it is prejudicial to instruct the jury regarding that standard. Not doing so, while permitting Plaintiffs to satisfy their burden on reliance using circumstantial evidence, would in fact be the more prejudicial choice in this case. Nor is this a novel idea. The Court noted the district court case cited above and its "practically inescapable" standard in its certification ruling in this case. *See Audet v. Fraser*, 332 F.R.D. 53, 78, n.12 (D. Conn. 2019).

## First Element
### *"Intent"*[159]

The third sub-element that Plaintiffs must establish by a preponderance of the evidence is that GAW Miners and ZenMiner knowingly participated in the scheme to defraud with intent to defraud or with reckless disregard for the truth.[160]

To act "knowingly" means to act intentionally and deliberately, rather than mistakenly or inadvertently.[161]

To act with "intent to defraud" in the context of securities law means to act with the intent to deceive.

To act with "reckless disregard for the truth" means to engage in conduct that involves an extreme departure from the standard of ordinary care. A person acts in reckless disregard if the risk is known to him, or if it is obvious that an ordinary person under the circumstances would have realized the danger and taken care to avert the harm likely to follow. But recklessness is more than mere negligence. Reckless conduct represents grossly unreasonable, rash, or intemperate behavior.

In the context of securities law, a person may act recklessly if he makes a false statement with a reckless disregard for whether it is true or false. A person does not need to have the intent

---

[159] Mr. Fraser proposes an alternative jury instruction. *See* Mr. Fraser's Proposed Jury Instruction No. __ — First Element (Intent).

[160] Adapted from 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-8 (2013); *SEC v. Tourre*, No. 10cv-3229-KBF (S.D.N.Y. July 31, 2013), ECF No. 465 (instructions to jury) at 19, 34 (instructing the jury that to establish the requisite state of mind in a 10b-5 claim, the plaintiff must show the defendant "knowingly participated in a scheme to defraud with the intent to deceive, manipulate or defraud, or with reckless disregard for the truth").

[161] *SEC v. Tourre*, No. 10cv-3229-KBF (S.D.N.Y. July 31, 2013), ECF No. 465 (instructions to jury) at 19 ("To act knowingly means to act intentionally and deliberately, rather than mistakenly or inadvertently.").

97

to injure a person in order to act recklessly.  It is enough to that the person acts in reckless disregard of a risk of whether there was a truthful basis in their representations, or in the case of an omission, that they recklessly disregarded the material nature of those omissions.

The question of whether a person acted with intent to defraud, with actual knowledge or with reckless disregard, is a question of fact for you to determine, like any other fact question. It is a question involving one's state of mind.  Direct proof of state of mind is almost never available, and is not required.  Circumstantial evidence, if believed, is of no less value than direct evidence. In either case, it is Plaintiffs' burden to prove all of the elements by a preponderance of the evidence.[162] [163]

---

[162] Adapted from 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-8 (2013); *SEC v. Tourre*, No. 10cv-3229-KBF (S.D.N.Y. July 31, 2013), ECF No. 465 (instructions to jury) at 19-21.

[163] **Defendant:** (1) Mr. Fraser objects to Plaintiffs' proposed instruction because it is unnecessarily repetitive, FRE 403.  (2) Paragraph 5 (starting, "In the context of…") is one-sided and unfairly prejudicial because it instructs the jury on what is "not necessary" for it to find, and minimizes Plaintiffs' burden with language such as, "[t]t is enough to find that…" (3) It is unnecessary to tell the jury that intent is a question of fact for the jury to decide because that is true for all questions submitted to the jury. (4) The paragraph is also unnecessarily cumulative because the Court will instruct the jury on direct and circumstantial evidence as part of the standard instructions.

**Plaintiffs' Response:** Regarding circumstantial evidence, it is not prejudicial to instruct the jury regarding circumstantial evidence more than once, especially where direct evidence is unavailable to prove a particular element.  *See, e.g.*, *SEC v. Tourre*, No. 10cv-3229-KBF (S.D.N.Y. July 31, 2013), ECF No. 465 (instructions to jury) at 6 (instructing the jury on direct and circumstantial evidence in preliminary instructions); *id.* at 20 (instructing the jury a second time that "[c]ircumstantial evidence is of no less value than direct evidence" in the context of explaining that direct proof of state of mind "is almost never available and is not required").  The same is true for reminding the jury that certain elements, including those often proved indirectly, are questions of fact just like the others the jury is being asked to resolve.

## Mr. Fraser's Proposed Jury Instruction No.     —First Element (Intent)

In order to prove a primary violation, the third sub-element that Plaintiffs must prove by a preponderance of the evidence is that GAW Miners and ZenMiner knowingly engaged in a scheme to defraud investors with the intent to defraud.

To act "knowingly" means to act intentionally and deliberately, with actual knowledge or with reckless disregard for the truth, rather than mistakenly or inadvertently. "Reckless" means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the primary violator or is so obvious that the he/it must have been aware of it.  In a securities fraud case, a primary violator acts knowingly when he/it makes an untrue statement with the knowledge that the statement was false, or with reckless disregard for whether the statement was true.[164] [165]

---

[164] 9th Cir. Model Instructions (2020) § 18.5 ("[A defendant acts knowingly when [he] [she] [it] makes an untrue statement with the knowledge that the statement was false or with reckless disregard for whether the statement was true.] [A defendant acts knowingly when [he] [she] [it] omits necessary information with the knowledge that the omission would make the statement false or misleading or with reckless disregard for whether the omission would make the statement false or misleading.] ["Reckless" means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it.]."); 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-8 (2013) ("The third element that the plaintiff must establish by a preponderance of the evidence is that the defendant knowingly participated in the scheme to defraud with intent to defraud.  To act 'knowingly' means to act intentionally and deliberately, with actual knowledge or with reckless disregard for the truth, rather than mistakenly or inadvertently.."); *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) ("The requisite state of mind in a section 10(b) and Rule 10b-5 action is an intent 'to deceive, manipulate, or defraud.'  In addition to intent, recklessness is a sufficiently culpable mental state for securities fraud in this circuit.  … Recklessness is defined as 'at the least, . . . an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.'") (omitting internal citations and quotation marks).

To act with "intent to defraud" in the context of securities law means to act with the intent to deceive.[166]

---

[166] 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-8 (2013) ("To act with "intent to defraud" in the context of securities law means to act with the intent to deceive.").

**First Element**
*"Loss Causation"*

In order to prove a primary violation, the fourth sub-element that Plaintiffs must prove by a preponderance of the evidence is that GAW Miners' and ZenMiner's conduct was the proximate cause of the injury Plaintiffs claim to have suffered.

At the outset, I remind you that you are not being asked to consider Plaintiffs' damages: that is, how much Plaintiffs were injured by the defendants' conduct. Nevertheless, I am asking you to determine—assuming that Plaintiffs did suffer losses—whether those losses were proximately caused by the Companies' conduct.[167]

In order for an act or omission to be considered a proximate cause of the injury, it must be a substantial factor in causing the damage, and the injury must have been either a direct result or a reasonably probable consequence of the act or omission.

A misrepresentation is the proximate cause of an investor's loss if the loss was foreseeable and was caused when the specific risk or risks concealed by the misrepresentation actually materializes. In other words, if you find that the Companies' misrepresentations concealed or obscured certain risks to the investors, and those very same risks then did materialize and cause

---

[167] **Defendant:** As discussed above, the jury will not be asked to determine damages, and should not be instructed on it. Moreover, this instruction is confusing. Like the prior paragraph, it assumes Plaintiffs have suffered an injury. FRE 403.

