## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DENIS MARC AUDET *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. |
| | : | 3:16-CV-00940-MPS |
| v. | : | |
| | : | Hon. Michael P. Shea |
| STUART A. FRASER, GAW MINERS, | : | |
| LLC, and ZENMINER, LLC, (d/b/a/ | : | September 1, 2021 |
| ZEN CLOUD), | : | |
| Defendants. | : | |

## DEFENDANT STUART A. FRASER'S MEMORANDUM
## OF LAW IN SUPPORT OF MOTIONS *IN LIMINE*
## RELATED TO (1) HOMERO J. GARZA'S DEPOSITION TESTIMONY, (2)
## HARDWARE- AND CLOUD-HOSTED MINING,
## (3) ZENMINER AND (4) THE HONOR PROGRAM

Daniel H. Weiner (ct12180)
Marc A. Weinstein (*pro hac vice*)
Amina Hassan (*pro hac vice*)
Hannah Miller (*pro hac vice*)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004-1482
Tel.: (212) 837-6000
Fax: (212) 422-4726
Email: daniel.weiner@hugheshubbard.com

David R. Schaefer (ct04334)
Sean M. Fisher (ct23087)
Rowena Moffett (ct414899)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT  06511
Tel.: (203) 772-2600
Fax: (203) 562-2098
**Email:** rmoffett@bswlaw.com

*Attorneys for Defendant Stuart A. Fraser*

## <u>TABLE OF CONTENTS</u>

<u>Page(s)</u>

Argument ........................................................................................................................1

I.    MOTION *IN LIMINE* NO. 1:  TO PRECLUDE USE OF GARZA'S DEPOSITION
      TESTIMONY AT TRIAL ........................................................................................1

II.   MOTION *IN LIMINE* NO. 2:  TO PRECLUDE PLAINTIFFS FROM ARGUING
      FRASER'S LIABILITY BASED ON HARDWARE- AND CLOUD-HOSTED
      MINING...................................................................................................................5

III.  MOTION *IN LIMINE* NO. 3:  TO PRECLUDE PLAINTIFFS FROM ARGUING
      FRASER'S LIABILITY BASED ON GAW MINER'S ALLEGED
      PARTNERSHIP WITH, AND ACQUISITION OF, ZENMINER ..................................7

      A.    The May 23, 2014 and August 13, 2014 Statements Are Not Actionable and The
            Court Should Preclude Plaintiffs from Arguing Otherwise. ....................................9

      B.    The Court Should Preclude Plaintiffs from Presenting Any Evidence Related to
            the May 23, 2014 and August 13, 2014 Statements. ..............................................10

            1.    Evidence Related to the May 23 and August 13 Statements is Irrelevant.
                  .....................................................................................................................10

            2.    Evidence Related to the May 23 and August 13 Statements Should Be
                  Excluded Under FRE 404(b). ..................................................................14

            3.    The Court Should Exclude Evidence Related to the May 23 and August
                  13 Statements Under FRE 403. ...............................................................16

IV.   MOTION *IN LIMINE* NO. 4:  TO EXCLUDE ANY EVIDENCE RELATED TO
      THE HONOR PROGRAM...................................................................................18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 14-CV-6544(KAM)(GRB), 2019 U.S. Dist. LEXIS 91965 (E.D.N.Y. May. 31, 2019) ..............11, 19

*Anthony v. City of Bridgeport*, No. 3:12CV619 (WIG), 2015 WL 3745302 (D. Conn. June 15, 2015) ........................................................................................15

*Arlio v. Lively*, 474 F.3d 46 (2d Cir. 2007)....................................................................16

*Berkovich v. Hicks*, 922 F.2d 1018 (2d Cir. 1991) ........................................................15

*Colon v. Metro-N. Commuter R.R. Co.*, No. 3:13-CV-00325 (JAM), 2017 WL 3283187 (D. Conn. Aug. 2, 2017) ........................................................................16

*In re Edelman,* 295 F.3d 171 (2d Cir. 2002)....................................................................5

*Glover v. DeLuca*, No. 2:03-CV-0288, 2006 WL 2850448 (W.D. Pa. Sept. 29, 2006) ..........................................................................................................................14

*In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102 (2d Cir. 1998) .....................9

*Kolb v. Suffolk Cty.*, 109 F.R.D. 125 (E.D.N.Y. 1985)....................................................2

*Maran Coal Corp. v. Societe Generale de Surveillance S.A.,* No. 92 CIV 8728 (DLC), 1996 WL 11230 (S.D.N.Y. Jan. 10, 1996)......................................................4

*Napier v. Bossard*, 102 F.2d 467 (2d Cir. 1939) (Learned Hand, J.)..............................3

*Olaf Sööt Design, LLC v. Daktronics, Inc.*, No. 15 Civ. 5024 (RWS), 2018 WL 6424551 (S.D.N.Y. Dec. 6, 2018)..............................................................................17

*Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314 (S.D.N.Y. 2009)....................18

*Poptech, L.P. v. Stewardship Inv. Advisors, LLC*, 849 F. Supp. 2d 249 (D. Conn. 2012) .....................................................................................................................9, 10

*In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63 (2d Cir. 2001) .....................................14

*SCM Corp. v. Xerox Corp.*, 77 F.R.D. 16 (D. Conn. 1977)............................................4

*United States v. Caccia*, 122 F.3d 136 (2d Cir. 1997) ...................................................5

*United States v. Curley*, 639 F.3d 50 (2d Cir. 2011) .....................................................15

ii

### <u>TABLE OF CONTENTS</u> - continued

**<u>Page(s)</u>**

*United States v. Glenn*, 312 F.3d 58 (2d Cir. 2002).........................................................13

*United States v. Peterson*, 808 F.2d 969 (2d Cir.1987) ...............................................15

**Statutes and Rules**

Fed. R. Civ. P. 32 ...........................................................................................................1, 2

Fed. R. Civ. P. 45(c)(1)(A) ................................................................................................3

Fed. R. Evid. 401 ...............................................................................................................10

Fed. R. Evid. 403 .................................................................................................16, 18, 19

Fed. R. Evid. 404 .................................................................................................14, 15, 16

Defendant Stuart A. Fraser ("Fraser") submits this memorandum of law in support of his motions *in limine* to preclude Plaintiffs from making certain arguments and presenting or adducing certain evidence at trial related to:  (1) the deposition testimony of Homero Joshua Garza, (2) hardware-hosted mining and cloud-hosted mining; (3) ZenMiner; and (4) the "Honor Program."

<u>**Argument**</u>

## I.   MOTION *IN LIMINE* NO. 1:  TO PRECLUDE USE OF GARZA'S DEPOSITION TESTIMONY AT TRIAL

The Court should preclude Plaintiffs from relying on former lead defendant Homero Joshua ("Josh") Garza's deposition testimony at trial rather than have him testify live before the jury.  Based on Plaintiffs' own allegations, it is Garza who perpetrated the fraud for which they now wish to hold Fraser *secondarily* responsible; while Garza is readily in their control, Plaintiffs seek to designate his deposition testimony for trial, rather than call him to testify in-person before the jury.  The Court should not permit Plaintiffs to do so.

Under Rule 32 of the Federal Rules of Civil Procedure, a party may only use deposition testimony of a witness if certain narrow and limited circumstances exist. None of those circumstances exist here—Garza is alive; he is not unable to testify because of age, illness, infirmity or imprisonment; Plaintiffs, to Fraser's knowledge, have not attempted to procure his attendance by subpoena (nor do they need to in light of their cooperation agreement with Garza); and no "exceptional circumstances make it desirable" to permit deposition testimony in lieu of Garza testifying at trial.  *See* Fed. R.

Civ. P. 32(a)(4)(E).  As discussed below, the opposite is true:  the interest of justice

demands that Plaintiffs call Garza to trial if they wish to present his testimony to the

jury.

The only Rule 32 exception to live testimony that applies in Garza's situation is

the 100-mile rule, *i.e.*, a witness is considered unavailable to a party to appear for live

testimony if he is more than 100 miles from the place of hearing or trial.  Fed. R. Civ. P.

32(a)(4)(B).  However, even when a witness is "unavailable" on this basis, the Court

retains its discretion to determine whether his testimony by deposition should be

permitted.  *See* Fed. R. Civ. P. 32(a)(4) (a party "may use" deposition testimony if the

Court finds the witness is unavailable); *Kolb v. Suffolk Cty.*, 109 F.R.D. 125, 126 n.3

(E.D.N.Y. 1985) ("admissibility of deposition testimony at trial is within the discretion

of the trial court") (citation omitted).  Here, the Court should not permit Plaintiffs to use

Garza's deposition testimony because:  (1) Garza is in fact available to Plaintiffs; (2)

Garza is a critical witness on whom Plaintiffs intend to rely heavily; and (3) the policy

concerns underlying Rule 32's 100-mile limitation are not implicated here.

First, Garza is in fact "available" to Plaintiffs to testify at trial.  A few months

after they filed their original complaint in this case naming Garza, the Companies and

Fraser, Plaintiffs entered into a cooperation agreement with Garza, dropping all claims

against him in exchange for his cooperation to prosecute their claims against Fraser.

