# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, DEAN ALLEN SHINNERS, and JASON VARGAS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC, (d/b/a ZEN CLOUD),<br><br>Defendants. | Case 3:16-cv-00940<br><br>Hon. Michael P. Shea<br>Courtroom 2<br><br>ECF Case<br><br>CLASS ACTION<br><br>September 1, 2021<br><br><br>DEMAND FOR JURY TRIAL |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## MOTION IN LIMINE REGARDING CLASS REPRESENTATIVES

## TABLE OF CONTENTS

I.   BACKGROUND ...................................................................................................1

II.  ARGUMENT .....................................................................................................3

    A.   Legal Standard ..........................................................................................3

    B.   The Court Has Authority to Limit the Jury Trial to Issues of Class-wide Liability ...............................................................................................3

    C.   Fraser's Arguments and/or Defenses as to the Class Representatives Are Irrelevant to Class-wide Issues and Prejudicial to the Class............6

        a.   Individual Knowledge and Reliance .................................................7

        b.   Section 36b-29(h) of the Connecticut Uniform Securities Act.................10

        c.   In Pari Delicto and Unclean Hands..........................................................13

        d.   Ratification................................................................................................16

III. CONCLUSION..................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Banque Hypothecaire Du Canton De Geneve v. Union Mines,*
  652 F. Supp. 1400 (D. Md. 1987) ...................................................................................... 3

*Bateman Eichler, Hill Richards, Inc. v. Berner,*
  472 U.S. 299 (1985) .............................................................................................. 14, 15

*Bedasie v. Mr. Z Towing, Inc.,*
  2016 WL 7839436 (E.D.N.Y. Apr. 29, 2016) ....................................................... 12

*Connecticut Nat. Bank v. Giacomi,*
  699 A.2d 101 (Conn. 1997) ................................................................................... 11

*Couldock & Bohan, Inc. v. Societe Generale Sec. Corp.,*
  93 F. Supp. 2d 220 (D. Conn. 2000) .............................................................. 11, 14

*Doe No. 1 v. Knights of Columbus,*
  930 F. Supp. 2d 337 (D. Conn. 2013) ................................................................. 17

*Frota v. Prudential-Bache Sec., Inc.,*
  1987 WL 4925 (S.D.N.Y. May 15, 1987) ............................................................ 18

*Highland Capital Mgmt., L.P. v. Schneider,*
  551 F. Supp. 2d 173 (S.D.N.Y. 2008) .................................................................... 3

*In re ICN/Viratek Sec. Litig.,*
  1996 WL 34448146 (S.D.N.Y. July 15, 1996) ...................................................... 5

*In re WorldCom, Inc. Securities Litigation,*
  2005 WL 408137 (S.D.N.Y. Feb. 22, 2005) ................................................ *passim*

*MacPeg Ross O'Connell & Goldhaber, Inc. v. Castello,*
  686 F. Supp. 397 (E.D.N.Y. 1988) ....................................................................... 11

*Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.,*
  2014 WL 1673351 (S.D.N.Y. Apr. 28, 2014) ...................................................... 15

*Palmieri v. Defaria,*
  88 F.3d 136 (2d Cir. 1996) ..................................................................................... 3

*Pinter v. Dahl,*
  486 U.S. 622 (1988) .............................................................................................. 15

*Russolillo v. Thomson McKinnon Sec., Inc.,*
  694 F. Supp. 1042 (D. Conn. 1988) .............................................................. 11, 15

*SLSJ, LLC v. Kleban*,
    277 F. Supp. 3d 258 (D. Conn. 2017) ................................................................3

*Thompson v. Orcutt*,
    777 A.2d 670 (Conn. 2001) ............................................................................16

*Tyson Foods, Inc. v. Bouaphakeo*,
    136 S. Ct. 1036 (2016) ....................................................................................2

*Van Syckle v. C.L. King & Assocs., Inc.*,
    822 F. Supp. 98 (N.D.N.Y. 1993) .................................................................17

**Statutes**

15 U.S.C. § 78j(b) ....................................................................................................1

15 U.S.C. § 78t(a) ....................................................................................................2

Conn. Gen. Stat. § 36b-29(b) ................................................................................12

Conn. Gen. Stat. § 36b-16 .......................................................................................1

Conn. Gen. Stat. § 36b-29(a)(2) ..............................................................................2

Conn. Gen. Stat. § 36b-29(c) ...................................................................................2

Conn. Gen. Stat. § 36b-29(h) .............................................................10, 11, 12, 15

Securities Act of 1933 Section 12 .........................................................................17

Securities Act of 1933 Section 12(1) .....................................................................15

Securities and Exchange Act of 1934 Section 10 ..................................................17

Securities and Exchange Act of 1934 Section 10(b) ...............................................1

**Regulations**

17 C.F.R. § 240.10b-5 ..............................................................................................1

**Rules**

Fed. R. Civ. P. 42 .....................................................................................................5

Fed. R. Civ. P. 42(b) .............................................................................................3, 5

Fed. R. Evid. 403 ............................................................................................. *passim*

Fed. R. Evid. 701 .....................................................................................................9

