**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DENIS MARC AUDET *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. |
| | : | 3:16-CV-00940-MPS |
| v. | : | |
| | : | Hon. Michael P. Shea |
| STUART A. FRASER, GAW MINERS, | : | |
| LLC, and ZENMINER, LLC, (d/b/a/ | : | September 15, 2021 |
| ZEN CLOUD), | : | |
| Defendants. | : | |

**DEFENDANT STUART A. FRASER'S OPPOSITION TO PLAINTIFFS'**
**MOTION *IN LIMINE* REGARDING CLASS REPRESENTATIVES**

Daniel H. Weiner (ct12180)
Marc A. Weinstein (*pro hac vice*)
Amina Hassan (*pro hac vice*)
Hannah L. Miller (*pro hac vice*)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004-1482
Tel.: (212) 837-6000
Fax: (212) 422-4726
Email: daniel.weiner@hugheshubbard.com

David R. Schaefer (ct04334)
Sean M. Fisher (ct23087)
Rowena Moffett (ct414899)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT  06511
Tel.: (203) 772-2600
Fax: (203) 562-2098
Email: rmoffett@bswlaw.com

*Attorneys for Defendant Stuart A. Fraser*

## <u>**TABLE OF CONTENTS**</u>

<u>**Page(s)**</u>

Preliminary Statement ...........................................................................................................1

Argument .............................................................................................................................2

I.      The Court Should Not Permit Plaintiffs to Belatedly Seek Further
        Bifurcation of the Liability Trial by Means of a Motion *in Limine*. ...........................2

II.     Evidence of Class Representatives' Knowledge and Reliance is Relevant to
        the Issue of Class-Wide Knowledge and Reliance. ....................................................5

        A.      Evidence of the Class Representatives' Knowledge and Reliance is Probative of
                Class-wide Issues. .......................................................................................................6

        B.      The Court Should Not Exclude the Specific Exhibits that Plaintiffs Identify in
                their Motion. ..............................................................................................................10

III.    Argument and Evidence of Fraser's Affirmative Defenses Against the Class
        Representatives Belong in the Liability Trial. ............................................................12

        A.      Fraser's Affirmative Defenses Against the Class Representatives Do Not Warrant
                a Separate, Second-Phase Liability Trial. .............................................................12

        B.      Fraser Preserved His Affirmative Defenses. ........................................................15

        C.      Plaintiffs' Attack on Fraser's Affirmative Defenses as "Legally Deficient" is Both
                Unfounded and Improper on a Motion *in Limine*. ...............................................16

Conclusion ..........................................................................................................................21

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Adelphia Recovery Tr.*, 634 F.3d 678 (2d Cir. 2011) ........................................................16

*Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985) ..........................................19

*C.D.S., Inc. v. Zetler*, No. 16 Civ. 3199 (VM), 2017 U.S. Dist. LEXIS 165491
    (S.D.N.Y. 2017)....................................................................................................................13

*City of New Britain v. Hancock*, 373 A.2d 859 (Conn. Super. Ct. 1976) ............................20, 21

*Connecticut Nat. Bank v. Giacomi*, 699 A.2d 101 (1997)............................................................18

*Couldock & Bohan, Inc. v. Societe Generale Sec. Corp.*, 93 F. Supp. 2d 220 (D.
    Conn. 2000) .........................................................................................................................18

*Cramer v. Hoffman*, 390 F.2d 19 (2d Cir. 1968)........................................................................16

*Curry v. City of Syracuse*, 316 F.3d 324 (2d Cir. 2003)......................................................15, 16

*Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086 (JMF), 2013 WL
    5658790 (S.D.N.Y. Oct. 17, 2013) ..................................................................................6, 7

*Haigler v. Dozier (In re Dozier Fin. Inc.)*, No. 4:18-cv-1888-SAL-SVH, 2020
    WL 1873993 (D.S.C. Feb. 3, 2020) ....................................................................................19

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) ...............................................................7

*Krueger v. Wyeth, Inc.*, No. 3:03-cv-2496-JAH (MDD), 2016 WL 3981125
    (S.D. Cal. Apr. 4, 2016), *objections overruled*, No. 3:03-cv-2496-JAH
    (MDD), 2019 WL 4785862 (S.D. Cal. Oct. 1, 2019) ........................................................7, 8

*Kuehnert v. Texstar Corp.*, 412 F.2d 700 (5th Cir. 1969)....................................................18, 20

*McCauley v. Michael*, 256 N.W.2d 491 (S.C. Minn. 1977)....................................................18, 19

*MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558
    (S.D.N.Y. 2017)....................................................................................................................17

*Miami Prods. & Chem. Co. v. Olin Corp.*, No. 1:19-CV-00385 EAW, 2021 U.S.
    Dist. LEXIS 118138 (W.D.N.Y. June 24, 2021).....................................................................7

*In re New York City Mun. Sec. Litig.*, 87 F.R.D. 572 (S.D.N.Y. 1980) .......................................7

*Onyx Pharms., Inc. v. Bayer Corp.*, No. C-09-2145 EMC, 2011 WL 4527402
    (N.D. Cal. Sept. 21, 2011).................................................................................................3

*Russolillo v. Thomson McKinnon Sec., Inc.*, 694 F. Supp. 1042 (D. Conn. 1988) .............18, 20

*United States v. Real Prop. Known as 77 E. 3rd St., New York, New York*, No.
    85 CIV. 3351 (SS), 1994 WL 4288 (S.D.N.Y. Jan. 4, 1994)...................................................3

