# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, DEAN ALLEN SHINNERS, and JASON VARGAS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC, (d/b/a ZEN CLOUD),<br><br>Defendants. | Case 3:16-cv-00940<br><br>Hon. Michael P. Shea<br>Courtroom 2<br><br>ECF Case<br><br>CLASS ACTION<br><br>September 15, 2021<br><br>DEMAND FOR JURY TRIAL |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT STUART A. FRASER'S MOTIONS *IN LIMINE* RELATED TO (1) HOMERO J. GARZA'S DEPOSITION TESTIMONY, (2) HARDWARE- AND CLOUD-HOSTED MINING, (3) ZENMINER AND (4) THE HONOR PROGRAM**

# TABLE OF CONTENTS

I.     FRASER'S MOTION *IN LIMINE* NO. 1 CONCERNING GARZA'S DEPOSITION TESTIMONY ............................................................1

II.    FRASER'S MOTION *IN LIMINE* NO. 2 CONCERNING HARDWARE-AND CLOUD-HOSTED MINING ...................................................11

III.   FRASER'S MOTION *IN LIMINE* NO. 3 CONCERNING ZENMINER ........................12

       A.    Fraser's Requested Relief as to "Actionable" Misstatements Is Too Broad .................................................................................................13

       B.    Fraser's Request to Exclude "Any Evidence" Related to the May 23 Statements and August 13 Statements Lacks Merit ..............................16

             1.    Evidence Concerning the Relationship Between GAW Miners and ZenMiner Is Relevant .........................................................16

             2.    Evidence Concerning the Relationship Between GAW Miners and ZenMiner Is Not Inadmissible Character Evidence ...........................23

             3.    Evidence Concerning the Relationship Between GAW Miners and ZenMiner Should Not Be Excluded Under FRE 403 ..........................25

IV.    FRASER'S MOTION *IN LIMINE* NO. 4 CONCERNING THE HONOR PROGRAM ...............................................................................................28

V.     CONCLUSION ...........................................................................................29

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. ex rel. Hadjih v. Evenflo Co., Inc.*,
  597 F. App'x 649 (10th Cir. 2014) ...................................................................3

*Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*,
  2019 U.S. Dist. LEXIS 91965 (E.D.N.Y. May 31, 2019) ....................................20

*Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*,
  2009 WL 3111766 (S.D.N.Y. Sept. 28, 2009) ...................................................4

*Berkovich v. Hicks*,
  922 F.2d 1018 (2d Cir. 1991) .........................................................................24

*Bey v. Hill*,
  2017 WL 4403306 (D. Conn. Oct. 4, 2017) ....................................................28

*Connecticut Nat. Bank v. Giacomi*,
  242 Conn. 17 (1997) .....................................................................................21

*Daigle v. Maine Med. Ctr., Inc.*,
  14 F.3d 684 (1st Cir. 1994) ....................................................................1, 2, 26

*Delgado v. Pawtucket Police Dep't*,
  668 F.3d 42 (1st Cir. 2012) ..............................................................................9

*Glover v. DeLuca*,
  2006 WL 2850448 (W.D. Pa. Sept. 29, 2006) ..................................................22

*Goldenson v. Steffens*,
  2014 WL 3105367 (D. Me. July 7, 2014) ..........................................................6

*In re Complete Management Inc. Sec. Litig.*,
  153 F. Supp. 2d 314 (S.D.N.Y. 2001) .............................................................17

*In re Decade, S.A.C., LLC*,
  625 B.R. 616 (Bankr. D. Del. 2021) .................................................................4

*In re Edelman*,
  295 F.3d 171 (2d Cir. 2002) .............................................................................8

*In re Jacoby Airplane Crash*,
  2007 WL 559801 (D.N.J. Feb. 14, 2007) ...................................................2, 5, 8

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d Cir. 2001)...................................................................................................22

*In re Urethane Antitrust Litig.*,
    2016 WL 723014 (D.N.J. Feb. 22, 2016) ..............................................................................5

*Kolb v. Suffolk County*,
    109 F.R.D. 125 (E.D.N.Y. 1985)...........................................................................................5

*Kuhne v. Reynolds*,
    2019 WL 959678 (D. Conn. Feb. 27, 2019) ...................................................................12, 13

*Latin Am. Music Co. v. Am. Soc. of Composers Authors & Publishers*,
    593 F.3d 95 (1st Cir. 2010)...................................................................................................9

*Maran Coal Corp. v. Societe Generale de Surveillance S.A.*,
    1996 WL 11230 (S.D.N.Y. Jan. 10, 1996) .......................................................................6, 7

*Mazloum v. D.C. Metro. Police Dep't*,
    248 F.R.D. 725 (D.D.C. 2008)..........................................................................................4, 9

*MMG Ins. Co. v. Samsung Elecs. Am., Inc.*,
    293 F.R.D. 58 (D.N.H. 2013) ...............................................................................................2

*Napier v. Bossard*,
    102 F.2d 467 (2d Cir. 1939)...................................................................................................7

*Olaf Soot Design, LLC v. Daktronics, Inc.*,
    2018 WL 6424551 (S.D.N.Y. Dec. 6, 2018) ..................................................................26, 27

*Park W. Radiology v. CareCore Nat. LLC*,
    675 F. Supp. 2d 314 (S.D.N.Y. 2009)..................................................................................27

*Ronnie Van Zant, Inc. v. Pyle*,
    270 F. Supp. 3d 656 (S.D.N.Y. 2017), *rev'd in part, vacated in part on other grounds sub
    nom. Ronnie Van Zant, Inc. v. Cleopatra Recs., Inc*, 906 F.3d 253 (2d Cir. 2018)................9

*SCM Corp. v. Xerox Corp.*,
    77 F.R.D. 16 (D. Conn. 1977)................................................................................................6

*Ueland v. United States*,
    291 F.3d 993 (7th Cir. 2002) ........................................................................................2, 3, 5

*United States v. Adigun*,
    998 F. Supp. 2d 356 (M.D. Pa. 2014) ..................................................................................10

*United States v. Caccia*,
    122 F.3d 136 (2d Cir. 1997)................................................................................................10

*United States v. Curley*,
    639 F.3d 50 (2d Cir. 2011)........................................................................25

*United States v. Dubogryzov*,
    2007 WL 2746752 (D. Conn. Sept. 18, 2007) .......................................25

*United States v. Ferguson*,
    246 F.R.D. 107 (D. Conn. 2007)..............................................................19

*United States v. Int'l Bus. Machines Corp.*,
    90 F.R.D. 377 (S.D.N.Y. 1981) .................................................................4

*United States v. Pascarella*,
    84 F.3d 61 (2d Cir. 1996) ........................................................................25

*United States v. Pitre*,
    960 F.2d 1112 (2d Cir. 1992)...................................................................25

*United v. Glenn*,
    312 F.3d 58 (2d Cir. 2002).......................................................................22

*Wasilewski v. Abel Womack, Inc*,
    2016 WL 183471 (D. Conn. Jan. 14, 2016)............................................15

*Wells Fargo Advantage Nat'l Tax Free Fund v. Helicon Assocs., Inc.*,
    2010 WL 11541839 (E.D. Mich. Mar. 15, 2010) ...................................21

*Williams v. Arctic Cat, Inc.*,
    2014 WL 1028476 (N.D.N.Y. Mar. 13, 2014) ..........................................9

*Wilson v. Liberty Mut. Ins. Co.*,
    2016 WL 1718856 (W.D. La. Apr. 28, 2016)............................................2

**Statutes**

28 U.S.C. § 1782 .............................................................................................8

N.Y. Civ. Prac. Act § 304 ...............................................................................7

**Rules**

Fed. R. Civ. P. 30(b)(6)...................................................................................4

Fed. R. Civ. P. 32 ...................................................................................*passim*

Fed. R. Civ. P. 45(c) ...................................................................................3, 8

Fed. R. Evid. 106 ............................................................................................6

Fed. R. Evid. 402 ........................................................................................................25

Fed. R. Evid. 403 ............................................................................................ *passim*

Fed. R. Evid. 404 ............................................................................................ *passim*

Plaintiffs Denis Audet, Michael Pfeiffer, and Dean Allen Shinners ("Plaintiffs") oppose Defendant Stuart Fraser's ("Fraser") Motions *in Limine* and respectfully request that the Court deny Nos. 1, 3, and 4 outright and No. 2 as moot.

