# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DENIS MARC AUDET *et al.*, | : | |
| | : | |
| Plaintiffs, | : | Civil Action No. |
| | : | 3:16-CV-00940-MPS |
| v. | : | |
| | : | Hon. Michael P. Shea |
| STUART A. FRASER, GAW MINERS, | : | |
| LLC, and ZENMINER, LLC, (d/b/a/ | : | September 15, 2021 |
| ZEN CLOUD), | : | |
| Defendants. | : | |

## DEFENDANT STUART A. FRASER'S OPPOSITION TO PLAINTIFFS' MOTION *IN LIMINE* REGARDING HIMSELF

Daniel H. Weiner (ct12180)
Marc A. Weinstein (*pro hac vice*)
Amina Hassan (*pro hac vice*)
Hannah L. Miller (*pro hac vice*)
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004-1482
Tel.: (212) 837-6000
Fax: (212) 422-4726
Email: daniel.weiner@hugheshubbard.com

David R. Schaefer (ct04334)
Sean M. Fisher (ct23087)
Rowena Moffett (ct414899)
Brenner, Saltzman & Wallman LLP
271 Whitney Avenue
New Haven, CT 06511
Tel.: (203) 772-2600
Fax: (203) 562-2098
Email: rmoffett@bswlaw.com

*Attorneys for Defendant Stuart A. Fraser*

# **TABLE OF CONTENTS**

**Page(s)**

Preliminary Statement ...................................................................................................................1

Argument .......................................................................................................................................1

I.    THE COURT SHOULD NOT PRECLUDE ARGUMENTS AND EVIDENCE REFERENCING FRASER'S PERSONAL EXPERIENCES RELATED TO THE SEPTEMBER 11, 2001 TERRORIST ATTACKS. ...........................................................1

II.   THE COURT SHOULD NOT PRECLUDE ARGUMENTS AND EVIDENCE SUGGESTING THAT A VERDICT FINDING FRASER LIABLE ON ONE OR MORE COUNTS WOULD CAUSE HARDSHIP, WHETHER FINANCIAL OR OTHERWISE, TO FRASER OR HIS FAMILY. ...............................6

III.  THE COURT SHOULD NOT PRECLUDE ARGUMENTS AND EVIDENCE THAT FRASER SUFFERED FINANCIAL LOSSES FROM HIS INVOLVEMENT IN GAW MINERS AND/OR ZENMINER. ................................10

      A.    The Court Should Deny Plaintiffs' Motion To Preclude Argument And Evidence That Fraser Suffered Losses From His Involvement With The Companies. ................................................................................................10

      B.    The Court Should Deny Plaintiffs' Alternative Motion to Limit The Argument And Evidence Fraser May Present To Show That He Suffered Losses From His Involvement With The Companies. ...................................13

Conclusion ...................................................................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Connecticut Fair Hous. Ctr v. CoreLogic Rental Prop. Sols., LLC*, No. 18-CV-705, 2021 WL 1186604 (D. Conn. Mar. 30, 2021) ................................................................. 5

*Corcoran v. CHG-Meridian U.S. Fin., Ltd.*, No. 5:11–cv–1462, 2014 WL 1976671 (N.D.N.Y. May 15, 2014) ......................................................................................... 14

*Davis v. City of Stamford*, No. 3:95 CV 2518 (JGM), 1998 WL 849369 (D. Conn. Nov. 16, 1998), *aff'd*, 216 F.3d 1071 (2d Cir. 2000) .................................................. 7

*Droplets, Inc. v. Overstock.com, Inc.*, No. 3:16-cv-00940-MPS, 2014 WL 11515642 (E.D. Tex. Dec. 10, 2014) .................................................................................. 10

*Int'l Bus. Machines Corp. v. BGC Partners, Inc.*, No. 10 CIV. 128 PAC, 2013 WL 1775437 (S.D.N.Y. Apr. 25, 2013) ................................................................................. 5

*Lynch v. Diamond State Trucking Inc.*, No. 10–1399, 2014 WL 12734712 (C.D. Ill. Feb. 28, 2014) .................................................................................................. 10

