

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

October 18, 2021

VIA ECF

Honorable Michael P. Shea
United States District Court for the District of Connecticut
450 Main Street – Suite 262
Hartford, Connecticut 06103

      Re:    *Audet v. Fraser, et al.*, No. 16 Civ. 000940 (D. Conn.)
            Response to Plaintiffs' Letter at ECF 292

Dear Judge Shea:

      We write on behalf of Defendant Stuart A. Fraser regarding Plaintiffs' letter to the Court at ECF 292 seeking to exclude (1) DX-684 (Cooperation Agreement between Plaintiffs and Mr. Garza), (2) DX-682 (Original Complaint), (3) DX-685 (First Amended Complaint), and (4) DX-686 (Redline Comparing Original Complaint and First Amended Complaint).

      By filing their letter this past Saturday afternoon, Plaintiffs have once again disregarded deadlines set by the Court—this time the September 1, 2021 deadline for filing motions *in limine* and lodging objections to exhibits. (*See* ECF 250.) The Court should disregard Plaintiffs' letter for that reason alone. *See Smith v. Boyer*, No. 05-CV-0487 (DEP), 2006 WL 2008700, at *9 n.12 (N.D.N.Y. July 17, 2006) (discussing the "manifest unfairness" of filing what was essentially a motion *in limine* on the eve of trial, well after the deadline for such motions).

      In the event the Court considers Plaintiffs' arguments, it should reject them. Mr. Garza is the only witness who will testify against Mr. Fraser on the issues of control and material assistance, which are critical issues in this case. As this Court has expressly observed, Mr. Garza's credibility (or lack thereof) is a fundamental issue in this case, and Plaintiffs' agreement to dismiss their claims against Garza in exchange for Garza's "cooperation" speaks directly to his motivation for testifying at his deposition. *See* Fed. R. Evid. 408 (court may admit evidence of a settlement agreement for a purpose "such as proving a witness's bias or prejudice . . . .").

      That Garza's deposition took place "over two years after claims against Garza were dismissed" (ECF 292 at 2) is irrelevant, since Plaintiffs dismissed those claims **without prejudice**, and subject to Garza's continued cooperation until "the date the action is terminated as to all parties by a final judgment that is not subject to appellate review . . . ." (*See* DX-684.) Moreover, even if the Cooperation Agreement on its face did not explicitly require Garza to provide inculpatory testimony against Mr. Fraser, Garza knew he needed to "cooperate" to Plaintiffs' satisfaction or risk being dragged back into this lawsuit as a defendant. At his deposition in July 2018, Mr. Shinners testified that, if Garza did not testify (including at his

deposition later that year) to their "satisfaction," Plaintiffs could bring him back into the lawsuit as a party. (*See* Ex. A (Shinners Dep. at 14:6-24).)

The Cooperation Agreement is also probative as to Garza's credibility for additional reasons, including that Garza represented in that Agreement that he was "impecunious" and had "no assets against which a judgment in the Action could be levied" (ECF 292-1 at ¶ 3), even though the evidence suggests the opposite. For instance, DX-678 shows that Garza had multiple homes, and DX-657 shows that Garza stated that he had $27 million that he was seeking to hide in Dubai. In addition, Garza purchased a Porsche and a BMW immediately after his release from prison (*see* DX-709, DX-710) despite this Agreement and the restitution order entered against him in his criminal case (*see* DX-703). Finally, Garza's restitution obligations are also subject to reduction in the event Mr. Fraser is obligated to pay damages in this case, providing an additional motive for Mr. Garza to testify falsely against Mr. Fraser. (*See* DX-703.)

Plaintiffs' efforts to exclude DX-682 (Original Complaint), DX-685 (First Amended Complaint), and DX-686 (Redline of Original Complaint Against First Amended Complaint) are also without merit. First, those exhibits are probative because they demonstrate the result of Garza's cooperation with Plaintiffs, and the stakes if he were to fail to cooperate to their satisfaction. Accordingly, they are probative of Garza's motivation to testify against Mr. Fraser.

Second, Plaintiffs' pleadings constitute party admissions, and are admissible for that independent reason. *See Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985) (factual allegations in pleadings constitute binding judicial admissions). In the Original Complaint (DX-682), Plaintiffs alleged with respect to GAW Miners and ZenMiner that **Garza "directed their strategy, their financial decisions, and had ultimate control over their day-to-day operations."** (DX-682 at ¶ 17.) Plaintiffs removed that allegation entirely in their Amended Complaint, and added paragraph 40 of the Amended Complaint, which instead alleges that Fraser had ultimate control. (*See* DX-685 at ¶ 40; *see also* DX-686 at 13.) Plaintiffs cannot now hide from the jury their earlier allegation that Garza "had ultimate control" over the day-to-day operations of the Companies—an admission that is highly probative of the central issue in this case. *See United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) (a party "cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories."); *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2d Cir. 1929) ("When a pleading is amended or withdrawn, the superseded portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though incontrovertible, like any other extra-judicial statement made by a party or his agent.").

None of the cases Plaintiffs cite involved dismissal of a defendant who agreed to testify or otherwise cooperate with plaintiffs in their case against a co-defendant. The sole in-circuit case Plaintiffs cite, *Dial Corp. v. News Corp.*, No. 13 Civ. 6802, 2016 WL 690868 (S.D.N.Y. Feb. 17, 2016), is inapposite. There, the named parties had agreed that certain antitrust claims related to bundling and tying would be dismissed with prejudice. *See Dial Corp. v. News Corp.*, No. 13 Civ. 06802 (WHP), ECF 474 (S.D.N.Y. Feb. 4, 2016), at 11. Later, when the plaintiffs sought to introduce evidence of bundling and tying in support of their remaining claims, the defendants sought to prove that the plaintiffs had dismissed their bundling and tying claims. *See Dial Corp. v. News Corp.*, No. 13 Civ. 06802 (WHP), ECF 494 (S.D.N.Y. Feb. 9, 2016), at 10. However, the court found that evidence of that dismissal was irrelevant to the plaintiffs' remaining claims. *Dial*, 2016 WL 690868, at *2. The circumstances are completely different

101633040

where, as here, Plaintiffs' voluntary dismissal of Garza in exchange for his cooperation in the present action resulted in his deposition testimony against Mr. Fraser, the sole remaining defendant.[1]

For these reasons, the Court should reject Plaintiffs' challenges to these critical pieces of evidence.

Sincerely,

/s/ Daniel H. Weiner

Daniel H. Weiner

---

1. The other cases Plaintiffs cite are equally irrelevant. *See Hoeltzell v. Caldera Graphics*, No. 11-21245-CV, 2012 WL 13012758, at *1 (S.D. Fla. June 13, 2012) (in which the court excluded evidence of the plaintiffs' settlement with an individual who was not involved in the ongoing proceedings); *Shepard v. Quillen*, No. 1:09-CV-00809-BAM PC, 2013 WL 978201, at *4 (E.D. Cal. Mar. 12, 2013) (in which the court prohibited a *pro se* state prisoner plaintiff from testifying about a corrections lieutenant who he previously alleged retaliated against him, given that the retaliation claim and lieutenant had already been dismissed from the lawsuit); *Slappy v. City of Detroit*, No. 19-10171, 2021 WL 2986284, at *2 (E.D. Mich. July 15, 2021) (in which the defendants "conceded that settled claims may not come in under Fed. R. Evid. 408" and court held that evidence related to those claims lacked probative value).

101633040