

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

October 18, 2021

VIA ECF

Honorable Michael P. Shea
United States District Court for the District of Connecticut
450 Main Street – Suite 262
Hartford, Connecticut 06103

      Re:    *Audet v. Fraser, et al.*, No. 16 Civ. 000940 (D. Conn.)
             Admissibility of Defendant's Exhibits Relevant to Mr. Garza's Credibility

Dear Judge Shea:

      In light of the Court's ruling earlier today on Plaintiffs' objections to Defendants' trial exhibits (ECF 306), and in advance of the telephonic conference tomorrow morning, we write on behalf of Defendant Stuart A. Fraser to respectfully request that the Court revisit its rulings on eight exhibits or statements in exhibits that bear on Mr. Garza's credibility—DX-521, DX-523, DX-530, DX-531, DX-538, DX-549, DX-555 and DX-613 (the "Garza Exhibits").

      The Garza Exhibits (and select statements within those exhibits) are admissible under Federal Rule of Evidence 806 to attack Garza's credibility. Rule 806 provides that, "[w]hen a hearsay statement . . . has been admitted in evidence, the declarant's credibility may be attacked, and then supported, by any evidence that would be admissible for those purposes if the declarant had testified as a witness. The court may admit evidence of the declarant's inconsistent statement or conduct, regardless of when it occurred or whether the declarant had an opportunity to explain or deny it." Fed. R. Evid. 806.[1] Here, Garza will testify at trial via deposition designation, and

---

1. *See* Notes of the Advisory Committee on Rule 806 (explaining that the Rule permits use of prior and subsequent inconsistent statements when the "hearsay" is deposition testimony); *Peppers v. Washington Cty., Tennessee*, 686 F. App'x 328, 333 (6th Cir. 2017) (noting that District Court should have admitted deposition testimony of a witness who lived more than 100 miles from the courthouse and then permitted defendant to attack the unavailable witness's credibility under Rule 806); *see also* Handbook of Fed. Evid., Michael Graham § 806:1 ("[A] party aware of alleged prior inconsistent statements prior to taking the witness's deposition who for tactical reasons doesn't confront the witness with the alleged prior inconsistent statements at the deposition, pursuant to Rule 806 may nevertheless employ such alleged inconsistent statements to attack the credibility or the declarant/deponent who is unavailable to testify at trial."); 30B Fed. Prac. & Proc. Evid. § 7053 (2021 ed.) ("[I]f the government introduces hearsay statements of an absent co-conspirator against the defendant,

Plaintiffs are offering Garza's statements at his deposition for the truth, among other issues, Mr. Fraser's alleged control over Garza and the Companies. Rule 806 applies, and permits Mr. Fraser to attack Garza's credibility.

Federal Rule of Evidence 613(b) also permits extrinsic evidence of a prior inconsistent statement "if justice so requires." Justice requires such extrinsic evidence here. Garza is the only witness who will testify against Mr. Fraser on the issues of control and material assistance, which are critical issues in this case. Garza's contemporaneous emails directly contradict his deposition testimony on these critical issues, and he is unavailable to testify at trial. Accordingly, the Court should not permit Plaintiffs to unfairly benefit from his "unavailability" by preventing the admission of exhibits Mr. Fraser ordinarily be permitted to use on cross-examination if Garza were testifying live. *See Rodriguez-Alvarez v. Bahama Cruise Line, Inc.*, No. 86 CIV. 7363 (RLC), 1988 WL 132825, at *5-6 (S.D.N.Y. Dec. 7, 1988) (declaring admissible a declarant's prior written statement if defendants read that declarant's deposition testimony into evidence because Rule 613(b) explicitly gives the court discretion, which "was designed precisely for the type of situation present in the instant case, *i.e.*, when the witness is unavailable"); *see also* Handbook of Fed. Evid., Michael Graham § 806:1 (explaining that, where a witness's testimony is admitted via deposition, the adverse party can attack the credibility of the witness with a prior inconsistent statement under Rule 613(b) regardless of whether the witness was given the opportunity to explain or deny that statement at his deposition).[2]

Plaintiffs intend to play to the jury Mr. Garza's recorded testimony that Mr. Fraser had "full control" over Mr. Garza; Mr. Fraser had "control" "[o]ver everything we did together," including GAW Miners; Mr. Garza was financially reliant on Mr. Fraser; and that Mr. Fraser was involved in the day-to-day operations and decision-making of GAW Miners and ZenMiner. As shown below, each of the Garza Exhibits directly undermines Mr. Garza's testimony, and should therefore be admitted under Rule 613(b) in the interest of justice:

---

the defendant can rely on Rule 806 to introduce inconsistent statements of that co-conspirator, regardless of the time they arose, and even if the co-conspirator was never given an opportunity to explain the inconsistency.").

