SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
32ND FLOOR
1301 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6023
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

| SUITE 5100<br>1000 LOUISIANA STREET<br>HOUSTON, TEXAS 77002-5096<br>(713) 651-9366 | SUITE 1400<br>1900 AVENUE OF THE STARS<br>LOS ANGELES, CALIFORNIA 90067-6029<br>(310) 789-3100 | SUITE 3800<br>1201 THIRD AVENUE<br>SEATTLE, WASHINGTON 98101-3000<br>(206) 516-3880 |
|---|---|---|

SETH ARD
DIRECT DIAL (212) 471-8354

E-MAIL SARD@SUSMANGODFREY.COM

October 24, 2021

The Honorable Michael P. Shea
United States District Court for the District of Connecticut
450 Main Street – Suite 262
Hartford, Connecticut 06103

Re:   *Audet v. Fraser*, No. 16-cv-000940

Dear Judge Shea:

This Court overruled Plaintiffs' objection to the Settlement Agreement with Josh Garza (DX-684, attached hereto as Exhibit A) because "it is a cooperation agreement and it goes to [the] credibility" of Josh Garza. Dkt. 306. The Court also sustained in part and overruled in part Plaintiffs' objection to the original complaint (DX-682), amended complaint (DX-685), and redline of the original complaint (DX-686), finding that "Defendant may use the document to examine the Plaintiffs, and the Court may permit the introduction of limited portions." *Id.* Defendant's opening statement, however, misrepresented the terms of the Settlement Agreement and exceeded the limited use of the complaints permitted by the Court. Plaintiffs now respectfully request limiting instructions relating to those exhibits, as described below.

## I.      Settlement Agreement

In its opening, counsel for Defendant argued that the Settlement Agreement gave Garza a motive to *lie* at his deposition to "rat against" Mr. Fraser in order to keep himself out of the lawsuit.[1] To support this argument, the Defendant has never cited the Agreement itself, which says nothing of the sort. Rather, Defendant has only

---

[1] *See* Ex. B, Defense Opening, Rough Tr., p. 24 ("They said well, we'll strike a deal with you. We'll drop you from the case if you **rat against Stu Fraser**, if you testify against him, **you won't have to be in the case anymore**.").

October 24, 2021
Page 2

cited the deposition testimony of Mr. Shinners, who had not yet *read* the Agreement at the time of his deposition. *See* Ex. C at 10:10-14 ("Q. Do you know whether there's a written agreement with Mr. Garza? A. I have no idea. Q. Okay. A. I have never seen one, no."). Mr. Shinners testified (incorrectly) that he understood the deal to be that if Garza failed to testify at his deposition to the "satisfaction" of Plaintiffs' counsel, then Plaintiffs could "bring him back into the lawsuit." *Id.* at 14:19-24.[2] This is an indefensible construction of the Agreement, and Defendant should not be permitted to present it to the jury.

Whether the Agreement gave Mr. Garza a motive to lie turns entirely on what the Agreement *means*; it cannot turn on what a named Plaintiff who had never read the Agreement (and never discussed it with Mr. Garza) thought it meant. Accordingly, Plaintiffs request the Court instruct the jury on the Agreement and preclude defense counsel from eliciting testimony from Plaintiffs about what it means.[3]

**First**, the Court should instruct the jury on the interpretation of the Settlement Agreement because it is not ambiguous. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) ("Construing an unambiguous contract provision is a function of the court, rather than a jury, and matters extrinsic to the agreement may not be considered when the intent of the parties can fairly be gleaned from the face of the instrument."); *see also Middlesex Hosp. v. On Assignment Staffing Servs., Inc.*, No. 3:14-CV-1138 (AWT), 2017 WL 4185456, at *3 (D. Conn. Sept. 21, 2017) (under Connecticut law, "it is a bedrock legal principle that the interpretation of a written document is a question of law." (quotations and alterations omitted)).

The discovery cooperation provisions in the Agreement are unambiguous. In it, Garza agrees to "provide reasonable and timely discovery cooperation" in 3 ways:

- He agrees to provide "documents" reasonably requested by Plaintiffs;

---

[2] Defendant's letter of October 18, 2021 advancing this argument, *see* Dkt. 305, actually misrepresented Mr. Shinners's testimony. *Compare* Dkt. 305 at 1-2 ("Mr. Shinners testified that, if Garza did not testify (including at his deposition later that year) to **their** 'satisfaction,' **Plaintiffs** could bring him back into the lawsuit as a party" (emphasis added)), *with* Ex. C at 14:19-24 ("That if—if his cooperation is not—you know, if he's not fulfilling whatever agreement there was to the satisfactory—you know, to the satisfaction of the **law firm**, then he—there's the possibility that he would be brought back into the lawsuit." (emphasis added)).

