

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: +1 (212) 837-6000
Fax: +1 (212) 422-4726
hugheshubbard.com

October 25, 2021

VIA ECF

Honorable Michael P. Shea
United States District Court for the District of Connecticut
450 Main Street – Suite 262
Hartford, Connecticut 06103

      Re:    *Audet v. Fraser, et al.*, No. 16 Civ. 000940 (D. Conn.)

Dear Judge Shea:

      We write in response to Mr. Ard's letter to the Court, filed yesterday afternoon (ECF 318), in which Plaintiffs (1) object to defense counsel's October 20 opening statement and (2) reargue the Court's October 18 ruling as to the admissibility of Plaintiffs' pleadings in this action (ECF 306). Regrettably, Plaintiffs fail to inform the Court of relevant evidence that defeats their demand that the Court issue limiting instructions concerning Plaintiffs' Cooperation Agreement with Josh Garza (DX 684) and their Complaint and Amended Complaint in this action (DX 682, DX 685, DX 686).

1.     <u>Both Garza and Mr. Shinners Acknowledged Garza's Risk of Reinstatement as a Defendant</u>.

      As the Court correctly observed, Plaintiffs' agreement with Garza "is a cooperation agreement and it goes to credibility." (ECF 306.) When Mr. Garza testified at his deposition in this case in December 2018, he had every reason to believe that Plaintiffs could revoke their "without prejudice" dismissal of him as a defendant if he failed to provide satisfactory cooperation to Plaintiffs with respect to their continued prosecution of this action against Mr. Fraser.

      That is exactly how both the lead Plaintiff (Allen Shinners) and Garza interpreted the Cooperation Agreement. As Mr. Shinners testified, if Garza did not testify "to the satisfaction" of Plaintiffs' counsel, Plaintiffs could reinstate him as a defendant in this action:

> "Q. Is there an understanding that if Mr. Garza doesn't continue to cooperate, he may be brought back into the lawsuit? ...
>
> "Q. Your understanding, not the lawyers' conversations.
>
> "A. All right. Yeah, and my understanding is that there is a possibility that he may be brought back in.

> "Q. And tell me what you know about that, putting aside lawyer conversations.
>
> "A. I — that's it. That if — if his cooperation is not — you know, if he's not fulfilling whatever agreement there was to the satisfactory — you know, to the satisfaction of the law firm, then he — there's the possibility that he would be brought back into the lawsuit.
>
> "Q. Okay. And that's something that — that you're okay with, correct?
>
> "A. I am okay with that, yes."

(Shinners Dep. Tr. 14:6-15:3, copy annexed hereto as Exhibit A.)

Plaintiffs now claim that Mr. Shinners "had not yet *read* the [Cooperation] Agreement at the time of his deposition on July 25, 2018." (ECF 318 at 2; emphasis in original.) Doubling down, Plaintiffs go on to inform the Court (twice) that Mr. Shinners "never read" the Cooperation Agreement. (*Id*. at 2, 4.) But the truth is otherwise: on October 20, 2016, Plaintiffs themselves — including Mr. Shinners — expressly represented that they had reviewed the terms of the Cooperation Agreement, with Mr. Ard executing that Agreement on their behalf. (*See* DX 684 at ¶ 6: "The parties acknowledge that they have consulted, and reviewed the terms of this Agreement, with an attorney of their choosing prior to signing this Agreement.") And while Plaintiffs now assert that Mr. Shinners testified "incorrectly" at his deposition (ECF No. 318 at 2), they made no effort to correct his testimony in the *more than three years* since Mr. Shinners testified in July 2018. Nor do they inform the Court that Mr. Shinners and the other named Plaintiffs specifically approved the decision to drop Garza as a defendant in this action. (Exh. A at 8:20-25 "Q. Were you, Mr. Shinners, were you involved in the decision to drop Mr. Garza as a defendant in this lawsuit? A. Well, obviously, we had to approve it. So the suggestion was – was made by the law firm and we had to approve it, and we approved it.") Plaintiffs' counsel will have ample opportunity at trial to ask their client Mr. Shinners to recant his deposition testimony.

At his deposition in December 2018, Garza testified to the exact same effect. ("Q. … So do you understand that the plaintiffs have the ability to bring you back in as a defendant in this case? A. Yes, ma'am.") (Garza Dep. Tr. 151:4-14, copy annexed hereto as Exhibit B.) While Plaintiffs now insist that this could only happen if the Court determined that Garza breached his Cooperation Agreement, that Agreement is not so limited. Rather, it permits Plaintiffs to reassert their claims in this case against Garza upon their determination that Garza materially breached that Agreement. (DX 684 at ¶ 1.)

2. <u>Plaintiffs' Pleadings Are Admissible Against Them</u>.

