**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, and DEAN ALLEN SHINNERS,<br>        Plaintiffs,<br><br>        v.<br><br>STUART A. FRASER,<br>        Defendant. | No. 3:16-cv-940 (MPS) |

**<u>JURY INSTRUCTIONS</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................ 2

INTRODUCTION .................................................................................................... 4

PART I: GENERAL INSTRUCTIONS ..................................................................... 4

    A.    ROLE OF THE COURT ................................................................................. 4

    B.    INSTRUCTIONS TO BE CONSIDERED AS A WHOLE ............................... 5

    C.    BOTH SIDES ENTITLED TO FULL AND FAIR HEARING ......................... 6

    D.    OBJECTIONS AND RULINGS ..................................................................... 6

    E.    DUTIES OF THE JURY ................................................................................. 9

    F.    "PROVE," "FIND," AND "ESTABLISH" ....................................................... 9

    G.    BURDEN OF PROOF:  PREPONDERANCE OF THE EVIDENCE .............. 10

    H.    FORMS OF EVIDENCE ............................................................................... 11

    I.    WHAT IS NOT EVIDENCE ......................................................................... 12

    J.    DIRECT & CIRCUMSTANTIAL EVIDENCE .............................................. 13

    K.    INFERENCE DEFINED ............................................................................... 14

    L.    WITNESS CREDIBILITY ............................................................................ 15

    M.    IMPEACHMENT OF WITNESSES ............................................................... 16

    N.    UNCONTRADICTED TESTIMONY ............................................................ 16

    O.    USE OF DEPOSITION TESTIMONY ........................................................... 17

    P.    EXPERT WITNESS ...................................................................................... 17

PART II: PLAINTIFFS' CLAIMS IN THIS CASE ................................................. 18

    A.    OVERVIEW ................................................................................................. 18

    B.    SECURITIES CLAIMS ................................................................................ 20

        2.    *CUSA Claims* .................................................................................. 22

        3.    *Federal Securities Claim* ................................................................ 30

    C.    AIDING AND ABETTING COMMON LAW FRAUD .................................. 39

D.    AFFIRMATIVE DEFENSE ASSERTED ONLY AGAINST NAMED PLAINTIFF SHINNERS.42

**PART III: FINAL INSTRUCTIONS** ...................................................................................................**42**

A.    NOTE TAKING ...................................................................................................42

B.    UNANIMOUS VERDICT ...................................................................................43

C.    CELL PHONES AND TABLETS.........................................................................43

D.    FOREPERSON ...................................................................................................44

E.    VERDICT FORM ...............................................................................................44

F.    FINAL INSTRUCTIONS ...................................................................................45

## INTRODUCTION

Members of the jury, you have now heard all of the evidence in this case.  I shall now instruct you concerning the law applicable to the case.  After that, you will hear the arguments of counsel and then I will give you some final instructions.  You will then return to the jury room to deliberate in accordance with these instructions.  Before I give you these instructions, however, I want to express my thanks to you for the time and energy you have devoted to this trial.  Jury service is rarely convenient, but without you, justice could not be done in this case.

It will take some time for me to read these instructions to you.  But it is important that you listen carefully and pay close attention.  You have been provided with a copy so that you can read along as we go.

My instructions will be in three parts: first, I will discuss general rules concerning the role of the court and the duty of the jury; second, I will go over the issues in this case and set out the specific elements that you must find based on the evidence at trial; and third, I will give you some rules for your deliberations.

After I have given these instructions, you will go back into the jury room to deliberate. You will have with you the following: the original Verdict Form (all of your individual copies will be collected before you deliberate), the original exhibits, your individual copies of these instructions and any personal notes that you may have taken.  At the conclusion of your deliberations, you will use the Verdict Form to report your verdict to the Court and the parties.

## PART I: GENERAL INSTRUCTIONS

### A.  ROLE OF THE COURT

As judge, I perform basically two functions during the trial.  First, I decide what evidence you may consider.  You have heard me doing that throughout the trial.  Second, I instruct you on

the law that you are to apply to the facts in this case. I gave you some preliminary instructions before trial began, but it is now—at the close of evidence—that the final instructions governing your deliberations are given, so please be patient and listen closely. I believe that everything I am going to tell you is consistent with the preliminary instructions I gave you at the start of the trial, but if you have any doubt, you should not rely on anything different I may have said in the preliminary instructions. The instructions I am now giving you must guide your deliberations in this case.

It is your duty to take the law as I will give it to you and to apply it to the facts as you determine them. You must take the law as I give it to you and if any attorney or any witness or exhibit has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow. Also, you must not substitute your own notions or opinions of what the law is or ought to be for what I tell you the law is in my instructions.

## B. INSTRUCTIONS TO BE CONSIDERED AS A WHOLE

I may repeat certain parts of these instructions. That does not mean that those parts should be emphasized. You should not single out any one part of my instructions and ignore the rest. Instead, you should consider all of the instructions as a whole and consider each instruction in light of all the others.

The order in which I give you instructions does not indicate their relative importance. Do not read into these instructions, or into anything I have said or done, as any suggestion from me about what verdict you should return—that is a matter for you alone to decide.

I should also point out to you that, although you have been given a copy of the instructions to follow as I deliver them, if I say aloud anything at all different from what is written, you must follow what I say here in court.

## C. BOTH SIDES ENTITLED TO FULL AND FAIR HEARING

Regardless of your ultimate decision about the parties' claims, all parties in this case are entitled to a full and fair hearing. The parties are entitled to a trial free from prejudice or bias. Our justice system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence, regardless of the final outcome of the case.

It is your duty, therefore, to give careful thought to every issue set forth by these instructions, regardless of any general feeling that you may have about which party is right. In deciding the facts or applying the law as I have given it to you, you must not be swayed by bias or prejudice for or against any party. You must not be swayed by your personal opinions about any of the issues raised in this trial. You should not be swayed by sympathy. You should be guided solely by the evidence presented during trial and the law that I give you, without regard to the consequences of your verdict. If you let your sympathy for one side or another interfere with your clear thinking, there is a risk that you will not arrive at a just verdict.

## D. OBJECTIONS AND RULINGS

Our courts operate under an adversary system in which we believe that the truth will emerge through the competing presentations of adverse parties. It is the role of the attorneys to press as hard as they can for their respective positions. In fulfilling that role, they have not only the right, but the obligation to make objections to the introduction of evidence they feel is improper. You should not show any prejudice against an attorney or his or her client because the attorney objected to the admission of evidence or the phrasing of a question, or asked the Court to rule on an objection or the propriety of a question. The application of the rules of evidence is not always clear, and lawyers often disagree about them. It has been my job as the judge to resolve these disputes during the course of the trial.

It is important for you to realize, however, that my rulings on evidentiary matters have nothing to do with the ultimate merits of the case, and are not to be considered as points scored for one side or the other. You are not to consider why a lawyer made an objection or why I ruled on it in the manner that I did. You should draw no inference from the fact that a lawyer objected to evidence. Nor should you draw any inference from the fact that I might have sustained or overruled an objection. My rulings on objections have nothing to do with the merits of the case or with the credibility of the witnesses.

If I have sustained an objection to a question asked of a witness, you must disregard the question entirely, and may draw no inference from the question, nor speculate about what the witness would have said if he or she had been permitted to answer the question. If I have stricken or told you to disregard or ignore an answer, you must not rely on that answer, because it is not evidence. If I have given you a limiting instruction that certain evidence was to be considered by you for a limited purpose only, then you must follow that limiting instruction and use the evidence only for the limited purpose for which it was admitted. For example, I instructed you during the trial and instruct you now again as follows:

- You heard evidence about the acquisition of ZenMiner by GAW Miners and the involvement of Mr. Fraser's son, Thomas Fraser, in that matter. You may consider that evidence only for the limited purpose of deciding what if any control Stuart Fraser had over GAW Miners and ZenMiner and what if anything Stuart Fraser knew about Mr. Garza's activities. You may not consider that evidence for any other purpose. I remind you that Stuart Fraser is not on trial for what his son might have said or done. I also instruct you that the statements made in relation to the acquisition of ZenMiner by GAW Miners are not the false statements the Plaintiffs

allege they relied on when purchasing the products at issue in this case, *i.e.*, Hashlets, Hashpoints, Hashstakers, and Paycoin.

