# Exhibit A


```
                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF CONNECTICUT

    - - - - - - - - - - - - - - - - x

    DENIS MARC AUDET, MICHAEL              No. 3:16-CV-940 (MPS)
    PFEIFFER, and DEAN ALLEN
    SHINNERS, Individually and on          OCTOBER 27, 2021
    Behalf of All Others Similarly
    Situated,                              3:54 P.M.

    vs.                                    JURY CHARGE CONFERENCE

    STUART A. FRASER, GAW MINERS,
    LLC, and ZENMINER, LLC, (d/b/a
    ZEN CLOUD)

    - - - - - - - - - - - - - - - - x


                         450 Main Street
                       Hartford, Connecticut


         BEFORE:   THE HONORABLE MICHAEL P. SHEA, U.S.D.J.


    APPEARANCES:

    FOR THE PLAINTIFFS:

            SUSMAN GODFREY, L.L.P.
                1301 Avenue of the Americas, 32nd Floor
                New York, New York 10019
            BY: SETH D. ARD, ESQUIRE
            BY: JACOB W. BUCHDAHL, ESQUIRE
            BY: GENG CHEN, ESQUIRE
            BY: RUSSELL RENNIE, ESQUIRE

            IZARD, KINDALL & RAABE, LLP
                29 South Main Street, Suite 305
                West Hartford, Connecticut 06107
            BY: MARK P. KINDALL, ESQUIRE


    (Appearances continue ...)
```

```
 1   APPEARANCES CONTINUED:

 2   FOR THE DEFENDANT:

 3           HUGHES, HUBBARD & REED L.L.P.
                 One Battery Park Plaza, 12th Floor
 4               New York, New York 10004-1482
         BY:  DANIEL WEINER, ESQUIRE
 5       BY:  MARC A. WEINSTEIN, ESQUIRE
         BY:  AMINA HASSAN, ESQUIRE
 6
             BRENNER, SALTZMAN & WALLMAN
 7               271 Whitney Avenue
                 New Haven, Connecticut 06511
 8       BY:  ROWENA A. MOFFETT, ESQUIRE

 9

10

11

12

13

14

15

16

17

18

19

20   COURT REPORTER:   Julie L. Monette, RMR, CRR, CCP
                        (860) 212-6937
21
     Proceedings recorded by mechanical stenography, transcript
22   produced by computer.

23

24

25
```

```
 1   and they did.  And so the jury might want to express that -- if
 2   the jury had that view, we would know -- again, you folks know
 3   the numbers better than I do, much better than I do.  I don't
 4   know, for example, if that would mean that somebody who -- part
 5   of whose damages or if the class's if we did damages on a
 6   class-wide basis.
 7            That's a way of telling us we have to leave.  I never
 8   had that happen before.  I hope you guys can get out of the
 9   building.
10            All right.  Mr. Ard, I'll let you wrap it up.
11            MR. ARD:  I think we're having a conversation right
12   here.
13            MR. BUCHDAHL:  Yeah, I do think we probably need to
14   delineate the four.
15            THE COURT:  I think you're right.  I think that's how
16   we have to do it.  So we'll have to do it product by product.
17            MR. ARD:  Can I make one last pitch for in pari
18   delicto for the securities?
19            MR. WEINSTEIN:  I have one more issue right before we
20   rehash old issues.  The jury's also not being asked to
21   determine with respect to material misstatements at what point
22   in time were those made.  And I know that ultimately it becomes
23   a damages issue if they find it at all.  Again, not sure how
24   the damages jury would figure it out if -- quick example, I
25   think we've heard evidence from employees testifying by
```

```
 1   deposition at some point it may have been the case that they
 2   didn't have enough mining power to back what people were buying
 3   but not necessarily from the beginning.  And so people could
 4   have been buying and it wasn't a misrepresentation for some
 5   period of time that they didn't have the power to back.
 6           THE COURT:  Yeah, but, I mean, it seems to me that the
 7   jury could draw a different inference too.
 8           MR. WEINSTEIN:  No, they could.  There's no doubt that
 9   they could draw a different inference, but we won't know what
10   they determine, and then ultimately we get to a damages -- if
11   we get to a damages phase, do we -- is he liable for damages
12   for things purchased in August when perhaps it wasn't a
13   material misstatement as of then?
14           MR. ARD:  We would accept an instruction that just
15   said:  Did you find that these false statements -- that the
16   purchases made during the class period were a reliance on the
17   false statements?
18           MR. WEINSTEIN:  The question is how that gets
19   translated at --
20           THE COURT:  Well, but it might be a fix to do it in
21   the instructions.  So in other words, you must -- wait a
22   minute.  Wait a minute.  Isn't the class definition simply
23   based on when they purchased?
24           MR. ARD:  Yeah.
25           THE COURT:  It's not when the statements were made.
```

```
1                  MR. BUCHDAHL:  Correct.
2                  THE COURT:  So why am I worrying about this?
3                  MR. WEINSTEIN:  Because if they purchased something in
4     August and the statement upon which they're saying they were
5     induced to do it was they didn't have enough hashing power to
6     back the Hashlets and that was actually -- that's not a false
7     statement as of that period of time.  They didn't purchase
8     based on a misstatement.  It -- later, whenever it is -- and I
9     don't think there's any evidence as to when that actually
10    occurred, perhaps that was no longer true and people who bought
11    after that date might have a basis for damages on that kind of
12    misstatement.  But there's nothing in the record that says, at
13    what point in time did this company not have sufficient mining
14    power to support the Hashlets?
15                 You heard from, I believe, Mr. Mordica today --
16                 THE COURT:  Why couldn't they infer that Garza was a
17    crook from the outset?
18                 MR. WEINSTEIN:  They could.  The issue isn't whether
19    they couldn't for one or the other.  I think they can be --
20    they can find liability for a misstatement during the period.
21                 THE COURT:  Yeah.
22                 MR. ARD:  The problem with it is once you get to a
23    damages phase, how is the damages jury going to decide, at what
24    point in time does it start?  The jury could infer he was a
25    crook from the beginning, although a crook doesn't mean a
```

```
 1  material misstatement.  But that doesn't mean they did conclude
 2  that.
 3          THE COURT:  Okay.  We're going to have to reconvene on
 4  this in the morning.  It's a fair point.  I want to think about
 5  it overnight.  I'm not going to hear further on in pari
 6  delicto.
 7          MR. ARD:  Okay, Your Honor.
 8          THE COURT:  So I'm going to think about this, and
 9  we'll confer further in the morning.  Why don't we expect to be
10  here at 9:00 for that purpose.  Okay?  We'll be in recess.
11      (Proceedings concluded at 6:04 p.m.)
```