UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, and DEAN ALLEN SHINNERS, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiffs,<br><br>     vs.<br><br>STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC, (d/b/a ZEN CLOUD),<br><br>                              Defendants. | Case 3:16-cv-00940<br><br>Hon. Michael P. Shea<br>Courtroom 2<br><br>ECF Case<br><br><u>CLASS ACTION</u><br><br>December 16, 2022 |

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ...................................................................................................1

II.     BACKGROUND ....................................................................................................2

    A.      Plaintiffs Challenge Fraudulent Sales of Cryptocurrency Products ......................2

    B.      Plaintiffs Engage in Five Years of Discovery......................................................4

    C.      Plaintiffs Try the Case—And Win a New Trial After a No-Liability
        Verdict................................................................................................................5

    D.      Settlement Negotiations ......................................................................................5

    E.      The Settlement Agreement ..................................................................................6

        1.      Consideration ..........................................................................................6

        2.      Payments to Claimants and Release of Claims.........................................7

        3.      Incentive Awards, Costs, and Attorneys' Fees .........................................8

        4.      Notice and Plan of Distribution ...............................................................8

III.    ARGUMENT .......................................................................................................11

    A.      The Proposed Settlement Warrants Preliminary Approval...................................11

        1.      The Settlement is Procedurally Fair.......................................................12

        2.      The Settlement is Substantively Fair ......................................................14

            a)      Costs, Risks, and Delay of Trial and Appeal ...............................15

            b)      Effectiveness of Any Proposed Method of Distributing
                 Relief.........................................................................................17

            c)      The Terms of Any Proposed Award of Attorney's Fees ...............19

            d)      Any Agreement Required to Be Identified Under Rule
                 23(e)(3) .....................................................................................19

            e)      Range of Reasonableness of the Settlement Fund ........................20

f)    The Plan of Distribution Treats Class Members Equitably ................................................................. 22

3.    The Proposed Settlement Satisfies Other Relevant Factors ...................... 22

a)    Stage of Proceedings. ....................................................... 22

b)    Defendants' Ability to Withstand a Greater Judgment ................. 23

c)    Scope of the Release ........................................................ 23

4.    Conclusion ....................................................................... 23

B.    Notice to the Settlement Class ........................................................ 24

C.    The Proposed Plan of Distribution Is Reasonable ............................... 26

D.    Proposed Schedule ..................................................................... 27

IV.    CONCLUSION ............................................................................. 28

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Products, Inc. v. Windsor*,
   521 U.S. 591 (1997)..................................................................................................24

*Charron v. Pinnacle Grp. N.Y. LLC*,
   874 F. Supp. 2d 179 (S.D.N.Y. 2012)............................................................21, 24

*Christine Asia Co. v. Yun Ma*,
   No. 15-md-02631(CMS)(DA), 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).................11, 12

*City of Detroit v. Grinnell Corporation*,
   495 F.2d 448 (2d Cir. 1974)................................................................... *passim*

*Cordes & Co. Fin Servs. V. A.G. Edwards & Sons, Inc.*,
   502 F.3d 91 (2d Cir. 2007)....................................................................................12

*Cty. of Suffolk v. Alcorn*,
   710 F. Supp. 1428, 1442 (E.D.N.Y. 1989) ...........................................................22

*Cty. of Suffolk v. Alcorn*,
   907 F.2d 1295 (2d Cir. 1990)................................................................................22

*Fleisher v. Phoenix Life Ins. Co.*,
   No. 11-CV-8405 (CM), 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)....................15, 16, 26

*Grayson v. Gen. Elec. Co.*,
   No. 3:13-CV-01799-MPS, 2020 WL 4282185 (D. Conn. July 27, 2020)...........................25

*Hart v. BHH, LLC*,
   No. 15-CV-4804, 2020 WL 5645984 (S.D.N.Y. Sept. 22, 2020)............................18

*Hunichen v. Atonomi LLC*,
   2021 WL 5854964 (W.D. Wash. Nov. 12, 2021) ..................................................20

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
   No. 06-md-1775 (JG)(VVP), 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009)........................21

*In re AOL Time Warner, Inc.*,
   No. 02-cv-5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)....................................22

*In re Currency Conversion Fee Antitrust Litig.*,
   263 F.R.D. 110 (S.D.N.Y. 2009) ...........................................................................15

*In re Currency Conversion Fee Antitrust Litig.*,
No. 01-mdl-1409 (WP), 2006 WL 3247396 (S.D.N.Y. Nov. 8, 2006) ................................21

*In re Global Crossing Secs. & ERISA Litig.*,
225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................................12

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-cv-8557 (CM), 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ................................21

*In re MetLife Demutualization Litig.*,
689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................................26

*In re PaineWebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ........................................................................................26

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................14, 17, 23

*In re Signet Jewelers Ltd. Sec. Litig.*,
No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ....................21

*In re Sony PS3 "Other OS" Litig.*,
2017 WL 5598726 (N.D. Cal. 2017) ..................................................................................25

*In re Sumitomo Copper Litig.*,
189 F.R.D. 274 (S.D.N.Y. 1999) ..................................................................................11, 15

*In re Warner Chilcott Ltd. Sec. Litig.*,
No. 06-cv-11515 (WHP), 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008) ..........................14

*Kelly v. Phiten USA, Inc.*,
277 F.R.D. 564 (S.D. Iowa 2011) ......................................................................................25

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*,
No. 15-CV-1113 (VAB), 2016 WL 6542707 (D. Conn. Nov. 3, 2016) ..............................23

*Maley v. Del Global Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002)................................................................................26

*McReynolds v. Richards-Cantave*,
588 F.3d 790 (2d Cir. 2009)..............................................................................................12

*Meredith Corp. v. SESAC, LLC*,
87 F. Supp. 3d 650 (S.D.N.Y. 2015)..................................................................................19

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
No. 06-cv-4270 (PAC), 2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ..............................19

*Puddu v. 6D Glob. Techs., Inc.*,
    No. 15-CV-8061 (AJN), 2021 WL 1910656 (S.D.N.Y. May 12, 2021) ...............................19

*SEC v. Kik Interactive Inc.*,
    492 F. Supp. 3d 169 (S.D.N.Y. 2020)......................................................................................15

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
    258 F. Supp. 2d 254 (S.D.N.Y. 2003)......................................................................................16

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
    396 F.3d 96 (2d Cir. 2005)..........................................................................11, 23, 24, 26

**Statutes**

Connecticut Uniform Securities Act ...................................................................................3

Freedom of Information Act ...............................................................................................4

**Rules**

Federal Rule of Civil Procedure 23 ............................................................................. *passim*

Federal Rules of Civil Procedure 50 and 59 ......................................................................5

**Other Authorities**

Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for
    Judges* (2005)........................................................................................................................18

Plaintiffs, as individuals and on behalf of the class of all similarly situated individuals, have entered into a Settlement with Defendant Stuart Fraser ("Defendant" or "Fraser").[1] Plaintiffs respectfully move under Rule 23 for an order:

- Preliminarily approving the Settlement and Plan of Distribution;

- Appointing Epiq Class Actions & Claims Solutions, Inc. as the Settlement Administrator;

- Approving the form and manner of notice to the Settlement Class and the Proof of Claim, and directing notice under Federal Rule of Civil Procedure 23(e)(1); and

- Scheduling a final approval hearing at which the Court will consider final approval of the Settlement, final approval of the Plan of Distribution, and Class Counsel's motion for fees, costs, and incentive awards.

