# EXHIBIT 2

UNITED STATES DISTRICT COURT
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, and DEAN ALLEN SHINNERS, Individually and on Behalf of All Others Similarly Situated,<br><br>                      Plaintiffs,<br><br>     vs.<br><br>STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC (d/b/a ZEN CLOUD),<br><br>                    Defendants. | Case 3:16-cv-00940<br><br>Hon. Michael P. Shea<br>Courtroom 2<br><br>ECF Case<br><br><u>CLASS ACTION</u> |

## <u>JOINT STIPULATION AND SETTLEMENT AGREEMENT</u>

IT IS HEREBY STIPULATED AND AGREED, subject to the Court's approval and pursuant to Rule 23 of the Federal Rules of Civil Procedure, by and between: (i) Plaintiffs Denis Marc Audet, Michael Pfeiffer, and Dean Allen Shinners (collectively "Plaintiffs"), individually and on behalf of the Settlement Class (as defined herein); and (ii) Defendant Stuart A. Fraser ("Fraser"), that the causes of action and matters raised by and related to this lawsuit, as captioned above, are hereby settled and compromised on the terms and conditions set forth in this Joint Stipulation and Settlement Agreement ("Agreement").

This Agreement is made and entered into by and between Plaintiffs and Fraser and is intended to fully, finally, and forever resolve, discharge, and settle the Action and the Released Claims (both as described below) upon and subject to the terms and conditions hereof.

Capitalized terms in this Agreement shall have the meaning set forth at Section I below.

## I.   **DEFINITIONS AND CONSTRUCTION**

1.      "Action" means the lawsuit, captioned *Audet, et al. v. Fraser, et al.*, Case No. 3:16-cv-00940, currently pending in the United States District Court for the District of Connecticut.

2.      "Agreement" means this Joint Stipulation and Settlement Agreement.

3.      "Claimants" means all Settlement Class Members who submit valid and timely Settlement Claims.

4.      "Claims" means all suits, proceedings, claims, cross-claims, counter-claims, complaints, charges, controversies, liabilities, rights, demands, agreements, contracts, covenants, promises, obligations, undertakings, debts, indemnities, accounts, bills, dues, sums of money, costs, fees (including without limitation attorneys' fees), expenses, losses, damages (including without limitation compensatory damages, statutory damages, liquidated damages, exemplary damages and punitive damages), liens, actions, or causes of action (however denominated), including Unknown Claims, of any nature, character, or description, whether in law, contract, statute, or equity, direct or indirect, whether known or unknown, foreseen or not foreseen, accrued or not yet accrued, present or contingent, or asserted or unasserted.

5.      "Class Counsel" means Susman Godfrey L.L.P.

6.      "Class Counsel's Fees and Expenses" means the amount of the award approved by the Court to be paid to Class Counsel from the Settlement Fund for attorneys' fees and reimbursement of Class Counsel's costs and expenses.

7.      "Class Notice" means the notice of the Settlement approved by the Court to be sent by the Settlement Administrator to the Settlement Class.

8.      "Court" means The United States District Court for the District of Connecticut, Hon. Michael P. Shea.

9.      "Fairness Hearing" means the hearing at which the Court considers final approval of the Settlement.

10.      "Final Approval Date" means the date on which the Court enters its Order and Judgment approving the Settlement.

11.      "Final Settlement Date" means the date on which the Order and Judgment becomes final, which shall be the latest of: (i) the date of final affirmance on any appeal of the Order and Judgment; (ii) the date of final dismissal with prejudice of the last pending appeal from the Order and Judgment; or (iii) if no appeal is filed, the expiration of the time for filing or noticing any form of valid appeal from the Order and Judgment.

12.      "Fraser" means Defendant Stuart A. Fraser.

13.      "Incentive Awards" means the aggregate amount of any awards approved by the Court to be paid to Plaintiffs from the Settlement Fund, in addition to any settlement relief they may be eligible to receive, to compensate Plaintiffs for their efforts undertaken on behalf of the Settlement Class. The Incentive Awards shall be made to Plaintiffs in addition to, and shall not diminish or prejudice in any way, any settlement relief which they may be eligible to receive.

14.      "Net Settlement Fund" means the Settlement Fund less (i) Settlement Administration Expenses; (ii) any Incentive Awards awarded by the Court; (iii) any Class Counsel's Fees and Expenses awarded by the Court; and (iv) any other payments provided for under this Settlement or the Order and Judgment.

15.      "Notice Date" means the earliest date on which any form of the Class Notice is first mailed, published, or appears online.

3

16.     "Objection Period" means the 45-day period that begins on the Notice Date and ends 45 days after the Notice Date, or as otherwise determined by the Court. The deadline for the Objection Period will be specified in the Class Notice.

17.     "Opt-Outs" means the persons and entities who timely elected to opt out of the Class on or before October 28, 2019.

18.     "Order and Judgment" means the Court's order approving the Settlement and entering final judgment.

19.     "Parties" means, collectively, Plaintiffs and Fraser. The singular term "Party" means any of Plaintiffs or Fraser, as appropriate.

20.     "Plaintiffs" means Denis Marc Audet, Michael Pfeiffer, and Dean Allen Shinners, individually and as representatives of the Settlement Class, and their assigns, successors, and representatives.

21.     "Plan of Distribution" means a distribution formula or other process for allocating the Net Settlement Fund to Claimants.

22.     "Released Claims" means all past, present and future Claims that the Releasing Parties ever had, have now, or hereafter can, shall, or may have against the Released Parties, which were asserted or could have been asserted in the Action, arising out of or related in any way to the Action or the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act that were alleged in the Action.

