UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENIS MARC AUDET, MICHAEL PFEIFFER, and DEAN ALLEN SHINNERS, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiffs,<br><br>  vs.<br><br>STUART A. FRASER, GAW MINERS, LLC, and ZENMINER, LLC, (d/b/a ZEN CLOUD),<br><br>        Defendants. | Case 3:16-cv-00940<br><br>Hon. Michael P. Shea<br>Courtroom 3<br><br>ECF Case<br><br><u>CLASS ACTION</u><br><br>June 9, 2023 |

**<u>MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'</u>**
**<u>MOTION FOR FINAL APPROVAL OF SETTLEMENT</u>**

## TABLE OF CONTENTS

I.  INTRODUCTION ...................................................................................................1

II.  BACKGROUND .................................................................................................2

    A.  The GAW Miners Fraud & Plaintiffs' Lawsuit .............................................2

    B.  Plaintiffs Win Early Victories and Engage in Years of Discovery ......................3

    C.  Class Certification ......................................................................................5

    D.  Plaintiffs Try the Case—And Win a New Trial After a Defense Verdict ..................................................................................................6

    E.  Settlement Negotiations, Preliminary Approval, and Class Notice .......................7

    F.  The Settlement Agreement ............................................................................9

        1.  Consideration and the Settlement Class .................................................9

        2.  Payments to Claimants and Release of Claims ........................................10

        3.  Incentive Awards, Costs, and Attorneys' Fees .........................................11

        4.  Plan of Distribution ..........................................................................11

III.  THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL ........................13

    A.  Legal Standard ..........................................................................................13

    B.  The Proposed Settlement Satisfies the Rule 23(e)(2) Factors ...............................14

        1.  Rule 23(e)(2)(A): Adequacy of Plaintiff and Class Counsel ....................14

        2.  Rule 23(e)(2)(B): Arms' Length Negotiation ..........................................16

        3.  Rule 23(e)(2)(C): Adequacy of the Relief Provided to the Class .............16

        4.  Rule 23(e)(2)(D) Factor: The Proposal Treats All Settlement Class Members Equitably ..........................................................................23

    C.  The Remaining *Grinnell* Factors Also Support Final Approval ...........................24

        1.  The Reaction of the Class to the Settlement .............................................24

        2.  The Stage of the Proceedings and Amount of Discovery Completed ....................................................................................25

3.    The Ability of Mr. Fraser to Withstand A Greater Judgment....................25

IV.    CONCLUSION.................................................................................................................26

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
 2009 WL 3077396 (E.D.N.Y. Sept. 25, 2009) .................................................................21

*In re AOL Time Warner, Inc.*,
 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006)......................................................................25

*Audet v. Fraser*,
 332 F.R.D. 53 (D. Conn. 2019).......................................................................................18

*Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*,
 258 F. Supp. 2d 254 (S.D.N.Y. 2003)..............................................................................19

*Charron v. Pinnacle Grp. N.Y. LLC*,
 874 F. Supp. 2d 179 (S.D.N.Y. 2012)..............................................................................21

*Christine Asia Co. v. Yun Ma*,
 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ..................................................................13

*City of Detroit v. Grinnell Corp*,
 495 F.2d.448 (2d Cir. 1974)............................................................................... *passim*

*Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*,
 502 F.3d 91 (2d Cir. 2007)..............................................................................................14

*Cty. of Suffolk v. Alcorn*,
 710 F. Supp. 1428 (E.D.N.Y. 1989), *aff'd in relevant part*, 907 F.2d 1295 (2d
 Cir. 1990) ..........................................................................................................................25

*D'Amato v. Deutsche Bank*,
 236 F.3d 78 (2d Cir. 2001)..............................................................................................25

*Fleisher v. Phoenix Life Ins. Co.*,
 2015 WL 10847814 (S.D.N.Y. Sept. 9, 2015)....................................................17, 19, 21, 26

*In re Giant Interactive Group, Inc. Sec. Litig.*,
 279 F.R.D. 151 (S.D.N.Y. 2011) ...............................................................................1, 25

*In re Glob. Crossing Sec. & ERISA Litig.*,
 225 F.R.D. 436 (S.D.N.Y. 2004) ....................................................................................15

*Goldberger v. Integrated Res., Inc.*,
 209 F.3d 43 (2d Cir. 2000)..............................................................................................14

*Hart v. BHH, LLC,*
  2020 WL 5645984 (S.D.N.Y. Sept. 22, 2020)........................................................22

*Hunichen v. Atonomi LLC,*
  2021 WL 5854964 (W.D. Wash. Nov. 12, 2021) ....................................................20

*Hunichen v. Atonomi LLC,*
  2022 WL 4131590 (W.D. Wash. Sept. 12, 2022) ....................................................20

*Jander v. Ret. Plans Comm. of IBM,*
  2021 WL 3115709 (S.D.N.Y. July 22, 2021) ...................................................24, 25

*Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.,*
  2016 WL 6542707 (D. Conn. Nov. 3, 2016) ...........................................................25

*In re Lloyd's Am. Tr. Fund Litig.,*
  2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) .......................................................21

*McReynolds v. Richards-Cantave,*
  588 F.3d 790 (2d Cir. 2009)....................................................................................16

*Meredith Corp. v. SESAC, LLC,*
  87 F. Supp. 3d 650 (S.D.N.Y. 2015)........................................................................24

*In re PaineWebber Ltd. Partnerships Litig.,*
  171 F.R.D. 104 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997)...................21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.,*
  330 F.R.D. 11 (E.D.N.Y. 2019) ...............................................................................17

*SEC v. Kik Interactive Inc.,*
  492 F. Supp. 3d 169 (S.D.N.Y. 2020)......................................................................18

*In re Signet Jewelers Ltd. Sec. Litig.,*
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) ..........................................................24

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
  396 F.3d 96 (2d Cir. 2005).......................................................................................13

**Statutes**

28 U.S.C. § 1715(b)........................................................................................................9

Class Action Fairness Act................................................................................................9

Connecticut Uniform Securities Act................................................................................3

Freedom of Information Act ............................................................................................4

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... *passim*

Fed. R. Civ. P 50 .................................................................................................6

Fed. R. Civ. P 59 .................................................................................................6

**Other Authorities**

Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* (2005) .......................................................................................................22

## I.      INTRODUCTION

The Settlement—achieved after seven years of litigation, a 7-day jury trial resulting in a complete defense verdict, and an order granting the Plaintiffs a new trial in part—provides $3.5 million in certain and immediate cash relief, after Plaintiffs tried but lost a first jury trial on the same claims. After an extensive notice program, not a single class member objected to the settlement, and that universally favorable reaction from the Class confirms the reasonableness of the settlement. *See In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. 151, 161 (S.D.N.Y. 2011) ("No class members have objected to the Settlement, and very few have opted out. The reaction of the class to date supports approval of the Settlement.").