**Plaintiffs' Response:** As explained *supra* note 4, declining to instruct the jury regarding the deferral of damages proceedings will be more confusing and prejudicial than a simple instruction that damages are not its responsibility to determine in this trial. Regarding Defendant's second objection, loss causation centers around whether fraudulent conduct caused an investor's loss. Failing to acknowledge that damages have not been determined, yet simultaneously referring to Plaintiffs' losses, would only engender confusion among the jurors. Plaintiffs' proposed instruction deals addresses this issue directly.

Plaintiffs to be injured, you should find that the Companies' conduct was the proximate cause of Plaintiffs' injuries.[168] [169]

In order to satisfy this element, Plaintiffs do not need to prove that the Companies' conduct was the only cause of their injury. While it is not enough for Plaintiffs to show that the Companies' actions caused them to engage in a particular securities transaction, or that Plaintiffs would have acted differently had they known the truth, it would be sufficient if you find that the allegedly fraudulent actions of GAW Miners and ZenMiner were a substantial and significant contributing cause to the injury Plaintiffs claim to have suffered.[170] [171]

---

[168] *Audet*, 332 F.R.D. at 83-84.

[169] **Defendant:** In the first sentence, it should say, "**foreseeable to the person making the misrepresentation**." Otherwise, that sentence is unclear. The last sentence of this paragraph, starting, "In other words," is one-sided and unfairly prejudicial because it is leading in nature to a finding of causation. FRE 403.

**Plaintiffs:** Plaintiffs' proposed instruction accurately states the law regarding loss causation. It describes the predicates necessary for the jury to find Defendant liable; it does not suggest or encourage them to do so.

[170] Adapted from 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-9 (2013).

[171] **Defendant:** Plaintiffs' instruction unfairly minimizes their burden of proof with language such as "it would be sufficient if you find." FRE 403. Defendant's proposed, more neutral language is: "**It is not enough for Plaintiffs to show that the Companies' actions caused them to engage in a particular securities transaction, or that Plaintiffs would have acted differently had they known the truth. Plaintiffs must prove that the alleged fraudulent actions of GAW Miners and ZenMiner were a substantial and significant contributing cause to the injury Plaintiffs claim to have suffered**."

**Plaintiffs' Response:** This language, which is drawn directly from 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-9 (2013), accurately states the law and situates what findings will, and will not, suffice to establish loss causation.

**First Element**
*"Instrumentality of Interstate Commerce"*

In order to prove a primary violation, the fifth sub-element that Plaintiffs must prove by a preponderance of the evidence is that GAW Miners and ZenMiner knowingly used, or caused to be used, the mails or interstate wires in furtherance of the scheme to defraud or fraudulent conduct. The terms "mails" and "wires" include communications and transactions made using the internet or interstate wire transfers.[172]

It is not necessary that GAW Miners and ZenMiner be directly or personally involved in any mailing. If the Companies were active participants in the scheme and took steps or engaged in conduct which they knew or could reasonably foresee would naturally and probably result in the use of the mails or wires, then you may find that they caused the mails to be used.

When one does an act with the knowledge that the use of interstate means of communication will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he causes such means to be used.

Nor is it necessary that the items sent through the mails or wires contain the fraudulent material, or anything objectionable. The matter mailed may be entirely innocent. Similarly, the use of the mails or interstate wires need not be central to the execution of the scheme, and may even be incidental to it. All that is required is that the use of the mails or wires bear some relation to the object of the scheme or fraudulent conduct.[173]

---

[172] *SEC v. One or More Unknown Traders in Common Stock of Certain Issuers*, No. 08CV1402 (KAM) JMA, 2009 WL 3233110, at *4 (E.D.N.Y. Oct. 2, 2009) ("[T]he facts established on default show that defendants used an 'instrumentality of interstate commerce,' 15 U.S.C. § 78; 17 C.F.R. § 240.10b-5, including the internet and wire transfers.").

[173] Adapted from 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-10 (2013).

*******

In summary, to find that Plaintiffs have satisfied their burden of proof on the first element of their "control person" claim against Mr. Fraser under Section 20(a) of the Exchange Act, they must prove by a preponderance of the evidence each of the following five sub-elements: (1) GAW Miners and ZenMiner employed a device, scheme, or artifice to defraud; or made an untrue statement of a material fact or omitted to state a material fact, which made what was said, under the circumstances, misleading; or engaged in a fraudulent act, practice, or course of business; (2) Plaintiffs justifiably relied on GAW Miners' and ZenMiner's statements or omissions; (3) GAW Miners and ZenMiner acted with the intent to defraud or with reckless disregard for the truth; (4) GAW Miners' and ZenMiner's conduct was the proximate cause of the injury Plaintiffs claim to have suffered; and (5) GAW Miners and ZenMiner used, or caused to be used, means and instrumentalities of interstate commerce.[174]

---

[174] **Defendant:** The description of the second element is incomplete and prejudicial. It should read: "**Plaintiffs justifiably relied, on a class-wide basis, on those statements or omissions.**" For completeness, the third element should read, "**GAW Miners and ZenMiner knowingly acted with the intent to defraud or with reckless disregard for the truth**." *See* 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-8 (2013) ("The third element that the plaintiff must establish by a preponderance of the evidence is that the defendant knowingly participated in the scheme to defraud with intent to defraud); *see also supra* note 125.

**Plaintiffs' Response:** Inclusion of "on a class-wide basis" is superfluous. The jury will be instructed that Plaintiffs must prove each element of their claims on a class-wide basis.

## Second Element
### *"Control"*[175]

Now I will move on to the second element of Plaintiffs' control person claim under Section 20(a) of the Exchange Act—that Mr. Fraser directly or indirectly controlled GAW Miners and ZenMiner.[176]

In this context, "control" has the same meaning that I gave you when I instructed you on the law regarding plaintiffs' claims under the Connecticut Uniform Securities Act.[177] That is, control means the power, either direct or indirect, to direct or cause the direction of the management and policies of the Companies. This power or ability to influence may be through the ownership of voting securities, by contract, or through other means.[178]

For example, control may include indirect means of discipline or influence over GAW Miners and ZenMiner or their management; the ability to exert influence over the decision making process, strategic decisions, and daily operations of GAW Miners and ZenMiner; ownership of a controlling interest in GAW Miners and ZenMiner; financial leverage or control over the

---

[175] **Defendant**: Mr. Fraser proposes an alternative jury instruction. *See* Mr. Fraser's Proposed Jury Instruction No. __ — Second Element (Control).

[176] **Defendant:** Mr. Fraser objects to this instruction (Second Element, *Control*). As noted in Mr. Fraser's General Objection No. 1, Mr. Fraser requests that the Court instruct the jury on Plaintiffs' Section 20(a) claim first and later on Plaintiffs' "control person" claim under the CUSA because "control" under Section 20(a) is much narrower in the way in which it can be proved. Plaintiffs' instruction does not account for that difference. In the event the Court decides to instruct the jury on Plaintiffs' "control person" claim under the CUSA first, Mr. Fraser proposes below his own instruction as an alternative to Plaintiffs' proposal. *See* Mr. Fraser's Proposed Jury Instruction No. __—Second Element (Control). Mr. Fraser includes specific objections as they apply to the remaining paragraphs of this instruction.

**Plaintiffs' Response:** Regarding Defendant's objections to the sequence of claims, *see supra* note 1.

[177] *Audet v. Fraser*, 2017 WL 4542386, at *6.

[178] *Audet v. Fraser*, 2017 WL 4542386, at *6 (citing *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996) and 17 C.F.R. § 240.12b-2)).