(Hassan Decl., Ex. A (Oct. 20, 2016 Cooperation Agreement).)  That cooperation

includes Garza's express agreement to "[m]ak[e] himself available for interviews,

depositions, or **testimony at trial as Plaintiffs may reasonably require**."  (*Id.* ¶ 2(c)

(emphasis added).)  If Garza materially breaches the Cooperation Agreement, the agreement permits Plaintiffs to reinstate their claims against him.  (*Id*. ¶ 1.)  Thus, Plaintiffs have the ability to make Garza available for trial, and he is contractually obligated to appear regardless of the 100-mile limitation of Rule 32 (or a similar geographic limitation to the Court's subpoena power under Rule 45).[1]

Second, the Court should exercise its discretion to prohibit Plaintiffs from using Garza's deposition testimony because Garza is Plaintiffs' key witness and should testify in person.  It is undisputed that there is a strong preference for live testimony in the adversarial process.  *See, e.g.*, *Napier v. Bossard*, 102 F.2d 467, 469 (2d Cir. 1939) (Learned Hand, J.) ("The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand.").  This is particularly so in the case of a crucially important witness.  Here, it is undeniable that Garza is the key witness for Plaintiffs.  Although Plaintiffs allege that Garza was the primary violator who ran a "fraudulent scheme" that defrauded Plaintiffs out of millions of dollars (*e.g.*, FAC ¶¶ 11, 78, 83, 169), they dropped Garza from this case in return for his cooperation in prosecuting their claims against Fraser and now intend to use Garza's deposition testimony to implicate Fraser.  (*See* Hassan Decl., Ex. B (excerpts of Plaintiffs' designated testimony for Garza stating, for example:  Fraser was Garza's "business

---

1.  Rule 45 permits the service of a trial subpoena only "within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(1)(A).  However, here, Plaintiffs do not need a subpoena to compel Garza's testimony since he is contractually obligated to appear at trial at Plaintiffs' request.

partner;" Fraser was not a "typical investor;" Garza sought advice from Fraser "many times" about selling Hashlets; Fraser was "very knowledgeable" about financial products; and "Stuart knew the ins and outs" of securities.).)  If Plaintiffs rely on testimony from Garza, they should do so live, so that the jury may evaluate Garza's demeanor and credibility directly, rather than through a series of self-serving video snippets from Garza's deposition.  *See SCM Corp. v. Xerox Corp.*, 77 F.R.D. 16, 17 (D. Conn. 1977) (in interpreting the scope of Rule 32, exalting the "virtue of affording the trier an opportunity to observe the witness"); *Maran Coal Corp. v. Societe Generale de Surveillance S.A.,* No. 92 CIV. 8728 (DLC), 1996 WL 11230, at *2 (S.D.N.Y. Jan. 10, 1996) (holding that plaintiff could rely on the deposition designations of two of defendants' former, non-U.S.-based consultants only if "defendants lack the power to produce the witnesses at trial" because their testimony was "critical to the jury's understanding of the issues" and the jury should be able "to evaluate their demeanor and better assess their credibility" with live testimony).  Here, Plaintiffs possess the power to compel Garza's live testimony, and should be required to do so if they intend to rely on his testimony.[2]

    <u>Third</u>, the policy considerations underlying the 100-mile rule—to "give[] nonparty deponents protection from expending time and money to comply with a

---

2. Plaintiffs object, on hearsay and foundational grounds, to many of Fraser's trial exhibits that involve Garza.  This only underscores the importance of Garza's presence at trial, so that Fraser's counsel is able to cross-examine Garza fully in the presence of the jury.

subpoena" and "protect such witnesses from being subjected to excessive discovery burdens in litigation in which they have little or no interest," *In re Edelman,* 295 F.3d 171, 178 (2d Cir. 2002) (citation omitted)—simply do not apply here.   Garza voluntarily agreed to make himself available for testimony at trial of this action and cooperate with Plaintiffs in exchange for dismissal of their claims against him.

The Court should therefore preclude Plaintiffs' use of Garza's deposition testimony in lieu of his live appearance at trial.[3]

## II.     MOTION *IN LIMINE* NO. 2:  TO PRECLUDE PLAINTIFFS FROM ARGUING FRASER'S LIABILITY BASED ON HARDWARE- AND CLOUD-HOSTED MINING

Although the First Amended Complaint ("FAC," ECF 57) asserts claims related to six products offered by Defendants GAW Miners LLC and/or ZenMiner LLC (the "Companies") — *i.e.*, hardware-hosted mining ("Hardware-Hosted Mining"), cloud-hosted mining ("Cloud-Hosted Mining"), Hashlets, Hashpoints, Paycoin and HashStakers[4]—  Plaintiffs concede in the parties' Joint Trial Memorandum that the only products at issue in this case are Hashlets, Hashpoints, Paycoin and Hashstakers.  (*See, e.g.*, Joint Proposed Jury Instructions at 21 ("Plaintiffs assert that GAW Miners and ZenMiner offered and sold four types of securities—Hashlets, Hashstakers, Hashpoints,

---

3.  In the event the Court allows Plaintiffs to use Garza's deposition testimony at trial in his absence, Fraser asks that the Court give the jury a "missing witness" charge because Plaintiffs will have failed to call a witness where "the witness's testimony would be material and the witness is peculiarly within the control of" Plaintiffs, not Fraser.  *See United States v. Caccia*, 122 F.3d 136, 138 (2d Cir. 1997).