Fed. R. Evid. 802 ..........................................................................................................9

Fed. R. Evid. 901 ..........................................................................................................9

**Other Authorities**

3B Fed. Jury Prac. & Instr. § 162:174 (6th ed.)...........................................................17

Manual for Complex Litigation (Fourth) § 21.5 ..........................................................3

Plaintiffs Denis Audet, Michael Pfeiffer, and Dean Allen Shinners ("Plaintiffs") respectfully request that the Court exclude from the forthcoming jury trial the consideration of any arguments or evidence on issues specific to the three named Plaintiffs (including individual reliance) and/or Defendant Stuart Fraser's ("Fraser") individual affirmative defenses with respect to the three named Plaintiffs, rather than the Class as a whole. The purpose of the trial is to determine Fraser's liability to the Class, not for Fraser to engage in a series of mini-trials as to each named Plaintiff. It is particularly prejudicial to the Class for Fraser to divert trial time to individual issues of reliance that are not probative as to the Class as a whole, as well as to individual affirmative defenses—many of which are legally deficient—that Fraser asserts against the named Plaintiffs only. Allowing Fraser to proceed with these arguments at the class trial will likely require the introduction of numerous otherwise irrelevant exhibits and deposition testimony, as well as lengthy questioning of the named Plaintiffs on otherwise irrelevant topics, resulting in an unbalanced trial that unfairly and misleadingly elevates the importance of these individual issues and affirmative defenses in the eyes of the jury to the detriment of the Class.

## I.   BACKGROUND

Plaintiffs represent a class of investors who, between August 1, 2014, and January 19, 2015, purchased Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC (the "Companies"), or acquired these products by converting, upgrading, or exchanging other products sold by the Companies. They allege that the sale of these products violated Section 10(b) of the Securities and Exchange Act of 1934, *see* 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5, as well as provisions of the Connecticut Uniform Securities Act ("CUSA") prohibiting the sale of unregistered securities, *see* Conn. Gen. Stat. § 36b-16, and securities fraud, *see id.* § 36b-4, and also constituted common law fraud. As to Defendant Fraser specifically, Plaintiffs allege that he is liable for these violations as a "control" person of the

Companies pursuant to both federal and Connecticut securities law, *see* 15 U.S.C. § 78t(a); Conn. Gen. Stat. § 36b-29(c), because he aided and abetted securities fraud under Connecticut law, *see* Conn. Gen. Stat. § 36b-29(a)(2), and because he aided and abetted common law fraud.

On June 21, 2019, this Court amended the class definition and granted Plaintiffs' motion for class certification. Dkt. 141. In that opinion, the Court rejected Fraser's arguments that individualized issues predominated over common issues, including with respect to Fraser's individual defenses and the "reliance" element of certain of Plaintiffs' claims. *Id.* at 37-52. With respect to individual defenses, the Court held that "any individual issues related to potential affirmative defenses would not bar class certification," even if such issues "will have to be tried separately." *Id.* at 38 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016)). With respect to reliance, the Court found that "the core alleged misrepresentations identified by Plaintiffs can be proved through common evidence"—specifically acknowledging the statements promulgated by the Companies and their CEO "to all prospective purchasers of its products" through "the Companies' websites and in statements printed in widely read industry publications"—and that "the nature of the alleged misrepresentations permits a common inference of reliance." *Id.* at 44, 47, 49.

On May 4, 2020, the Court denied Fraser's motion to decertify as to damages and bifurcated the case as to liability and damages. Dkt. 206. In so doing, the Court expressly contemplated an initial jury trial on "class-wide liability" and sought additional briefing from the parties as to whether any "issues related to damages that might be resolvable on a class-wide basis" ought to be included in the scope of that trial. *Id.* at 17.

## II.    ARGUMENT

### A.    Legal Standard

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine." *SLSJ, LLC v. Kleban*, 277 F. Supp. 3d 258, 262–63 (D. Conn. 2017) (quoting *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008)). These motions "aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (quoting *Banque Hypothecaire Du Canton De Geneve v. Union Mines*, 652 F. Supp. 1400, 1401 (D. Md. 1987)). As a general matter, evidence must be relevant to be admitted, and even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

### B.    The Court Has Authority to Limit the Jury Trial to Issues of Class-wide Liability

The District Court's discretion to "order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims" to facilitate judicial economy and convenience and to avoid prejudice is well established. Fed. R. Civ. P. 42(b). In accordance with this authority, this Court has already indicated that the forthcoming jury trial scheduled to begin on October 20, 2021, will decide Mr. Fraser's liability to the certified class as a whole. *See* Dkt. 141 at 17 (referencing jury trial on "class-wide liability"). It is not uncommon for common issues of liability to be tried separately from other issues—*e.g.*, damages—and bifurcation, among other procedures, is a common method of streamlining these proceedings. *See, e.g.*, Dkt. 141 at 13-16 (citing cases); *see also, e.g.*, Manual for Complex Litigation (Fourth) § 21.5 ("In jury cases, the

court may consider trying common issues first, preserving individual issues for later determination."). Indeed, in class actions involving claims of securities fraud, courts have recognized the risk that the defendant may distract the jury from class-wide liability issues with arguments and evidence tied to individual class members, including the class representatives, and have accordingly limited the presentation of such arguments and evidence at the class-wide liability trial. To be clear, separating these substantial common issues from the scattering of individual issues raised by Fraser does *not* mean that individual issues then predominate, for all the reasons discussed in the Court's class certification order. *See* Dkt. 141 at 37-54.