*In re Vivendi Universal, S.A. Sec. Litig.*, 765 F.Supp.2d 512 (2011) .........................................6

*Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 293 F. Supp. 2d 397
    (S.D.N.Y. 2003)................................................................................................................17

*Williams v. Rushmore Loan Mgmt. Servs. LLC*, No. 3:15CV673(RNC), 2017
    U.S. Dist. LEXIS 29440 (D. Conn. March 2, 2017) ......................................................16, 17

*In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267 (S.D.N.Y. 2003)...........................................10

*In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288 (DLC), 2005 WL 375315
    (S.D.N.Y. Feb. 17, 2005) ....................................................................................................4

*In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288 (DLC), 2005 WL 408137
    (S.D.N.Y. Feb. 22, 2005) .........................................................................................4, 9, 10

**Statutes and Rules**

Conn. Gen. Stat. § 36b-29(c)........................................................................................................11

**Other Authorities**

3B Fed. Jury Prac. & Instr. § 162:174 (6th ed.) ....................................................................16, 21

Defendant Stuart A. Fraser ("Fraser") submits this memorandum of law in opposition to Plaintiffs' Motion *in Limine* Regarding Class Representatives (ECF 260, the "Motion").  For the reasons set forth below, Fraser respectfully submits that the Court deny the Motion in its entirety.

## Preliminary Statement

Ostensibly framed as a motion *in limine*, Plaintiffs' Motion improperly seeks further bifurcation of the coming liability trial and a disposition of Fraser's affirmative defenses as a matter of law.  Plaintiffs' motion—which seeks to preclude Fraser from presenting at trial arguments and evidence related to (i) the class representatives' knowledge and reliance, and (ii) Fraser's affirmative defenses against the class representatives—is both untimely and without merit.

The purpose of the coming trial is to determine Fraser's liability, if any, to the class and the three class representatives, each of whom is appearing as a trial witness. The Court previously bifurcated trial in this case between liability and damages, and the parties briefed the scope of the liability trial almost one year ago.  At no point did Plaintiffs seek a further bifurcation of the liability trial into class-wide liability and individualized liability vis-à-vis the three class representatives.  They cannot do so now.

Even if Plaintiffs' "request" to "limit" the scope of the liability trial were proper and timely—which it is not—it is unfounded.  The two types of arguments and evidence that Plaintiffs seek to exclude from the liability trial properly belong in that trial.

<u>First</u>, contrary to Plaintiffs' contention, evidence of the class representatives'

individualized knowledge and reliance is not simply an "individualized" issue, but also probative of class-wide knowledge and reliance. Therefore, this evidence properly belongs in the coming trial—even if that trial were limited to "class-wide liability" issues only, which it is not.

Second, it is most efficient in terms of time, cost and procedure to present arguments and evidence related to Fraser's affirmative defenses against the class representatives at the coming trial because each of the class representatives is already scheduled to testify at that trial and much of the evidence relevant to Fraser's affirmative defenses against them is also relevant to other issues of class-wide liability. Plaintiffs' collateral arguments—that Fraser waived his affirmative defenses, or those defenses are "legally deficient"—are either incorrect (as to waiver) or incorrect and improper on a motion *in limine* (as to the legal sufficiency of the defenses).

The Court should therefore reject Plaintiffs' arguments, and deny the Motion.

## Argument

## I.     The Court Should Not Permit Plaintiffs to Belatedly Seek Further Bifurcation of the Liability Trial by Means of a Motion *in Limine.*

The Court previously bifurcated trial in this case into separate liability and damages phases. (ECF 206 at 14.) Plaintiffs now argue that the Court should exclude and effectively bifurcate arguments and evidence "tied" to the class representatives from "class-wide liability issues." (Motion at 4.)

First, the Court should reject Plaintiffs' disguised motion for bifurcation because it is untimely. Courts routinely deny belated motions for bifurcation, especially where

the parties have expended significant resources preparing for trial.  *See, e.g.*, *United States v. Real Prop. Known as 77 E. 3rd St., New York, New York*, No. 85 CIV. 3351 (SS), 1994 WL 4288, at *3 (S.D.N.Y. Jan. 4, 1994) (rejecting the government's request for further bifurcation because, "[o]ver the last few months, claimants' counsel have expended substantial time and resources in preparing for this forfeiture trial" and "at this stage of the proceedings, such a drastic shift in the trial's focus would … unduly prejudice the claimants"); *Onyx Pharms., Inc. v. Bayer Corp.*, No. C-09-2145 EMC, 2011 WL 4527402, at *2 (N.D. Cal. Sept. 21, 2011) (denying motion to bifurcate that was made on the eve of trial, because bifurcation at "this late hour" would prejudice the plaintiff, which had already invested "substantial time and money on preparing witnesses, examination outlines, exhibits, opening and closing arguments, *voir dire*, and other pretrial filings with the expectation of a… jury trial" in accordance with the original trial plan).

Here, following the Court's bifurcation order, the parties expended significant resources briefing the scope of the coming liability trial.  (*See* ECF Nos. 206, 217, 218, 222, 223.)  At no point did Plaintiffs propose that the Court further bifurcate this trial into a class-wide liability phase and an individualized liability phase for the class representatives.  Plaintiffs strategically chose not to do so; instead, they sought to *expand* the scope of the liability trial, rather than restrict it.  (*See* ECF 218 at 5.)  Fraser has now expended significant resources preparing for the liability trial in accordance with the Court's bifurcation order, and would be unfairly prejudiced if the scope of the trial changed at this eleventh hour.