I.    **FRASER'S MOTION *IN LIMINE* NO. 1 CONCERNING GARZA'S DEPOSITION TESTIMONY**

Fraser's Motion *in Limine* No. 1 seeks to preclude Plaintiffs from using deposition testimony from Fraser's former protégé and co-defendant Homero J. Garza at trial. Federal Rule of Civil Procedure 32(a)(4)(B), however, allows a witness to testify by deposition if "the witness is more than 100 miles from the place of hearing or trial or is outside the United States, unless it appears that the witness's absence was procured by the party offering the deposition." Fed. R. Civ. P. 32(a)(4)(B) (defining one of several tests for determining if a witness is unavailable).[1] Garza sat for a deposition on December 14, 2018 and was questioned by both Plaintiffs' and Defendant's counsel. *See* Declaration of Russell Rennie in Opposition to Defendant's Motions *in Limine* ("Rennie Decl."), Ex. A (Garza Dep.) at 6:9-13, 147:25-148:3. Rule 32(a)(4)(B) establishes a straightforward geographic test for determining whether a deponent is unavailable such that their deposition testimony can be used at trial. *Daigle v. Maine Med. Ctr., Inc.*, 14 F.3d 684, 691–92 (1st Cir. 1994) ("Distance is the decisive criterion: so long as a witness is shown to be more than one hundred miles from the place of trial, the admissibility of deposition testimony under the aegis of Rule 32(a)(3)(B)[2] is not contingent upon a showing that the witness is

---

[1] As Fraser's Motion in *Limine* No. 1 seeks to exclude Garza's deposition because he is not an "unavailable witness" under Federal Rule of Civil Procedure 32(a)(4), Plaintiffs' opposition focuses on that provision only. Plaintiffs note, however, that Fraser's counsel was present at Garza's deposition, as required by Rule 32(a)(1)(A). Moreover, to the extent Fraser has made evidentiary objections to specific portions of testimony pursuant to Rule 32(a)(1)(B), Fraser does not address those objections in his motion.

[2] The 100-mile provision was previously codified at Rule 32(a)(3)(B).

otherwise unavailable."). Here, Fraser concedes that the distance requirement is met. *See* Dkt. 258 at 2 (agreeing that "the 100-mile rule" "applies in Garza's situation").[3]

Notwithstanding Rule 32(a)(4)(B), Fraser insists that Garza is nonetheless "available" to testify at trial pursuant to the terms of his settlement agreement with Plaintiffs. *Id.* But Fraser fails to explain why that agreement would override the 100-mile rule established by the Federal Rules, and similar attempts by other litigants to insert an additional "availability" test into the 100-mile provision have been squarely rejected by multiple appellate and district courts. *See, e.g.*, *Ueland v. United States*, 291 F.3d 993, 997 (7th Cir. 2002) (rejecting argument "that the proponent [of the deposition] must try and fail to procure live testimony before offering a deposition under Rule 32(a)(3)(B)" and reversing judgment entered after excluding the testimony at issue); *Daigle*, 14 F.3d at 691 ("Next, appellant intimates that a witness, though at the stated distance from the place of trial, is not unavailable if, with reasonable efforts, he might be persuaded to attend. But the language of the rule does not permit a court to read this sort of qualification into it."); *Wilson v. Liberty Mut. Ins. Co.*, 2016 WL 1718856, at *2 (W.D. La. Apr. 28, 2016) (finding that witness who would be more than 100 miles away from the place of trial could testify by deposition); *MMG Ins. Co. v. Samsung Elecs. Am., Inc.*, 293 F.R.D. 58, 67 (D.N.H. 2013) (rejecting a reading of Rule 32(a)(4)(B) that would require "reasonable efforts" to persuade a witness located more than 100 miles away to attend trial as a condition of using the witness's deposition). Indeed, courts have allowed parties to call a witness by deposition even when the absent witness was the offering party's ***own employee or agent***. *See, e.g.*, *In re Jacoby*

---

[3] Fraser does not appear to contest that Garza resides more than 100 miles from the Court. Notwithstanding the apparent lack of any dispute on this issue, Plaintiffs are willing to seek additional documentation to supplement the attorney declaration accompanying this memorandum should the Court require it. *See* Declaration of Russell Rennie in Opposition to Defendant's Motions in *Limine* ¶ 2 (describing conversation with Garza's attorney disclosing that Garza resides in Texas).

*Airplane Crash*, 2007 WL 559801, at \*7 (D.N.J. Feb. 14, 2007) (allowing defendants to use deposition testimony of their employees and experts at trial as those individuals resided more than 100 miles from the court).

While Rule 32(a)(4)(B) does prohibit parties from using deposition testimony for a witness who is more than 100 miles from the trial site if they actively "procured" the witness's absence, Fed. R. Civ. P. 32(a)(4)(B), Fraser does not argue that the agreement between Plaintiffs and Garza implicates this exception to the 100-mile rule. Nor could he, as Rule 32(a)(4)(B)'s prohibition on "procur[ing] the deponent's ***absence*** (or distance) . . . is a far cry from requiring the litigant to procure the deponent's ***presence***." *Ueland*, 291 F.3d at 996 (emphases added); *see also A.H. ex rel. Hadjih v. Evenflo Co., Inc.*, 597 F. App'x 649, 656 & n.5 (10th Cir. 2014) (affirming trial court's decision to allow videotaped deposition of witness located more than 100 miles away to be played for the jury because, "as the district court recognized, there is a difference between procuring a witness's absence and electing not to procure his attendance"). Even if Fraser were correct that the agreement gives Plaintiffs "the ability to make Garza available for trial," Dkt. 258 at 3,[4] he fails to cite any authority holding that *not* exercising an

---

[4] Fraser bases this assertion on Garza's agreement to "provide reasonable and timely discovery cooperation to Plaintiffs," including "[m]ak[ing] himself available for interviews, depositions, or testimony at trial as Plaintiffs may reasonably require." Dkt. 258 at 2-3 (quoting Dkt. 258-2 ¶ 2(c)). But Fraser mischaracterizes the agreement when he goes on to assert that it "permits Plaintiffs to reinstate their claims against [Garza]" in the event of his material breach. Dkt. 258 at 3; *see also* Dkt. 258-2 ¶ 1. What the agreement actually provides is tolling of the statute of limitations on Plaintiffs' claims against Garza *if* this Court were to determine that there had been a material breach and *if* Plaintiffs then sought to reinstate Garza as a defendant or file a new action. Dkt. 258-2 ¶ 1. Moreover, Fraser fails to show how Plaintiffs' accusing Garza of material breach, or even prevailing on that allegation and being permitted to reassert their claims against Garza, whether in this action or a new action, would compel Garza to testify live and in person at *Fraser*'s upcoming trial. *Cf.* Fed. R. Civ. P. 45(c) (limiting the reach of trial subpoenas to attendance at trials, hearings, or depositions "within 100 miles of where the [witness] resides, is employed, or regularly transacts business in person," or, in the case of a party or party's officer,

alleged contractual right to require an otherwise absent witness to attend trial is equivalent to affirmatively procuring an otherwise available witness's absence under Rule 32(a)(4)(B). *See, e.g.*, *In re Decade, S.A.C., LLC*, 625 B.R. 616, 635 (Bankr. D. Del. 2021) (noting that an alleged "half-hearted attempt" to secure live testimony does not "show that [the proponent of the testimony] made active efforts to procure the absence of Witnesses"); *United States v. Int'l Bus. Machines Corp.*, 90 F.R.D. 377, 380 n.5 (S.D.N.Y. 1981) (holding that defendant "need not demonstrate that it attempted to subpoena the deponent in order to show that it did not 'procure' his absence"). As Garza is located more than 100 miles from the Court and there has been no allegation that Plaintiffs procured that distance, his deposition testimony can be used by Plaintiffs for any purpose at trial. *See* Fed. R. Civ. P. 32.