*Newmark Realty Capital, Inc. v. BGC Partners, Inc.*, No. 16-cv-01702-BLF (N.D. Cal. Dec. 7, 2018) ....................................................................................................... 6

*Queen v. W.I.C., Inc.*, No. 14-CV-519-DRH-SCW, 2017 WL 4223950 (S.D. Ill. Sept. 22, 2017) .................................................................................................................. 10

*Residential Fences Corp. v. Rhino Blades Inc.*, No. 14-CV-2552 (SIL), 2020 WL 5658777 (E.D.N.Y. Sept. 22, 2020) .................................................................... 7, 13-14

*Salazar v. A & J Const. of Montana, Inc.*, No. CV 11-16-BLG-CSO, 2012 WL 4092421 (D. Mont. Sept. 17, 2012) ......................................................................... 10

*Stern v. Shammas*, No. 12-CV-5210 (NGG) (RER), 2015 WL 4530473 (E.D.N.Y. July 27, 2015) .................................................................................................. 6

*Structural Polymer Grp., Ltd. v. Zoltek Corp.*, No. 4:05-CV-321 (CEJ), 2007 WL 1083758 (E.D. Mo. Apr. 11, 2007) .......................................................................... 10

*United States v. Djibo*, 2019 WL 3767045 (E.D.N.Y. Aug. 9, 2019) .......................................... 3

# TABLE OF AUTHORITIES

## (Continued)

**Page(s)**

*United States v. Gasperini*, 2017 WL 3140366, (E.D.N.Y. July 21, 2017), *aff''d*,
    729 F. App'x 112 (2d Cir. 2018) ...............................................................................5

*United States v. Naranjo*, 634 F.3d 1198 (11th Cir. 2011)....................................................... 11-12

*Wasilewski v. Abel Womack, Inc.*, No. 3:10-CV-1857 (VAB), 2016 WL 183471
    (D. Conn. Jan. 14, 2016) ........................................................................................7

*Wood v. Sempra Energy Trading Corp.*, No. 03-CV-986, 2005 WL 3465845 (D.
    Conn. Dec. 9, 2005), *aff'd*, 225 F. App'x 38 (2d Cir. 2007)...................................................13

*Zubulake v. UBS Warburg LLC,* 382 F. Supp. 2d 536 (S.D.N.Y. 2005) .......................................5

**Statutes and Rules**

Fed. R. Evid. 401 ................................................................................................................4

Fed. R. Evid. 403 ........................................................................................................5, 7, 9

Defendant Stuart A. Fraser ("Fraser") submits this memorandum of law in opposition to Plaintiffs' Motion *in Limine* Regarding Defendant Stuart Fraser (ECF 262, the "Motion"). For the reasons set forth below, the Court should deny Plaintiffs' Motion in its entirety.

## Preliminary Statement

The purpose of Plaintiffs' motion is clear: Plaintiffs want to paint the picture of a rich and callous defendant from Wall Street, who puppeteered a fraud that made millions off innocent investors, including by exploiting the memory of the September 11, 2001 attacks, while preventing Fraser from presenting arguments and evidence that paint him and his involvement with the alleged fraud in a much different light. Fraser is entitled to present these arguments and evidence because they show how unlikely it is that Fraser would have engaged in, or in any way sanctioned, the fraud Plaintiffs allege. Accordingly, the Court should deny Plaintiffs' motion.

## Argument

**I. THE COURT SHOULD NOT PRECLUDE ARGUMENTS AND EVIDENCE REFERENCING FRASER'S PERSONAL EXPERIENCES RELATED TO THE SEPTEMBER 11, 2001 TERRORIST ATTACKS.**

The Court should not preclude Fraser from presenting arguments and evidence relating to his personal experience with the September 11, 2001 attacks because, contrary to Plaintiffs' contention, that evidence is relevant to the claims and defenses in this case, and its probative value is not outweighed by any unfair prejudice.