2. The "inconsistency" of a prior statement need not be exact for the statement to be admissible, particularly where, as here, the declarant is unavailable to testify. *See United States v. Traska*, 962 F. Supp. 336, 338–39 (E.D.N.Y. 1995) (where a declarant is unavailable, the admissibility of a prior inconsistent statement to impeach the declarant "should not turn on whether it directly contradicts that statement. It is enough if the proffered testimony, taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it sought to contradict."); *see also United States v. Barrett*, 539 F.2d 244, 254 (1st Cir. 1976) ("To be received as a prior inconsistent statement, the contradiction need not be in plain terms. It is enough if the proffered testimony, taken as a whole, either by what it says or by what it omits to say, affords some indication that the fact was different from the testimony of the witness whom it is sought to contradict.").

| **Deposition Testimony** | **Exhibit(s) – Prior Inconsistent Statement** |
|---|---|
| Garza testified that Mr. Fraser had "control" "[o]ver everything we did together," including GAW Miners and Mr. Fraser "had full control over me." (ECF 253-10 at 50:16-19, 51:5-7.) | In DX-521,[3] Garza stated: "Your right, this is my company, and I am the only one that knows how to really run it." <br><br> In DX-523, Garza declared: "All that considering I run the marketing!" <br><br> In DX-530 & DX-531, Garza sent emails to the "team" and Mr. Fraser with the subject line: "This is my house!" |
| Garza testified with regard to GAW Miners that he and Mr. Fraser discussed "[e]verything from [Mr. Fraser] providing, you know, investments, loans to the company, seeking advice, things of that nature." (*Id.* at 26:2-10.) <br><br> Garza also described Mr. Fraser's role in GAW Miners as: "…You know -- you know, still, you know, regularly, you know, talking and going through, you know, because he essentially wanted to know what happened every day, you know, but it was -- so it's quite a bit more than a normal -- like a regular investor …." (*Id.* at 142:11-23.) | In DX-538, Garza stated: "Stuart is not involved. I think that was one of the keys…."; and similarly later in the chain that "Stuart is not involved, and no management staff." |
| Garza testified with regard to GAW Miners that he and Mr. Fraser discussed "[e]verything from [Mr. Fraser] providing, you know, investments, loans to the company, seeking advice, things of that nature." (*Id.* at 26:2-10.) <br><br> He also testified that he "felt like [he and Mr. Fraser] were more, you know, actual partners in [GAW Miners], you know, versus in the previous companies." (*Id.* at 26:2-10, 144:4-17.) | In Dx-549, Garza stated that Mr. Fraser "adds no value as [an] investor, I am still trying to do things that I don't need to. But that points important. His emotions keep him from being a valuable partner to the company." |
| In his deposition testimony, Garza described Mr. Fraser's role as a "hands-off CEO that's | In DX-555, Garza told his employees: "The only actual officer in this company is me", in response |

---

3. The Court's rulings as to these proposed exhibits are as follows: DX-521 (sustained); DX-523 (sustained as to the statement, "All that considering I run the marketing!," otherwise overruled); DX-530 and DX-531 (overruled except "this is my house" must be redacted because it is hearsay); DX-538 (sustained); DX-549 (sustained in part; the statement after "A" (except "I don't feel it's reasonable") and the statement after "C" are hearsay and must be redacted, otherwise, overruled); DX-555 (sustained as to hearsay); and DX-613 (sustained).