[3] Defendants' eagerness to cross-examine Plaintiffs on the meaning of the Agreement would be permissible if they were attacking Plaintiffs' own credibility. But Defendants are attempting to impeach the credibility of Mr. Garza.

October 24, 2021
Page 3

- He agrees to provide "a full account of all facts known to Mr. Garza potentially relevant to the claims asserted in the Action"; and
- He agrees to make "himself available for interviews, depositions, or testimony at trial as Plaintiffs may reasonably require."

There is nothing ambiguous in these terms, which are found in countless agreements when a single defendant is dropped from a multi-defendant case. The Agreement also provides that *if* this Court—not Plaintiffs—determines there has been a "material breach" of the agreement, then "the statute of limitations is tolled" as to Plaintiffs' claims against Mr. Garza. Those are the plain terms of the Agreement, and there is no ambiguity. Nothing in the Agreement says that Plaintiffs can bring Garza back into the case if Garza fails to "rat against" Mr. Fraser or if Plaintiffs are not "satisfied" by Garza's testimony. The only way the limitations period could be tolled due to the substance of Mr. Garza's testimony is if, in this Court's view, Mr. Garza failed to give a "full account of all facts known Mr. Garza" relevant to this Action.

It is for the Court, not the jury, to interpret the plain terms of the Agreement. *See Terwilliger*, 206 F.3d at 245. Accordingly, the Court should instruct the jury on what the plain terms of the Settlement Agreement mean, specifically:

> You have heard reference to a Settlement Agreement between Josh Garza and the individual plaintiffs. In that Agreement, Mr. Garza agreed to testify at a deposition under oath. The Agreement did not require Josh Garza to testify to the satisfaction of Plaintiffs.[4] It simply required Mr. Garza to give a "full account" of the "facts" relevant to this action.

**Second**, because the contract is unambiguous, the Court should preclude defense counsel from asking any witnesses what the Agreement means: a witness's subjective understanding is irrelevant to the construction of the contract as a matter of law. *See Terwilliger*, 206 F.3d at 245 ("matters extrinsic to the agreement may not be considered when the intent of the parties can fairly be gleaned from the face of the instrument"); *Konover v. Kolakowski*, 186 Conn. App. 706, 721-22, 200 A.3d 1177, 1187 (2018) (summarizing Connecticut Supreme Court cases) ("The circumstances surrounding the making of the contract, the purposes which the

---

[4] In this way, this case is entirely unlike a criminal case involving a cooperation agreement, where the Government retains discretion to withhold a 5K1.1 letter without being subject to the supervision of the Court. Here, only the Court can make a determination with regard to Mr. Garza's performance, and it is highly prejudicial to Plaintiffs for the Defendant to falsely suggest otherwise.

October 24, 2021
Page 4

parties sought to accomplish and their motives cannot prove an intent contrary to the plain meaning of the language used. In sum, decisional law holds that if the language of the contract is clear and unambiguous, our courts must look only to the four corners of the contract to discern the parties' intent." (quotation marks and citations omitted)). In *Konover*, the Court declined "to give deference to the erroneous construction of the agreement initially advanced by the defendants in their pleadings." *Id.* Similarly here, Mr. Shinners's erroneous construction of the Agreement (which he had never read) in his deposition is irrelevant as a matter of law, and should be excluded.

Further, Mr. Shinners interpretation has no bearing on *Mr. Garza's* credibility anyway: whether the Agreement gave Mr. Garza a motive to lie turns entirely on what the Agreement means, not on how Mr. Shinners interpreted it.

**Third**, defense counsel should be precluded from arguing or eliciting testimony that the Settlement Agreement permits Plaintiff to bring Garza back into the case for any reason, such as if Mr. Garza falsely represented that he was broke.[5] To begin, any such argument is contrary to the limited purpose for which the Court has permitted use of the Agreement: it is relevant only insofar as it relates to Mr. Garza's "*credibility*." Mr. Garza can be brought back into the case only ***if this Court*** first finds (a) there was a "material breach by Mr. Garza" or (b) Garza made a "materially false or misleading" representation in the Agreement. This Court has made no such finding, no party has asked it to, and it is entirely speculative whether it ever will. Whether Mr. Garza can be brought back into the case has no relevance whatsoever to whether Mr. Fraser is liable for the claims in this action.