The authorities cited in our letter to the Court dated October 18, 2021 (ECF 305) establish that Plaintiffs' Complaint and Amended Complaint constitute admissions by them. *See United States v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984) (a party "cannot advance one version of the facts in its pleadings, conclude that its interests would be better served by a different version, and amend its pleadings to incorporate that version, safe in the belief that the trier of fact will never learn of the change in stories."); *Kunglig Jarnvagsstyrelsen v. Dexter & Carpenter, Inc.*, 32 F.2d 195, 198 (2d Cir. 1929) ("When a pleading is amended or withdrawn, the superseded

portion ceases to be a conclusive judicial admission; but it still remains as a statement once seriously made by an authorized agent, and as such it is competent evidence of the facts stated, though incontrovertible, like any other extra-judicial statement made by a party or his agent."). Recognizing this controlling precedent, the Court ruled on October 18 that defense counsel may use Plaintiffs' pleadings to examine the named Plaintiffs, and noted that it may permit the introduction of limited portions of those pleadings. (ECF 306.)

Plaintiffs now argue that, based entirely on slides that defense counsel did <u>not</u> present to the jury, the Court should revisit its October 18 ruling. (ECF 318 at 5.) That is improper. Even if the Court were to entertain Plaintiffs' untimely argument, the Court should reject it. Plaintiffs' decision to shift their target in this lawsuit from Garza to Mr. Fraser, based on their understanding that Garza had insufficient assets to pay a judgment, goes directly to Plaintiffs' bias and motivation, both of which are proper subject of inquiry on cross-examination. *See United States v. Harvey*, 547 F.2d 720, 722 (2d Cir. 1976) ("The law is well settled in this Circuit, as in others, that bias of a witness is not a collateral issue and extrinsic evidence is admissible to prove that a witness has a motive to testify falsely."); *LNC Invs., Inc. v. First Fid. Bank*, No. 92 Civ. 7584 (CSH), 2000 WL 1182772, at *2 (S.D.N.Y. Aug. 21, 2000) ("In cross-examining those witnesses, counsel for Defendants are entitled to very considerable latitude in inquiring into circumstances that may show bias on the part of the witness in favor of the party calling him.").

Plaintiffs' counsel are free to ask their clients at trial to explain this *volte-face* in the less than five months between their filing of the Complaint and their Amended Complaint. They are not entitled to a limiting instruction.[1]

Respectfully submitted,

/s/ Daniel H. Weiner

Daniel H. Weiner

---

1. Plaintiffs argue that they "naturally" deleted paragraph 17 of the Complaint, in which they specifically alleged that <u>Garza</u> controlled both GAW Miners and ZenMiner, as part of the Cooperation Agreement. (ECF No. 318 at 5.) Yet that deletion was neither required nor "natural" where, as here, Plaintiffs now argue that <u>Fraser</u> controlled those very same companies.

3

# EXHIBIT A

```
 1
 2            UNITED STATES DISTRICT COURT
 3          FOR THE DISTRICT OF CONNECTICUT
 4              CASE 3:16-CV-00940
 5 ------------------------------------------x
 6  DENIS MARC AUDET, MICHAEL PFEIFFER, DEAN ALLEN
 7  SHINNERS, and JASON VARGAS, INDIVIDUALLY and on
 8  Behalf of All Others Similarly Situated,
 9                    Plaintiffs,
10       v.
11  STUART A. FRASER, GAW MINERS, LLC, and ZENMINER,
12  LLC, (d/b/a ZEN CLOUD),
13                    Defendants.
14 ------------------------------------------x
15
16   VIDEOTAPED DEPOSITION OF DEAN ALLEN SHINNERS
17              New York, New York
18           Wednesday, July 25, 2018
19
20
21  Reported by:
22  Amy A. Rivera, CSR, RPR, CLR
23  JOB NO. 144960
24
25
```

1

2                         July 25, 2018

3                         9:00 a.m.

4

5           Videotaped deposition of DEAN ALLEN

6   SHINNERS held at the office of SUSMAN GODFREY,

7   L.L.P., 1301 Avenue of the Americas, Floor 32, New

8   York, New York, pursuant to Notice, before Amy A.

9   Rivera, Certified Shorthand Reporter, Registered

10  Professional Reporter, Certified LiveNote Reporter,

11  and a Notary Public of the States of New York, New

12  Jersey and Delaware.

13

14

15

16

17

18

19

20

21

22

23

24

25

1                DEAN ALLEN SHINNERS
2    document, right?
3        A.    Familiar with the document
4    specifically?
5              I couldn't tell you what it stated,
6    but, yes, we did remove him from -- or I guess
7    dismissed him from the lawsuit is the proper term.
8        Q.    And were you involved in that decision
9    to dismiss Mr. Garza from the lawsuit as a
10   defendant?
11       A.    Well, I'm -- okay.
12             MR. WATTERSON:  Well, I -- and you can
13         answer this question I think "yes" or "no,"
14         but -- maybe not "yes" or "no," but again,
15         just don't go into the conversations with
16         the lawyers, but you can answer the
17         question.
18             THE WITNESS:  Right.
19       A.    Can you restate the question, please?
20       Q.    Were you, Mr. Shinners, were you
21   involved in the decision to drop Mr. Garza as a
22   defendant in this lawsuit?
23       A.    Well, obviously, we had to approve it.
24   So the suggestion was -- was made by the law firm
25   and we had to approve it, and we approved it.