- You heard evidence about an Agreement between the Plaintiffs and Mr. Garza. You may consider that agreement only for the limited purpose of deciding Mr. Garza's credibility and understanding the sequence of events between the plaintiffs' original complaint and their amended complaint. You may not consider the Agreement for any other purpose. In particular, you may not consider the terms of the Agreement or the fact that Mr. Garza was once but is no longer a defendant in deciding on the liability of Mr. Fraser. Finally, when considering how the Agreement affects Mr. Garza's credibility, if at all, you must keep in mind that the Agreement states in effect that the Plaintiffs may reinstate their claims against Mr. Garza only if the Court decides that he has breached the agreement or made a materially false or misleading statement in the Agreement.

One further note about attorneys: During the course of a trial, one cannot help but recognize the various personalities and styles of the attorneys. But it is important for you as jurors to recognize that this is not a contest between attorneys. Whatever you may think about the conduct of the lawyers during this trial, you must remember that this dispute is about the parties, not the lawyers, and you must decide this case solely on the basis of the evidence. Remember, statements and characterizations of the evidence by the attorneys are not evidence. Insofar as you find their closing arguments to be helpful, take advantage of them, but it is your memory and your evaluation of the evidence and my instructions on the law that count in this case.

**E.  DUTIES OF THE JURY**

As members of the jury, you are the sole and exclusive judges of the facts.  You pass upon the evidence.  You determine the credibility of witnesses.  You resolve any conflicts that may exist in the testimony.  You draw whatever reasonable inferences you decide should be drawn from the facts you determine, and you weigh the evidence.  No one may invade your province or function as jurors.  Because you are the sole and exclusive judges of the facts, I do not mean to indicate, in this charge or at any time during the trial, any opinion as to the facts or as to what your verdict should be.  The rulings I have made during the trial are not any indication of a view of what your decision should be or which party should prevail in this case, because I have no view on those matters.

In order for you to determine the facts, you must rely upon your own recollection of the evidence.  In reaching a verdict, you must carefully and impartially consider all of the evidence in the case and then apply the law as I have explained it to you.  Regardless of any opinion you may have as to what the law is or ought to be, it would be a violation of your sworn duty to base a verdict upon any understanding or interpretation of the law other than the one I give you.

The verdict you reach must be unanimous, that is, agreed upon by each of you.  Each of you must decide the case for yourself, but do so only after impartial consideration of the evidence in the case with your fellow jurors.

**F.  "PROVE," "FIND," AND "ESTABLISH"**

Throughout the remainder of my instructions to you, I will use the word "prove" when talking about what the plaintiffs must do in order to establish the liability of the defendant and what the defendant must do to establish his affirmative defenses, as I will explain later.  Unless I instruct you otherwise, and for one of the claims I will instruct you otherwise, my use of the word

"prove" means "prove by the preponderance of the evidence," even if I do not always repeat those words. Similarly, when I speak of your "finding" various facts, you must find those facts to have been proven by the preponderance of the evidence, even if I simply use the word "find." Likewise, I will speak of the parties "establishing" various facts. Even if I simply use the word "establish," you must find that fact has been established by the preponderance of the evidence.

## G. BURDEN OF PROOF: PREPONDERANCE OF THE EVIDENCE

Because this is a civil case, the plaintiffs have the burden of proving every disputed element of their claims by a preponderance of the evidence. There is one claim that the plaintiffs must prove by a different standard – called "clear and convincing evidence" – about which I will instruct you later; but all other claims in this case must be proved by a preponderance of the evidence.

To establish a fact by a preponderance of the evidence, the plaintiffs must prove that the fact is more likely true than not true. In other words, if you find that the credible evidence on a given issue either favors the defendant or is evenly divided between the plaintiffs and the defendant, then you must decide that issue for the defendant. However, if the plaintiffs prove that a fact is more likely true than not, even if only slightly more true than not, then you are to find that they have proven the fact by a preponderance of the evidence.

It might be helpful to visualize a pair of scales. Imagine that you put on one scale the evidence you find credible, relevant and supportive of the plaintiffs on a particular issue on which they bear the burden of proof, and place on the other scale the evidence you find credible, relevant and supportive of the defendant. If the scales tip in favor of the defendant on that issue, even a little bit, or if the scales are evenly balanced, the plaintiffs have not sustained their burden of proof on the issue. But if the scales tip in favor of the plaintiffs on that issue, even a little bit, then on that issue they will have sustained their burden of proof.

In determining whether a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them.  You may not speculate or guess.  A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or exhibits.

In addition to denying the plaintiffs' claims, the defendant has alleged what are called affirmative defenses, which are a set of facts that, if proven, would mean that the defendant is not liable to the plaintiffs even if the plaintiffs prove the elements of their claims.  The burden of proving each affirmative defense rests on the defendant.  The defendant must prove each element of each affirmative defense by a preponderance of the evidence.  I will instruct you more regarding the affirmative defenses later.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial.  That requirement does not apply to a civil case such as this, and you should not consider or discuss that standard in your deliberations.

## H.  FORMS OF EVIDENCE

Next, I want to discuss with you generally what we mean by evidence and how you should consider it.  The evidence from which you are to decide what the facts are comes in one of two forms:

First, there is the sworn testimony of witnesses, both on direct examination and cross-examination, and regardless of who called the witness.

Second, there are the exhibits that have been received into the trial record.  All of the exhibits that have been admitted into evidence will be with you in the jury room.  If an exhibit has

been admitted into evidence, it is evidence that can be considered by you regardless of whether any witness referred to the exhibit or testified about it during the trial.

One word about the exhibits that you will have in the jury room. You may notice that certain exhibit numbers have not been used. For example, you may find exhibit number 5 and number 7 but not find number 6. Please do not be concerned about the numerical sequencing of exhibits and do not think that an exhibit is missing. The reason for what would otherwise seem like gaps is that we assigned all of the potential trial exhibits numbers long before trial, and then before or during trial, counsel decided not to introduce certain exhibits or certain exhibits were simply marked for identification purposes and then not made full exhibits. We have checked the exhibits and made sure that you will have all of the exhibits that you should have, so once again do not pay any attention to the numbering or sequencing of the exhibits.

You will see that on some of the parties' exhibits text or other information has been blacked out. Those redactions were ordered by me so that the exhibits would not contain irrelevant evidence that has no bearing on the issues you are to decide. Neither the plaintiffs, nor the defendant, nor their lawyers, chose what information to redact. You should not speculate about what the redacted information might be or what meaning it may at one time have had. The fact that redactions were made, and speculation about the redacted information, must play no role in your deliberations.

## I.   WHAT IS NOT EVIDENCE

It is the witnesses' answers, and not the lawyers' questions, that are evidence. At times, a lawyer may have incorporated into a question a statement that assumed certain facts to be true, and asked the witness if the statement was true. If the witness denied the truth of a statement, and there is no evidence in the record proving that assumed fact to be true, then you may not consider it to

be true simply because the assumed fact was contained in the lawyer's question.   Testimony that I have ordered stricken, testimony that I have instructed you to disregard or ignore, and testimony that I have excluded are not evidence and may not be considered by you in rendering your verdict.

What the lawyers say in their opening statements and closing arguments, in their comments, objections, and even in their questions is not evidence.  What they say in their closing arguments is intended to help you understand the evidence and to reach your verdict.  However, if your recollection of the facts differs from the lawyers' statements, you should rely on your memory.

Moreover, what I may have said during the trial or what I may say in these instructions is not evidence, and my rulings on the admissibility of evidence do not indicate any opinion about the weight or effect of such evidence.

It is for you—and you alone—to decide the weight, if any, to be given to the testimony you have heard and to the exhibits you have seen.