## I.   INTRODUCTION

After litigating this exceptionally complex case for six and a half years, Plaintiffs have negotiated a substantial settlement with Fraser that entitles the Settlement Class to $3.5 million in monetary relief. The proposed Settlement was reached after the completion of extensive party discovery, third-party discovery, depositions, and a motion to decertify the class as to damages— not to mention a full jury trial on the merits, a complete defense verdict, and a subsequent order granting the Plaintiffs a new trial on certain claims. The Settlement will provide cash to Class Members many years before Plaintiffs would be likely to obtain any recovery through active litigation before this Court and in any subsequent appeals. Class Members will obtain settlement proceeds by simply providing basic information about themselves and the Hashlets, Hashpoints,

---

[1] Unless otherwise noted, all Capitalized Terms mean the same as in the Settlement Agreement, attached as Ex. 2 to the Declaration of Seth Ard.

HashStakers, and Paycoin products ("GAW Products") they purchased or acquired from GAW Miners, LLC and/or ZenMiner, LLC, with no possibility of reversion to Defendant.

On preliminary approval, the question is whether the Court "will likely be able to (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). The Court has previously certified a substantially similar Class in this litigation,[2] and the proposed Settlement easily passes the requirements of Rule 23(e).

## II.      BACKGROUND

### A.      Plaintiffs Challenge Fraudulent Sales of Cryptocurrency Products

Three class representatives ("Plaintiffs") have prosecuted this case: Allen Shinners, Michael Pfeiffer, and Marc Audet. Each Plaintiff (and each Class Member) purchased or acquired one or more of four cryptocurrency-related products from Defendants GAW Miners, LLC and/or ZenMiner, LLC (collectively, "GAW") between August 1, 2014, and January 19, 2015.[3] ECF No. 144. Beginning in 2014, GAW sold a product called a "Hashlet," which was marketed as a share in the proceeds of its cryptocurrency mining enterprise. Several months later, near the end of 2014, GAW began offering and selling its own cryptocurrency token called "Paycoin." GAW told the public that the value of Paycoin would not fall below $20 because GAW would support the price of Paycoin; and that, upon its release, Paycoin would be accepted by major retailers and be backed by established financial institutions. In addition to these products, GAW sold or offered "Hashpoints" and "HashStakers," which were related to the Hashlet and Paycoin products.

---

[2] The difference between the already-certified litigation Class and the Settlement Class is that 7 members of the litigation Class have opted out of the Settlement Class.

[3] These Defendants have defaulted. ECF No. 71.

In January 2015, Paycoin launched. Its value soon fell below $20 and it emerged that GAW could not support the price of Paycoin and had no agreements with retailers to accept Paycoin for purchases. Soon after, GAW stopped paying out proceeds to owners of Hashlets. During a subsequent investigation, it became clear that Hashlets were a Ponzi scheme. GAW did not have sufficient mining power to pay out proceeds for all the Hashlets it had sold, and it was using the proceeds from sales to new customers to make payouts to earlier Hashlet investors.

On June 15, 2016, Plaintiffs sued GAW in a putative class action alleging securities fraud, common-law fraud, and violations of the Connecticut Uniform Securities Act. Plaintiffs also named Stuart Fraser as a Defendant in the action, alleging that he was liable as a control person and an aider-and-abettor of GAW's fraud based on his role in the fraud, financial and managerial involvement with GAW, and his relationship with GAW's CEO, among other things. *See* ECF No. 57 at ¶¶ 18, 38-74.

On July 8, 2019, the Court certified a litigation class defined as follows:

All persons or entities who, between August 1, 2014, and January 19, 2015, (1) purchased Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC; or (2) acquired Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC, by converting, upgrading, or exchanging other products sold by GAW Miners, LLC and/or ZenMiner, LLC. Excluded from the Class are any defendants, any parent, subsidiary, affiliate, or employee of any defendant, any co-conspirator, and any governmental agency.

ECF No. 144. The Court also appointed Plaintiffs as class representatives and Susman Godfrey L.L.P. and Izard, Kindall & Raabe, LLP ("IKR") as Class Counsel. *Id.* Susman Godfrey and IKR are highly experienced in representing securities fraud class actions on behalf of injured investors. *See* ECF No. 97 at 18; ECF No. 96-1 at 979-92.

On August 16, 2019, the Court approved the parties' proposed manner of notice to the certified litigation Class. ECF No. 164. Pursuant to the notice campaign, notice administrator Epiq

Class Actions & Claims Solutions, Inc. ("Epiq") provided direct notice to class members via email; indirect notice via an online publication campaign in cryptocurrency-related websites, blogs, and news outlets, as well as ads targeted at individuals who search for cryptocurrency related information and sponsored search listings on major Internet search engines; and an informational release to traditional and online media outlets. ECF No. 162 at 8-9; ECF No. 162-3 at ¶¶ 11-18. During the 45-day opt-out period, seven class members filed timely notices to exclude themselves from the Class ("Opt Outs"). *See* Schmidt Decl. ¶ 15 & Ex. B.[4]

## B.    Plaintiffs Engage in Five Years of Discovery

Plaintiffs have vigorously prosecuted this case for nearly 6.5 years. Plaintiffs, Class Counsel, and their experts reviewed tens of thousands of documents, which included company communications, advertising and marketing materials, transactions and sales databases, and the source code underlying GAW's cryptocurrency token. Ard Decl. ¶ 9. These documents included not only Defendant Stuart Fraser's records, but evidence obtained from extensive third-party discovery and investigation. Ard Decl. ¶ 9. Plaintiffs also obtained significant evidence through Freedom of Information Act requests to the Securities and Exchange Commission. Ard Decl. ¶ 10. Plaintiffs took and defended 23 depositions. Each of the three Plaintiffs—as well as six members of the class who were not named plaintiffs—were deposed. Plaintiffs also deposed Fraser, former GAW CEO and co-Defendant Joshua Garza, and numerous former employees of GAW. Ard Decl. ¶ 11.