23.     "Released Parties" means Fraser and his spouse, children, and any other family members, heirs, assigns, successors, and representatives.

24.     "Releasing Parties" means Plaintiffs and each Settlement Class Member, and their respective heirs, assigns, successors, and representatives (for individual Settlement Class

Members) and past and present parents, subsidiaries, affiliates, employees, officers, directors, members, partners, principals, assigns, successors, agents, and representatives (for Settlement Class Members that are entities).

25.     "Settlement" means the settlement set forth in this Agreement.

26.     "Settlement Administration Expenses" means all Class Notice and administrative fees, costs, or expenses incurred in administering the Settlement, including the fees charged by the Settlement Administrator, as well as the fees, costs, and expenses incurred by the Settlement Administrator. Settlement Administration Expenses shall be paid from the Settlement Fund.

27.     "Settlement Administrator" means the third-party settlement administrator of the Settlement as approved by the Court. Plaintiffs shall be responsible for selecting the Settlement Administrator.

28.     "Settlement Claims" means claims submitted by Settlement Class Members to share in the Net Settlement Fund.

29.     "Settlement Class" means all persons and entities who, between August 1, 2014 and January 19, 2015, (1) purchased Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC; or (2) acquired Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC, by converting, upgrading, or exchanging other products sold by GAW Miners, LLC and/or ZenMiner, LLC. Specifically excluded from the Settlement Class are the Opt Outs, any defendants, any parent, subsidiary, affiliate, or employee of any defendant, any co-conspirator, and any governmental agency.

30.     "Settlement Class Member(s)" means all persons and entities that are included in the Settlement Class.

31.     "Settlement Fund" means the cash funds Fraser will pay into the Settlement Fund Account pursuant to Paragraph 36.

32.     "Settlement Fund Account" means the escrow account from which all payments out of the Settlement Fund will be made. Plaintiffs shall establish the escrow account at a depository institution, that Plaintiffs will select, and such funds shall be invested exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. The Parties and their respective counsel shall have no responsibility for or liability whatsoever with respect to investment decisions made for the Settlement Fund Account. All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Class.

33.     "Unknown Claims" means any claims asserted, that might have been asserted, or that hereafter may be asserted arising out of the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act that were alleged in the Action or that could have been alleged in the Action that the Releasing Parties do not know or suspect to exist in his or her favor at the Final Approval Date, and which if known by him or her might have affected his or her decision to object to the Settlement.

34.     The terms "he or she" and "his or her" include "it" or "its," where applicable. Defined terms expressed in the singular also include the plural form of such term, and vice versa, where applicable.

35.     All references herein to paragraphs refer to paragraphs of this Agreement, unless otherwise expressly stated in the reference.

## II.     SETTLEMENT RELIEF

**36.**     Fraser agrees to fund the Settlement Fund, in the amount of $3,500,000. Fraser shall deposit the Settlement Fund into the Settlement Fund Account in three installments in accordance with the following plan:  (i) Fraser shall deposit the first installment of $1.5 million, no later than thirty (30) business days after the date that the Court grants preliminary approval of this Settlement; and (ii) Fraser shall deposit the next two installments of $1 million each 4 months and 8 months respectively from the date of the first installment payment. If the Court's approval of the Settlement becomes final and no longer subject to appeal, upon the Final Settlement Date, there will be no reversion of the Settlement Amount to Fraser.  In the event the Settlement does not become final, and there is no Final Settlement Date, the full settlement amount paid into the Settlement Fund by Fraser will be fully refunded back to Fraser; in such an event, Plaintiffs and Plaintiffs' counsel shall reasonably work with Fraser and Fraser's counsel in good faith to effectuate such refund.

**37.**     The Net Settlement Fund shall be distributed to Claimants pursuant to a Plan of Distribution to be developed by Class Counsel and approved by the Court. Fraser will not oppose any such proposed Plan of Distribution, provided that no payment or other disbursement shall be made out of the Settlement Fund Account for any reason until after the Final Settlement Date. Under no circumstances shall the Parties or their respective counsel be liable to a Settlement Class Member or any other person or entity in connection with the Plan of Distribution and its implementation.

**38.**     Under no circumstances shall Fraser be liable or obligated to pay any fees, expenses, costs, or disbursements to any person or entity, in connection with the Action, this Agreement, or the Settlement other than the Settlement Fund amount, which represents Fraser's total and maximum contribution to this Settlement, inclusive without limitation of all relief to the

Settlement Class, Class Counsel's Fees and Expenses, Incentive Awards, and Settlement Administration Fees.

### III.   **PRELIMINARY APPROVAL AND CLASS NOTICE**

39.   The Parties agree that Plaintiffs shall move for an order seeking preliminary approval of the Settlement, which shall include a request to notify the Settlement Class of the Settlement and provide a period during which Settlement Class Members may object to the Settlement. Plaintiffs will share a draft of the motion seeking preliminary approval of the Settlement, including any proposed Class Notice and Plan of Distribution, with Fraser no less than 3 business days before it is filed. Plaintiffs will share a draft of the motion seeking final approval of the Settlement (but not Class Counsel's Motion for Plaintiffs' Incentive Awards and Class Counsel's Fees and Expenses) with Fraser no less than 5 business days before it is filed. Fraser will not oppose the motions or any proposed Class Notice and Plan of Distribution, provided they are in accordance with this Agreement. To the extent the Court finds that the Settlement does not meet the standard for preliminary approval, the Parties will negotiate in good faith to modify the Settlement and endeavor to resolve the issue(s) to the satisfaction of the Court.