In their motion for preliminary approval of the Settlement, Plaintiffs set out in detail why the Settlement is fair, reasonable, and adequate under Rule 23(e)(2) and the Second Circuit's *Grinnell* factors. *See* ECF No. 383-1. The result is excellent in face of uncertain damages, bifurcated trials, and the zero-dollar recovery from the first trial. The recovery provides meaningful immediate relief to Class Members who faced the chance of another defense verdict—and the certainty of years of delay—that would come with a second trial, which itself could not lead to any damages if the trials were again bifurcated. The Court—which presided over the trial and knows firsthand the factual record and the risks of continued litigation in this case—agreed, finding "the Settlement Agreement was entered into at arm's-length by highly experienced counsel" (it is procedurally fair) and "sufficiently within the range of reasonableness" to grant preliminary approval. ECF No. 388 at ¶ 1. Additionally, the Court found that Plaintiffs' proposed notice procedures "satisfy the requirements of Federal Rule of Civil Procedure 23(c)(2)(d) and due process" and their Plan of Distribution was "reasonable and rational and should be provided to Settlement Class Members for their review." *Id.* ¶¶ 4, 6.

Consistent with the Court's order, Plaintiffs presented the Settlement to the Class, including to over 100,000 people by direct email and through a website visited over 24,000 times, and advised Settlement Class Members of their rights to object to the Settlement. No one has done so. *See* Declaration of Seth Ard in Support of Plaintiffs' Motion for Final Approval of Settlement ("Ard Decl.") ¶ 20. Class Counsel has not received a single objection to either the fairness of the Settlement, the Plan of Distribution, or Class Counsel's request for fees, expenses, and incentive awards. *See* ECF No. 390-1.

The Settlement will finally give Settlement Class Members a remedy for losses they suffered almost a decade ago. For those reasons, and those set forth in the preliminary approval papers, the Court should grant final approval of the Settlement.

## II.    BACKGROUND

### A.    The GAW Miners Fraud & Plaintiffs' Lawsuit

In the middle of 2014, GAW Miners, LLC ("GAW") began selling a product called a "Hashlet," which was marketed to the public as a share in, or slice of, the returns of GAW's cutting-edge cryptocurrency mining enterprise. Several months later, near the end of 2014, GAW began marketing, offering, and selling a cryptocurrency token called "Paycoin." GAW told the public that the value of Paycoin would not fall below $20 per token because GAW would support the price of Paycoin and that, upon its release, Paycoin would be accepted by major online retailers. In addition to these products, GAW sold or offered "Hashpoints" and "HashStakers" (together with Hashlets and Paycoin, the "GAW Products") which were related to the Hashlet and Paycoin products.

In December 2014 and January 2015, Paycoin launched. When its value quickly fell below $20, investors learned that GAW could not and would not support the price of Paycoin, and no

major retailers had made agreements with GAW to accept Paycoin for purchases. Soon after, GAW stopped paying out proceeds to Hashlet owners. During a subsequent investigation by federal law enforcement, evidence emerged that Hashlets were simply a Ponzi scheme. GAW did not have enough mining power to pay out proceeds for all the Hashlets it had sold, and it was using proceeds from sales to new customers to make payouts to earlier Hashlet investors. It also became clear that GAW's sales of Paycoin, Hashpoints, and HashStakers were merely attempts to keep the fraud going.

On June 15, 2016, Plaintiffs Allen Shinners, Michael Pfeiffer, and Marc Audet ("Plaintiffs") sued GAW, another company called ZenMiner LLC, and their former CEO Josh Garza in a class action alleging securities fraud, common-law fraud, and violations of the Connecticut Uniform Securities Act.[1] Plaintiffs also named Stuart Fraser as a Defendant, alleging that he was liable as a control person and an aider-and-abettor of GAW's fraud based on his role in the fraud, financial and managerial involvement with GAW, and close relationship with GAW's CEO, among other things. *See* ECF No. 57 at ¶¶ 18, 38-74.

**B.      Plaintiffs Win Early Victories and Engage in Years of Discovery**

Soon after filing the lawsuit, Plaintiffs notched several early successes. In October 2016, Plaintiffs reached a settlement with Defendant Garza, who provided Plaintiffs with important information, documents, and cooperation in exchange for the release of Plaintiffs' claims against him.[2] The value of this cooperation quickly became clear when Mr. Fraser moved to dismiss

---

[1] GAW Miners, LLC and ZenMiner, LLC have defaulted. ECF No. 71.

[2] Plaintiffs ensured that they would have recourse against Garza if he did not honor his commitments, as the settlement agreement precluded Garza from challenging any effort by Plaintiffs to reinstate him as a Defendant or assert a new action against him as untimely, in the event that Garza materially breached the agreement or was shown to have made a materially false or misleading representation. *See* ECF No. 390-2 at ¶ 6 (5/25/23 Ard Declaration in Support of Class Counsel's Motion for Fees).

Plaintiffs' complaint in September 2016. ECF Nos. 41-43. In response to Mr. Fraser's motion, Plaintiffs amended their complaint to incorporate information obtained from Garza that bolstered Plaintiffs' control-person allegations against Mr. Fraser. ECF No. 57. The Court cited many of the new allegations in the amended complaint—which Plaintiffs had derived from information from Garza—in its order denying Mr. Fraser's motion to dismiss. ECF No. 72.

After surviving Mr. Fraser's motions to dismiss, Plaintiffs and Class Counsel engaged in substantial, wide-ranging discovery over a period spanning five years. Plaintiffs, Class Counsel, and their experts reviewed tens of thousands of documents, including company communications, advertising and marketing materials, transactions and sales databases, and the source code underlying GAW's cryptocurrency token. Ard Decl. ¶ 9. These documents included not only Defendant Stuart Fraser's records, but evidence from extensive third-party discovery and investigation, archived websites, and key documents obtained from the Securities and Exchange Commission through a Freedom of Information Act request. Ard Decl. ¶ 9. Plaintiffs took and defended 23 depositions: each of the three Plaintiffs—as well as six class members who were not named Plaintiffs—were deposed. Plaintiffs also deposed Mr. Fraser, former GAW CEO Garza, and numerous former employees of GAW. Ard Decl. ¶ 11.