Companies through lending arrangements or other means; and personal relationships between Mr. Fraser and people with positions of authority or control at GAW Miners and ZenMiner.[179]  These are just examples of factors that bear on the issue of control.  Ultimately, whether Mr. Fraser exercised control over GAW Miners and ZenMiner is a question of fact for you to decide.[180] [181]

As I explained earlier, proving control does not require Plaintiffs to show that Mr. Fraser actually did direct or cause the direction of the management and policies of the Companies.  Rather, Plaintiffs must show that Mr. Fraser had the *power* or ability to exercise control.[182]  More than one person can be a "control person" of a company.[183] [184]

---

[179] *SEC v. Portfolio Advisors Alliance, Inc.*, 16-cv-828-KBW (S.D.N.Y. May 14, 2019), ECF No. 299 (instructions to jury) at 122; *Audet v. Fraser*, 2017 WL 4542386, at *6.

[180] *Audet v. Fraser*, 2017 WL 4542386, at *6-7.

[181] **Defendant:** *See* Mr. Fraser's Objections to Plaintiffs' Proposed Jury Instruction No. __ (*Second Element, Directly or Indirectly Controlled*), *supra* at note 50.  This instruction is also unnecessarily repetitive of Plaintiffs' earlier instruction.  FRE 403.

**Plaintiffs' Response:** *See supra* note 50.

[182] *Audet v. Fraser*, 2017 WL 4542386, at *6-7; *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 456 (S.D.N.Y. 2009) ("[O]nly the ability to direct the actions of the controlled person, and not the active exercise thereof" is required to establish control.") (internal quotation marks and citations omitted); 17 C.F.R. § 240.12b-2 (defining "control" as "the possession, direct or indirect, of *the power* to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise") (emphasis added).

[183] *SEC v. Portfolio Advisors Alliance, Inc.*, 16-cv-828-KBW (S.D.N.Y. May 14, 2019), ECF No. 299, at 122 (instructions to jury) ("More than one person can be a control person of an entity.").

[184] **Defendant:** *See* Mr. Fraser's Objections to Plaintiffs' Proposed Jury Instruction No.  (*Second Element, Directly or Indirectly Controlled*), *supra* at note 52.  This instruction is also unnecessarily repetitive of Plaintiffs' earlier instruction.  FRE 403.

**Plaintiffs' Response:** *See supra* notes 50, 52.

**Mr. Fraser's Proposed Jury Instruction No.     —Second Element (Control)**

Now I will move on to the second element that Plaintiffs must prove by a preponderance of the evidence for their "control person" claim under Section 20(a) of the Exchange Act—that Mr. Fraser directly or indirectly "controlled" GAW Miners and ZenMiner.

I instructed you earlier on the meaning of "control" in the context of Plaintiffs' control person claim under the Connecticut Uniform Securities Act.  There I instructed you that Plaintiffs could prove "control" in one of three ways.  That is not the case under Section 20(a).

Under Section 20(a), Plaintiffs must prove control by proving that, during the time that GAW Miners and ZenMiner allegedly defrauded Plaintiffs, Mr. Fraser had the ability to control those Companies.[185]

In order to prove that Mr. Fraser "controlled" GAW Miners and ZenMiner, Plaintiffs must prove, by a preponderance of the evidence, that:

(1) Mr. Fraser actually possessed, in fact, rather than in theory, the ability to direct the actions of GAW Miners and ZenMiner; and

(2) Mr. Fraser had actual control over the transactions in question.[186] [187]

---

[185] 17 C.F.R. § 240.12b–2; Model Civil Jury Instructions, 9th Cir. (2020) § 18.10 ("Under the Securities Exchange Act of 1934, a defendant may be liable if during the period that someone else defrauded the plaintiff, the defendant had the authority to control that person or company.").

[186] *See supra* at note 55.

[187] **Plaintiffs:** For the reasons explained *supra* note 56, this proposed instruction concerning "actual control over the transactions in question" has no support in Second Circuit case law.

**Third Element**
*"Culpable Participation"*[188]

To establish the third element of Plaintiffs' control person claim against Mr. Fraser for federal securities fraud, Plaintiffs must prove that Mr. Fraser was a culpable participant in the fraud.[189]  To establish that Mr. Fraser was a culpable participant in the fraud allegedly committed by the Companies, Plaintiffs must prove that Mr. Fraser acted with conscious misbehavior or recklessness.[190] [191]

Conscious misbehavior is intentional misconduct.  Recklessness is conduct that is highly unreasonable, where the risk is either known to the person or he must be aware of it.  A plaintiff

---

[188] **Defendant:** Mr. Fraser proposes an alternative jury instruction.  *See* Mr. Fraser's Proposed Jury Instruction No. __—Third Element (Culpable Participation).

[189] *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014).

[190] *In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 307 (S.D.N.Y. 2013); *Audet v. Fraser*, 2017 WL 4542386, at *8.

[191] **Defendant:**  (1) Plaintiffs' proposed instruction does not clarify the burden of proof. (2) Plaintiffs' proposed instruction does not set forth the "culpable participation" standard accurately—Plaintiffs must prove by a preponderance of the evidence that Mr. Fraser was, in some "meaningful sense," a culpable participant.  *Brodzinsky v. FrontPoint Partner LLC*, No. 3:11CV10 WWE, 2012 WL 1468507, at *5 (D. Conn. Apr. 26, 2012) ("To establish a prima facie case of control person liability in the Second Circuit, a plaintiff must show '(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud.'") (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)).

**Plaintiffs' Response**: The element in question is culpable participation, not "culpable participation in some meaningful sense."  *See, e.g.*, *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 101 (2d Cir. 2001) (articulating the culpable participation requirement without reference to "some meaningful sense").  Moreover, the phrase "in some meaningful sense" is vague and its inclusion will not assist the jury in understanding how to make its finding regarding culpable participation.  Finally, and notably, courts in this district have instructed juries on Section 20(a) claims without reference to this phrase.  *See In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (RJH), Tr. at 7526:4-11; *SEC v. Portfolio Advisors Alliance, Inc.*, 16-cv-828-KBW (S.D.N.Y. May 14, 2019), ECF No. 299 (instructions to jury) at 122-23.

may prove that a control person acted with recklessness by proving that he knew, or should have known, that primary violators were engaging in fraudulent conduct, or by showing that the control person ignored obvious signs of fraud.[192]   In determining whether a control person knew that a primary violator was engaging in fraud, you may consider whether he deliberately closed his eyes to what would otherwise have been obvious to him.  If you find  that a control person acts with a conscious purpose to avoid learning the truth, then this element may be satisfied.[193]   Alternatively, if a control person is aware of information that contradicts the primary violator's untrue statements regarding its products, you may find that the control person acted recklessly and therefore culpably participated in the fraud.[194] [195]

Additionally, in deciding whether a control person was a culpable participant in the fraud, you may consider whether he participated in the daily operations of the primary violator, participated in their its decision making, or was otherwise personally involved in aspects of the fraudulent conduct.[196] [197]

---

[192] *Audet v. Fraser*, 2017 WL 4542386, at *8; *In re Alstom SA*, 406 F. Supp. 2d 433, 491 (S.D.N.Y. 2005).

[193] *SEC v. Portfolio Advisors Alliance, Inc.*, 16-cv-828-KBW (S.D.N.Y. May 14, 2019), ECF No. 299 (instructions to jury) at 115.

[194] *Audet v. Fraser*, 2017 WL 4542386, at *8; *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 172 (S.D.N.Y. 2008); *In re Alstom SA*, 406 F. Supp. 2d 433, 491 (S.D.N.Y. 2005).

[195] **[OMITTED]**

[196] *Audet v. Fraser*, 2017 WL 4542386, at *9.