4.  *See, e.g.*, FAC ¶¶ 168-69, 174-78, 180, 193, 187-91, 196-99, 204-07.

and Paycoin."); Joint Trial Memorandum, Ex. D (Plaintiffs' Categorical Objections to

Defendant's Trial Exhibits, Objection 402/403-B) (objecting to exhibits because they

predate the class period and do not appear to relate to Hashlets, Hashpoints,

HashStakers or Paycoin).)

Not surprisingly, the Court's definition of the relevant class in this action

includes only those four products:  "All persons or entities who, between August 1,

2014, and January 19, 2015, (1) purchased Hashlets, Hashpoints, HashStakers, or

Paycoin; or (2) acquired Hashlets, Hashpoints, HashStakers, or Paycoin by converting,

upgrading, or exchanging other products sold by the Companies." (*See* ECF 144 (Order

on Class Definition).)

Because Plaintiffs have not formally withdrawn their claims with respect to

Hardware- and Cloud-Hosted Mining, Fraser makes this motion to preclude Plaintiffs

from arguing at trial that the Companies or Fraser are liable to Plaintiffs in connection

with either of those two products.  Nor can Plaintiffs make such claims.  First, as noted

above, the class that the Court certified in this case does not include Hardware- and

Cloud-Hosted Mining; thus, class members cannot assert any claims with respect to

either product.  Second, none of the three named Plaintiffs can make any claims against

the Companies or Fraser with respect to Hardware- and Cloud-Hosted Mining because

none of them purchased these products from the Companies.  (*See* ECF No. 1-1 at 4-64

(Plaintiffs' certifications showing that Plaintiffs Shinners and Audet did not purchase or

acquire Hardware- or Cloud-Hosted Mining products at all, and Plaintiff Pfeiffer

acquired some Cloud-Hosted Mining, but from a third party and then converted those

to Hashlets); *see also* FAC ¶¶ 21-23 (alleging the same).)

**III.    MOTION *IN LIMINE* NO. 3:  TO PRECLUDE PLAINTIFFS FROM ARGUING FRASER'S LIABILITY BASED ON GAW MINER'S ALLEGED PARTNERSHIP WITH, AND ACQUISITION OF, ZENMINER**

Plaintiffs allege that, in May 2014, former lead defendant Garza created ZenMiner to provide a remote management software (the "zenController") that Hardware-Hosted Mining customers could use to access and control the mining equipment they owned, and that it was falsely "marketed as a partnership between ZenMiner and GAW Miners."  (FAC ¶¶ 78-79.)  Plaintiffs also allege that "*Hardware-Hosted Mining and Cloud-Hosted Mining* were fraudulent schemes" because (1) in a May 23, 2014 interview, Garza and Thomas Fraser (Fraser's son, "Thomas") made misstatements regarding a partnership between GAW Miners and ZenMiner, and (2) in an August 13, 2014 GAW press release, Garza misstated that GAW Miners had acquired ZenMiner for $8 million.  (*See id*. ¶¶ 82-88 (emphasis supplied).)

Specifically, Plaintiffs allege, that, "even though Garza and Fraser fully controlled ZenMiner, Garza marketed it to the public as a business entity that was distinct from GAW Miners" and "described [ZenMiner] as being owned by Thomas Fraser, Fraser's son."  (*Id*. ¶¶ 82-83.)  In connection with the foregoing, Plaintiffs assert that "Garza convinced Thomas Fraser to pretend [during a May 23, 2014 interview with *Cryptocoinnews.com*] that ZenMiner was his company and idea."  (*Id*. ¶ 84.)  Plaintiffs also allege that, in August 2013, GAW Miners issued a press release that falsely announced that GAW Miners' "parent company (which was also owned and controlled by Garza and Fraser), had purchased a controlling stake in ZenMiner for $8 million."