For instance, in *In re WorldCom, Inc. Securities Litigation*, 2005 WL 408137 (S.D.N.Y. Feb. 22, 2005), the court granted plaintiffs' motion in limine to exclude evidence "relating to the individualized issues of the class representatives," given their "marginal relevance to the issues to be tried in the plenary trial." *Id.* at *1, *5. In particular, one defendant had sought to introduce evidence of the lead plaintiff's trading activity, but the court found that this evidence had more to do with the lead plaintiff's individual reliance on the alleged misrepresentation than any common issue, and excluded it from the class-wide trial. *See id.* at *2 ("It raises more directly issues that are individual to one member of the class, albeit the Lead Plaintiff, such as its reliance. Because of the danger of confusion of the issues and of unfair prejudice to the class, the Lead Plaintiff has shown that the negligible probative value of this evidence is substantially outweighed by the other factors that must be weighed in a Rule 403 analysis.").

Another *Worldcom* defendant attempted to introduce evidence of the lead plaintiff's due diligence into the alleged misstatements to argue that such misstatements were not material, but the court pointed out that materiality is judged on an "objective" standard, and as such, evidence of the actual advice received by the lead plaintiff from its financial advisors could not only cause

4

the jury to "confuse" individual and class-wide issues of materiality, but also prejudice the jury against the Class if the jury faulted the lead plaintiff for failing to do more research into its investments and then "h[e]ld that fact unfairly against the class." *Id.* at *4. More generally, the court noted the "significant danger that the defendants seek to use the evidence about the named plaintiffs to divert the jury's attention from the serious issues before them, including an evaluation of what the defendants themselves did and did not do," and reiterated that the focus of the class-wide liability trial was the *defendants'* conduct, not the *plaintiffs'*. *Id.* at *5 ("The claims to be tried at the plenary trial are brought against the defendants, not against the named plaintiffs.").[1]

*WorldCom* is not the first case cautioning against allowing a defendant to turn a trial on its own liability into mini-trials on the conduct of each class representative. *See, e.g.*, *In re ICN/Viratek Sec. Litig.*, 1996 WL 34448146, at *4 (S.D.N.Y. July 15, 1996) (refusing to turn the jury trial into competing mini-trials on "actual investors' reliance"). Courts have also recognized the danger that the defendant will use the class-wide liability trial to take another run at class certification, and have similarly refused to allow the relitigation of certification issues in that guise. *See, e.g.*, *id.* at *3 ("Thus, the class representatives' testimony, offered to show lack of typicality, would not be relevant . . . to an element of the Class's case . . . ."). In sum, Federal Rule of Civil Procedure 42 provides solid authority for the district court to limit the scope of the class trial to common issues affecting the Class as a whole, while excluding from consideration a defendant's individualized arguments as to specific class members, thus preventing those issues

---

[1] To be clear, unlike the class representatives in *WorldCom*, the named Plaintiffs plan to testify at the forthcoming trial on issues that are common to the Class, which might include descriptions of the products at issue and the Companies' misrepresentations concerning those products. But allowing Plaintiffs to testify as representatives of the Class on common issues does not open the door for Fraser to overwhelm the class trial with individual issues and affirmative defenses as to each named Plaintiff.

from overwhelming the presentation of evidence at trial and prejudicing the Class as a whole. *See* Fed. R. Civ. P. 42(b); *see also* Fed. R. Evid. 403.

### C. Fraser's Arguments and/or Defenses as to the Class Representatives Are Irrelevant to Class-wide Issues and Prejudicial to the Class

It is clear from Fraser's pretrial materials, including his exhibit list, deposition designations, proposed jury instructions, and proposed verdict form, that he fully intends to litigate, with respect to the three named Plaintiffs, the issue of each Plaintiffs' individual reliance as well as a slew of statutory and non-statutory affirmative defenses that Fraser raises against the three named Plaintiffs only. Indeed, it appears that arguments and evidence specific to the three Plaintiffs but irrelevant to the Class will be central to his presentation of evidence at trial.