3

Plaintiffs mistakenly rely on *In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288 (DLC), 2005 WL 408137 (S.D.N.Y. Feb. 22, 2005), a case in which the court granted plaintiffs' motion *in limine* to exclude evidence related to individualized issues of the class representatives.  (Motion at 4-5.)  Unlike this case, however, the *In re WorldCom* court had on a defendant's motion already bifurcated the trial into (1) a "plenary trial" that included trial of all class-wide issues only, including class-wide reliance, knowledge, and damages; and (2) an "individualized trial" for trial of all individualized issues, including individual class members' reliance, knowledge, standing, and damage issues.  *In re WorldCom, Inc. Sec. Litig.*, No. 02 CIV 3288 (DLC), 2005 WL 375315, at *2 (S.D.N.Y. Feb. 17, 2005).  That is not the bifurcation that Plaintiffs sought in this case; nor is it the bifurcation the Court ordered.  (*See also infra* note 6 (further distinguishing *In re WorldCom* in connection with evidence of individualized reliance).)[1]

---

1. Plaintiffs argue that the Court "expressly contemplated" a "class-wide liability" trial in its bifurcation order.  (*See* Motion at 2-3.)  Not so:  the Court's order bifurcated the case between separate "liability" and "damages" phases.  (*See, e.g.*, ECF 206 at 14 ("Here, too, bifurcation of liability and damages is warranted."); *id.* at 15 ("Bifurcation subject to a later decision regarding how to proceed with the damages phase is not uncommon in the class action context.").  The Court mentioned "class-wide liability" (as did Fraser in his briefing regarding the scope of the liability trial) only in the context of the question whether there were any class-wide *damages* issues that could be addressed in the liability trial.  (*Id.* at 17.)  The Court did not further bifurcate the liability trial into only class-wide liability and all other issues.  Nor did Plaintiffs seek such bifurcation.

Plaintiffs also quote snippets of the Court's class certification order to suggest that the Court has already ruled that Fraser's affirmative defenses against the class representatives would be "tried separately."  (Motion at 2 ("With respect to individual defenses, the Court held that 'any individual issues related to potential affirmative defenses would not bar class certification,' even if such issue 'will have

Second, the Court should also reject Plaintiffs' attempt at further bifurcation because, even if this were a timely request, such bifurcation is unwarranted:  (1) what Plaintiffs' refer to as issues of the class representatives' "individual knowledge and reliance" are relevant to class-wide reliance, thus properly a part of a "class-wide liability" trial (*see infra* Section II); and (2) addressing discrete affirmative defenses with the class representatives, each of whom is scheduled to testify at trial, will not turn this liability trial into "mini-trials" on individualized issues (*see infra* Section III).[2]

## II.   Evidence of Class Representatives' Knowledge and Reliance is Relevant to the Issue of Class-Wide Knowledge and Reliance.

Plaintiffs' argument that evidence related to the class representatives' knowledge and reliance should be tried separately is based on their misconception that individualized knowledge and reliance are not relevant to class-wide knowledge and reliance—they are.  Accordingly, even if the upcoming trial were a trial for class-wide issues *only*—which it is not—evidence of the class representatives' knowledge and reliance squarely belongs in that trial.  Additionally, many of the exhibits that Plaintiffs

---

to be tried separately.'") (citing ECF 141 at 38).)  The Court's acknowledgement, at the threshold class certification stage, that affirmative defenses might be tried separately does not equal a ruling on that issue.  If anything, it demonstrates that Plaintiffs were on notice of Fraser's affirmative defenses, but chose not to move to bifurcate them from class-wide liability issues.

2.   Plaintiffs word their motion broadly to preclude Fraser from presenting arguments and evidence "on issues specific to the three named Plaintiffs," but specifically refer to only issues of knowledge and reliance and Fraser's affirmative defenses against the class representatives.  (*See* Motion at 1.)  Accordingly, Fraser addresses only those specific issues, and reserves his rights as to any other "issues specific to the three named Plaintiffs" that Plaintiffs do not identify in the motion.

seek to exclude (as purportedly relevant only to the class representatives' knowledge and reliance) are also probative of other issues of liability.[3]

A.     **Evidence of the Class Representatives' Knowledge and Reliance is Probative of Class-wide Issues.**

Arguments and evidence concerning the class representatives' knowledge and reliance properly belong in the coming trial for the following reasons:

First, it is undisputed that Plaintiffs are not entitled to a rebuttable presumption of class-wide reliance based on non-individualized evidence such as market price.  (*See* ECF 141 (Order on Class Certification) at 41-42.)  Instead, as the Court previously held, Plaintiffs may prove "reliance on a class-wide basis" in this case "through common evidence of uniform misrepresentations and common, circumstantial evidence that those misrepresentations were essential to the decisions of prospective class members to purchase the Companies' products."  (*Id*. at 40.)  This common evidence, however, leads only to a rebuttable inference of class-wide reliance.  And this inference must apply to all class members.  *See Ge Dandong v. Pinnacle Performance Ltd.*, No. 10 Civ. 8086 (JMF),

---

3.   Fraser agrees with Plaintiffs that this case raises "individualized" issues of knowledge and reliance.  (*See, e.g.*, Motion at 1, 4.)  Thus, even if the jury draws an inference of class-wide knowledge or reliance and finds in favor of Plaintiffs on the relevant claims, Fraser is then entitled to test the knowledge and reliance of the actual class members on an individualized basis.  *See In re Vivendi Universal, S.A. Sec. Litig.*, 765 F.Supp.2d 512, 585-86 (2011) (after the class-wide verdict, Vivendi was entitled to "rebut the [class-wide] presumption of reliance on an individual basis").  Fraser's argument in this Section II that evidence of the class representatives' knowledge and reliance properly belongs in the coming (and not a separate) liability trial does not waive the foregoing argument.  Rather, Fraser is entitled to use this individualized evidence to prevent the jury from drawing class-wide inferences of reliance or knowledge in the first place.