Fraser's remaining arguments wander even further from the plain language of Rule 32. Fraser asks the Court to prohibit Garza's testimony by deposition due to Garza's significance as a witness and the court system's general preference for live testimony. *See* Dkt. 258 at 3. But Rule 32(a)(4)(B) applies regardless of the alleged significance of the witness. *See, e.g.*, *Aristocrat Leisure Ltd. v. Deutsche Bank Tr. Co. Americas*, 2009 WL 3111766, at \*19 (S.D.N.Y. Sept. 28, 2009) ("Aristocrat points to no requirement that a party that meets the standard set out in Rule 32(a)(4)(B) only may use deposition testimony that addresses peripheral topics."); *Mazloum v. D.C. Metro. Police Dep't*, 248 F.R.D. 725, 726–27 (D.D.C. 2008) (rejecting argument that a "nominal defendant" not yet formally dismissed from an action, who served both as a corporate designee for a co-defendant under Rule 30(b)(6) and as a "'managing agent, if not an officer," of that same co-defendant, must testify live and not by deposition, despite allegations that he "played a key role" and was "not simply a tangential witness in the case").

---

"within the state where the [witness] resides, is employed, or regularly transacts business in person").

Fraser may prefer to examine Garza live at trial, but the plain language of Rule 32 makes no accommodations for the preferences of the party *against* whom an unavailable witness's deposition is offered. *See, e.g.*, *In re Urethane Antitrust Litig.*, 2016 WL 723014, at *2 (D.N.J. Feb. 22, 2016) (concluding that the court "lacks discretion to preclude Plaintiffs from presenting their witnesses' deposition testimonies" under Rule 32(a)(4)(B), notwithstanding claims from Defendant that "the live testimony of these witnesses is 'extremely important' because it will allow [Defendant] to present an 'important defense,'" as "[a]ny perceived importance of certain testimony does not create an exception to the Rule"). Indeed, Rule 32 makes allowances for the preferences of the *offering* party only—*i.e.*, Plaintiffs. *See In re Jacoby*, 2007 WL 559801, at *8 (noting that language in Rule 32(a) stating a party "may use" a deposition of an unavailable witness means that "[a] party is not *required* to use deposition testimony in place of having the person testify live at trial" but may exercise that "option" at its own discretion (emphasis added)); *see also id.* ("Clearly the discretion is left to the *party,* not the court." (emphasis in original)).[5] Plaintiffs seek to call Garza by deposition, as provided and permitted by Rule 32(a)(4)(B), and have no obligation to call him live simply because Fraser would prefer it.

A generalized preference for live testimony is likewise no help to Fraser. Rule 32(a) clearly and expressly contemplates certain circumstances in which the preference for live testimony does ***not*** control—including when the witness is more than 100 miles away—and deposition testimony is permitted. Fed. R. Civ. P. 32(a)(4)(B); *see also Ueland*, 291 F.3d at 996

---

[5] Fraser's reliance on *Kolb v. Suffolk County*, 109 F.R.D. 125 (E.D.N.Y. 1985), to establish that the "admissibility of deposition testimony at trial is within the discretion of the trial court" is misplaced. *See* Dkt. 258 at 2 (citing case). That statement in *Kolb* referred to the court's authority to admit deposition testimony not otherwise admissible under Rule 32(a) when "such exceptional circumstances exist as to make it desirable," an entirely different provision of Rule 32(a) than 100-mile rule at issue here. *Kolb*, 109 F.R.D. at 126 & n.3.

(observing that "[u]se of depositions as substantive evidence is normal in federal practice" and Rule 32(a) "lists five circumstances that make a deposition admissible as substantive evidence").

The "live testimony" cases cited by Fraser have little bearing on this issue and do not support Fraser's requested relief. For instance, *SCM Corp. v. Xerox Corp.*, 77 F.R.D. 16 (D. Conn. 1977), does not "exalt[] the 'virtue of affording the trier an opportunity to observe the witness'" over the plain text of Rule 32(a), as Fraser suggests. *See* Dkt. 258 at 4 (quoting *SCM*, 77 F.R.D. at 17, for the proposition that Plaintiffs must call Garza live "so that the jury may evaluate Garza's demeanor and credibility directly"). Instead, the *SCM* court considered the jury's opportunity to observe the witness as one of three factors in evaluating the "novel" situation of a witness who *resided* more than 100 miles from the trial site but was regularly *employed* at a location within 100 miles. *SCM*, 77 F.R.D. at 17. Moreover, courts acknowledge that videotaped depositions such as Garza's present far fewer challenges to the jury's ability to assess demeanor and credibility than reading deposition testimony from the transcript into the record. *See, e.g.*, *Goldenson v. Steffens*, 2014 WL 3105367, at *5 (D. Me. July 7, 2014) ("The fact that the Defendants videotaped [the witness's] deposition mitigates the physical absence of the witness from the courtroom.").[6]

Fraser's reading of *Maran Coal Corp. v. Societe Generale de Surveillance S.A.*, 1996 WL 11230 (S.D.N.Y. Jan. 10, 1996), is similarly misguided. *See* Dkt. 258 at 4 (quoting *Maran*, 1991 WL 11230, at *2, for the proposition that "plaintiff could rely on the deposition designations of

---

[6] Fraser's characterization of the snippets of *Garza's* deposition transcript that Plaintiffs have designated as "self-serving," Dkt. 258 at 4, is mystifying. Notwithstanding his agreement with Plaintiffs, Garza's interests are not the same as Plaintiffs'. Fraser may dislike Garza's deposition testimony because certain portions are favorable to Plaintiffs' position, but that does not give Fraser an evidentiary basis for excluding it. Similarly, to the extent Plaintiffs' designated "snippets," *id.*, are incomplete pursuant to Federal Rule of Civil Procedure 32(a)(6) and/or Federal Rule of Evidence 106, Fraser can offer counter-designations (which he has in fact done, *see* Dkt. 253-6 at 5-16).

two of defendants' former, non-U.S. based consultants only if 'defendants lack the power to produce the witnesses at trial' because their testimony was 'critical to the jury's understanding of the issues' and the jury should be able to 'evaluate their demeanor and better assess their credibility' with live testimony"). Yet the actual issue in *Maran* was whether the defendant could call witnesses live in its own case while simultaneously refusing to produce those same witnesses live during the plaintiff's case, a gambit that the court prohibited:

> Here, although the testimony of these two witnesses is critical to the jury's understanding of the issues, SGS wishes to hold back their live testimony, from which the jury will be able to evaluate their demeanor and better assess their credibility, until its own case. . . . To the extent that the defendants lack the power to produce the witnesses at trial, Maran will have to rely on their deposition testimony. To the extent defendants are able to produce them as trial witnesses, however, defendants should not be allowed to withhold from the jury testimony from such critical witnesses — the two men who managed the entirety of SGS's work on behalf of Maran — until the defense case.

*Maran*, 1991 WL 11230, at *2. The issue in *Maran* was fairness; nowhere does the court *require* any party produce an unavailable witness in lieu of using that witness's deposition testimony.[7]

Fraser also makes the extraordinary argument that *Plaintiffs* should be required to call Garza live because they made hearsay and foundation objections to many of *Fraser*'s trial exhibits that involve Garza. Dkt. 258 at 4 n.2. Plaintiffs are under no obligation to alter their trial presentation for the express purpose of helping Fraser mount his defense. Moreover, Fraser had the opportunity to lay a foundation for the Garza-related exhibits he plans to use at trial at Garza's deposition, and it is unclear to Plaintiffs why calling Garza live instead of by deposition would cause hearsay exhibits to become admissible.

---

[7] *See also Napier v. Bossard*, 102 F.2d 467, 469 (2d Cir. 1939) (interpreting section 304 of the N.Y. Civil Practice Act concerning the use of depositions under state procedural rules); Dkt. 258 at 3 (citing this inapposite 82-year old case to argue that a deposition—which would not have been videotaped at that time—"has always been, and still is, treated as a substitute, a second-best").

Finally, Fraser argues that "the policy reasons underlying the 100-mile rule . . . simply do not apply here," but cites no authority elevating policy reasons over the plain language of Rule 32. Dkt. 258 at 4-5. Fraser also conflates Rule 32(a)(4)(B) with another 100-mile rule found in Rule 45. *Id.*; *see also* Fed. R. Civ. P. 45(c) (limiting a court's subpoena power to require attendance at a trial, hearing, or deposition to, *inter alia*, appearances "within 100 miles of where the person resides, is employed, or regularly transacts business in person"). The so-called policy reasons that Fraser plucks from *In re Edelman*, 295 F.3d 171 (2d Cir. 2002)—*i.e.*, saving a non-party from the various burdens of discovery—relate to Rule 45, not Rule 32, and were considered by the Second Circuit in *Edelman* to determine the scope of 28 U.S.C. § 1782 when issuing orders for discovery to be used in foreign litigation. *See id.* at 171, 178-81; *see also* Dkt. 258 at 4-5 (citing case). Even if these discovery-related considerations were related to Rule 32(a)(4)(B), Fraser offers no basis for applying the policy reasons behind that rule instead of the rule itself. Rule 32 permits Plaintiffs to use Garza's deposition for any purpose; whether that result is consistent with the policy behind Rule 32 is purely academic.