First, Fraser's experience with the September 11 attacks is relevant because Plaintiffs squarely put September 11 at issue. Plaintiffs allege that, as part of the fraud

alleged in this case, former lead defendant Josh Garza ("Garza") and defendants GAW Miners LLC and ZenMiner LLC (the "Companies") fraudulently sold and profited from "Remember" (or "9/11") Hashlets and that Fraser "knew" or was "reckless or negligent" in not knowing of that fraud. Specifically, Plaintiffs allege the following:

> Between August and December 2014, GAW Miners created several types of Hashlets with different features. Garza approved the creation of these Hashlet varieties, and frequently announced their availability on GAW Miners' website and through posts on the company's message board.
>
> For example, on or about September 11, 2014, GAW Miners announced the creation of the limited edition "Remember" Hashlet with the logo of "9/11" to commemorate those who lost their lives in the terrorist attacks of September 11, 2001. Garza announced that GAW Miners would only sell 500 Remember Hashlets, and would donate all of the proceeds (approximately $10,000) to "the 9/11 memorial fund." He specified that "GAW will in no way be profiting from any sales related to the cause." After selling approximately 2,290 Remember Hashlets for a total of approximately $48,000, GAW Miners donated only $10,000 to a 9/11 related charity.
>
> **Garza and Fraser knew or were reckless or negligent in not knowing that GAW Miners actually profited from the sale of Remember Hashlets, contrary to Garza's representations. Fraser's role in the Remember Hashlets scheme is particularly egregious given Fraser's (and his firm Cantor Fitzgerald's) prominent role in the 9/11 memorial fund**.

(First Amended Complaint ("FAC," ECF 57) ¶¶ 113-15 (emphasis supplied).) In addition, Plaintiffs seek damages specifically with respect to "9/11" Hashlets. (*See* ECF 1-1 at 15-18 (Plaintiffs' Certifications showing class representative Michael Pfeiffer's purchases of "Hashlet 9/11"); DX665 (spreadsheet compiled by class representative Dean Allen Shinners including a note from Pfeiffer that he "purchased many 9/11 'Legendary' hashlets" and that "GAW pledged to sell only 500 of these, but GAW in

2

fact sold 2,296").)  Pfeiffer also testified at his deposition that he first learned about Fraser and Cantor Fitzgerald and that they allegedly were "backing" Garza when a "controversy" arose around the release of the 9/11 Hashlet.  Pfeiffer testified that Fraser's and Cantor Fitzgerald's "backing" gave Garza "credibility" in his eyes—presumably, including when Garza defended himself against accusations of "exploiting 911 for profit" because Pfeiffer continued buying the Companies' products after that.  (*See* Hassan Decl., Ex. A at 146:4-149:10.)

Plaintiffs cannot accuse Fraser of culpable conduct in connection with the fraudulent promotion and sale of Remember Hashlets—alleging that Fraser's "role" with respect to those Hashlets was "particularly egregious" given his "prominent role in the 9/11 memorial fund"—and then preclude Fraser from presenting evidence of that very "role" to show why any inference of his alleged knowledge of, and participation in, a fraud related to the September 11 attacks is not credible.  Nor can Plaintiffs have a class representative testify that he learned about Fraser and Cantor Fitzgerald allegedly "backing" Garza in the context of the "controversy" around the 9/11 Hashlet, but prevent Fraser from explaining why, given his personal experience with the September 11 attacks, he could not have backed anything that "exploit[ed] 911 for profit."  (*Supra* at 3.)  As such, Plaintiffs cannot use the September 11 attacks as "both a sword and a shield."  *See United States v. Djibo*, 2019 WL 3767045, at *1 (E.D.N.Y. Aug. 9, 2019) (disallowing plaintiff to selectively use evidence of his suppressed phone calls).

Second, evidence relating to Fraser's personal experience with the September 11 attacks is relevant to his alleged culpability for the broader fraud Plaintiffs allege.

3

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "is of consequence in determining the action." Fed. R. Evid. 401.  Fraser's alleged knowledge of the fraud at issue is an element of each of Plaintiffs' four claims and/or Fraser's affirmative defenses to those claims.  (*See* ECF 253-16 (Proposed Joint Jury Instructions) at 64, 66, 71, 78, 80, 118.)[1]  And Fraser's alleged participation in the fraud is also an element of each of Plaintiffs' aiding-and-abetting claims and Plaintiffs' Section 20(a) control person claim.  (*See id*. at 66, 80, 118-19.)