3

101640894

| **Deposition Testimony** | **Exhibit(s) – Prior Inconsistent Statement** |
|---|---|
| above the normal CEO." (*Id.* at 65:2-17.) | to a chart listing all officers, managers and staff of the company (but excluding any reference to Mr. Fraser in any category). |
| Garza testified that "the whole company, all of staff, myself and everything were fully financially relying on [Mr. Fraser];" that the way Mr. Fraser controlled Garza was by providing him small amounts of money; that with regard to GAW Miners, he and Mr. Fraser discussed "[e]verything from [Mr. Fraser] providing, you know, investments, loans to the company, seeking advice, things of that nature;" and that Mr. Fraser had "control" "[o]ver everything we did together," including GAW Miners. (*Id.* at 26:2-10, 50:16-19, 51:5-7, 52:7-10, 53:3-25.) | In DX-613, Garza stated, "Stuart is a silent Partner and provides no financial support." |

In addition, the Garza Exhibits are admissible pursuant to Federal Rule of Evidence 807. "To be admissible under Rule 807, the evidence must be (1) trustworthy, (2) material, (3) more probative than other available evidence, and must fulfill, (4) the interests of justice, and (5) notice." *Lasnick v. Morgan*, No. 3:10-CV-345 JCH, 2011 WL 6300159, at *2 (D. Conn. Dec. 15, 2011). The Garza Exhibits satisfy those criteria. To be sufficiently trustworthy, a statement need not be free of all risk, but must possess "a reliability commensurate with that of statements admitted under" other hearsay exceptions. *Id.* at *4 (admitting emails despite the declarant's faulty memory). The statements in these emails, which Garza made prior to the government investigations, his cooperation agreement with Plaintiffs, and the restitution order against him, are certainly no less trustworthy than Garza's deposition testimony. Moreover, the materiality of Garza's statements in these exhibits is clear, and Garza's contemporaneous statements are more probative than any other piece of evidence about what Garza truly considered Mr. Fraser's role in GAW Miners to be at the time. Finally, admission of these exhibits is undeniably in the interests of justice: Mr. Fraser is the sole remaining defendant in a class action lawsuit in which the only witness testifying against him is "unavailable" to testify, and compromised as a result of his self-interest. Accordingly, the Court should admit Garza's statements in these exhibits for their truth pursuant to Rule 807.[4]

Finally, many of the Garza Exhibits are also admissible pursuant to Federal Rules of Evidence 803(1) (Present Sense Impression) and/or 803(3) (Then-Existing Mental, Emotional, or Physical Condition),[5] as well as for other non-hearsay purposes.[6]

---

4. Plaintiffs also had adequate notice of these exhibits. (*See* ECF 253-4.)

5. *See, e.g.*, DX-549 (Garza describing his feelings about McLain's proposal regarding Garza's and Mr. Fraser's percentage of ownership in the companies, and stating *inter alia*, that Mr. Fraser "adds no value as [an] investor … His emotions keep him from being a valuable

4

      For the reasons noted above, we request that the Court revisit its rulings on the Garza Exhibits and permit Mr. Fraser to introduce them into evidence.

                                Sincerely,

                                /s/ Daniel H. Weiner

                                Daniel H. Weiner

---

    partner to the company."); DX-521 (Garza stating: "Your right, this is my company, and I am the only that knows how to run it."); DX-531 (Garza sending photos and expressing his intent to use them as "NEW PR"); DX-538 (Garza discussing his plans for GAW Miners with a potential partner and stating, "Oh yeah, Stuart is not involved. I think that was one of the keys. I love him to death, but I needed to figure out who I wanted to be.").

6. For instance, DX-521 is admissible because it contains statements that are probative of the terms of a disputed agreement whose terms are relevant to the ultimate issue in the case. *See Gyro Brass Mfg. Corp. v. United Auto. Aircraft & Agric. Implement Workers of Am.*, CIO-AFL, 147 Conn. 76, 80, 157 A.2d 241, 243–44 (Conn. 1959) (finding that the fact of an oral modification of a sales agreement occurring could be entered into evidence and was an exception to the hearsay rule as a verbal act); *see also Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 566-67 (D. Md. 2007) ("communications between the parties to a contract that define the terms of a contract, **or prove its content**, are not hearsay, as they are verbal acts or legally operative facts.").