Mr. Fraser is clearly trying to suggest to the jury that (a) it should let Mr. Fraser off the hook because Plaintiffs can just bring Mr. Garza back into the case, and that (b) Mr. Garza could satisfy a judgment with wealth he somehow amassed and concealed. The ability of Mr. Garza to satisfy a hypothetical future judgment is entirely irrelevant to the question of Mr. Fraser's liability. As for damages, there is joint and several liability, and this is not a damages trial in any event.

Nor should Defendant be permitted to try to bring this same evidence in through the back door by saying it goes to Mr. Garza's credibility in representing he was impecunious. First, there is zero credible evidence that he had sufficient assets at the relevant time. Defendant seeks to prove otherwise through speculation and innuendo, which would result in an irrelevant mini-trial. The prejudice is extreme: the real point of this argument is to convince the jury that Plaintiffs are suing the

---

[5] In the Agreement, Mr. Garza represented that "he is impecunious and has no assets against which a judgment in the Action could be levied."

October 24, 2021
Page 5

"wrong guy." Any slight probative value to this evidence is extremely limited: Mr. Garza is not credible because he was convicted of fraud, and any additional loss of credibility from this alleged misrepresentation is at best extremely limited.

## II.   Amended Complaint

The Court should also limit the use of the original complaint, amended complaint, and the redlined amended complaint generated by Defendant. After Mr. Garza was dismissed from the case, the plaintiffs naturally deleted the paragraph in the Complaint that described Mr. Garza as a party:

**PARTIES**

~~17.     Defendant Garza, age 30, lives in Friendswood, Texas, although he lived in Somers, Connecticut during 2014. During all of 2014, he was the founder and CEO of GAW Miners, and he owned and controlled ZenMiner. In those positions, which he held since those companies were founded, he directed their strategy, their financial decisions, and had ultimate control over their day to day operations.~~

Defendant now seeks to mislead the jury by arguing that the deletion of this paragraph *naming Mr. Garza as a party* somehow impugns the credibility of the named Plaintiffs. Indeed, Defendant's proposed slides for opening statements began with this argument and dedicated three of only twelve total slides to this tactic. *See* Ex. D. There is nothing probative in this amendment.

First, the paragraph had to be deleted because Mr. Garza was no longer a party, and any suggestion to the contrary would only be designed to mislead the jury. Second, there is no inconsistency between the initial complaint and the amended complaint: the redline version shows that both complaints repeatedly alleged, with no change in wording, that "Fraser and Garza" had "**equal control** over Gaw Miners." DX-682 (redlined complaint), ¶ 49.[6] Third, this case is governed by the PSLRA, and therefore discovery was stayed until resolution of the pleadings. It would make no sense to allow defense counsel to impugn the credibility of the named Plaintiffs by

---

[6] *See also id.* ¶ 19 ("During all relevant times, Garza and Fraser have controlled GAW Miners and directed its day-to-day activities."); ¶ 20 (same about ZenMiner); ¶ 78 ("Garza and Fraser owned and controlled ZenMiner at all times."); 83 ("Garza and Fraser fully controlled ZenMiner"); ¶ 135 (Garza and Fraser "jointly controlled GAW Miners' strategic direction")

October 24, 2021
Page 6


reference to what was pleaded five years ago before there was any discovery, when Plaintiffs had yet to receive the transcript of Mr. Fraser's SEC deposition and had not yet deposed Mr. Fraser in this case.

At the very least, before asking any questions to the named Plaintiffs about the amendments to the complaint, defense counsel should be required to proffer what specific paragraphs they intend to ask about and on what ground. If counsel is allowed to proceed, the jury should be given this instruction:

> You have heard a reference to the fact that Plaintiffs filed an amended complaint that dismissed Josh Garza from this case. There is nothing unusual or improper about settling a case with one defendant and proceeding against another defendant, and you may not draw any conclusions about Mr. Fraser's liability based on what happened in the case against Mr. Garza. Moreover, you may draw no inferences from the fact that the paragraph describing Mr. Garza was deleted from the section of the Complaint describing the "Parties"; that is simply the convention of an amended complaint after a party is dismissed.[7]

The common thread linking these defense arguments is that they seek to change the subject from the case against Mr. Fraser to the prior existing case against Mr. Garza. It is prejudicial to the Plaintiffs for Mr. Fraser to miscast ordinary and common litigation conduct as improper or to misattribute substantive meaning to procedural formalities. There is no effective way for these non-lawyer Plaintiffs to rebut these improper inferences through their own testimony, and it is appropriate for the Court to give instructions on legal matters that are outside the proper purview of the jury.

Respectfully submitted,

*/s/ Seth Ard*
Seth Ard

Attachments: Exhibits A-D

---

[7] Additional instructions specific to the paragraphs offered by defense counsel might also be required.