1                    DEAN ALLEN SHINNERS
2    information, and some of that I was privy to, but
3    none of it was new.  I -- all of the information
4    that I had seen or I've reviewed was information I
5    already had.
6         Q.    Is there an understanding that if
7    Mr. Garza doesn't continue to cooperate, he may be
8    brought back into the lawsuit?
9               MR. WATTERSON:  Again, to the
10        extent --
11        Q.    Your understanding, not the lawyers'
12   conversations.
13        A.    All right.
14              Yeah, and my understanding is that
15   there is a possibility that he may be brought back
16   in.
17        Q.    And tell me what you know about that,
18   putting aside lawyer conversations.
19        A.    I -- that's it.  That if -- if his
20   cooperation is not -- you know, if he's not
21   fulfilling whatever agreement there was to the
22   satisfactory -- you know, to the satisfaction of
23   the law firm, then he -- there's the possibility
24   that he would be brought back into the lawsuit.
25        Q.    Okay.  And that's something that --

1                DEAN ALLEN SHINNERS

2    that you're okay with, correct?

3         A.    I am okay with that, yes.

4         Q.    And that's -- in -- in -- in some

5    ways, you view that as an incentive for him to --

6    to give you all the information he has for use in

7    this lawsuit, correct?

8         A.    As an incentive?  You mean a

9    motivation?

10        Q.    Correct.

11        A.    Yeah.

12              If that -- I can't speak to that,

13   because I don't know what motivates Josh Garza, or

14   if anything can motivate him at this point in

15   time, you know.

16        Q.    Okay.  What -- what would it take for

17   you to say, look, we should bring him back as a

18   defendant in this lawsuit because he hasn't lived

19   up to his promise?

20        A.    What would I say to that?

21        Q.    What would it take?

22        A.    What would it take?

23              I really can't even answer that

24   question.  I -- it would -- it would be on the

25   moment.  In other words, you know what have you

# EXHIBIT B

Page 1

IN THE UNITED STATES DISTRICT COURT
OF CONNECTICUT

```
DENIS MARC AUDET, MICHAEL  )  Case 3:16-cv-00940
PFEIFFER, DEAN ALLEN       )
SHINNERS, and JASON        )  Hon. Michael P. Shea
VARGAS, Individually and   )  Courtroom 2
on Behalf of All Others    )
Similarly Situated,        )  ECF Case
                           )
     Plaintiffs,           )  CLASS ACTION
                           )
vs.                        )
                           )
STUART A. FRASER,          )
GAW MINERS, LLC, AND       )
ZENMINER, LLC, (d/b/a      )
ZEN CLOUD),                )
                           )
     Defendants.           )
```

*******************************

ORAL VIDEOTAPED DEPOSITION

HOMERO JOSHUA GARZA

December 14, 2018

*******************************

ORAL VIDEOTAPED DEPOSITION OF HOMERO JOSHUA GARZA, produced as a witness at the instance of the Plaintiffs and duly sworn, was taken in the above-styled and numbered cause on the 14th day of December, 2018, from 10:13 a.m. to 6:44 p.m., before April Balcombe-Anderson, Certified Shorthand Reporter in and for the State of Texas, reported by computerized stenotype machine at the Job No. 152595

```
 1
 2    offices of Regus Littlefield Congress, 106 East 6th
 3    Street, Suite 900, Austin, Texas 78701, pursuant to the
 4    Federal Rules of Civil Procedure and the provisions
 5    stated on the record or attached hereto.
 6
 7
 8
 9    Job No. 152595
10    Reported by April Balcombe, CSR, CRR, CRC
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

1                Homero Joshua Garza

2    means?

3        A.   Probably not as well as you do.

4        Q.   Well, the agreement, then, goes on to say, "If

5    the Court in Connecticut presiding over this action

6    determines there has been any such material breach or

7    that any representation by Mr. Garza is materially false

8    or misleading, Mr. Garza agrees that if the named

9    plaintiffs seek to reinstate him as the defendant," and

10   it goes on.

11              So do you understand that the plaintiffs

12   have the ability to bring you back in as a defendant in

13   this case?

14       A.   Yes, ma'am.

15       Q.   So what cooperation have you provided to the

16   plaintiffs in exchange for this agreement?

17       A.   I've met with Mr. Watterson, you know, once

18   before this meeting here today, and provided all the

19   documentation that I had put together that related to

20   Stuart as it related to GAW Miners.

21       Q.   And what documentation did you provide to the

22   plaintiffs?

23       A.   Any -- any correspondence that I could find

24   that related to Stuart.

25       Q.   And where did you search for that