## J.  DIRECT & CIRCUMSTANTIAL EVIDENCE

There are two types of evidence that you may properly use in reaching your verdict.  One type of evidence is direct evidence.  Direct evidence includes a witness's testimony about something the witness knows by virtue of his or her own senses—something he or she has seen, felt, touched, or heard.  For example, if a witness testified that when she left her house this morning, it was raining, that would be direct evidence about the weather.

Circumstantial evidence is evidence that tends to prove a disputed fact by proof of other facts.  For example, assume that when you came into the courthouse this morning the sun was shining and it was a nice day.  Also assume that as you were sitting here, someone walked in with an umbrella that was dripping wet.  Then a few minutes later another person also entered with a

wet umbrella.  Now, you cannot look outside of the courtroom and you cannot see whether or not it is raining.  So you have no direct evidence of that fact.  But on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to infer that it had been raining.

That is all there is to circumstantial evidence.  On the basis of your reason, experience, and common sense, you infer from one established fact the existence or non-existence of some other fact.

Circumstantial evidence is of no less value than direct evidence.  It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that your verdict be based on a preponderance of all of the evidence presented.

## K.  INFERENCE DEFINED

During the trial you may have heard the attorneys use the term "inference," and in their arguments, they may ask you to infer, on the basis of your reason, experience and common sense, from one or more established facts, the existence of some other fact.

An inference is not a suspicion or a guess.  It is a reasoned, logical conclusion that a disputed fact exists because another fact has been shown to exist.

There are times when different inferences may be drawn from the same facts, whether proven by direct or circumstantial evidence.  One party may ask you to draw one set of inferences, while the other party asks you to draw another.  It is for you, and you alone, to decide which inferences you will draw.

The process of drawing inferences from facts in evidence is not a matter of guesswork or speculation.  An inference is a deduction or conclusion that you are permitted, but not required, to draw from the facts that have been established by either direct or circumstantial evidence.  In

drawing inferences, you should use your common sense.  The mere process of drawing an inference from the evidence does not change the burden of proof, which remains with the plaintiffs throughout the case.  Finally, you may not draw any inferences from the mere fact that the plaintiffs filed this lawsuit or that the defendant has chosen to defend it.

## L.  WITNESS CREDIBILITY

You have had the opportunity to observe all of the witnesses.  It is now your job to decide how believable each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.

In making these judgments, you should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

How do you determine truthfulness?  You base it on what you have seen and heard.  You watched the witness testify.  Everything a witness said or did while testifying counts in your determination.  How did the witness impress you?  Was he or she frank, forthright and candid, or evasive and edgy as if hiding something?  How did the witness appear; what was his or her demeanor—that is, his or her behavior, manner, and appearance while testifying?  Often it is not what a person says but how he or she says it that convinces us.

You should use all the tests for truthfulness that you would use in determining matters of credibility in your everyday lives.  You should consider any bias or hostility the witness may have shown for or against any party as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he or she testified; the accuracy of the witness's memory; the witness's candor or lack of candor

and intelligence; the reasonableness and probability of the witness's testimony; its consistency or lack of consistency; and its corroboration or lack of corroboration with other credible evidence.

Always remember that in assessing any witness's testimony you should use your common sense, your good judgment, and your own life experience.

## M. IMPEACHMENT OF WITNESSES

A witness may be discredited or "impeached" by contradictory evidence, by a showing that the witness testified falsely about a material matter, by evidence that the witness has been convicted of a felony, or by evidence that at some other time the witness said or did something inconsistent with the witness's present testimony. A felony is a crime punishable by more than one year in prison. It is your exclusive province to give the testimony of each witness such credibility or weight, if any, as you think it deserves.

If you find that a witness testified untruthfully in some respect, you may consider that fact in deciding the weight you will give to that witness's testimony. Considering that fact and all other relevant evidence, you may accept or reject the testimony of each witness either in whole or in part.

## N. UNCONTRADICTED TESTIMONY

You are not required to believe testimony even though the testimony is uncontradicted and the witness is not discredited or impeached. You may decide, because of the witness's manner and demeanor or because of the improbability of his or her testimony or for other reasons, that the witness's testimony is not worthy of belief.

On the other hand, the testimony of a single witness may be enough to convince you of a fact in dispute, if you believe that the witness has truthfully and accurately related what in fact occurred.

## O.  USE OF DEPOSITION TESTIMONY

While several of the witnesses whose testimony has been presented to you were here to testify in person, the testimony of other witnesses was presented to you by playing a video recording of questions asked and answers given by that witness under oath at an earlier time. Testimony that is presented in this manner may be accepted or rejected by you in the same way as the testimony of witnesses who have been physically present in court.

## P.  EXPERT WITNESS

We have had in this case the testimony of an expert witness.  Expert witnesses are people who, because of their training, education, and experience, have knowledge beyond that of the ordinary person.  Because of that expertise in whatever field they happen to be in, expert witnesses are allowed to give their opinions.  Ordinarily, a witness cannot give an opinion, but rather is limited to testimony as to the facts in that witness's personal knowledge.  The expert in this case has given opinions.  However, the fact that this witness may qualify as an expert does not mean that you have to accept his opinions.  You can accept or reject his opinions.

In making your decision whether to believe an expert's opinion, you should consider the expert's education, training and experience in the particular field; the information available to the expert, including the facts the expert had and the documents available to the expert; the expert's opportunity and ability to examine those things; the expert's ability to recollect the activity and facts that form the basis for the opinion; and the expert's ability to tell you accurately about the facts, activity, and the basis for the opinion.

You should ask yourselves about the methods employed by the expert and the reliability of the result.  You should further consider whether the opinions stated by the expert have a rational and reasonable basis in the evidence.  Based on all of those things, together with your general observation and assessment of the witness, it is then up to you to decide whether or not to accept

the opinions.  You may believe all, some, or none of the testimony of an expert witness.  In other words, an expert's testimony is subject to your review like that of any other witness.

## PART II: PLAINTIFFS' CLAIMS IN THIS CASE

### A. OVERVIEW

    1.  Class Action/Plaintiffs

As I explained to you at the beginning of this trial, this case is proceeding as a class action. The law allows a few individuals to bring a lawsuit as representatives of a whole group of individuals or entities who have similar claims.  That whole group of individuals is referred to as the "class."

The class in this case consists of persons and entities who purchased or acquired the cryptocurrency-related products called "Hashlets," "Hashpoints," "Paycoin," or "Hashstakers" from GAW Miners, LLC and/or ZenMiner, LLC between August 1, 2014 and January 19, 2015. These persons or entities are known as "class members" or "plaintiffs."  When I refer to "plaintiffs" in these instructions, I mean all members of the class.

You will also hear me refer to the four cryptocurrency-related products I just listed as the "Products."

Three of the plaintiffs are known as the "named plaintiffs" or the "lead plaintiffs."  They are Denis Marc Audet, Michael Pfeiffer, and Dean Allen Shinners.  These named plaintiffs bring this case on behalf of themselves and all other class members.  When referring to Messrs. Audet, Pfeiffer, and Shinners, I will use the term "named plaintiffs" or "lead plaintiffs."

    2.  Defendant

The claims you are considering are brought only against Stuart Fraser.  The plaintiffs allege that others (including GAW Miners, ZenMiner, and Josh Garza) made false statements or were

otherwise involved in the alleged fraud.  In deciding the claims brought against Mr. Fraser, you will need to consider whether GAW Miners, ZenMiner, and/or Mr. Garza did make false statements or were otherwise involved in the alleged fraud.  But your verdict in this case will be for or against Mr. Fraser alone.  You are not to speculate as to why any other persons are not defendants in this trial, and you are not to consider the absence of other defendants when deciding whether or not Mr. Fraser is liable.

3.  Liability Only

In this trial you are deciding only whether Mr. Fraser is liable to the plaintiffs for one or more of the claims brought against him.  If you were to find Mr. Fraser liable, the issue of what if any damages the plaintiffs incurred would be decided in a later proceeding not involving you.  You are not to consider or discuss the issue of damages in your deliberations.

4.  Overview of Claims

I will now summarize the plaintiffs' claims.  Later, I will explain to you what the elements of the claims are that the plaintiffs must prove.