Plaintiffs also undertook substantial and highly technical expert work. Robert Mills, Plaintiffs' damages expert, spent "well over 100 hours reviewing, analyzing, and exploring"

---

[4] Concurrently with this motion, Plaintiffs submit the Declaration of Nicholas Schmidt, and exhibits thereto, and the Declaration of Seth Ard, and exhibits thereto, in support of the proposed Settlement.

GAW's sales database in order to build a damages model. ECF No. 179-2 at ¶ 29. Arvind Narayanan—an expert on cryptocurrency and blockchains—personally examined the source code used to build GAW's token, Paycoin. Both experts spent dozens of hours preparing opening and rebuttal reports and being deposed, and in the case of Professor Narayanan, later testifying at trial.

After discovery closed, Fraser filed a motion to decertify the class as to damages. ECF No. 179. The parties filed lengthy, fact-intensive briefs and argued the motion to the Court. The Court denied the motion and the case proceeded to trial. ECF No. 206.

### C.      Plaintiffs Try the Case—And Win a New Trial After a No-Liability Verdict

The parties tried the case to a jury between October 20 and November 1, 2021. After two days of deliberating, the jury returned a verdict in favor of Fraser. Specifically, the jury found that the GAW Products were not securities, and accordingly, did not make further findings on Fraser's liability as to Plaintiffs' securities-related claims. ECF No. 330 at 2. The jury also found that Fraser was not liable for aiding and abetting common-law fraud against Plaintiffs. *Id.* at 13.

Plaintiffs filed post-trial motions for judgment as a matter of law and for a new trial pursuant to Federal Rules of Civil Procedure 50(b) and 59. ECF No. 351. On June 2, 2022, the Court granted Plaintiffs' motion for a new trial with respect to their securities claims relating to the Paycoin product and ordered the parties to meet and confer regarding a trial date. ECF No. 370.

### D.      Settlement Negotiations

At various points in this litigation the parties discussed a possible pretrial resolution. After the Court denied Fraser's motion to decertify the class and set pretrial deadlines in May 2020, the parties agreed to mediate the case with the assistance of Jack P. Levin, a respected mediator and arbitrator. Ard Dec. ¶ 5. Although the parties continued discussions with each other and with the

mediator for several months between July and October 2020, they were unable to reach agreement at that time. Ard Decl. ¶ 6.

After the Court granted in part Plaintiffs' motion for a new trial, ECF No. 370, the parties resumed direct negotiations. The parties engaged in protracted settlement negotiations over the following months regarding substantive relief to the Class. The parties ultimately reached agreement on monetary terms with respect to class relief at the end of September 2022 and promptly informed the Court of the development. ECF No. 377. A Settlement Agreement was negotiated and agreed to thereafter, and is submitted with the instant motion for the Court's consideration. Ard Decl., Ex. 2 ("Settlement Agreement" or "Agreement").

Throughout the process, settlement negotiations were conducted by highly qualified and experienced counsel on both sides at arm's length. Ard Decl. ¶ 7. Negotiations were serious and non-collusive. Ard Decl. ¶¶ 5-8. Armed with knowledge gained from the 6.5 years in which this case has been pending, which included extensive discovery and a jury trial, Class Counsel analyzed all of the material legal and factual issues to thoroughly evaluate Defendants' contentions, advocated in the settlement negotiation process for a fair and reasonable settlement that serves the best interests of the Class, and made fair and reasonable settlement demands of Defendant. Ard Decl. ¶ 8.

### E.   The Settlement Agreement

#### 1.   Consideration

The Settlement provides for a monetary fund of $3,500,000 ("Settlement Fund"). Settlement Agreement § 36. The Settlement Class is defined to include all persons and entities who, between August 1, 2014 and January 19, 2015, (1) purchased Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC; or (2) acquired

Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC, by converting, upgrading, or exchanging other products sold by GAW Miners, LLC and/or ZenMiner, LLC. Specifically excluded from the Settlement Class are the Opt Outs; any defendants; any parent, subsidiary, affiliate, or employee of any defendant; any co-conspirator; and any governmental agency. Other than the Opt Outs, the proposed Settlement Class is identical to the previously certified litigation class.

2.        Payments to Claimants and Release of Claims

Upon final approval, the Settlement Administrator will distribute to each Claimant (*i.e.*, each "Settlement Class Member[] who submits [a] valid and timely Settlement Claim[]") his or her payment from the Net Settlement Fund and calculated pursuant to the Plan of Distribution, which is described in further detail below. Ard Decl., Ex. 3 ("Plan of Distribution"). Under the Settlement Agreement, the Net Settlement Fund consists of the Settlement Fund, less the Settlement Administration Expenses, any Incentive Award, any of Class Counsel's Fees and Expenses approved by the Court, and any other payments provided for under the Settlement or the Court's Order and Judgment approving the Settlement. Settlement Agreement § 14; *see also* Settlement Agreement §§ 13, 14, 26, 31 (defining terms). Assuming the Settlement is finally approved, under no circumstance will there be any reversion of any portion of the Settlement Fund to Fraser. *See* Settlement Agreement § 36.

Plaintiffs and Settlement Class Members will release any and all claims "arising out of or related in any way to the Action or the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act that were alleged in the Action." Settlement Agreement § 22.

3.      Incentive Awards, Costs, and Attorneys' Fees

The Settlement Agreement provides that, subject to Court approval, a portion of the Settlement Fund may be used for fees, costs, and expenses incurred in providing class notice and performing claims administration ("Settlement Administration Expenses"). The Agreement further provides that Plaintiffs may move for an award of attorneys' fees not to exceed 33 1/3% of the Settlement Fund, an award of costs incurred by Class Counsel, and incentive awards for Plaintiffs for their service as class representatives. Settlement Agreement § 42.

If this Settlement is preliminarily approved and after the completion of the proposed plan of notice, Class Counsel will file a motion seeking attorneys' fees, reimbursement of expenses, and incentive awards. Class Counsel proposes that this motion be heard at the same time as the final approval hearing for the Settlement. Settlement Class Members will be given an opportunity to submit written objections to that application and/or the Settlement itself prior to the final approval hearing and to attend the hearing to present their objections to the Court.