40.   Settlement Class Members may object to this Settlement by filing a written objection with the Court and serving any such written objection on counsel for the respective Parties (as identified in the Class Notice) within the Objection Period. Unless otherwise ordered by the Court, the objection must contain: (1) the full name, address, telephone number, and email address, if any, of the Settlement Class Member and of the Settlement Class Member's counsel, if any; (2) documentation of the Settlement Class Member's purchase or acquisition of Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC or ZenMiner, LLC between August 1, 2014 and January 19, 2015; (3) a written statement of all grounds for the objection accompanied by legal support for the objection (if any); (4) copies of any papers, briefs, or other documents

upon which the objection is based; (6) a statement of whether the Settlement Class Member intends to appear at the Fairness Hearing, individually and/or through counsel; and (7) the signature of the Settlement Class Member or his/her counsel. If an objecting Settlement Class Member retains counsel in connection with the objection, after serving the objection, the Settlement Class Member shall promptly notify counsel for the respective Parties. Unless otherwise ordered by the Court, Settlement Class Members who do not timely make their objections as provided in this paragraph will be deemed to have waived all objections and shall not be heard or have the right to appeal any aspect of the Settlement, including any Incentive Awards or Class Counsel's Fees and Expenses. The Class Notice shall advise Settlement Class Members of their right to object and the manner required to do so.

41.     Within 10 calendar days following the filing of this Agreement with the Court, Fraser shall serve notices of the proposed Settlement upon appropriate officials in compliance with the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. Plaintiffs and Class Counsel shall cooperate in good faith with Fraser's counsel to provide information reasonably necessary to prepare the CAFA notices.

## IV.     INCENTIVE AWARD AND FEES AND EXPENSES

42.     Class Counsel may move for an award of attorneys' fees, reimbursement of all expenses incurred or to be incurred, and Incentive Awards to the Plaintiffs, payable only from the Settlement Fund, provided that Class Counsel will not move for any award of attorneys' fees exceeding 33 1/3% of the Settlement Fund. Class Counsel's Fees and Expenses and Plaintiffs' Incentive Awards, as approved by the Court, may be paid immediately upon the later of (i) the date on which the Court enters an order approving such awards, and (ii) the Final Settlement Date, or at a later date if required by the Court (the "Earliest Award Payment Date"). In the event the Settlement Fund Account is not fully funded on the Earliest Award Payment Date, the awards may

be paid out of the Settlement Fund Account as soon as the account is sufficiently funded, in accordance with the timeline set forth in Paragraph 36, after the Earliest Award Payment Date. Fraser agrees not to oppose Class Counsel's proposed Incentive Awards or Class Counsel's proposed Fees and Expenses to the extent the request does not exceed the amount set forth above.

43.     Neither Plaintiffs nor Fraser shall be liable or obligated to pay any fees, expenses, costs, or disbursements to any person, either directly or indirectly, in connection with the Action, the Released Claims, this Agreement, or the Settlement, other than those expressly provided in this Agreement.  For clarity, Fraser's liability or obligation to pay any amounts under this Agreement are limited to the amount set forth in Paragraph 36 above.

44.     The Parties agree that the Settlement is not conditioned on the Court's approval of Incentive Awards or Class Counsel's Fees and Expenses.

## V.    TAX REPORTING AND NO PREVAILING PARTY

45.     Any person or entity receiving any payment or consideration pursuant to this Agreement shall alone be responsible for the reporting and payment of any federal, state and/or local income or other form of tax on any payment or consideration made pursuant to this Agreement, and Fraser shall not have obligations to report or pay any federal, state and/or local income or other form of tax on any payment or consideration made pursuant to this Agreement.

46.     All taxes resulting from the tax liabilities of the Settlement Fund shall be paid solely out of the Settlement Fund.

47.     No Party shall be deemed the prevailing party for any purposes of this Action.

## VI.   RELEASES AND WAIVERS

48.     Upon the Final Settlement Date, the Releasing Parties shall be deemed to have, and by operation of the Order and Judgment shall have, fully, finally, and forever released, relinquished and discharged the Released Parties of and from all Released Claims.

10

49.    The Releasing Parties hereby expressly further agree that they shall not now or hereafter institute, maintain, assert, join, or participate in, either directly or indirectly, on their own behalf, on behalf of a class, or on behalf of any other person or entity, any action or proceeding of any kind against the Released Parties asserting Released Claims.

50.    Nothing in this Section VI shall preclude any action to enforce the terms of this Agreement.

51.    The scope of the Released Claims or Released Parties shall not be impaired in any way by the failure of any Settlement Class Member to actually receive the benefits provided for under this Agreement.

VII.    **OTHER PROVISIONS**

52.    The Parties: (i) acknowledge that it is their intent to consummate this Agreement, (ii) agree to cooperate in good faith to the extent reasonably necessary to effect and implement all terms and conditions of the Agreement and to exercise their best efforts to fulfill the foregoing terms and conditions of the Agreement, and (iii) agree to cooperate in good faith to obtain preliminary and final approval of the Settlement and to finalize the Settlement. The Parties agree that the amounts paid in the Settlement and the other terms of the Settlement were negotiated in good faith, and at arm's length by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

53.    No person or entity shall have any claim against Class Counsel, the Settlement Administrator, Fraser's counsel, or any of the Released Parties based on actions taken substantially in accordance with the Agreement and the Settlement contained therein or further orders of the Court.