Plaintiffs also undertook substantial and highly technical expert work. Robert Mills, Plaintiffs' damages expert, spent "well over 100 hours reviewing, analyzing, and exploring" GAW's sales database in order to understand the complex database and build a damages model. ECF No. 179-2 at ¶ 29. Arvind Narayanan—an expert on cryptocurrency and blockchains—personally examined the source code used to build GAW's token, Paycoin. Both experts spent dozens of hours preparing declarations and opening and rebuttal reports and being deposed, and in the case of Professor Narayanan, later testifying at trial.

C.     **Class Certification**

In September 2018, Plaintiffs moved to certify the class under Rule 23. Their motion was supported by 43 exhibits and 3 expert declarations. ECF Nos. 96-97. This expert testimony provided evidence to satisfy Rule 23's requirements of numerosity and the predominance of common questions over individualized issues with respect to damages, among other things. *See* ECF No. 97 at 13, 32-33. Plaintiffs' motion also marshalled authority and evidence that Plaintiffs could prove individual reliance through class-wide evidence even though they could not take advantage of the presumption of reliance that is available in many Rule 10b-5 cases. *See* ECF No. 141 at 42 (noting that "the Supreme Court has observed in *dicta* that '[a]bsent the fraud-on-the-market theory, the requirement that Rule 10b-5 plaintiffs establish reliance would ***ordinarily preclude certification*** of a class action seeking money damages because individual reliance issues would overwhelm questions common to the class" (quoting *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 462-63 (2013))). In response to Plaintiffs' motion, Mr. Fraser not only filed an opposition, but also sought to strike two of the three expert declarations that Plaintiffs submitted in support of their motion, ECF Nos. 107-09.

On July 8, 2019, the Court certified the following litigation Class:

> All persons or entities who, between August 1, 2014, and January 19, 2015, (1) purchased Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC; or (2) acquired Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC, by converting, upgrading, or exchanging other products sold by GAW Miners, LLC and/or ZenMiner, LLC. Excluded from the Class are any defendants, any parent, subsidiary, affiliate, or employee of any defendant, any co-conspirator, and any governmental agency.

ECF No. 144. The Court appointed Plaintiffs as class representatives and Susman Godfrey L.L.P. and Izard, Kindall & Raabe, LLP ("IKR") as Class Counsel. *Id.*

On August 16, 2019, the Court approved the parties' proposed form of notice and plan for distributing notice to the certified litigation Class. ECF No. 164. Under the approved notice campaign, administrator Epiq Class Actions & Claims Solutions, Inc. ("Epiq") provided direct notice to class members via email; indirect notice via an online publication campaign in cryptocurrency-related websites, blogs, and news outlets, as well as ads targeted at individuals who search for cryptocurrency related information and sponsored search listings on major Internet search engines; and an informational release to traditional and online media outlets. ECF No. 162 at 8-9; ECF No. 162-3 at ¶¶ 11-18. During the 45-day opt-out period, seven class members filed timely notices to exclude themselves from the Class ("Opt Outs"). *See* ECF No. 383-6 at ¶ 15 (Declaration of Nicholas Schmidt in Support of Plaintiffs' Motion for Preliminary Approval). After discovery closed, Mr. Fraser filed a motion to decertify the class as to damages. ECF No. 179. The parties filed lengthy, fact-intensive briefs and argued the motion to the Court. The Court denied the motion and the case proceeded to trial. ECF No. 206.

### D.  Plaintiffs Try the Case—And Win a New Trial After a Defense Verdict

The parties tried the case to a jury between October 20 and November 1, 2021. After two days of deliberations, the jury returned a verdict in favor of Mr. Fraser. Specifically, the jury found that the GAW Products were not securities, and accordingly, did not make further findings on Mr. Fraser's liability as to Plaintiffs' securities-related claims. ECF No. 330 at 2. The jury also found that Mr. Fraser was not liable for aiding and abetting common-law fraud against Plaintiffs. *Id.* at 13.

Plaintiffs filed post-trial motions for judgment as a matter of law and for a new trial pursuant to Federal Rules of Civil Procedure 50(b) and 59. ECF No. 351. On June 2, 2022, the

Court granted Plaintiffs' motion for a new trial with respect to their securities claims relating to Paycoin and ordered the parties to meet and confer regarding a trial date. ECF No. 370.

### E.     Settlement Negotiations, Preliminary Approval, and Class Notice

The parties discussed a possible pretrial resolution at multiple points in this lawsuit. After the Court denied Mr. Fraser's motion to decertify the class as to damages and set a pretrial schedule in May 2020, ECF No. 206, the parties mediated the case before Jack P. Levin, a respected mediator and arbitrator. Ard Dec. ¶ 5. The parties continued discussions with each other and the mediator between July and October 2020, but were unable to reach agreement at that time. Ard Decl. ¶ 6.

After the Court granted in part Plaintiffs' motion for a new trial, ECF No. 370, the parties resumed settlement discussions. The parties engaged in months-long negotiations regarding monetary relief to the Class, ultimately reaching agreement on monetary terms at the end of September 2022, ECF No. 377, and subsequently memorializing the terms in a Settlement Agreement, ECF No. 383-4 ("Settlement Agreement"). Throughout the process, settlement negotiations were conducted by highly qualified and experienced counsel on both sides at arm's length. Ard Decl. ¶ 7.

On March 1, 2023, the Court issued the "Amended Preliminary Approval Order." ECF No. 388.[3] The order stated that the Settlement Agreement was "preliminarily approved as being fair, reasonable, and adequate to the Settlement Class." *Id.* ¶ 1. The order further stated: "The Court finds that the Settlement Agreement was entered into at arm's-length by highly experienced

---

[3] This order vacated and superseded a previous order dated February 21, 2023 (ECF No. 385). The Court's Amended Order was issued following an unopposed motion by Plaintiffs to amend the Preliminary Approval Order to include a deadline for Settlement Class Members to submit a claim form. ECF No. 387.

counsel and is sufficiently within the range of reasonableness that notice of the Settlement Agreement should be given as provided in this Order." *Id.* The Court set a final fairness hearing for June 30, 2023. *Id.* ¶ 12.

The Court also approved Plaintiffs' proposed class notice plan, holding that the short- and long-form notices and manner of dissemination "satisfy the requirements of Federal Rule of Civil Procedure 23(c)(2)(d) and due process in that it constitutes the best notice practicable under the circumstances." *Id.* ¶ 6. The Court appointed Epiq as the Settlement Administrator and provided deadlines for the various components of the notice program, including emails, banner advertisements, sponsored search ads, newswire publication, and the creation of a settlement website. *Id.* ¶¶ 5-6.