[197] **Defendant:** Mr. Fraser objects to Paragraphs 2 and 3.  A listing of various ways in which the jury might find that Mr. Fraser was a culpable participant in the Companies' fraud is leading and unfairly prejudicial to Mr. Fraser.  FRE 403.  (2) Paragraph 2 contains insufficient and misleading examples of how the jury might find that Mr. Fraser was "reckless," and therefore a culpable participant in the Companies' alleged fraud.  The paragraph states, for instance, that proof that a control person (in this case, allegedly Mr. Fraser) "deliberately closed his eyes" or that he was aware of information that contradicted the Companies' alleged misstatements are sufficient to satisfy the "recklessness" standard.  They are not.  For example, in *In re Alstom SA*, the court

<u>**Mr. Fraser's Proposed Jury Instruction No.      —Third Element (Culpable Participation)**</u>

Finally, in order to establish that Mr. Fraser is liable under Section 20(a) as a "control person," Plaintiffs must also prove, by a preponderance of the evidence, that Mr. Fraser was, in some meaningful sense,[198] a culpable participant in the alleged fraud.

To prove that Mr. Fraser culpably participated in the alleged fraud, Plaintiffs must prove that Mr. Fraser acted with conscious misbehavior or recklessness, which is conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the

---

explained that specific allegations that defendants were "aware[]of facts or [had] access to information contradicting their public statements," or "that defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud," are not sufficient, in and of themselves, to plead culpable participation. Rather, "the conduct must still rise to the level of 'highly unreasonable or extreme misconduct, rather than simply to mere deviations from standards of ordinary care.'"   406 F. Supp. 2d 433, 491 (S.D.N.Y. 2005) (omitting internal citations).

Paragraph 3 is similarly incorrect.  In *Audet v. Fraser*, 2017 WL 4542386, at *9 (D. Conn. Oct. 11, 2017), this Court did not hold that proof of Mr. Fraser's participation "in the daily operations of the Companies or … their strategic decision making" was sufficient to satisfy the burden of proof at trial for culpable participation.  The Court simply considered those allegations, among others, in determining whether Plaintiffs had pleaded culpable participation sufficiently to survive a motion to dismiss.  *See* Mr. Fraser's Proposed Jury Instruction No. __ —Third Element (Culpable Participation).

**Plaintiffs:** Plaintiffs have revised Paragraph 2 in response. Plaintiffs' proposed instruction does not state that any of these types of conduct, standing alone, would be sufficient to establish culpable participation.  Rather, it instructs the jurors that they "may consider" different factors or types of conduct which are relevant to the culpable participation inquiry.

[198] **Plaintiffs:** Defendant's inclusion of "in some meaningful sense" is unnecessary, improperly seeks to heighten the standard in vague fashion, and will not aid in the jurors' understanding of the culpable participation standard.  *See supra* note 191.

**Defendant:**   Defendant's statement is a correct formulation of the law.  *See Brodzinsky v. FrontPoint Partner LLC*, No. 3:11CV10 WWE, 2012 WL 1468507, at *5 (D. Conn. Apr. 26, 2012) ("To establish a prima facie case of control person liability in the Second Circuit, a plaintiff must show '(1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, **in some meaningful sense**, a culpable participant in the controlled person's fraud.'") (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007)) (emphasis supplied).

extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.[199]

---

[199] *Poptech, L.P. v. Stewardship Credit Arbitrage Fund, LLC*, 792 F. Supp. 2d 328, 332, 335 (D. Conn. 2011) ("Section 20(a) claim must allege that the defendant acted with a level of culpable participation approximating recklessness;" "a plaintiff must allege 'some level of culpable participation at least approximating recklessness in the Section 10(b) context.'"); *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38 (2nd Cir. 1978) ("Reckless conduct is, at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.") (omitting internal quotation marks and citation); *In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 306 (S.D.N.Y. 2013) (A plaintiff pleading the conscious misbehavior or recklessness theory of scienter must allege conduct which is "highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.").

\*\*\*\*\*\*

In sum, to prevail on their claim that Mr. Fraser is liable as a control person for the Companies' alleged acts of federal securities fraud, Plaintiffs must prove by a preponderance of the evidence that:  (1) GAW Miners and ZenMiner violated Rule 10b-5; (2) Mr. Fraser directly or indirectly controlled GAW Miners and ZenMiner; and (3) Mr. Fraser was a culpable participant in the Companies' alleged fraudulent conduct.

**Proposed Jury Instruction No.     —Good Faith Defense**

Even if you determine that Mr. Fraser was a "control person" under Plaintiffs' Section 20(a) claim under the Exchange Act, he is not liable to Plaintiffs if he proves by a preponderance of the evidence that:

    1. He did not directly or indirectly induce the violations at issue; and

    2. He acted in good faith.[200] [201]

If Mr. Fraser satisfies his burden of proof on this defense, then you must decide this claim in Mr. Fraser's favor.

---

[200] 15 U.S.C. § 78t(a)("Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable (including to the Commission in any action brought under paragraph (1) or (3) of section 78u(d) of this title), **unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action)** (emphasis supplied); *see also* Jury Instructions Committee, Manual of Model Civil Jury Instructions ¶ 18.11 (2017) ("The defendant [insert name] contends that [he] [she] [it] is not liable to the plaintiff even if [he] [she] [it] was a controlling person because [he] [she] [it] did not induce the violation that led to the plaintiff's economic injury and [he] [she] [it] acted in good faith. The defendant has the burden of proving both of the following elements by a preponderance of the evidence: 1. the defendant did not directly or indirectly induce the violation; and 2. the defendant acted in good faith.").

[201] **Plaintiffs:** As drafted, this instruction fails to provide the jury any guidance on the meaning of the phrase "good faith." Plaintiffs propose that the following be added to Mr. Fraser's instruction: "In order to establish a good faith defense, the burden is on Mr. Fraser to prove that he exercised due care in his supervision of the Companies' activities—for example, by maintaining and enforcing a reasonable and proper system of supervision and internal controls. (*Dietrich v. Bauer*, 126 F. Supp. 2d 759, 768 (S.D.N.Y. 2001) A good faith defense cannot rest on willful blindness. If a control person knew or should have known that the primary violator was engaged in fraudulent conduct, but did not take steps to prevent that conduct, then no good faith defense is available. (*In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 458 (S.D.N.Y. 2009))"

**Defendant:** The proposed instruction conforms to the statutory language. *See* 15 U.S.C. § 78t(a). "Good faith" is not a term of art that the jury is unable to understand. It is also unfairly prejudicial to Mr. Fraser for the Court to instruct the jury on a single example of what might constitute "good faith" or what does not constitute "good faith."

**Proposed Jury Instruction No.    —Apportionment of Liability**

If you decide in favor of Plaintiffs on the Section 20(a) control person claim, you will be asked to determine whether Plaintiffs have proven by a preponderance of the evidence that Mr. Fraser knowingly violated the securities laws.[202]

If you determine that Plaintiffs have not proven that Mr. Fraser knowingly violated the securities laws, you will then be asked to determine the percentage of Mr. Fraser's responsibility measured as a percentage of the total fault of all persons who caused or contributed to the loss Plaintiffs claim to have suffered, including the primary violators—Mr. Garza and/or the Companies.[203] [204]

The percentage of responsibility of a person may range from 0% to 100%.  In determining that percentage in this case, you should consider:

---

[202] 15 U.S.C. § 78u–4(f)(2)(A) ("Any covered person against whom a final judgment is entered in a private action shall be liable for damages jointly and severally only if the trier of fact specifically determines that such covered person knowingly committed a violation of the securities laws.").

[203] 15 U.S.C. § 78u–4(f)(2)(B)(i) ("Except as provided in subparagraph (A), a covered person against whom a final judgment is entered in a private action shall be liable solely for the portion of the judgment that corresponds to the percentage of responsibility of that covered person, as determined under paragraph (3)."); *id.* § 78u–4(f)(3)(A) ("with respect to each covered person and each of the other persons claimed by any of the parties to have caused or contributed to the loss incurred by the plaintiff, including persons who have entered into settlements with the plaintiff or plaintiffs," the court instructs the jury to determine "the percentage of responsibility of such person, measured as a percentage of the total fault of all persons who caused or contributed to the loss incurred by the plaintiff.").