(*Id.* ¶ 87.)  Plaintiffs assert that the statement was false "because Garza and (defendant) Fraser had always owned and controlled ZenMiner," and the purported ZenMiner transaction "was marketed as proof that GAW Miners was a leader in the virtual currency industry by bridging the gap between hardware sellers and hosted mining services."  (*Id.*)

Plaintiffs have designated deposition testimony from Garza regarding the May 23, 2014 interview, the article that *Cryptocoinnews.com* then published, titled "Groundbreaking Deal Between GAWMiners and ZenMiner Will Revolutionize Mining!" and the August 13, 2014 press release (the May 23, 2014 interview, article and any other statements regarding the partnership between GAW Miners and ZenMiner referred to as the "May 23 Statements," and the August 13, 2014 press release and any other statements regarding GAW Miners' acquisition of ZenMiner referred to as the "August 13 Statements" ).  Plaintiffs have also designated Garza's deposition testimony regarding Fraser's purported knowledge as to those statements.  (Hassan Decl., Ex. C (excerpts of Garza deposition testimony designated by Plaintiffs).)  In addition, Plaintiffs have designated as trial exhibits various emails including Fraser, Thomas and/or Garza regarding these statements and other documents that refer to the statements about GAW Miners acquiring ZenMiner.  (S*ee, e.g.*, Hassan Decl., Ex. D (PX23), Ex. E (PX43), Ex. F (PX44), Ex. G (PX126), Ex. H (PX119) and Ex. I (PX120).)

For the reasons set forth below, the Court should not permit Plaintiffs to present or adduce any evidence at trial regarding the May 23 and August 13 Statements.

**A.**     **The May 23, 2014 and August 13, 2014 Statements Are Not Actionable and The Court Should Preclude Plaintiffs from Arguing Otherwise.**

As a threshold matter, the Court should preclude Plaintiffs from arguing and presenting any evidence to the jury that the May 23 and August 13 Statements are actionable misstatements as to which the Companies or Fraser are liable, for the following reasons:

<u>First</u>, the class period in this case begins on August 1, 2014 (ECF 144); the May 23 Statements predate the class period by more than two months.  Pre-class period statements are not actionable as a matter of law.  *See In re Int'l Bus. Machines Corp. Sec. Litig.*, 163 F.3d 102, 107 (2d Cir. 1998) (affirming grant of summary judgment to IBM on IBM's statements made a day before the start of the class period because a defendant "is liable only for those statements made during the class period"); *see also Poptech, L.P. v. Stewardship Inv. Advisors, LLC*, 849 F. Supp. 2d 249, 272 (D. Conn. 2012) (relying on *IBM* and its progeny to dismiss proposed class representative because he relied on an omission from outside the class period).

<u>Second</u>, neither the May 23 nor the August 13 Statements are actionable as to the Companies or Fraser because these statements <u>do not</u> relate to the products at issue in this case:  Hashlets, Hashpoints, Paycoin and Hashstakers.  (*See supra* at 5-6 (referring to the Parties' Joint Trial Memorandum submissions).)  Based on Plaintiffs' own allegations, the May 23 and August 13 Statements do not relate to these products, but to an alleged "fraudulent scheme" in connection with Hardware- and Cloud-Hosted Mining, products as to which Plaintiffs have no claims.  (*See* FAC ¶¶ 82-88 (alleging

only that the May 23 and August 13 Statements rendered Hardware- and Cloud-Hosted Mining "fraudulent schemes," not Hashlets, Hashpoints, Hashstakers or Paycoin); *id.* (discussing the May 23 interview and article and the August 13 press release only in connection with Hardware- and Cloud-Hosted Mining).)  Thus, neither the May 23 nor the August 13 Statements are actionable misstatements.

> **B.    The Court Should Preclude Plaintiffs from Presenting Any Evidence Related to the May 23, 2014 and August 13, 2014 Statements.**

The Court should also preclude Plaintiffs from presenting to the jury any evidence related to the May 23 and August 13 Statements because (1) that evidence is not relevant to Plaintiffs' claims; (2) evidence of Fraser's actions related to the May 23 and August 13 Statements constitutes improper propensity evidence; and (3) even if relevant, evidence related to the May 23 and August 13 Statements should be excluded as unfairly prejudicial, confusing and misleading, and because it would result in unnecessary delay and waste of juror time.

> **1.    Evidence Related to the May 23 and August 13 Statements is Irrelevant.**

Evidence is relevant only if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401(a)-(b).  The question of relevancy is "whether an item of evidence, when tested by the processes of legal reasoning, possesses sufficient probative value to justify receiving it in evidence."  Fed. R. Evid. 401, Advisory Committee Notes.

Here, evidence related to the May 23 and August 13 Statements does not possess

sufficient probative value to justify receiving it in evidence because:  (1) it does not relate to the four products at issue in this case; (2) it is not probative of Garza's subsequent alleged misstatements regarding those products; (3) Plaintiffs cannot argue that Fraser's after-the-fact knowledge related to the May 23 and August 13 Statements makes it more probable that he had knowledge, or should have known, of Garza's subsequent misrepresentations, and (4) the May 23 Statements predate the class period.