In particular, Fraser's exhibit list also contains scores of exhibits that have little or nothing to do with any common issue in the case and, to the extent Plaintiffs can discern their relevance, appear to go toward individual reliance as they concern Plaintiffs' individual knowledge of the products at issue or Plaintiffs' individual level of sophistication or experience with cryptocurrency generally (including numerous seemingly irrelevant exhibits that post-date the end of the class period).[2] Fraser has also advanced several pages of proposed jury instructions on "affirmative defenses based on plaintiffs' individual conduct," including alleged violations of the Connecticut Uniform Securities Act, *in pari delicto*, unclean hands, and ratification. *See* Dkt. 253-16 at 44-45, 126-29 (proposed jury instructions). Finally, Fraser has designated deposition testimony concerning interactions between the Companies and Plaintiffs that appears, again, to

---

[2] The proposed trial exhibits and other supporting exhibits (such as deposition excerpts) referenced in this memorandum are submitted as attachments to the Declaration of Geng Chen in Support of Plaintiffs' Motion in Limine Regarding Class Representatives ("Chen Decl."), filed concurrently herewith. All of these exhibits will be filed as Exhibit A, Exhibit B, etc. to the declaration. For clarity and convenience, however, proposed trial exhibits will be referenced in this memorandum using their "DX" designations, while other supporting exhibits will be referenced in this memorandum as Exhibit A, Exhibit B, etc.

have little or no relevant to any common issues but, as far as Plaintiffs can discern, might be used both to challenge Plaintiffs' individual reliance and to support Fraser's individual affirmative defenses as to the named Plaintiffs. *See, e.g.*, Dkt. 253-12 (Fraser's designations of deposition testimony from GAW Miners employee Eric Capuano concerning emails with Plaintiff Allen Shinners) at 155:24-157:15.

As this evidence and the arguments that Fraser intends to make with them relate entirely to issues specific to the three named Plaintiffs rather than the Class as a whole, they should be excluded from the class-wide liability trial. In addition, Fraser's affirmative defenses are, for a variety of reasons discussed below, legally deficient, which provides another reason for excluding from the class trial any argument or evidence related solely to these deficient defenses.

a.    <u>Individual Knowledge and Reliance</u>

As this Court has already acknowledged, the Class's "reliance" can be proven by common evidence concerning the Companies' statements to prospective customers and common inferences that can be derived from that evidence (*e.g.*, a common inference of materiality due to the fundamental nature of a misrepresentation in relation to the product at issue). *See* Dkt. 141 at 44, 47, 49. To the extent Fraser seeks to show the named Plaintiffs did not actually rely on a particular misrepresentation, that is precisely the sort of individual issue that courts have excluded from trials on class-wide liability, due to the likelihood of confusing common issues with individual issues and prejudicing the jury against the Class. *See WorldCom*, 2005 WL 408137, at *5.

Numerous exhibits on Fraser's exhibit list suggest that Fraser does intend to attack the named Plaintiffs on their individual knowledge and reliance. For example:

- <u>DX-545</u>: This exhibit represents an email exchange between Plaintiff Michael Pfeiffer and an individual named "Paul" at BTCrow.com, an escrow agent for transactions paid for using cryptocurrency, regarding a "scam" perpetuated by

7

someone purporting to sell a GAW Miners and/or ZenMiner account. It is possible that Fraser intends to use this exhibit to imply that Pfeiffer knew or suspected that GAW Miners' products were a "scam."

- <u>DX-597</u>: This exhibit purports to reflect posts by Plaintiff Marc Audet to the Hashtalk Internet forum.[3] It appears, based on Fraser's questioning of Audet at his deposition, that Fraser intends to use this exhibit to suggest that Audet was reckless to trust GAW Miners because he knew at some point that GAW Miners would not succeed. *See, e.g.*, Chen Decl., Ex. A (deposition of Marc Audet) at 125:10-18 (Q: "Then you say later on in that same post: All is well. We are all positioned to do well if GAW succeeds. So cheer on team and enjoy the show. ***So would you say you recognized at that time there was a possibility that GAW would not succeed?***" (emphasis added)).

- <u>DX-636</u>: This exhibit purports to be an email exchange between Plaintiff Allen Shinners and GAW Miners CEO Josh Garza concerning CFTC regulation of the cryptocurrency market and what constitutes illegal "pump and dump" market manipulation.

- <u>DX-671</u>: This exhibit purports to be an archived version of a website of a company called bitlend, which lists Plaintiff Allen Shinners as its 'President – CEO,' and whose business appears to be related to cryptocurrency, dated September 28, 2015.

What connects these disparate exhibits is their utter irrelevance to any common issue concerning Fraser's liability to the Class, while at the same time, presenting opportunities for Fraser to chase rabbit holes with the class representatives at trial. These rabbit holes, however, are inherently prejudicial to the Class. For instance, even if Audet's post on an Internet forum about doing well "if GAW succeeds" were probative of Audet's actual knowledge of the Companies' misstatements, that probative value would be limited to Fraser's arguments as to Audet personally and has no relevance to the Class. Yet allowing Fraser to spend trial time poking at the reason why Audet made a certain post on the Internet suggests to the jury that DX-597 *is* relevant to common issues pertaining to the Class. *See WorldCom*, 2005 WL 408137, at

---

[3] This exhibit is also subject to Plaintiffs' Motion in Limine to Exclude Internet Discussions. Among other issues, this exhibit presents these posts—most of which appear to have originally been submitted to different discussions topics—devoid of any context, including the post(s) to which Mr. Audet is purportedly responding.