2013 WL 5658790, at *9 (S.D.N.Y. Oct. 17, 2013) (to prove reliance, "each individual Plaintiff must demonstrate that the misrepresentation or omission was a substantial factor in inducing [him or her] to act the way that [he or she] did.") (omitting internal citations and quotation marks); *see also id*. at *11(explaining that evidence of "uniform misrepresentations" was permitted in that case because "the Court conclude[d], based on the evidence in the record at th[e certification] stage of the proceedings, that 'a reasonable factfinder [could] conclude beyond a preponderance of the evidence that each individual plaintiff relied on the defendants' [uniform] representations.") (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004)).

Where, as here, Plaintiffs intend to prove class-wide reliance based on inferences from circumstantial evidence that "each individual plaintiff" relied on the uniform misrepresentations, Fraser is entitled to attack that inference with individualized evidence of non-reliance.  *See, e.g., In re New York City Mun. Sec. Litig.*, 87 F.R.D. 572, 580 (S.D.N.Y. 1980) (in securities fraud case, holding that defendant could rebut the "'inference of reliance'," by showing that the alleged nondisclosures were "**not material to the named plaintiffs**' investment decision") (emphasis supplied); *Miami Prods. & Chem. Co. v. Olin Corp.*, No. 1:19-CV-00385 EAW, 2021 U.S. Dist. LEXIS 118138, *23 (W.D.N.Y. June 24, 2021) (in consumer fraud case, holding that "inference of reliance" was rebutted by **certain plaintiffs' concession** that they did not rely on any misrepresentations by the defendants in deciding to purchase the product at issue) (emphasis supplied); *Krueger v. Wyeth, Inc.*, No. 3:03-cv-2496-JAH (MDD), 2016 WL 3981125, at *9 (S.D. Cal. Apr. 4, 2016) (in false advertising and unfair competition case,

7

holding that defendants could disprove the inference at trial by showing that "**this Class Representative did not rely on the representations** or that a reasonable person would not rely on the representations"), *objections overruled*, No. 3:03-cv-2496-JAH (MDD), 2019 WL 4785862 (S.D. Cal. Oct. 1, 2019) (emphasis supplied).  Therefore, evidence of the individual class representatives' knowledge and reliance is probative in this case of the inference of class-wide reliance on which Plaintiffs intend to rely.  That evidence properly belongs in the coming liability trial, even if it were a trial for class-wide liability issues only.[4]

Second, evidence of the class representatives' knowledge and reliance in this case is probative of class-wide issues because the class representatives are not like the typical named plaintiffs in a securities class action, who have little or no contemporaneous interaction with the rest of the purported class.  Rather, each of the class representatives here were active participants in online fora concerning the Companies and the cryptocurrency-related products at issue.  (*See, e.g.*, ECF 253-11 (Amber Capuano deposition transcript) at 106:17-23 (testifying that Shinners was "active in our [HashTalk] forum"); Hassan Decl., Ex. A (Pfeiffer Dep. Tr. at 101:10-13, 115:12-116:12

---

4.  Class-wide reliance is an element of Plaintiffs' Section 20(a) and aiding-and-abetting common law fraud claims.  (*See* ECF 141 (Class Certification Order) at 39, n. 9 & n. 10.)  The same analysis applies to class-wide knowledge of the alleged fraud, which is an element of Plaintiffs' aiding-and-abetting claim under the Connecticut Uniform Securities Act ("CUSA").  (*See id.*; *see also* ECF 97 (Plaintiffs' brief in support of class certification) at 29 ("The second element—the buyer's knowledge—is similar to the element of reliance in plaintiffs' 10b-5 claim and can be proven by common evidence.").)

(Pfeiffer regularly saw Garza's posts on Hashtalk and "[s]ome days," visited the forum more than once); *id.*, Ex. B (Audet Dep. Tr. at 51:25-52:18 (acknowledging that he checked the HashTalk forums on a daily basis).)  The class representatives can thus speak to information to which other class members were exposed.[5]

Finally, the Court cannot credit Plaintiffs' argument that the probative value of the evidence of the class representatives' knowledge and reliance is substantially outweighed by the risk of "confusing" the jury about individual and class-wide issues and "wast[ing] trial time."  (Motion at 9-10.)  Plaintiffs base their assertion on the incorrect premise that this evidence is "irrelevant" to class-wide issues and of "collateral" value only (Motion at 9)—to the contrary, as discussed above, this evidence is central to Fraser's right to challenge the inference of class-wide reliance on which Plaintiffs intend to rest.[6]

---

5.  For example, DX596 is an exhibit containing Hashtalk posts criticizing a November 22, 2014 *Coinfire* article that accused GAW Miners of lying about partnerships with vendors such as Amazon around the use of Paycoin.  (Hassan Decl., Ex. C.)  These posts include Shinners, and thus speak to his reliance, but they also appear to include at least one other purported class member ("GetGuap"), and are thus probative of the knowledge and reliance of other class members as well.  (DX665, a spreadsheet Shinners compiled regarding class members' purported losses, also includes their Hashtalk "handles," including the handle "GetGuap" for one of the purported class members.)