In fact, to the extent policy reasons are relevant, a straightforward geographic test such as the 100-mile rule allows parties to formulate and plan their trial presentation with predictability and reliability instead of forcing them to wait on individualized determinations as to witness "availability" to be decided on the eve of trial.[8] *See In re Jacoby*, 2007 WL 559801, at *8 (allowing defendants to utilize depositions of unavailable witnesses as "[t]he law regarding

---

[8] Plaintiffs disclosed Garza as a witness by deposition on August 6, 2021, three weeks before the original deadline for filing motions *in limine*. In that time, Fraser never sought to meet and confer with Plaintiffs' counsel regarding Garza's availability or indicate that he did not view Garza as an unavailable witness. Instead, Fraser offered individual evidentiary objections and counter-designations to the specific testimony designated by Plaintiffs, and only communicated his objection to Plaintiffs' use of Garza's deposition testimony on the evening the Joint Trial Memorandum was due.

admission of depositions under Rule 32(a)(3)(B) is clear and unambiguous and was so at the time Plaintiffs took the depositions in Texas and Oklahoma," and thus, "Plaintiffs have not been surprised in this regard"); *Mazloum*, 248 F.R.D. at 726 ("There is no ambiguity in Rule 32 on this point. The pertinent facts here bring this case squarely within the ambit of Rule 32."); *cf. Delgado v. Pawtucket Police Dep't*, 668 F.3d 42, 49 (1st Cir. 2012) (noting that Rule 32(a)(4)(B) does not require the proponent to additionally show that the witness is unavailable *because of* distance from the court). But, as Garza is undisputedly located more than 100 miles from the Court, and Fraser cites no authority elevating policy reasons over the plain language of Rule 32, there is no need for the Court to weigh these considerations.

In sum, Fraser's Motion *in Limine* No. 1 to preclude Plaintiffs from using Garza's deposition testimony at trial lacks any basis in the law and should be denied. Fraser's secondary request, in the event of such denial, that the Court give a "missing witness" instruction to the jury is similarly baseless. *See* Dkt. 258 at 5 n.3.

First, Garza will not be "missing" from trial if Plaintiffs call him by deposition, as they intend to do. *See, e.g.*, *Ronnie Van Zant, Inc. v. Pyle*, 270 F. Supp. 3d 656, 671 (S.D.N.Y. 2017) (holding that "[a] missing witness charge is not merited" where the witness's deposition, in which the party seeking the charge participated, "was admitted into evidence" at trial), *rev'd in part, vacated in part on other grounds sub nom. Ronnie Van Zant, Inc. v. Cleopatra Recs., Inc*, 906 F.3d 253 (2d Cir. 2018); *see also Latin Am. Music Co. v. Am. Soc. of Composers Authors & Publishers*, 593 F.3d 95, 102 (1st Cir. 2010) (affirming district court's refusal to give missing witness instruction as the witness "testified in a deposition in which he was questioned by [counsel for the party seeking the instruction]," and the "deposition was videotaped and shown to the jury"); *Williams v. Arctic Cat, Inc.*, 2014 WL 1028476, at *11 (N.D.N.Y. Mar. 13, 2014)

9

(rejecting request for missing witness instruction with respect to witness "not subject to subpoena for this trial," as "his testimony will be available at trial" by "recorded deposition").

Under these circumstances, a missing witness instruction—which informs the jury that it may infer that a witness's testimony "would have been unfavorable to the party" who had control of the witness and did not call them, *see United States v. Caccia*, 122 F.3d 136, 138 (2d Cir. 1997)—makes no sense at all. As the jury will have heard Garza's testimony by deposition, an instruction as to what Garza's testimony "would have been" would be confusing as well as unwarranted.

Fraser also fails to show that Garza is "peculiarly" within Plaintiffs' control, which is also required before giving a missing witness instruction. *See Caccia*, 122 F.3d at 138-39; *see also id.* at 139 (suggesting that no instruction is appropriate if the witness is equally available to both sides). Presumably, Fraser is relying on Plaintiffs' agreement with Garza. *See* Dkt. 258 at 5 n.3 (asserting baldly and without explanation that Garza is within Plaintiffs' control, not Fraser's). But the existence of a cooperation agreement with a co-defendant is generally insufficient to demonstrate sufficient control in criminal trials to justify a missing witness instruction, and the same reasoning should apply here. *See, e.g.*, *United States v. Adigun*, 998 F. Supp. 2d 356, 366 (M.D. Pa. 2014) (citing cases affirming "a trial court's refusal to provide a missing witness instruction when the government failed to call a co-defendant who had pleaded guilty pursuant to a plea agreement requiring his cooperation"), *aff'd*, 609 F. App'x 718 (3d Cir. 2015). Plaintiffs' remedies if Garza materially breaches the agreement relate to Plaintiffs' claims against *Garza*, not Plaintiffs' claims against *Fraser*. *See supra* note 4 (noting that Plaintiffs could seek to reinstate their claims against Garza in the event of material breach but that still would not compel Garza to testify in Fraser's trial); *see also Adigun*, 998 F. Supp. 2d at 367 (explaining

that if the co-defendant refused to testify, the government's "remedies for such a breach would be limited to other remedies, such as a request to be relieved of its obligations under the plea agreement," as it still "could not compel . . . testimony pursuant to the plea agreement").

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Fraser's Motion *in Limine* No. 1 to preclude Plaintiffs from introducing Garza's deposition testimony and also deny Fraser's alternate request for a missing witness instruction.

## II.   FRASER'S MOTION *IN LIMINE* NO. 2 CONCERNING HARDWARE- AND CLOUD-HOSTED MINING

In his Motion *in Limine* No. 2, Fraser seeks "to preclude Plaintiffs from arguing at trial that the Companies or Fraser are liable to Plaintiffs in connection with either of those two products." Dkt. 258 at 6. Plaintiffs do not intend to ask the jury to find Fraser liable to the Class or the named Plaintiffs for securities fraud or common law fraud with respect to the sale of hardware- and cloud-hosted mining; nor do Plaintiffs seek to hold Fraser liable to the Class or the named Plaintiffs for the sale of hardware-and cloud-hosted mining as unregistered securities.[9]

Plaintiffs' position should have been apparent in the materials exchanged with Fraser's counsel in connection with the Joint Trial Memorandum, *see, e.g.*, Dkt. 253-18 (Plaintiffs' Proposed Verdict Form) (no questions for the jury related to hardware- and cloud-hosted mining), as Fraser appears to recognize in his motion, *see* Dkt. 258 at 5-6 (arguing that Plaintiffs "concede" in the Joint Trial Memorandum and its various exhibits that hardware- and cloud-hosted mining). Had Fraser raised the issue, Plaintiffs would have been open to an agreement or stipulation to this effect. As Fraser's Motion *in Limine* No. 2 does not concern any live dispute

---

[9] Plaintiffs do not understand Fraser's Motion *in Limine* No. 2 to have any effect on the class definition, which includes persons and entities that converted, upgraded, or exchanged other products (including hardware- and cloud-hosting mining products) for the products at issue. In other words, Plaintiffs are not precluded from mentioning at trial that some GAW Miners and ZenMiner customers converted their hardware- and cloud-hosted mining products to Hashlets, or from arguing that Fraser is liable to these class members with respect to those Hashlets.

between the parties, it should be denied as moot. *See, e.g.*, *Kuhne v. Reynolds*, 2019 WL 959678, at *2 (D. Conn. Feb. 27, 2019) (denying motion *in Limine* as moot in light of opposing party's representation that it did not intend to introduce any of the evidence sought to be excluded).