Here, evidence of the loss Fraser personally experienced as a result of the September 11 attacks, his hard work in helping Cantor Fitzgerald rebuild in the aftermath of those attacks, and the continuing effect that tragedy had on Fraser—including its direct effect on his personal and business relationship with Garza—is probative of whether it is "more or less probable" that Fraser then knowingly permitted or participated in a fraud, which included taking advantage of the memory of those very attacks and potentially associating the name of a firm he worked so hard to rebuild with that fraud.  *See* Fed. R. Evid. 401.

Third, contrary to Plaintiffs' contention, the Court should not exclude evidence related to Fraser's personal involvement with the September 11 attacks on ground of

---

1. Plaintiffs assert their "control" person claim under the Connecticut Uniform Securities Act based on two alternatives theories:  (1) Fraser was a control person of the Companies and the Companies sold unregistered securities, and (2) Fraser was a control person of the Companies and the Companies sold securities by means of a material misstatement or omission.  (*Id*. at 48-49.)  Fraser's alleged knowledge of the fraud is directly relevant to the second theory.

4

unfair prejudice. Federal Rule of Evidence 403 permits the Court to exclude relevant evidence if its "probative value" is "substantially outweighed" by "unfair prejudice." *See* Fed. R. Evid. 403. Plaintiffs have not shown that is the case here. *See Connecticut Fair Hous. Ctr v. CoreLogic Rental Prop. Sols., LLC*, No. 18-CV-705, 2021 WL 1186604, at *2 (D. Conn. Mar. 30, 2021) (movant bears the burden of showing that the evidence is properly excluded); *see also United States v. Gasperini*, 2017 WL 3140366, at *1 (E.D.N.Y. July 21, 2017), *aff''d*, 729 F. App'x 112 (2d Cir. 2018) (same).

Although Plaintiffs attempt to dismiss the "connections between Fraser and the September 11 attacks" as "irrelevant to any claim or defense in this action" (Motion at 1-2), that is not so. (*See supra* at 1-4.) Nor can Plaintiffs argue (presenting no controlling authority) that the probative value of evidence related to Fraser's personal experience with the September 11 attacks is outweighed by some generalized unfair prejudice as a result of introducing evidence related to those now-20-year-old attacks. As a New York federal court explained about a decade ago: "References to September 11th have previously been excluded [by district courts] in this [Circuit] due to the danger of unfair prejudice given the emotions associated with the attacks," but the "decision to [exclude] occurred far closer in time to the terrorist attacks and where the references related only to a 'collateral issue' that was irrelevant." *Int'l Bus. Machines Corp. v. BGC Partners, Inc.*, No. 10 CIV. 128 PAC, 2013 WL 1775437, at *8 (S.D.N.Y. Apr. 25, 2013) (quoting *Zubulake v. UBS Warburg LLC,* 382 F. Supp. 2d 536, 548 (S.D.N.Y. 2005)). Evidence related to the September 11 attacks in this case is not "related only to a collateral issue that was irrelevant" — rather, it relates to Plaintiffs' allegations of fraud targeted specifically at

5

Fraser's role in the aftermath of those attacks and to his personal and business relationship with Garza.  *See, e.g., Stern v. Shammas*, No. 12-CV-5210 (NGG) (RER), 2015 WL 4530473, at *15 (E.D.N.Y. July 27, 2015) (denying motion *in limine* to exclude evidence related to the September 11 attacks where that evidence was probative on issues of causation and damages).[2]

For the foregoing reasons, the Court should not preclude Fraser from making arguments or evidence referencing his involvement with the September 11 attacks.

## II. THE COURT SHOULD NOT PRECLUDE ARGUMENTS AND EVIDENCE SUGGESTING THAT A VERDICT FINDING FRASER LIABLE ON ONE OR MORE COUNTS WOULD CAUSE HARDSHIP, WHETHER FINANCIAL OR OTHERWISE, TO FRASER OR HIS FAMILY.