Plaintiffs allege that GAW Miners, LLC (which I will also refer to as the "Company") violated certain federal and state laws.  I will sometimes refer to the alleged violations by the Company as "primary violations."  With regard to Mr. Fraser, Plaintiffs claim that he is "secondarily" liable to Plaintiffs for the Company's primary violations because he allegedly had control over the Company, or because he allegedly materially assisted the Company's alleged fraud.  I will sometimes refer to any liability of Mr. Fraser as "secondary."

In particular, the plaintiffs assert five claims against Mr. Fraser: (1) control person liability for the Company's sale of unregistered securities in violation of the Connecticut Uniform Securities Act; (2) control person liability for the Company's fraud in the offer or sale of securities

in violation of the Connecticut Uniform Securities Act; (3) liability for aiding and abetting the Company's fraud in the offer or sale of securities in violation of the Connecticut Uniform Securities Act; (4) control person liability for the Company's fraud in the offer or sale of securities in violation of the Federal Securities Exchange Act; and (5) liability for aiding and abetting the Company's common law fraud.

Mr. Fraser denies these allegations.  He asserts that he did not control the Company, and that he did not participate or assist in any fraud that the plaintiffs allege that the Company committed.

I will now instruct you on each of the plaintiffs' claims.  Each claim has elements that the plaintiffs must prove.  If the plaintiffs do not satisfy their burden of proof with respect to each element of a claim, you must find for Mr. Fraser on that claim.  If they do satisfy their burden of proof with respect to each element of a claim, you must find for the plaintiffs and against Mr. Fraser on that claim unless he has satisfied his burden of proof as to an affirmative defense to that claim.  In that situation, even if the plaintiffs satisfy their burden of proof on each element of a claim, if Mr. Fraser then satisfies his burden of proof on an affirmative defense to that claim, you must find in favor of Mr. Fraser with respect to that claim.

**B. SECURITIES CLAIMS**

1. Definition of "Security" Applicable to State and Federal Securities Claims

Four of the plaintiffs' five claims against Mr. Fraser require the plaintiffs to prove that one or more of the Products were "securities."  The only claim that does not require such proof is the fifth claim listed above, i.e., liability for aiding and abetting common law fraud.  Therefore, a suitable place for you to begin is to determine whether the plaintiffs have proved that one or more of the four Products at issue—Hashlets, Hashpoints, Paycoin, and Hashstakers—are "securities."

The plaintiffs allege that the Products are "investment contracts," which are a type of security.  To establish that a Product is an "investment contract," the plaintiffs must prove that there was, with regard to that Product:

> (1) an investment of money;
>
> (2) in a common enterprise;
>
> (3) with profits to be derived solely from the efforts of others.

For each of these elements, you must focus on what the buyers of the Products were led to expect about the nature of the Products.

For the second element, common enterprise, Plaintiffs must prove with respect to a specific Product, either:

> (1) that each individual buyer's fortunes were tied to the fortunes of the other buyers by the pooling of their assets, usually combined with the pro-rata distribution of profits, *i.e.*, distribution proportionate to the buyer's investment; or
>
> (2) that the individual buyer's fortunes were tied to the fortunes of GAW Miners, *i.e.*, that the fortunes of the buyers and the Company were linked so that they would rise and fall together.

For the third element, that profits be derived solely from the efforts of others, the word "solely" should not be taken literally.  Rather, you should consider whether the product was being promoted primarily as an investment, in which case it would be an investment contract, or whether the product was being promoted as a means whereby participants could pool their activities, money, and the promoter's contribution in a meaningful way, in which case it would not be an investment contract.  If there was a reasonable expectation of significant investor control, then profits would not be considered derived solely from the efforts of others.  But if the expectation was that the participants would be passive investors, then profits would be considered derived

solely from the efforts of others.  The touchstone is the presence of an investment in a common venture premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of others.

If you find that the plaintiffs have proved that a particular Product satisfies the three above-listed elements for an "investment contract," then the Product is a security and you should proceed to consider the plaintiffs' four securities claims with respect to that Product, except there is an additional consideration you will have to take into account for the fourth securities claim, *i.e.*, the federal securities claim, which I will explain below.  If you do not find that a particular Product satisfies the three above-listed criteria for an investment contract, then that Product is not a security and you should find for Mr. Fraser on the four securities claims with respect to that Product.

2.  CUSA Claims

(a) CUSA Claim for Sale of Unregistered Securities

First, I will instruct you on the plaintiffs' unregistered securities claim.  Plaintiffs allege that GAW Miners violated the Connecticut Uniform Securities Act (which I will refer to as the "CUSA") by offering or selling four products—Hashlets, Hashstakers, Hashpoints, and Paycoin—that the plaintiffs allege are unregistered securities.  And they allege that Mr. Fraser is liable under the CUSA for the Company's offer or sale of unregistered securities because he was a "control person" of the Company.

To prevail on this claim against Mr. Fraser, Plaintiffs must prove each of the following elements:

(1) First, that GAW Miners offered or sold unregistered securities.

(2) Second, that Mr. Fraser acted as a "control person" of GAW Miners, as I will explain that term to you.

<u>First Element: Primary Violation</u>

With respect to the first element, the CUSA makes it unlawful for a person to offer or sell a security in this state unless the security has been registered with the Connecticut Department of Banking. To establish this first element, the plaintiffs must prove each of the following two sub-elements:

      (1) First, that GAW Miners offered or sold a security in this state.

      (2) Second, that that security was not registered with the Connecticut Department of Banking.

<u>Second Element: Control</u>

With respect to the second element of their unregistered securities claim, the plaintiffs must prove that Mr. Fraser was a "control person" of GAW Miners. To do so, the plaintiffs must prove any one of the following three things:

      (1) Mr. Fraser directly or indirectly controlled GAW Miners; or

      (2) Mr. Fraser was an officer or director of GAW Miners; or

      (3) Mr. Fraser occupied a similar status to a partner, officer, or director of GAW Miners, or he performed similar functions to a partner, officer, or director of GAW Miners.

A company may have more than one control person.

The first way the plaintiffs may establish that Mr. Fraser was a control person of GAW Miners is by proving that Mr. Fraser directly or indirectly controlled GAW Miners. "Control" means the power to direct or cause the direction of the management or policies of a company, whether through the ownership of voting securities, by contract, or otherwise. Some examples of factors that bear on the issue of control are: whether Mr. Fraser had the ability to exert influence over the strategic decisions and daily operations of GAW Miners; the extent to which he owned an interest in GAW Miners; whether he had financial leverage over GAW Miners through lending arrangements or other means; and whether any personal relationships he had with people holding

positions of authority or control at GAW Miners were of such a nature as to give him direct or indirect control over the Company. These are just examples and no one factor is determinative. To prove that Mr. Fraser directly or indirectly controlled the Company, the plaintiffs need not prove that he actually directed the management and policies of the Company. But they do need to prove that he actually possessed the ability to direct the management and policies of the Company.

Alternatively, the second way that the plaintiffs may establish that Mr. Fraser was a control person of GAW Miners is by proving that he was an officer or director of GAW Miners.

Finally, the third way that the plaintiffs may establish that Mr. Fraser was a control person of GAW Miners is by proving that he occupied a similar status to that of a partner, officer, or director of GAW Miners, or that he performed similar functions to a partner, officer, or director of GAW Miners. This means that you do not need to decide that Mr. Fraser actually held the title of partner, officer, or director of GAW Miners to find that he was a control person. The focus here is on the substance of Mr. Fraser's role in the Company, not on the formal job titles or labels.

In sum, the prevail on their unregistered securities claim against Mr. Fraser, the plaintiffs must prove by a preponderance of the evidence that: (1) GAW Miners sold or offered to sell unregistered securities in Connecticut; and (2) Mr. Fraser was a "control person" of GAW Miners in one or more of the three ways that I just described.

<u>Unregistered Securities—Affirmative Defense</u>

If Mr. Fraser proves that he did not know or in the exercise of reasonable care could not have known that the Products were being sold or that the Products were not registered, then you must find for Mr. Fraser on the claim for sale of unregistered securities.