4.      Notice and Plan of Distribution

The proposed notice plan is described below, with reference to the Declaration of Nicholas Schmidt from proposed Settlement Administrator Epiq Class Action & Claims Solutions ("Epiq").

Plaintiffs request that the Court appoint Epiq as Settlement Administrator. Epiq is highly experienced in providing class notice and claims administration services, including in securities fraud cases and in cases involving cryptocurrency and/or blockchain technology. Schmidt Decl. ¶ 2. Plaintiffs and Epiq propose the same plan of notice that the Court previously approved for the certified litigation class. ECF No. 162 at 8-10 (describing manner and form of notice); ECF No. 164 (approving notice campaign). This notice program includes multiple components, including both direct and indirect notice, in order to reach Settlement Class Members to the best extent

practicable. First, within 15 days of this Court's order granting the motion for preliminary approval, Epiq will send an email directly to Settlement Class Members, using email addresses Epiq has from the prior notice program, informing Settlement Class Members of the Settlement. Schmidt Decl. ¶¶ 7-8. Plaintiffs had previously provided these email addresses to Epiq, which they obtained from the ZenCloud and Paybase databases ("GAW Databases"), records from PayPal and Stripe, records from Shopify (the online "shopping cart" used by GAW), and email addresses collected by Plaintiff Allen Shinners. Schmidt Decl. ¶ 7. The email will direct Settlement Class Members to a website that contains the long-form notice and other information about the case. Schmidt Decl. ¶ 8. The website will include a toll-free number that Settlement Class Members can call to obtain information about the case and the Settlement. Schmidt Decl. ¶ 8.

Additionally, within 15 days of the Court's order preliminarily approving the Settlement, Epiq will also launch an online publication campaign to supplement its email notice with indirect notice targeted at platforms likely to be frequented by Settlement Class Members. Schmidt Decl. ¶ 11. The publication campaign will consist of banner ads on cryptocurrency-related websites, blogs, and news outlets, as well as on social media feeds for users interested in cryptocurrency. Schmidt Decl. ¶ 11. Specifically, Epiq will purchase banner ads which will appear on popular websites that may be frequented by Settlement Class Members, including CoinDesk.com and social media platforms such as Facebook and Instagram, and targeted to individuals who have actively searched for cryptocurrency-related information. Schmidt Decl. ¶ 11. These banner ads will direct Settlement Class Members to the website hosting the long-form notice. Schmidt Decl. ¶ 11. The publication campaign will also include sponsored search listings on popular search engines Google, Yahoo!, and Bing, which will appear when users search certain keywords related

to this case. Schmidt Decl. ¶ 11. Finally, Epiq will transmit an informational release about the Settlement over a national newswire.

The proposed Plan of Distribution, submitted as Exhibit 3 to the Declaration of Seth Ard, distributes the Net Settlement Fund on a *pro rata* basis to Settlement Class Members who submit a valid and timely Claim to the Settlement ("Claimants"). The allocation formula proposed in the Plan of Distribution uses information provided by Claimants in a Proof of Claim form ("Proof of Claim"), which is submitted as Exhibit A to the Declaration of Nicholas Schmidt. The Proof of Claim asks for two categories of information: (1) information identifying the Settlement Class Member, including information used by the Class Member when purchasing or acquiring GAW Products, and which may be reflected in the GAW Databases; and (2) information on each of the four types of GAW Products purchased or acquired by the Settlement Class Member, including information on amounts paid by the Class Member to GAW, any Hashpoints received by the Class Member for "mining" Hashlets, amounts received by the Class Member for selling GAW Products, and mining rewards received by the Class Member from Hashlets. Although Settlement Class Members will not be required to submit supporting documentation or other material with the Proof of Claim, they will be required to attest to the accuracy of the information submitted. Furthermore, the Settlement Administrator will have the discretion to audit any Claim, including but not limited to comparing the information provided on the Proof of Claim with information in the GAW Databases and requesting supporting documentation from the Class Member.

Using this information from the Proofs of Claim, the proposed Plan of Distribution calculates a Claimant Stake for each Claimant that simply adds the amounts paid to GAW by the Claimant for GAW Products and the value of the Hashpoints "mined" by the Claimant (at a conversion rate of $0.01 per Hashpoint) and subtracts the amounts received by the Claimant from

GAW (*i.e.*, mining rewards from Hashlets) and the amounts received by the Claimant from sales of GAW Products. Under the proposed Plan, the Settlement Administrator will then calculate a *Pro Rata* Claim for each Claimant by (i) dividing its Claimant Stake by the sum of all Claimant Stakes associated with valid and timely Claims; and (ii) multiplying that percentage by the Net Settlement Fund. These *Pro Rata* Claims will then be distributed to Claimants, subject to a *de minimis* threshold of $10.

## III.   ARGUMENT

### A.    The Proposed Settlement Warrants Preliminary Approval

A class action settlement is subject to court approval under Federal Rule of Civil Procedure 23(e). "Settlement approval is within the Court's discretion, which should be exercised in light of the general judicial policy favoring settlement." *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 280 (S.D.N.Y. 1999) (cleaned up). The settlement of complex class action litigation is strongly favored. The Second Circuit is "mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy." *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) (cleaned up). Absent "fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Christine Asia Co. v. Yun Ma*, No. 15-md-02631(CMS)(DA), 2019 WL 5257534, at *8 (S.D.N.Y. Oct. 16, 2019) (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05-cv-10240 (CM), 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)).

There are two steps to approval of a class action settlement: preliminary and final approval. *See* Fed. R. Civ. P. 23(e). At preliminary approval, the Court must assess whether it "will likely be able to approve the proposal" under the four factors enumerated by Rule 23(e)(2): (A) "the class

representatives and class counsel have adequately represented the class"; (B) "the proposal was negotiated at arm's length"; (C) "the relief provided for the class is adequate," after accounting for (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)"; and (D) "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The first two factors focus on "procedural fairness," while the latter two factors (and associated subfactors) focus on "substantive fairness." *Christine Asia*, 2019 WL 5257534, at *9-10.

       1.      The Settlement is Procedurally Fair

The Court must first consider whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(A)-(B). In assessing adequacy of representation, the court focuses on whether "1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." *Cordes & Co. Fin Servs. V. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007). Where an experienced class counsel has negotiated an arm's length agreement after "meaningful discovery," a "presumption of fairness, reasonableness, and adequacy" attaches. *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (citation omitted); *Christine Asia*, 2019 WL 5257534, at *9. Here, the presumption of fairness, reasonableness, and adequacy applies.