54.    Fraser specifically and generally denies any and all liability or wrongdoing of any sort with regard to any of the claims in the Action and makes no concessions or admissions of

liability of any sort. Neither this Agreement, nor the Settlement, nor any drafts or communications related thereto, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the Settlement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Claims, or of any alleged wrongdoing or liability of the Released Parties; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any alleged fault or omission of the Released Parties, in any civil, criminal, administrative, or other proceeding in any court, administrative agency, or other tribunal. Nothing in this paragraph shall prevent Fraser and/or any of the Released Parties from using this Agreement or the Order and Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

55.     The Parties agree that if this Agreement or the Settlement fails to be approved, fails to become effective, otherwise fails to be consummated, is declared void, or if there is no Final Settlement Date, then the Parties will be returned to *status quo ante*, as if this Agreement had never been negotiated or executed, and the Parties will work in good faith to ensure the prompt return of any amounts in the Settlement Fund Account to Fraser, except that no incurred Settlement Administration Expenses shall be recouped. Each Party will be restored to the place it was in as of the date this Agreement was signed with the right to assert in the Action any argument or defense that was available to it at that time.

56.     This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest. No waiver of any provision of this Agreement or consent to any departure by either Party therefrom shall be effective unless

the same shall be in writing, signed by the Parties or their counsel, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No amendment or modification made to this Agreement pursuant to this paragraph shall require any additional notice to the Settlement Class Members, including written or publication notice, unless ordered by the Court. Plaintiffs and Class Counsel agree not to seek such additional notice. The Parties may provide updates on any amendments or modifications made to this Agreement on any website for the Settlement if approved by the Court as part of Class Notice, as described in Paragraph 39.

57.     Each person executing the Agreement on behalf of any Party hereby warrants that such person has the full authority to do so.

58.     This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Furthermore, electronically signed PDF versions or copies of original signatures may be accepted as actual signatures and will have the same force and effect as the original.

59.     The Agreement shall be binding upon, and inure to the benefit of, the successors, heirs, and assigns of the Parties hereto. This Agreement is not designed to and does not create any third-party beneficiaries either express or implied, except for the Settlement Class Members.

60.     The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any Party. No Party shall be deemed the drafter of this Agreement. The Parties acknowledge that the terms of this Agreement are contractual and are the product of arms-length negotiations between the Parties and their counsel. Each Party and its respective counsel cooperated in the drafting and preparation of this Agreement. In any construction to be made of this Agreement, the Agreement shall not be construed against any Party.

61.     This Agreement shall be governed by and interpreted in accordance with the laws of the State of Connecticut, without reference to its choice-of-law or conflict-of-laws rules.

62.     The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Agreement and any discovery sought from or concerning objectors to this Agreement. All Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement.

63.     Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturday and Sunday) express delivery service as follows:

(a)     If to Fraser, then to:

Daniel H. Weiner
Marc A. Weinstein
Amina Hassan
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
Tel: (212) 837-6000
Fax: (212) 422-4726
daniel.weiner@hugheshubbard.com
marc.weinstein@hugheshubbard.com
amina.hassan@hugheshubbard.com

(b) If to Plaintiffs or the Class, then to:

Jacob Buchdahl
Seth Ard
Geng Chen
Russell Rennie
Susman Godfrey L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340
jbuchdahl@susmangodfrey.com
sard@susmangodfrey.com
gchen@susmangodfrey.com

14

rrennie@susmangodfrey.com

64.    The Parties reserve the right to agree between themselves (with approval of the Court, if necessary) on any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

**AGREED TO BY**:


**Plaintiffs** individually, and on behalf of the Settlement Class

**Denis Marc Audet**

By:      _____

Date:   _____


**Michael Pfeiffer**

By:      _____

Date:   _____


**Dean Allen Shinners**

By:      _____

Date:   _____


**Defendant**

**Stuart A. Fraser**

By:      _____

Date:   _____

rrennie@susmangodfrey.com

64.     The Parties reserve the right to agree between themselves (with approval of the

Court, if necessary) on any reasonable extensions of time that might be necessary to carry out any

of the provisions of this Agreement.

**AGREED TO BY**:


**Plaintiffs** individually, and on behalf of the
Settlement Class

**Denis Marc Audet**

By:     *Denis Marc Audet*

Date:   *Dec. 13, 2022*


**Defendant**

**Stuart A. Fraser**

By:     _____

Date:   _____


**Michael Pfeiffer**

By:     _____

Date:   _____


**Dean Allen Shinners**

By:     _____

Date:   _____

64.     The Parties reserve the right to agree between themselves (with approval of the Court, if necessary) on any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

**AGREED TO BY**:

**Plaintiffs** individually, and on behalf of the Settlement Class

**Denis Marc Audet**

By: _____

Date: _____

**Michael Pfeiffer**

By: _____

Date: ___**December 14, 2022**___

**Dean Allen Shinners**

By: _____

Date: _____

**Defendant**

**Stuart A. Fraser**

By: _____

Date: _____

17

rrennie@susmangodfrey.com

64.    The Parties reserve the right to agree between themselves (with approval of the

Court, if necessary) on any reasonable extensions of time that might be necessary to carry out any

of the provisions of this Agreement.