The notice program proceeded consistently with the Amended Preliminary Approval Order and therefore met the requirements of Rule 23 and due process. Epiq emailed the approved short-form notice to potential Settlement Class members on March 16, 2023, using email addresses that Epiq had previously used to provide notice after a litigation class was certified in 2019. Plaintiffs provided these email addresses to Epiq, which Plaintiffs had obtained from the ZenCloud and Paybase databases ("GAW Databases"), records from PayPal and Stripe, records from Shopify (the online "shopping cart" used by GAW), and email addresses collected by Plaintiff Allen Shinners. Kimball Decl. ¶ 7; ECF No. 383-6 at ¶ 7 (Declaration of Nicholas Schmidt in Support of Plaintiffs' Motion for Preliminary Approval). In total, 118,411 emails were delivered to potential Settlement Class members. The long-form Settlement notice was posted on the class website (https://www.gawminersclassaction.com/) and a call-in line was established on March 15, 2023. *See* Kimball Decl. ¶¶ 11, 13. As of June 9, 2023, the website has tracked over 24,600

sessions.[4] *See* Kimball Decl. ¶ 12. The phone line has received 13 calls. *See id.* ¶¶ 13-14. Epiq has promptly responded to all questions and inquiries received from potential Settlement Class Members. *See* Kimball Decl. ¶ 15.

On December 21, 2022, Mr. Fraser sent Class Action Fairness Act ("CAFA") notices to the Attorney General of the United States and the State Attorneys General as required by 28 U.S.C. § 1715(b). *See* ECF No. 384 (Notice of Filing of Fiereck Declaration Regarding CAFA Compliance). No objection to the Settlement was received from any Attorney General. *See* Ard Decl. ¶ 18.

On May 10, 2023, Class Counsel filed its Motion for Fees, Reimbursement of Expenses, and Incentive Awards for the Named Plaintiffs. *See* ECF No. 390. Pursuant to Federal Rule of Civil Procedure 23(e)(5) and the Court's Amended Preliminary Approval Order (ECF No. 388), potential Settlement Class Members could file a written objection to the Settlement by May 25, 2023. No potential Settlement Class Member objected by that deadline (or has objected since). *See* Ard Decl. ¶¶ 19-20.

F. **The Settlement Agreement**

1. **Consideration and the Settlement Class**

The Settlement provides for a monetary fund of $3,500,000 ("Settlement Fund"). Settlement Agreement § 36. The Settlement Class is defined to include all persons and entities who, between August 1, 2014 and January 19, 2015, (1) purchased Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC; or (2) acquired Hashlets, Hashpoints, HashStakers, or Paycoin from GAW Miners, LLC and/or ZenMiner, LLC,

---

[4] A "session" refers to a user's visit to the website and associated activity during a single period of time, as opposed to a "page view," which also counts visits to links or sites within a website and any time the site re-loads. *See* Kimball Decl. at 6 n.2.

by converting, upgrading, or exchanging other products sold by GAW Miners, LLC and/or ZenMiner, LLC. Specifically excluded from the Settlement Class are the Opt Outs; any defendants; any parent, subsidiary, affiliate, or employee of any defendant; any co-conspirator; and any governmental agency. ECF No. 144. Other than the seven Opt Outs, *see* ECF No. 383-6 at ¶ 15 (Declaration of Nicholas Schmidt in Support of Plaintiffs' Motion for Preliminary Approval), the proposed Settlement Class is identical to the previously certified litigation class.

### 2.    Payments to Claimants and Release of Claims

Following final approval, the Settlement Administrator will distribute to each Claimant (*i.e.*, each "Settlement Class Member[] who submits [a] valid and timely Settlement Claim[]") his or her payment from the Net Settlement Fund and calculated pursuant to the Plan of Distribution, which is described in further detail below. ECF No. 383-5 at ¶ 3 (Plan of Distribution). Under the Settlement Agreement, the Net Settlement Fund consists of the Settlement Fund, minus the Settlement Administration Expenses, any Incentive Award, any of Class Counsel's Fees and Expenses approved by the Court, and any other payments provided for under the Settlement or the Court's Order and Judgment approving the Settlement. Settlement Agreement § 14; *see also* Settlement Agreement §§ 13, 14, 26, 31 (defining terms). Assuming the Settlement is finally approved, under no circumstance will there be any reversion of any portion of the Settlement Fund to Mr. Fraser. *See* Settlement Agreement § 36.

Plaintiffs and Settlement Class Members will release any and all claims "arising out of or related in any way to the Action or the facts, transactions, events, occurrences, acts, disclosures, statements, omissions, or failures to act that were alleged in the Action." Settlement Agreement § 22.

### 3.     Incentive Awards, Costs, and Attorneys' Fees

The Settlement Agreement provides that, subject to Court approval, a portion of the Settlement Fund may be used for fees, costs, and expenses incurred in providing class notice and performing claims administration ("Settlement Administration Expenses"). Class Counsel filed their motion for fees, expenses, and incentive awards on May 10, 2023. *See* ECF No. 390. Class Counsel seeks 28% of the Settlement Fund; incurred litigation expenses; and incentive awards of $50,000, $25,000, and $25,000 for Plaintiffs Shinners, Audet, and Pfeiffer respectively, in compliance with the Amended Preliminary Approval Order. *See id*; Ard Decl. ¶ 19. Settlement Class Members were given the opportunity to object to Class Counsel's motion. No Settlement Class Member filed an objection or otherwise objected to the motion, either by the objection deadline or through the present. *See* Ard Decl. ¶ 19.

### 4.     Plan of Distribution

In its Amended Preliminary Approval Order, the Court found that "the proposed Plan of Distribution is reasonable and rational and should be provided to Settlement Class Members for their review." ECF No. 388 at ¶ 4. No Settlement Class Member has objected to the proposed Plan of Distribution.