[204] **Plaintiffs:** The instruction's reference to Mr. Garza as a "primary violator" in the same sentence as "the Companies" is prejudicial and misleading.  Mr. Garza is not a party to this action, unlike the Companies, so he cannot be a "primary violator" in the same way the Companies are alleged to be in this case.  For that reason, no reference to Mr. Garza should be made in this instruction.

**Defendant's Response:**  Regarding Plaintiffs' second objection, regardless of whether Mr. Garza is a defendant in this case, according to Plaintiffs' own allegations, he is a primary violator in this case, *see, e.g.,* FAC ¶¶ 169, 170, 181, 182, 190, and the apportionment statute is not limited to "defendants" in the case, *see supra* at note 203.

(1) the nature of the conduct of that person that is found to have caused or contributed to the loss Plaintiffs incurred; and

(2) the nature and extent of the causal relationship between the conduct of that person and the damages Plaintiffs incurred.[205]

This apportionment of responsibility applies only to Plaintiffs' Section 20(a) control person claim.  It does not apply to Plaintiffs' other claims against Mr. Fraser.  For those claims, if you find in favor of Plaintiffs, Mr. Fraser will be considered 100% responsible for any damages Plaintiffs claim to have incurred as a result of GAW Miners' and ZenMiner's alleged fraud, and this apportionment will not matter.[206]

---

[205] 15 U.S.C. § 78u–4(f)(3)(C) ("In determining the percentage of responsibility under this paragraph, the trier of fact shall consider—(i) the nature of the conduct of each covered person found to have caused or contributed to the loss incurred by the plaintiff or plaintiffs; and (ii) the nature and extent of the causal relationship between the conduct of each such person and the damages incurred by the plaintiff or plaintiffs.").

[206] **Plaintiffs:** The last sentence of this proposed instruction is unnecessary and unduly prejudicial. It is sufficient to advise the jury that the apportionment of responsibility applies only to the federal securities claims.  Advising the jury that if it finds for Plaintiffs on the other claims, Defendant will be "100% responsible for any damages" implies that it would be unfair to find Mr. Defendant liable on claims where apportionment is not available to the defendant and invites the jury to consider factors unrelated to Defendant's liability for the alleged conduct in rendering its verdict.

**Defendant:**  The instruction is not prejudicial to Plaintiffs, rather it is necessary to tell the jury to which claims the apportionment of liability applies.  Not telling the jury is more prejudicial to Mr. Fraser because it gives the misimpression that even if Mr. Fraser is found liable on all claims, he would be responsible for only a portion of the damages.  That is not the case.

| V.      Aiding and Abetting Common-Law Fraud |
|---|

Jury Instruction No. __

Now I will address Plaintiffs' claim against Mr. Fraser for aiding and abetting common-law fraud.  Plaintiffs allege that GAW Miners and ZenMiner committed fraud under the common law of Connecticut by making false statements upon which Plaintiffs relied, and that this reliance on the statements injured Plaintiffs.

As to Mr. Fraser, Plaintiffs allege that he is liable for aiding and abetting the common-law fraud allegedly committed by GAW Miners and ZenMiner.  In order to prove that Mr. Fraser is liable for aiding and abetting the Companies' common-law fraud, Plaintiffs must prove each of the following three elements:

(1) <u>First</u>, GAW Miners and ZenMiner performed a wrongful act.  Here, the wrongful act alleged by Plaintiffs is common-law fraud.

(2) <u>Second</u>, Mr. Fraser generally was aware of his role as part of an illegal or wrongful activity at the time he provided any alleged assistance to GAW Miners and ZenMiner.

(3) <u>Third</u>, Mr. Fraser knowingly and substantially assisted GAW Miners and ZenMiner in the Companies' alleged fraud.[207]

---

[207] *Audet v. Fraser*, 2017 WL 4542386, at *11 (quoting *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 102-03 (D. Conn. 1994)) ("To state [a claim for] aiding and abetting common law fraud, 'a plaintiff must allege with particularity that: (1) the party aided by the defendant performed a wrongful act; (2) the defendant generally was aware of his role as part of an illegal or tortious activity at the time he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation.'").

**First Element**
(*Primary Violation*)

**[Plaintiffs]**  In order to prove that Mr. Fraser aided and abetted a common law fraud committed by GAW Miners and ZenMiner, Plaintiffs must first prove by a preponderance of the evidence that GAW Miners and ZenMiner committed fraud.  To do so, Plaintiffs must prove each of the following four sub-elements:

(1) <u>First</u>, GAW Miners and ZenMiner made a false representation as a statement of fact.

(2) <u>Second</u>, the statement or statements in question were untrue, and known to be untrue, by GAW Miners and ZenMiner; or that GAW Miners and ZenMiner made the statements with reckless disregard for the truth of the matter.  The phrase "reckless disregard" involves conduct that is more than negligence.  It is conduct that conduct that takes on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care.[208] [209]

(3) <u>Third</u>, GAW Miners and ZenMiner made the statements to induce Plaintiffs to act on them.

(4) <u>Fourth</u>, Plaintiffs did act on the statements to their injury.[210] [211]

---

[208] Connecticut Judicial Branch Civil Jury Instructions § 3.4-2.

[209]  **Defendant:**  "Recklessness" has been defined several times in these proposed instructions.  It is unnecessary to instruction on that again.  In the event the Court chooses to instruct the jury on recklessness again, a consistent definition should be used across the instructions.

[210] Connecticut Judicial Branch Civil Jury Instructions § 3.16-2.

[211]  **Defendant:** Plaintiffs' instruction is unfairly prejudicial to Mr. Fraser because it omits the reliance elements, which the Court recognized is an element of Plaintiffs' common law fraud claim.  FRE 403; *see* ECF 141 (Ruling on Class Certification) at 39, n.9-10 ("Third, one of the

117

Plaintiffs must prove the first three of these sub-elements by "clear and convincing evidence." That is a different standard of evidence from the "preponderance of the evidence" standard that applies to all of the other elements and claims in this lawsuit. Clear and convincing evidence is evidence that leaves no substantial doubt in your mind. It is evidence that establishes for you a very high probability that the facts asserted are true or exist.[212] On the other hand, clear and convincing evidence is not as high a standard as the burden of proof applied in criminal cases,

---

'elements of [a common law fraud] action' is that the Plaintiff 'relied on the statement to his detriment.'" (quoting *McCann Real Equity Series XXII, LLC v. David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 518 (2006)); *see also* Connecticut Judicial Branch Civil Jury Instructions § 3.14-2 ("In order to prevail on (his/her) claim of fraudulent/intentional misrepresentation the plaintiff must prove 1) that the defendant made a false representation as a statement of fact, 2) the statement was untrue and the defendant knew it was untrue, 3) the defendant made the false statement in order to induce the plaintiff to rely on the false statement, and 4) the plaintiff did rely on the false statement to (his/her) detriment."); *McCann Real Equities Series XXII, LLC v. David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 518, 890 A.2d 140, 161 (2006) ("(1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment.").

**Plaintiffs' Response:** The provision of the Civil Jury Instructions governing the tort of misrepresentation specifically, and on which Plaintiffs base this proposed instruction, uses the term "act" instead of "rely," Connecticut Judicial Branch Civil Jury Instructions § 3.16-2, as do decisions of the Connecticut Supreme Court and federal courts in this district (including one of the cases quoted by Mr. Fraser). *See, e.g., Kilduff v. Adams, Inc.*, 219 Conn. 314, 329 (1991) ("(3) that it was made to induce the other party to act on it"); *In re Colonial Ltd. P'ship Litig.*, 854 F. Supp. 64, 101 (D. Conn. 1994) ("(3) the statement was made to induce the plaintiff to act"). Regardless, it is not clear that there is any substantive difference between "act" and "rely" (the word used in the "Employment Actions" misrepresentation provision cited by Defendant) for purposes of Connecticut common law. *See Miller v. Appleby*, 183 Conn. 51, 51, 55, 57 (1981) (using "act" and "rel[y]" interchangeably). The same applies to Defendant's distinction between "detriment" and "injury." *See id.* at 55, 57.