First, the May 23 and August 13 Statements are irrelevant because, as discussed above, they do not relate to the products at issue—*i.e.*, Hashlets, Hashpoints, Paycoin and Hashstakers.  The May 23 Statements and the August 13 Statements contain no reference to these products (*see* Hassan Decl., Exs. D  and E), nor is there any evidence that a class member relied on these statements to purchase those products.  Rather, by Plaintiffs' own allegations, the May 23 and August 13 Statements relate to the alleged fraud with respect to Hardware- and Cloud-Hosted Mining, products with respect to which Plaintiffs have no claims.  Because evidence related to the May 23 and August 13 Statements does not relate to the products at issue, the Court should exclude it.  *See Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 14-CV-6544(KAM)(GRB), 2019 U.S. Dist. LEXIS 91965, at *12-13 (E.D.N.Y. May. 31, 2019) (excluding evidence related to patents that were not at issue in the case).[5]

Second, the alleged falsity of the May 23 and August 13 Statements is not

---

5.  Plaintiffs object to many of Fraser's trial exhibits on relevance grounds because they "do[] not appear to relate to Hashlets, Hashpoints, Paycoin and Hashstakers."  The same applies to the May 23 and August 13 Statements.

probative of whether Garza's statements concerning the four products at issue were false or materially misleading.  The May 23 and August 13 Statements—suggesting that GAW Miners and ZenMiner were independent companies or that Thomas came up with the idea of ZenMiner—are in no way probative of the misstatements Plaintiffs allege with respect to the operational aspects of Hashlets, Hashpoints, Hashstakers and Paycoin, such as whether Garza had sufficient mining power to support Hashlets, whether he was directing the mining to pools selected by Hashlet owners or the expected value of Paycoin.  (*See* FAC ¶¶ 9(c)-(m).)  Evidence related to the May 23 and August 13 Statements is therefore not probative of the alleged actionable fraud in this case.

<u>Third</u>, Fraser's after-the-fact knowledge of the alleged falsity of the May 23 and August 13 Statements is not probative of his purported culpability.  Fraser testified at his deposition that, when he read the May 23 article "after the fact," he realized it contained statements that were not correct, in particular statements suggesting that GAW Miners and ZenMiner were independent companies and that his son was an employee of ZenMiner.  (*See* Hassan Decl., Ex. J (Fraser Dep. Tr. at 109:21-110:1, 133:19-134:3, 136:7-13).)  Fraser similarly testified that, when he read the August 13 press release after it was published, he realized that it mis-portrayed the relationship between GAW Miners and ZenMiner.  (*See id*. at 111:2-7, 138:17-23.)  However, Fraser's knowledge that the May 23 and August 13 Statements were not correct is not probative of his alleged knowledge of Garza's misstatements with respect to Hashlets, Hashpoints, Hashstakers and Paycoin.  Specifically, Fraser's knowledge that the May 23 and August

12

13 Statements were incorrect, because he understood generally that GAW Miners and ZenMiner were related, and not independent, companies or that his son, who had a full-time job at Cantor Fitzgerald, did not run another company on the side and did not develop a controller for mining cryptocurrency, is in no way probative of Fraser's alleged knowledge of the misstatements regarding the operations and payouts of the four products at issue, such as whether there were sufficient miners in a warehouse in Mississippi to support Hashlets; how Garza calculated payouts for Hashlets; the value of Hashpoints; whether Garza had agreements with third-party merchants to accept Paycoin; the expected returns from Hashstakers; the utility of Paybase; or the expected value of Paycoin.  (*See, e.g.*, FAC ¶¶ 9(c)-(m) (Plaintiffs' examples of defendants' alleged misstatements that Fraser allegedly knew were false or misleading at the time they were made).)

Nor is Fraser's after-the-fact knowledge that Garza misstated the relationship between GAW Miners and ZenMiner and incorrectly bragged that GAW Miners had purchased ZenMiner for $8 million probative of whether Fraser should have known that Garza would allegedly defraud customers out of their money, run a Ponzi scheme or otherwise engage in criminal conduct.  That is too big of an inferential leap, and "as the inferential leap between the fact and the proposition to be derived grows"—as is the case here—"the probative value of the evidence diminishes."  *United States v. Glenn*, 312 F.3d 58, 70 (2d Cir. 2002).

<u>Finally</u>, the May 23 Statements and evidence related to them lack probative value for the additional reason that these statements predate the start of the class period by

over two months.  Plaintiffs object to certain of Fraser's trial exhibits on this very

ground, *i.e.*, the exhibit is not relevant because it predates the class period.  (*See* Joint

Trial Memorandum, Ex. D (Plaintiffs' Categorical Objections, Objection 402/403-B).)