*4 ("A jury may very well confuse the issue of the named plaintiffs' individual reliance with the class-wide issues of reliance on the Exchange Act claims and with issues of materiality."). Or, to the extent Fraser intends to use exhibits like DX-636—which contains statements from Shinners reflecting a lay, subjective understanding of the CFTC's regulation of *commodities*—to suggest that Shinners did not believe the products at issue were *securities*, it is unclear why this legal conclusion would be admissible for that purpose. *See, e.g.*, Fed. R. Evid. 701. It would, moreover, be highly prejudicial to the Class even if the exhibit were admitted only as to Shinners' claim against Fraser, given the likelihood that the jury would impute a named Plaintiff's understanding of the federal regulatory landscape to the Class as a whole. As for DX-671, setting aside the numerous issues with this exhibit under Federal Rules of Evidence 802 and 901, any intent to use this exhibit to show Shinners' personal familiarity with cryptocurrency in general runs headlong into this Court's prior observation that class members' general level of sophistication in the cryptocurrency space had little to do with their ability to "debunk" the Companies' specific misrepresentations. *See* Dkt. 141 at 46.

Fraser might argue that he is entitled to explore issues of knowledge and reliance with the class representatives and allow the jury to make its own judgments. But Fraser is not entitled to unlimited time on collateral matters, particularly those likely to be shown to be irrelevant. For instance, assuming that Fraser intends to explore the "scam" referenced in DX-545 with Pfeiffer, Pfeiffer's testimony will show (consistent with the exhibit itself) that the "scam" relates to a specific fraudulent transaction between Pfeiffer and an unscrupulous online retailer who sought to retain payment for goods not delivered—*not* the scam perpetrated by the Companies that underlies Plaintiffs' claims in this case. Allowing Fraser to spend trial time with Pfeiffer simply to establish that this exhibit is irrelevant would be a waste of the Court's and the jury's time.

Similarly, allowing Fraser to quiz Shinners about his subjective understanding of the CFTC's and SEC's authority to regulate cryptocurrency not only raises issues under Federal Rule of Evidence 701, but also wastes trial time on an issue of marginal relevance to Shinners and of no relevance to the Class. *See* Fed. R. Evid. 403. As such, Fraser should not be permitted to derail the class trial with argument and evidence that relate solely to Fraser's challenge to the named Plaintiffs' individual reliance.

<b>b.</b>    <u>Section 36b-29(h) of the Connecticut Uniform Securities Act</u>

Fraser also intends to assert a defense as to the named Plaintiffs based on section 36b-29(h) of the Connecticut Uniform Securities Act ("CUSA"). All of the affirmative defenses that Fraser intends to pursue at this trial, however, are asserted against the named Plaintiffs only, and the arguments and evidence that would support these defenses are likely to be highly individualized as to each named Plaintiff. With respect to this affirmative defense based on section 36b-29(h) of the CUSA, Fraser's theory appears to be that because Plaintiffs themselves sold some of the products at issue to others, they cannot recover from Fraser under the CUSA's prohibition on selling unregistered securities. *See* Dkt. 253-16 at 44-45 (Fraser's proposed jury instructions on this defense). Assuming that Fraser will attempt to prove this defense by questioning the named Plaintiffs on whether they sold the products at issue, that evidence would have no relevance to the Class as a whole and will unduly distract and confuse the jury as to the common issues of liability that should be the focus of the class trial.

It is also doubtful whether Fraser can assert section 36b-29(h) of the CUSA against anyone in this action. The relevant provision states:

> No person who has made or engaged in the performance of any contract in violation of any provision of sections 36b-2 to 36b-34, inclusive, or any regulation or order thereunder, or who has acquired any purported right under any such contract with knowledge of the facts by reason of which its making or performance was in violation, may base any cause of action **on the contract.**

Conn. Gen. Stat. § 36b-29(h) (emphasis added). It is thus clear that section 36b-29(h) of the CUSA prohibits actions sounding in *contract* and does not apply generally to *all* actions arising from the CUSA. In *Connecticut Nat. Bank v. Giacomi*, 699 A.2d 101 (Conn. 1997), for instance, the provision was applied to bar recovery for payment of promissory notes (*i.e.*, recovery for breach of contract) that were given as part of a fraudulent scheme to violate the securities laws. *See id.* at 128 (noting that the defense covers situations "in which an aider and abettor of a primary CUSA violator seeks to reap the rewards of the contract—albeit facially valid—that constituted a principal method of the aiding and abetting"). Because the *Giacomi* plaintiffs issued loans to the defendants that were "essential to the overall scheme," plaintiffs could not then recover on the unpaid promissory notes given by defendants in exchange for those loans. *See id.* at 128-29; *see also, e.g.*, *Couldock & Bohan, Inc. v. Societe Generale Sec. Corp.*, 93 F. Supp. 2d 220, 227–28 (D. Conn. 2000) (granting summary judgment for defendant on plaintiff's **breach of contract** claim for violation of agreement related to plaintiff's broker-dealer activities because plaintiff was not registered as a broker-dealer under federal or Connecticut law); *Russolillo v. Thomson McKinnon Sec., Inc.*, 694 F. Supp. 1042, 1045 (D. Conn. 1988) (noting that § 36b-29(h) "merely bars one who enters such a contract with knowledge of the illegality from **basing any suit on the contract**" and is inapplicable as the opposing party is "not basing any cause of action on the contract" (emphasis added)).[4]