6.  Plaintiffs' reliance on *In re WorldCom* as a case in which the court excluded evidence of individual reliance for risk of confusion with class-wide reliance and materiality is again misplaced.  (Motion at  8-9.)  As discussed above, the *In re WorldCom* court had previously bifurcated that case between class-wide and individualized phases.  (*See supra* at 4.)  More importantly, that case involved a publicly traded security and the fraud-on-the-market theory; evidence of individual reliance was thus not relevant to materiality because plaintiffs intended to prove materiality based on

### B. The Court Should Not Exclude the Specific Exhibits that Plaintiffs Identify in their Motion.

Plaintiffs identify four of Fraser's trial exhibits as examples of evidence of "individual knowledge and reliance" of the class representatives that the Court must exclude because they relate only to issues of individual liability—DX545, DX597, DX636 and DX671.  However, as discussed above, evidence of "individual knowledge and reliance" of the class representatives—including, for instance, evidence of Audet's knowledge of "scams" in the crypto-industry (DX545 (ECF 259-3)), his knowledge that Paycoin was trading at under $20 (DX597 (ECF 259-5) at 9), and his understanding that investing in GAW was "risky" (*id*. at 10)— is probative also of class-wide reliance.  Therefore, Plaintiffs' argument for excluding this evidence fails.

In addition, several of the exhibits Plaintiffs identify in the Motion are also probative of other issues of liability, or otherwise relevant to witness credibility.  For example:

**DX636 (ECF 259-8)**:  DX636 is an email chain from January 2015 involving Shinners and former lead defendant Homer "Josh" Garza.  As reflected in DX636, Shinners' understanding that, as of November 2014, the CFTC was treating Bitcoin as a "commodity" (not a security) and his statements indicating that the same regulations

---

movement of market price following disclosure.  And it also was not relevant to plaintiffs proving entitlement to a presumption of class-wide reliance by demonstrating the existence of an efficient market.  *See In re WorldCom, Inc.*, 2005 WL 408137, at *1 & 4; *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 274 (S.D.N.Y. 2003).  That is not the case here.  Fraser is entitled to challenge the inference of class-wide reliance on which Plaintiffs intend to rest *before* the jury draws that inference.

would apply to the Companies' Paycoin are probative of whether Paycoin was a security and, if so, whether Fraser could have reasonably known that during the class period.  These are key issues relevant to class-wide liability.  (*See* ECF 253-16 (Proposed Joint Jury Instructions) at 16 (definition of a security) and 64 (Fraser's defense to Plaintiffs' unregistered securities claim).) [7, 8]

**DX671 (ECF 259-9)**:  Shinners testified at his deposition that his crypto-lending business had no connection with the United Arab Emirates.  (*See* Hassan Decl., Ex. D (Shinners Dep. Tr. 113:12-14).)  DX671—an excerpt from a website that Shinners published—includes, however, a Dubai address affiliated with that business.  DX671 is thus probative of Shinners' credibility.

---

7.  Under section 36b-29(c) of the CUSA, Fraser is not liable to Plaintiffs if he proves that he did not know, and in the exercise of reasonable care could not have known, of the existence of facts by reason of which liability is alleged to exist, including that the products at issue constituted securities or that the Companies were offering products that would have been required to be registered in Connecticut and were not.  *See* Conn. Gen. Stat. § 36b-29(c).

8.   Plaintiffs cannot dismiss Shinners' statements as a "lay, subjective understanding of the CFTC's regulations" (Motion at 9)—Shinners' knowledge of whether CFTC had declared Bitcoin a "commodity" is not a matter of his subjective opinion.  Nor can Plaintiffs dismiss Shinners' statements that Paycoin was also subject to those regulations.  Shinners was heavily involved in drafting the Companies' Paycoin "white paper" (*see, e.g.*, DX587 (ECF 259-4), and his understanding of Paycoin is probative of whether Fraser reasonably could have known whether Paycoin was a security.  Plaintiffs' professed concern that the jury might improperly impute to the rest of the class Shinners' understanding of whether Paycoin was subject to the CFTC regulation (Motion at 9) makes no sense, given that the class-wide subjective understanding of whether Paycoin was a security is not an element of the claims and defenses in this case.

For this and other reasons set forth above in Section II, the Court should not preclude Fraser from presenting arguments and evidence at the coming trial related to the class representatives' knowledge and reliance.

### III. Argument and Evidence of Fraser's Affirmative Defenses Against the Class Representatives Belong in the Liability Trial.

Fraser asserts four affirmative defenses against the class representatives based on their own conduct: (1) they violated the CUSA by reselling the products at issue; (2) they are *in pari delicto*; (3) they have unclean hands; and (4) they ratified the transactions they now challenge. Even if the Court entertains Plaintiffs' belated and veiled motion for further bifurcation of the liability phase, arguments and evidence relevant to Fraser's affirmative defenses against the class representatives belongs in the coming trial because these limited, discrete defenses do not warrant the time, cost and complexity of a separate trial. Plaintiffs' additional attacks on Fraser's affirmative defenses as a means of keeping them out—*i.e.*, that Fraser waived them or that it is "doubtful" he is entitled to them as a matter of law—are unfounded and improper on a motion *in limine*.