## III.   FRASER'S MOTION *IN LIMINE* NO. 3 CONCERNING ZENMINER

Fraser's Motion *in Limine* No. 3 seeks to exclude evidence related to (1) a May 23, 2014 article in *Cryptocoinnews.com* that falsely promoted ZenMiner and GAW Miners as separate entities, and (2) an August 13, 2014 press release by GAW Miners announcing its "acquisition" of ZenMiner. *See* Dkt. 258 at 7-8. He argues that these statements and related evidence are irrelevant, but even if they were not irrelevant, they should still be excluded under Federal Rule of Evidence 404(b) and Federal Rule of Evidence 403. None of these arguments is persuasive.

As an initial matter, there is a decided mismatch between the relief Fraser seeks with Motion *in Limine* No. 3 and what is argued in Fraser's memorandum of law. Although Fraser's Motion *in Limine* No. 3 nominally seeks "to preclude Plaintiffs from arguing Fraser's liability based on GAW Miner's [sic] alleged partnership with, and acquisition of, ZenMiner," Dkt. 258 at 7 (capitalization omitted), Fraser's basis for seeking such relief depends on two specific statements discussed above, and many of Fraser's arguments are specific to these statements, *see, e.g.*, Dkt. 258 at 9, 13-14 (arguing that the May 23, 2014 article is irrelevant because it predates the start of the class period); *id.* at 12 (citing deposition testimony from Fraser concerning his specific reactions to reading the article and press release). And yet, Fraser seeks to sweep practically *all* evidence related to ZenMiner into his motion. Notably, Fraser defines "May 23 Statements" to mean "the May 23, 2014 interview, article and ***any other statements*** regarding the partnership between GAW Miners and ZenMiner," and "August 13 Statements" as "the August 13, 2014 press release and ***any other statements*** regarding GAW Miners' acquisition of ZenMiner." Dkt. 258 at 8 (emphasis added). Fraser also seeks to exclude "any evidence related

to" the May 23 Statements and August 13 Statements, not just the statements themselves. *E.g.*, Dkt. 258 at 10. For convenience and clarity, Plaintiffs will use Fraser's terminology, but Plaintiffs note that "May 23 Statements" and "August 13 Statements" do not necessarily correspond to statements made on May 23, 2014 and August 13, 2014, and that Fraser's motion reaches beyond the specific statements in these two categories to include "all" related evidence.

### A.    Fraser's Requested Relief as to "Actionable" Misstatements Is Too Broad

The first request contained in Fraser's Motion *in Limine* No. 3 asks the Court to "preclude Plaintiffs from arguing and presenting any evidence to the jury that the May 23 and August 13 Statements are actionable misstatements as to which the Companies or Fraser are liable." Dkt. 258 at 9. Plaintiffs do not intend to **argue** that the May 23, 2014 article in *Cryptocoinnews.com* that falsely represented GAW Miners and ZenMiner as separate entities is an "actionable" misstatement underlying Plaintiffs' securities fraud claims. Similarly, Plaintiffs do not intend to **argue** that the August 13, 2014 press release announcing the "acquisition" of ZenMiner by GAW Miners is itself an "actionable" misstatement under the securities laws. As such, that portion of Fraser's first request should be denied as moot. *See Kuhne*, 2019 WL 959678, at *2.

The remainder of this first request, however, should be denied outright. The article and press release are **relevant** to Plaintiffs' claims against Fraser, *see infra* section III.B, and to the extent this first request within Fraser's Motion *in Limine* No. 3 seeks to preclude Plaintiffs from presenting "any evidence" related to these events, it is overbroad. It appears, for all practical purposes, that Fraser's request that the Court "preclude Plaintiffs from . . . presenting any evidence to the jury that the May 23 and August 13 Statements are actionable misstatements," Dkt. 258 at 9, is substantially the same or would have the same effect as a request to preclude Plaintiffs from presenting any evidence at all related to those misstatements. For instance, if the

Court granted Fraser's request and Plaintiffs then sought to introduce the August 13, 2014 press release at trial (*e.g.*, to provide context for GAW Miners' activities in August 2014 as it began to sell Hashlets), Fraser might object that "presenting" this exhibit to the jury would violate an order granting Motion *in Limine* No. 3, arguing that the press release would constitute "evidence . . . that the . . . August 13 Statements are actionable misstatements" even if Plaintiffs did not make any argument to that effect.

In addition, Fraser's arguments that the May 23 Statements and August 13 Statements are not "actionable"—*i.e.*, his arguments that these are not specific material misstatements for which the Companies could be liable for a primary violation of the securities laws, *see* Dkt. 258 at 9-10—do not show that these statements would not be relevant to Plaintiffs' secondary liability claims against Fraser. For instance, Fraser's involvement in or communications concerning the May 23, 2014 article and August 13, 2014 is at least probative of whether Fraser was a "control person" of GAW Miners and ZenMiner under state and federal securities laws. *See infra* section III.B. Plaintiffs' agreement not to argue the May 23, 2014 article and August 13, 2014 press release are actionable misstatements, as described above, should provide Fraser with sufficient protection from liability for "actionable" misstatements without overbroadening the exclusion to include "any evidence" related to these statements.

Fraser's first request is also overbroad for another reason. His expansive definitions of "May 23 Statements" and "August 13 Statements," *see* Dkt. 258 at 8, mean that he seeks to preclude Plaintiffs from arguing that "any other statements regarding the partnership between GAW Miners and ZenMiner" and "any other statements regarding GAW Miners' acquisition of ZenMiner" are actionable misstatements, regardless of when they were made or in what context they reference the companies' partnership or the acquisition of ZenMiner. As Fraser has not

indicated what "other statements" fall into these two categories, the Court should deny his motion as to those "other statements." *See, e.g.*, *Wasilewski v. Abel Womack, Inc*, 2016 WL 183471, at *2 (D. Conn. Jan. 14, 2016) (denying motion in limine seeking to exclude "broad categories" of evidence, as the "motion does not demonstrate with certainty" that the other party will actually use those categories, and granting the motion "would generate too generalized a ruling that would be difficult to interpret and even harder to enforce practically at trial").

Fraser's expansive definitions of "May 23 Statements" and "August 13 Statements" likewise create confusion and uncertainty as to the scope of Fraser's request that Plaintiffs be precluded from "presenting . . . any evidence to the jury that the May 23 and August 13 Statements are actionable misstatements." Dkt. 258 at 9. Without knowing what "other statements" are included in Fraser's definition of May 23 Statements and August 13 Statements, and on top of that, without knowing what evidence related to those unknown "other statements" would be excluded by Fraser's request, this portion of Fraser's motion should be denied.

The general lack of clarity in this first request in Fraser's Motion *in Limine* No. 3 is exacerbated by Fraser's arguments. For example, Fraser conflates statements made on May 23, 2014 with "May 23 Statements" when he contends that "the May 23 Statements predate the class period by more than two months." Dkt. 258 at 9. Without knowing the dates of all other statements "regarding the partnership between GAW Miners and ZenMiner," it remains unclear which statements predate the class period and which do not. Likewise, although Fraser asserts that the May 23 Statements and August 13 Statements do not relate to Hashlets, Hashpoints, Hashstakers, and Paycoin, the "other statements" contained in Fraser's definitions of these terms remain unidentified, and as such, Fraser has not and cannot demonstrate that *none* of these unidentified statements relate to the four products at issue. Dkt. 258 at 9-10. Fraser's motion

should therefore be denied with respect to his request that the Court exclude "any evidence" related to any "other statements" that fall within Fraser's definition of May 23 Statements and August 13 Statements.

**B.   Fraser's Request to Exclude "Any Evidence" Related to the May 23 Statements and August 13 Statements Lacks Merit**

The second request contained in Fraser's Motion *in Limine* No. 3 asks the Court to exclude "any evidence" related to the May 23 Statements and August 13 Statements because Fraser contends that this evidence (1) is not relevant, *see* Dkt. 258 at 10-14; (2) should be excluded under Federal Rule of Evidence 403, even if relevant, *see id.* at 16-18; and (3) constitutes improper character evidence under Federal Rule of Evidence 404, *see id.* at 14-16. Fraser offers a jumble of theories in support of his position, none of which are persuasive. Plaintiffs address each in turn.

1.   Evidence Concerning the Relationship Between GAW Miners and ZenMiner Is Relevant

Fraser alleges that the May 23 Statements and August 13 Statements are not probative of any disputed issue, and provides four reasons for their lack of relevance. Dkt. 258 at 10-14. But Fraser's arguments focus on whether this evidence is relevant to finding a *primary* violation of the securities laws, while largely failing to address how this evidence relates to finding a *secondary* violation by Fraser, particularly as a "control person" under state and federal securities laws.