The Court should deny Plaintiffs' motion to preclude Fraser from arguing or presenting evidence suggesting that a liability verdict against Fraser would cause him or his family financial or other hardship, for the following reasons:

First, Plaintiffs' motion *in limine* is overbroad and vague.  Plaintiffs do not

---

2. Plaintiffs rely on an out-of-Circuit slip opinion for the proposition that courts have excluded references to the September 11 attacks when "not directly relevant." (*See* Motion at 2 (citing *Newmark Realty Capital, Inc. v. BGC Partners, Inc.*, No. 16-cv-01702-BLF, at 2 (N.D. Cal. Dec. 7, 2018).)  Here, however, evidence related to the September 11 attacks is "directly relevant" to Plaintiffs' allegations of fraud. (*See supra* at 1-4.)  Although Plaintiffs speculate that the "prejudicial effect" of permitting this evidence is "likely" "heightened" because the defendant in this case is an individual (Motion at 2), they provide no supporting authority.  Nor can Plaintiffs' speculation suffice to "substantially outweigh" the relevance of the evidence at issue.  If anything, Fraser is the one who would face heightened unfair prejudice if he cannot tell his side of the story regarding the September 11 attacks, while the jury is asked to draw inferences about Fraser's personal intent and culpability (as opposed to the intent and culpability of an impersonal corporate entity) for a fraud that includes allegations of exploiting the memory of those attacks.

6

identify any specific argument or any piece of evidence they seek to preclude. Plaintiffs' broadly worded motion might cover a whole range of different types of evidence, including evidence that directly or *indirectly* implicates Fraser's financial status or reputation.  Neither the Court, nor Fraser, should have to guess the scope and specifics of Plaintiffs' motion, and the Court should deny Plaintiffs' motion *in limine* for that reason alone.  *See, e.g.*, *Wasilewski v. Abel Womack, Inc.*, No. 3:10-CV-1857 (VAB), 2016 WL 183471, at *1 (D. Conn. Jan. 14, 2016) (denying defendant's motion to exclude several categories of evidence, including evidence as to plaintiff's "financial hardship due to medical bills," as "too broad for the Court to grant"); *Davis v. City of Stamford*, No. 3:95 CV 2518 (JGM), 1998 WL 849369, at *1 (D. Conn. Nov. 16, 1998), *aff'd*, 216 F.3d 1071 (2d Cir. 2000) (noting that "[o]rders *in limine* which exclude broad categories of evidence should rarely be employed") (citation omitted, emphasis supplied); *Residential Fences Corp. v. Rhino Blades Inc.*, No. 14-CV-2552 (SIL), 2020 WL 5658777, at *6-7 (E.D.N.Y. Sept. 22, 2020) (denying motion *in limine* as too vague where movants failed to identify which documents they sought to exclude).

Second, even if the Court were to ignore the overbreadth and vagueness of Plaintiffs' motion, the Court should deny it because Plaintiffs have not shown that the relevance of the arguments or evidence at issue is substantially outweighed by any unfair prejudice.  *See* Fed. R. Evid. 403.  Plaintiffs do not argue that the arguments and evidence at issue are not relevant; nor can they.  Here, Plaintiffs have put Fraser's financial resources and status and reputation directly at issue in the case.  For example, Plaintiffs allege that Fraser controlled Garza through his money.  (*See, e.g.*, FAC ¶ 40

7

(Fraser's investments in Garza's businesses "gave Fraser the ability and power to direct Garza's decisions").) Plaintiffs' complaint and proposed trial evidence are also rife with references to Fraser's financial resources and financial and business status. (*See, e.g.*, FAC ¶¶ 33 (Fraser was the "Vice-Chairman of the prominent investment bank Cantor Fitzgerald"), 56 ("Fraser used Cantor Fitzgerald resources to advise GAW Miners"), 41 ("Garza relied on Fraser for personal financial support," "Fraser paid Garza's salary" and "represented to Garza that Fraser would always 'take care' of Garza and that Garza did not need to worry about money."); ECF 253-10 (Garza deposition testimony designated by Plaintiffs) at 20:20-21:17 (Garza testifying that Fraser gave him money "on many occasions," for "[a]ll sorts of reasons," including to help him buy a house and an engagement ring); Hassan Decl., Ex. B (PX009) (April 17, 2014 email between Fraser and Garza suggesting Fraser owns more than one home); *see also id.*, Exs. C – E (PX001, PX082, PX087) (referring to Fraser's association with Cantor Fitzgerald).