(b) <u>CUSA Claims for Securities Fraud</u>

Now I will address the plaintiffs' two Connecticut securities fraud claims.

The plaintiffs allege that GAW Miners committed fraud in the offer or sale

of securities.  The CUSA makes it unlawful for a person to offer or sell a security by means of either an untrue statement of a material fact or an omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they are made, not misleading.  Here, the plaintiffs allege that GAW Miners offered and sold securities by means of untrue statements and omissions.

The plaintiffs claim that Mr. Fraser is liable for the Company's securities fraud in either or both of the following ways: first, because he was a "control person" of GAW Miners; and, second, because he materially assisted GAW Miners in offering or selling a security by means of a material untrue statement or omission to state a material fact necessary to make the statements made, in the light of the circumstances under which are made, not misleading.

Control

To prevail on their "control person" claim against Mr. Fraser for securities fraud under the CUSA, the plaintiffs must prove each of the following two elements:

(1) First, that GAW Miners is liable for the offer or sale of securities by means of an untrue statement of a material fact or an omission to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

(2) Second, that Mr. Fraser was a "control person" of GAW Miners in one or more of the three ways I explained to you earlier in my discussion of the unregistered securities claim.

Control—First Element: Primary Violation

With respect to the first element, the CUSA makes it unlawful for a person to offer or sell a security by means of a material untrue statement or omission.  To establish this first element, the plaintiffs must prove each of the following two sub-elements:

(1) First, that GAW Miners offered or sold a security by means of either an untrue statement of a material fact or an omission to state a material fact necessary to make any statements made, in the circumstances under which they were made, not misleading;

(2) <u>Second</u>, that the plaintiffs did not know either of the untruth of any such statement or of any such material omission.

Regarding the first sub-element, a fact is considered "material" if there is a substantial likelihood that a reasonable investor would have considered the fact significant in making the investment decisions at issue.  Offering or selling a security "*by means of*" an untrue statement of a material fact or an omission means that there is some causal connection between the allegedly untrue statement or omission and the investor's purchase of the securities.  Under this standard, the untrue statements or omissions need not have had a decisive effect on the investor's purchasing decision.  Rather, the standard is whether a reasonable investor would have considered the statements or omissions significant when making investment decisions.

Regarding the second sub-element, the plaintiffs must prove that they did not know "of the untruth" of the statements the plaintiffs allege were misstatements of a material fact or of the Company's alleged omissions to state a material fact.  This means that the plaintiffs did not have actual knowledge that the statements made by GAW Miners were untrue or did not have actual knowledge of the omissions.

<u>Control—Second Element: Control Person</u>

For the second element of the plaintiffs' "control person" claim against Mr. Fraser for the Company's alleged securities fraud under the CUSA, the plaintiffs must prove by a preponderance of the evidence that Mr. Fraser was a control person of GAW Miners in one or more of the three ways I described to you in discussing the unregistered securities claim.  Please refer to my earlier instructions regarding "control person" when considering this issue.

\*\*\*

In sum, to prevail on their claim that Mr. Fraser is liable as a control person for the Company's alleged securities fraud under the CUSA, the plaintiffs must prove by a preponderance

of the evidence: first, that GAW Miners offered or sold securities by means of an untrue statement or an omission to state a material fact necessary to make the statements made not misleading, and that Plaintiffs had no actual knowledge of the untruth of the statement or of the omission; and second, that Mr. Fraser was a "control person" of GAW Miners in one or more of the three ways that I previously described.

### Control—Affirmative Defense

Even if you find that the plaintiffs have proven all the elements of their claim that Mr. Fraser was a "control person" with respect to the Company's alleged securities fraud under the CUSA, you must consider the following affirmative defense, for which the burden of proof is on Mr. Fraser:  A person is not liable as a "control person" under the CUSA if he proves by a preponderance of the evidence that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability is alleged to exist. Thus, Mr. Fraser is not liable if he proves by a preponderance of the evidence that he did not know, and in the exercise of reasonable care could not have known, of the Company's allegedly untrue statements of material fact.

### Aiding & Abetting

For the plaintiffs' second claim against Mr. Fraser for the Company's alleged securities fraud under the CUSA, the "aiding and abetting" claim, the plaintiffs must prove that Mr. Fraser aided and abetted the Company's alleged primary violations.  This claim is independent from the claim that Mr. Fraser was a "control person" with respect to the Company's alleged securities fraud.  A person can be liable as an aider and abettor for violations of the CUSA even if he or she is not liable as a control person, and vice-versa.

In order for the plaintiffs to establish that Mr. Fraser is liable for aiding and abetting GAW Miners' alleged fraud in the offer or sale of a security, the plaintiffs must prove each of the following three elements:

(1) <u>First</u>, that GAW Miners committed a primary violation of the CUSA by offering or selling securities by means of an untrue statement of a material fact or any omission to state a material fact necessary to make the statements made, in the light of the circumstances under which they are made, not misleading.

(2) <u>Second</u>, that Mr. Fraser materially assisted the Company in the offer or sale of the alleged securities.

(3) <u>Third</u>, that Mr. Fraser materially assisted the Company in their primary violation of the Act.

## Aiding & Abetting—First Element: Primary Violation

For the first element, the plaintiffs must prove that GAW Miners committed a primary violation of the CUSA. This is the same determination that I asked you to make for the last claim. Accordingly, your finding on the previous claim about whether GAW Miners violated the CUSA by committing securities fraud will apply equally here.

## Aiding & Abetting—Second and Third Elements: Material Assistance

To prove the second element of their aiding and abetting claim, the plaintiffs must prove that Mr. Fraser "materially assisted" GAW Miners in the offer or sale of the alleged securities— i.e., Hashlets, Hashpoints, Paycoin, and Hashstakers. Assistance is "material" if it has a natural tendency to influence, or is capable of influencing, the decision by the purchaser.

Finally, to prove the third element of their aiding and abetting claim, the plaintiffs must prove that Mr. Fraser "materially assisted" GAW Miners in offering or selling the alleged securities by means of an untrue statement of a material fact or an omission to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading. In other words, this third element concerns whether Mr. Fraser materially assisted

the Company in committing securities fraud, while the second element concerned whether Mr. Fraser materially assisted the Company with the offer or sale of the alleged securities at issue. "Material assistance" has the same meaning I explained to you with respect to the second element. Such assistance may consist of conduct or statements.  It is not necessary to find that Mr. Fraser himself made an untrue statement or an omission in order for him to have materially assisted the Company's alleged offer or sale of securities by means of an untrue statement or omission.

***

In sum, to prevail on their claim that Mr. Fraser is liable for aiding and abetting the Company's alleged securities fraud under the CUSA, the Plaintiffs must prove by a preponderance of the evidence: first, that GAW Miners is liable under the CUSA for the offer or sale of securities by means of an untrue statement or omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; second, that Mr. Fraser materially assisted the Company in the offer or sale of securities; and third, that Mr. Fraser materially assisted the Company in offering or selling securities by means of an untrue statement of material fact or an omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

Aiding & Abetting—Affirmative Defense

Even if you find that Plaintiffs have proven by a preponderance of the evidence all three elements of aiding and abetting fraud under the CUSA, you must find in favor of Mr. Fraser if you find that he has proved the following defense.  This defense requires Mr. Fraser to prove by a preponderance of the evidence that he did not know, and in the exercise of reasonable care could not have known, that any untrue statements of a material fact by the Company were untrue or that the Company made omissions of a material fact.

3.  Federal Securities Claim

Overview

The plaintiffs' next claim against Mr. Fraser arises under a federal statute and a rule that accompanies that statute.  The statute is the Securities Exchange Act of 1934, which I will refer to as "the Exchange Act."  The federal rule is Rule 10b-5.  For simplicity, I will refer to Section 10(b) of the Exchange Act and Rule 10b-5 together as the "Exchange Act."

The plaintiffs allege that GAW Miners violated the Exchange Act, and that Mr. Fraser is liable under the Exchange Act for the Company's "primary" violations of the Exchange Act because he was a "control person" of the Company.