Plaintiffs' interests are aligned with the remainder of the Settlement Class: each suffered the same injury (purchasing or acquiring GAW Products by means of fraud) and have the same interest in maximizing recovery from Fraser. *See In re Global Crossing Secs. & ERISA Litig.*, 225

F.R.D. 436, 453 (S.D.N.Y. 2004) ("There is no conflict between the class representatives and the other class members. All share the common goal of maximizing recovery."); *see also* 1 Newberg on Class Actions § 3:58 (5th ed. 2021) ("Adequacy does not require complete identity of claims or interests between the proposed representative and the class. All that is required—as the phrase 'absence of conflict' suggests—is sufficient similarity of interest such that there is no affirmative antagonism between the representative and the class." (citations omitted)).

Furthermore, Class Counsel is highly qualified. Class Counsel has represented classes in numerous other securities fraud and consumer protection cases, are highly experienced in the prosecution of class actions, and are also of the view that the Settlement is an excellent result for the Class. Ard Decl. ¶ 17. Class Counsel's view as to the fairness of the settlement is well informed: over 6.5 years of discovery, trial, and post-trial briefing, Class Counsel reviewed tens of thousands of documents, took or defended 23 depositions, worked extensively with highly qualified economic and cryptocurrency consultants and experts, and tried the case to a jury. Ard Decl. ¶¶ 9-12.

Finally, the Agreement was reached at arm's length. The parties engaged in settlement discussions both before and after the October 2021 trial—including with the assistance of a respected third-party mediator before the trial—and at all times have vigorously represented their respective clients' interests. Following trial, Class Counsel negotiated the settlement over nearly three months with counsel for Fraser. Ard Decl. ¶¶ 5-7. This Court should find that Rule 23(e)(2)(A) and (B) are met and that it is likely to finally approve the Settlement as procedurally fair.

2.      The Settlement is Substantively Fair

Next, the Court must assess substantive fairness under Rule 23(e)(2)(C) and (D). Rule 23(e)(2)(C) considers the adequacy of the relief provided to the Class and enumerates four factors to be considered: (i) "the costs, risks, and delay of trial and appeal," (ii) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," (iii) "the terms of any proposed award of attorney's fees, including timing of payment," and (iv) "any agreement required to be identified under Rule 23(e)(3)." In addition, the Court must evaluate substantive fairness of the Settlement under Rule 23(e)(2)(D), which considers the relative treatment of Settlement Class Members. Before Rule 23(e)(2)(C)'s four-factor framework was codified in December 2018, courts in this Circuit employed the nine-factor framework of *City of Detroit v. Grinnell Corporation*, 495 F.2d 448, 463 (2d Cir. 1974).[5] The 2018 amendments to Rule 23 were intended to "add to, rather than displace, the *Grinnell* factors," and there is "significant overlap" under the two frameworks. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019) (citing 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2)). Thus, Plaintiffs address both sets of factors, noting where they overlap.[6]

---

[5] The nine *Grinnell* factors are: (i) "the complexity, expense and likely duration of the litigation," (ii) "the reaction of the class to the settlement," (iii) "the stage of the proceedings and the amount of discovery completed," (iv) "the risks of establishing liability," (v) "the risks of establishing damages," (vi) "the risks of maintaining the class action through the trial," (vii) "the ability of the defendants to withstand a greater judgment," (viii) "the range of reasonableness of the settlement fund in light of the best possible recovery," and (ix) "the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Grinnell Corp.*, 495 F.2d at 463.

[6] The Court need not consider the second *Grinnell* factor—the "reaction of the class"—at this time. *See, e.g.*, *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06-cv-11515 (WHP), 2008 WL 5110904, at *2 (S.D.N.Y. Nov. 20, 2008) ("Since no notice has been sent, consideration of this factor is premature.").

<em>a)</em>      <em>Costs, Risks, and Delay of Trial and Appeal</em>

Rule 23(e)(2)(C)(i) requires courts to consider "the costs, risks, and delay of trial and appeal." This inquiry overlaps with *Grinnell* factors one (the "complexity, expense, and likely duration of the litigation") and factors four, five, and six (the risks of establishing liability and damages and in maintaining the class). *See In re Payment Card*, 330 F.R.D. at 36. In assessing these risks, the Court need not "decide the merits of the case," "resolve unsettled legal questions," or "foresee with absolute certainty the outcome of the case." *Fleisher v. Phoenix Life Ins. Co.*, No. 11-CV-8405 (CM), 2015 WL 10847814, at *8 (S.D.N.Y. Sept. 9, 2015) ("Phoenix COI") (cleaned up). "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id.* (quoting *Global Crossing*, 225 F.R.D. at 459). Courts recognize that "the complexity of Plaintiff's claims *ipso facto* creates uncertainty." *In re Currency Conversion Fee Antitrust Litig.*, 263 F.R.D. 110, 123 (S.D.N.Y. 2009) (citation omitted).

This litigation was highly complex and presented hotly disputed issues of both law and fact. Plaintiffs alleged claims of securities fraud and the sale of unregistered securities in connection with novel, technically complicated, challenging-to-understand cryptocurrency products. The application of the securities laws and the *Howey* test to such products is an emerging and uncertain area of the law,[7] and there is always the risk a jury would disagree with Plaintiffs that these products qualify as securities—as the first jury in fact did (albeit against the weight of the evidence with respect to Paycoin). *See* ECF No. 330 at 2. Likewise, while Plaintiffs are confident in the strength of their proof that Fraser was a control person of GAW who can be held liable for its fraud, Fraser strenuously disputed at trial his control of and involvement in GAW and

---

[7] *See SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 177 (S.D.N.Y. 2020) (noting that "[f]ew courts in this Circuit have had the opportunity to apply *Howey* in the context of cryptocurrency" and "[t]he Second Circuit has not yet spoken on the issue").

his knowledge of its fraud, and there is a risk that a second jury might credit his evidence over Plaintiffs'. *See In re Sumitomo Copper Litig.*, 189 F.R.D. at 282 ("[N]o matter how confident one may be of the outcome of litigation, such confidence is often misplaced.") (internal quotation marks and citation omitted).

And even if Plaintiffs were to prevail at the liability trial, there would continue to be risk with respect to damages, *see* ECF No. 206 at 14 (concluding that Plaintiffs had not presented a method to calculate class-wide damages); *id.* at 16 ("The Court will determine how to structure the damages phase of this case—including whether individual damages issues predominate over all common issues, such that decertification as to damages is warranted—if and when the question of liability is resolved in the Plaintiffs' favor"), or would order individual damages trials or claims adjudications that could take several years to be resolved.