**AGREED TO BY**:


**Plaintiffs** individually, and on behalf of the
Settlement Class

**Denis Marc Audet**

By:    _____

Date:  _____

**Michael Pfeiffer**

By:    _____

Date:  _____

**Dean Allen Shinners**

By:    _H Allen Shin___ E

Date:  12-12-2022


**Defendant**

**Stuart A. Fraser**

By:    _____

Date:  _____

**APPROVED ONLY AS TO FORM**:

_____

Daniel H. Weiner
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
Tel: (212) 837-6000
Fax: (212) 422-4726
daniel.weiner@hugheshubbard.com

*Counsel for Defendant Stuart A. Fraser*

_____

Jacob W. Buchdahl
Susman Godfrey L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: 212-336-8330
Fax: 212-336-8340
jbuchdahl@susmangodfrey.com

*Class Counsel and Counsel for Plaintiffs*

16

UNITED STATES DISTRICT COURT
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, and DEAN ALLEN SHINNERS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC (d/b/a ZEN CLOUD),<br><br>Defendants. | Case 3:16-cv-00940<br><br>Hon. Michael P. Shea<br>Courtroom 2<br><br>ECF Case<br><br>CLASS ACTION |

## JOINT STIPULATION AND SETTLEMENT AGREEMENT

IT IS HEREBY STIPULATED AND AGREED, subject to the Court's approval and pursuant to Rule 23 of the Federal Rules of Civil Procedure, by and between: (i) Plaintiffs Denis Marc Audet, Michael Pfeiffer, and Dean Allen Shinners (collectively "Plaintiffs"), individually and on behalf of the Settlement Class (as defined herein); and (ii) Defendant Stuart A. Fraser ("Fraser"), that the causes of action and matters raised by and related to this lawsuit, as captioned above, are hereby settled and compromised on the terms and conditions set forth in this Joint Stipulation and Settlement Agreement ("Agreement").

This Agreement is made and entered into by and between Plaintiffs and Fraser and is intended to fully, finally, and forever resolve, discharge, and settle the Action and the Released Claims (both as described below) upon and subject to the terms and conditions hereof.

Capitalized terms in this Agreement shall have the meaning set forth at Section I below.

1

## I.    DEFINITIONS AND CONSTRUCTION

1.      "Action" means the lawsuit, captioned *Audet, et al. v. Fraser, et al.*, Case No. 3:16-cv-00940, currently pending in the United States District Court for the District of Connecticut.

2.      "Agreement" means this Joint Stipulation and Settlement Agreement.

3.      "Claimants" means all Settlement Class Members who submit valid and timely Settlement Claims.

4.      "Claims" means all suits, proceedings, claims, cross-claims, counter-claims, complaints, charges, controversies, liabilities, rights, demands, agreements, contracts, covenants, promises, obligations, undertakings, debts, indemnities, accounts, bills, dues, sums of money, costs, fees (including without limitation attorneys' fees), expenses, losses, damages (including without limitation compensatory damages, statutory damages, liquidated damages, exemplary damages and punitive damages), liens, actions, or causes of action (however denominated), including Unknown Claims, of any nature, character, or description, whether in law, contract, statute, or equity, direct or indirect, whether known or unknown, foreseen or not foreseen, accrued or not yet accrued, present or contingent, or asserted or unasserted.

5.      "Class Counsel" means Susman Godfrey L.L.P.

6.      "Class Counsel's Fees and Expenses" means the amount of the award approved by the Court to be paid to Class Counsel from the Settlement Fund for attorneys' fees and reimbursement of Class Counsel's costs and expenses.

7.      "Class Notice" means the notice of the Settlement approved by the Court to be sent by the Settlement Administrator to the Settlement Class.

8.      "Court" means The United States District Court for the District of Connecticut, Hon. Michael P. Shea.

9.      "Fairness Hearing" means the hearing at which the Court considers final approval of the Settlement.

10.     "Final Approval Date" means the date on which the Court enters its Order and Judgment approving the Settlement.

11.     "Final Settlement Date" means the date on which the Order and Judgment becomes final, which shall be the latest of: (i) the date of final affirmance on any appeal of the Order and Judgment; (ii) the date of final dismissal with prejudice of the last pending appeal from the Order and Judgment; or (iii) if no appeal is filed, the expiration of the time for filing or noticing any form of valid appeal from the Order and Judgment.

12.     "Fraser" means Defendant Stuart A. Fraser.

13.     "Incentive Awards" means the aggregate amount of any awards approved by the Court to be paid to Plaintiffs from the Settlement Fund, in addition to any settlement relief they may be eligible to receive, to compensate Plaintiffs for their efforts undertaken on behalf of the Settlement Class. The Incentive Awards shall be made to Plaintiffs in addition to, and shall not diminish or prejudice in any way, any settlement relief which they may be eligible to receive.

14.     "Net Settlement Fund" means the Settlement Fund less (i) Settlement Administration Expenses; (ii) any Incentive Awards awarded by the Court; (iii) any Class Counsel's Fees and Expenses awarded by the Court; and (iv) any other payments provided for under this Settlement or the Order and Judgment.

15.     "Notice Date" means the earliest date on which any form of the Class Notice is first mailed, published, or appears online.

16.     "Objection Period" means the 45-day period that begins on the Notice Date and ends 45 days after the Notice Date, or as otherwise determined by the Court. The deadline for the Objection Period will be specified in the Class Notice.

17.     "Opt-Outs" means the persons and entities who timely elected to opt out of the Class on or before October 28, 2019.

18.     "Order and Judgment" means the Court's order approving the Settlement and entering final judgment.

19.     "Parties" means, collectively, Plaintiffs and Fraser. The singular term "Party" means any of Plaintiffs or Fraser, as appropriate.