Under the Plan of Distribution, the Net Settlement Fund will be distributed on a *pro rata* basis to Settlement Class Members who submit a valid and timely Claim to the Settlement ("Claimants"). ECF No. 383-5 at ¶¶ 5, 10. The allocation formula proposed in the Plan of Distribution uses information provided by Claimants in a Proof of Claim form ("Proof of Claim"), which was submitted as Exhibit A to the Declaration of Nicholas Schmidt submitted in support of Plaintiffs' Motion for Preliminary Approval. *See* ECF No. 383-7. The Proof of Claim asks for two categories of information: (1) information identifying the Settlement Class Member, including

11

information used by the Class Member when purchasing or acquiring GAW Products, and which may be reflected in the GAW Databases; and (2) information on each of the four types of GAW Products purchased or acquired by the Settlement Class Member, including information on amounts paid by the Class Member to GAW, any Hashpoints received by the Class Member for "mining" Hashlets, amounts received by the Class Member for selling GAW Products, and mining rewards received by the Class Member from Hashlets. *See id.* at 3-5. Although Settlement Class Members will not be required to submit supporting documentation or other material with the Proof of Claim, they will be required to attest to the accuracy of the information submitted. *Id.* at 6. Furthermore, the Settlement Administrator will have the discretion to audit any Claim, including but not limited to comparing the information provided on the Proof of Claim with information in the GAW Databases and requesting supporting documentation from the Class Member. *See* ECF No. 383-7 at ¶ 9.

Using this information from the Proofs of Claim, the proposed Plan of Distribution calculates a Claimant Stake for each Claimant that simply adds the amounts paid to GAW by the Claimant for GAW Products and the value of the Hashpoints "mined" by the Claimant (at a conversion rate of $0.01 per Hashpoint) and subtracts the amounts received by the Claimant from GAW (*i.e.*, mining rewards from Hashlets) and the amounts received by the Claimant from sales of GAW Products. *See* ECF No. 383-7 at ¶ 8. Under the proposed Plan, the Settlement Administrator will then calculate a *Pro Rata* Claim for each Claimant by (i) dividing its Claimant Stake by the sum of all Claimant Stakes associated with valid and timely Claims; and (ii) multiplying that percentage by the Net Settlement Fund. *Id.* These *Pro Rata* Claims will then be distributed to Claimants, subject to a *de minimis* threshold of $10. *Id.* ¶¶ 10-11.

### III.    THE PROPOSED SETTLEMENT WARRANTS FINAL APPROVAL

#### A.    Legal Standard

Federal courts strongly favor settlements, particularly in class actions. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116-17 (2d Cir. 2005) ("We are mindful of the strong judicial policy in favor of settlements, particularly in the class action context. The compromise of complex litigation is encouraged by the courts and favored by public policy." (internal quotation marks and citation omitted)). Absent "fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *8 (S.D.N.Y. Oct. 16, 2019) (quoting *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007)).

Rule 23(e)(2) sets out the standard for courts reviewing class action settlements:

If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

The first two factors focus on "procedural fairness," while the latter two factors (and associated subfactors) focus on "substantive fairness." *Christine Asia*, 2019 WL 5257534, at *9-10.

These factors, which were added to Rule 23 in December 2018, were designed to supplement, rather than displace, the existing factors considered by courts to evaluate settlement

proposals. *See* Fed. R. Civ. P. 23, 2018 Advisory Note, Subdivision (e)(2). Prior to the amendment

of Rule 23, courts in the Second Circuit considered the nine factors set out in *City of Detroit v.*

*Grinnell Corp*:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of
> the class to the settlement; (3) the stage of the proceedings and the amount of
> discovery completed; (4) the risks of establishing liability; (5) the risks of
> establishing damages; (6) the risks of maintaining the class action through the trial;
> (7) the ability of the defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement fund in light of the best possible recovery; (9) the
> range of reasonableness of the settlement fund to a possible recovery in light of all
> the attendant risks of litigation.

495 F.2d 448, 463 (2d Cir. 1974) (citations omitted), *abrogated on other grounds by Goldberger*

*v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

In granting preliminary approval under Rule 23(e)(1), the Court already held that the

Settlement is likely to meet this standard. *See* ECF No. 388 at ¶ 1 ("The settlement agreement is

hereby preliminarily approved as being fair, reasonable, and adequate to the Settlement Class,

subject to the Fairness Hearing described below. The Court finds that the Settlement Agreement

was entered into at arm's-length by highly experienced counsel and is sufficiently within the range

of reasonableness that notice of the Settlement Agreement should be given as provided in this

Order."); Fed. R. Civ. P. 23(e)(1)(B) (preliminary approval may be granted upon "the parties'

showing that the court will likely be able to . . . approve the proposal under Rule 23(e)(2)").

## B.     The Proposed Settlement Satisfies the Rule 23(e)(2) Factors

### 1.     Rule 23(e)(2)(A): Adequacy of Plaintiff and Class Counsel

"Determination of adequacy typically 'entails inquiry as to whether: 1) plaintiff's interests

are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are

qualified, experienced and able to conduct the litigation.'" *Cordes & Co. Fin. Servs., Inc. v. A.G.*

*Edwards & Sons, Inc.*, 502 F.3d 91, 99 (2d Cir. 2007) (quoting *Baffa v. Donaldson, Lufkin &*

*Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000)).

The Court has previously determined that lead plaintiffs Allen Shinners, Michael Pfeiffer, and Denis Marc Audet have and will adequately represent Settlement Class Members. *See* ECF No. 141 (6/21/19 Class Cert. Order) at 20-24 (finding that the lead plaintiffs satisfied the requirement of Rule 23(a)(4) that "the representative parties will fairly and adequately protect the interests of the class"); ECF No. 388 at ¶ 1 (preliminary approving the Settlement). Plaintiffs' interests continue to be aligned with those of other Settlement Class Members. Settlement Class Members, including Plaintiffs, share an overriding, common interest in obtaining the largest monetary recovery from Mr. Fraser. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 453 (S.D.N.Y. 2004) ("There is no conflict between the class representatives and the other class members. All share the common goal of maximizing recovery."); *see also* William B. Rubenstein, 1 Newberg on Class Actions § 3:58 (5th ed., Dec. 2021 Update) ("All that is required—as the phrase 'absence of conflict' suggests—is sufficient similarity of interest such that there is no affirmative antagonism between the representative and the class." (citations omitted)). There are no antagonistic interests involved here. Plaintiffs and Class Counsel have continued to vigorously litigate this case over almost seven years through trial, post-trial motions, settlement, and the settlement approval process. *See* Ard Decl. ¶ 13.

Additionally, Class Counsel is highly qualified. As the Court has already found, Class Counsel are highly experienced trial lawyers who have litigated many class action lawsuits, including securities fraud and consumer protection cases. Ard Decl. ¶ 3; *see also* ECF No. 388 (finding that Class Counsel is "highly experienced"); ECF No. 350 (Trial Transcript Nov. 1, 2020) (Court: "I did want to compliment all counsel in this case. I thought you were all very good advocates from the top level of the team to the most junior level of the team. There were no weak

links. It's rare that I can say that."). Rule 23(e)(2)(A) therefore supports final approval of the proposed Settlement.