[212] Adapted from Connecticut Judicial Branch Civil Jury Instructions § 3.2-2; *see also Holbrook v. Casazza*, 204 Conn. 336, 358-59 (1987) (rejecting challenge to instruction defining clear and convincing evidence as "a more exacting standard than proof by a preponderance of the evidence. Clear and convincing proof leaves no substantial doubt in your mind. It is proof that establishes in your mind not only that the proposition at issue is probable, but also that it is highly probable").

which is proof beyond a reasonable doubt.[213]  For the fourth element, however—that Plaintiffs

acted on the alleged statements at issue to their injury—Plaintiffs only need to prove that by a

preponderance of the evidence.[214]

---

[213] *Holbrook*, 204 Conn. at 358-59 (1987) (holding that such jury instructions were "sufficiently correct in law" and "furnished adequate guidance for the jury").

[214] **Defendant:** Plaintiffs' definition of the "clear and convincing" standard does not accurately reflect the standard as included in the Connecticut Judicial Branch Civil Jury Instructions.  This is unfairly prejudicial to Mr. Fraser.  FRE 403; *see* Connecticut Judicial Branch Civil Jury Instructions § 3.2-2 ("Instead, the party must produce clear and convincing evidence which is evidence that is substantial and that unequivocally establishes the elements of <state cause of action> …. Clear and convincing evidence is evidence that establishes for you a very high probability that the facts asserted are true or exist.") (emphasis supplied).

In addition, Plaintiffs' formulation of the standard that it "leaves no substantial doubt in your mind" suggests that the preponderance standard can be satisfied with substantial doubt in the jurors' minds.  That is unfairly prejudicial to Mr. Fraser.

Plaintiffs' reference to "only" in the last sentence is unfairly prejudicial because it minimizes the preponderance of evidence standard.

**Plaintiffs' Response:** Plaintiffs' instruction is based on the Connecticut Judicial Branch Civil Jury Instructions as well as a Connecticut Supreme Court case that specifically addresses jury instructions on the "clear and convincing" standard.  *Holbrook*, 204 Conn. at 358 (quoting in full, and approving, an instruction regarding the clear and convincing standard; "Clear and convincing evidence is a more exacting standard than proof by a preponderance of the evidence. Clear and convincing proof leaves no substantial doubt in your mind. It is proof that establishes in your mind not only that the proposition at issue is probable, but also that it is highly probable. . . . On the other hand, clear and convincing evidence is not as high a standard as the burden of proof applied in criminal cases, which is proof beyond a reasonable doubt. It is enough that the plaintiff in this case establishes falsity or actual malice beyond any substantial doubt. She does not have to dispel every reasonable doubt.").

Plaintiffs' instruction does not use the word "unequivocally," which is referred to in Connecticut Judicial Branch Civil Jury Instructions § 3.2-2, because of the risk that it might suggest to the jury that Plaintiffs must put forward evidence that leaves no doubt at all in the minds of the jurors.

**Defendant:** Plaintiffs' statement that the "clear and convincing" standard is not as high as the "beyond a reasonable doubt" standard will be confusing to the jury because the latter standard does not apply to this case, and the Court should not instruct the jury on it.  Plaintiffs' statement also attempts to minimize the "clear and convincing" standard.  This is unfairly prejudicial to Mr. Fraser.  FRE 403.  Plaintiffs' cited source, *Holbrook v. Casazza*, 204 Conn. 336, 358 (1987) does not mandate an instruction on "reasonable doubt" when a court instructs the jury on the "clear and convincing" standard.  Nor does the Connecticut Judicial Branch's model civil jury instruction as

[**Defendant**] In order to prove that Mr. Fraser aided and abetted a common law fraud committed by GAW Miners and ZenMiner, Plaintiffs must first prove by a preponderance of the evidence that GAW Miners and ZenMiner committed fraud.  To do so, Plaintiffs must prove each of the following four sub-elements:

> (1) <u>First</u>, GAW Miners and ZenMiner made a false representation as a statement of fact.
>
> (2) <u>Second</u>, the statement or statements in question were untrue, and known to be untrue, by GAW Miners and ZenMiner; or that GAW Miners and ZenMiner made the statements with reckless disregard for the truth of the matter.
>
> (3) <u>Third</u>, GAW Miners and ZenMiner made the statements to induce Plaintiffs to rely on them.
>
> (4) <u>Fourth</u>, Plaintiffs did rely on the statements to their injury.

Plaintiffs must prove the first three of these sub-elements by "clear and convincing evidence."  That is a different and higher standard of evidence from the "preponderance of the evidence" standard that applies to all of the other elements and claims in this lawsuit.  Clear and convincing evidence is evidence that unequivocally establishes the elements to which it applies. It is evidence that establishes for you a very high probability that the facts asserted are true or exist. For the fourth element, however—that Plaintiffs relied on the alleged statements at issue to their injury—Plaintiffs need to prove that by a preponderance of the evidence.

---

to "clear and convincing" evidence include any reference to the "reasonable doubt" standard.  *See* Connecticut Judicial Branch Civil Jury Instructions § 3.2-2.

**Plaintiffs' Response:** Instructing the jurors that clear and convincing evidence falls between the preponderance standard and the reasonable doubt standard may aid their understanding of how to apply an unfamiliar burden of proof.  As *Holbrook v. Casazza* indicates, there is no error in including such a reference point for the benefit of the jury.

**Second Element**
*"Generally Aware"*

For the second element of Plaintiffs' aiding and abetting common law fraud claim, Plaintiffs must prove by a preponderance of the evidence that Mr. Fraser was generally aware of his role as part of an illegal activity at the time he allegedly provided the assistance.

In order to prove that Mr. Fraser was generally aware of his role in GAW Miners and ZenMiner's alleged fraud, Plaintiffs must prove that Mr. Fraser had actual knowledge of the underlying fraud, <u>or</u> that he acted with reckless indifference to the possibility that the fraud was happening.[215]

**[Plaintiffs]** A person may be reckless within the meaning of the law even though he thought he was being careful.  But recklessness is more than mere negligence.  Reckless conduct represents grossly unreasonable, rash, or intemperate behavior.[216] A person acts recklessly if he acts despite a known risk, or if it is obvious that an ordinary person under the circumstances would have realized the danger and taken care to avert the harm likely to follow.[217]

---

[215] *Short v. Connecticut Cmty. Bank, N.A.*, No. 3:09-CV-1955 VLB, 2012 WL 1057302, at *12 (D. Conn. Mar. 28, 2012) ("In order to be 'generally aware,' an aider or abetter must have actual knowledge of the underlying tort or act with reckless indifference to the possibility that the underlying tort is occurring.").

[216] Adapted from 4 Hon. L. Sand, et al., *Modern Federal Jury Instructions-Civil* § 82.02, Instruction 82-8 (2013).

[217] **Defendant**: Plaintiffs' instructions that "[a] person may be reckless within the meaning of the law even though he thought he was being careful," and that "recklessness is more than mere negligence," are one-sided and unfairly prejudicial to Mr. Fraser. FRE 403. Mr. Fraser's proposed definition of "recklessness" is based on the Second Circuit's decision in *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38 (2nd Cir. 1978).

**Plaintiffs' Response:** Plaintiffs' instruction is accurate and instructs the jury that recklessness is an objective standard and that it requires a gross deviation from the standard of care. It is not clear how instructing the jury that "recklessness is more than mere negligence" and "represents grossly unreasonable, rash, or intemperate behavior" is "unfairly prejudicial" to Defendant.