That objection applies equally to the May 23 Statements. [6]

### 2.   Evidence Related to the May 23 and August 13 Statements Should Be Excluded Under FRE 404(b).

The Court should also exclude evidence related to the May 23 and August 13

Statements under FRE 404(b), which prohibits the use of evidence of "other acts" to

"prove a person's character in order to show that on a particular occasion the person

acted in accordance with the character."  Fed. R. Evid. 404(b)(1).  Plaintiffs cannot use

evidence of Fraser's actions related to the May 23 and August 13 Statements, including

---

6.   Even at the initial pleading stage of a case, the Second Circuit has considered pre-class evidence *only* if it "confirm[s] what a defendant should have known during the class period."  *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001).  In *In re Scholastic Corp. Securities Litigation*, a case involving misstatements during the class period about sales of children's books, the Second Circuit held on a motion to dismiss that pre-class evidence of the sharp decline in book sales was relevant "to establish that at the start of the class period, defendants had a basis for knowing increased [book] sales were unlikely in the third quarter due to marked decreased sales experienced in the second quarter."  *Id.*  Here, on the other hand, and as discussed above (*supra* at 11-13), Fraser's knowledge that the May 23 Statements were false did not provide Fraser a "basis" for knowing whether Garza's statements about the operations and payouts of Hashlets, Hashpoints, Hashstakers and Paycoin were false.  *See Glover v. DeLuca*, No. 2:03-CV-0288, 2006 WL 2850448, at *23 n.40 (W.D. Pa. Sept. 29, 2006) (adopting the *In re Scholastic* standard, and refusing to consider on a motion to dismiss, events from outside the class period which were not "tie[d]" to "[d]efendants' knowledge" during the class period).  Fraser's knowledge related to the May 23 Statements is simply not "tied" to his purported knowledge of alleged misstatements during the class period, and is thus not relevant.

his "reaction" to those statements or what Fraser did (or did not do) once he learned of the statements, to argue that Fraser acted improperly in connection with the later alleged misrepresentations in this case. That would constitute impermissible propensity evidence. *See Anthony v. City of Bridgeport*, No. 3:12CV619 (WIG), 2015 WL 3745302, at *3 (D. Conn. June 15, 2015) (excluding evidence of prior complaints on the basis that the proposed use of such evidence "amount[ed] to no more than a veiled attempt to do what Rule 404(b) expressly prohibits—introducing evidence of bad acts to show the defendant's propensity to commit such acts") (quoting *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991)).

While evidence of "other acts" may be permitted for "another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2), that has no application here. There is no reasonable basis for Plaintiffs to argue that evidence of Fraser's actions related to the May 23 Statements shows his state of mind with respect to Garza's subsequent representations regarding Hashlets, Hashpoints, Hashstakers and Paycoin. Moreover, to be admissible for other purposes, evidence of a defendant's "other acts" must be (1) relevant and (2) its probative value must not be substantially outweighed by the danger of unfair prejudice. *See United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011). Neither of those criteria is satisfied here.

To satisfy the relevance inquiry, the evidence must be "'sufficiently similar to the conduct at issue to permit the jury reasonably to draw from that act the [state of mind] inference advocated by the proponent of the evidence.'" *Id*. (quoting *United States v.*

*Peterson*, 808 F.2d 969, 974 (2d Cir.1987)); *see also Colon v. Metro-N. Commuter R.R. Co.*, No. 3:13-CV-00325 (JAM), 2017 WL 3283187, at *2 (D. Conn. Aug. 2, 2017) (requiring substantial similarity).  Here, the May 23 Statements (concerning only the general relationship between ZenMiner and GAW Miners and Thomas's involvement with ZenMiner) and the August 13 Statements (also concerning the relationship between ZenMiner and GAW Miners) are not "substantially similar" to Garza's later alleged misrepresentations regarding Hashlets, Hashpoint, HashStakers and Paycoin, such as whether there were sufficient miners supporting Hashlets, what was "the expected value of Paycoin," and whether Garza had agreements with merchants to accept Paycoin.  (*See* FAC ¶¶ 9c-m.)  Furthermore, as discussed below, any probative value of the evidence related to the May 23 and August 13 Statements is outweighed by the danger of unfair prejudice to Fraser if this evidence is admitted at trial.

> **3.    The Court Should Exclude Evidence Related to the May 23 and August 13 Statements Under FRE 403.**

Finally, even if evidence related to the May 23 and August 13 Statements were somehow relevant to Plaintiffs' claims and admissible despite FRE 404(b), the Court should exclude that evidence under FRE 403.  "[R]elevant evidence may be excluded 'if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'"  *Arlio v. Lively*, 474 F.3d 46, 53 (2d Cir. 2007) (citing Fed. R. Evid. 403).  The evidence related to the May 23 and August 13 Statements checks all these boxes.