---

[4] Fraser's proposed jury instructions cite *MacPeg Ross O'Connell & Goldhaber, Inc. v. Castello*, 686 F. Supp. 397 (E.D.N.Y. 1988), which appears to apply the defense to a non-contractual claim, but the plaintiff in that case wrongly *conceded* the applicability of the defense. *See id.* at 399 ("Plaintiff concedes that § 36–498 [now § 36b-29] permits a purchaser to void a transaction . . . ."); Dkt. 253-16 at 44-45. Regardless, the court also concluded that defendants were not entitled, at that time, to the protections of section 36b-29(h) because "plaintiff alleges that defendants committed fraud when making securities transactions" and "the seriousness of plaintiff's infraction would be outweighed by defendants' commission of fraud." *Id.*

In contrast, the named Plaintiffs' unregistered securities claims against Fraser do *not* seek to recover under a contract. Even if the Companies' sale of unregistered securities to Plaintiffs could be considered a contract and Plaintiffs' claim for sale of unregistered securities could be considered a "a cause of action on the contract," Conn. Gen. Stat. § 36b-29(h), any allegedly improper resale of those securities would constitute a *different* contract between Plaintiffs and the unrelated third-party buyer, bringing Plaintiffs' claims on the initial "contract" with the Companies outside the coverage of section 36b-29(h).

Moreover, Fraser never pleaded this defense and therefore should be precluded from raising it at trial on that basis. *See* Dkt. 73 (Fraser's answer); *Bedasie v. Mr. Z Towing, Inc.*, 2016 WL 7839436, at *4 (E.D.N.Y. Apr. 29, 2016) (precluding defendants from raising quantum meruit and unjust enrichment defenses at trial that were not pleaded in defendants' answer). Even if Plaintiffs could be said to have been on notice of this statutory defense as a result of Fraser's opposition to Plaintiffs' motion for class certification, *see* Dkt. 107 at 31, it is not entirely clear to Plaintiffs whether Fraser intends this affirmative defense to apply to Plaintiffs' other claims under the CUSA in addition to the unregistered securities claims, as his proposed verdict form does not indicate which affirmative defenses are applicable to which claims, *see* Dkt. 253-17 at 12-13 (Fraser's proposed verdict form). *But see* Dkt. 253-16 at 44-45 (Fraser's proposed jury instructions indicating defense is limited to claim for sale of unregistered securities). Regardless, it would be a waste of time and unduly prejudicial to the Class if Fraser were permitted to pursue a legally deficient defense against the named Plaintiffs only during the class trial. Fed. R Evid. 403. There is no reason why this defense cannot be deferred to a later proceeding where it would not interfere with the jury's consideration of Fraser's liability to the Class as a whole

c.      In Pari Delicto and Unclean Hands

Fraser's assertion of the *in pari delicto* and unclean hands defenses against the named Plaintiffs only should likewise be excluded from the class trial. Plaintiffs again urge the Court to exclude these individual defenses as to the named Plaintiffs from the class trial for the reasons previously discussed—namely, that these affirmative defenses as to the three named Plaintiffs will result in the introduction of exhibits and eliciting of testimony that would have no relevance to the Class as a whole and will unduly distract and confuse the jury as to the common issues of liability that should be the focus of the class trial.

While it is not entirely clear what theories Fraser intends to advance as to his unclean hands and *in pari delicto* defenses, it appears from Fraser's exhibit list that he intends to argue at least that Plaintiff Allen Shinners cannot recover because he (1) assisted with editing the Paycoin whitepaper, *see, e.g.*, DX-587; (2) applied for a job with GAW Miners, *see, e.g.*, DX-628; (3) discussed the Companies' business strategy with its employees, *see, e.g.*, DX-609; and (4) worked with one or more GAW Miners employees at an unrelated firm after the Companies' collapse and the end of the, *see, e.g.*, DX-681 (archived version of website for Prestige telecom auditing dated May 12, 2016). As for Plaintiff Michael Pfeiffer, it seems likely that Fraser will argue against Pfeiffer's recovery on the basis of his alleged involvement, after the end of the class period, in ION, another cryptocurrency that allegedly has some connection to Paycoin. *See, e.g.*, DX-679 ("ION Technical Whitepaper" dated April 9, 2016).

These exhibits, however, exemplify how misleading and confusing it would be Fraser to litigate these narrow, individual defenses in front of a jury that is being asked to render a liability verdict as to the Class as a whole. To use just one example, should Fraser question Shinners on DX-681, the jury would likely hear lengthy testimony about how Shinners came to found his telecommunications firm Prestige, how Shinners came to know two individuals previously

associated with GAW Miners, how and why these individuals were added to the website for Prestige, and the nature of their work for Prestige and/or Shinners. It is doubtful whether any of this testimony is even relevant to Fraser's defenses as to Shinners—there is no reason to believe that Shinners was a participant in the Companies' fraud simply because he later worked with two of the Companies' employees—and certainly none of this testimony would be at all relevant to whether Fraser is liable to the *Class*. Allowing Fraser to devote trial time to this less-than-relevant exhibit is certain to unduly inflate its importance in the mind of the jury.