### A. Fraser's Affirmative Defenses Against the Class Representatives Do Not Warrant a Separate, Second-Phase Liability Trial.

The Court should not preclude Fraser from presenting arguments and evidence related to his affirmative defenses against the class representatives because bifurcating these defenses into a separate trial is unwarranted.

<u>First</u>, Fraser asserts the same affirmative defenses against each of the three class representatives. The jury instructions related to those defenses are short,

uncomplicated, and clearly delineated from the rest of the jury charge.  (*See* ECF 253-16 (Proposed Joint Jury Instructions) at 46-47, 128-31.)  Although Plaintiffs claim as much (*see* Motion at 10, 13, 16), they do not explain how it would be confusing or "unduly distract[ing]" for the jury to decide class-wide questions and also separate and clearly delineated questions as to the affirmative defenses against the class representatives. (*See* 253-17 (Defendant's Proposed Verdict Form) at 15-16.)

Addressing these defenses at the coming trial is more efficient because all three class representatives are already appearing as trial witnesses and, as demonstrated below, much of the evidence relevant to these defenses is also relevant to other issues of liability.  On the other hand, holding a separate trial to address the affirmative defenses against the class representatives, including potentially empaneling a new jury, calling back the three class representatives, and repeating a lot of similar evidence is not warranted.  *See C.D.S., Inc. v. Zetler*, No. 16 Civ. 3199 (VM), 2017 U.S. Dist. LEXIS 165491, *12-16 (S.D.N.Y. 2017) (holding bifurcation was unwarranted because "bifurcating the trial would result in the duplication of evidence at both trials, including the repeat presentation of several witnesses").

Second, as indicated above, much of the evidence Fraser intends to introduce at trial related to his affirmative defenses against the class representatives is also relevant to other issues of liability.  This is demonstrated by the fact that the specific evidence that Plaintiffs seek to exclude in the Motion as related only to Fraser's affirmative defenses against the class representatives is also—and in some cases, principally—

relevant to other issues of class-wide liability and witness credibility, and is therefore admissible during the coming trial in any event.  For example:

- Plaintiffs point to DX587 (ECF 259-4, a November 25, 2014 email) and DX609 (ECF 259-6, a December 11-12, 2014 email chain) as examples of evidence showing Shinners' involvement with the Companies and relevant to Fraser's affirmative defenses against Shinners.  (Motion at 13.)  Contemporaneous emails such as these, that show that Shinners was in regular contact with Garza and other employees of the Companies; discussed the Companies' strategy with them; and edited the Paycoin "white paper" in collaboration with the Companies' employees is probative of whether Fraser should or could have known of the alleged fraud when Shinners—closer to the events at issue, who appears to have had Garza's ear, and was knowledgeable about cryptocurrency—did not.  Fraser's knowledge of the alleged misrepresentations is an element of Plaintiffs' fraud claims or Fraser's defenses to those claims.  (*See, e.g.*, ECF 253-16 (Proposed Joint Jury Instructions) at 64, 78, 110-13.)

- Plaintiffs also point to DX679 (ECF 259-10, "ION Technical Whitepaper," dated April 9, 2016) as another example of evidence relevant to Fraser's affirmative defenses against the class representatives only.  However, evidence related to ION Coin (into which many of the class members converted their Paycoin) and Pfeiffer's involvement with that cryptocurrency (including authoring its "white paper"), is probative of whether Paycoin was a security and, if so, whether Fraser reasonably could have known that it constituted a security.  As Fraser's exhibits show, ION Coin was not registered as a security with the Connecticut Department of Banking.  (*See* Hassan Decl.,

Ex. E (DX713).)  Pfeiffer, the author of the coin's "white paper," can testify why it was not so registered.

- Other exhibits Plaintiffs cite in this section of the Motion, including DX681 (ECF 259-11, a May 12, 2016 screenshot of Shinners' website for his telecom auditing business including a stock photograph purporting to be Shinners' photograph) and DX628 (ECF 259-11, a December 17-31, 2014 email chain showing that Shinners negotiated a job with GAW Miners during the class period) are probative of Shinners' credibility as a trial witness.  Shinners is the lead Plaintiff (who himself organized the plaintiff class) and a key witness for Plaintiffs, and Fraser is entitled to test his credibility.

### B.     Fraser Preserved His Affirmative Defenses.

Contrary to Plaintiffs' contention, Fraser preserved his affirmative defenses to the alleged violation of the CUSA as well as his, *in pari delicto* and ratification defenses even though he did not expressly plead those defenses in his answer.  (Motion at 12, 14, 17.)  Failure to plead a defense in an answer is not dispositive; rather, the question is whether the other party had notice of that defense.  *See Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (affirmative defense not waived where defendant raised it for the first time in a reply brief on a motion for summary judgment because plaintiff was "provid[ed] notice and an opportunity to respond").  Here, the parties briefed Fraser's alleged affirmative defense to violations of the CUSA and *in pari delicto* affirmative defense as part of Plaintiffs' motion for class certification.  (*See* ECF 107 at

37-38; ECF 113 at 16-18.)  Plaintiffs were thus properly on notice of those defenses and cannot claim lack of notice.