First, Fraser claims that "the May 23 Statements and August 13 Statements are irrelevant because . . . they do not relate to the products at issue," noting that they "contain no reference to these products" and there is no "evidence that a class member relied on these statements to purchase those products." Dkt. 258 at 10. Essentially, Fraser's position is that the statements are not relevant to securities fraud because they cannot be misstatements about the products at issue,

as they do not reference those products, and even if they were, they cannot be material as there is no evidence of reliance.[10] Thus, both of Fraser's stated reasons for why these statements are irrelevant discuss only their relevance to finding a primary violation.

Although Fraser's liability to the Class arises from primary violations related to the Companies' sale of Hashlets, Hashpoints, Hashstakers, and Paycoin, evidence probative of the primary violation would not necessarily be coextensive with evidence that could be probative of Fraser's secondary liability. For instance, in its prior order denying Fraser's motion to dismiss, this Court addressed evidence that could support finding Fraser to be a control person under the Exchange Act, highlighting factual allegations that "Fraser was involved in directing both the Companies' [*i.e.*, both GAW Miners and ZenMiner] major strategic decisions and their daily operations" and that he "came up with the idea of GAW Miners acquiring ZenMiner," among many others. Dkt. 72 at 13. The Court also noted that evidence of the "close personal relationship" between Fraser and Garza could be probative of control. *Id.* at 14. As the Court already recognized, this "functional" inquiry for control, *id.* at 12 (quoting *In re Complete Management Inc. Sec. Litig.*, 153 F. Supp. 2d 314, 331 (S.D.N.Y. 2001)), should not be limited to only evidence specific to Hashlets, Hashpoints, Hashstakers, and Paycoin.[11]

---

[10] As discussed previously, it is not clear what evidence is covered by the "any other statements" language in Fraser's definitions of May 23 Statements and August 13 Statements. Plaintiffs reserve the right to make arguments concerning those currently unidentified statements if they are later identified.

[11] Fraser notes that Plaintiffs objected to "many of Fraser's trial exhibits on relevance grounds because they 'do[] not appear to relate to Hashlets, Hashpoints, Paycoin and Hashstakers." Dkt. 258 at 11 n.5. Fraser's criticism is not well founded. Plaintiffs are entitled to object to exhibits that do not appear to be relevant and require Fraser to establish their relevance, just as Fraser has done with Plaintiffs' exhibits through this motion, and exhibits that do not relate to Hashlets *et al.* do not necessarily all rise and fall together. Plaintiffs also note that Fraser responded that the challenged exhibits are "probative of issues including control," *e.g.*, Dkt. 253-4 at 3 (DX-509), in contrast to his motion, which is virtually silent on that issue.

As an illustrative example, one exhibit that Fraser seeks to exclude is PX-23, an email exchange between Fraser, Garza, and Fraser's son Thomas Fraser on May 23, 2014 concerning the article just published at *Cryptocoinnews.com*. *See* Dkt. 258-5. Garza initially emails a link to the article to Fraser and his son, and Fraser responds less than 30 minutes later with "Wow. Awesome. Driving and can't read it all." *Id.* at 1. At his deposition, however, Fraser testified that his reaction to the article was "[u]nhappy" and that he "requested that [Garza] fix it," including by asking the publication for a retraction, if necessary to correct the false portrayal of GAW Miners and ZenMiner as separate entities. Rennie Decl., Ex. B (Fraser Dep.) at 108:5-110:14. PX-23 and corresponding testimony from Fraser are thus probative of Fraser and Garza's close, informal relationship, as well as Fraser's level of engagement with and direction of Garza's activities. In addition, evidence showing the involvement of Fraser's son with Garza and the Companies could be probative of the functional authority that Fraser had over them.

Moreover, evidence concerning the relationship between GAW Miners and ZenMiner and GAW Miners's "acquisition" of ZenMiner provides relevant background and context for understanding the primary violations alleged by Plaintiffs. The May 23 Statements and August 13 Statements concern the relationship between the Companies that sold the products at issue, and that relationship, even before the launch of the products at issue, is relevant to explaining the structure of the fraudulent scheme. Indeed, one overarching (and incorrect) assumption underlying many of the arguments in Fraser's Motion *in Limine* No. 3 is that, because the Class seeks to hold Fraser liable for the sale of Hashlets and subsequent products, there must exist a hard boundary between evidence of GAW Miners's and ZenMiner's business prior to the introduction of Hashlets and evidence from after the Companies began to sell that product. This view of relevance is unduly narrow.

For instance, as explained in the First Amended Complaint, GAW Miners and ZenMiner shifted their busines model from hardware- and cloud-hosted mining to Hashlets in August 2014 when they began to run out of physical mining equipment. *See* Dkt. 57 ¶¶ 94-97; *see also* Dkt. 141 at 6 (citing Dkt. 57 ¶¶ 108, 112, 117, 122, 124-25). GAW Miners's August 13, 2014 press release touting the "acquisition" of ZenMiner and describing it as "the industry's top-performing mining service" might well have laid groundwork for a successful pivot in product offerings; a press release publicly celebrating a purported $8 million acquisition might also be probative of how the Companies were viewed in the market (*e.g.*, as successful, growing enterprises, notwithstanding their change in focus) and their credibility with customers. In a case alleging fraud, a defendant's motivation to commit that fraud—in this case, to sell Hashlets because, unlike prior offerings, they were not tied to physical mining equipment that could be requested by customers—is undoubtedly relevant. *See, e.g.*, *United States v. Ferguson*, 246 F.R.D. 107, 122 (D. Conn. 2007) (denying motion to exclude transcript of conversation predating alleged fraud as it "provides an explanation for AIG's motive in seeking to boost loss reserves, including through the LPT [*i.e.*, the allegedly fraudulent transaction]" and characterizing the exhibit as "highly probative both as background and as evidence of AIG's possible motives to commit fraud"). Moreover, as the Companies were motivated to convince existing customers to trade in their hosted mining purchases for Hashlets, *see* Dkt. 57 ¶ 99, evidence related to those existing services could still be relevant to the Companies' strategy for the products at issue. In sum, Plaintiffs are entitled to provide the jury with background information on how the products at issue came to exist so that the jury can better understand the fraudulent scheme at issue.

Fraser's sole authority for excluding these statements comes from a suit for patent infringement, *see* Dkt. 258 at 11 (citing *Am. Tech. Ceramics Corp. v. Presidio Components, Inc.*, 2019 U.S. Dist. LEXIS 91965, at *12-13 (E.D.N.Y. May 31, 2019)), but in patent cases, the key liability issue is whether the accused products practice the claims asserted in the *patents-in-suit*. It is not unusual for parties to agree not to reference proceedings involving *different* patents, as the parties did in the case cited by Fraser. *See Am. Tech. Ceramics*, 2019 U.S. Dist. LEXIS 91965, at *12 (noting that "Defendant does not oppose this motion" to preclude any reference to "proceedings concerning patents that are not at issue in this case"). But this authority does not stand for a blanket rule to exclude all evidence that does not specifically reference the products at issue in a securities case, and regardless, Plaintiffs have explained why the May 23 Statements and August 13 Statements are relevant here.

Second, Fraser argues that "the alleged falsity of the May 23 and August 13 Statements is not probative of whether Garza's statements concerning the four products at issue were false or materially misleading." Dkt. 258 at 11-12. This appears to be closely related to Fraser's prior argument that this evidence is not relevant because it does not concern Hashlets, Hashpoints, Paycoin, or Hashstakers. As Plaintiffs have already explained, the May 23 Statements and August 13 Statements are probative of numerous disputed issues, including Fraser's control.

Third, Fraser asserts that his "after-the-fact knowledge of the alleged falsity of the May 23 and August 13 Statements is not probative of his purported culpability," Dkt. 258 at 12, and specifically, that it "is in no way probative of Fraser's alleged knowledge of the misstatements regarding the operations and payouts of the four products at issue," *id.* at 13. As an initial matter, Fraser does not explain why Plaintiffs are required to prove that he had actual knowledge that the misstatements underlying the alleged primary violations were false. Although

scienter is an element of the primary violation of securities fraud, neither state nor federal securities law require actual knowledge on the part of the primary violator to establish primary liability, much less on the part of the *control person* to establish *secondary* liability.[12] Regardless, the May 23 Statements and August 13 Statements are probative of numerous disputed issues, including Fraser's control, even if the Court agrees with Fraser that they are not probative of Fraser's knowledge of subsequent misstatements.