In short, Plaintiffs' proposed trial evidence deliberately paints the picture of Fraser as a deep-pocketed defendant. It is foreseeable that a jury, in choosing between "innocent" victims of Garza's fraud and Fraser, a wealthy retiree from Wall Street, might be swayed against Fraser by such evidence. Because Plaintiffs' evidence implicates Fraser's financial resources and status, it is only fair that the Court not preclude Fraser from arguing or introducing evidence, if he so chooses, concerning the

impact of an adverse decision on those very resources and status.[3]  Nor should Plaintiffs be able to point to Fraser's reputation and Wall Street-connections, but keep Fraser from arguing or presenting evidence why the reputational or other impact of an adverse verdict in this case makes it unlikely that he would ever associate with the alleged fraud in the first place.

Third, Plaintiffs have not shown that the probative value of an argument or evidence that a verdict against Fraser would cause him financial or other hardship is substantially outweighed by unfair prejudice and bias to Plaintiffs.  *See* Fed. R. Evid. 403.  Plaintiffs assert in a conclusory fashion that permitting such argument or evidence "would unduly bias and prejudice the jury against Plaintiffs and the Class," but do not explain how; nor do Plaintiffs address the relevance of the arguments or evidence they seek to preclude, as Rule 403's balancing test requires.  (Motion at 3.)  Instead, Plaintiffs attempt to divert attention from the absence of a substantive balancing analysis by citing a long list of inapposite cases:  all of those are out-of-Circuit decisions in which the respective courts either determined that the evidence to be precluded was not relevant—which is not the case here—or did not address any relevance arguments, thus

---

3. This is especially so where Plaintiffs do not identify in their motion which specific arguments or evidence they seek to preclude.  Fraser does not intend to argue at trial that the jury not find him liable *because* an adverse verdict would be a hardship for him.  However, as noted above, given the breadth and vagueness of Plaintiffs' motion, it is impossible to ascertain which arguments or evidence Plaintiffs seek to exclude and specifically address those arguments and evidence.

providing no helpful guidance here.[4]

For the reasons set forth above, the Court should deny Plaintiffs' motion to preclude Fraser from arguing or presenting evidence, if he so chooses, suggesting that an adverse liability verdict would cause him or his family financial or other hardship.

### III. THE COURT SHOULD NOT PRECLUDE ARGUMENTS AND EVIDENCE THAT FRASER SUFFERED FINANCIAL LOSSES FROM HIS INVOLVEMENT IN GAW MINERS AND/OR ZENMINER.

#### A. The Court Should Deny Plaintiffs' Motion To Preclude Argument And Evidence That Fraser Suffered Losses From His Involvement With The Companies.

The Court should deny Plaintiffs' motion to preclude Fraser from presenting argument or evidence that Fraser suffered financial losses as a result of his investment

---

4. *See* Motion at 2-3 (citing the following cases): *Queen v. W.I.C., Inc.*, No. 14-CV-519-DRH-SCW, 2017 WL 4223950, at *6 (S.D. Ill. Sept. 22, 2017) (summarily agreeing with plaintiff, without opposition from the corporate defendant, that evidence of financial hardship was "not relevant and would only appeal to the sympathy of the jury"); *Droplets, Inc. v. Overstock.com, Inc.*, No. 3:16-cv-00940-MPS, 2014 WL 11515642, at *2 (E.D. Tex. Dec. 10, 2014) (granting motion to exclude evidence of the negative impact of a damages award on the corporate defendants' employees or customers, without making any finding as to whether this evidence was relevant); *Salazar v. A & J Const. of Montana, Inc.*, No. CV 11-16-BLG-CSO, 2012 WL 4092421, at *6 (D. Mont. Sept. 17, 2012) (granting plaintiff's motion to preclude evidence of the potential effect of an adverse verdict on the corporate defendant and its agents where the defendant represented that it did not intend to introduce this type of evidence); *Structural Polymer Grp., Ltd. v. Zoltek Corp.*, No. 4:05-CV-321 (CEJ), 2007 WL 1083758, at *6 (E.D. Mo. Apr. 11, 2007) (in a post-trial decision, simply noting that the court previously granted plaintiffs' motion to exclude evidence of the financial consequences of an adverse verdict on the corporate defendant, and refusing to consider relevance arguments the defendant had not previously raised); *Lynch v. Diamond State Trucking Inc.*, No. 10–1399, 2014 WL 12734712, at *1 (C.D. Ill. Feb. 28, 2014) (standing for a proposition not at issue here—that a defendant's financial status is relevant to punitive, but not compensatory damages).