Security—Affirmative Defense: Currency

As a reminder, to determine whether the plaintiffs have satisfied their burden of proof on this claim and the CUSA claims, you must first determine whether the plaintiffs have proved that the Products are "securities" using the test that I described to you earlier.  As I instructed you earlier, if you determine that the Products are not "securities" (i.e., investment contracts) under that test, then you should find for Mr. Fraser on all of the securities claims – the CUSA claims and the Exchange Act claim.

As I mentioned earlier, however, there is an exception to the definition of "securities" available under the Exchange Act that is not available under the CUSA. Specifically, the Exchange Act provides that a currency is not a security.  That means that, for the Exchange Act claim only, even if a Product meets the definition of an "investment contract", it is not a "security" if it is a currency.  A currency is an item (such as a coin, government note, or banknote) that is generally accepted as payment in a transaction and recognized as a standard of value.  The Defendant has asserted as an affirmative defense that Paycoin is a currency.  But it is important to note that merely

describing a product as a "currency" does not make it one. You should focus on the substance and economic reality of Paycoin, not its name or label. The Defendant has the burden of proving that Paycoin is a currency.

So, if you determine that Paycoin is a security when you are assessing the CUSA claims, that determination will apply equally here *unless* you determine that Paycoin is a currency, in which case it is not a security and you may not find Mr. Fraser liable on the Exchange Act claim with respect to Paycoin.

<u>Elements</u>

I will now set out the elements of this claim. You will notice that this "control person" claim under the Exchange Act has three elements, while the "control person" claims under the CUSA had two elements. For the Exchange Act claim, the plaintiffs must prove each of the following three elements:

(1) <u>First,</u> that GAW Miners committed a primary violation of the Exchange Act;

(2) <u>Second,</u> that Mr. Fraser directly or indirectly controlled GAW Miners;

(3) <u>Third,</u> that Mr. Fraser was in some meaningful sense a culpable participant in the securities fraud violations committed by the Company.

<u>First Element: Primary Violation</u>

First, the plaintiffs must prove that GAW Miners violated the Exchange Act. In order to do so, the plaintiffs must prove each of the following five sub-elements:

(1) <u>First,</u> GAW Miners committed a fraudulent act in connection with the plaintiffs' purchase of a security.

(2) <u>Second,</u> the plaintiffs justifiably relied on GAW Miners' fraudulent act.

(3) <u>Third,</u> GAW Miners acted knowingly and with the intent to defraud or with reckless disregard for the truth.

(4) <u>Fourth,</u> GAW Miners' conduct was the proximate cause of the injury the plaintiffs claimed to have suffered.

    (5) <u>Fifth</u>, GAW Miners used, or caused to be used, means and instrumentalities of interstate commerce.

I will now explain each of these five sub-elements in detail.

<u>Sub-Element 1: Fraudulent Act</u>

In order to prove that GAW Miners committed a primary violation of the Exchange Act, the first sub-element that Plaintiffs must prove by a preponderance of the evidence is that, in connection with Plaintiffs' purchase of a security, GAW Miners committed a fraudulent act. Plaintiffs can satisfy this sub-element by proving that the Company did one of the three following things:

    (1) <u>First</u>, employed a device, scheme, or artifice to defraud; or

    (2) <u>Second</u>, made an untrue statement of material fact, or omitted to state a material fact, which made what was said, under the circumstances, misleading; or

    (3) <u>Third</u>, engaged in an act, practice, or course of business that operated as a fraud or deceit upon a purchaser or seller.

The first way the plaintiffs can prove a fraudulent act is by proving that the Company "employed a device, scheme, or artifice to defraud." A device, scheme, or artifice to defraud is a plan for the accomplishment of a fraudulent objective. Fraud is a general term that covers efforts that individuals may devise to take advantage of others by deception. It may involve false or fraudulent pretenses, untrue statements or omissions of material facts, or promises and patterns of conduct calculated to deceive.

The second way Plaintiffs can prove a fraudulent act is by proving that the Company made an untrue statement of material fact or omitted to state a material fact, which made what was said, under the circumstances, misleading. With regard to the alleged misrepresentations (and omissions), you must determine whether the statement was true or false at the time that it was

made (and, in the case of alleged omissions, whether the omission was misleading). If you find that Plaintiffs have satisfied their burden to prove that a statement was false at the time it was made, or that an omission was misleading, you must next determine whether the fact misstated or omitted was material under the circumstances. I instructed you on materiality earlier. The same instructions regarding materiality apply here.

The third way Plaintiffs can prove a fraudulent act is by proving that the Company engaged in an act, practice, or course of business that operated as a fraud or deceit upon a purchaser or seller. An "act" is a thing that is done, and a "practice" is an "action" or "deed."

Plaintiffs must also prove that the fraudulent act was done "in connection" with the purchase of a security. The "in connection with" aspect of the "fraudulent act" sub-element is satisfied if you find that there was some nexus or relation between the allegedly fraudulent conduct and the purchase of securities. Fraudulent conduct may be "in connection with" the purchase of securities if you find that the Company's allegedly fraudulent conduct "touched upon" Plaintiffs' purchase of securities from the Company.

<u>Second Sub-Element: Justifiable Reliance</u>

In order to prove that GAW Miners violated the Exchange Act, the second sub-element that Plaintiffs must prove is that they justifiably relied on GAW Miners' statements, omissions, or conduct.

In order to satisfy this element, the plaintiffs must prove two things:

(1) <u>First</u>, that they relied on the Company's untrue statements of a material fact, omissions to state a material fact necessary to make a statement made, in light of the circumstances under which it was made, not misleading, or fraudulent conduct in deciding to buy or

sell each Product that they bought—in other words, that Plaintiffs read or saw the false statements and relied on them.

(2) <u>Second</u>, that their reliance on the statements or conduct at issue was reasonable and justified.

Direct proof of reliance may be difficult to produce, but it is not required. Reliance may be proved by circumstantial evidence. Such circumstantial evidence may include (1) the nature of the allegedly false statements and (2) the fact that plaintiffs made the purchases. Put another way, if you find that a reasonable person would not have purchased the Products if GAW Miners and ZenMiner had disclosed the true facts underlying the alleged misrepresentations, you may draw the inference that the plaintiffs relied on the Company's misrepresentations in making their purchases. But if you find that the plaintiffs would have engaged in the transactions anyway, such that the misrepresentations, omissions, or conduct did not affect their decisions to purchase the Products, then there was no reliance.

In addition, the plaintiffs' reliance must be justified. The plaintiffs cannot satisfy this element if they acted unjustifiably. In determining whether Plaintiffs' reliance on GAW Miners' alleged misstatements was justified, you may consider Plaintiffs' sophistication as investors and in the subject matter of the transactions, their opportunity to detect the fraud, whether the fraud was concealed, and the nature of the fraud.

<u>Third Sub-Element: Intent</u>

The third sub-element that the plaintiffs must establish by a preponderance of the evidence is that GAW Miners knowingly participated in the scheme to defraud with intent to defraud or with reckless disregard for the truth.

To act "knowingly" means to act intentionally and deliberately, rather than mistakenly or inadvertently. To act with "intent to defraud" means to act with the intent to deceive. To act with "reckless disregard for the truth" means to engage in conduct that involves an extreme departure from the standard of ordinary care. A person acts in reckless disregard if the risk is known to him, or if it is obvious that an ordinary person under the circumstances would have realized the danger and taken care to avert the harm likely to follow. Recklessness is more than mere negligence. Reckless conduct represents grossly unreasonable, rash, or intemperate behavior.

In the context of securities law, a person may act recklessly if he makes a false statement with a reckless disregard for whether it is true or false. A person does not need to have the intent to injure a person in order to act recklessly. It is enough that the person acts in reckless disregard of a risk of whether there was a truthful basis in the representations, or in the case of an omission, that the person recklessly disregarded the material nature of those omissions.

Fourth Sub-Element: Loss Causation

In order to prove a primary violation, the fourth sub-element that Plaintiffs must prove by a preponderance of the evidence is that GAW Miners' conduct was the proximate cause of the injury Plaintiffs claim to have suffered.