The same concerns regarding delay apply to appeals. Leaving damages adjudications aside, if Plaintiffs prevailed at a second liability trial on Paycoin, this case would likely be tied up in years of post-trial briefing and appellate practice. *See Phoenix COI*, 2015 WL 10847814, at *6 ("The Settlement also ends future litigation and uncertainty. Even if the Class could recover a judgment at trial and survive any decertification challenges, post-verdict and appellate litigation would likely have lasted for years."); *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class."). Not only would Fraser likely appeal the verdict itself, but Plaintiffs may also cross-appeal issues related to the first jury trial, including the determination that products other than Paycoin are not securities. Regardless of the specific contours of those appeals, they are highly likely to delay final resolution of this case and any concrete recovery by the Class.

These many risks and delays weigh in favor of preliminary approval of the Settlement as substantively fair—which weigh all the more heavily given that the case has been pending for nearly 6.5 years and the Class includes a large population of individual investors who might otherwise receive no compensation for a decade or more.

> b)       *Effectiveness of Any Proposed Method of Distributing Relief*

Next, Rule 23(e)(2)(C)(ii) requires the Court to consider the effectiveness of the "proposed method of distributing relief." A distribution plan satisfies the Rule if it is "reasonable" and has a "rational basis," especially if "recommended by experienced and competent class counsel." *In re Payment Card*, 330 F.R.D. at 40 (quoting *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005)). Here, Class Counsel, which has extensive experience in class actions, prepared the Plan of Distribution with the assistance of the Settlement Administrator and Plaintiffs' damages expert. Under the Settlement, Settlement Class Members may submit a Proof of Claim listing identifying information—such as name, address, email address, phone number, and username—associated with their purchases or acquisitions of the GAW Products at issue. Schmidt Decl., Ex. A. The Proof of Claim will also request from Settlement Class Members information on each of the four types of GAW Products they may have purchased or acquired, including information on amounts paid by the Class Member to GAW, any Hashpoints received by the Class Member for "mining" Hashlets, amounts received by the Class Member for selling GAW Products, and mining rewards received by the Class Member from Hashlets. This information will permit the Settlement Administrator to estimate the net damages suffered by each Claimant in relation to the GAW Products.

In Class Counsel's opinion, this approach to claims submission balances the competing considerations of accuracy and efficiency in distributing the Settlement Fund. To reduce the

burden and expense of submitting and evaluating claims, the proposed Proof of Claim does not require the submission of supporting documentation. Yet, each Claimant must attest to the truthfulness and accuracy of the information provided to the Settlement Administrator. Courts regularly approve similar distribution proposals that seek to reduce the burden on class members in submitting claims. *See, e.g.*, *Hart v. BHH, LLC*, No. 15-CV-4804, 2020 WL 5645984, at *2 (S.D.N.Y. Sept. 22, 2020) (approving settlement where proof was not required and only 1% of claimants "provided proof of purchase"); *see also* Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* (2005) ("Necessary claim forms should be as simple and clear as possible and should avoid redundancy. Be careful to avoid claim forms that scare class members away with confusing questions and onerous proof requirements."). Given the significant amount of time that has elapsed since the purchases and acquisitions at issue, which occurred in 2014 and early 2015, it is possible that many Settlement Class Members will not have retained detailed records of their relevant transactions. Burdensome proof requirements may artificially depress claim rates, particularly in cases like this one where a significant portion of the Class may have modest damages. Furthermore, the Settlement Administrator will have the discretion to audit any Claim, including but not limited to comparing the information provided on the Proof of Claim with information in the GAW Databases and requesting supporting documentation from the Class Member. This backstop will permit the Settlement Administrator to investigate and address potentially fraudulent or inaccurate submissions while limiting the burden imposed on the majority of Settlement Class Members. In sum, this factor weighs in favor of a preliminary finding of substantive fairness and preliminary approval of the Settlement.

<em>c)      The Terms of Any Proposed Award of Attorney's Fees</em>

The Court also considers the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). Under the Settlement, Class Counsel may apply for an award of attorneys' fees not to exceed 33 1/3% of the Settlement Fund. Class Counsel will not receive any funds until the Court has granted its application. The parties have agreed that the Settlement is not conditioned on the Court's approval of any application by Class counsel for attorneys' fees and reimbursement of expenses. Settlement Agreement § 44.

Awards of this magnitude have been deemed reasonable in comparable class actions. *See Puddu v. 6D Glob. Techs., Inc.*, No. 15-CV-8061 (AJN), 2021 WL 1910656, at *6 (S.D.N.Y. May 12, 2021) (finding that "33.3% is within the range of fee awards typically awarded" and collecting cases); *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) ("[I]n numerous common fund cases, fees have been awarded that represent one-third of the settlement fund."); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, No. 06-cv-4270 (PAC), 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) ("Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit"). Class Counsel's fee and expenses application therefore does not weigh against preliminary approval and will be briefed more fulsomely at the final approval stage.

<em>d)      Any Agreement Required to Be Identified Under Rule 23(e)(3)</em>

Rules 23(e)(2)(C)(iv) and 23(e)(3) require that any agreement "made in connection with the proposal" be identified. Plaintiffs and Fraser have not entered into, and are not aware of, any such agreements.

19

e)      *Range of Reasonableness of the Settlement Fund*

Finally, certain *Grinnell* factors overlap generally with Rule 23(e)(2)(C)'s inquiry into the adequacy of the Settlement, though they do not specifically pertain to one of the four enumerated factors. One such *Grinnell* factor is "the range of reasonableness of the settlement fund," both in light of the risks discussed in the previous subsection and "in light of the best possible recovery." *Grinnell*, 495 F.2d at 463.

The Settlement Fund of $3,500,000, when compared to the risks of litigation and best possible recovery, is significant. Plaintiffs' prior damages model, submitted in support of class certification, reported an estimated $17.5 million in class-wide damages for only two of the four products—Hashlets and HashStakers—originally at issue in the litigation. *See* ECF No. 179-2 at ¶ 36 (explaining that, at the time, Plaintiffs' damages for Paycoin and Hashpoints could not be determined by reference to the ZenCloud or Paybase databases). However, as described above, only claims related to Paycoin are currently active in this litigation, and while Plaintiffs disagree with the determination that Hashlets, Hashpoints, and HashStakers are not securities, the reasonableness of the Settlement Fund must be assessed in conjunction with the significant risk that that decision will stand. *See* ECF No. 370. Even if class-wide damages for Hashpoints and Paycoin would be similar to Plaintiffs' previously calculated damages for Hashlets and HashStakers (*i.e.*, $17.5 million for Hashpoints and Paycoin, or $35 million total for all four GAW Products),[8] the Settlement Fund would still represent approximately 10% of a "best possible recovery" of that $35 million. *See* Ard Decl. ¶¶ 15-16. This percent recovery falls well within the range that courts routinely approve. *See Grinnell Corp.*, 495 F.2d at 455 & n.2 (recognizing that

---

[8] Plaintiffs note these products were sold and/or acquired over a significantly shorter time period than Hashlets.