20.     "Plaintiffs" means Denis Marc Audet, Michael Pfeiffer, and Dean Allen Shinners, individually and as representatives of the Settlement Class, and their assigns, successors, and representatives.

21.     "Plan of Distribution" means a distribution formula or other process for allocating the Net Settlement Fund to Claimants.

22.     "Released Claims" means all past, present and future Claims that the Releasing Parties ever had, have now, or hereafter can, shall, or may have against the Released Parties, which were asserted or could have been asserted in the Action, arising out of or related in any way to the Action or the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act that were alleged in the Action.

23.     "Released Parties" means Fraser and his spouse, children, and any other family members, heirs, assigns, successors, and representatives.

24.     "Releasing Parties" means Plaintiffs and each Settlement Class Member, and their respective heirs, assigns, successors, and representatives (for individual Settlement Class

4

Members) and past and present parents, subsidiaries, affiliates, employees, officers, directors, members, partners, principals, assigns, successors, agents, and representatives (for Settlement Class Members that are entities).

25.     "Settlement" means the settlement set forth in this Agreement.

26.     "Settlement Administration Expenses" means all Class Notice and administrative fees, costs, or expenses incurred in administering the Settlement, including the fees charged by the Settlement Administrator, as well as the fees, costs, and expenses incurred by the Settlement Administrator. Settlement Administration Expenses shall be paid from the Settlement Fund.

27.     "Settlement Administrator" means the third-party settlement administrator of the Settlement as approved by the Court. Plaintiffs shall be responsible for selecting the Settlement Administrator.

28.     "Settlement Claims" means claims submitted by Settlement Class Members to share in the Net Settlement Fund.

29.     "Settlement Class" means all persons and entities who, between August 1, 2014 and January 19, 2015, (1) purchased Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC; or (2) acquired Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC, by converting, upgrading, or exchanging other products sold by GAW Miners, LLC and/or ZenMiner, LLC. Specifically excluded from the Settlement Class are the Opt Outs, any defendants, any parent, subsidiary, affiliate, or employee of any defendant, any co-conspirator, and any governmental agency.

30.     "Settlement Class Member(s)" means all persons and entities that are included in the Settlement Class.

31.     "Settlement Fund" means the cash funds Fraser will pay into the Settlement Fund Account pursuant to Paragraph 36.

32.     "Settlement Fund Account" means the escrow account from which all payments out of the Settlement Fund will be made. Plaintiffs shall establish the escrow account at a depository institution, that Plaintiffs will select, and such funds shall be invested exclusively in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, including a U.S. Treasury Fund or a bank account that is either (a) fully insured by the Federal Deposit Insurance Corporation ("FDIC") or (b) secured by instruments backed by the full faith and credit of the United States Government. The Parties and their respective counsel shall have no responsibility for or liability whatsoever with respect to investment decisions made for the Settlement Fund Account. All risks related to the investment of the Settlement Fund shall be borne solely by the Settlement Class.

33.     "Unknown Claims" means any claims asserted, that might have been asserted, or that hereafter may be asserted arising out of the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act that were alleged in the Action or that could have been alleged in the Action that the Releasing Parties do not know or suspect to exist in his or her favor at the Final Approval Date, and which if known by him or her might have affected his or her decision to object to the Settlement.

34.     The terms "he or she" and "his or her" include "it" or "its," where applicable. Defined terms expressed in the singular also include the plural form of such term, and vice versa, where applicable.

35.     All references herein to paragraphs refer to paragraphs of this Agreement, unless otherwise expressly stated in the reference.

6

## II.    SETTLEMENT RELIEF

**36.**    Fraser agrees to fund the Settlement Fund, in the amount of $3,500,000. Fraser shall deposit the Settlement Fund into the Settlement Fund Account in three installments in accordance with the following plan:  (i) Fraser shall deposit the first installment of $1.5 million, no later than thirty (30) business days after the date that the Court grants preliminary approval of this Settlement; and (ii) Fraser shall deposit the next two installments of $1 million each 4 months and 8 months respectively from the date of the first installment payment. If the Court's approval of the Settlement becomes final and no longer subject to appeal, upon the Final Settlement Date, there will be no reversion of the Settlement Amount to Fraser.  In the event the Settlement does not become final, and there is no Final Settlement Date, the full settlement amount paid into the Settlement Fund by Fraser will be fully refunded back to Fraser; in such an event, Plaintiffs and Plaintiffs' counsel shall reasonably work with Fraser and Fraser's counsel in good faith to effectuate such refund.

**37.**    The Net Settlement Fund shall be distributed to Claimants pursuant to a Plan of Distribution to be developed by Class Counsel and approved by the Court. Fraser will not oppose any such proposed Plan of Distribution, provided that no payment or other disbursement shall be made out of the Settlement Fund Account for any reason until after the Final Settlement Date. Under no circumstances shall the Parties or their respective counsel be liable to a Settlement Class Member or any other person or entity in connection with the Plan of Distribution and its implementation.

**38.**    Under no circumstances shall Fraser be liable or obligated to pay any fees, expenses, costs, or disbursements to any person or entity, in connection with the Action, this Agreement, or the Settlement other than the Settlement Fund amount, which represents Fraser's total and maximum contribution to this Settlement, inclusive without limitation of all relief to the

7

Settlement Class, Class Counsel's Fees and Expenses, Incentive Awards, and Settlement Administration Fees.