### 2.      Rule 23(e)(2)(B): Arms' Length Negotiation

Rule 23(e)(2)(B) requires that "the proposal was negotiated at arm's length." The Second Circuit recognizes "a presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.'" *McReynolds v. Richards-Cantave*, 588 F.3d 790, 803 (2d Cir. 2009) (quoting *Wal-Mart Stores*, 396 F.3d at 116). "Evidence of a truly adversarial bargaining process helps assuage [the concern of collusive settlements] and there appears to be no better evidence of such a process than the presence of a neutral third party mediator:" Rubinstein, 4 Newberg on Class Actions § 13:50 (citing Fed. R. Civ. P. 23, 2018 Advisory Note).

As the Court has found, "the Settlement Agreement was entered into at arm's-length by highly experienced counsel." ECF No. 388 at ¶ 1. The Settlement was the result of lengthy, adversarial negotiations over three months—following a full jury trial, post-trial motions, and the Court's order granting Plaintiffs a new trial in part—among competent, experienced counsel. *See* Ard Decl. ¶¶ 7, 13. Rule 23(e)(2)(B) therefore supports final approval of the proposed Settlement.

### 3.      Rule 23(e)(2)(C): Adequacy of the Relief Provided to the Class

Rule 23(e)(2)(C) requires that "the relief provided for the class is adequate, taking into account" four subfactors: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)."

The Settlement provides $3.5 million in cash payments to Settlement Class Members. This

monetary relief is an exceptional result given Plaintiffs' loss during the first trial and the particular uncertainties and challenges of proving damages for Paycoin, the product at the center of Plaintiffs' claims in the second trial. The adequacy of the relief is further underscored by an analysis of the four Rule 23(e)(2)(C) subfactors and related *Grinnell* factors.

(a)    Rule 23(e)(2)(C)(i): costs, risks, and delay

The first subfactor concerns the "costs, risks, and delay of trial and appeal." This inquiry overlaps with many of the *Grinnell* factors: factor one (the "complexity, expense, and likely duration of the litigation"); factors four, five, and six (the risks of establishing liability and damages and in maintaining the class through trial); and factors eight and nine (the range of reasonableness of the settlement in light of the best possible recovery and the risks of litigation). *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019). In assessing these risks, the Court need not "decide the merits of the case," "resolve unsettled legal questions," or "foresee with absolute certainty the outcome of the case." *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *8 (S.D.N.Y. Sept. 9, 2015) (cleaned up). "[R]ather, the Court need only assess the risks of litigation against the certainty of recovery under the proposed settlement." *Id.* (quoting *In re Global Crossing Secs. And ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004)).

This subfactor and the related *Grinnell* factors strongly support approval of the Settlement.

**The case was sprawling and highly complex.** *Grinnell* factor one concerns "the complexity, expense and likely duration of the litigation." Here, there is no question about the "likely duration" of this case: it has been pending for seven years and the Settlement will spare Settlement Class Members additional years of re-trial, damages adjudications, and appeals. This case has also been complex and expensive: trial began during the COVID-19 pandemic after five years of motion practice and discovery, including motions to dismiss, fact-intensive class

17

certification briefing, third-party discovery and discovery of absent class members, and mediation. Even then, the first (and second) trials would resolve only the issue of Mr. Fraser's liability because the Court had bifurcated damages. ECF No. 206. If Plaintiffs had prevailed on liability, the path forward for resolving individual class members' claims for damages, and the timeline for doing so, was not clear. A number of options outlined by the Court—including use of a damages formula, a claims administration process, or a special master overseeing individual damages proceedings for an unknown number of class members, *see* ECF No. 206 at 15-16—would have raised challenging and time-consuming procedural issues. Beyond the procedural complexity, the case was also legally complex. At the time of filing and through trial, few courts had assessed the application of the *Howey* test to cryptocurrency products like the ones at issue and, indeed, this case broke new ground in having a civil jury find whether crypto products qualified as "investment contracts."[5]

**Plaintiffs faced liability and damages risk and the possibility the class would be decertified as to damages.** *Grinnell* factors four through six address the risks of establishing liability and damages and maintaining the class action through trial. Plaintiffs' claims rested on completely novel theories that cloud mining contracts and cryptocurrency tokens fell within the reach of the securities laws.[6] The riskiness of such claims was not speculative: the first jury disagreed with Plaintiffs and found that the GAW Products were not investment contracts (albeit erroneously with respect to Paycoin). Other risks involved:

---

[5] The complexity is emphasized by the fact that the jury found that Paycoin was not a security despite the "overwhelming weight of the trial evidence," much of which was presented through expert testimony. *See Audet*, 605 F. Supp. 3d at 394-99.

[6] *See SEC v. Kik Interactive Inc.*, 492 F. Supp. 3d 169, 177 (S.D.N.Y. 2020) (noting that "[f]ew courts in this Circuit have had the opportunity to apply *Howey* in the context of cryptocurrency" and "[t]he Second Circuit has not yet spoken on the issue"); *Audet v. Fraser*, 332 F.R.D. 53, 58 (D. Conn. 2019) (observing that this case came from "the brave new world of cryptocurrency").

- Establishing control-person liability (including Mr. Fraser's "culpable participation" in the fraud), largely through adverse examination of Mr. Fraser;

- Assuming Plaintiffs prevailed at a second trial, avoiding decertification of the class, which the Court had indicated would be possible if Plaintiffs prevailed during the liability phase, *see* ECF No. 206 at 16;

- Avoiding the risk of having to litigate damages on a class member-by-class member basis, including for many low- or negative-value claims, *see* ECF No. 206 at 15-16.

Plaintiffs firmly believe there is strong evidence of Mr. Fraser's liability, but in a second trial, Mr. Fraser would vigorously dispute his control of GAW and his participation in the fraud, and there is a significant risk that a second jury might credit his evidence over Plaintiffs'. Even if Plaintiffs won a second trial, post-trial briefing and appeals would probably have significantly prolonged the litigation. *See Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini*, 258 F. Supp. 2d 254, 258 (S.D.N.Y. 2003) ("The potential for this litigation to result in great expense and to continue for a long time suggest that settlement is in the best interests of the Class."); *Phoenix COI*, 2015 WL 10847814, at *6 ("The Settlement also ends future litigation and uncertainty. Even if the Class could recover a judgment at trial and survive any decertification challenges, post-verdict and appellate litigation would likely have lasted for years.").