[**Defendant**]   Reckless conduct is conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.[218]

---

[218] *Rolf v. Blyth, Eastman Dillon & Co., Inc.*, 570 F.2d 38 (2nd Cir. 1978) ("Reckless conduct is, at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.") (omitting internal quotation marks and citation); *In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 306 (S.D.N.Y. 2013) (A plaintiff pleading the conscious misbehavior or recklessness theory of scienter must allege conduct which is "highly unreasonable and which represents an extreme departure from the standards of ordinary care to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it.").

### Third Element
*"Substantial Assistance"*

Regarding the third element of Plaintiffs' aiding and abetting common law fraud claim against Mr. Fraser, Plaintiffs must prove by a preponderance of the evidence that Mr. Fraser gave knowing and substantial assistance to GAW Miners and ZenMiner in the Companies' alleged fraud.

**[Plaintiffs]** To do so, Plaintiffs must prove that his alleged assistance or encouragement was a substantial factor in bringing about the fraud.[219] [220]

---

[219] *Halo Tech Holdings, Inc. v. Cooper*, No. CIV 307-CV-489 AHN, 2008 WL 877156, at *20 (D. Conn. Mar. 26, 2008) ("The 'substantial assistance' element requires plaintiffs to make some allegation that the assistance provided by the alleged aider and abettor was a substantial factor in bringing about the violation.") (internal quotation marks and citation omitted).

[220] **Defendant:** (1) Plaintiffs' provide no support for the proposition that "encouragement" constitutes "substantial assistance." That term is vague, very broad and unfairly prejudicial to Mr. Fraser. FRE 403. (2) Plaintiffs' instruction is insufficient and unfairly prejudicial to Mr. Fraser in that it fails to instruct the jury that "substantial assistance," where no fiduciary relationship exists— as is the case here—requires proof of affirmative assistance. *See In re Sharp Int'l Corp.*, 403 F.3d 43, 50 (2d Cir. 2005) ("Substantial assistance may only be found where the alleged aider and abettor 'affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.' '[T]he mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.'").

**Plaintiffs' Response:** Regarding objection (1), Connecticut's aiding and abetting jurisprudence draws on the Restatement (Second) of Torts, *see In re Bayou Hedge Funds Inv. Litig.*, 472 F. Supp. 2d 528, 532 (S.D.N.Y. 2007), the relevant section of which applies to a person who "knows that the other's conduct constitutes a breach of duty and gives substantial assistance **or encouragement** to the other so to conduct himself," Restatement (Second) of Torts § 876; *accord Krawshuk v. Hollaway*, 2017 WL 715585, at *2 (Conn. Super. Ct. Jan. 12, 2017) ("On the question of aiding and abetting liability, the Connecticut Supreme Court has followed the principle expressed in Restatement (Second) of Torts § 876 . . . ."). Regarding objection (2), Defendant offers no authority for the proposition that, under Connecticut law, absent a fiduciary relationship, substantial assistance requires proof of affirmative assistance. *See In re Sharp Int'l Corp.*, 403 F.3d at 50 (construing New York law).

[**Defendant**] To do so, Plaintiffs must prove that Mr. Fraser acted affirmatively to assist the alleged fraud or conceal it, and that his alleged assistance was a substantial factor in bringing about the fraud.[221]

---

[221] *Halo Tech Holdings, Inc. v. Cooper*, No. CIV 307-CV-489 AHN, 2008 WL 877156, at *20 (D. Conn. Mar. 26, 2008) ("The 'substantial assistance' element requires plaintiffs to make some allegation that the assistance provided by the alleged aider and abettor was a substantial factor in bringing about the violation.") (internal quotation marks and citation omitted); *In re Sharp Int'l Corp.*, 403 F.3d 43, 50 (2d Cir. 2005) ("Substantial assistance may only be found where the alleged aider and abettor 'affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur.' '[T]he mere inaction of an alleged aider and abettor constitutes substantial assistance only if the defendant owes a fiduciary duty directly to the plaintiff.'").

**Plaintiffs:**  Plaintiffs object to the inclusion of "acted affirmatively" for the reasons stated *supra* note 220.

*******

In sum, to prevail on their claim that Mr. Fraser is liable for aiding and abetting the Companies' alleged Connecticut securities fraud, Plaintiffs must prove by a preponderance of the evidence that:  (1) GAW Miners and ZenMiner committed common-law fraud; (2) Mr. Fraser generally was aware of his role as part of an illegal or wrongful activity at the time he provided the alleged assistance to GAW Miners and ZenMiner; and (3) Mr. Fraser knowingly and substantially assisted GAW Miners and ZenMiner in the alleged fraud.  As I instructed you earlier, Plaintiffs must prove three of the four sub-elements by clear and convincing evidence to establish that the Companies committed common law fraud; the remaining elements of this claim must be proved by a preponderance of the evidence.

**Mr. Fraser's Proposed Jury Instruction No.    —**
**Affirmative Defenses Based on Plaintiffs' Individual Conduct** [222]

As I instructed you earlier, Mr. Fraser has raised certain defenses to the claims made by Plaintiffs based on Plaintiffs' own conduct. You will be asked to apply these defenses only to the named Plaintiffs who appeared at trial—that is, Messrs. Shinners, Pfeiffer and Audet. I discussed one such defense earlier, based on a Plaintiffs' violation of the CUSA. I will now instruct you on the remaining of Mr. Fraser's defenses based on Plaintiffs' conduct.

---

[222] **Plaintiffs:** The purpose of this trial is to determine Mr. Fraser's liability to the class and to resolve common issues of liability such as Mr. Fraser's status as a control person under federal and Connecticut securities laws. Delving into "affirmative defenses based on plaintiffs' individual conduct" risks distracting the jury from the class-wide liability issues at stake and confusing them as to the issues relevant to the class versus those relevant only to the named plaintiffs. As these particular affirmative defenses have no bearing on Mr. Fraser's liability to the class as a whole, and if successful, would have the practical effect of reducing the named plaintiffs' damages only, they are better deferred to any later proceedings for determining damages. *See* Manual for Complex Litigation (Fourth) § 21.5 ("In jury cases, the court may consider trying common issues first, preserving individual issues for later determination."); *cf. Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1168 (9th Cir. 2014) (affirming class certification where "the district court was careful to preserve [the defendant's] opportunity to raise any individualized defense it might have at the damages phase of the proceedings"). Indeed, this Court's class certification order recognized that defenses such as unclean hands may be employed "at the damages stage of the litigation." *Audet*, 332 F.R.D. at 69. In addition, Plaintiffs refer to their Motion in Limine Regarding Class Representatives, which addresses these affirmative defenses.

**Defendant:** First, this is the liability phase of a trial the Court bifurcated between liability and damages. (ECF 206) Whether Mr. Fraser's affirmative defenses against the class representatives are successful is an issue of liability: if Mr. Fraser prevails on any of his defenses against a class representative, he is not *liable* to them. Thus, Mr. Fraser's defenses against the individual class representatives are properly included in the liability portion of the bifurcated proceedings. Second, the parties expended significant resources briefing the scope of the class-wide trial (*see* ECF Nos. 217, 218, 222, 223), and Plaintiffs never previously proposed that Mr. Fraser not be permitted to present any of his affirmative defenses, which relate to his liability specifically. Third, Fraser raised various affirmative defenses against the class representatives at the class certification stage. Plaintiffs nonetheless insisted that the class representatives are "typical" of the class and that the affirmative defenses did not undermine predominance. (ECF 113 at 16-20.) Plaintiffs should not be permitted to have it both ways. Finally, it will not be distracting or confusing for the jury to consider Mr. Fraser's affirmative defenses against individual class representatives because the instructions related to those defenses are short and clearly delineated from the rest of the charge, there is no risk of confusion.