16

<u>First</u>, the May 23 and August 13 Statements do not relate to Hashlets, Hashpoints, Paycoin or Hashstakers.  Permitting Plaintiffs to present evidence of potential misstatements that do not relate to the products and claims at issue in this case creates a significant danger that, based on this extraneous evidence, the jury will draw unfair inferences against Fraser regarding misstatements that are in fact at issue.  In addition, any limited probative value of these statements, in particular of the May 23 Statements and evidence related to them, is substantially outweighed by the risk of significant unfair prejudice to Fraser because of his son's involvement with the May 23 interview and article.  Introducing this evidence could lead the jury to improperly and unfairly attribute to Fraser his son's actions with respect to those events.  Thus, evidence related to the May 23 and August 13 statements is unfairly prejudicial to Fraser and should be excluded for that additional reason.

<u>Second</u>, disputing at trial products and services that are not at issue and alleged misstatements that are not actionable will confuse the jury and cause unnecessary delay.  *See Olaf Sööt Design, LLC v. Daktronics, Inc.*, No. 15 Civ. 5024 (RWS), 2018 WL 6424551, at *4 (S.D.N.Y. Dec. 6, 2018) (granting motion *in limine* to exclude evidence on an issue no longer before the court because, "[w]hile there may be value in telling the jury 'the story' of this case… the danger of wasting time and needlessly presenting cumulative evidence is high"); *see also id.* (excluding evidence on an argument not at issue in the case because "such evidence is likely to confuse" the jury).  Evidence related to the May 23 Statements in particular will lead to a mini-trial over statements that were not made by Fraser, but made, at least in part, by his son, who has never been a party to

this action.  *See Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 325

(S.D.N.Y. 2009) (excluding allegations of fraud by non-parties, because including them

would "pose the risk of turning the trial into a multi-ringed sideshow of mini-trials on

collateral issues pertaining to the conduct and relationships of third parties that may

have only tangential bearing, if at all, to the issues and claims disputed in this case")

(internal citation omitted).

For the reasons stated above, the Court should preclude Plaintiffs from

introducing any evidence related to the May 23 and August 13 Statements on the

additional grounds under FRE 403.

**IV.    MOTION *IN LIMINE* NO. 4:  TO EXCLUDE ANY EVIDENCE RELATED TO THE HONOR PROGRAM**

Certain of Plaintiffs' proposed trial exhibits refer to the "Honor Program."  (*See,*

*e.g.*, Hassan Decl., Ex. K (PX143).)  The Court should preclude Plaintiffs from presenting

to the jury any evidence related to that program because (1) the evidence is irrelevant to

Plaintiffs' claims, and (2) permitting Plaintiffs to present evidence related to the Honor

Program would unduly prejudice Fraser, confuse and mislead the jury and waste juror

time.

Plaintiffs do not include any allegations related to the "Honor Program" in the

FAC; rather, they raised it for the first time during the Class Certification hearing before

the Court.  Plaintiffs' counsel explained at the hearing that the Honor Program was a

program that GAW Miners announced in January 2015, through which GAW Miners

promised to honor the $20 Paycoin price by buying back Paycoin at that price.  (*See* ECF

137 (Hearing Tr. at 22:20-23:4).)  Plaintiffs' counsel also conceded at the hearing that he did not think the announcement of the Honor Program boosted the price of Paycoin. (*Id*. at 23-24.)

In ruling on Plaintiffs' Class Certification motion, the Court declined to extend the class period based on the Honor Program, explaining that "this program is not mentioned in the complaint or the briefs," and "at the [class certification] hearing, Plaintiffs' counsel explained that he did not think the announcement of the program boosted the price of Paycoin."  (ECF 141 (Order on Class Certification) at 52 n.14.)  Thus, the Honor Program is not relevant to Plaintiffs' claims, and the Court should exclude any reference or evidence related to that program from the trial.  *See Am. Tech. Ceramics Corp.*, 2019 U.S. Dist. LEXIS 91965, at *12-13 (excluding evidence related to patents that were not at issue in the case).  In addition, even if the evidence related to the Program had any probative value—which it does not—the Court should exclude it under FRE 403.  Introducing evidence of allegedly false or misleading statements related to the Honor Program, with respect to which class members cannot assert any claims, would unnecessarily waste juror time, mislead and confuse the jury and unduly prejudice Fraser.

Dated:  September 1, 2021

HUGHES HUBBARD & REED LLP

By:   */s/ Daniel H. Weiner*

David R. Schaefer (ct04334)
Sean M. Fisher (ct23087)
Rowena Moffett (ct414899)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT  06511
Tel.: (203) 772-2600
Fax: (203) 562-2098
Email: rmoffett@bswlaw.com

Daniel H. Weiner (ct12180)
Marc A. Weinstein (*pro hac vice*)
Amina Hassan (*pro hac vice*)
Hannah Miller (*pro hac vice*)
One Battery Park Plaza
New York, NY 10004-1482
Tel.: (212) 837-6000
Fax: (212) 422-4726
Email: daniel.weiner@hugheshubbard.com

*Attorneys for Defendant Stuart A. Fraser*

100323104