In addition, Plaintiffs vigorously dispute that the *in pari delicto* or unclean hands defenses are even applicable in this case. Fraser never pleaded *in pari delicto* as an affirmative defense, *see* Dkt. 73; the doctrine appears in his opposition to Plaintiff's motion for class certification as a bar to recovery "under Connecticut's Blue Sky Laws or the Exchange Act" for class members who themselves sold unregistered securities, Dkt. 107 at 32. Yet the sole case cited by Fraser at class certification for this defense makes only a passing reference to *in pari delicto* in connection with the federal Exchange Act only, and even then, does not appear to have applied the doctrine to the plaintiff's claim, which in any event was for *breach of contract*. *See Couldock & Bohan, Inc. v. Societe Generale Sec. Corp.*, 93 F. Supp. 2d 220, 233 (D. Conn. 2000) (noting that the outcome would not change whether or not *in pari delicto* applied).

In his proposed jury instructions, Fraser also cites *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985), which acknowledges the *possibility* of such a defense to federal securities fraud while simultaneously *refusing* to apply it to claims arising from trades undertaken as a result of illegal insider tips. *See id.* at 315 ("We also believe that denying the *in pari delicto* defense in such circumstances will best promote the primary objective of the federal securities laws . . . ."). Indeed, allowing Fraser to assert the defense to escape liability for ***federal***

*securities fraud* against the named Plaintiffs for their alleged misconduct in reselling unregistered securities (though it is unclear whether Fraser charges Plaintiffs with violations of federal or state securities law) is contrary to very purpose of the securities laws. *See Pinter v. Dahl*, 486 U.S. 622, 633, 638 (1988) (highlighting the risk that "judge-made law" will "undermine the congressional policy favoring private suits as an important mode of enforcing federal securities statutes" in requiring that any application of the defense "not offend the underlying statutory policies").[5] In short, Fraser has yet to locate any authority that has accepted *in pari delicto* as a defense to a federal securities claim in any context remotely similar to this case; nor has he offered any authority for the proposition that *in pari delicto* is a proper defense to any of Plaintiffs' CUSA claims; nor has Fraser ever pleaded or suggested that it would be applicable to Plaintiffs' common law claims. *Cf. Pinter*, 486 U.S. at 635 n.12 ("The defense, however, rarely has succeeded on the facts of any particular case.").

As for unclean hands, Fraser has likewise failed to offer any legal authority showing that this defense applies to any of the claims in this case. As a matter of law, it is doubtful that unclean hands is a defense to federal securities fraud, *see Bateman Eichler*, 472 U.S. at 310 (holding that private action for damages under federal securities laws "may be barred on the grounds of the plaintiff's own culpability only where . . . plaintiff bears at least substantially equal responsibility"—*i.e.*, only in cases of *in pari delicto*), and even more doubtful that it is applicable to claims under the CUSA, *see, e.g.*, *Russolillo*, 694 F. Supp. at 1045 (noting that section 36b-29(h)—which is limited to contract claims—"codifies the equitable doctrine of

---

[5] Even where the Supreme Court has acknowledged that a plaintiff's sale of unregistered securities *might* be relevant, the claim at issue was for the sale of unregistered securities under section 12(1) of the Securities Act of 1933—*not* for securities fraud under the Exchange Act— and the Court held nonetheless that "even where a plaintiff actively participates in the distribution of unregistered securities, his suit should not be barred where his promotional efforts are incidental to his role as an investor." *Pinter*, 486 U.S. at 638-39.

unclean hands," implying that the doctrine does not survive in un-codified form); *cf. also Nat'l Credit Union Admin. Bd. v. Morgan Stanley & Co.*, 2014 WL 1673351, at \*8 (S.D.N.Y. Apr. 28, 2014) (noting that neither the Illinois nor Texas Blue Sky Laws permit non-statutory defenses such as unclean hands).

As for Plaintiffs' common law fraud claims, not only is unclean hands an equitable defense limited to proceedings in equity, but it is also applicable only where the plaintiff seeks to recover ***from the party it allegedly wronged***. *See Thompson v. Orcutt*, 777 A.2d 670, 677 (Conn. 2001) ("[T]he conduct alleged to be unclean must have been done directly against the interests of the party seeking to invoke the doctrine, rather than the interests of a third party."). Plaintiffs' claims are brought in law, not equity, and Fraser has never articulated any theory of misconduct by Plaintiffs against *Fraser* such that they could not recover against him.