Fraser is also entitled to argue his ratification defense.  As Plaintiffs note, Fraser specifically pleaded the defense of estoppel in his answer, which is similar to ratification. *See* 3B Fed. Jury Prac. & Instr. § 162:174 (6th ed.) ("'Ratification' is nearly the same as estoppel."); *In re Adelphia Recovery Tr.*, 634 F.3d 678, 697 (2d Cir. 2011) ("[r]atification and estoppel are 'closely allied'"). Thus, the "primary purpose" of requiring an affirmative defense to be pled, *i.e.*, to provide "notice and an opportunity to respond," has been served and Plaintiffs are in no way unfairly prejudiced.  *See Curry*, 316 F.3d at 331; *see also Cramer v. Hoffman*, 390 F.2d 19, 22 (2d Cir. 1968) (counsel could move to conform the pleadings to the proof at the end of the trial because counsel was "merely" adding a defense similar to another defense that had been disputed at trial, so there was no "surprise" for plaintiffs).

### C.  Plaintiffs' Attack on Fraser's Affirmative Defenses as "Legally Deficient" is Both Unfounded and Improper on a Motion *in Limine*.

Plaintiffs' argument that the Court should preclude Fraser from arguing or presenting evidence of affirmative defenses against the class representatives because these defenses are "legally deficient" is both improper and without merit.

<u>First</u>, whether a claim or defense is legally deficient is not a question for an evidentiary motion.  As courts in this District have held, a motion *in limine* "is not the proper vehicle for seeking a dispositive ruling on a claim [or defense]."  *Williams v. Rushmore Loan Mgmt. Servs. LLC*, No. 3:15CV673(RNC), 2017 U.S. Dist. LEXIS 29440, *3

(D. Conn. March 2, 2017) (denying motions where in the "guise of motions *in limine*, the plaintiff s[ought] dispositive rulings on the merits of his claims") (compiling case law); *see also MF Glob. Holdings Ltd. v. PricewaterhouseCoopers LLP*, 232 F. Supp. 3d 558, 578 (S.D.N.Y. 2017) (denying defendant's motion *in limine* because it sought to exclude all evidence pertaining to a particular claim, which was not "appropriately decided" on a motion *in limine*.); *Weiss v. La Suisse, Societe D'Assurances Sur La Vie*, 293 F. Supp. 2d 397, 403 (S.D.N.Y. 2003) (denying defendant's motion to "exclude all evidence relating to the contract claims" because "[i]n effect," it was "a motion to dismiss the claims, and "[i]*n limine* motions are generally not the appropriate vehicle for effecting dismissal").

Second, while the foregoing is sufficient ground for the Court to reject Plaintiffs' "legally deficient" argument, Plaintiffs' argument also lacks merit.  Fraser is entitled to his affirmative defenses and Plaintiffs provide no authority to the contrary.[9]

**Violation of the CUSA**:  Plaintiffs make a half-hearted argument that it is "doubtful" whether Fraser can assert a defense under § 36b-29(h) of the CUSA.  (Motion at 10.)  Plaintiffs' argument is baseless.  The CUSA states that "[n]o person who has made or engaged in the performance of any contract in violation of any provision of sections 36b-2 to 36b-34, inclusive … may base any cause of action on the contract." CUSA § 36b-29(h).  Plaintiffs' contention that § 36b-29(h) does not apply because Plaintiffs' unregistered securities claim against Fraser does "not seek to recover under a

---

9.  In some instances, Plaintiffs only intimate that it is "doubtful" Fraser is entitled to a particular defense (*see, e.g.*, Motion at 15, 20).  The Court should not credit Plaintiffs' musings.

contract" is a tortured reading of the statute.  (Motion at 12).  § 36b-29(h) does not dictate the formal cause of action—it precludes any action "base[d]" on a contract.  *See* CUSA § 36b-29(h).  Here, Plaintiffs' claims and Fraser's affirmative defense are both based on the sale and resale of purported unregistered securities or "investment contracts."  (*See* ECF 253-16 (Proposed Joint Jury Instructions) at 16.)  Plaintiffs' purchase and their resale of that same "investment contract" brings the resale within the coverage of § 36b-29(h).  None of the authorities Plaintiffs cite are directly on point or preclude this affirmative defense.[10]

**In Pari Delicto**:  There is no absolute bar on the application of the *in pari delicto* defense in securities fraud actions, actions under "blue sky" laws, or in common law fraud actions.  *See, e.g.*, *Kuehnert v. Texstar Corp.*, 412 F.2d 700, 703-04 (5th Cir. 1969) (defendant was entitled to *in pari delicto* defense in an insider trading case); *McCauley v.*

---

10. *Couldock & Bohan, Inc. v. Societe Generale Sec. Corp.*, 93 F. Supp. 2d 220, 227–28, 230 (D. Conn. 2000) was a breach of contract case, but it did not limit the application of § 36b-29(h) to breach of contract claims or defenses.  *Russolillo v. Thomson McKinnon Sec., Inc.*, 694 F. Supp. 1042 (D. Conn. 1988) created no such limitation either.  There, no party was "basing any cause of action on the [account agreements];" rather, defendants sought to compel arbitration based on the arbitration provision in those agreements.  *Id.* at 1045.  Finally, Plaintiffs' assertion that the resale of unregistered securities constitutes a *different* contract than the *initial* purchase of the same securities from the Companies is without support.  (Motion at 11-12.)  Plaintiffs rely on *Connecticut Nat. Bank v. Giacomi*, 699 A.2d 101 (1997), but *Giacomi* did not involve a sale of unregistered securities.  Moreover, by Plaintiffs' logic, *Giacomi* also included two different contracts, but the Connecticut Supreme Court affirmed the application of § 36b-29(h):  in *Giacomi*, the Connecticut Supreme Court held that plaintiffs were barred from collecting on promissory notes issued to them from defendants (one contract) because they had aided and abetted defendants' fraudulent scheme by providing loans (arguably a second contract) to defendants and other investors, in exchange for the promissory notes.  *Id.* at 128-29.