That said, Fraser's arguments for his purported lack of knowledge are unconvincing. Essentially, Fraser insists that he could not have known that Garza would make false statements about Hashlets *et al.*, despite his knowledge that Garza had previously made false statements about the relationship between GAW Miners and ZenMiner. In support of this theory, Fraser describes, in detail, his basis for understanding that the May 23 Statements and August 13 Statements were false and contrasts it with the knowledge he would have needed to conclude that the Companies' subsequent statements about Hashlets et al. were false. *See* Dkt. 258 at 12-13. But with respect to Hashlets, Plaintiffs allege that Fraser knew there was a "mismatch" between the Companies' mining capacity and sales of hosted mining services, Dkt. 57 ¶ 91, and he knew the mismatch remained once the Companies started selling Hashlets, *id.* ¶ 126. It is not "too big

---

[12] "Aiding and abetting" liability for securities fraud under the Connecticut Uniform Securities Act does require the plaintiff to meet a burden of production that "the aider and abettor knew or should have known of the untruth or omission," but once that burden is met, "the aider and abettor bears the ultimate burden of persuasion" that "he did not know, and in the exercise of reasonable care could not have known, of the truth or omission." *Connecticut Nat. Bank v. Giacomi*, 242 Conn. 17, 47 n.34 (1997). Under this framework, as long as Plaintiffs have identified some evidence that Fraser knew or should have known of the untruth or omission, then the ultimate burden shifts to *Fraser* to prove his lack of knowledge, and his inability to know in the exercise of reasonable care, to the jury. *Id.*; *see also Wells Fargo Advantage Nat'l Tax Free Fund v. Helicon Assocs., Inc.*, 2010 WL 11541839, at *10 (E.D. Mich. Mar. 15, 2010) ("The Connecticut courts have found that intent to defraud or recklessness is not required to state a claim under section 36b-4, and that an aiding and abetting claim may be premised upon mere negligence.").

of an inferential leap," Dkt. 258 at 13,[13] to conclude that if Fraser had this understanding of Hashlets *and* was aware that Garza had already made two false statements to the public, he might well have known of Garza's subsequent misstatements about Hashlets. *Cf. In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 72 (2d Cir. 2001) (holding that pre-class period information was relevant to establish that "defendants had a basis for knowing" that the class period statements were false and misleading).

Fourth, Fraser claims that "the May 23 Statements and evidence related to them lack probative value for the additional reason that these statements predate the start of the class period." Dkt. 258 at 14. Even assuming that all statements covered by Fraser's broad definition of May 23 Statements and all "evidence related to them" predate the class period, courts regularly consider such evidence in securities cases. *See In re Scholastic*, 252 F.3d at 72 ("Any information that sheds light on whether class period statements were false or materially misleading is relevant."). Plaintiffs have already explained why the May 23 Statements are probative of Fraser's knowledge during the class period, *see* Dkt. 258 at 14 n.6 (citing *Glover v. DeLuca*, 2006 WL 2850448, at *23 n.40 (W.D. Pa. Sept. 29, 2006), which noted that "Plaintiff

---

[13] Fraser's reliance on *United v. Glenn*, 312 F.3d 58 (2d Cir. 2002), is misplaced. The "inferential leap" rejected by the Second Circuit in *Glenn* related to whether the government had proved, beyond a reasonable doubt, that the defendant had committed a murder. *Id.* at 70. In that case, there was "no direct or physical evidence establishing [defendant] as the shooter," no eyewitness testimony, no DNA or fingerprint evidence, and no murder weapon. *Id.* at 61. Indeed, the evidence showed that "several other drug dealers had equal or substantially more motive to harm [the victim], were armed, had access to [the victim], and frequented the area where [the victim] was killed." *Id.* at 70. On that evidence, the court refused to infer that the defendant was guilty of murder beyond a reasonable doubt, noting that circumstantial evidence can be more or less probative depending on the size of the inferential leap. *Id.* However, the court did not then decide that none of the government's evidence had probative value and exclude it from evidence wholesale, which is what Fraser seeks here.

has made no allegations which tie those [post class period] events to Defendants' knowledge at an earlier time"), and also why they are otherwise relevant, including to show Fraser's control.[14]

> ### 2. Evidence Concerning the Relationship Between GAW Miners and ZenMiner Is Not Inadmissible Character Evidence

Fraser contends that the "evidence related to the May 23 and August 13 Statements [should be excluded] under FRE 404(b)" because "evidence of Fraser's actions related to the May 23 and August 13 Statements, including his 'reaction' to those statements or what Fraser did (or did not do) once he learned of the statements," cannot be used "to argue that Fraser acted improperly in connection with the later alleged misrepresentations in this case." Dkt. 258 at 14-15. There are a number of problems with this argument, starting with the lack of any logical connection between the evidence that Fraser seeks to exclude and the evidentiary rule he relies on. Although Federal Rule of Evidence 404(b) prohibits using evidence of "any other crime, wrong, or act . . . to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," Fed. R. Evid. 404(b)(1), Fraser fails to explain why the actual May 23 Statements and August 13 Statements must be excluded, if his concern under Rule 404(b) is only that his "actions related to" those statements will be used to show that he "acted improperly" with respect to other statements. The statements themselves are not evidence of *Fraser's* misdeeds and would not be used to prove *Fraser's* character.

Fraser also fails to explain how his "actions related to" the May 23 and August 13 Statements relate to "character" as described in Rule 404(b). Typically, Rule 404(b) operates to exclude evidence of past crimes if used to suggest that the defendant has a propensity for criminal behavior and is thus more likely to have committed the crime they are charged with.

---

[14] As for Fraser's complaint that Plaintiffs objected to certain of Fraser's trial exhibits because they predate the class period, Dkt. 258 at 14, the objection at issue was discussed previously with respect to Hashlets *et al. See supra* note 11.

*See, e.g.*, *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991) (affirming exclusion of prior complaints against police officer to show that officer had a "sadistic, malicious, aggravated state of mind"—*i.e.*, a violent character—and thus committed the assault in question). In contrast, it is not clear what "character" would be established by Fraser's "Wow. Awesome. Driving and can't read it all" reaction to the May 23, 2014 article, *see* Dkt. 258-5, and Fraser's claim that Plaintiffs would use it to show that he "acted improperly" with respect to other statements—without any indication of what these "improper" acts might be—is too vague to credit.

Furthermore, the May 23 and August 13 Statements are relevant for showing Fraser's control, as explained above. With respect to the August 13, 2014 press release, Fraser testified at his deposition that he was aware of it, he understood it to contain false statements, and he discussed it with Garza, including instructing him to "fix this and make it right," which Garza did not do. Rennie Decl., Ex. B (Fraser Dep.) at 110:15-111:7. As with Fraser's testimony about the May 23, 2014 article, the press release and corresponding testimony from Fraser are probative of Fraser and Garza's relationship, as well as Fraser's level of engagement with and direction of Garza's activities.[15] This is not impermissible character evidence, as it is not used to show Fraser's *character* for control, but rather that he *did* control.

Moreover, even if Fraser's "actions related to" the May 23 and August 13 Statements count as "any other crime, wrong, or act" under Rule 404(b)(1), they might still "be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Under the Second Circuit's "'inclusionary approach,' all 'other act' evidence that does not serve the sole purpose of

---

[15] Fraser may argue that his testimony that Garza did not actually fix the August 13, 2014 press release, *see* Rennie Decl., Ex. B (Fraser Dep.) at 111:8-9, shows that Fraser did *not* have control, but that argument simply reinforces Plaintiffs' point that the evidence is *probative* and should be considered by the jury.

showing the defendant's bad character and that is neither overly prejudicial under Rule 403 nor irrelevant under Rule 402" is admitted. *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011) (quoting *United States v. Pascarella*, 84 F.3d 61, 69 (2d Cir. 1996)). Fraser apparently assumes that Plaintiffs would use his "actions related to" the May 23 Statements to "show[] his state of mind with respect to Garza's subsequent representations" concerning the products at issue, Dkt. 258 at 15, but those statements, as well as the August 13 Statements (which Fraser does not address), could be useful for a variety of other purposes, including "to inform the jury of the background of the [fraudulent statements], to complete the story of the [fraud], and to help explain the relationship between [the parties]." *United States v. Dubogryzov*, 2007 WL 2746752, at *1 (D. Conn. Sept. 18, 2007). All of these purposes are permissible under Rule 404(b)(2), and the May 23 and August 13 Statements are not so prejudicial to Fraser as to be excluded from the jury's consideration. *See United States v. Pitre*, 960 F.2d 1112, 1119 (2d Cir. 1992).