in the Companies, for the following reasons:

First, many of Plaintiffs' proposed trial exhibits show that Fraser suffered substantial financial losses as a result of his involvement with the Companies. For example, PX128 is a "Table of S. Fraser Transactions," which Plaintiffs compiled, and which shows that Fraser suffered almost $12 million in losses as a result of investing money in Garza's businesses. (*See* Hassan Decl. ¶ 8, Ex. F.) Plaintiffs' trial exhibits also include many Chase Bank statements showing Fraser's investments in the Companies, but no return on capital. (*See, e.g.*, ECF 253-3 (Plaintiffs' Exhibit List) (PX3, PX26, PX30 and PX112).) Thus, Plaintiffs' motion to preclude Fraser from offering similar evidence is inconsistent with Plaintiffs' proposed trial evidence.

Second, that Fraser did not profit from the Companies or the alleged fraud and in fact only suffered losses with respect to both is relevant to the central issues in this case of control and aiding and abetting. Plaintiffs argue that the capital and financing Fraser provided for the Companies is relevant to whether Fraser was a control person and whether he aided and abetted the Companies' fraud. (Motion at 3-4.) By the same token, whether Fraser *profited* from the Companies and the alleged fraud or suffered losses is probative of his alleged control and culpability. A jury could reasonably consider that Fraser did not derive any returns from the Companies, but Garza did, probative on the question of who controlled the Companies. Similarly, a jury could reasonably consider that any inference of Fraser's participation in the alleged fraud is undermined by the fact that he derived no profit from that fraud. *See, e.g.*, *United States v. Naranjo*, 634 F.3d 1198, 1207 (11th Cir. 2011) ("Evidence that a defendant personally

11

profited from a fraud may provide circumstantial evidence of an intent to participate in that fraud.") Thus, the evidence Plaintiffs seek to preclude is relevant.

Third, Plaintiffs have not shown that an argument or evidence showing that Fraser suffered losses from his involvement with the Companies is unfairly prejudicial to them. The only argument Plaintiffs make in this regard is that it would be unfair for Fraser to "play on the sympathy" of the jury by describing his losses when the Class is precluded from describing its financial losses. (*See* Motion at 4.) Plaintiffs miss the point. Whether Fraser profited or suffered losses from his involvement with the Companies is relevant to questions of liability, while the quantum of damages Plaintiffs claim to have suffered is an issue of damages—thus, the first is properly a part of the liability trial and the second is not. Moreover, Plaintiffs' entire case before the jury is premised on their claim that they were injured and suffered financial losses as a result of acquiring or purchasing the cryptocurrency-related products at issue. (*See, e.g.*, ECF 253-19 (Plaintiffs' Description of the Case and Parties) at 1 ("The class members seek damages for their losses"); ECF 253-16 (Proposed Joint Jury Instructions) at 119 (Plaintiffs acted on the Companies' false statements "to their injury").) Any suggestion that Plaintiffs are prejudiced because they do not get to "describe" their losses is unfounded.

Finally, it would be unfairly prejudicial to Fraser for the Court to preclude him from presenting evidence that he suffered losses from his involvement with the Companies. Plaintiffs' trial exhibits show the return of certain amounts of money to Fraser. (*See* Hassan Decl., Ex. F (PX128) at 4 (showing return of $610,000 to Fraser in

12

July 2014); *also* PX113 (Fraser's Chase bank statement showing the same).) Fraser must be able to explain that these returns were repayments of loans—not distributions of profit—because, as discussed above, a defendant profiting from fraud may be circumstantial evidence of culpability. (*See supra* at 11-12.)

For the foregoing reasons, the Court should deny Plaintiffs' motion to preclude Fraser from arguing or presenting evidence that Fraser suffered financial losses as a result of his involvement with the Companies.