At the outset, I remind you that you are not being asked to consider the plaintiffs' alleged damages. Nevertheless, I am asking you to determine—assuming that Plaintiffs did suffer losses— whether those losses were proximately caused by the Company's conduct. In order for an act or omission to be considered a proximate cause of the injury, it must be a substantial factor in causing the damage, and the injury must have been either a direct result or reasonably probable consequence of the act or omission. A misrepresentation is the proximate cause of an investor's

loss if the loss was foreseeable to the person making the misrepresentation and was caused when the specific risk or risks concealed by the misrepresentation actually materialized.

In order to satisfy this element, it is not enough for the plaintiffs to show that the Company's actions caused them to engage in a particular securities transaction, or that the plaintiffs would have acted differently had they known the truth. The plaintiffs must prove that the alleged fraudulent actions of GAW Miners were a substantial and significant contributing cause of the injury the plaintiffs claim to have suffered.

Fifth Sub-Element: Instrumentality of Interstate Commerce

In order to prove a primary violation, the fifth sub-element that the plaintiffs must prove is that GAW Miners knowingly used, or caused to be used, the mails or interstate wires in furtherance of the scheme to defraud or fraudulent conduct. The terms "mails" and "wires" include communications and transactions made using the internet or interstate wire transfers.

It is not necessary that GAW Miners be directly or personally involved in any mailing or wire communication. If the Company was an active participant in the scheme and took steps or engaged in conduct that it knew or could reasonably foresee would naturally and probably result in the use of the mails or wires, then you may find that it caused the mails or wires to be used.

When one does an act with the knowledge that the use of interstate means of communication will follow in the ordinary course of business, or where such use can reasonably be foreseen, even though not actually intended, then he causes such means to be used.

Nor is it necessary that the items sent through the mails or wires contain the fraudulent material, or anything objectionable. The matter mailed or wired may be entirely innocent. Similarly, the use of the mails or interstate wires need not be central to the execution of the scheme,

and may even be incidental to it.  All that is required is that the use of the mails or wires bear some relation to the object of the scheme or fraudulent conduct.

Summary re: Primary Violation

In summary, to find that Plaintiffs have satisfied their burden of proof on the first element of their "control person" claim against Mr. Fraser under the Exchange Act, they must prove by a preponderance of the evidence each of the following five sub-elements: (1) GAW Miners employed a device, scheme, or artifice to defraud; or made an untrue statement of a material fact or omitted to state a material fact, which made what was said, under the circumstances, misleading; or engaged in a fraudulent act, practice, or course of business; (2) the plaintiffs justifiably relied on GAW Miners' statements, omissions, or conduct; (3) GAW Miners acted knowingly and with the intent to defraud or with reckless disregard for the truth; (4) GAW Miners' conduct was the proximate cause of the injury the plaintiffs claim to have suffered; and (5) GAW Miners used, or caused to be used, means and instrumentalities of interstate commerce.

Second Element: Control

Now I will move on to the second element of the plaintiffs' control person claim under the Exchange Act—that Mr. Fraser directly or indirectly controlled GAW Miners.  I instructed you earlier on the meaning of "control" in the context of the plaintiffs' control person claims under the CUSA.  There I instructed you that Plaintiffs could prove "control" in one of three ways.  That is not the case under the Exchange Act

Under the Exchange Act, the plaintiffs must prove control in the first way that I described in the context of the CUSA claims—that is, they must prove that Mr. Fraser had the power, either direct or indirect, to direct or cause the direction of the management and policies of the Company. The other two ways of showing a "control person" do not apply to the Exchange Act claim.  For

more detail on the first way, please refer to my earlier instructions regarding directly or indirectly controlling the Company.

<u>Third Element: Culpable Participation</u>

Finally, in order to establish that Mr. Fraser is liable under the Exchange Act as a "control person," the third element the plaintiffs must prove is that Mr. Fraser was, in some meaningful sense, a culpable participant in the alleged fraud.  To prove that Mr. Fraser was a culpable participant in the alleged fraud, the plaintiffs must prove that Mr. Fraser acted with conscious misbehavior or recklessness.  Conscious misbehavior is intentional misconduct.  As I have explained to you already, recklessness is conduct that is highly unreasonable and which represents an extreme departure from the standard of ordinary care, where the risk was either known to the person or he must have been aware of it.

***

In sum, to prevail on their claim that Mr. Fraser is liable as a control person for the Company's alleged acts of federal securities fraud, the plaintiffs must prove by a preponderance of the evidence that: (1) GAW Miners violated the Exchange Act; (2) Mr. Fraser directly or indirectly controlled GAW Miners; and (3) Mr. Fraser was a culpable participant in the Company's alleged fraudulent conduct.

<u>Good Faith Defense</u>

Even if you determine that the plaintiffs proved the elements of their "control person" claim under the Exchange Act, Mr. Fraser is not liable if he proves by a preponderance of the evidence that he did not directly or indirectly induce the violations at issue and that he acted in good faith. To meet the burden of establishing good faith, Mr. Fraser must prove that he exercised due care in his supervision of the activities of GAW Miner in that he maintained and enforced a reasonable

–38–

and proper system of supervision and internal controls.  If Mr. Fraser satisfies his burden of proof on this defense, then you must decide this claim in Mr. Fraser's favor.

Apportionment of Liability

If you decide in favor of the plaintiffs on the Exchange Act claim, you must next determine whether they have proven by a preponderance of the evidence that Mr. Fraser knowingly violated the Exchange Act.

If you determine that the plaintiffs have not proven that Mr. Fraser knowingly violated the Exchange Act, you must then determine the percentage of Mr. Fraser's responsibility measured as a percentage of the total fault of all persons who caused or contributed to the loss Plaintiffs claim to have suffered, including the primary violators—Mr. Garza, GAW Miners, and/or ZenMiner.

The percentage of responsibility of a person may range from 0% to 100%.  In determining that percentage in this case, you should consider:

(1) the nature of the conduct of that person that is found to have caused or contributed to the loss the plaintiffs incurred; and

(2) the nature and extent of the causal relationship between the conduct of that person and the damages the plaintiffs incurred.

This apportionment of responsibility applies only to the plaintiffs' Exchange Act claim.  It does not apply to the plaintiffs' other claims against Mr. Fraser.

## C.  AIDING AND ABETTING COMMON LAW FRAUD

Now I will address the plaintiffs' claim against Mr. Fraser for aiding and abetting common-law fraud.  The plaintiffs allege that GAW Miners committed fraud under the common law of Connecticut by making false statements upon which the plaintiffs relied, and that Mr. Fraser is liable for aiding the common-law fraud allegedly committed by the Company.

In order to prove that Mr. Fraser is liable for aiding and abetting the Company's common-law fraud, the plaintiffs must prove each of the following three elements:

(1) <u>First</u>, GAW Miners committed common-law fraud.

(2) <u>Second</u>, Mr. Fraser generally was aware of his role as part of the fraudulent activity at the time he provided assistance; and

(3) <u>Third</u>, Mr. Fraser knowingly and substantially assisted that activity.

In order to prove that Mr. Fraser aided and abetted a common law fraud committed by GAW Miners, the plaintiffs must first prove by a preponderance of the evidence that GAW Miners committed fraud. To do so, the plaintiffs must prove each of the following four sub-elements:

(1) <u>First</u>, that GAW Miners made a false representation as a statement of fact.

(2) <u>Second</u>, that the statement was untrue and known to be untrue by GAW Miners; or that GAW Miners made the statement with reckless disregard for the truth of the matter.

(3) <u>Third</u>, that GAW Miners made the statement to induce the plaintiffs to act on it.

(4) <u>Fourth</u>, that the plaintiffs did act on the statement to their injury.