"a satisfactory settlement" could amount to a small fraction—such as "a hundredth or even a thousandth part of a single percent of the potential recovery"); *see also Hunichen v. Atonomi LLC*, 2021 WL 5854964, at *9 (W.D. Wash. Nov. 12, 2021) (recommending preliminary approval of settlement involving sale of unregistered cryptocurrency securities where settlement represented approximately "twenty percent, excluding interest, of the total amount of losses claimed and damages sought in this matter"), *report and recommendation adopted*, 2022 WL 4131590 (W.D. Wash. Sept. 12, 2022); *In re Air Cargo Shipping Servs. Antitrust Litig.*, No. 06-md-1775 (JG)(VVP), 2009 WL 3077396, at *9 (E.D.N.Y. Sept. 25, 2009) (approving settlement value that was 10.5% of total damages); *In re Currency Conversion Fee Antitrust Litig.*, No. 01-mdl-1409 (WP), 2006 WL 3247396, at *6 (S.D.N.Y. Nov. 8, 2006) (approving settlement cash award that was 10-15% of total damages). Furthermore, "settlement assures immediate payment of substantial amounts to Class Members, 'even if it means sacrificing speculative payment of a hypothetically larger amount years down the road.'" *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012) (citation omitted).

This is a substantial result for the Class, especially in light of the many risks, uncertainties, and delays that Plaintiffs have faced and will continue to face absent the proposed Settlement. And Class Counsel's certification as to the reasonableness of the settlement, *see* Ard Decl. ¶ 17, is given considerable weight because they are closest to the facts and risks associated with the litigation. *See In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-cv-8557 (CM), 2014 WL 7323417, at *5 (S.D.N.Y. Dec. 19, 2014) ("[Lead Counsel's] opinion is entitled to great weight." (quotation marks and citation omitted)).

This factor thus weighs in favor of a finding of substantive fairness and preliminary approval of the Settlement.

f)      *The Plan of Distribution Treats Class Members Equitably*

The final Rule 23(e)(2) factor requires the Court to assess whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). Here, the proposed Plan of Distribution treats Settlement Class Members equitably as it distributes the Net Settlement Fund on a *pro rata* basis that allocates recovery to Claimants roughly proportional to the size of their damages. This plan applies equally to Plaintiffs. *See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *13-14 (S.D.N.Y. July 21, 2020) (approving plan of allocation that allocated recovery *pro rata* "based on the relative size" of their claims and which applied equally to the class representatives as to the rest of the class). Thus, the different amounts to be awarded for purchases or acquisitions of different products has a rational basis and weighs in favor of a finding of substantive fairness.

3.      The Proposed Settlement Satisfies Other Relevant Factors

a)      *Stage of Proceedings.*

In addition to the Rule 23(e)(2) factors, courts also consider *Grinnell* factors that do not overlap specifically with the statutory considerations. One such factor is the third *Grinnell* factor: "[t]he stage of the proceedings and the amount of discovery completed." *Grinnell*, 495 F.2d at 463. The Court assesses whether Plaintiffs "have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, No. 02-cv-5575 (SWK), 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). Here, Plaintiffs have more than a "sufficient understanding" of the case: not only did they undertake five years of discovery—they tried the case to verdict. That is, counsel had an extensive discovery record and a *full trial record* against which to measure the adequacy of settlement. This factor therefore strongly supports approval. *See Cty. of Suffolk v. Alcorn*, 710 F. Supp. 1428, 1442

(E.D.N.Y. 1989) (concluding it was "unlikely that any significant information has been left unrevealed" to the settling parties because they had "a full trial after extensive discovery"), *aff'd in relevant part*, 907 F.2d 1295 (2d Cir. 1990).

b)   *Defendants' Ability to Withstand a Greater Judgment*

The Court also considers "the ability of the defendants to withstand a greater judgment." *Grinnell Corp.*, 495 F.2d at 463. Here, even if Fraser could withstand a greater judgment—which is not clear to Plaintiffs—this does not undermine the fairness of the Settlement. *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, No. 15-CV-1113 (VAB), 2016 WL 6542707, at *10 (D. Conn. Nov. 3, 2016) (noting that "[t]his factor standing alone, does not suggest that the settlement is unfair" (citation and internal quotation marks omitted)).

c)   *Scope of the Release*

Courts may also look to the scope of the release. *See Payment Card*, 330 F.R.D. at 42 n.41. Here, the Settlement Class would release all claims "which were asserted or could have been asserted in the Action, arising out of or related in any way to the Action or the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act that were alleged in the Action." Settlement § 22. These releases are appropriate. *See Wal-Mart Stores*, 396 F.3d at 107 ("The law is well established in this Circuit and others that class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the 'identical factual predicate' as the settled conduct.").

4.   Conclusion

In sum, the vast majority of the relevant factors under Rule 23(e)(2) and *Grinnell* strongly support approval, while a few factors are neutral. This Court should find that it is likely to approve the Settlement.

23

### B.    Notice to the Settlement Class

Rule 23(e)(1)(B) requires that notice be directed "in a reasonable manner to all class members who would be bound by the proposal." Plaintiffs request that (i) the Court approve the notice to the Class, *see* Exhibits C and D to the Declaration of Nicholas Schmidt, (ii) appoint Epiq as Settlement Administrator, and (iii) approve distribution of the notices as delineated by Epiq and consistent with the prior notice program after the Court's certification of the litigation class.

To satisfy Rule 23, the notice must satisfy two requirements. First, "[c]ourts in this Circuit have explained that a Rule 23 Notice will satisfy due process when it describes the terms of the settlement generally and informs the Class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing." *Charron*, 874 F. Supp. 2d at 191 (cleaned up); *accord Wal-Mart Stores, Inc.*, 396 F.3d at 113-14 ("There are no rigid rules . . . ; the settlement notice must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." (internal quotations omitted)). Second, the manner of sending notice to the class must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 617 (1997).