**III.    PRELIMINARY APPROVAL AND CLASS NOTICE**

39.    The Parties agree that Plaintiffs shall move for an order seeking preliminary approval of the Settlement, which shall include a request to notify the Settlement Class of the Settlement and provide a period during which Settlement Class Members may object to the Settlement. Plaintiffs will share a draft of the motion seeking preliminary approval of the Settlement, including any proposed Class Notice and Plan of Distribution, with Fraser no less than 3 business days before it is filed. Plaintiffs will share a draft of the motion seeking final approval of the Settlement (but not Class Counsel's Motion for Plaintiffs' Incentive Awards and Class Counsel's Fees and Expenses) with Fraser no less than 5 business days before it is filed. Fraser will not oppose the motions or any proposed Class Notice and Plan of Distribution, provided they are in accordance with this Agreement. To the extent the Court finds that the Settlement does not meet the standard for preliminary approval, the Parties will negotiate in good faith to modify the Settlement and endeavor to resolve the issue(s) to the satisfaction of the Court.

40.    Settlement Class Members may object to this Settlement by filing a written objection with the Court and serving any such written objection on counsel for the respective Parties (as identified in the Class Notice) within the Objection Period. Unless otherwise ordered by the Court, the objection must contain: (1) the full name, address, telephone number, and email address, if any, of the Settlement Class Member and of the Settlement Class Member's counsel, if any; (2) documentation of the Settlement Class Member's purchase or acquisition of Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC or ZenMiner, LLC between August 1, 2014 and January 19, 2015; (3) a written statement of all grounds for the objection accompanied by legal support for the objection (if any); (4) copies of any papers, briefs, or other documents

8

upon which the objection is based; (6) a statement of whether the Settlement Class Member intends to appear at the Fairness Hearing, individually and/or through counsel; and (7) the signature of the Settlement Class Member or his/her counsel. If an objecting Settlement Class Member retains counsel in connection with the objection, after serving the objection, the Settlement Class Member shall promptly notify counsel for the respective Parties. Unless otherwise ordered by the Court, Settlement Class Members who do not timely make their objections as provided in this paragraph will be deemed to have waived all objections and shall not be heard or have the right to appeal any aspect of the Settlement, including any Incentive Awards or Class Counsel's Fees and Expenses. The Class Notice shall advise Settlement Class Members of their right to object and the manner required to do so.

41.     Within 10 calendar days following the filing of this Agreement with the Court, Fraser shall serve notices of the proposed Settlement upon appropriate officials in compliance with the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. Plaintiffs and Class Counsel shall cooperate in good faith with Fraser's counsel to provide information reasonably necessary to prepare the CAFA notices.

## IV.    INCENTIVE AWARD AND FEES AND EXPENSES

42.     Class Counsel may move for an award of attorneys' fees, reimbursement of all expenses incurred or to be incurred, and Incentive Awards to the Plaintiffs, payable only from the Settlement Fund, provided that Class Counsel will not move for any award of attorneys' fees exceeding 33 1/3% of the Settlement Fund. Class Counsel's Fees and Expenses and Plaintiffs' Incentive Awards, as approved by the Court, may be paid immediately upon the later of (i) the date on which the Court enters an order approving such awards, and (ii) the Final Settlement Date, or at a later date if required by the Court (the "Earliest Award Payment Date").  In the event the Settlement Fund Account is not fully funded on the Earliest Award Payment Date, the awards may

be paid out of the Settlement Fund Account as soon as the account is sufficiently funded, in accordance with the timeline set forth in Paragraph 36, after the Earliest Award Payment Date. Fraser agrees not to oppose Class Counsel's proposed Incentive Awards or Class Counsel's proposed Fees and Expenses to the extent the request does not exceed the amount set forth above.

43.     Neither Plaintiffs nor Fraser shall be liable or obligated to pay any fees, expenses, costs, or disbursements to any person, either directly or indirectly, in connection with the Action, the Released Claims, this Agreement, or the Settlement, other than those expressly provided in this Agreement.  For clarity, Fraser's liability or obligation to pay any amounts under this Agreement are limited to the amount set forth in Paragraph 36 above.

44.     The Parties agree that the Settlement is not conditioned on the Court's approval of Incentive Awards or Class Counsel's Fees and Expenses.

## V.     TAX REPORTING AND NO PREVAILING PARTY

45.     Any person or entity receiving any payment or consideration pursuant to this Agreement shall alone be responsible for the reporting and payment of any federal, state and/or local income or other form of tax on any payment or consideration made pursuant to this Agreement, and Fraser shall not have obligations to report or pay any federal, state and/or local income or other form of tax on any payment or consideration made pursuant to this Agreement.

46.     All taxes resulting from the tax liabilities of the Settlement Fund shall be paid solely out of the Settlement Fund.

47.     No Party shall be deemed the prevailing party for any purposes of this Action.

## VI.    RELEASES AND WAIVERS

48.     Upon the Final Settlement Date, the Releasing Parties shall be deemed to have, and by operation of the Order and Judgment shall have, fully, finally, and forever released, relinquished and discharged the Released Parties of and from all Released Claims.

10

49.     The Releasing Parties hereby expressly further agree that they shall not now or hereafter institute, maintain, assert, join, or participate in, either directly or indirectly, on their own behalf, on behalf of a class, or on behalf of any other person or entity, any action or proceeding of any kind against the Released Parties asserting Released Claims.

50.     Nothing in this Section VI shall preclude any action to enforce the terms of this Agreement.

51.     The scope of the Released Claims or Released Parties shall not be impaired in any way by the failure of any Settlement Class Member to actually receive the benefits provided for under this Agreement.