**Plaintiffs' surviving claims presented challenging damages issues.** *Grinnell* factors eight and nine relate to "the range of reasonableness of the settlement in light of the best possible recovery and the risks of litigation." Plaintiffs won a new trial only as to one product, Paycoin. The bulk of Plaintiffs' claimed cash losses came from purchases by class members from GAW of ***other*** products—Hashlets and HashStakers—which are no longer in the case as a result of the jury verdict. In fact, the trial record did not include evidence of a plaintiff paying money to GAW for

19

Paycoin or reporting such purchase as a cash loss.[7] For that reason, Plaintiffs' damages model may have substantially narrower following a second trial on Paycoin alone. In light of that uncertainty—including a lack of any direct qualifying payments to GAW for Paycoin in cash—a settlement of $3.5 million represents an outstanding result.

Additionally, $3.5 million represents 20% of Plaintiffs' original damages model of $17.5 million (which accounted only for two **different** products, Hashlets and HashStakers). Conservatively assuming that class-wide damages for Hashpoints and Paycoin would be similar to Plaintiffs' previously calculated damages for Hashlets and HashStakers ($17.5 million for Hashpoints and Paycoin, or $35 million total for all four GAW Products)[8], the Settlement Fund would still represent approximately 10% of a "best possible recovery" of that $35 million. *See* ECF No. 383-2 at ¶ 16. This percent recovery falls well within the range that courts routinely approve. See *Grinnell Corp.*, 495 F.2d at 455 & n.2 (recognizing that "a satisfactory settlement" could amount to a small fraction—such as "a hundredth or even a thousandth part of a single percent of the potential recovery"); *see also Hunichen v. Atonomi LLC*, 2021 WL 5854964, at *9 (W.D. Wash. Nov. 12, 2021) (recommending preliminary approval of settlement involving sale of unregistered cryptocurrency securities where settlement represented approximately "twenty percent, excluding interest, of the total amount of losses claimed and damages sought in this matter"), *report and recommendation adopted*, 2022 WL 4131590 (W.D. Wash. Sept. 12, 2022);

---

[7] *See* ECF No. 1-1 (Plaintiffs' certifications) at 5-9, 12-54, 57-64; *see also* ECF No. 346 at 584:18-23, 585:6-7 (trial testimony from class representative Marc Audet that he obtained Paycoin from GAW by converting Hashpoints and using HashStakers); *id.* at 646:7-15 (trial testimony from Allen Shinners that he obtained Paycoin from GAW through Hashpoint conversions); ECF No. 347 at 836:10-20 (same for Michael Pfeiffer).

[8] This assumption is very conservative given the lack of evidence regarding payments to GAW for Paycoin and Hashpoints. *See also* ECF No. 370 at 38 (ruling on post-trial motions) (noting "the jury heard very little evidence regarding Hashpoints").

*In re Air Cargo Shipping Servs. Antitrust Litig.*, 2009 WL 3077396, at *9 (E.D.N.Y. Sept. 25, 2009) (approving settlement value that was 10.5% of total damages). Furthermore, "settlement assures immediate payment of substantial amounts to Class Members, 'even if it means sacrificing speculative payment of a hypothetically larger amount years down the road.'" *Charron v. Pinnacle Grp. N.Y. LLC*, 874 F. Supp. 2d 179, 201 (S.D.N.Y. 2012) (citation omitted).

For those reasons, this subfactor supports granting final approval to the Settlement.

> (b)   Rule 23(e)(2)(C)(ii): The effectiveness of any proposed method of distributing relief to the class

The second subfactor takes into account "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Courts recognize that "the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information," not mathematical precision. *In re PaineWebber Ltd. Partnerships Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997).

Plaintiffs' proposed plan of allocation provides for an equitable *pro rata* distribution of proceeds. *See supra* Section II.F.4. This distribution plan was preliminarily approved by the Court. *See* ECF No. 388 at ¶ 4. "This type of distribution, where funds are distributed on a pro rata basis, has frequently been determined to be fair, adequate, and reasonable." *Phoenix COI*, 2015 WL 10847814, at *12 (collecting cases); *see also In re Lloyd's Am. Tr. Fund Litig.*, 2002 WL 31663577, at *19 (S.D.N.Y. Nov. 26, 2002) ("[P]ro rata allocations provided in the Stipulation are not only reasonable and rational, but appear to be the fairest method of allocating the settlement benefits.").

The method of distribution and claims processing is likewise rational and effective. As is common in settlement claims processes, Settlement Class Members may submit (and nearly 1,000

have already submitted) a claim form listing identifying information—*e.g.*, name, address, email address, phone number, and username—associated with their purchases and acquisitions of the products at issue. ECF No. 383-7; *see supra* Section II.F.4. The claim form requests information on each of the four types of GAW Products a Settlement Class Member may have purchased or acquired, including information on amounts paid by the Class Member to GAW, any Hashpoints received by the Class Member for "mining" Hashlets, amounts received by the Class Member for selling GAW Products, and mining rewards received by the Class Member from Hashlets. This information will permit the Settlement Administrator to estimate the net damages suffered by each Claimant in relation to the GAW Products.

To reduce the burden and expense of submitting and evaluating claims, the proposed Proof of Claim does not require the submission of supporting documentation. Yet, each Claimant must attest to the truthfulness and accuracy of the information provided to the Settlement Administrator. Courts regularly approve similar distribution proposals that seek to reduce the burden on class members in submitting claims. *See, e.g.*, *Hart v. BHH, LLC*, 2020 WL 5645984, at *2 (S.D.N.Y. Sept. 22, 2020) (approving settlement where proof was not required and only 1% of claimants "provided proof of purchase"); *see also* Federal Judicial Center, *Managing Class Action Litigation: A Pocket Guide for Judges* (2005) ("Necessary claim forms should be as simple and clear as possible and should avoid redundancy. Be careful to avoid claim forms that scare class members away with confusing questions and onerous proof requirements."). Burdensome proof requirements may artificially depress claim rates, particularly in cases like this one where a significant portion of the Class may have modest damages and where Settlement Class Members may not have retained documentation of their purchases and acquisitions of the products, which occurred in 2014 and 2015. Furthermore, the Settlement Administrator will have the discretion to

audit any Claim, including but not limited to comparing the information provided on the Proof of Claim with information in the GAW Databases and requesting supporting documentation from the Class Member. In sum, this subfactor supports a finding of substantive fairness and final approval of the Settlement.