126

1.    <u>In Pari Delicto</u>

"*In pari delicto*" means "in equal fault."  This defense applies where, (1) as a direct result of a Plaintiff's own actions, that Plaintiff bears at least substantially equal responsibility for the violations the Plaintiff now seeks to redress, and (2) preclusion of that Plaintiff's claims would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public.[223] [224]

2.    <u>Unclean Hands</u>

---

[223] *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310–11 (1985) (the defense applies where, "(1) as a direct result of his own actions, the plaintiff bears at least substantially equal responsibility for the violations he seeks to redress, and (2) preclusion of suit would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public."); *see also* ECF 141 at 38 (ruling on class certification acknowledging defendant Stuart A. Fraser's *in pari delicto* defense).

[224] **Plaintiffs:** The sole legal authority that Defendant offers in support of its *in pari delicto* defense is a Supreme Court case that, while acknowledging the *possibility* of such a defense to federal securities fraud, nonetheless refused to recognize it in the case of plaintiffs seeking recovery for trades undertaken as a result of illegal insider tips. *See Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 315 (1985) ("We also believe that denying the in pari delicto defense in such circumstances will best promote the primary objective of the federal securities laws . . . ."). Nor was this defense pleaded by Defendant, *see* Dkt. 73, and the Court's references to the defense in its class certification order only highlight the complete lack of any evidence showing that Plaintiffs were *equally* to blame for the violations at issue, as the defense would require, *see Audet*, 332 F.R.D. at 69.

**Defendant:**  Mr. Fraser briefed and argued this defense as part of Plaintiffs' certification motion (ECF 107 at 42-43); Plaintiffs were thus properly on notice and cannot claim unfair prejudice.  *See Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003).  In *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985), the Court denied the in pari delicto defense in part because of a concern that it would discourage defrauded tippees from bringing claims against defrauding tippers.  While that may be a legitimate policy concern, it does not apply here where Plaintiffs seek to hold Mr. Fraser responsible for secondary liability after Plaintiffs agreed to let Mr. Garza, the primary violator, off the hook.

127

A Plaintiff cannot seek relief under CUSA if that Plaintiff has "unclean hands." That means a Plaintiff is not entitled to relief if that Plaintiff's conduct has not been fair, equitable and honest as to the particular controversy in issue.[225] [226]

3.    Ratification

"Ratification" means that a Plaintiff has done something to communicate, by words or actions, that he or she accepted and approved of the conduct of which he or she is now

---

[225] *Bauer v. Waste Mgmt. of Connecticut, Inc.*, 239 Conn. 515, 525, 686 A.2d 481, 486 (1996) ("The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue.").

[226] **Plaintiffs:** Defendant has offered no legal authority showing that unclean hands is a defense to the unregistered securities and Connecticut securities fraud claims at issue here. As Defendant notes, unclean hands might apply to bar equitable relief, but the Connecticut Uniform Securities Act provides that plaintiffs "may sue either at law *or* in equity." Conn. Gen. Stat. § 36b-29(a) (emphasis added). Here, Plaintiffs seek a judgment at law to be rendered by the jury. In any event, unclean hands, as this Court recognized in its class certification order, may be asserted "at the damages stage of the litigation" and thus, need not be decided at this trial. *Audet*, 332 F.R.D. at 69. Should the Court decide to instruct the jury on this defense, Plaintiffs request that the following language be added to the instruction: "Unless the plaintiff's conduct is of such a character as to be condemned and pronounced wrongful by honest and fair-minded people, the doctrine of unclean hands does not apply." *See Bauer*, 686 A.2d at 486.

**Defendant:** Plaintiffs are wrong. While the CUSA permits a plaintiff to sue in law or equity, it permits non-rescissionary damages only if the plaintiff no longer owns the security. *See* CUSA 36b-29(a)(2). Plaintiffs cannot simply elect the non-rescissionary remedy and argue that the defense of unclean hands does not apply.

Plaintiffs' proposed language, from a Southern District of New York case, is extreme and unfairly prejudicial. Mr. Fraser's proposed language is consistent with the "unclean hands" standard used by Connecticut state courts. *See, e.g.*, *Monetary Funding Grp., Inc. v. Pluchino*, 87 Conn. App. 401, 407, 867 A.2d 841, 846 (2005) ("Our jurisprudence has recognized that those seeking equitable redress in our courts must come with clean hands. The doctrine of unclean hands expresses the principle that where a plaintiff seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue.").

complaining.[227]  If a Plaintiff has ratified certain conduct, that Plaintiff cannot complain of the

conduct that it approved.[228] [229]

---

[227] *City of Bridgeport v. C.R. Klewin Ne., LLC*, 51 Conn. Supp. 1, 6, 971 A.2d 864, 868–69 (Super. Ct. 2007) ("Ratification is defined as the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account.... Ratification requires acceptance of the results of the act with an intent to ratify, and with full knowledge of all the material circumstances.") (quoting *Botticello v. Stefanovicz*, 177 Conn. 22, 28, 411 A.2d 16 (1979)); 3B Fed. Jury Prac. & Instr. § 162:174 (6th ed.) – Waiver, Estoppel, Ratification ("'Ratification' is nearly the same as estoppel. It means that plaintiff __ has done something to communicate to defendant __, by words or actions, that plaintiff __ accepts and approves of defendant's conduct.").

[228] 3B Fed. Jury Prac. & Instr. § 162:174 (6th ed.) – Waiver, Estoppel, Ratification ("Defendant ___ has raised several affirmative defenses to plaintiff's claims based on plaintiff's own conduct. To the extent defendant proves any of them by a preponderance of the evidence, defendants would not be liable for any conduct to which the defense applies.").

[229] **Plaintiffs:** This affirmative defense is unavailable to Mr. Fraser because it was not pleaded. *See* Dkt. 73. Defendant cites a sample jury instruction—which pertains to Section 12 of the Securities Act of 1933, not Section 10 of the Securities Exchange Act of 1934—that characterizes ratification as "nearly the same as estoppel," but estoppel (which was pleaded) is not the same as ratification (which was not). Indeed, the same jury instruction cited by Defendant provides separate instructions as to the two defenses. *See* 3B Fed. Jury Prac. & Instr. § 162:174 (6th ed.). In any event, Defendant has offered no legal authority showing that ratification is a defense to the unregistered securities and securities fraud claims at issue here. *Cf., e.g.*, *Van Syckle v. C.L. King & Assocs., Inc.*, 822 F. Supp. 98, 104 (N.D.N.Y. 1993) (discussing ratification in context of securities fraud claim arising from allegedly unauthorized trades executed by investment manager, not unregistered securities claims or securities fraud claims related to material misstatements).

**Defendant:**  This defense is available to Mr. Fraser, regardless of whether he pleaded it in his answer.  As Plaintiffs note, Mr. Fraser specifically pleaded the defense of estoppel, which is similar to ratification. *See* 3B Fed. Jury Prac. & Instr. § 162:174 (6th ed.) ("'Ratification' is nearly the same as estoppel."); *In re Adelphia Recovery Tr.*, 634 F.3d 678, 697 (2d Cir. 2011) ("Ratification and estoppel are 'closely allied'"). Thus, the "primary purpose" of requiring an affirmative defense to be pled, *i.e.*, to provide "notice and an opportunity to respond," has been served and Plaintiffs are in no way unfairly prejudiced. *Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003); *see also Cramer v. Hoffman*, 390 F.2d 19, 22 (2d Cir. 1968) (counsel could move to conform the pleadings to the proof at the end of the trial because counsel was "merely" adding a defense which was similar to another defense which had been disputed at trial, so there was no "surprise" for plaintiffs).  The same logic applies here.

In addition, Plaintiffs provide no support for their argument that ratification does not apply as a defense for Mr. Fraser in this case.