In sum, there is no justification for including *in pari delicto* or unclean hands—both highly specific and individual defenses—in the class trial. Neither of these defenses nor the evidence that Fraser intends to harness to support them has anything to do with any common issue of liability that would apply to the Class as a whole, *see WorldCom*, 2005 WL 40813, at \*5, and the risk of misleading and confusing the jury is even less justifiable where the legal basis for these defenses appears to be entirely absent.

        d.   <u>Ratification</u>

Finally, Fraser's proposed defense of ratification should also be excluded from the class trial as it, similar to Fraser's other affirmative defenses, will result in the introduction of exhibits and eliciting of testimony that would have no relevance to the Class as a whole and will unduly distract and confuse the jury as to the common issues of liability that should be the focus of the class trial. It appears that Fraser will argue that the named Plaintiffs somehow discovered the truth about the Companies' fraud and therefore "ratified" that fraud post hoc—a seemingly

untenable legal theory—which suggests that evidence similar to what Fraser would use to support his arguments on individual reliance and/or unclean hands and/or *in pari delicto* would be used to support the affirmative defense of ratification. This evidence, as discussed above, is likely to be individual to the named Plaintiffs with little or no relevance to the Class as a whole, such that Fraser's pursuit of the defense at the class trial will unduly distract and confuse the jury. *See WorldCom*, 2005 WL 40813, at *5.

As with some of Fraser's other affirmative defenses, he failed to plead ratification as an affirmative defense in his answer, *see* Dkt. 73, and to the extent Fraser argues that ratification is equivalent to estoppel (which Fraser did plead), that is incorrect. His proposed jury instructions cite a sample jury instruction—which pertains to Section 12 of the Securities Act of 1933, not Section 10 of the Securities and Exchange Act of 1934—that characterizes ratification as "nearly the same as estoppel," but that same jury instruction provides separate instructions as to the two defenses. *See* 3B Fed. Jury Prac. & Instr. § 162:174 (6th ed.); *see also* Dkt. 253-16 at 128-29 (Fraser's proposed jury instructions).

But even setting aside Fraser's failure to disclose this defense, it is difficult to understand how ratification could be legally applicable to Plaintiffs' claims. Ratification typically arises when there is a question of *unauthorized* conduct—for example, a principal who ratifies the unauthorized conduct of its agent—or when a party seeks to escape a contract as fraudulently induced. *See, e.g.*, *Doe No. 1 v. Knights of Columbus*, 930 F. Supp. 2d 337, 375 (D. Conn. 2013) ("[A] party waives his right to avoid a contract for misrepresentation if he manifests to the other party his intent to affirm the contract, acts in a manner inconsistent with disaffirmance, or fails within a reasonable time to disclose his intention to avoid the contract."). Even where ratification has been applied to securities fraud claims, it is in response to federal claims arising from

17

allegedly unauthorized or objectionable trades made by broker-dealers. *See, e.g.*, *Van Syckle v. C.L. King & Assocs., Inc.*, 822 F. Supp. 98, 104 (N.D.N.Y. 1993) ("Ratification of unauthorized trading occurs only when it is clear from all the circumstances that the customer intends to adopt the trade as his own."); *Frota v. Prudential-Bache Sec., Inc.*, 1987 WL 4925, at *4 (S.D.N.Y. May 15, 1987) (noting that ratification, as a defense to a claim that a broker-dealer made excessive trades, would require the investors to have "received the trading confirmations, had the stock market experience and knowledge to comprehend those actions and then failed, within a reasonable time, to object"). As such, there is no justification for including Fraser's untimely and legally deficient ratification defense in the class trial.

## III.    CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court exclude from the forthcoming trial the consideration of any arguments or evidence on issues specific to the three named Plaintiffs (including individual reliance) and/or Fraser's individual affirmative defenses with respect to the three named Plaintiffs, rather than the Class as whole. This approach is consistent with the Court's class certification order and allows the jury the focus on the common issues affecting the Class. Plaintiffs also note that, in his proposed jury instructions, Fraser does not indicate which claims his affirmative defenses apply to, and his proposed verdict form likewise does fails to indicate which affirmative defenses are applicable to which claims. *See* Dkt. 253-16 at 126-29; Dkt. 253-17 at 12-13. The fact that it remains entirely unclear which of Plaintiffs' claims are subject to which defenses only compounds the likelihood of confusion should these issues be included in the jury trial. *See* Fed. R. Evid. 403.

Dated: September 1, 2021

Respectfully submitted,

Mark P. Kindall (ct13797)
Robert A. Izard
Craig A. Raabe
IZARD, KINDALL & RAABE, LLP
29 S. Main St., Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
mkindall@ikrlaw.com
rizard@ikrlaw.com
craabe@ikrlaw.com

*/s/ Geng Chen*
Marc Seltzer
Kathryn Hoek
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
mseltzer@susmangodfrey.com
khoek@susmangodfrey.com

Seth Ard
Russel F. Rennie
Jacob Buchdahl
Geng Chen
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6022
Tel: (212) 336-8330
sard@susmangodfrey.com
rrennie@susmangodfrey.com
jbuchdahl@susmangodfrey.com
gchen@susmangodfrey.com

Edgar Sargent
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (202) 516-3880
esargent@susmangodfrey.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 1, 2021, I caused the foregoing document to be served via the Electronic Case Filing (ECF) system in the United States District Court for the District of Connecticut, on all parties registered for CM/ECF in the above-captioned matter.

Dated: September 1, 2021

*/s/ Geng Chen*
Geng Chen