18

*Michael*, 256 N.W.2d 491, 495 (S.C. Minn. 1977) (noting that where a "purchaser is *in pari delicto* with the seller," he cannot seek rescission or damages); *Haigler v. Dozier (In re Dozier Fin. Inc.)*, No. 4:18-cv-1888-SAL-SVH, 2020 WL 1873993, *5 (D.S.C. Feb. 3, 2020) (denying dismissal on summary judgment of *in pari delicto* defense for federal securities fraud and common law fraud claims).

Plaintiffs provide no authority to the contrary.  Instead, Plaintiffs cite *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299 (1985), a case in which the Court denied the *in pari delicto* defense in part because of a policy concern that it would discourage defrauded tippees from bringing claims against defrauding tippers.  While that might be a legitimate policy concern, it does not apply here, where Plaintiffs seek to hold Fraser responsible for secondary liability (after they agreed to let Garza, the primary violator, off the hook).  In *Bateman*, the Supreme Court expressly refused to address whether the defense would apply to a case involving secondary liability.  *See Bateman*, 472 U.S. at 314, n.25.  A jury might reasonably consider that a class representative's knowledge or involvement with the Companies made him equally at fault as Fraser — who is only alleged to be secondarily liable — and that precluding that particular Plaintiff's claims (as opposed to the claims of the class) "would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public."  *Id*. at 310-11.[11]

---

11. Plaintiffs' suggestion that Fraser is barred from asserting his *in pari delicto* defense to Plaintiffs' common law fraud claim because Fraser never "pleaded or suggested" it in the context of that claim is unavailing.  (Motion at 15.)  Plaintiffs were on notice

**Unclean Hands**:  Plaintiffs are also on weak ground with their "legal deficiency" argument against Fraser's unclean hands defense.  Fraser pleaded that defense in his answer (ECF 73 at 42), and Plaintiffs never moved to strike that defense or for summary judgment to limit or dismiss it.  Plaintiffs may not do so now, and Fraser is entitled to argue this defense to the jury.  Moreover, the defense has previously been applied in the securities fraud context.  *See Kuehnert*, 412 F.2d at 704 (defendant was entitled to unclean hands defense in an insider trading case even though plaintiff sought monetary damages only).  Plaintiffs speculate only that it is "doubtful" whether the unclean hands defense applies to CUSA claims as a matter of law, but provide no controlling or dispositive authority.  The single statement Plaintiffs cite from *Russolillo v. Thomson McKinnon Sec., Inc.*, that "§ 36–498(g) codifies the equitable doctrine of unclean hands" is unsupported *dicta* that could also be read to mean that the defense is entirely consistent with the CUSA's statutory scheme.

**Ratification**:  Plaintiffs' only argument that ratification is "legally [not] applicable" here is that it typically applies in cases involving "unauthorized conduct." (Motion at 17-18.)  That is a sweeping generalization.  Ratification may also apply in cases involving no principal-agent relationship, but where a plaintiff accepts the benefits of the complained-of acts.  *See City of New Britain v. Hancock*, 373 A.2d 859, 863

---

generally of Fraser's defense, and the arguments and evidence related to this defense—whether asserted against the securities fraud claims or the common law fraud claim—are the same.  Plaintiffs cannot contend surprise or unfair prejudice if the defense is applied across all their claims.  (*See supra* at 15-16.)

(Conn. Super. Ct. 1976) (plaintiff ratified purchase of land when it accepted the corrected deed for the purchased property and applied for zoning exception for that land, among other acts); *see also* 3B Fed. Jury Prac. & Instr. § 162:174 (6th ed.) ("'Ratification' … means that plaintiff __ has done something to communicate to defendant __, by words or actions, that plaintiff __ accepts and approves of defendant's conduct.") (placeholder blanks in original).  Plaintiffs cite no authority barring the application of ratification to Plaintiffs' purchase of products, as is the case here.

For this and other reasons set forth above in Section III, the Court should not preclude Fraser from arguing or presenting evidence at the coming trial of his affirmative defenses against the class representatives.

## Conclusion

For the reasons set forth herein, Fraser respectfully requests that the Court deny Plaintiffs' motion in its entirety

Dated:  September 15, 2021

HUGHES HUBBARD & REED LLP

By:   */s/ Daniel H. Weiner*

David R. Schaefer (ct04334)
Sean M. Fisher (ct23087)
Rowena Moffett (ct414899)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT  06511
Tel.: (203) 772-2600
Fax: (203) 562-2098
Email: rmoffett@bswlaw.com

Daniel H. Weiner (ct12180)
Marc A. Weinstein (*pro hac vice*)
Amina Hassan (*pro hac vice*)
Hannah Miller (*pro hac vice*)
One Battery Park Plaza
New York, NY 10004-1482
Tel.: (212) 837-6000
Fax: (212) 422-4726
Email: daniel.weiner@hugheshubbard.com

*Attorneys for Defendant Stuart A. Fraser*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2021, I caused the foregoing document to be served via the Electronic Case Filing (ECF) system in the United States District Court for the District of Connecticut, on all parties registered for CM/ECF in the above-captioned matter.

_____
Amina Hassan

Dated: September 15, 2021

101425072