### 3. Evidence Concerning the Relationship Between GAW Miners and ZenMiner Should Not Be Excluded Under FRE 403

Finally, Fraser invokes Federal Rule of Evidence 403 to argue that "evidence related to the May 23 and August 13 Statements" should be excluded as it poses the danger of unfair prejudice, confusion of the issues, or misleading the jury, and due to considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Dkt. 258 at 16. He first argues that the jury will use the misstatements in the May 23 and August 13 Statements to "draw unfair inferences against Fraser regarding misstatements that are in fact at issue." *Id.* at 17. It is not clear what these "unfair inferences" might be and Fraser fails to provide any examples. To the extent Fraser intends to contest the falsity of the statements about Hashlets, Hashpoints, Hashstakers, and Paycoin, and is concerned that the jury will somehow use the falsity of the May 23 and August 13 Statements about the relationship between GAW Miners and ZenMiner to

conclude that every statement made by Garza and the Companies was false, that concern can be alleviated with an appropriate limiting instruction.

Fraser next argues that the jury could be unfairly prejudiced by "his son's involvement with the May 23 interview and article" and "improperly and unfairly attribute" his son's actions to Fraser. Dkt. 258 at 17. Again, Fraser does not indicate what these improper and unfair attributions might be. The inconvenient truth is that Fraser's son became involved in the Companies as a result of the close relationship between Fraser and Garza, and this Court has already ruled that evidence of that relationship is relevant to control. *See* Dkt. 72 at 14-15; *see also Daigle*, 14 F.3d at 690 ("All evidence is meant to be prejudicial; elsewise, the proponent would be unlikely to offer it. It is a necessary corollary of this conventional wisdom that evidence cannot be kept from the jury merely because it hurts a party's chances."). The fact that Garza made room in the Companies for Fraser's son is probative of the closeness of the relationship and Fraser's level of influence. In any event, Fraser's argument concerning Thomas Fraser applies only to the May 23 Statements, and not the August 13 Statements.

Fraser also contends that evidence related to the May 23 and August 13 Statements "will confuse the jury and cause unnecessary delay." Dkt. 248 at 17. Plaintiffs have already explained why these statements are relevant; any "delay" caused by their introduction at trial would therefore not be "unnecessary." And Fraser again cites an inapposite patent infringement case, this time for the proposition that the jury will become "confused" by evidence related to issues not in dispute, which also pose "the danger of wasting time and needlessly presenting cumulative evidence." *Id.* (quoting *Olaf Soot Design, LLC v. Daktronics, Inc.*, 2018 WL 6424551, at *4 (S.D.N.Y. Dec. 6, 2018)). But the irrelevant evidence at issue in that patent case has little in common with the May 23 and August 13 Statements at issue here. In *Olaf Soot Design, LLC v.*

*Daktronics, Inc.*, the defendant withdrew its affirmative defense of invalidity after it lost on that issue in a parallel proceeding before the Patent & Trademark Office. 2018 WL 6424551, at *4. The plaintiff sought to introduce evidence of that proceeding to discredit certain defense witnesses and also reveal to the jury the defense's "strategic decision to assert, but later withdraw, invalidity as a defense," but the court found that the prejudicial, confusing, and wasteful effect of spending trial time on the defendant's litigation tactics justified excluding it from consideration. *Id.* In contrast, the May 23 and August 13 Statements remain relevant to disputed issues in this matter, as opposed to litigation strategy or other atmospheric points unrelated to the substance of Plaintiffs' claims.

Fraser's final argument under Rule 403 is that "[e]vidence related to the May 23 Statements in particular will lead to a mini-trial over statements that were not made by Fraser," but instead by his son, a nonparty. Dkt. 248 at 17-18. But there is no real dispute about Thomas Fraser's participation in the May 23, 2014 interview, and Fraser has admitted that he knew the statements about the relationship between GAW Miners and ZenMiner were false. Fraser does not explain why the May 23 Statements would result in a "mini-trial" or what issues would require a "mini-trial" to decide. *Park W. Radiology v. CareCore Nat. LLC*, 675 F. Supp. 2d 314 (S.D.N.Y. 2009), is no help to Fraser, as the defendant in that case was accused of antitrust violations and sought to introduce allegations of fraud by nonparties that were associated with the plaintiff. *See id.* at 325. Indeed, the *Park W. Radiology* court's exclusion of that evidence would appear to better support Plaintiffs' Motion *in Limine* to Exclude Internet Discussions, Dkt. 255, and Plaintiffs' Motion *in Limine* Regarding Class Representatives, Dkt. 260, which seek exclusion of evidence on tangential matters likely to result in unproductive mini-trials and which have little to do with the *defendant's* conduct at issue.

In sum, evidence related to the May 23 and August 13 Statements is relevant to numerous issues in the case, including Fraser's control, does not constitute character evidence, and is not unfairly prejudicial or otherwise violative of Rule 403. Fraser's Motion *in Limine* No. 3 should be denied.

## IV.   FRASER'S MOTION *IN LIMINE* NO. 4 CONCERNING THE HONOR PROGRAM

Fraser's Motion *in Limine* No. 4 nominally concerns the so-called "Honor Program" announced by GAW Miners in January 2015 to buy back Paycoin at the promised $20 price. Dkt. 258 at 18. Yet despite Fraser's assertion that "[c]ertain of Plaintiffs' proposed trial exhibits refer to the 'Honor Program,'" the only exhibit that Fraser identifies is PX-143. *Id.* Incredibly, Fraser does not mention in his motion that PX-143 is Fraser's Twitter account, and the only reference to the Honor Program is a single retweet: "PayBase Honors $20 Paycoin." Dkt. 258-12.

The probative value of Fraser's Twitter account is significant, as every single tweet concerns GAW Miners, Garza, or Paycoin. *See id.* Fraser does not explain what, if any, prejudicial effect would arise from admitting PX-143 despite its passing reference to the Honor Program. Indeed, the fact that Fraser continued tweeting about Paycoin as late as January 12, 2015 is relevant to numerous issues, such as control, regardless of the specific statements in his tweet. In any event, should the Court find Fraser's relevance concerns persuasive, redacting "PayBase Honors $20" from PX-143 should be sufficient to address those concerns, while still informing the jury of Fraser's continued involvement with GAW Miners and Paycoin in January 2015. *See, e.g.*, *Bey v. Hill*, 2017 WL 4403306, at *2 (D. Conn. Oct. 4, 2017) (permitting party to redact certain statements from records that are otherwise relevant and admissible).

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Fraser's

Motions *in Limine* in their entirety.

Dated: September 15, 2021

Respectfully submitted,

Mark P. Kindall (ct13797)
Robert A. Izard
Craig A. Raabe
IZARD, KINDALL & RAABE, LLP
29 S. Main St., Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
mkindall@ikrlaw.com
rizard@ikrlaw.com
craabe@ikrlaw.com

/s/ Geng Chen
Marc Seltzer
Kathryn Hoek
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
mseltzer@susmangodfrey.com
khoek@susmangodfrey.com

Seth Ard
Russell F. Rennie
Jacob Buchdahl
Geng Chen
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6022
Tel: (212) 336-8330
sard@susmangodfrey.com
rrennie@susmangodfrey.com
jbuchdahl@susmangodfrey.com
gchen@susmangodfrey.com

Edgar Sargent
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, WA 98101-3000
Tel: (202) 516-3880
esargent@susmangodfrey.com

*Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 15, 2021, I caused the foregoing document to be served via the Electronic Case Filing (ECF) system in the United States District Court for the District of Connecticut, on all parties registered for CM/ECF in the above-captioned matter.


Dated: September 15, 2021

*/s/ Geng Chen*
Geng Chen