> B. **The Court Should Deny Plaintiffs' Alternative Motion to Limit The Argument And Evidence Fraser May Present To Show That He Suffered Losses From His Involvement With The Companies.**

Plaintiffs' alternative argument—that the Court preclude Fraser from presenting any argument or evidence that he suffered financial losses as a result of his investment in the Companies to the extent those are not reflected in his discovery responses—is equally unavailing.

First, the argument is vague and overly broad because Plaintiffs do not identify the specific evidence they seek to preclude. Rather, they claim in a conclusory fashion that Fraser did not provide a "complete picture" of his financial dealings with the Companies during discovery, without identifying what Fraser purportedly did not produce. *See Wood v. Sempra Energy Trading Corp.*, No. 03-CV-986, 2005 WL 3465845, at *6, n.1 (D. Conn. Dec. 9, 2005), *aff'd*, 225 F. App'x 38 (2d Cir. 2007) (denying plaintiff's motion to exclude evidence based on defendant's failure to properly comply with discovery where plaintiff did not identify the particular exhibits she sought to preclude in her motion); *see also Residential Fences Corp.*, 2020 WL 5658777 (denying motion *in*

13

*limine* as too vague where movants failed to identify which documents they sought to exclude).

Second, Plaintiffs are incorrect that Fraser did not comply with his discovery obligations.  Plaintiffs point to a request for document production for all "bank account statements for payments and losses that related to the allegations in the First Amended Complaint" (ECF 261-2 at 37), but do not specify how Fraser's production in response was in any way deficient.  On May 7, 2018, Fraser produced several personal bank statements from Chase Bank (*see* Hassan Decl. ¶ 9); Plaintiffs' trial exhibits include a number of Chase Bank Statements showing incoming and outgoing wires from Fraser's bank account (*e.g.*, PX3, PX26, PX30 and PX112); and Plaintiffs constructed a detailed "picture" of the money Fraser invested in Garza's businesses and the loans he received back (*see* Hassan Decl., Ex. F (PX128)).  Plaintiffs' contention that Fraser did not provide a "complete picture" of his financial dealings with the Companies rings hollow.[5]

## Conclusion

For the reasons set forth above, Fraser respectfully requests that the Court deny Plaintiffs' Motion in its entirety.

---

5. Plaintiffs' argument is not only too little, but comes too late.  Plaintiffs cannot seek preclusion of evidence based on purportedly deficient discovery when they chose not to pursue that claimed deficiency during discovery.  *See, e.g.*, *Corcoran v. CHG-Meridian U.S. Fin., Ltd.*, No. 5:11–cv–1462 (MAD/DEP), 2014 WL 1976671, at *6 (N.D.N.Y. May 15, 2014) (denying preclusion where defendant complained that plaintiffs' responses to certain discovery demands were deficient while discovery was ongoing, but never filed a motion to compel prior to the deadline for doing so).

Dated:  September 15, 2021

                                                  HUGHES HUBBARD & REED LLP

                                                  By:  /s/ *Daniel H. Weiner*

| | |
|---|---|
| David R. Schaefer (ct04334) | Daniel H. Weiner (ct12180) |
| Sean M. Fisher (ct23087) | Marc A. Weinstein (*pro hac vice*) |
| Rowena Moffett (ct414899) | Amina Hassan (*pro hac vice*) |
| Brenner, Saltzman & Wallman LLP | Hannah Miller (*pro hac vice*) |
| 271 Whitney Avenue | One Battery Park Plaza |
| New Haven, CT  06511 | New York, NY 10004-1482 |
| Tel.: (203) 772-2600 | Tel.: (212) 837-6000 |
| Fax: (203) 562-2098 | Fax: (212) 422-4726 |
| Email: rmoffett@bswlaw.com | Email: daniel.weiner@hugheshubbard.com |

*Attorneys for Defendant Stuart A. Fraser*

## CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2021, I caused the foregoing document to be served via the Electronic Case Filing (ECF) system in the United States District Court for the District of Connecticut, on all parties registered for CM/ECF in the above-captioned matter.

                                                                                               _____

                                                                                                 Amina Hassan

Dated: September 15, 2021

101408549