The plaintiffs must prove the first three of these sub-elements by "clear and convincing evidence", which is a more demanding standard than proof by a preponderance of the evidence, which applies to all other claims in this case. Thus, the plaintiffs cannot meet their burden of proving the first three sub-elements by simply producing evidence that is slightly more persuasive than that opposed to it, which would meet the burden of proof under the preponderance of the evidence standard. Instead, the plaintiffs must produce clear and convincing evidence, which is evidence that is substantial and that unequivocally establishes the first three sub-elements as I explained them to you. Clear and convincing evidence is evidence that establishes for you a very high probability that the facts asserted are true or exist. For the fourth sub-element—that the

plaintiffs acted on the alleged statement at issue to their injury—the plaintiffs need to prove that by a preponderance of the evidence.

For the second element of the plaintiffs' aiding and abetting common law fraud claim, the plaintiffs must prove by a preponderance of the evidence that Mr. Fraser was generally aware of his role as part of the Company's fraudulent activity at the time he allegedly provided the assistance. In order to prove that Mr. Fraser was generally aware of his role in GAW Miners' alleged fraud, the plaintiffs must prove that Mr. Fraser had actual knowledge of the underlying fraud, or that he acted with reckless indifference to the possibility that the fraud was happening. The definition of recklessness that applies here is the same one that I have already given you.

For the third element of the plaintiffs' aiding and abetting common law fraud claim, the plaintiffs must prove by a preponderance of the evidence that Mr. Fraser gave knowing and substantial assistance to GAW Miners in the Company's alleged fraud. To do so, the plaintiffs must prove that Mr. Fraser's alleged assistance was a substantial factor in bringing about the fraud.

\*\*\*

In sum, to prevail on their claim that Mr. Fraser is liable for aiding and abetting the Company's alleged common law fraud, the plaintiffs must prove by a preponderance of the evidence: first, that GAW Miners committed common-law fraud; second, that Mr. Fraser generally was aware of his role as part of the fraudulent activity at the time he provided the alleged assistance to GAW Miners; and third, that Mr. Fraser knowingly and substantially assisted GAW Miners in the alleged fraud.

## D.  AFFIRMATIVE DEFENSE ASSERTED ONLY AGAINST NAMED PLAINTIFF SHINNERS

Mr. Fraser also asserts an affirmative defense against named plaintiff Shinners.  Mr. Fraser has the burden of proof on this defense.  Unlike the claims and affirmative defenses I have instructed you on up to this point, this affirmative defense does *not* relate to the entire class.  By this I mean that if you conclude that the plaintiffs have established all elements of one of their claims by a preponderance of the evidence, a finding on your part that Mr. Fraser has met his burden of proof on the affirmative defense I will now instruct you on will not negate Mr. Fraser's liability to the class of plaintiffs on that claim.  It would negate Mr. Fraser's liability only as to Mr. Shinners, and only with respect to the securities claims.

The defense is called "*in pari delicto,*" which means "in equal fault."  This defense applies if Mr. Fraser proves that, (1) as a direct result of Mr. Shinners's own actions, he bears at least substantially equal responsibility for the violations he now seeks to redress, and (2) preclusion of his claims would not significantly interfere with the effective enforcement of the securities laws and protection of the investing public.  This defense applies only to Mr. Shinners's securities claims.  It does not apply to the common law fraud claim.

## PART III: FINAL INSTRUCTIONS

You have now heard my instructions on the law and the parties' closing arguments.  I remind you that the parties' arguments are not evidence. I will now give you some final instructions before you begin your deliberations.

## A.  NOTE TAKING

You were permitted to take notes during the course of the trial.  Any notes you have taken should be used only as memory aids; do not give your notes more importance than your

independent recollection of the evidence. If you did not take notes, you should rely on your own memory of the proceedings and should not be unduly influenced by the notes of other jurors. Your notes are not evidence and should not be shared.

## B.  UNANIMOUS VERDICT

Your verdict must be unanimous and represent the considered judgment of each juror. Each of you must make your own decision, but you must consider impartially all of the evidence and the views of your fellow jurors. It is your duty to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so consistent with the individual judgment of each juror. Until the verdict is agreed to by each juror, it is not a unanimous verdict.

In the course of your discussion, do not hesitate to re-examine your own individual views, or to change your opinions, if the deliberations and the views of your fellow jurors convince you to do so. However, you should not surrender your honest convictions about the facts or about the weight or effect of the evidence solely because of the opinion of your fellow jurors or merely to bring an end to deliberations.

Remember at all times that you are not a partisan. Rather, you are the judges of the facts and your sole interest is to seek the truth from the evidence in this case.

## C.  CELL PHONES AND TABLETS

Before you begin your deliberations, you will be required to give your cellphones, tablets, and any other forms of electronic communication to the Courtroom Deputy. The Courtroom Deputy will ensure that these items are stored in a safe place and will return them to you after you finish your deliberations for the day.

### D. FOREPERSON

When you return to the jury room, you should first elect one person to act as your foreperson. The foreperson does not have any more power or authority than any other juror, and his or her opinion does not count for any more than any other juror's vote or opinion. The foreperson merely presides over your deliberations and is your spokesperson to the Court. She or he will send out any notes, and when the jury has reached its verdict, she or he will notify the marshal that the jury has reached its verdict and you will come out into open court and give the verdict.

After you have retired to begin your deliberations, you are not to leave your jury room without first notifying the marshal, who will escort you. No deliberations may take place without all jurors being present. If at any time a juror is in the bathroom facilities, the other jurors must cease deliberations and not resume deliberations until all jurors are present.

Finally, you are prohibited from conducting any outside research on the case.

### E. VERDICT FORM

A Verdict Form has been prepared for your convenience. Focusing on the questions set forth in the Verdict Form will assist you in your deliberations. I want to caution you now to take your time when completing the Verdict Form. Let me ask you to look at the Verdict Form now, and I will walk through it briefly with you. As you can see, the Form consists of a series of questions that are grouped into a total of six sections. Each question calls on you either to check "yes" or "no" or to write in a percentage. Answer each question as it appears and only those questions shown on the Form. As you review the Form, you will see that there are instructions in **bold-faced type**. Please read these instructions and follow them carefully. Depending on your

answer to a particular question, it may not be necessary to answer a later question. Finally, be consistent in your responses.

You must complete and return the Verdict Form in court when you have reached a unanimous agreement as to your verdict. You will have the original Verdict Form in the deliberation room, and I will ask the Courtroom Deputy to collect the copies at this time. You will be asked to answer the questions in the order in which they appear on the form, and each answer must be unanimous. When you have reached unanimous agreement as to your verdict, you will have your foreperson fill in your answers, date and sign the Verdict Form. If the foreperson makes any error in completing the Verdict Form, please do not strike out the error and add a correct response. Instead, please request a new Verdict Form, so that the Verdict Form that is submitted is error-free. Then inform the court marshal or clerk that you have reached your verdict. The Verdict Form must be used only in connection with the charge I have just given to you. The terms used in the Verdict Form are discussed in my instructions, and these instructions must govern your deliberations.

## F.  FINAL INSTRUCTIONS

Shortly after you go into the jury room, the Courtroom Deputy will bring you the exhibits in this case. Do not begin your deliberations until she has brought you the exhibits. Do not even elect a foreperson until she has brought you the exhibits, as it is very important that your deliberations remain entirely private and without interruption.

In the jury room, you will have exhibits with you but you will not have a transcript of the testimony. If you need to have testimony read back to you, we will do so. However, please understand that it is difficult and time-consuming to locate and read back testimony. If you

nevertheless require a read-back, please be as specific as possible about the portions of the testimony you want to hear.

Your requests for a read-back of testimony and, in fact, any communication with the Court must be made to me in writing, signed by your foreperson, and given to the marshal or clerk. I will respond to your request as promptly as possible either in writing or by having you return to the courtroom so that I can address you orally.

I also must caution you that in your communications with the Court you should never reveal your numerical division at any time. If you are divided, do not report how the vote stands, and if you have reached your verdict, do not report what it is until you are asked in open court.

It is proper to add a final caution. Nothing that I have said in these instructions – and nothing that I have said or done during the trial – has been said or done to suggest to you what I think your verdict should be. What the verdict shall be is your exclusive duty and responsibility.

Members of the jury, that concludes my instructions to you. Thank you for your patience and attention. Members of the jury, you may now retire. The marshal will escort you to the jury room where you will begin your deliberations.