***First,*** the form of notice here satisfies due process because it informs Class Members of the terms of the Settlement and the options open to them in plain language. *See Charron*, 874 F. Supp. 2d at 191 (the form of notice is "adequate if it may be understood by the average class member") (citation omitted). The notice, *see* Schmidt Decl., Exs. C and D, communicate in plain language the essential elements of the Settlement and the options available to Class Members in connection with the Settlement, including the monetary relief and the fact that the Settlement Fund

will be used to pay any Court approved reimbursement of costs, attorneys' fees, and incentive awards. They also provide specific information regarding the date, time, and place of final approval. *Id.*

**Second,** the manner of sending notice, which relies on direct email to individual Settlement Class Members and indirect notice by publication, is the "best notice . . . practicable under the circumstances" here. Fed. R. Civ. P. 23(c)(2)(B). The Court previously concluded this manner of notice was the best notice practicable and approved it for purposes of providing notice to the certified litigation class, *see* ECF No. 166, and it should do so again here. Email notice remains appropriate here because, given the nature of the Class itself and the products at issue, Class Members use the internet and are comfortable with it; Plaintiffs possess email addresses for Class Members that the Class Members necessarily used in conjunction with their transactions with GAW; and email notice will be supplemented by widespread publication notice on relevant websites and widely used search engines and social media platforms. *See, e.g.*, *Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 569 (S.D. Iowa 2011) (approving notice by direct email to class members in conjunction with publication in two national publications and on the defendant's Facebook page); *In re Sony PS3 "Other OS" Litig.*, 2017 WL 5598726 (N.D. Cal. 2017) (allowing notice to be given "to Class Members via email for those Class members for whom an email address is available").

**Third**, this Court should appoint Epiq as Settlement Administrator. Epiq has served in this role in connection with numerous class actions in this Circuit and District and has the experience and resources necessary to fulfill the role here. *See* Schmidt Decl. ¶ 2; *see also, e.g.*, *Grayson v. Gen. Elec. Co.*, No. 3:13-CV-01799-MPS, 2020 WL 4282185, at *3 (D. Conn. July 27, 2020) (appointing Epiq as settlement administrator and noting that it is "an experienced class action

settlement administration firm").

**Finally**¸ as Class Members were provided an opportunity to request exclusion from the Class—and the seven Opt Outs previously took advantage of that opportunity—the Settlement does not provide for a second opportunity to opt out. Class Members received notice and an opportunity to exclude themselves after the Class was certified for litigation purposes, *see* ECF No. 162-1 and 162-2 (long-form and short-form notice explaining how a class member could exclude herself from the class), and seven Class Members did file timely requests to exclude themselves. *See* Schmidt Decl., ¶15 & Ex. B. Given that opportunity, no further opt-out process is necessary. *See* Fed. R. Civ. P. 23(e)(4) (indicating that the Court "may" permit a second round of opt outs); *In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 345 (E.D.N.Y. 2010) (concluding "[i]t is not necessary to provide the class members with an opportunity to opt out of the Settlement" based on their previous opportunity to exclude themselves from the class); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 114 (2d Cir. 2005) ("Since the parties had been given notice of the action, the opportunity to opt out, notice of the proposed settlement, and the opportunity to object, the court held that it was not required to grant those who objected to the proposed settlement a second opportunity to opt out.").

The Court should therefore approve the proposed form and manner of notice as described in paragraphs 6-14 of the Schmidt Declaration.

### C.    The Proposed Plan of Distribution Is Reasonable

A distribution plan is fair and reasonable as long as it has a "reasonable, rational basis." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). Because mathematical precision is impossible in calculating claims for a large class, courts recognize that "the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the

merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information." *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997).

Here, as explained above, the distribution will be made on a *pro rata* basis based on the net damages suffered by each Claimant. This type of distribution, where funds are distributed *pro rata*, "has frequently been determined to be fair, adequate, and reasonable." *Phoenix COI*, 2015 WL 10847814, at *12 (collecting cases). Accordingly, the proposed Plan of Distribution is fair and reasonable, and should be preliminarily approved.

### D.      Proposed Schedule

Plaintiffs propose the following dates for the deadlines for the notice plan and for the final fairness hearing.

| EVENT | DAYS FROM PRELIMINARY APPROVAL |
|---|---|
| Notice of Class Action Settlement to be Emailed | 15 Days |
| Publication notice to be completed | 40 Days |
| Class Counsel to file motion for award of attorneys' fees, expenses, and service awards | 70 Days |
| Objection Deadline | 85 Days |
| Class Counsel to file motion in support of final approval and reply briefs in support of attorneys' fees, expenses, and service awards | 100 Days |
| Deadline to serve any reply brief in support of motion for final approval | 115 Days |
| Final Approval Hearing | 119 Days |

## IV.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court (i) preliminarily approve the proposed Settlement; (ii) approve the proposed form and manner of notice to the Settlement Class; and (iii) schedule a date and time for a hearing to consider final approval of the Settlement and related matters.

Dated: December 16, 2022                    Respectfully submitted,

                                           */s/ Seth Ard*
                                           Robert A. Izard
                                           Christopher M. Barrett
                                           Craig A. Raabe
                                           IZARD, KINDALL & RAABE, LLP
                                           29 S. Main St., Suite 305
                                           West Hartford, CT 06107
                                           Tel: (860) 493-6292
                                           rizard@ikrlaw.com
                                           cbarrett@ikrlaw.com
                                           craabe@ikrlaw.com

                                           Seth Ard
                                           Jacob W. Buchdahl
                                           Geng Chen
                                           Russell F. Rennie
                                           SUSMAN GODFREY L.L.P.
                                           1301 Avenue of the Americas, 32nd Floor
                                           New York, NY 10019-6022
                                           Tel: (212) 336-8330
                                           sard@susmangodfrey.com
                                           jbuchdahl@susmangodfrey.com
                                           gchen@susmangodfrey.com
                                           rrennie@susmangodfrey.com

                                           Marc Seltzer
                                           Kathryn Hoek
                                           SUSMAN GODFREY L.L.P.
                                           1900 Avenue of the Stars, Suite 1400
                                           Los Angeles, CA 90067
                                           Tel: (310) 789-3100
                                           mseltzer@susmangodfrey.com
                                           khoek@susmangodfrey.com

                                           Edgar Sargent
                                           SUSMAN GODFREY L.L.P.
                                           401 Union Street
                                           Suite 3000
                                           Seattle, WA 98101
                                           Tel: (202) 516-3880
                                           esargent@susmangodfrey.com

                                           *Counsel for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 16, 2022, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing  system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

*<u>/s/ Russell Rennie</u>*