## VII.   **OTHER PROVISIONS**

52.     The Parties: (i) acknowledge that it is their intent to consummate this Agreement, (ii) agree to cooperate in good faith to the extent reasonably necessary to effect and implement all terms and conditions of the Agreement and to exercise their best efforts to fulfill the foregoing terms and conditions of the Agreement, and (iii) agree to cooperate in good faith to obtain preliminary and final approval of the Settlement and to finalize the Settlement. The Parties agree that the amounts paid in the Settlement and the other terms of the Settlement were negotiated in good faith, and at arm's length by the Parties, and reflect a settlement that was reached voluntarily after consultation with competent legal counsel.

53.     No person or entity shall have any claim against Class Counsel, the Settlement Administrator, Fraser's counsel, or any of the Released Parties based on actions taken substantially in accordance with the Agreement and the Settlement contained therein or further orders of the Court.

54.     Fraser specifically and generally denies any and all liability or wrongdoing of any sort with regard to any of the claims in the Action and makes no concessions or admissions of

11

liability of any sort. Neither this Agreement, nor the Settlement, nor any drafts or communications related thereto, nor any act performed or document executed pursuant to, or in furtherance of, the Agreement or the Settlement: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Claims, or of any alleged wrongdoing or liability of the Released Parties; or (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any alleged fault or omission of the Released Parties, in any civil, criminal, administrative, or other proceeding in any court, administrative agency, or other tribunal. Nothing in this paragraph shall prevent Fraser and/or any of the Released Parties from using this Agreement or the Order and Judgment in any action that may be brought against them in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

55.     The Parties agree that if this Agreement or the Settlement fails to be approved, fails to become effective, otherwise fails to be consummated, is declared void, or if there is no Final Settlement Date, then the Parties will be returned to *status quo ante*, as if this Agreement had never been negotiated or executed, and the Parties will work in good faith to ensure the prompt return of any amounts in the Settlement Fund Account to Fraser, except that no incurred Settlement Administration Expenses shall be recouped. Each Party will be restored to the place it was in as of the date this Agreement was signed with the right to assert in the Action any argument or defense that was available to it at that time.

56.     This Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest. No waiver of any provision of this Agreement or consent to any departure by either Party therefrom shall be effective unless

the same shall be in writing, signed by the Parties or their counsel, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No amendment or modification made to this Agreement pursuant to this paragraph shall require any additional notice to the Settlement Class Members, including written or publication notice, unless ordered by the Court. Plaintiffs and Class Counsel agree not to seek such additional notice. The Parties may provide updates on any amendments or modifications made to this Agreement on any website for the Settlement if approved by the Court as part of Class Notice, as described in Paragraph 39.

57.     Each person executing the Agreement on behalf of any Party hereby warrants that such person has the full authority to do so.

58.     This Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Furthermore, electronically signed PDF versions or copies of original signatures may be accepted as actual signatures and will have the same force and effect as the original.

59.     The Agreement shall be binding upon, and inure to the benefit of, the successors, heirs, and assigns of the Parties hereto. This Agreement is not designed to and does not create any third-party beneficiaries either express or implied, except for the Settlement Class Members.

60.     The language of all parts of this Agreement shall in all cases be construed as a whole, according to its fair meaning, and not strictly for or against any Party. No Party shall be deemed the drafter of this Agreement. The Parties acknowledge that the terms of this Agreement are contractual and are the product of arms-length negotiations between the Parties and their counsel. Each Party and its respective counsel cooperated in the drafting and preparation of this Agreement. In any construction to be made of this Agreement, the Agreement shall not be construed against any Party.

13

61.     This Agreement shall be governed by and interpreted in accordance with the laws of the State of Connecticut, without reference to its choice-of-law or conflict-of-laws rules.

62.     The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Agreement and any discovery sought from or concerning objectors to this Agreement. All Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the Settlement embodied in the Agreement.

63.     Whenever this Agreement requires or contemplates that one Party shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturday and Sunday) express delivery service as follows:

(a)     If to Fraser, then to:

Daniel H. Weiner
Marc A. Weinstein
Amina Hassan
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
Tel: (212) 837-6000
Fax: (212) 422-4726
daniel.weiner@hugheshubbard.com
marc.weinstein@hugheshubbard.com
amina.hassan@hugheshubbard.com

(b) If to Plaintiffs or the Class, then to:

Jacob Buchdahl
Seth Ard
Geng Chen
Russell Rennie
Susman Godfrey L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: (212) 336-8330
Fax: (212) 336-8340
jbuchdahl@susmangodfrey.com
sard@susmangodfrey.com
gchen@susmangodfrey.com

rrennie@susmangodfrey.com

64.    The Parties reserve the right to agree between themselves (with approval of the Court, if necessary) on any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

**AGREED TO BY:**


**Plaintiffs** individually, and on behalf of the   **Defendant**
Settlement Class

**Denis Marc Audet**

By: _____

Date: _____


**Michael Pfeiffer**

By: _____

Date: _____


**Dean Allen Shinners**

By: _____

Date: _____


**Stuart A. Fraser**

By: _____

Date: _____12 - 12 - 22_____

15

**APPROVED ONLY AS TO FORM:**

_____

Daniel H. Weiner
Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, NY 10004
Tel: (212) 837-6000
Fax: (212) 422-4726
daniel.weiner@hugheshubbard.com

*Counsel for Defendant Stuart A. Fraser*

_____

Jacob Buchdahl
Susman Godfrey L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
Tel: 212-336-8330
Fax: 212-336-8340
jbuchdahl@susmangodfrey.com

*Class Counsel and Counsel for Plaintiffs*

16