(c)    <u>Rule 23(e)(2)(C)(iii): The terms of any proposed award of fees</u>

The third subfactor takes into account "the terms of any proposed award of attorney's fees, including timing of payment." Here, Class Counsel seeks 28% of the Settlement Fund. *See* Ard Decl. ¶ 19; ECF No. 390-1. The reasonableness of this fee request was explained in detail in Class Counsel's Motion for Fees, Reimbursement of Expenses, and Incentive Awards for the Named Plaintiffs. *See* ECF No. 390-1. No Settlement Class Member has objected to the fee request. *See* Ard Decl. ¶ 19. Class Counsel will not receive any funds until the Court has granted its application, and the parties have agreed that the Settlement is not conditioned on the Court's approval of any application by Class counsel for attorneys' fees and reimbursement of expenses. Settlement Agreement § 44.

(d)    <u>Rule 23(e)(2)(C)(iv): Agreements required to be identified</u>

Rules 23(e)(2)(C)(iv) and 23(e)(3) require that any agreement "made in connection with the [settlement] proposal" to be identified. Plaintiffs and Mr. Fraser have not entered into, and are not aware of, any such agreements. *See* Ard Decl. ¶ 27.

**4.    Rule 23(e)(2)(D) Factor: The Proposal Treats All Settlement Class Members Equitably**

The final Rule 23(e)(2) factor requires the Court to consider whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). This analysis focuses on "inequitable treatment of some class members vis-a-vis others" and can include "whether the apportionment of relief among class members takes appropriate account of differences among their

23

claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." *Id.*, 2018 Advisory Note. Here, the proposed plan of allocation equitably treats class members by distributing damages on a *pro rata* basis using Settlement Class Members' shares of the total damages. *See Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) ("This plan of allocation has an obvious rational basis, appears to treat the class members equitably, faced no objections from class members, and has the benefit of simplicity."); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13-14 (S.D.N.Y. July 21, 2020) (approving plan of allocation that allocated recovery *pro rata* "based on the relative size" of their claims and which applied equally to the class representatives as to the rest of the class). Thus, the different amounts to be awarded for purchases or acquisitions of different products has a rational basis and weighs in favor of a finding of substantive fairness. Rule 23(e)(2)(D) therefore supports final approval.

### C.     The Remaining *Grinnell* Factors Also Support Final Approval

#### 1.     The Reaction of the Class to the Settlement

The second *Grinnell* factor—"[t]he reaction of the class to the settlement," *see* 495 F.2d at 463—"is perhaps the most significant factor to be weighted in considering [the Settlement's] adequacy." *See Jander v. Ret. Plans Comm. of IBM*, 2021 WL 3115709, at *3 (S.D.N.Y. July 22, 2021).

Here, the Settlement Administrator provided notice consistent with the Court's Amended Preliminary Approval Order (ECF No. 388 at ¶ 6). Notice included direct email notice to potential Settlement Class Members, targeted online advertising of the Settlement, and a dedicated Settlement website which has received over 24,000 visits to date. *See supra* Section II.E. There were zero objections. This "absence of objections by the class is extraordinarily positive and

weighs in favor of settlement." *Jander*, 2021 WL 3115709, at *3; *see also In re Giant Interactive Group, Inc. Sec. Litig.*, 279 F.R.D. at 161. This factor therefore strongly supports approval of the proposed Settlement.

### 2.   The Stage of the Proceedings and Amount of Discovery Completed

The third *Grinnell* factor—"the stage of the proceedings and the amount of discovery completed," *see* 495 F.2d at 463—addresses "whether the plaintiffs have obtained a sufficient understanding of the case to gauge the strengths and weaknesses of their claims and the adequacy of the settlement." *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006). Here, Plaintiffs and Class Counsel have far more than a "sufficient understanding" of the case: they litigated the case for seven years and tried it to verdict. Class Counsel thus had a full discovery record and an actual trial record against which to measure the adequacy of the Settlement with Mr. Fraser. *See* Ard Decl. ¶¶ 5-14. This factor therefore strongly supports approval. *See Cty. of Suffolk v. Alcorn*, 710 F. Supp. 1428, 1442 (E.D.N.Y. 1989) (concluding it was "unlikely that any significant information has been left unrevealed" to the settling parties because they had "a full trial after extensive discovery"), *aff'd in relevant part*, 907 F.2d 1295 (2d Cir. 1990).

### 3.   The Ability of Mr. Fraser to Withstand A Greater Judgment

The final *Grinnell* factor—"the ability of the defendants to withstand a greater judgment," 495 F.2d at 463—is neutral. Even if Mr. Fraser could potentially withstand a greater judgment— which is not clear to Plaintiffs—"[t]his factor standing alone, does not suggest that the settlement is unfair." *Kemp-DeLisser v. Saint Francis Hosp. & Med. Ctr.*, 2016 WL 6542707, at *10 (D. Conn. Nov. 3, 2016) (citation and internal quotation marks omitted)); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). "[A] defendant is not required to empty its coffers before a settlement can be found adequate. The mere fact that a defendant is able to pay more than it offers

in settlement does not, standing alone, indicate the settlement is unreasonable or inadequate." *Phoenix COI*, 2015 WL 10847814, at *9 (citations and quotation marks omitted). This factor therefore does not weigh against final approval, while the other *Grinnell* factors weigh strongly in its favor.

## IV.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Dated: June 9, 2023

Respectfully submitted,

*/s/ Seth Ard*

Robert A. Izard
Christopher M. Barrett
Craig A. Raabe
IZARD, KINDALL & RAABE, LLP
29 S. Main St., Suite 305
West Hartford, CT 06107
Tel: (860) 493-6292
rizard@ikrlaw.com
cbarrett@ikrlaw.com
craabe@ikrlaw.com

Seth Ard
Jacob W. Buchdahl
Geng Chen
Russell F. Rennie
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019-6022
Tel: (212) 336-8330
sard@susmangodfrey.com
jbuchdahl@susmangodfrey.com
gchen@susmangodfrey.com
rrennie@susmangodfrey.com

Marc Seltzer
Kathryn Hoek
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA 90067
Tel: (310) 789-3100
mseltzer@susmangodfrey.com
khoek@susmangodfrey.com

Edgar Sargent
SUSMAN GODFREY L.L.P.
401 Union Street
Suite 3000
Seattle, WA 98101
Tel: (202) 516-3880
esargent@susmangodfrey.com

*Counsel for Plaintiffs*

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2023, a copy of the foregoing document was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing  system  or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.


*/s/ Russell Rennie*